**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| **IN RE: REALPAGE, INC. RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II)** | **Case No.: 3:23-md-03071**<br>**MDL No. 3071** |
| | **This document relates to:**<br><br>**ALL ACTIONS** |

**WATTERS PLAINTIFFS' APPLICATION TO APPOINT**
**SCOTT+SCOTT ATTORNEYS AT LAW LLP AND ROBINS KAPLAN LLP AS**
**INTERIM CO-LEAD CLASS COUNSEL, TRICIA HERZFELD AS LIAISON**
**COUNSEL, AND A FIVE FIRM PLAINTIFFS' STEERING COMMITTEE**

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................1

II.   RELEVANT BACKGROUND ......................................................................................4

    A.   The Cases in this MDL..............................................................................................4

    B.   The Watters Plaintiffs...............................................................................................5

III.  LEGAL STANDARD.....................................................................................................5

IV.   THE COURT SHOULD APPOINT SCOTT & RK AS INTERIM CO-LEADS ...........6

    A.   Scott & RK Have Long Demonstrated Their Ability to Work Cooperatively,
Professionally, and Respectfully with Others.......................................................... 7

    B.   Scott & RK Have the Experience, Lawyers, and Resources This Case Demands........... 9

    C.   Scott & RK Have Committed to this Litigation Since Inception and Will See It Through
to Resolution............................................................................................................ 10

    D.   Watters Plaintiffs Have Proposed the Best Leadership Structure for the Needs of This
Particular Case and Will Implement Cost Control Measures to Ensure Efficiency.............. 15

V.    THE COURT SHOULD APPOINT ATTORNEY HERZFELD OF HSGLaW AS
PLAINTIFFS' LIAISON COUNSEL FOR THE MULTIFAMILY PLAINTIFFS .................16

VI.   THE COURT SHOULD ESTABLISH WATTERS PLAINTIFFS' PROPOSED
PLAINTIFFS' STEERING COMMITTEE ..............................................................................17

    A.   KTT Should Be Appointed PSC Member for the South-East........................................ 19

    B.   Lowey Should Be Appointed PSC Member for the North-East ................................... 20

    C.   CCMS Should Be Appointed PSC Member for the Mid-West...................................... 21

    D.   KT Should Be Appointed PSC Member for the South-West........................................ 22

    E.   JSLF Should Be Appointed PSC Member for the West ................................................ 23

VII.  CONCLUSION ..............................................................................................................24

CERTIFICATE OF SERVICE ................................................................................................. 1

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997)...................................................................................................19

*In re Bendectin Litig.*,
857 F.2d 290 (6th Cir. 1988) ...................................................................................18

*In re Cox Enterprises, Inc. Set-Top Cable Television Box Antitrust Litig.*,
No. 09-ML-2048-C, 2011 WL 6826813 (W.D. Okla. Dec. 28, 2011) .....................14

*DeSlandes v. McDonald's USA, LLC*,
No. 17 C 4857, 2021 WL 3187668 (N.D. Ill. July 28, 2021) ..................................14

*In re GSE Bonds Antitrust Litig.*,
No. 19-CV-1704 (JSR), 2020 WL 3250593 (S.D.N.Y. June 16, 2020) ...................21

*Hosp. Auth. Of Metro. Gov't of Nashville & Davidson Cnty., Tennessee v. Momenta Pharms., Inc.*,
333 F.R.D. 390 (M.D. Tenn. 2019) .........................................................................13

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999)...................................................................................................19

*In re Pharmacy Benefit Managers Antitrust Litig.*,
No. CV 03-4730, 2017 WL 275398 (E.D. Pa. Jan. 18, 2017) ..................................14

*In re Scrap Metal Antitrust Litig.*,
No. 02-cv-0844, 2002 WL 31988203 (N.D. Ohio 2002)..........................................15

*Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
552 F.3d 430 (6th Cir. 2008) ...................................................................................14

*Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*,
No. 3:09-CV-0487, 2014 WL 4347589 (M.D. Tenn. Sept. 2, 2014)........................14

**Statutes**

5 U.S.C. § 552.................................................................................................................7

15 U.S.C. §§ 1-7 ..............................................................................................11, 13, 14, 19

Colo. Rev. Stat. § 6-4-104 ..............................................................................................19

**Other Authorities**

Annotated Manual for Complex Litigation 4th .......................................................17, 19

Franco Faraudo, *The Man Behind the RealPage Lawsuit*, PROPMODO (Jan. 19,
    2023), https://www.propmodo.com/the-man-behind-the-realpage-lawsuit/..........................12

Letter from Elizabeth Warren, U.S. Senate, to the DOJ (March 2, 2023)
    (https://www.warren.senate.gov/imo/media/doc/2023.03.02%20Letter%20to
    %20DOJ%20re%20YieldStar%20(RealPage).pdf)................................................................13

## I.      INTRODUCTION

Plaintiffs in 20 consolidated actions (collectively, "Watters Plaintiffs")[1] respectfully request that this Court appoint Scott+Scott Attorneys at Law LLP ("Scott+Scott") and Robins Kaplan LLP ("RK") (collectively, "Scott & RK") as interim co-lead counsel ("Interim Co-Leads") to coordinate and manage all pre-trial proceedings in this litigation (the "RealPage MDL") on behalf of the Multifamily Plaintiffs.[2]  The Watters Plaintiffs also request that his Court appoint (a) Ms. Tricia Herzfeld of Herzfeld, Suetholz, Gastel, Leniski, and Wall, PLLC ("Attorney Herzfeld") as Plaintiffs' Liaison Counsel, and (b) the following five firms to serve as members of the proposed Plaintiffs' Steering Committee ("PSC"): Kozyak Tropin & Throckmorton LLP ("KTT"); Lowey Dannenberg, P.C. ("Lowey"); Cafferty Clobes Meriwether & Sprengel LLP ("CCMS"); Korein Tillery P.C. ("KT"); and Joseph Saveri Law Firm, LLP ("JSLF").[3]  This proposed leadership group will dedicate the time, resources, and talent required to serve as counsel for Multifamily Plaintiffs and work cooperatively with both plaintiffs' and defense counsel to move this case forward to a just, speedy, and cost-effective resolution.  With skilled local counsel and experienced trial counsel, Scott & RK are also prepared to progress quickly to trial the cases pending in Nashville.[4]

---

[1]      *Watters v. RealPage, Inc.*, *et al.*, No. 3:22-cv-01082 (M.D. Tenn. Dec. 30, 2022).  *See* Annex A for the full list of the 25 Plaintiffs who support this application and their case captions.

[2]      For the reasons set out in Section IV below, Scott & RK respectfully suggest that this Court appoint separate leadership for the Multifamily Plaintiffs and Student Housing Plaintiffs.  Should the Court decide not to separate the Multifamily and Student Housing Plaintiffs, Scott & RK request to be appointed as Interim Co-Leads on behalf of all Plaintiffs.

[3]      This application constitutes each proposed firm's individual application for their proposed role.

[4]      Watters Plaintiffs' Counsel represent plaintiffs in four of the five cases directly filed in this District.

1

Scott & RK satisfy each of the four requirements this Court articulated in its April 19, 2023 Order (ECF No. 3) ("April 19 Order") for appointment as Interim Co-Leads.

First, Scott & RK have a long track record of working cooperatively, professionally, and respectfully with counsel across the bar. After successfully advocating for this federal district before the JPML, Scott & RK have already worked jointly with counsel for Plaintiffs and Defendants to advance this litigation's orderly organization, including by preparing draft orders and pleadings for their consideration and by organizing counsel prior to the initial status conference.[5]

Second, Scott & RK are both extremely experienced in complex multi-party antitrust litigation. Both are nationally recognized law firms with decades of experience litigating novel and difficult antitrust matters. Both have been at the forefront of tech-related litigation. Scott Decl. ¶¶27-28; RK Decl. ¶¶13-15.

