UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-md-3071<br>MDL No. 3071<br><br>Honorable Waverly D. Crenshaw<br><br>Declaration of Tricia R. Herzfeld on Behalf of Herzfeld, Suetholz, Gastel, Leniski & Wall, PLLC in Support of Scott & Robins Leadership Application and for Appointment as Plaintiffs' Liaison Counsel to the Plaintiffs' Steering Committee<br><br>This Document Relates to: ALL CASES |

**DECLARATION OF TRICIA R. HERZFELD ON BEHALF OF HERZFELD, SUETHOLZ, GASTEL, LENISKI & WALL, PLLC IN SUPPORT OF SCOTT & ROBINS LEADERSHIP APPLICATION AND FOR APPOINTMENT AS PLAINTIFFS' LIAISON COUNSEL FOR THE PLAINTIFFS' STEERING COMMITTEE**

I, Tricia R. Herzfeld, pursuant to 28 U.S.C. §1746, declare that the following is true and correct to the best of my knowledge and belief.

1. I am a member in good standing of the bars of Tennessee, West Virginia, and Florida. I am also admitted to the U.S District Courts for the Middle District of Tennessee, the Eastern District of Tennessee, the Western District of Tennessee, the Southern District of West Virginia, the Northern District of Florida, the Southern District of Florida, the Eastern District of Michigan, the U.S. Court of Appeals for the Sixth Circuit, and the U.S. Court of Appeals for the Fifth Circuit.

2. I am the lead named partner at the law firm of Herzfeld, Suetholz, Gastel, Leniski & Wall, PLLC ("HSGLaW"). I serve as counsel for plaintiffs in the following actions that are part of the above-captioned multidistrict litigation (the "MDL"):

a. *Watters v. RealPage, Inc., et al.*, Case No. 3:22-cv-01082 (M.D. Tenn.);

b. *Precht v. RealPage, Inc., et al.*, Case No. 3:23-cv-00412 (M.D. Tenn.); and

c. *Goldman v. RealPage, Inc., et al.*, Case No. 3:23-cv-00552 (M.D. Tenn.).

3. Pursuant to this Court's April 19, 2023 Order (ECF No. 3) and the June 1, 2023 Order (ECF No. 243), I submit this declaration in support of the Watters Plaintiffs' Leadership Application submitted by Scott+Scott Attorneys at Law LLP and Robins Kaplan LLP (the "Scott & Robins Leadership Application"), and to seek my appointment as Plaintiffs' Liaison Counsel as detailed in the Scott & Robins Leadership Application.

4. Attached as **Exhibit A** is a firm resume that outlines the background and qualifications of the attorneys at HSGLaW. As detailed in Exhibit A and below, HSGLaW has offices in the cities of Nashville, Louisville, Cincinnati, and Washington, D.C. As reflected in the firm resume, my partners and I have decades of experience litigating complex matters, including in leadership positions and as class counsel in many complex cases, antitrust cases, and consumer class actions across the country, and in this District. Based on this experience and my understanding of the circumstances of this MDL, my partners at HSGLaW and I support the Scott & Robins Leadership Application, and believe I am well suited to act as Plaintiffs' Liaison Counsel.

5. My firm and I are familiar with the work of Scott+Scott Attorneys at Law LLP ("Scott+Scott") and Robins Kaplan LLP ("Robins"). For example, we have worked with Scott+Scott in class action and complex litigation matters, including (1) in the antitrust matter *In re: Skelaxin (Metaxalone) Antitrust Litig.*, No. 1:12-cv-194 (E.D. Tenn.) ("*In re Skelaxin Antitrust*"); (2) in the antitrust matter *In re: Loestrin 24 FE Antitrust Litig.*, No. 1:13-md-2472-S-PAS (D.R.I.) ("*In re Loestrin Antitrust*"); (3) in the pending securities class action *In re*

*SmileDirectClub, Inc. Securities Litig.*, Lead Case No. 19-1169-IV (Davidson Cnty., Tenn. Chancery Ct.) ("*SmileDirectClub*"), and (4) as part of the national Multi-State Governmental Entities group in national opioids litigation. We also worked alongside Robins in (1) *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Products Liability Litig.*, MDL No. 2672 CRB (N.D. Cal.) ("*In re Volkswagen*"), and (2) *In re Toyota Motor Corp. Unintended Acceleration* MDL, No. 8:10-ML-02151 (C.D. Cal.). Both Robins and Scott+Scott have litigated effectively, efficiently, and professionally. Both firms also have superior qualifications to lead the Multifamily Plaintiffs in this MDL. For these reasons, HSGLaW supports the appointment of Robins and Scott+Scott as Interim Co-Lead Counsel.

