| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-md-03071<br>MDL No. 3071<br><br>Honorable Waverly D Crenshaw<br><br>Declaration of Patrick McGahan in Support of Watters Plaintiffs' Application to Appoint Scott+Scott Attorneys at Law LLP and Robins Kaplan LLP Interim Co-Lead Counsel and Appoint Watters Plaintiffs' Leadership Structure<br><br>This Document Relates to:<br>ALL CASES |

## DECLARATION OF PATRICK MCGAHAN IN SUPPORT OF WATTERS PLAINTIFFS' APPLICATION TO APPOINT SCOTT+SCOTT ATTORNEYS AT LAW LLP AND ROBINS KAPLAN LLP INTERIM CO-LEAD COUNSEL AND APPOINT WATTERS PLAINTIFFS' LEADERSHIP STRUCTURE

I, Patrick McGahan, pursuant to 28 U.S.C. §1746, declare that the following is true and correct to the best of my knowledge and belief:

1. I am a Partner with Scott+Scott Attorneys at Law LLP ("Scott+Scott"), counsel of record for plaintiffs Brandon Watters, Jason Goldman, Selena Vincin, Laura Boelens, Anna Rodriguez, Kimele Carter, Billie Jo White, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, and Jeffrey Weaver in this MDL. I have practiced law for 13 years.

2. Scott+Scott is an international law firm with over 100 lawyers practicing in offices across the United States (Arizona, Texas, Virginia, New York, Delaware, Connecticut, California, and Ohio) and in Europe (London, Amsterdam, and Berlin). Scott+Scott's practice focuses primarily on complex and class action litigation involving antitrust, securities, and consumer class actions, as well as derivative and other complex proceedings, in both state and federal courts.

Attached hereto as Exhibit A is a true and correct copy of Scott+Scott's current firm résumé, detailing some (but not all) of the firm's experience as Class or Lead Counsel in complex and class action litigation.

3. Scott+Scott's recent successes as Lead Counsel include some of the largest recoveries in antitrust class action history:

    a. *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-cv-7789 (LGS) (S.D.N.Y) ("*FX*") (securing over $2.3 billion in settlements in case alleging conspiracy between and among major banks to fix the price of foreign exchange);

    b. *In re GSE Bonds Antitrust Litig.*, No. 19-cv-01704 (S.D.N.Y.) ("*GSE Bonds*") (challenging manipulation in the market for bonds issued by Government-Sponsored Entities, *e.g.*, Freddie Mac and Fannie Mae; $386 million settlement);

    c. *In re Disposable Contact Lens Antitrust Litigation*, MDL No. 2626 (M.D. Fla.) (alleging price-fixing in the disposable contact lens industry; securing a $75 million settlement on the eve of trial, for a total of $118 million in settlements);

    d. *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-07126 (S.D.N.Y.) ("*ISDAfix*") (challenging price-fixing of the ISDAfix benchmark interest rate; case resulted in $504.5 million in settlements, for the third largest antitrust settlement of 2018 according to the American Antitrust Institute); and

    e. *Dahl v. Bain Cap. Partners, LLC*, No. 08-cv-10254 (D. Mass.) ("*Private Equity*") (challenging bid rigging and market allocation of leveraged buyouts by private equity firms; $590.5 million in settlements).

4. Scott+Scott are counsel of record for the following actions that have been consolidated for pre-trial purposes in this MDL: *Weaver v. RealPage, Inc.*, No. 3:23-cv-00357;

*Goldman v. RealPage, Inc.*, No. 3:23-cv-00552; *White v. RealPage, Inc.*, No. 3:23-cv-00413; *Watters v. RealPage, Inc.*, No. 3:22−01082; *Vincin v. RealPage, Inc.*, No. 3:23-cv-00410; *Carter v. RealPage, Inc.*, No. 3:23-cv-00411; *Bertlshofer v. RealPage Incorporated*, No. 3:23-cv-00377; *Parker v. RealPage, Inc.*, No. 3:23-cv-00378; and *Boelens v. RealPage, Inc.*, No. 3:23-cv-00338.