Third, Scott & RK have already shown a willingness and an ability to commit the time and resources required to prosecute this MDL zealously, and will continue to do so if appointed Interim Co-Leads. Scott & RK filed the first complaint to include any economic analysis and the first case in this Court before Your Honor—both of which evinced substantial prior investigation into how to best plead these cases. Scott & RK have also continued to investigate Plaintiffs' claims and are ready to file the Consolidated Amended Complaint ("CAC") now. Scott & RK have recently filed an additional complaint adding significant new direct evidence of Defendants' collusion, including new factual allegations based on information obtained from witnesses Scott & RK identified, and

---

[5] *See* Declaration Patrick McGahan in Support of the Motion to Appoint Scott+Scott Attorneys at Law LLP and Robins Kaplan LLP as Interim Co-Lead Class Counsel and Appoint Plaintiffs' Leadership Structure ("Scott Decl."); Declaration of Stacey P. Slaughter in Support of the Motion to Appoint Scott+Scott Attorneys at Law LLP and Robins Kaplan LLP as Interim Co-Lead Class Counsel and Appoint Plaintiffs' Leadership Structure ("RK Decl.").

additional economic evidence developed in conjunction with consulting economists.[6] To streamline the case, Scott & RK have already proposed a tolling agreement to Defendants named in four or fewer cases that would preserve Multifamily Plaintiffs' claims, remove these Defendants from the CAC, and facilitate a separate mediation track. Scott & RK have also been evaluating potential mediators and coordinating among Plaintiffs to begin the first steps towards discussions of early resolution with these Defendants.

Fourth, Scott & RK each have access to ample resources to advance a case of this magnitude. Collectively they have more than 300 attorneys in the United States. Both firms also have sufficient financial resources to advance this MDL without litigation funding and have years of experience self-funding complex and lengthy antitrust cases. If appointed as Interim Co-Leads, Scott & RK will be able to effectively prosecute and finance Multifamily Plaintiffs' claims, as they have done repeatedly in some of the largest antitrust cases in U.S. history.

Scott & RK are therefore best suited to bring this case to resolution quickly given the Court's guidelines. Furthermore, relying on their combined experience, Scott & RK have devised a proposed leadership model that will best ensure the efficient prosecution of this action across the U.S. and leverage law firm talent within each region of the country. Thus, in addition to seeking Interim Co-Lead appointments, Scott & RK respectfully ask this Court to also appoint (i) Attorney Herzfeld as Plaintiffs' Liaison Counsel, and (ii) a the proposed five-member ("PSC") chaired by the Interim Co-Leads. As PSC members, KKT, Lowey, CCMS, KT, and JSLF will each coordinate discovery and evidence-gathering across one of five geographic regions in the United States, with the strategic direction and oversight of Scott & RK.

---

[6]     *See, e.g.*, Complaint, *Goldman v. RealPage, Inc., et al.*, No. 3:23-cv-00552 (M.D. Tenn. May 30, 2023) ("*Goldman*"), ECF No. 1.

Scott & RK's proposed leadership structure ensures Multifamily Plaintiffs who span the country are adequately represented without compromising the vigorous and effective prosecution of this complicated antitrust case.

## II.    RELEVANT BACKGROUND

### A.    The Cases in this MDL

Plaintiffs allege that RealPage, Inc. ("RealPage") was the hub of conspiratorial agreements to exchange commercially sensitive information and coordinate prices and supply for rental units owned or operated by Lessor Defendants[7] in multifamily apartment buildings ("Multifamily Residences") or student housing accommodations ("Student Housing") in major urban areas across the country.[8]

Watters Plaintiffs are renters who leased a Multifamily Residence from at least one Lessor Defendant (the collective, with other multifamily plaintiffs, the "Multifamily Plaintiffs" or "Plaintiffs"). Plaintiffs allege that Lessor Defendants agreed to use a common third party—Defendant RealPage and its "AI Revenue Management" software—to exchange commercially sensitive information and coordinate their unit-specific rental prices and supply decisions.[9]

---

[7]    "Defendants" refers collectively to the named defendant entities in the complaints that have so far been consolidated in this MDL. "Lessor Defendants" consist of both owner-operators of multifamily residences and management companies.

[8]    The properties at issue in these suits are located primarily in large metropolitan areas across the country where there is a need and demand for multifamily apartment buildings and student housing that would be considered separate geographic markets for antitrust purposes. At last count, named Plaintiffs are drawn from at least 41 different cities across 15 states and the District of Columbia. The universe of Plaintiffs and their dispersion across cities in U.S. has continued to expand even after proceedings were centralized in this MDL.

[9]    Watters Plaintiffs also allege that Lessor Defendants took steps outside of the RealPage software suite in furtherance of their conspiracy. *See, e.g.*, Complaint, *Vincin, et al., v. RealPage et al.*, No. 1:22-cv-1329 ("*Vincin*"), ECF No. 1 at 37 (W.D. Tex. Dec. 19, 2022); Complaint, *Carter v. RealPage, Inc., et al.*, No. 1:22-cv-01332, ECF No. 1 at 36 (W.D. Tex. Dec. 19, 2022); *Goldman* Complaint, ¶¶150-56.

Plaintiffs also allege that RealPage enforced Lessor Defendants' compliance with the agreed pricing and supply decisions by disciplining those who deviated from those decisions. Knowing that their competitors had also outsourced their rental price and supply decisions to RealPage, Lessor Defendants allowed a larger share of their rental units to remain vacant while maintaining higher rental prices across their properties. Plaintiffs were left with nowhere to turn and forced to accept dramatic and anticompetitive rent increases.

### B. The Watters Plaintiffs

In total, the Watters Plaintiffs' Counsel represent 25 plaintiffs in 20 putative class actions, drawn from ten states, eighteen cities and towns, and the District of Columbia (the "Watters Cases"). *See* Annex A. Scott & RK filed the first case in Tennessee on December 30, 2022. *Watters v. RealPage, Inc.*, No. 3:22-cv-01082 (M.D. Tenn. Dec. 30, 2022). Watters Plaintiffs filed additional cases in U.S. District Courts in Arizona, California, Colorado, the District of Columbia, Florida, Tennessee, Texas, Virginia, and Washington.[10]

## III. LEGAL STANDARD

On April 19, this Court ordered that applications to lead this MDL address the following criteria: "(1) demonstrated ability to work cooperatively, professionally, and respectfully with others; (2) professional experience in this type of litigation; (3) willingness and ability to commit to a time-consuming process; and (4) access to sufficient resources to advance the litigation in a timely manner." April 19 Order, ¶6; *accord* Rule 23(g)(1)(A) (district courts are to consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims

---

[10] *See* Scott Decl. ¶9 n.2. Scott & RK filed the first of their cases on December 14, 2022, asserting claims on behalf of a putative class of renters in Denver, Colorado. *Weaver v. RealPage, Inc.*, No. 1:22-cv-03224 (D. Colo. Dec. 14, 2022).

asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."). Scott & RK, Attorney Herzfeld, and proposed PSC members KTT, Lowey, CCMS, KT, and JSLF, satisfy the requisite factors set forth by both the Court and Federal Rules.

## IV. THE COURT SHOULD APPOINT SCOTT & RK AS INTERIM CO-LEADS

Watters Plaintiffs respectfully ask the Court to appoint Scott & RK as Interim Co-Leads to manage the litigation on behalf of all Multifamily Plaintiffs. As detailed below and in the accompanying declarations, Scott & RK are nationally recognized firms with decades of experience in complex litigation, particularly in antitrust cases.