6. Below I also provide details in support of my proposed appointment as Liaison Counsel and for the firms seeking appointment to the proposed Plaintiffs' Steering Committee.

**I. I Am Well-Qualified to Serve as Plaintiffs' Liaison Counsel**

7. It would be an honor and privilege to serve as Plaintiffs' Liaison Counsel in this proceeding. As described in more detail below, I have done everything I can to serve this Court with distinction over the years. This includes serving on the Local Rules Committee, accepting appointments to represent *pro se* litigants for over a decade, and serving on (or coordinating) panels with judges from this District. In light of my firsthand experience in updating the rules and applying them in my daily practice, I recognize the importance of strict adherence to the Local Rules, the individual guidelines and practice of each judge, and the Court's orders, as well as the importance of collegiality, coordination, the meet and confer process to resolve (or at least narrow) discovery disputes with minimal court involvement, and good faith efforts at potential settlement. I also maintain good relationships with defense counsel, many of whom have referred me forcases after I litigated against them. I believe that my experience, demonstrated skill set, and manner of practice would be well-suited for the role of liaison counsel.

## II. HSGLaW Has a Demonstrated Ability to Work Cooperatively, Professionally, and Respectfully with Others

8. HSGLaW attorneys have a history of acting cooperatively, professionally, and respectfully with others – even when the stakes have been very high. Our attorneys also have a history of civic engagement both inside and outside the legal profession. We have worked well with counsel for plaintiffs and defendants, including extensive coordination in complex matters.

9. Of the various firms that have appeared for plaintiffs in this MDL, we have worked with many of them (and in some instances are currently working with them). This includes working with:

   a. **Lieff Cabraser Heimann & Berstein, LLP** in (1) the *In re Volkswagen* MDL; (2) *In Re New England Compounding Pharmacy, Inc. Products Liability Litig.*, No. 13-02419 (D. Mass.) *("In re NECC")*; and (3) *East Palestine Consolidated Cases/Atkinson v. Norfolk Southern Corp., et al.*, No. 4:23-cv-00363 (N.D. Ohio.) ("*East Palestine*").

   b. **Hagens Berman Sobol Shapiro, LLP** in (1) the antitrust matter *In re: Wellbutrin XL Antitrust Litigation*, No. 08-2433 (E.D. Penn.) ("*In re Wellbutrin Antitrust*") (as co-lead counsel for third-party payors); (2) *In re: Skelaxin Antitrust*; (3) *In re Prograf Antitrust Litig.*, No. 11-2242 (D. Mass.) ("*In re Prograf Antitrust*") (as co-lead); (4) *In re Loestrin Antitrust*; (6) *In re: Effexor Antitrust Litig.*, No. 3:11-cv-5661 (D.N.J.) ("*I*; (7) *In re NECC*; and (8) *East Palestine*.

   c. **Barrack, Rodos & Bacine** in (1) *East Palestine*; (2) *Babbidge v. U.S. Express Enterprises, Inc., et al.*, No. 18C1303 (Hamilton Cnty., Tenn. Cir. Ct.); and (3) *Kinzler v. First NBC Bank Holding Co., et al.*, No. 2:16-cv-04243-KDE-JVM (E.D. La.).

   d. **Barrett Johnston Martin & Garrison, LLC**, in (1) *In re Skelaxin Antitrust*; (2) *In re High Pressure Laminate Antitrust Litig.*, No. 01-MD-01 (Davidson Cnty. Tenn. Cir Ct.) ("*HPL Antitrust*"); (3) *SmileDirectClub*, (4) *In re: Caremark RX, Inc. Stock Option Litig.*, No. 06-C-1329 (Davidson Cnty., Tenn. Cir. Ct.) ("*In re Caremark*"); and (5) *Sherwood et al. v. Microsoft Corp.*, No. 99-C-3562 (Davidson Cnty., Tenn. Cir. Ct.).