5. I submit this declaration in support of the Watters Plaintiffs' Application to Appoint Scott+Scott and Robins Kaplan LLP as Interim Co-Lead Counsel ("Interim Co-Leads") and Appoint Watters Plaintiffs' Leadership Structure ("Application").

6. The Application seeks appointment of: (a) Scott+Scott and Robins Kaplan LLP ("Robins Kaplan," and together with Scott+Scott, "Scott & RK") as Interim Co-lead Counsel for the Multifamily Plaintiffs; (b) Ms. Tricia Herzfeld of Herzfeld, Suetholz, Gastel, Liniski, and Wall, PLLC ("Attorney Herzfeld") as Plaintiffs' Liaison Counsel; and (c) five firms to serve as members of the proposed Plaintiffs' Steering Committee.[1] Below I outline facts relevant to the appointment of: (a) Scott+Scott as one of the Interim Co-Lead Counsel (*infra* §§I-IV); (b) Attorney Herzfeld as Plaintiffs' Liaison Counsel; and (c) the proposed Plaintiffs' Steering Committee (*infra* §V).

7. I am familiar with the proceedings and have personal knowledge of the facts stated herein and if called to do so, could and would testify competently thereto.

I. **SCOTT+SCOTT HAS COMMITTED TO THIS LITIGATION SINCE ITS INCEPTION AND WILL SEE IT THROUGH TO RESOLUTION**

   A. **Scott+Scott Worked Cooperatively with Co-Counsel to Develop a Superior Pleading After Investigating the Rental Markets for over a Year**

8. I, along with members from our core leadership team, thoroughly investigated the factual and legal claims asserted in this action.

---

[1] Those firms are: (i) Cafferty Clobes Meriwether & Sprengel LLP; (ii) Lowey Dannenberg, P.C.; (iii) Joseph Saveri Law Firm, LLP; (iv) Kozyak Tropin & Throckmorton LLP; and (v) Korein Tillery P.C.

3

9. On December 14, 2022, Scott+Scott, alongside Robins Kaplan and Lowey Dannenberg, P.C., filed their first class action complaint against RealPage, Inc. ("RealPage") and several other lessors in and around Denver, Colorado, on behalf of plaintiff Jeffrey Weaver.[2]

10. Between December 14, 2022, and May 30, 2023, Scott+Scott filed nine other class action complaints on behalf of 13 clients drawn from 11 cities and towns against RealPage and several other lessors ("Lessor Defendants").[3] Scott+Scott also coordinated with, and assisted, Counsel for Plaintiffs in seven other cases who likewise brought claims against RealPage and certain Lessor Defendants prior to this MDL. *See Enders v. RealPage, Inc.*, No. 3:23-cv-00390; *Parker v. RealPage Inc.*, No. 3:23-cv-00378; *Corradino v. RealPage Inc.*, No. 3:23-cv-00379; *Marchetti v. RealPage, Inc.*, No. 3:23-cv-00380; *Saloman v. RealPage, Inc.*, No. 3:23-cv-00381; *Mackie v. RealPage, Inc.*, No. 3:23-cv-00358; and *Precht v. RealPage, Inc.*, No. 3:23-cv-00412.

11. Scott+Scott, alongside Robins Kaplan and Lowey Dannenberg, P.C. and their consulting experts, performed significant pre-complaint factual and economic investigation prior to the filing of each of its complaints, including:

    a. ***Economic Analysis of the Conspiracy's Impact***: Scott & RK conducted a significant economic investigation and analysis utilizing rental price and vacancy datasets

---

[2] *See* Compl., *Weaver v. RealPage, Inc.*, No. 1:22-cv-03224, ECF No. 1 (D. Colo. Dec. 14, 2022).