Watters Plaintiffs respectfully suggest that this Court appoint separate leadership for the Student Housing Plaintiffs' claims. The Student Housing markets are distinct from the Multifamily Residence markets, with the result that both Students and Multifamily Plaintiffs' interests will be better served by separate counsel who will coordinate closely to ensure the efficient pursuit of their sperate claims.[11] Should the Court disagree, and wish to appoint just one leadership group, Scott & RK request that they be appointed Interim Co-Leads over both Plaintiff

---

[11]     Scott & RK understand that Hagens Berman Sobol Shapiro LLP ("Hagens Berman") will seek appointment to act as Interim Lead Counsel of the Student Housing claims only. Should the Court agree with Scott & RK's proposal to appoint separate counsel for the Multifamily and Student Housing claims, these two groups of firms will be able to work together to efficiently coordinate the actions, consistent with their strong history of working cooperatively. Indeed, either Scott+Scott or RK are current co-lead counsel with Hagens Berman on a variety of class action and antitrust cases (*e.g.*, *S.R.J.F., Inc. v. Dairy Farmers of America, Inc.* No. 2:22-cv-00147-cr (D. Vt.) (acting for dairy farmers) and *Crawford et al., v. FCA US LLC*, No.: 2:20-cv-12341-SJM-DRG (E.D. Mich.) (acting for Dodge Ram purchasers)), and are already working cooperatively in a similar cross-class capacity in *In re Cattle and Beef Antitrust Litigation*, No. 22-md-3031 (D. Minn.) ("Cattle and Beef MDL"), where Scott & RK represent the Cattle Producer Class and Hagens Berman represents the Beef Consumer Class, and in *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-08570-JD (N.D. Cal.), where they respectively represent the Advertiser and User classes, respectively.

groups. Scott & RK have been engaged by tenants of student housing that have yet to file claims and are familiar with both the Student Housing markets and the RealPage software used by Lessor Defendants operating in those markets.

### A. Scott & RK Have Long Demonstrated Their Ability to Work Cooperatively, Professionally, and Respectfully with Others

As to the first factor identified in the April 19 Order, Scott & RK have worked diligently and cooperatively since filing their initial complaint to ensure that all Plaintiffs' claims could move expeditiously once the JPML selected a transferee Court. Scott & RK, alongside JSLF and KTT, advocated before the JPML for transfer to the Middle District of Tennessee—where they were the only plaintiffs on file at the time—because they recognized that this Court was well suited to handle the case and was conveniently located for all parties.[12] They coordinated with both Plaintiff and Defendants' counsel prior to the JPML hearing and decision. After transfer to this Court, they coordinated with all counsel to submit proposed orders and respond to this Court's requests for submissions in advance of the May 31, 2023, status conference (ECF No. 3). For example, Scott & RK have:

- **_Advanced Discovery:_** by: (a) sending document hold letters to each of the named Defendants and to 51 third parties with relevant evidence; (b) initiating FOIA requests to relevant federal agencies; (c) sending requests under equivalent state statutes to 23 relevant state and local government entities in each region; and (d) preparing and circulating to the other Plaintiffs drafts of a proposed Protective Order and ESI Protocol on May 11, 2023 to govern this litigation.[13] RK Decl. ¶25; Scott Decl. ¶22.

- **_Organized Court Filings_**: upon receiving the JPML's order, Scott & RK immediately circulated a proposed Case Management Order to all parties addressing many of the items

---

[12]     *In re: RealPage Inc. Rental Software Antitrust Litigation* (No. II), MDL No. 3071, ECF No. 156, at 8 n.10 and ECF No. 194. Dimond Kaplan & Rothstein, P.A., who support Watters Plaintiffs' leadership application, also advocated for the transfer of these actions to this Court at the JPML. *See id.*, ECF No. 197. Scott & RK also advocated for the centrally-located District of Colorado.

[13]     Despite meeting with the other Plaintiffs' counsel regarding these drafts on May 12, 2023, Watters Plaintiffs have yet to receive any comments.

later contained in the Court's April 19 Order setting the Initial Status Conference. Scott Decl. ¶21; RK Decl. ¶25. Scott & RK then took the lead to prepare the initial draft of the Joint Statement on Case Progression and Scheduling requested by the Court's April 19 Order, and liaised with the parties to prepare a proposed agenda and appearance list for the Status Conference.

- ***Coordinated Mediator Selection***: on June 2, 2023, Scott & RK circulated a proposed list of mediators to the other Plaintiffs and began discussing which mediations might be proposed to the Court on July 25, 2023. Watters Plaintiffs' list includes mediators drawn from Defendants' proposal. ECF No. 37, p. 8. Scott & RK are committed to pursuing a mediation track that proceeds alongside the litigation track, and welcome having the case mediator appear at the parties' status conferences before Your Honor to provide periodic updates.

These collaborative efforts to advance the litigation while the JPML and leadership motions remain pending show Scott & RK's commitment to work cooperatively, professionally, and respectfully with others on behalf of all Plaintiffs and alongside Defendants' counsel. Moreover, it is reflective of their prior practice.

Their recent work in the ongoing Cattle and Beef MDL serves as a prime example of this cooperation. There, Scott+Scott is serving as co-lead counsel for the Cattle Producer and Exchange Classes alongside proposed PSC member CCMS, with Robins Kaplan serving as Lead Liaison Counsel. Scott Decl. ¶24; RK Decl. ¶28. Scott+Scott, Robins Kaplan, and CCMS have taken the lead in coordinating across all the various plaintiffs' groups—consisting of five separately represented classes[14] and over 40 opt-out plaintiffs—and with defendants. Magistrate Judge Bowbeer praised these efforts and the "general excellence" with which matters have been cooperatively handled:

> You have been just remarkable in your civility toward each other and your—and your dealings not only with me but also with my staff . . . . And so I don't think it would be improper for me to say that when I talk to the other judges or when I am out visiting with people in other districts, I brag on you and let them know how—

---

[14]     The other classes are represented by many of the same firms who act on behalf of other Plaintiffs in this MDL, including Hagens Berman, Lockridge Grindal Nauen PLLP, Hausfeld LLP, and Cotchett, Pitre & McCarthy, LLP.

just what a pleasure and a privilege it has been to work with you and to watch how you not only zealously represent your own clients but how you work with each other to make this case make sense going forward. It really embodies the spirit of Rule 1.[15]

Scott & RK will bring that same approach to this MDL.

### B. Scott & RK Have the Experience, Lawyers, and Resources This Case Demands

Scott & RK also squarely meet factors (2) "professional experience in this type of litigation . . ." and (4) "access to sufficient resources to advance the litigation in a timely manner" set forth in the April 19 Order.

As detailed more fully in the attached declarations, Scott & RK have proven track records of taking on, funding, and winning large, high-stakes antitrust class actions. Scott Decl. ¶¶23-24; RK Decl. ¶¶13-15. Over the past decade, Scott & RK have collectively recovered billions of dollars on behalf of plaintiffs in antitrust actions, including some of the nation's largest and most complex class actions such as: *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-cv-7789 (LGS) (S.D.N.Y) ("*FX*") ($2.3 bn); *In re Payment Card Interchange Fee and Merchant Discount Litigation*, No. 05-md-1720 (E.D.N.Y.) ("*Interchange Fees*") ($5.6 bn); *In re GSE Bonds Antitrust Litig.*, No. 19-cv-01704 (S.D.N.Y.) ("*GSE Bonds*") ($386 m); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-07126 (S.D.N.Y.) ("*ISDAfix*") ($504.5 m); *Dahl v. Bain Cap. Partners, LLC*, No. 07-cv-12388 (D. Mass.) ("*Private Equity*") ($590.5m); *In re Air Cargo Shipping Services Antitrust Litigation,* No. 06-md-01775 (E.D.N.Y.) ($1.2 bn); and *In re Automotive Parts Antitrust Litigation*, 2:12-md-02311 (E.D. Mich.) ($1.2 bn for End-Payor Plaintiffs). Scott Decl. ¶9; RK Decl. ¶¶13-15. These results were achieved because Scott & RK's attorneys are some of the most experienced, dedicated, and effective antitrust lawyers in the

---

[15]     Cattle and Beef MDL, June 17, 2022 Hr'g Tr. at 41:20-42:13.

plaintiffs' bar. Scott Decl. ¶31 (2021 Antitrust Annual Report recognized Scott+Scott as the overall leader in average settlement class recovery obtained in the last 10 years, with the largest average settlement dollar amount per settlement of $84,825,543); RK Decl. ¶¶7-8 & Ex. 1 at 8-9 (described in Chambers USA as "simply amazing; they are forward-thinking, creative and very effective," "top shelf," and "well organized, thorough and whip smart.").