   e. **Berger Montague PC** in (1) the consumer class action *Ajose v. Interline Brands, Inc.*, No. 14-cv-01707 (M.D. Tenn.); and (2) the antitrust matter *Fusion Elite All-Stars, et al. v. Varsity Brands LLC*, No. 2:20-cv-02600-SHL-tmp (W.D. Tenn.) ("*Varsity Brands*").

f. **Bursor & Fisher, P.A.** in (1) a Telephone Consumer Protection Act putative class action in *Hawkins v. Well Path, LLC*, No. 3:20-cv-00657 (M.D. Tenn.); (2) the product liability class action *In re Nissan N. Am., Inc., Litig.*, No. 3:19-cv-00843, 3:19-cv-00854, 3:22-cv-00098 (M.D. Tenn.) ("*Nissan* Faulty Brakes"); and (3) the active data breach class action *Kuffrey v. Cmty. Health Sys., Inc.*, No. 3:23-cv-00285 (M.D. Tenn.).

g. **Cafferty Clobes Sprengel LLP** in *In re Loestrin Antitrust*.

h. **Cotchett, Pitre & McCarthy, LLP** in *In re Volkswagen*.

i. **DiCello Levitt, LLC** in the *Nissan* Faulty Brakes matter.

j. **Edelson PC** in *HPL Antitrust*.

k. **Garwin Gerstein & Fisher, LLP** in *In re Prograf Antitrust*.

l. **Gustafson Gluek PLLC** in (1) *In re Wellbutrin Antitrust* and (2) *HPL Antitrust*.

m. **Hausfeld LLP** in (1) *In re Volkswagen*; and (2) *In re Skelaxin Antitrust*.

n. Attorney Christopher Burke at **Korein Tillery** in *American Addiction Centers v. Sprout, et al.*, No. 37-2017-00032334-CUBT-CTL (Cal. Sup. Ct., San Diego County).

o. **Lowey Dannenberg, P.C.** in *In re Wellbutrin Antitrust*.

p. **Lockridge Grindal Nauen, P.L.L.P.** in the securities MDL *In re TelexFree Securities Litigation*, No. 4:14-md-02566-TSH (D. Mass.).

q. **Joseph Saveri Law Firm** in *In re Flonase Antitrust Litig.*, No. 08-cv-3149 (E.D. Pa.) ("*In re Flonase Antitrust*").

r. **Justice Catalyst Law** in the antitrust matter *Varsity Brands*.

s. **Robins Geller Rudman & Dowd LLP** in (1) *In re Volkswagen*; (2) *In re Skelaxin Antitrust*; (3) the securities fraud class action *Bach, et al. v. Amedisys, et al.*, No. 3:10-cv-395 (M.D. La.) and associated consolidated proceedings; (4) *In re Caremark*; and (5) *Indiana State Dist. Counsel of Laborers & HOD Carriers Pension Fund, derivatively on behalf of Renal Care Group, Inc., v. Gary Brukardt*, No. 05-1392-II (Davidson Cnty., Tenn. Ch. Ct.) (co-counsel for shareholder derivative plaintiff).

t. **Stranch, Jennings & Garvey LLP** ("SJG") in many matters. The attorneys at HSGLaW worked with the SJG lawyers until just a few months ago.

u. **Taus, Cebulash & Landau, LLP** in *In re Skelaxin Antitrust*.

v. **Terrell Marshall Law Group PLLC** in the putative TCPA class action *Stevens-Bratton v. TruGreen, Inc.*, originally filed in W.D. Tenn., No. 2:15-cv-2472, and later docketed as Case No. 16-5161 on appeal in the Sixth Circuit.

w. **Turke & Strauss LLP** in the robocall consumer class action *Doup v. Van Tuyl Group*, No. 3:20-cv-02742-X (N.D. Tex.).

x. **Wexler Boley & Elgersma LLP** in (1) *In re Wellbutrin Antitrust*; (2) *In re Prograf Antitrust*; (3) *In re Skelaxin Antitrust*; (4) *In re Effexor Antitrust*; and (5) *HPL Antitrust*.

10. HSGLaW also reflects a variety of backgrounds and experiences. A third of the attorneys at HSGLaW are women, three of whom are partners, and I am the lead named partner. All of the founding partners are first-generation lawyers who collectively represent consumers, victims of civil rights violations, low-wage workers, and unions.