[3] *See* Compl., *White v. RealPage, Inc.*, No. 1:22-cv-12134 (D. Mass. Dec. 16, 2022); Compl., *Vincin v. RealPage, Inc.*, No. 1:22-cv-01329 (W.D. Tex. Dec. 19, 2022); Compl., *Carter v. RealPage, Inc.*, No. 1:22-cv-01332 (W.D. Tex. Dec. 19, 2022); Compl., *Boelens v. RealPage, Inc.*, No. 2:22-cv-01802 (W.D. Wash. Dec. 20, 2022); Compl., *Kramer v. RealPage, Inc.*, No. 1:22-cv-03835 (D.D.C. Dec. 29, 2022); Compl., *Watters v. RealPage, Inc.*, No. 3:22-cv-01082 (M.D. Tenn. Dec. 30, 2022); Compl., *Bertlshofer v. RealPage, Inc.*, No. 2:23-cv-00018 (D. Ariz. Jan. 4, 2023); Compl., *Parker v. RealPage, Inc.*, No. 1:23-cv-20160 (S.D. Fla. Jan. 13, 2023); and Compl., *Goldman v. RealPage, Inc.*, No. 3:23-cv-00552 (M.D. Tenn. May 30, 2023).

4

obtained through private subscriptions maintained by Scott & RK, as well as data published by government agencies and other public sources;

      b.    ***Assessment of the Relevant Geographic Markets***: Scott & RK cross referenced each Lessor Defendant's self-reported real estate holdings against public records and statistical data produced by the United States Office of Management and Budget, and spoke to economic consultants with experience in cartel and price fixing issues, to ensure they pled the contours of the relevant geographic markets appropriately in their complaints;

      c.    ***Identifying the Proper Defendants***: Scott & RK investigated which property managers utilized the relevant RealPage software, leading to the identification of 18 Defendants who had not previously been named as Defendants in this MDL by other plaintiffs;

      d.    ***Understanding the Market***: Scott & RK spoke with industry participants with experience in the Multifamily and Student Housing rental markets and certain Lessor Defendants' leasing strategies; and

      e.    ***Exhausting Public Sources***: Scott & RK reviewed: (a) Defendants' securities filings and public statements (including conference transcripts and earnings calls); (b) the substantial media published by RealPage and Lessor Defendants featuring representatives of RealPage and the Lessor Defendants emphasizing RealPage's market power; and (c) considerable industry reporting describing how RealPage's revenue management software precipitated a shift in Lessor Defendants' focus from higher occupancy to higher rents.

5
Case 3:23-md-03071    Document 257-3    Filed 06/06/23    Page 5 of 18 PageID #: 918

12. Scott+Scott's investigation was aided by its prior work investigating misconduct in the real estate market. For more than a year, Scott+Scott had been investigating a potential claim against Texas lessors, some of whom are now named Defendants in this MDL, based on their use of the Texas Apartment Association standard lease form to fix rental prices. *See* Vincin Compl., ¶¶66-68. Scott+Scott had also previously reviewed the use of algorithmic pricing in related industries and spoken to subject matter experts regarding the antitrust implications of competitors using the same or similar software solutions to make pricing decisions.

13. Scott+Scott's attorneys are also familiar with the multifamily rental market through their history of acting pro bono in tenant housing matters. For example, Kyle Dingman, counsel of record in the *Vincin* and *Carter*, has committed hundreds of hours representing tenants *pro bono*, building on the skills he acquired working as a volunteer attorney at Texas Rio Grande Legal Aid and Volunteer Legal Services of Central Texas. Mr. Dingman has also written and presented CLE courses on housing law issues including Proving and Calculating Damages in Consumer and Housing Cases (2016); presented at 2016 Consumer and Housing Task Force Meeting; Counseling the Landlord and Tenant in the Wake of a Hurricane (Texas State Bar online CLE, 2017); and A Legal Self-Help Guide for Texas Tenants Affected by Natural Disaster (2017). Finally, in addition to his *pro bono* work, Mr. Dingman has thousands of hours of experience in both residential and commercial landlord-tenant cases.

14. Scott+Scott attorneys additionally maintain an active *pro bono* practice outside of the landlord/tenant space. For example, Fatima Brizuela has dedicated hundreds of hours to *pro bono* representation of victims of human and civil rights violations through the Casa Cornelia Law Center. Ms. Brizuela has successfully represented several individuals from around the world seeking asylum in the United States due to political, social, religious, or ethnic prosecution and/or

torture in their home countries. For her outstanding *pro bono* representation, Ms. Brizuela was awarded the Pro Bono Publico Award in 2021, and named honoree in the San Diego Business Journal's "Women of Influence in Law 2021."