Scott & RK, and each firm in their proposed leadership slate, will self-fund this litigation (as they have in many other similar cases) and bring to bear a deep roster of experienced lawyers to pursue the antitrust claims of the Multifamily Plaintiffs. Scott Decl. ¶¶25-26; RK Decl. ¶¶9, 27 & Ex. 1 at 11. Scott & RK can also leverage their experience in other legal areas such as tech, data and software litigation, and housing law.[16] Scott Decl. ¶¶27-30; RK Decl. ¶¶10-12 & Exs. 2 & 3. The specific lawyers from Scott & RK proposed to lead their efforts in this case are set out in the accompanying declarations. Scott Decl. ¶25; RK Decl. ¶9 & Ex. 1 at 11.

Scott & RK's extensive in-house litigation capacities—including in-house investigators, economists, data scientists, IT specialists, eDiscovery groups, and document hosting capacity—allow them to efficiently obtain, manage, and analyze the high volume of documents and data necessary to advance Plaintiffs' claims without incurring expensive vendor costs. Scott Decl. ¶34; RK Decl. ¶12 & Ex. 2. In sum, Scott & RK have the expertise, talent, and resources to represent the Multifamily Plaintiff classes.

### C. Scott & RK Have Committed to this Litigation Since Inception and Will See It Through to Resolution

Finally, Scott & RK have shown and will continue to show a willingness and an ability to commit the time and energy required to prosecute this MDL. They will deploy their firms'

---

[16]     Indeed, attorneys from Scott & RK have a long history of pro bono work for tenants in housing disputes. Scott Decl. ¶13; Robins Decl. ¶11.

resources to effectively litigate this case to resolution. Scott & RK's actions to date demonstrate this commitment.

1. **Scott & RK Filed a Superior Pleading After Investigating U.S. Rental Markets for Over a Year**

The work Scott & RK did prior to filing their first complaint can be seen in its robust allegations. Although Scott & RK did not file the first complaint, Scott & RK undertook thorough economic analysis and research (including review of scholarly articles, industry reports, governmental reports, and other publicly available data) to prepare and file high-quality, fact-intensive complaints owing to their extensive prior investigations into different U.S. rental markets and algorithmic pricing that predated ProPublica's October 2022 exposé. Scott Decl. ¶¶11-13; RK Decl. ¶¶19-21. Reflecting this prior work, the Scott & RK initial complaints were the first to contain independent economic analysis, to grapple with the regional differences in the U.S. multifamily rental market, and to include a host of unique factual allegations. *See, e.g.*, *Vincin* Complaint, ¶¶22-27 (economic analysis of rent and vacancy data in Austin, Dallas, and Houston); and *id.*, ¶¶66-68 (alleging independent Section 1 claim based on Defendants' collusive price setting via the Texas Apartment Association standard form lease).

2. **Scott & RK Are Best Placed to File and Litigate a Consolidated Amended Complaint on Behalf of the Multifamily Plaintiffs**

Since filing their first complaint, Watters Plaintiffs have continued to investigate Plaintiffs' claims while simultaneously working with the other parties to organize this MDL. As groundwork for the CAC due June 16, 2023, Watters Plaintiffs' most recent complaint, *Goldman*, filed by Scott & RK, Attorney Herzfeld, and the PSC firms, adds detailed new factual allegations to ensure Plaintiffs can withstand Defendants' expected motion to dismiss, including:

- ***Nine New Witnesses with Direct Evidence***: fact allegations attributable to five former RealPage employees and four former employees of Lessor Defendants identified by Scott & RK with first-hand knowledge of Defendants' conspiracy, RealPage operations, and the

impact these had on property managers' price and supply decisions.[17]  *See generally Goldman* Complaint.

- ***Direct Evidence from RealPage's Own Training Guide***: excerpts of RealPage's own documentation, provided to property managers, demonstrating the operation and impact of RealPage software on Multifamily Plaintiffs, and highlighting that Lessor Defendants were encouraged to extend their collusion through real world contacts.  *Goldman* Complaint, ¶¶21, 88-93; *see* Figures 3, 5 and 6.

- ***Further Economic Analysis***: including: (i) economic analysis demonstrating the impact on Plaintiffs and the class of Defendants' conspiracy (*Goldman* Complaint, ¶¶10, 17, 142-46); (ii) economic analysis, including the only regression analysis in any complaint filed to date, demonstrating that the increase in multifamily rental housing prices near the start of the Class Period cannot be explained by common supply and demand drivers (*id.*, ¶¶146-57); and (iii) facts drawn from the investigation of James M. Nelson, author and "the man behind the RealPage Lawsuit"[18] (*see* immediately below).  *E.g.*, *id.*, ¶20.[19]

In addition to their own investigative work, Watters Plaintiffs have continued to work extensively with various renowned economic experts and consultants to develop their clients' cases and prepare to meet the strenuous defense Defendants will surely mount.  Watters Plaintiffs have engaged:

- ***Dr. Russell Lamb***: an expert in antitrust economics and applied econometrics, with over 25 years' experience as an economic consultant.  This Court recently analyzed Dr. Lamb's work, and found it favorable.  *Hosp. Auth. Of Metro. Gov't of Nashville & Davidson Cnty., Tennessee v. Momenta Pharms., Inc.*, 333 F.R.D. 390, 412 (M.D. Tenn. 2019) (denying Defendants' *Daubert* motion, finding that Dr. Lamb's report "demonstrate[d] antitrust impact," the Rule 23(b)(3) predominance requirement, and holding that "the Court finds Dr. Lamb credible and [defendants' expert] not credible").

- ***An Associate Professor of Finance and Real Estate***: from Villanova School of Business who previously worked at the Securities and Exchange Commission and specializes in real estate, to act as a consulting expert.

- ***James M. Nelson***: beginning in 2018, Mr. Nelson conducted an economic four-part study into the housing crisis and the consequences of artificial intelligence-driven technology,

---

[17]  Scott & RK's internal investigators have untaken a thorough witness investigation, contacting dozens of potential witnesses.  Scott Decl. ¶16.

[18]  Franco Faraudo, *The Man Behind the RealPage Lawsuit*, PROPMODO (Jan. 19, 2023), https://www.propmodo.com/the-man-behind-the-realpage-lawsuit/.

[19]  Watters Plaintiffs intend to include additional analysis of the impact of RealPage in other cities in the CAC.

including RealPage's pricing software on rental housing prices. Mr. Nelson provided certain of his unpublished findings to ProPublica, which were synthesized in Heather Vogell's October 15, 2022 investigative report titled "Rent Going Up? One Company's Algorithm Could Be Why," thereby prompting the current MDL and sparking investigations led by two groups of U.S. Senators and the DOJ.[20] *See Goldman* Complaint, ¶22.