11. HSGLaW attorneys are known for their professionalism, good faith advocacy, inclusiveness, and service to this Court and the bar. For example, I was appointed by this Court to serve on this District's Local Rules Committee, which helped update the M.D. Tenn. Local Rules. I serve as a Fellow of the Nashville Bar Foundation ("NBF") and participated in the 2010 Class of the Tennessee Bar Association Leadership Law ("TBALL") program. I have also appeared with (or coordinated) numerous speaker panels involving Magistrate Judges and District Court Judges from this District.

12. I am also among the roster of attorneys on this District's Civil Appointments Panel. I have accepted numerous appointments to represent *pro se* litigants in civil matters or otherwise agreed to handle these matters *pro bono*. *See Robinson v Brantley*, No. 1:16-cv-00095 (M.D.

Tenn.) (Campbell, J.) (appointment to represent plaintiff at trial); *Storke, et al., v. Trout, et al.*, No. 3:10-cv-00697 (M.D. Tenn.) (Trauger, J.) (*pro bono* representation of prisoner at trial on a failure to protect); *McCorvey v. Prison Transport Servs. of Am., LLC*, No. 3:17-cv-00877 (M.D. Tenn.) (Crenshaw, J.) (*pro se* prisoner alleging unconstitutional conditions of confinement); *C.I.G.H. v. Stirrup*, No. 3:20-cv-00796 (M.D. Tenn.) (Campbell, J.) (appointment as Guardian *ad litem* for an undocumented minor who was the victim of human trafficking); *Jenkins v. Anthony, et al.*, No. 3:16-cv-00216 (M.D. Tenn.) (Trauger, J.) (*pro se* prisoner alleging Eighth Amendment deliberative indifferent to medical needs claim); *Boaz Pleasant-Bey v. State of Tennessee, Secretary of State, et al.*, No. 3:19-cv-00486 (M.D. Tenn.) (Trauger, J.) (*pro se* prisoner alleging violations of his religious rights as a Muslim); and *Tarvin v. Lindamood, et al.*, No. 1:18-cv-00025 (M.D. Tenn.) (Campbell, J.) (blind prisoner alleging failure to protect and other disability-related claims). For my work in *Tarvin,* a judge on the Sixth Circuit recently praised my advocacy for having "steered Tarvin's case through the channels of litigation. She moved for expedited relief, a motion the district court granted in part. She navigated the case past the defendants' motion to dismiss. And, at Tarvin's request, she successfully sought to amend Tarvin's complaint – not once, but twice. Not a single rule or deadline was neglected along the way." *Tarvin v. Lindamood*, No. 21-5948, 2023 WL 2592867, at *4-5 (6th Cir. Mar. 22, 2023) (Readler, J., concurring in the judgment).

13. I have also worked to promote diversity and inclusion through litigation and in the community. As noted above, I have accepted appointments in this District to represent a disabled prisoner (*Tarvin*), an undocumented minor victimized by human trafficking (*C.I.G.H. v. Stirrup*), and a prisoner alleging religious discrimination (*Pleasant-Bey v. State of Tennessee*). In addition:

a. I currently serve as counsel in a case in this District challenging Tennessee's transgender bathroom law, *D.H. v. Williamson Cnty. Bd. of Educ.*, No. 3:22-cv-00570 (M.D. Tenn.) (Campbell, J.).

b. I have represented the interests of LGTBQIA+ parents and students in other matters, including (*inter alia*) challenging internet filtering that blocks students from accessing LGBTQIA+ resources online. *See Franks v. Metro. Bd. of Educ.*, No. 3.09-cv-00446 (M.D. Tenn.) (Haynes, J.).

c. I have represented sexual assault survivors in both state and federal court, including in this District. *See Doe v. Corr. Corp. of Am.*, No. 3:15-cv-00068 (M.D. Tenn.) (Todd Campbell, J. & Trauger, J.).

d. I represented a plaintiff in a state court lawsuit against the Metro Nashville fire department for suspending him (in violation of his free speech rights) for speaking out about perceived racism. *Lipscomb v. Nashville Fire Dept., a Dept. of the Metro. Gov't of Nashville & Davidson Cnty.*, No. 22-0501 (Davidson Cnty. Tenn., Chancery Ct.)