### B. Scott+Scott and Robins Kaplan Have Continued Work to Advance the Multifamily Plaintiffs' Claims, Including by Retaining Important Experts

15. Scott & RK did not stop investigating Multifamily Plaintiffs' Claims after they filed their first complaint. They have worked diligently to: (a) prepare a consolidated amended complaint ("CAC") on behalf of all Multifamily Plaintiffs that will withstand Defendants' motions to dismiss; and (b) prepare to advance the case expeditiously should they be appointed Interim Co-Leads.

16. Scott+Scott sought to develop the factual allegations regarding Defendants' conspiracy through a number of means:

    a. ***Witness Work***: Scott+Scott deployed two in-house investigators to speak to former RealPage and Lessor Defendant employees regarding the use, scope, and impact of RealPage's software. Those investigators spoke to dozens of employees, uncovering countless additional facts, some of which were included in Scott & RK's most recent complaint. *Goldman v. RealPage, Inc.*, No. 3:23-cv-552 (M.D. Tenn. May 30, 2023) ("Goldman Complaint"). The Goldman Complaint included facts attributed to nine witnesses uncovered by Scott+Scott. Scott+Scott continues to develop witness evidence, notwithstanding that it may not be appointed to any leadership position;

    b. ***Direct Evidence from RealPage's Own Training Guide***: Scott+Scott uncovered RealPage's own training documentation provided to property managers, detailing the operation and impact of RealPage on Multifamily Plaintiffs and highlighting

that Lessor Defendants were encouraged to extend their collusion through real world contacts. Goldman Complaint, ¶¶21, 88-93; *see* Figures 3, 5, and 6;

       c.     ***Engaged the Expert Behind the RealPage Suits***: Scott & RK have engaged James M. Nelson to assist as a consultant. In 2018, Mr. Nelson started an economic study of the impact of algorithmic pricing in rental markets. His unpublished study and further research into RealPage's activities formed the basis of ProPublica's October 15, 2022 investigative report titled "Rent Going Up? One Company's Algorithm Could Be Why." It was this ProPublica article, and thus Mr. Nelson's work, that all Plaintiffs in this MDL used as the basis for their original complaints; and

       d.     ***Further Work with Watters Plaintiffs' Consultants***: Watters Plaintiffs have been working with a Professor of Real Estate & Finance who previously worked at the Securities and Exchange Commission and specializes in real estate, to act as a consulting expert. Scott & RK have worked with these consultants, alongside their internal economists, data scientists, and data experts to identify price and vacancy data that could be used to perform preliminary economic analyses to reinforce the plausibility of Plaintiffs' claims. Some of this analysis appears in the Goldman Complaint. *See id*., ¶¶10, 17, 142-57. Scott & RK are preparing additional economic analysis for the Multifamily Plaintiffs' CAC.

17.     Aside from their factual investigation, Scott & RK have taken considerable steps to advance this litigation and prepare for potential appointment as Interim Co-Leads.

18.     They have engaged a leading economist to act as their testifying economist: Dr. Russell Lamb. Dr. Lamb is an expert in antitrust economics and applied econometrics, with over

8

Case 3:23-md-03071  Document 257-3  Filed 06/06/23  Page 8 of 18 PageID #: 921

25 years' experience as an economic consultant and a strong track record of success in similar high stakes antitrust litigation.

19. Scott & RK are also actively vetting additional potential testifying experts with expertise in artificial intelligence, algorithmic pricing, and the rental housing markets.

20. Scott & RK have considered ways to streamline the prosecution of this action and push it towards trial at the earliest possible juncture. As Watters Plaintiffs are counsel of record in four of the five cases presently filed in this District,[4] Attorney Herzfeld and Scott & RK expect to be trial counsel for the earliest cases to reach trial. To facilitate a speedy case schedule, Scott & RK have already:

    a. **Sought to Establish a Mediation Track:** On June 2, 2023, Watters Plaintiffs offered to enter a tolling agreement with those Defendants named in four or fewer complaints if appointed to leadership. Watters Plaintiffs proposed dropping from the CAC those Defendants who agreed to toll Multifamily Plaintiffs' claims to facilitate a separate mediation track to proceed alongside the prosecution of the action against the key Defendants. Scott & RK expect to make additional tolling proposals prior to filing the CAC, should their leadership application be granted. Scott & RK are actively shepherding mediation appointments, facilitating a conversation among all Plaintiffs; and

    b. **Managing the Risks Posed by Defendants' Defenses:** Defendants have already previewed certain of their likely defenses in the Joint Statement on Case Progression and Scheduling (ECF No. 187) and at the May 31, 2023 status conference. Defendants intend to argue that the case does not qualify for *per se* treatment under the