Watters Plaintiffs have considered how to address the obstacles to the efficient prosecution of Multifamily Plaintiffs' claims presented by the unique characteristics of the U.S. multifamily rental market. Watters Plaintiffs recognize that this case presents both (1) issues that can be resolved on a nationwide basis, including the operation of RealPage's software suite, and whether Defendants' use of the RealPage software suite constitutes an "agreement" under Section 1 of the Sherman Act, and (2) issues that may need to be addressed on a local or regional basis, such as the impact of Defendants' conduct on rental prices.

To hold all Defendants fully accountable through the CAC but permit the efficient progression of the MDL, Scott & RK intend to pursue a nationwide damages class, and examine how and when the conduct affected varying regional geographic multifamily rental markets. This strategy will protect Multifamily Plaintiffs against Defendants' arguments that: (a) the rule of reason or quick look rules applies to Plaintiffs' claims, rather than the *per se* rule;[21] and (b) the

---

[20]    Letter from Elizabeth Warren, U.S. Senate, to the DOJ (March 2, 2023) (https://www.warren.senate.gov/imo/media/doc/2023.03.02%20Letter%20to%20DOJ%20re%20 YieldStar%20(RealPage).pdf).

[21]    *See* ECF No. 187, p. 5 (noting parties' dispute as to the application of the *per se* rule, and the extent of the relevant product market). If the Court agreed with Defendants that the rule of reason or quick look rules applies here, Plaintiffs' CAC would be dismissed unless they have properly alleged the relevant product and geographic markets in which Defendants' alleged infringement occurred. *See Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008) (following *Brown Shoe Co. v. United States*, 370 U.S. 294, 324 (1962) and affirming dismissal for failure to adequately plead relevant product and geographic markets for Section 1 claim); *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, No. 3:09-CV-0487, 2014 WL 4347589, at **7-9 (M.D. Tenn. Sept. 2, 2014) (finding a presumption "in favor of a rule-of-reason standard" and requiring Plaintiffs to show sufficient facts in support of their alleged geographic and product markets to survive summary judgment).

13

evidence will not support the calculation of damages on a nationwide basis.[22] While Watters Plaintiffs believe the case should be assessed as a *per se* infringement and hope to develop a nation-wide damages model, pleading Multifamily Plaintiffs' claims in the alternative will ensure no time is lost amending the complaint, nor any of the class members' claims prejudiced, should the Court ultimately agree with Defendants' positions or discovery does not develop as Plaintiffs expect.

Following the Court's suggestion at the May 31 conference, to manage the sheer number of Defendants, on June 2, 2023, Watters Plaintiffs offered to enter a tolling agreement with those Defendants named in four or fewer complaints if appointed to leadership. Watters Plaintiffs proposed dropping from the CAC those Defendants who agreed to toll Multifamily Plaintiffs' claims to facilitate a separate mediation track to proceed alongside the prosecution of the action against the key Defendants. Watters Plaintiffs continue to review the evidence against other smaller Defendants and expect to make additional tolling proposals prior to filing the CAC, should their leadership application be granted.

---

[22]    Consistent with Defendants' statements at the May 31, 2023 Status Conference, even if the alleged agreement is held to constitute a *per se* infringement of the Sherman Act, we expect Defendants to dispute that damages can be calculated on a nation-wide basis due to regional differences in the U.S. multifamily rental market. *See, e.g.*, *In re Cox Enterprises, Inc. Set-Top Cable Television Box Antitrust Litig.*, No. 09-ML-2048-C, 2011 WL 6826813, at *12 (W.D. Okla. Dec. 28, 2011) (denying class certification of proposed nationwide class, holding that "Plaintiffs ask the Court to ignore the economic reality that Cox customers face different options depending on where they live and that most customers will not relocate their homes in order to change their options for [cable] services . . . Cox's national conduct regarding set-top boxes does not convert a local geographic market into a national one, and the determination of Cox's market power should not be divorced from the appropriate geographic market."); *DeSlandes v. McDonald's USA, LLC*, No. 17 C 4857, 2021 WL 3187668, at *14 (N.D. Ill. July 28, 2021) (denying class certification for the proposed nation-wide class of McDonalds' employee and criticizing Plaintiffs' failure to pursue the claim as a rule of reason case across multiple "local class[es]"); *In re Pharmacy Benefit Managers Antitrust Litig.*, No. CV 03-4730, 2017 WL 275398, at *1 (E.D. Pa. Jan. 18, 2017) (citing *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 341-42 (1990) ("factors unique to each local market . . . must be considered in a discussion of antitrust impact . . . Even when pursuing a *per se* violation of the antitrust laws plaintiffs must establish that they suffered an antitrust impact.").

This extensive pre-complaint investigative work, continuing work to develop a fulsome CAC, and efforts to shape the litigation to ensure its efficient prosecution clearly demonstrate Scott & RK's willingness and ability to strategically direct this very important but resource-intensive litigation. Thus, it is "simply not meaningful" that Scott & RK did not rush to file the first complaint following the *Pro-Publica* exposé which formed the basis of every Plaintiffs' initial complaint. *In re Scrap Metal Antitrust Litig.*, No. 02-cv-0844, 2002 WL 31988203, at *1 (N.D. Ohio 2002) ("[C]onsideration of the 'first to file' status when making lead counsel determinations has been rejected by many courts . . . "). No one firm can claim to have originated the present MDL.[23]

### D. Watters Plaintiffs Have Proposed the Best Leadership Structure for the Needs of This Particular Case and Will Implement Cost Control Measures to Ensure Efficiency.

As outlined in more detail in Section VI below, Watters Plaintiffs have carefully considered the best approach to structuring Plaintiffs' counsels' responsibilities and the need to be vigilant in ensuring the efficient and economical prosecution of these claims. To that end, Watters Plaintiffs' application includes a Proposed Protocol and Procedures for Common Benefit Work and Expenses that they would file with the Court if appointed. RK Decl. at ¶25 & Ex. 4 (enclosing draft protocol). The protocol addresses the duties of Interim Co-Lead and Liaison Counsel, PSC counsel, and committee appointments; the requirements for the litigation fund to cover expenses and costs in the case; the exercise of billing judgment; the maintenance of contemporaneous, detailed time records; the monthly reporting of fees, expenses, and costs; staffing parameters; and

---

[23]     As all firms piggy-backed off the work of Mr. Nelson, as summarized in the *Pro Publica* reporting, there is no applicant who can meaningfully claim to have independently developed the present case. The present circumstances are thus distinct from situations where one plaintiff counsel's proprietary investigation led to all subsequent filings.

guidelines for attendance at Court hearings. Should the Court approve the proposed protocol, Watters Plaintiffs will implement and oversee it to control costs, manage workflow, and ensure that the case is run efficiently.

## V. THE COURT SHOULD APPOINT ATTORNEY HERZFELD OF HSGLAW AS PLAINTIFFS' LIAISON COUNSEL FOR THE MULTIFAMILY PLAINTIFFS

To ensure Multifamily Plaintiffs meet and exceed the standards imposed by this District's Local Rules and practices, and the efficient and orderly communication with the Court, Defendants, and among the Multifamily and Student Plaintiffs, Watters Plaintiffs propose that the Court appoint Tricia Herzfeld of "HSGLaW" as Plaintiffs' Liaison Counsel. As detailed in Attorney Herzfeld's attached declaration ("Herzfeld Decl."), HSGLaW, and Tricia Herzfeld in particular, have sterling credentials, prior experience with this Court and the Parties' local counsel, and have worked as counsel for Plaintiffs Goldman, Watters, and Precht and the putative classes of Multifamily Plaintiffs in Nashville and Boston. Herzfeld Decl. ¶2. Moreover, Attorney Herzfeld has served this Court with distinction, serving on the Local Rules Committee, accepting appointments to represent *pro se* litigants and acting pro bono for others for over a decade, and serving on (or coordinating) panels with judges from this District. *Id.*, ¶¶8, 12-15. Her commitment to professionalism and collegiality has allowed her to develop strong relationships with many of the defense attorneys who have appeared in this action, many of whom have referred her clients after litigating against her. *Id.*, ¶8. She has excellent organizational and managerial skills, as demonstrated by her success in the opioids litigation. *Id.*, ¶¶20-21.