I have also been involved in countless other cases advocating for the rights of members of marginalized communities, such as: *Villegas v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 11-6031 (6th Cir. 2012), in which I filed an *amicus* brief in the Sixth Circuit in support of an immigrant woman forced to give birth in shackles; and *Akridge v. Finnegan*, No. 3:13-cv-00588, (M.D. Tenn. Feb. 22, 2016), a case dealing with racial profiling and an unreasonable search and seizure; and *Escobar v. Gaines*, No. 3:11-cv-0994 (M.D. Tenn. Sept. 4, 2014), which involved alleged violations of immigrants' civil rights during a raid of an apartment complex by law enforcement.

14. I have also been recognized for similar work in the community:

a. Since 2014, I have served as a Democrat-appointed member of the Davidson County Election Commission, where I have been able to foster consensus from a minority position to protect and enhance the voting rights of Davidson County residents.

b. In 2010, during the Nashville floods, I spent 6 months in an apartment complex occupied primarily by Egyptian immigrants to advise and help the occupants coordinate with churches, nonprofits, and the government to find alternative housing and to force compliance by recalcitrant landlords with basic housing and sanitation needs.

c. In 2018, Conexion Americas awarded me its "Amiga We Love" award, which goes to a person who embodies the organization's mission of building a welcoming community.

d. I regularly give talks at Our Place Nashville to make sure that individuals with intellectual and developmental disabilities understand their voting rights and are able to vote.

e. I regularly provide "Know Your Rights" presentations to immigrant groups and communities of color to educate and inform them about issues that they might encounter when dealing with law enforcement.

f. For Nashville's Oasis Center, I provide legal advice and consultation for issues impacting disadvantaged youth.

g. I represent Silent No Longer Tennessee, which is a grassroots group of current and former police officers who have been subjected to sexual violence related to the workplace.

15. My colleagues on the litigation team at HSGLaW have exhibited a similar commitment to professionalism and inclusiveness. For example:

a. Last year, five HSGLaW attorneys were part of the team awarded the "Trial Lawyer of the Year" Award by the Tennessee Trial Lawyers Association for their work in the Tennessee opioids litigation. The Award goes to recipients who have made an extraordinary contribution to the cause of civil justice and adhered to the highest principles of the legal profession.

b. My partner Tony Orlandi, who serves as co-counsel with me in the *Watters*, *Precht*, and *Goldman* matters in this MDL, appeared with me in the *Robinson*, *Pleasant-Bey*, *Tarvin*, and *C.I.G.H.* appointed cases noted above. Mr. Orlandi also formerly served as judicial clerk in this District for four years, serves as a Hearing Examiner for the Tennessee Board of Professional Responsibility (charged with adjudicating cases and reviewing investigatory recommendations involving alleged violations of Tennessee Rules of Professional Conduct), serves as a Board Member of the Law Association for Women's ("LAW") Marion Griffin Chapter in Nashville, and in 2015 was nominated by the Nashville LAW for the Women's Political Collaborative of Tennessee's "Good Guy" award, which is designed to honor and recognize men who uniquely demonstrate their support of women and expand the role of women in the community. He also was a member of the inaugural NBF Leadership Program in 2014-2015 and was a member of the 2018 TBALL Class.

c. In *Baby Doe, et al. v. Purdue Pharma, et al.*, No. C-41916 (Sullivan Cnty., Tenn. Cir. Ct.) ("*Baby Doe*"), attorneys at HSGLaW represented a baby born drug dependent and various local governments in seeking to recover from pharmaceutical manufacturers for their role in the opioid epidemic in Tennessee. In an order awarding fees as a sanction, the Court praised the attorneys as having "exhibited an exceptional degree of skill in this case" and for "achieving excellent results[.]"

d. In *In re Wellbutrin Antitrust*, in which my colleague Joe Leniski served as co-lead counsel for indirect purchasers, a federal district court approved a $11.5 million class settlement and praised lead counsel for the indirect purchasers (including Mr. Leniski) for having "effectively and efficiently prosecuted this difficult and complex action on behalf of the members of the Class," and found that "the settlement achieved for the benefit of the Class was obtained as a direct result of Class Counsel's skillful advocacy[.]" (*In re Wellbutrin Antitrust*, No. 2:08-cv-2433 (E.D. Pa.), ECF 473, Final Order and Judgment Approving Settlement and Awarding Incentive Payments, Fees, and Reimbursement of Expenses.).