---

[4] *Watters v. RealPage, Inc.*, No. 3:22-cv-01082; *Goldman v. RealPage, Inc.*, No. 3:23-cv-00552; *Alexander v. The Irvine Company, LLC*, No. 3:23-cv-00440; and *Blosser v. RealPage, Inc.*, No. 3:23-cv-00445.

Sherman Act, with the consequence that Plaintiffs must plead and prove harm in the relevant geographic and product markets, and that a national rental market is implausible. Defendants will likely also argue that the conduct of property managers differs from region to region, and property manager to property manager, with the consequence that damages cannot be assessed on a class-wide basis for a national class. While Scott & RK believe the alleged infringement does qualify for *per se* treatment and hope to develop a national damages model that accounts for local variations, they are preparing contingencies should the Court agree with Defendants' arguments. Scott & RK have filed claims on behalf of regional geographic markets and intend to file a CAC on behalf of a nationwide class that will allege regional multifamily rental markets in the alternative. Pleading in the alternative ensures that Plaintiffs' claims will not be prejudiced, should the Court agree with Defendants as to these issues at any stage.

21. Scott+Scott have also ensured to satisfy the procedural demands associated with their claims. They have prepared 181 service packages and effectuated service on 41 Defendants across 13 actions. Scott+Scott has also coordinated the filings of 16 status reports in 13 different jurisdictions.

22. Scott+Scott has advanced discovery by working with Robins Kaplan to preserve potentially relevant documents in the possession of Watters Plaintiffs, sending document hold letters to each Defendant and various third parties, and drafting and circulating a Protective Order and ESI Protocol to govern discovery in this MDL to other Plaintiffs' counsel on May 11, 2023.[5]

---

[5] Despite meeting with the other Plaintiffs' counsel on May 12, 2023, we have yet to receive any comments.

## II. SCOTT+SCOTT HAS DECADES OF EXPERIENCE LITIGATING COMPLEX CLASS ACTIONS

23. Scott+Scott's attorneys have extensive experience in litigation, trial, and settlement of complex class action cases. Scott+Scott's attorneys have served in leadership positions in hundreds of class actions over nearly 50 years, including in antitrust matters. As detailed in paragraph 3 above, Scott+Scott has recently achieved some of the largest antitrust settlements ever.

24. Scott+Scott currently serves in leadership roles in over than 60 class actions, including the following major antitrust cases filed in district courts throughout the United States:

   a. *In re European Gov't Bonds Antitrust Litig.*, No. 19-cv-02601 (S.D.N.Y) and *Ohio Carpenters' Pension Fund v. Deutsche Bank*, No. 1:22-cv-10462-VM (S.D.N.Y.) (challenging a conspiracy amongst OTC dealers to fix the price for European Government Bonds and achieving $13 million in settlements to date, with additional settlements pending final approval);

   b. *Klein v. Meta Platforms, Inc.*, 3:20-cv-08570-LHK (N.D. Cal.) (plaintiffs allege that Facebook orchestrated a years-long scheme to monopolize the social advertising market and charge supracompetitive prices to its advertising customers);

   c. *In re Cattle and Beef Antitrust Litig.*, No. 22-md-03031 (D. Minn.) ("*Cattle*") (acting for cattle ranchers and traders of live cattle futures contracts to recover loss suffered as a result of Tyson, JBS, Cargill, and National Beef conspiracy to suppress the price of beef cattle);

   d. *Sky Federal Credit Union v. Fair Isaac Corp.*, No. 1:20-cv-02114 (N.D. Ill.) (representing credit unions and banks against Fair Isaac Corporation ("Fair Isaac") and the three major credit bureaus alleging that Fair Isaac maintains an unlawful monopoly for

its "FICO Score" in the business-to-business credit score market in violation of the federal and state antitrust laws); and

  e. *Litovich v. Bank of America Corp.*, No. 1:20-cv-03154-VEC (S.D.N.Y.) (representing bond investors who were harmed by defendant bond dealers who conspired to restrain the development of all-to-all electronic trading of odd-lots of corporate bonds).