In addition to the duties and responsibilities set forth in the Annotated Manual for Complex Litigation 4th ("MCL 4th"), § 40.22 (2023), Watters Plaintiffs request the Court delegate the following responsibilities to Plaintiffs' Liaison Counsel:

- Be the main point of contact between Plaintiffs and Defendants for purposes of scheduling meet-and-confer meetings, depositions, and other meetings;

16

- Be the main point of contact between Plaintiffs and the Court for all administrative purposes, including scheduling hearings, conferences, and arguments;
- Attend all meetings of the PSC and prepare and maintain meeting minutes from those meetings, as necessary; and
- Assist the Interim Co-Leads and the PSC to prosecute the action.

Attorney Herzfeld and HSGLaW are clearly qualified to fulfill these roles, *see* Herzfeld Decl. ¶¶4-25, and should be appointed Plaintiffs' Liaison Counsel.

## VI. THE COURT SHOULD ESTABLISH WATTERS PLAINTIFFS' PROPOSED PLAINTIFFS' STEERING COMMITTEE

Given the scope and complexity of this case, as well as the interests presented by representing Plaintiffs and Class Members drawn from different rental housing markets (*see* § VI (1) below), Watters Plaintiffs propose that the Court appoint a five-member PSC, chaired by Interim Co-Leads, to assist in prosecuting this case. As recognized by MCL 4th, §§ 10.221 and 40.22, a steering committee is the most common solution in cases such as these. *See, e.g.*, *In re: Aredia and Zometa Products Liability Litigation* (MDL No. 1760), No. 3:06-MD-1760 (M.D. Tenn. July 21, 2006), ECF No. 87 (appointing six-member Steering Committee to represent plaintiffs' interests in the MDL); *see also In re Bendectin Litig.*, 857 F.2d 290, 295 (6th Cir. 1988) ("In complex cases, it is well established that the district judge may create a Plaintiffs' Lead Counsel Committee.").

Specifically, Watters Plaintiffs respectfully request this Court appoint the following firms to the PSC, according to five equally populated geographic regions which align with the regions used by the U.S. Census: [24]

- **South-East (FL, GA, SC, NC, VA, TN, KY, WV, VA, PR):** Kozyak Tropin & Throckmorton LLP, who has offices in Florida;

---

[24]     The five regions each contain between 63.5 and 73 million individuals as of the 2020 Census, and between 21.6 and 25.9 million renters.

- **North-East (PA, NJ, NY, CT, RI, MA, VT, NH, ME, DC, DE, MD):** Lowey Dannenberg, P.C., who has offices in New York and Pennsylvania;

- **Mid-West (OH, MI, IN, IL, WI, MN, IA, MO, KS, NE, SD, ND):** Cafferty Clobes Meriwether & Sprengel LLP, who has offices in Illinois and Pennsylvania;

- **South-West (TX, OK, AR, LA, MS, AL, AZ, CO, and NM):** Korein Tillery P.C., who has offices in Missouri and Southern California; and

- **West (CA, NV, UT, WY, ID, MT, OR, WA, HI):** Joseph Saveri Law Firm, LLP, who has offices in Northern California.

Each PSC member is located in or in close proximity to the regions of their appointment. The PSC representative for a given region will be responsible for pursuing region-specific discovery and for collaborating with Interim Co-Leads and other members of the PSC on common discovery issues. In addition, Watters Plaintiffs propose that PSC members be given responsibilities, including co-chairing with Interim Co-Leads any working committees of the PSC[25] and assisting Interim Co-Leads and Liaison Counsel, as needed, in the coordination of the Multifamily Plaintiffs' pretrial activities and trial planning. MCL 4th, § 40.22.

The Supreme Court has emphasized that "structural assurance[s] of fair and adequate representation" are required in the class context to protect the "diverse groups and individuals affected." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 627 (1997); *see also Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 856 (1999) (same); *accord* MCL 4th, §10.224. As noted above, because rental housing markets are local, rather than national, these cases may need to be proven across several non-overlapping regional rental markets should the Court agree with Defendants' contention that *per se* treatment under the Sherman Act is not warranted. Additionally, proving liability and damages will require region-specific discovery and expert evidence, especially considering not all

---

[25] Interim Counsel anticipate setting up working committees to address: (a) discovery, (b) class certification; (c) experts; (d) liability; (e) damages; and (f) trial, to ensure that PSC work is coordinated efficiently across the nation.

Defendants operate nationwide and many Defendants may seek to advance their own unique defenses. Finally, the existence of separate state-law claims further requires counsel with independent regional authority.[26]

Watters Plaintiffs' proposed PSC provides assurances that the interests of class members spanning the country are adequately protected while at the same time ensuring the efficient litigation of all Plaintiffs' claims by coordinating common discovery, evidence, and pleadings at a national level. Each of the five members of the PSC has the resources and experience necessary to assist Interim Co-Leads and pursue the region-specific discovery for which they would be responsible. The qualifications of each proposed PSC member—and their satisfaction of the four factors outlined in the Court's April 19 Order—are detailed in the accompanying declarations and summarized below. *See* Declarations of Benjamin Widlanski, Christian Levis, Jennifer Sprengel, Christopher Buke, and Joseph Saveri in support of Watters Plaintiffs Leadership Application and the appointments of KTT, Lowey, CCMS, KT, and JSLF to the PSC, respectively, filed herewith (the "Widlanski," "Levis," "Sprengel," "Burke," and "Saveri Decl.," respectively).

### A. KTT Should Be Appointed PSC Member for the South-East

KTT has the requisite expertise, commitment, and resources to serve on the Plaintiffs' Steering Committee. KTT has decades of experience working with co-counsel on class actions, multi-district litigation, and antitrust matters. Indeed, after conferring with Scott+Scott, Robins Kaplan, and JSLF regarding the consolidation of the cases, it was agreed that KTT partner Ben Widlanski would argue on behalf of the Middle District of Tennessee venue at the JPML hearing.

---

[26]    As noted above, Watters Plaintiffs in *Vincin* assert various Texas state law claims and allege that Defendants utilized Texas-specific trade associations to further their conspiracy in Texas. As further example, Watters Plaintiffs Jeffrey Weaver, Tiffany Mackie, and Jeremy Enders—who are all renters in Colorado—allege violations of Section 104 of the Colorado Antitrust Act of 1992 and plead Colorado common law unjust enrichment.

Mr. Widlanski prevailed. As a result of this and other case work, KTT has strong relationships with Scott+Scott and Robins Kaplan and proposed liaison counsel Herzfeld Suetholz and expects to have a strong trial team to litigate this matter efficiently and effectively.

KTT has demonstrated its willingness to commit experienced attorneys and the resources necessary to litigate these matters, has been appointed to leadership roles in cases around the country, and has renowned ability to work collaboratively with co-counsel. KTT's credentials are perhaps best represented by the Firm's recent court appointment as Co-Lead Counsel in *In re: Champlain Towers South Collapse Litig.*, No. 2021-015089-CA-01 (Fla. Cir. Ct.). In this leadership role, KTT was tasked with the supervision of nearly every prominent plaintiff's firm in South Florida, and many others from around the country, to manage the litigation stemming from the tragic Champlain Towers collapse in Surfside, Florida. In less than 15 months, the KTT-led plaintiffs—including a team of five KTT partners with support from multiple associates and paralegals—secured over $1.1 billion in settlement relief for the victims. If appointed to the Plaintiffs' Steering Committee, KTT will bring this same level of dedication and collaboration to ensure a cooperative and efficient litigation of this matter.