## III. HSGLaW Attorneys Have Extensive Experience Litigating Complex Antitrust Class Actions, including in Federal District Courts in Tennessee.

16. HSGLaW attorneys have extensive experience in leadership roles litigating complex antitrust class actions. The attached Firm Resume (**Exhibit A**) details this work. For example:

a. In *In re Wellbutrin Antitrust* (E.D. Penn.), HSGLaW attorneys served as co-lead counsel in an antitrust class action against GlaxoSmithKline and Biovail on behalf of third-party payors alleging suppression of a cheaper generic form of Wellbutrin XL. These efforts helped achieve class certification and a settlement for the indirect purchasers.

b. In *In re Skelaxin Antitrust* (E.D. Tenn.), HSGLaW attorneys supported Lead Counsel in an antitrust class action on behalf of end payors in a generic suppression case. Counsel achieved a $9 million class settlement against one defendant (to which the Court granted final approval) and an individual settlement against the other.

17. HSGLaW attorneys also played key roles in numerous other cases challenging anticompetitive conduct, including: (1) *Sherwood et al. v. Microsoft Corporation* (Davidson Cnty, Tenn. Cir. Ct.) a Tennessee antitrust class action where plaintiff won an appellate court opinion establishing that indirect purchasers have a cause of action under the Tennessee Trade Practices

Act, and ultimately resulted in a settlement valued at $64 million; (2) *In re Prograf Antitrust* (D. Mass.), a generic suppression case in which HSGLaW attorneys supported Co-Lead Counsel, a class was certified, summary judgment denied, and the parties reached a $13.25 million settlement; (3) *In re Loestrin Antitrust* (D.R.I), in which HSGLaW attorneys supported the Executive Committee in a case challenging anticompetitive deals reached concerning oral contraceptives, the First Circuit reversed the trial court's dismissal order, and the case ultimately settled for $63.5 million for a certified class of third-party payors; (4) *In re Effexor* (D.N.J.), in which HSGLaW attorneys represented one of the named class representatives (and have been active in discovery at the direction of lead counsel) in a case challenging anticompetitive agreements concerning an antidepressant drug; and (5) *In re HPL Antitrust*, No. 01-MD-01 (Davidson County Cir. Ct.), which culminated in a multi-million dollar settlement that was upheld on appeal by the Tennessee Court of Appeals.

18. Furthermore, in *Cates v. Crystal Clear Technologies* filed in this District, the Firm's attorneys served as counsel for a putative class of owners within a residential development who alleged antitrust claims against a cable service provider. After the District Court dismissed the claims in their entirety, the Sixth Circuit reversed in part, finding in a published decision that the unlawful tying claim was viable. *See Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530 (6th Cir. 2017). The decision created favorable precedent concerning the standards for defining a relevant market for an unlawful tying claim.

### IV. HSGLaW Is Willing to Commit the Attorneys and Resources that This Litigation Requires

19. As reflected in the firm resume, HSGLaW has a group of litigation attorneys with extensive credentials and experience in class actions, antitrust litigation, and complex litigation (including in the MDL context). If I am appointed as Plaintiffs' Liaison Counsel, my firm and I

would devote all necessary resources to prosecuting this case in the best interests of the Plaintiffs. We can leverage attorney and staff resources across our four offices, as well as highly qualified contract attorneys with whom we have regularly worked in the past on complex matters. As noted above, our attorneys have already led or otherwise participated in numerous antitrust class actions, including within Tennessee. HSGLaW is in solid financial condition and has sufficient capital resources to see this case through to conclusion. Under my direction, I will assure that HSGLaW's attorneys devote the time necessary to litigate this MDL action on behalf of the Plaintiffs.

**V.    HSGLaW Has the Resources to Advance the Litigation in a Timely Manner.**

20.    HSGLaW attorneys have experience moving big cases expeditiously. For example, in the *Baby Doe* opioids matter in Sullivan County, Tennessee, HSGLaW attorneys filed the matter in 2017, quickly moved the case through the motion to dismiss stage, discovery, and summary judgment, obtained default judgment as a sanction against Endo Pharmaceuticals, and (one week before trial) ultimately procured a $35 million settlement for local governments and a minor born drug dependent, reflecting the largest *per capita* opioid settlement by Endo in the country.