  25. In addition to myself, Scott+Scott's core leadership team working on the instant action includes Patrick Coughlin, Amanda Lawrence, Kristen Anderson, Carmen Medici, and Fatima Brizuela. They will be assisted by associates from the firm's competition team, including Michael Srodoski, Kyle Dingman, Anna Hunanyan, and Isabella De Lisi. This team will be supported by experienced, staff attorneys with experience in antitrust litigation.

  26. In addition to the successes listed above, these attorneys have enjoyed unprecedented recoveries in some of the nation's largest cases. For example, Mr. Coughlin, one of the nation's premier trial lawyers, and Mr. Medici, have served as co-lead counsel in *In re Payment Card Interchange Fee and Merchant Discount Antitrust*, MDL No. 1720 (E.D.N.Y.), which resulted in what is thought to be the largest antitrust class action settlement of all time ($5.6 billion). Mr. Coughlin also recovered $650 million for Facebook's users whose biometric identifiers were collected without their consent in *In re Facebook Biometric Info. Privacy Litig.*, No. 3:15-cv-03747-JD (N.D. Cal.).

  27. Apart from its extensive success in significant antitrust cases, addressed in Exhibit A and above, Scott+Scott also benefits from recent experience in tech-related litigation across its related practice groups. For example, it currently serves or has previously served in leadership capacity in the following tech-related litigation:

a. *In re Google Assistant Privacy Litigation*, No. 5:19-cv-04286 (N.D. Cal.) (class action on behalf of consumers alleging privacy violations whereby Google Assistant records and discloses their private confidential communications without consent);

b. *Lopez v. Apple Inc.*, No. 4:19-cv-04577 (N.D. Cal.) (class action on behalf of consumers and their minor children alleging privacy violations by Apple through its Siri application);

c. *In re Equifax, Inc. Customer Data Security Breach Litig.*, No. 1:17-md-02800 (N.D. Ga.) (claims on behalf of financial institutions injured as a result of the 2017 Equifax data breach that exposed the personal and financial information of approximately 150 million U.S. consumers; preliminary approval of settlement valued at $32.5 million);

d. *In re: Facebook, Inc. Derivative Litigation*, C.A. No. 2018-0307 (Del. Ch.) (shareholder derivative action concerning Facebook's Directors alleged approval of Facebook's use of user data in violation of 2012 FTC Consent Decree; Scott+Scott was chosen as Co-Lead Counsel in part based on filing "a more comprehensive" consolidated complaint that was "encyclopedic and specific," "highly detailed," and "replete with particularized facts . . . tell[ing] a story of a company reminiscent of AIG or Massey where there are so many violations that it supports a pleading-stage inference that management is operating an enterprise based on recidivous law breaking"); and

e. *Irving Firemen's Relief and Retirement Fund v. Page* (Alphabet, Inc.), C.A. No. 2019-0355-SG (Del. Ch.) (shareholder derivative action concerning the Alphabet Board of Directors alleged "pattern of concealment" sexual misconduct and failure to protect customer data, all at the expense of shareholders; $310 million settlement on behalf

of Alphabet, Inc. (aka Google) to fund Company-wide diversity initiative, plus enhanced sexual harassment protections and data breach protections).

28. Scott+Scott has also secured substantial recoveries on behalf of investors in relation to breaches of U.S. securities laws by tech companies. *See, e.g.*, *In re SanDisk LLC Secs. Litig.*, No. 15-cv-01455 (N.D. Cal.) ($50 million settlement); and *In re Priceline.com, Inc. Secs. Litig.,* No. 00-cv-01884 (D. Conn.) ($80 million settlement). Indeed, in just two cases within the past year Scott+Scott has recovered over $200 million on behalf of classes of investors. *In re: Micro Focus International PLC Securities Litigation*, No. 18-cv-01549 (Cal. Super. Ct. San Mateo Cnty.) ($107.5 million settlement pending); *Oklahoma Firefighters Pen. & Ret. Sys. v. Newell Brands Inc.*, No. HUD-L-003492-18 (NJ Super. Ct. Hudson Cnty.) ($102.5 million settlement).