Finally, as explained in Mr. Widlanski's declaration attached hereto, KTT has also been committed to diversity since the firm's founding. This underscores KTT's commitment to work respectfully with others and its commitment to professionalism and civility.

### B.     Lowey Should Be Appointed PSC Member for the North-East

Lowey has consistently demonstrated excellence in complex, multi-defendant antitrust class actions, recovering more than $1.5 billion dollars on behalf of antitrust class plaintiffs in the last eight years alone. Recently, several Lowey attorneys—including Christian Levis, who leads the Lowey team here—and their co-counsel at Scott+Scott received the American Antitrust Institute's award for outstanding achievement in private antitrust enforcement for the results they

achieved in *GSE Bonds* where they recovered $386 million for the class in addition to meaningful compliance reforms at 16 financial institutions. The Court praised the "high quality" of Lowey and Scott+Scott's work and their ability to "obtain[] valuable recompense and forward-looking protections" for the class. *GSE Bonds*, No. 19-CV-1704 (JSR), 2020 WL 3250593, at *4 (S.D.N.Y. June 16, 2020).

Lowey has achieved similarly outstanding results in other multi-defendant antitrust cases like this MDL, where it serves as lead or co-lead counsel. For example:

- *Fund Liquidation Holdings LLC v. Citibank N.A.*, No. 16-cv-5263 (S.D.N.Y.) (Hellerstein, J.): Lowey recovered more than $155 million for investors in derivatives priced based on two Singapore dollar benchmark rates, after successfully appealing the district court's decision to dismiss the case.

- *Sullivan, et al. v. Barclays plc, et al.*, No. 13-cv-2811 (S.D.N.Y.) (Castel, J.): Lowey has recovered a total of $546.5 million for investors in financial instruments priced based on the Euro Interbank Offered Rate from some of the largest financial institutions in the world. The case is still ongoing against four remaining defendants.

- *Laydon v. Mizuho Bank, Ltd. et al.*, 12-cv-03419 (S.D.N.Y.) (Daniels, J.) and *Sonterra Capital Master Fund, Ltd. et al. v. UBS AG et al.*, 15-cv-5844 (Daniels, J.): As lead counsel, Lowey has so far recovered $329.5 million for investors in Euroyen-based derivatives that were priced based on Japanese Yen-denominated LIBOR and Euroyen TIBOR from global financial institutions. Lowey also prevailed on its appeal of the district court's dismissal of the *Sonterra* action.

Lowey's experience in these large multi-defendant antitrust class actions, including the specific experience of the firm working on the case here, demonstrates that they are qualified to serve as a PSC member and handle the Northeast Regional component of this case.

### C. CCMS Should Be Appointed PSC Member for the Mid-West

CCMS is well qualified to serve as a member of the PSC. Its suitability is demonstrated by CCMS's extensive leadership experience in similarly complex matters. In particular, CCMS has litigated, and is litigating, many antitrust and commodities class actions, including *In re Cattle and Beef*, where it serves as co-lead counsel alongside Scott+Scott. Sprengel Decl. ¶¶ 4, 7, 11, 13.

In cases where it has served in leadership positions, CCMS has recovered billions of dollars for class members and obtained important prophylactic relief, including in proprietary and cutting edge areas of the law. *See, e.g.*, *Budicak v. Lansing Trade Group* (D. Kan, No 19-2449) (multimillion dollar settlement to compensate those who transacted in wheat futures and options related to allegations of manipulation by defendant); and *Kamakahi v. American Society for Reproductive Medicine*, No. 3:11-cv-01781 (N.D. Cal.) (achieving groundbreaking settlement that requires the defendants to eliminate compensation caps for women providing donor services for in-vitro fertilization procedures). Sprengel Decl. ¶¶10, 16. The skill and experience of CCMS's attorneys has been recognized repeatedly by the courts CCMS have appeared before. Indeed, CCMS attorneys' work has been praised as providing "the highest professional service to clients." Sprengel Decl. ¶8. If appointed to the PSC, CCMS looks forward to prosecuting this MDL efficiently and effectively.

**D.     KT Should Be Appointed PSC Member for the South-West**

Korein Tillery PC ("KT") are counsel for Plaintiff Mary Bertlshofer in *Bertlshofer v. RealPage Incorporated, et al*, No. 3:23-00377 (M.D. Tenn.), originally filed in the District of Arizona. KT's substantive qualifications, as antitrust and class action lawyers, are set forth at greater length in the Burke Decl. In brief, KT lawyers have served and are serving as lead counsel in numerous large, MDL antitrust class actions and in significant individual matters. In a series of securities cases stemming from the global financial crisis, KT recovered over $5 billion on behalf of the National Credit Union Administration ("NCUA"). *See* Burke Decl at ¶8.

In class cases, when manning the conn, they have delivered for their clients, including, *FX* ($2.3 billion settlement); *GSE Bonds* ($386.5 million settlement); *ISDAfix* ($504.5 million settlement); *Private Equity* ($590.5 million settlement); *In re Currency Conversion Antitrust Litig*., MDL No. 1409 (S.D.N.Y.) ($336 million settlement); *Interchange Fees* ($5.6 billion settlement);

and *Sullivan v. DB Investments, Inc.*, No. 2:04-cv-02819 (D. N.J.) ($323 million settlement). *See* Burke Decl. at ¶4.

Courts have taken notice of KT's devotion to their clients. Recently, in *Senne v. Office of the Comm'r of Baseball*, No. 3:14-cv-00608 (N.D. Cal.), taking notice of Korein Tillery and its co-lead class counsel's achievement of a ground-breaking settlement on behalf of minor league baseball players for $185 million, Judge Spero, in his final settlement approval order, stated that "Class Counsel has handled this case skillfully and with professionalism, diligently pursuing the interests of the players. The significant relief they have obtained under the Settlement Agreement is, in no small part, due to their expertise and dedication." *Id.*, ECF No. 1190 at 12. *See* Burke Decl at ¶11.

Given the size of this matter, in terms of number of defendants, geography, and class size, no single plaintiffs' firm will be able to handle the entire matter. Instead, it is important that firms appointed to leadership roles act collegially and avoid unnecessary motion practice. KT prides itself on professionally, efficiently, and courteously litigating matters, trying them when necessary, and have worked successfully with a number of firms subject to this application. *See* Burke Decl ¶¶20-21.

### E. JSLF Should Be Appointed PSC Member for the West

JSLF seeks appointment to the Plaintiffs' Steering Committee. Plaintiffs represented by JSLF and Kozyak Tropin & Throckmorton LLP, argued at the JPML transfer hearing for the transfer of the MDL to this Court in the first instance and prevailed. (ECF No. 1, p. 1.)

JSLF is one the nation's most successful law firms, specializing in antitrust, class actions, and other complex litigation. Since its inception, JSLF has led many ground-breaking cases, achieving record results for its clients. *See* Saveri Decl. Ex. A. Joseph R. Saveri and Steven N. Williams are widely regarded as among the most experienced and successful antitrust trial lawyers

in the United States. *Id.* They have over 70 years of combined litigation experience and have successfully led and prosecuted numerous antitrust cases from inception through trial, recovering more than $4.5 billion on behalf of their clients. *Id.* The firm has received numerous awards and accolades for its performance. *Id.*

In case after case JSLF has shown it has the expertise, commitment, and resources needed to obtain successful results in complex cases such as this. For example:

- In *In re Capacitors Antitrust Litig.* (N.D. Cal.), JSLF led a team of 18 law firms against 23 defendants across the globe, recovering $604 million in settlements, far exceeding calculated single damages of $427 million, virtually unprecedented in antitrust cases;

- In *In re High-Tech Employee Antitrust Litig.* (N.D. Cal.)*,* JSLF was Co-Lead counsel in a groundbreaking case asserting claims alleging illegal no-poach agreements which resulted in a record $457 million settlement; and

- In *In re Cipro Cases I & II* (San Diego County Sup. Ct.)*,* JSLF obtained a landmark ruling from the California Supreme Court regarding illegal reverse payments, recovering $399 million for the class, a record for a single state case.