21.    In that matter and in other opioid matters against major drug companies, I was in charge of coordinating the cases, both at the trial court and appellate levels. We had no co-counsel with whom to divide this responsibility. It is difficult to overstate the scale of this work and the effort it required to do effectively. I was the primary point of contact for hundreds of local government entities in Tennessee, as well as for counsel to families and guardians of minors born opioid dependent. I communicated with them to keep them updated on key developments, to coordinate written discovery responses and depositions, to obtain approval for case-specific settlements and national settlements, and to advocate for them and coordinate filings in three separate bankruptcy matters opened by the major drug companies (Purdue, Mallinckrodt, and Endo). I also had primary responsibility for handling discovery meet and confers; taking

depositions and coordinating depositions in our case and with the federal MDL (over 160 in total); reviewing, editing, and approving all briefing (including as to over 70 contested motions in one case alone, nine of which were summary judgment motions); coordinating document discovery across more than 30 jurisdictions; coordinating litigation in the trial court and in the Tennessee appellate courts simultaneously (including addressing expedited emergency interlocutory appeals on the eve of trial); and preparing the *Staubus v. Purdue Pharma, et al.* matter (Sullivan Cnty., Tenn. Cir. Ct.) for trial.

22. I managed all of these responsibilities effectively using organizational skills, attention to detail, and managerial skills honed through years of high-stakes, complex litigation. As a result of these efforts, we were able to settle the *Staubus* matter the week before trial.

23. We have also litigated other matters expeditiously to class certification and resolution, including in this District. For example, in *Skeete v. RePublic Schools*, No. 3:16-cv-43 (M.D. Tenn.), this Court granted class certification in a case involving unsolicited marketing robotexts (2017 WL 2989189) and ultimately granted final approval to a $2.2 million settlement. *See also In re Nissan N. Am., Inc. Litig.*, 2023 WL 2749161, Nos. 3:19-cv-00843, 3:19-cv-00854, 3:22-cv-00098 (M.D. Tenn. Mar. 31, 2013) (certifying Rule 23(b)(3) damages classes for multiple states concerning defective brakes in Nissan vehicles); *Elrod, et al. v. No Tax 4 Nash, et al.*, Nos. 3:20-cv-00617 & 3:20-cv-00618) (M.D. Tenn.) (certifying Rule 23(b)(3) damages class and finally approving clas settlement for recipients of unsolicited recorded messages); *Stringer v. Nissan N. Am., Inc., et al.*, No. 3:21-cv-00099 (M.D. Tenn.) (court-approved settlement valued at nearly $278 million in class action concerning faulty continuous variable transmission (CVT) systems); *Ajose v. Interline Brands, Inc.*, No. 14-cv-01707 (M.D. Tenn.) (court-approved $16.5 million class settlement in consumer class action).

24. HSGLaW's prior successes in this District, Tennessee, and nationwide (including in antitrust matters and consumer class actions) demonstrate that my firm can litigate efficiently, effectively, and cooperatively with other firms and parties to achieve superior results for our clients. *See, e.g.*, *Sherwood et al. v. Microsoft Corporation* (Davidson Cnty. Tenn. Cir. Ct.) (settlement valued at $64 million); *In re Prograf Antitrust* (D. Mass.) (court approval of $13.25 million class settlement); *In Loestrin Antitrust* (D.R.I.) ($63.5 million settlement).

25. HSGLaW has no agreement with a litigation funder for purposes of this case.

## VI. HSGLaW and the Plaintiffs We Represent Support the Other Appointments Proposed in the Scott & Robins Leadership Application

26. I am familiar with the other firms who are seeking appointment to the Plaintiffs' Steering Committee as part of the Scott & Robins Leadership Application. As noted above, we have worked effectively and cooperatively (sometimes even as co-counsel) with Scott+Scott, Robins Kaplan, Cafferty Clobes, Lowey Dannenberg, Korein Tillery, Turke & Strauss, and the Joseph Saveri Law Firm. These firms all have litigated effectively for their clients, including in complex antitrust class actions like *In re Wellbutrin Antitrust*, *In re Loestrin Antitrust* and *In re Flonase Antitrust*. HSGLaW supports the appointment of these firms to positions on the Plaintiffs' Steering Committee, in addition to seeking my appointment as Plaintiffs' Liaison Counsel.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 6th day of June 2023 in Nashville, Tennessee.

*/s/ Tricia R. Herzfeld*
Tricia R. Herzfeld