29. In addition, Scott+Scott has also worked on other class cases of significant social import that have resulted in significant settlements for the affected classes. For example, the firm helped achieve a settlement in the *United States v. The City of New York*, No. 07-CV-2067 (E.D.N.Y.) that awarded back pay and lost fringe benefits to a class of African American and Hispanic firefighters in New York City, as well as a settlement in *In re Prudential Life Insurance Co. of America SGLI/VGLI Contract Litig.*, No. 11-md-02208 (D. Mass.) that brought a $39 million settlement on behalf of families of deceased servicemen and women against Prudential. More recently, the firm represented 28 municipalities, two counties, and one hospital system as part of the nationwide opioids litigation.

30. Scott+Scott has been recognized by various courts throughout the United States and elsewhere for its impressive efforts in litigating and resolving class actions on behalf of plaintiffs. In settling a class action against The Wendy's Company, the court, in approving the $50 million

14
Case 3:23-md-03071 Document 257-3 Filed 06/06/23 Page 14 of 18 PageID #: 927

dollar settlement, noted that Scott+Scott "brought to the table an incredible wealth of knowledge, was always prepared, really was thorough and professional in everything that was provided to the Court." *First Choice Fed. Credit Union v. The Wendy's Co.*, No. 2:16-cv-00506, Nov. 6, 2019 Hr'g. Transcript at 32 (W.D. Pa.). In approving the *GSE Bonds* settlements, the court complimented "the high quality of plaintiffs' counsels' work, both in briefs and oral argument." *GSE Bonds*, 2020 WL 3250593, at *4 (S.D.N.Y. June 16, 2020).

31. Scott+Scott has been repeatedly recognized by antitrust advocacy groups for its achievements. Scott+Scott has received the American Antitrust Institute's Outstanding Antitrust Litigation Achievement Award three times: in 2014 (*Private Equity*), 2018 (*ISDAfix*), and 2020 (*GSE Bonds*). American Antitrust Institutes' 2021 "Antitrust Annual Report" recognized that Scott+Scott:[6]

    a. Had achieved the ***#1 Largest Antitrust Recovery*** (*FX*), and 4 of the Top 25 Antitrust Recoveries in the past decade;

    b. Was ***#1 overall*** in the past decade with the largest average settlement dollar amount per settlement of ***$84,825,543***.

    c. Was ***#2 overall*** in the past decade for Lead Counsel in Class Recovery in terms of aggregate class settlements in total dollar value.

32. Scott+Scott is also committed to diversity and inclusion. Scott+Scott has been repeatedly recognized in Law360's Glass Ceiling Reports, which honors firms that "are demonstrating that the industry's gender diversity goals can turn into a measurable result, and boost the number of women at all levels of a law firm."

---

[6] Laura Alexander, et al., *The Role of Private Antitrust Enforcement in a Time of Change*, AMERICAN ANTITRUST INSTITUTE (May 24, 2022), https://www.antitrustinstitute.org/wp-content/uploads/2022/05/ HuntingtonCommentary2022-FINAL-for-Posting.pdf.

### III. SCOTT+SCOTT IS WILLING TO COMMIT THE ATTORNEYS AND RESOURCES THIS LITIGATION REQUIRES

33. Scott+Scott has the financial resources necessary to represent the Multifamily Plaintiffs in this action and will commit the resources necessary to vigorously litigate this case through to the end.

34. Scott+Scott served as co-lead counsel in *FX*, an antitrust action alleging major banks conspired to fix foreign exchange rates. Approved settlements for the class totaled over $2.3 billion. Because of the amount (data from over 7,000 files from 30 different trading systems amounting to 10 billion rows and 6.5 terabytes), sensitivity, and parameters of the data produced in *FX*, off-the-shelf software solutions could not be used and, instead, Scott+Scott created and continues to maintain a secure environment for hosting and analyzing the transactional data produced in that case and others since. This entailed a sizeable ongoing investment from Scott+Scott. Scott+Scott is prepared to make a similar investment in this case and is well placed to host and analyze the substantial transaction data RealPage can be expected to produce.