JSLF insists that young lawyers handle significant motions, depositions, witness examinations, and trial motions. In so doing, JSLF manifests its commitment to training the next generation of antitrust lawyers and providing real opportunities for lawyers from a variety of diverse backgrounds to develop and grow.

## VII. CONCLUSION

For the reasons set forth above and in the accompanying declarations, Watters Plaintiffs respectfully request that this Court appoint Scott+Scott Attorneys at Law LLP and Robins Kaplan LLP as interim co-lead counsel, Tricia Herzfeld as Plaintiffs' Liaison Counsel, and KTT, Lowey, CCMS, KT, and JSLF to a five-member Plaintiffs' Steering Committee.

Dated: June 6, 2023                      */s/ Tricia R. Herzfeld*
                                         Tricia R. Herzfeld (#26014)
                                         Anthony A. Orlandi (#33988)
                                         **HERZFELD SUETHOLZ GASTEL LENISKI
                                         AND WALL, PLLC**

223 Rosa L. Parks Avenue, Suite 300
Nashville, TN 37203
Telephone: (615) 800-6225
tricia@hsglawgroup.com
tony@hsglawgroup.com

David R. Scott (*pro hac vice*)
Amanda Lawrence (*pro hac vice*)
Patrick J. McGahan (*pro hac vice*)
Michael Srodoski (*pro hac vice*)
G. Dustin Foster (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06145
Telephone: (860) 537-5537
Facsimile:  (860) 537-4432
david.scott@scott-scott.com
alawrence@scott-scott.com
pmcgahan@scott-scott.com
msrodoski@scott-scott.com
gfoster@scott-scott.com

Patrick J. Coughlin (*pro hac vice*)
Carmen A. Medici (*pro hac vice*)
Fatima Brizuela (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 798-5325
Facsimile: (619) 233-0508
pcoughlin@scott-scott.com
cmedici@scott-scott.com
fbrizuela@scott-scott.com

Kristen Anderson (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
kanderson@scott-scott.com

Thomas J. Undlin (*pro hac vice*)
Stacey Slaughter (*pro hac vice*)
Geoffrey H. Kozen (*pro hac vice*)

J. Austin Hurt (*pro hac vice*)
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone:  (612) 349-8500
Facsimile:  (612) 339-4181
tundlin@robinskaplan.com
sslaughter@robinskaplan.com
gkozen@robinskaplan.com
ahurt@robinskaplan.com

Christian P. Levis (*pro hac vice*)
Vincent Briganti (*pro hac vice*)
Peter Demato (*pro hac vice*)
Radhika Gupta (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
pdemato@lowey.com
rgupta@lowey.com

Christopher M. Burke (*pro hac vice*)
cburke@koreintillery.com
Walter W. Noss (*pro hac vice*)
wnoss@koreintillery.com
Yifan (Kate) Lv (*pro hac vice*)
klv@koreintillery.com
**KOREIN TILLERY P.C.**
707 Broadway, Suite 1410
San Diego, CA  92101
Telephone: (619) 625-5621
Fax: (314) 241-3525

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (*pro hac vice* forthcoming)
Steven N. Williams (*pro hac vice* forthcoming)
Cadio Zirpoli (*pro hac vice* forthcoming)
Kevin E. Rayhill (*pro hac vice* forthcoming)
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
Email:

jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
czirpoli@saverilawfirm.com
krayhill@saverilawfirm.com

Benjamin J. Widlanski (*pro hac vice* forthcoming)
bwidlanski@kttlaw.com
Javier A. Lopez (*pro hac vice* forthcoming)
jal@kttlaw.com
**KOZYAK TROPIN & THROCKMORTON LLP**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800

Jennifer W. Sprengel (*pro hac vice* forthcoming)
Daniel O. Herrera (*pro hac vice* forthcoming)
Alexander Sweatman (*pro hac vice* forthcoming)
**CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, IL 60603
Tel:  312-782-4880
Fax: 312-782-4485
jsprengel@caffertyclobes.com
dherrera@caffertyclobes.com
asweatman@caffertyclobes.com

*Watters Plaintiff Counsel*

**Annex A**

**List of Watters Plaintiffs**

The following Plaintiffs support the appointment: (i) Scott+Scott Attorneys at Law LLP ("Scott+Scott") and Robins Kaplan LLP ("Robins Kaplan") as interim co-lead counsel on behalf of the Multifamily Plaintiffs; (ii) Tricia Herzfeld of Herzfeld, Suetholz, Gastel, Leniski, and Wall, PLLC as Multifamily Plaintiffs' Liaison Counsel; and (ii) a five-member Plaintiffs' Steering Committee, consisting of Kozyak Tropin & Throckmorton LLP, Lowey Dannenberg, P.C., Cafferty Clobes Meriwether & Sprengel LLP, Korein Tillery P.C., and Joseph Saveri Law Firm, LLP:

| Plaintiffs | M.D. Tenn. Transferee Case Captions |
| --- | --- |
| Nancy Alexander | *Alexander v. The Irving Company, LLC, et al.*, No. 3:23-cv-00440 |
| Mary Betlshofer | *Bertlshofer v. RealPage, Inc., et al.*, No. 3:23-cv-00377 |
| Hannah Blosser | *Blosser v. RealPage, Inc., et al.*, No. 3:23-cv-00445 |
| Laura Boelens | *Boelens v. RealPage, Inc., et al.*, No. 3:23-cv-00338 |
| Kim Carter | *Carter v. RealPage, Inc., et al.*, No. 3:23-cv-00410 |
| Zachary Miller Corradino; Samantha Taylor Reyes | *Corradino v. RealPage, Inc., et al.*, No. 3:23-cv-00379 |
| Jeremy Enders | *Enders v. Realpage, Inc., et al.*, No. 3:23-cv-00390 |
| Jason Goldman | *Goldman v. RealPage, Inc.*, No. 3:23-cv-00552 |
| Kate Kramer | *Kramer v. RealPage, Inc., et al.*, No. 3:23-cv-00356 |
| Kenny Lai Cheong | *Lai Cheong v. RealPage, Inc., et al.*, No. 3:23-cv-00416 |
| Tiffany Mackie | *Mackie v. RealPage, Inc., et al.*, No. 3:23-cv-00358 |
| Matteo Marchetti | *Marchetti v. RealPage, Inc., et al.*, No. 3:23-cv-00380 |
| Patrick Parker; Pricilla Parker; Barry Amar-Hoover | *Parker v. RealPage, Inc., et al.*, No. 3:23-cv-00378 |
| David Precht | *Precht v. RealPage, Inc., et al.*, No. 3:23-cv-00412 |
| Christopher Saloman; Michael Strauss | *Saloman v. RealPage, Inc., et al.*, No. 3:23-cv-00381 |
| Shelley Schmidig | *Schmidig v. RealPage, Inc., et al.*, No. 3:23-cv-00391 |

| Selena Vincin; Laura Boelens; Anna Rodriguez | *Vincin v. RealPage, Inc., et al.*, No. 3:23-cv-00411 |
|---|---|
| Brandon Watters | *Watters v. RealPage, Inc.,* No. 3:22-cv-01082 |
| Jeffrey Weaver | *Weaver v. RealPage, Inc., et al.*, No. 3:23-cv-00357 |
| Billie Jo White | *White v. RealPage, Inc., et al.*, No. 3:23-cv-00413 |

29

**CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

_/s/ Tricia R. Herzfeld_
Tricia R. Herzfeld