35. In *FX*, Scott+Scott advanced in excess of $10,000,000 in costs. Declaration in Support of Attorneys' Fees, *FX*, ECF No. 939-2, at Exhibit 2 (S.D.N.Y. Jan. 12, 2018). Similarly, in *ISDAfix*, Scott+Scott advanced approximately $4.15 million in costs. Declaration in Support of Attorneys' Fees, *ISDAfix*, ECF No. 701, at Exhibit 3 (S.D.N.Y. Sept. 28, 2018). Scott+Scott is likewise willing and able to front large costs in this case to make sure Multifamily Plaintiffs are properly represented.

### IV. SCOTT+SCOTT HAS A DEMONSTRATED ABILITY TO WORK COOPERATIVELY, PROFESSIONALLY AND RESPECTFULLY WITH OTHERS

36. The counsel ultimately responsible for guiding the Multifamily Plaintiffs through this litigation have a daunting task ahead of them. Defendants will no doubt put up a strong, well-

funded and vigorous defense. To successfully litigate this case, it will take a significant amount of time, resources (financial and staffing), and dedication. Moreover, while successfully litigating this case will require legal acumen and resources – which Scott+Scott possess – collegiality, professionalism, and the ability to work constructively across both sides of the 'v' will be of crucial importance given the number of parties involved.

37. Scott+Scott has a demonstrated ability to work constructively with firms from across the plaintiffs' bar and professionally with firms from across the table at the defense bar. As discussed above, Scott+Scott is currently lead or co-lead counsel in over 60 class actions, partnering with dozens of other firms, including many in the Watters Plaintiffs' Application, but also many in other applications. Defendants in this MDL have already engaged dozens of defense firms. Scott+Scott is currently litigating vigorously, but professionally, against nearly all of these firms in other matters.

## V. SCOTT+SCOTT AND THE PLAINTIFFS WE REPRESENT SUPPORT THE OTHER APPOINTMENTS PROPOSED IN THE SCOTT & RK'S LEADERSHIP APPLICATION

38. I am familiar with the firms who are seeking appointment to the Plaintiffs' Steering Committee as part of the Application. Indeed, Scott & RK were the driving force behind gathering the outstanding lineup of attorneys and firms in the Application. My firm's prior experience with the counsel applying for positions on the Plaintiffs' Steering Committee gives me great confidence that these lawyers will prove invaluable assets to the Multifamily Plaintiffs. For example, Scott+Scott has the pleasure of serving with Cafferty Clobes Meriwether & Sprengel LLP as co-lead counsel in *Cattle*, and previously served with Lowey Dannenberg, P.C. as co-lead counsel in *GSE Bonds*. Scott+Scott worked closely with Korein Tillery in *FX*, and is working with Kozyak Tropin & Throckmorton LLP in *Managed Care*. Based upon this experience, I support the

appointment of the firms seeking appointment to the Plaintiffs' Steering Committee, pursuant to the Watters Plaintiffs' Leadership Application.

39. Finally, I am personally familiar with Tricia Herzfeld, Esq. of Herzfeld, Suetholz, Gastel, Linkso, and Wall, PPLC. Scott+Scott has been working with Attorney Herzfeld litigating opioid cases in various states since at least 2019. Attorney Herzfeld helped plaintiffs in those cases coordinate with a consortium of State Attorneys General who were actively litigating opioid claims on behalf of their respective states. Attorney Herzfeld is a highly intelligent, very capable attorney with solid trial experience. Based upon these experiences, I support the appointment of Attorney Herzfeld as Plaintiffs' Liaison Counsel, pursuant to the Application.

40. I declare under the penalty of perjury that the foregoing is true and correct. Executed on this 6th day of June, 2023 in Colchester, Connecticut.

*/s/ Patrick J. McGahan*
Patrick J. McGahan