# EXHIBIT A

# KOREIN TILLERY
*Attorneys at Law*
www.koreintillery.com

| One U.S. Bank Plaza | 707 Broadway, Suite 1410 | 205 North Michigan, Suite 1950 |
| --- | --- | --- |
| 505 N. 7th Street, Suite 3600 | San Diego, CA 92101 | Chicago, IL 60601-4269 |
| St. Louis, MO 63101 | Tel: 619.625.5620 | Tel: 312.641.9750 |
| Tel.: 314.241.4844 | Fax: 314.241.3525 | Fax: 312.641.9751 |
| Fax: 314.241.3525 | | |

Korein Tillery – based in St. Louis, Chicago and San Diego – is one of the country's most successful plaintiffs' complex-litigation firms, representing a broad array of clients in high-stakes lawsuits and delivering over $18 billion in verdicts and settlements over the last 14 years. Most of our attorneys have represented both plaintiffs and defendants at some point in their careers, and, combined, we've handled cases covering virtually every conceivable substantive area of the law. We've litigated cases for clients ranging from individuals and certified classes to governmental entities and billion-dollar, multi-national corporations. Collectively, we've tried over 100 cases to verdict, with several verdicts exceeding 10 figures. Our attorneys have been nominated for numerous regional and national trial lawyer awards, and we've won many landmark decisions in state and federal appellate courts, including the Supreme Court of the United States.

The National Law Journal has consistently deemed Korein Tillery to be one of the country's top plaintiffs' firms by naming it to its "Plaintiffs' Hot List" seven times in the past 15 years. In 2014 and 2015, Korein Tillery was named by the NLJ as a member of its top 50 Elite Trial Lawyers. The American Bar Association's Securities Litigation Journal deemed two of Korein Tillery's cases, *Kircher v. Putnam Funds Trust,* 547 U.S. 633 (2006) and *Merrill Lynch Pierce Fenner & Smth, Inc. v. Dabit,* 547 U.S. 71 (2006), the two most important securities law decisions in 2006. Securities Litigation Journal, *Top 10 Securities Law Decisions of 2006* (Winter 2006). In *Kircher*, Korein Tillery served as lead counsel for the plaintiffs' class from the initial trial court filing to the Supreme Court of the United States, where the Court reversed the Seventh Circuit in a 9-0 decision.

Korein Tillery has been appointed as class counsel in scores of class actions and has successfully negotiated some of the country's largest class action settlements. *See, e.g.*, *Parker v. Sears Roebuck & Co.*, Case No. 04-L-716 (Ill. Cir. Ct. Jan. 16, 2008) (settlement valued at $544.5 million); *Cooper v. The IBM Pers. Pension Plan*, 2005 WL 1981501, 35 Employee Benefits Cas. 2488 (S.D. Ill. Aug. 8, 2005) ($325 million settlement); *Sparks v. AT&T Corp.*, 96-LM-983 (Ill. Cir. Ct. Nov. 4, 2002) ($350 million settlement); *Sullivan v. DB Investments, Inc.*, 04-2819 (D.N.J. May 22, 2008) ($323 million settlement); *Folkerts v. Illinois Bell Tel. Co.*, 95-L-912 (Ill. Cir. Ct. July 7, 1998) ($252 million settlement); *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 2004 WL 287902, 32 Employee Benefits Cas. 1362 (S.D. Ill. Jan. 22, 2004) ($240 million settlement); *Malloy v. Ameritech*, 98-488-GPM (S.D. Ill. July 21, 2000) ($180 million settlement); *City of Greenville v. Syngenta Crop Prot., Inc*., 3:10-CV-188-JPG-PMF, 2012 WL 1948153 (S.D. Ill. May 30, 2012) ($105 million settlement); *In Re: MCI Non-Subscriber Tel. Rates Litig.*, MDL 1275 (S.D. Ill. Apr. 19, 2001) ($99 million settlement); and *Dunn v. BOC Group Pension Plan*, 01-CV-382-DRH (S.D. Ill. Mar. 12, 2004) ($70 million settlement).

*Korein Tillery is a Limited Liability Company*

# KEY TEAM MEMBERS

*Christopher M. Burke*:

Christopher Burke is a partner at Korein Tillery's San Diego office. Mr. Burke's principal practice is complex antitrust litigation, particularly in the financial services industry. Mr. Burke received his B.A. from The Ohio State University (1984), his Master's degree from William & Mary (1988), and his M.A. (1989), and Ph.D. (1996) in political science from the University of Wisconsin. He received his law degree from University of Wisconsin (1993).

Mr. Burke has been lead counsel in some of the world's largest financial services antitrust matters. He is currently co-lead counsel in *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, 13-cv-7789 (S.D.N.Y.) (FX litigation) ($2.3 billion settlement). He previously served as co-lead counsel in *In re GSE Bonds Antitrust Litig.*, Case No. 19-cv-01704 (S.D.N.Y.) ($386.5 million settlement) and *Alaska Electrical Pension Fund v. Bank of America Corp.*, 14-cv-7126 (S.D.N.Y) (ISDAfix litigation) ($504.5 million settlement).

Mr. Burke has served as co-lead counsel in *Dahl v. Bain Capital Partners*, 07-cv-12388 (D. Mass.) ($590.5 million settlement); A*xiom Investment Advisors, LLC, by and through its Trustee, Gildor Management LLC v. Barclays Bank PLC*, 15-cv-09323 (S.D.N.Y.) ($50 million settlement); *In re Currency Conversion Antitrust Litig.*, MDL No. 1409 (S.D.N.Y.) ($336 million settlement); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, MDL No. 1720 (E.D.N.Y.) ($5.6 billion settlement); *LiPuma v. American Express Co.*, No. 1:04-cv-20314 (S.D. Fla.) ($90 million settlement).

Mr. Burke was also co-lead counsel for indirect purchasers in *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, MDL No. 1891 (C.D. Cal.) ($86 million settlement), and *In re Prudential Ins. Co. of America SGLI/VGLI Contract Litig.*, No. 11-md-2208 (D. Mass.) ($40 million settlement). He was one of the original lawyers in the *In re Wholesale Elec.* antitrust cases in California, which settled for over $1 billion. Mr. Burke also investigated and filed the first complaint in *In re Credit Default Swaps Antitrust Litig.*, 13-md-2476 (S.D.N.Y.).

Mr. Burke was lead trial counsel in the FX litigation and one of the trial counsel in *Schwartz v. Visa*, No. 822505-4 (Alameda Cty. Super. Ct.) ($780 million plaintiff's judgment after six months of trial); *In re Disposable Contact Lens Antitrust Litig.*, MDL No. 1030 (M.D. Fla.) ($90 million settlement with final settlements occurring during trial); and *Ross v. Bank of America N.A.*, No. 05-cv-7116, MDL No. 1409 (S.D.N.Y.) and *Ross v. American Express Co.*, No. 04-cv-5723, MDL No. 1409 (S.D.N.Y.).

Mr. Burke frequently lectures at professional conferences and CLEs on competition matters, including litigation surrounding financial benchmarks, class-barring arbitration clauses, the effects of *Twombly* in 12(b)(6) motions, and the increasing use of experts at class certification and trial. The American Antitrust Institute ("AAI") honored Mr. Burke with an Outstanding Antitrust Litigation Achievement in Private Law Practice award at their 2020 and 2018 Antitrust Enforcement Awards for efforts in the *GSE Bonds* and *ISDAfix* litigations, respectively. In 2014,

he was also recognized for his exemplary work in the *Dahl v. Bain Capital Partners* matter by the AAI and has regularly been designated as a Super Lawyer by Thomson Reuters.

Mr. Burke has also served as an Assistant Attorney General at the Wisconsin Department of Justice and has lectured on law-related topics, including constitutional law, law and politics, and civil rights at the State University of New York at Buffalo and at the University of Wisconsin. Mr. Burke's book, *The Appearance of Equality: Racial Gerrymandering, Redistricting, and the Supreme Court* (Greenwood, 1999), examines conflicts over voting rights and political representation within the competing rhetoric of communitarian and liberal strategies of justification.

Mr. Burke co-authored an article with Stephanie A. Hackett, David W. Mitchell, Simon J. Wilke, Melanie Stallings Williams, Michael A. Williams, and Wei Zhao, "Masters of the Universe: Bid Rigging by Private Equity Firms in Multibillion Dollar LBOs," 87 U. Cin. L. Rev. 29 (2018).

*Walter W. Noss*:

Walter Noss is a partner at Korein Tillery's San Diego office. Mr. Noss practices complex federal litigation with an emphasis on prosecuting antitrust actions on both a class-wide and individual, opt-out basis. While his practice area has focused on cases involving financial markets, he has litigated cases across a range of markets, including commodity products, pharmaceuticals, and labor. He received his B.A. in Economics from the University of Toledo (1997) and his law degree from The Ohio State University College of Law (2000).

Mr. Noss currently represents class plaintiffs in *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 1:13-cv-07789 (S.D.N.Y.) (FX litigation), an action challenging collusion in the foreign exchange market. He serves as one of the primary litigators responsible for the prosecution of the case. Defendants have paid over $2.3 billion in settlements.

Other representative financial class action antitrust litigation in which Mr. Noss has represented class plaintiffs includes *Dahl v. Bain Capital Partners LLC*, No. 1:07-cv-12388 (D. Mass.), a case challenging collusion among private equity firms, and *Alaska Electrical Pension Fund v. Bank of America Corp.*, No. 1:14-cv-07126 (S.D.N.Y.), an action regarding the setting of the ISDAfix benchmark interest rate. The *Dahl* and *Alaska* actions settled for $590.5 million and $504 million, respectively.

Mr. Noss represented the indirect purchaser class plaintiffs in *Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited Company*, No. 2:12-cv-03824 (E.D. Pa.), a case challenging monopolistic conduct known as "product hopping" by the defendants. In *Mylan*, he was appointed sole lead counsel for the indirect class, and directed their prosecution and eventual settlement of the case for $8 million.

Mr. Noss also represents corporate opt-out clients, including, for example, in *In re: Aluminum Warehousing Antitrust Litig.*, MDL No. 2481 (S.D.N.Y.), a case challenging collusion regarding the spot metal price of physically-delivered aluminum. Reflecting the global nature of the alleged conspiracy, Mr. Noss coordinated separate, but related, actions in both the United States and United Kingdom in an effort to maximize global recovery for his clients. He has previously represented opt-out clients in *In re Rubber Chemicals Antitrust Litig.*, MDL No. 1648 (N.D. Cal.); *In re Polychloroprene Rubber (CR) Antitrust Litig.*, MDL No. 1642 (D. Conn.); and *In re Plastics Additives (No. II) Antitrust Litig.*, MDL No. 1684 (E.D. Pa.), which were cases involving price-fixing by horizontal competitors in the synthetic rubber industry.

In addition, Mr. Noss has tried civil actions in federal court. He was one of the trial counsel in the FX litigation. In April 2011, Mr. Noss served as lead trial counsel in *Novak v. Gray*, No. 8:09-cv-00880 (M.D. Fla.), winning a $4.1 million jury verdict for breach of oral contract and fraudulent inducement. In December 2009, Mr. Noss served as plaintiffs' local counsel at trial in *Lederman v. Popovich*, No. 1:07-cv-00845 (N.D. Ohio), resulting in a $1.8 million jury verdict for plaintiffs on claims of breach of fiduciary duties, conversion, and unjust enrichment. In January and February 2006, Mr. Noss assisted the trial team for *In re Scrap Metal Antitrust Litig.*, No. 1:02-cv-0844 (N.D. Ohio 2006), resulting in a $34.5 million class action plaintiffs' verdict.

Prior to joining Korein Tillery in 2022, Mr. Noss served as the managing partner of Scott+Scott Attorneys at Law's San Diego office from 2011 to 2022. Mr. Noss began his legal career as an associate in the Cleveland, Ohio office of Jones Day. In his spare time, Mr. Noss enjoys sailing his boat in the Pacific Ocean off the southern California and Mexican coastlines.

*Randall P. Ewing*:

Randall P. Ewing, Jr., is a partner in Korein Tillery's Chicago office. Randall represents clients in all facets of high-stakes, complex litigation in federal and state court, including case investigation, preparing pleadings, taking and defending fact and expert depositions, working alongside experts, managing discovery, briefing dispositive and other legal issues, preparing witnesses for trial, conducting cross-examinations in a federal jury trial, and appeals.

At Korein Tillery, Mr. Ewing's successful representations include:

- Representing the National Credit Union Administration Board in suing various banks in federal courts from New York to California over allegedly misrepresented mortgage-backed securities, which has resulted in recoveries exceeding $5.2 billion;
- Representing a class of investors suing international banks for an alleged global antitrust conspiracy within the markets for foreign currency exchange instruments, which resulted in over $2.2 billion in settlements;
- Representing a class of investors suing international banks for an alleged global antitrust conspiracy in the secondary market for bonds issued by the government-sponsored entities Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Federal Farm Credit Banks, and Federal Home Loan Banks, resulting in $386 million in settlements; and
- Representing classes of investors in litigation against banks for improperly delaying or rejecting electronic foreign currency exchange trades, which resulted in a $50 million settlement.

Before joining Korein Tillery, Mr. Ewing worked as a litigation associate at Boies Schiller Flexner LLP. Among other trials, arbitrations, and appeals in which he was involved, Mr. Ewing was part of the team that represented Barclays Bank in relation to multi-billion dollar claims arising from its acquisition of Lehman Brothers during the 2008 financial crisis, which resulted in a complete victory for Barclays after an extended trial and multiple appeals. Randall was also part of the team that brought a first-of-its-kind federal challenge to a state constitutional amendment banning same-sex marriage (California's Proposition 8), which was tried and found to be unconstitutional, and he was responsible for briefing dispositive issues in a False Claims Act trial that resulted in the largest relator-only jury verdict in history.

Mr. Ewing earned his J.D., summa cum laude, from the University of Louisville Law School, where he earned the highest grade in nearly half of the classes he took, represented the school at several national moot court competitions, was a member of the Law Review, and interned for federal and state appellate judges. After law school, Randall worked for two years as a law clerk to federal appellate and district court judges.

*Yifan (Kate) Lv*:

Yifan (Kate) Lv is an attorney at Korein Tillery's San Diego office. Ms. Lv received her master degree of law from Renmin University of China in 2010 and her J.D. from William and Mary Law School in 2014. She is licensed in New York and California.

Ms. Lv's practice focuses on complex antitrust litigation in the financial and technology industries. Ms. Lv has experience across various stages of the litigation process, from pre-suit investigations and evaluations, preparing pleadings, briefing dispositive motions, pursuing and defending discovery, working with experts, to mediation, jury trial, and appeal. Ms. Lv currently represents class plaintiffs in *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 1:13-cv-07789 (S.D.N.Y.) challenging collusion among market makers in the foreign exchange market. Defendants have paid over $2.3 billion in settlements and Ms. Lv was part of the trial team in the jury trial against Credit Suisse defendant. Ms. Lv also represents publisher class plaintiffs in *In re: Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC), challenging Google's anticompetitive conduct to acquire and maintain monopoly power over the markets for ad tech products.

Prior to joining Korein Tillery in 2022, Ms. Lv worked as an associate at Scott+Scott Attorneys at Law's San Diego office, where she gained extensive experience in antitrust litigation practice. Other than English, Ms. Lv is fluent in Mandarin.

## THE FIRM'S RECENT WORK

## ANTITRUST LITIGATIONS

***In re: Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-cv-07789-LGS (S.D.N.Y.):** The global foreign exchange ("FX") market for currency is a $5-trillion-per-day market, with the dominant dealers representing over 90 percent of the global FX market. Beginning as early as 2007 and continuing through 2013, these dealers used communications in multiple secret chat rooms to conspire to fix prices in dozens of currency pairs, manipulate FX benchmark rates, and exchange key confidential customer information in an attempt to trigger client stop loss orders and limit orders. These dealers constituted some of the largest financial institutions in the world, including Bank of America, Barclays, Bank of Tokyo Mitsubishi, BNP Paribas, Citigroup, Credit Suisse, Deutsche Bank, Goldman Sachs, HSBC, JPMorgan Chase & Co., Morgan Stanley, Royal Bank of Scotland, RBC, Société Générale, Standard Chartered, and UBS.

Korein Tillery, working with co-counsel Scott+Scott Attorneys at Law LLP and Hausfeld LLP, developed and filed a class action on behalf of individuals who entered into FX transactions in over-the-counter market and/or on exchanges with these dealers, alleging violations of Sections 1 and 3 of the Sherman Antitrust Act and violations of the Commodity Exchange Act. As a result of work by Korein Tillery and its co-counsel costing the firms approximately $45 million in case-related expenses, $2.3 billion in court-approved settlements have been reached with 15 of the 16

defendants, constituting one of the largest antitrust class action recoveries in history. Mediator Kenneth Feinberg concluded that this settlement would "represent[ ] some of the finest lawyering toward a negotiated resolution that I have witnessed in my career" and described Korein Tillery and its co-counsel as "superlative, sophisticated, and determined plaintiffs' lawyers."

***In re GSE Bonds Antitrust Litigation***: Korein Tillery, along with co-counsel, alleged antitrust violations arising from coordinated price-fixing in the secondary market for bonds issued by the government-sponsored entities Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Federal Farm Credit Banks, and Federal Home Loan Banks ("GSE Bonds"). Plaintiffs defeated two motions to dismiss and reached a settlement with all defendants, including Deutsche Bank Securities Inc., First Tennessee Bank, N.A., FTN Financial Securities Corp., Goldman Sachs & Co. LLC, Barclays Capital Inc., BNP Paribas Securities Corp., Cantor Fitzgerald & Co., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, HSBC Securities (USA) Inc., J. P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Inc., Morgan Stanley & Co., LLC, Nomura Securities International, Inc., SG Americas Securities LLC, TD Securities (USA) LLC, and UBS Securities LLC. The combined settlement provided $386.5 million to class members and was approved by the court on June 18, 2020.

***Sullivan v. DB Investments, Inc.***: Korein Tillery represented a nationwide class of diamond purchasers in an antitrust case against the country's largest diamond distributor. That case was consolidated with others in the Eastern District of Pennsylvania and Korein Tillery was appointed co-lead counsel. In that role, the firm helped negotiate injunctive relief and a nationwide settlement that created a $323 million fund to compensate diamond purchasers.

***In re In re Google Digital Publisher Antitrust Litigation***: Korein Tillery was appointed interim co-lead counsel representing a class of online publishers that sell ad space on their websites using tools that they purchase from Google. Plaintiffs allege that Google engaged in a series of mutually reinforcing anticompetitive acts in adjoining markets to acquire and maintain monopoly power over the markets for these tools, in violation of the Sherman Act and California's Unfair Competition Law.

***In re: Google Play Consumer Antitrust Litigation***: Korein Tillery, working with co-counsel, filed the first consumer class action in the nation alleging that Google's operation of Google Play Store and Google Play Billing, among other actions, created a wrongful monopoly over the distribution of applications and payment for in-application purchases in the Android ecosystem. Over ten similar complaints followed and are now consolidated before Judge James Donato in the Northern District of California, where Korein Tillery serves as a member of the consumer class steering committee.

## OTHER CLASS ACTIONS AND COMPLEX LITIGATIONS

***National Credit Union Administration Mortgage-Backed Securities Litigation***: The National Credit Union Administration ("NCUA") is the independent federal agency created by the U.S. Congress to regulate, charter, and supervise federal credit unions. On behalf of the NCUA, Korein Tillery and co-counsel Kellogg, Hansen, Todd, Figel & Frederick filed approximately 20 federal lawsuits throughout 2011-2013 alleging that Wall Street investment banks misled credit unions about the quality of certain residential mortgage-backed securities ("RMBS"), causing billions of dollars of losses that the NCUA insured. More specifically, NCUA alleged that these banks violated the Federal Securities Act by representing in federally-regulated offering documents that all loans backing the RMBS complied with originator underwriting guidelines or had sufficient compensating factors to allow exceptions to the guidelines when in fact the majority of the loans

did not.

Throughout several years of contentious litigation, involving several successful appeals, Korein Tillery and Kellogg Hansen obtained more than $5.1 billion in legal settlements on NCUA's behalf, including but not limited to:

- *NCUA v. JP Morgan Chase Bank*, 2:13-cv-02012-JWL (D. Kan.) (obtained $1.4 billion settlement in Dec. 2013);
- *NCUA v. RBS Sec., Inc.*, 1:13-cv-06726-DLC (S.D.N.Y.) (accepted offer of judgment for $129.6 million plus fees in Sept. 2015);
- *NCUA v. Barclays Capital, Inc.*, 1:13-cv-06727-DLC (S.D.N.Y.) & 2:12-cv-02631-JWL (D. Kan.) (obtained $325 million combined settlement in Oct. 2015);
- *NCUA v. Wachovia Capital Markets LLC*, 1:13-cv-06719-DLC (S.D.N.Y.) & 2:11-cv-02649-JWL (D. Kan.) (obtained $53 million combined settlement in Oct. 2015);
- *NCUA v. Morgan Stanley & Co., Inc.*, 1:13-cv-06705-DLC (S.D.N.Y.) & 2:13-cv-02418-JWL (D. Kan.) (obtained $225 million combined settlement in Dec. 2015);
- *NCUA v. Goldman Sachs and Co.*, 1:13-cv-06721-DLC (S.D.N.Y.) & 2:11-cv-06521-GW-JEM (C.D. Cal.) (obtained $575 million combined settlement in Apr. 2016);*NCUA v. RBS Sec., Inc. et al.*, 11-cv-2340- JWL-JPO (D. Kan.) & 2:11-cv-05887 GW- JEM (C.D. Cal.) (obtained $1.1 billion combined settlement in Sept. 2016);
- *NCUA v. UBS Securities, LLC*, 2:12-cv-02591-JWL (D. Kan.) (obtained $445 million settlement in Mar. 2017); and
- *NCUA v. Credit Suisse Sec. (USA) LLC*, 2:12-cv-02648-JWL (D. Kan.) (obtained $400 million settlement in Mar. 2017).

NCUA was the first federal regulatory agency for depository institutions to recover losses from investments in these securities on behalf of failed financial institutions. NCUA uses the net proceeds to reduce Temporary Corporate Credit Union Stabilization Fund (Stabilization Fund) assessments charged to federally insured credit unions to pay for the losses caused by the failure of five corporate credit unions.

Korein Tillery and Kellogg Hansen continue to prosecute several lawsuits on behalf of the NCUA against certain RMBS trustees regarding their alleged failure to perform their duties.

***Senne v. The Office of the Comm'r of Baseball*, No. 14-CV-00608-JCS (N.D. Cal.):** In this action, Korein Tillery is co-lead counsel for a class of minor league baseball players who allege that MLB and MLB's member franchises failed to pay the players minimum wage, required overtime pay, or sometimes any wages at all. The players assert two claims under the federal Fair Labor Standards Act ("FLSA") and an additional thirty-one under the wage-and-hour laws of several states.

Early in the case, the court denied a motion to transfer the action to another venue, and denied a motion to dismiss for purported lack of standing. *See Senne*, 2015 WL 4240716 (N.D. Cal. July 13, 2015). On October 20, 2015, the Court granted the players conditional certification of a collective under the Fair Labor Standards Act. *Senne*, 2015 WL 6152476 (N.D. Cal. Oct. 20, 2015). A court-directed notice was sent, and around 2,300 players joined the collective.

In March 2017, the court certified a Rule 23 class of minor leaguers who played in California.

that no class should have been certified, and the players arguing that the court should have certified additional classes. On August 16, 2019, the Ninth Circuit agreed with the players. It affirmed the certification of the class of players who worked in California, and it certified additional classes for players who worked during spring training and other periods in Arizona and Florida. MLB petitioned the Ninth Circuit for an *en banc* re-hearing, which was denied, and then petitioned the U.S. Supreme Court for review, which was also denied. 934 F.3d 918 (9th Cir. 2019), cert. denied, 141 S. Ct. 248 (2020).

In March 2022, the district court issued a landmark summary judgment decision that, for the first time ever, recognized that minor league players are employees under wage-and-hour laws. Less than a month before trial, Korein Tillery negotiated a settlement that resulted in players receiving back pay and MLB rescinding unfair rules and contractual provisions that required players to work long hours without any pay for much of the year. Those contractual rules had been in place for over 50 years. The $185 million settlement on behalf of thousands of minor league baseball players is believed to be one of the five largest wage-and-hour settlements ever.

***United States ex rel. Garbe v. Kmart Corp.*, 3:12-cv-00881-NJR-PMF (S.D. Ill.):** Since 2004, Kmart pharmacies have charged low, flat-rate prices for certain generic drug prescriptions when those drugs are purchased by customers who paid entirely out of their own pockets with no insurance coverage. Since the beginning of the Medicare Part D drug program on January 1, 2006, however, Kmart has charged higher prices – often significantly higher prices – to customers with Medicare Part D coverage than it charges self-paying customers for the same prescription. For example, Kmart charged cash customers $10 for a 60-day supply of 500 mg Naproxen (available in non-prescription strength as Aleve®), but charged the Government $58.79 for the same prescription.

Korein Tillery and Co-Counsel Phillips & Cohen filed a False Claims Act case against Kmart after the Government declined to intervene. In the litigation, Kmart never disputed that it charges cash-paying customers lower prices than it charges to the Government. Instead, Kmart contended that it was never required to charge the Government the lower prices because those are not the prices Kmart charges to "the general public." Rather, Kmart claimed its cash-customers are not the "general public" but rather members of an exclusive "club" through which they are offered the discount prices, even though as a practical matter the discount prices are the prices Kmart charges to all its cash customers. Kmart also has no record of denying any cash-paying customer "membership" in Kmart's "club." The U.S. District Court for the Southern District of Illinois rejected Kmart's arguments and denied its motions for summary judgment. Kmart appealed, but the Seventh Circuit affirmed the district court in large part. *United States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632 (7th Cir. 2016). After remand, the case settled in late 2017 with Kmart agreeing to pay approximately $59 million.

***Missouri Utility Tax Litigation*:** Since 2007, Korein Tillery has represented Missouri municipalities in class action litigation that sought to recover unpaid license taxes. In suits against wireless and wireline carriers, Korein Tillery attorneys recovered hundreds of millions of dollars of license tax revenues – both retrospectively and prospectively – for more than 350 cities throughout Missouri. Korein Tillery has recovered more than $1 billion for Missouri municipalities. As a result of their work in these cases, the Missouri Lawyers Weekly recognized Korein Tillery partners John W. Hoffman and Douglas R. Sprong with awards in the "largest plaintiff wins" category in 2007, 2009, 2010, 2015, and 2017.

In 2012, Korein Tillery was successful in persuading the Supreme Court of Missouri to issue an extraordinary writ (mandamus) declaring unconstitutional a state statute that sought to sweep away

this litigation by barring cities and towns from serving as class representatives. *State ex rel. Collector of Winchester v. Jamison*, 357 S.W.3d 589 (Mo. 2012).

***Mansfield v. ALPA*, 06-cv-6869 (N.D. Ill.):** Beginning in 2001, United Airlines encountered financial difficulties that ultimately culminated in its filing for bankruptcy protection. During the course of United's reorganization in bankruptcy, United sought to terminate its pilots' defined benefit pension plan. In exchange for ALPA's agreement not to oppose the termination of the pension plan, United agreed to provide ALPA with $550 million in convertible notes. ALPA, through its United Airlines Master Executive Council ("MEC"), was tasked with allocating the proceeds from the sale of the convertible notes among the pilots. The MEC selected an allocation method that divided the note proceeds based upon each pilot's lost accrued benefits and lost projected benefits.

Korein Tillery filed this case in 2006 contending that ALPA breached its duty of fair representation in discriminating between its members in allocating the proceeds from the sale of $550 million in convertible notes. Korein Tillery prevailed on a number of complex and novel issues in the trial court. For example, ALPA moved to exclude retirees from the class, arguing that a union owes no duties to retired pilots under the Railway Labor Act. The court denied ALPA's motion, agreeing with plaintiffs that because ALPA represented the retirees when it negotiated the convertible notes, it owed them a duty even though the retirees were no longer a part of the bargaining unit. *Mansfield v. ALPA*, 2007 WL 2903074 (N.D. Ill. Oct. 1, 2007). After, Korein Tillery also successfully opposed motions for summary judgment, 2009 WL 2386281 (N.D. Ill. Jul. 29, 2009), and to decertify the class, 2009 WL 2601296 (N.D. Ill. Aug. 20, 2009), the parties reached a settlement two weeks before trial. Per the settlement, ALPA funded an aggregate settlement fund of $44 million to be paid directly to class members. *Mansfield v. ALPA*, No. 06C6869 (N.D. Ill. Dec. 14, 2009). The settlement is believed to be one of the largest ever in a duty of fair representation case, in which unions are sued over their responsibility to fairly represent their members.

***Williams v. Rohm & Haas Pension Plan*, 4:04-cv-0078-SEB-WGH (S.D. Ind.):** Korein Tillery filed this class action in 2002 alleging that the Rohm & Haas Pension Plan violated ERISA by failing to include the value of future cost-of-living adjustments (COLA) in calculating lump-sum distributions from the Plan. After eight years of litigation, Korein Tillery obtained one of the largest settlements in the history of ERISA – $180 million. In 2006, the case was certified and Korein Tillery won summary judgment convincing the district court that the terms of the Plan violated ERISA because a COLA is an "accrued benefit" requiring that it be included in lump-sum distributions. The district court's decision was affirmed on interlocutory appeal. *Williams v. Rohm & Haas Pension Plan*, 497 F.3d 710, 714 (7th Cir. 2007) ("If a defined benefit pension plan entitles an annuitant to a COLA, it must also provide the COLA's actuarial equivalent to a participant who chooses instead to receive his pension in the form of a one-time lump sum distribution."), *cert. denied*, 128 S. Ct. 1657 (2008). Settlement approval and the fee award were later affirmed. 658 F.3d 629 (7th Cir. 2011).

***Parker v. Sears, Roebuck & Co.*, Case No.: 04-L-716 (Ill. Cir. Ct. Sept. 18, 2007):** Korein Tillery brought this action against Sears in 2004 to remedy Sears's failure to install anti-tip safety devices, which prevent ranges from tipping over and severely burning or injuring unsuspecting consumers, on ranges that it sold, delivered, and set-up in customers' homes. In the 1960s and 1970s, kitchen range manufacturers started reducing the weight of metal in an effort to competitively lower the price of kitchen ranges. Over the course of several years, advances in materials allowed manufacturers to produce ranges which were durable and light weight. However, because the oven doors on the front of the ranges serve as a lever and fulcrum, the light weight of the new ranges created an extremely dangerous tipping hazard. For example, if a person

were to place a turkey roaster on an open and horizontal oven door, the added weight would cause these newly designed ranges to tip forward, spilling the hot contents onto anyone standing in the vicinity. Children who opened the range and used the door as a step could unwittingly tip boiling liquids onto themselves. Dozens of people had been killed and hundreds had been maimed as a result of this problem.  Recognizing the need for a solution to this dangerous hazard, manufacturers and regulators began  requiring installation of an anti-tip bracket that could be attached to the wall or floor at the back  end of the range, preventing any forward tipping and maintaining complete stability. The installation is simple and the lightweight bracket costs pennies. The rule making bodies of most  codes (BOCA Code, National Electrical Code; numerous other industry codes) thereafter required  the installation of anti-tip brackets in all range installations in the United States. Even Sears  acknowledged that a properly installed anti-tip bracket completely eliminates the hazards of  tipping stoves.

Sears, Roebuck & Company at the time was the largest retail seller of kitchen ranges in the United States– averaging more than 800,000 ranges sold every year.  When selling a gas or electric range, Sears generally includes delivery, installation, and hookup in customers' homes; thus, Sears became the largest installer of kitchen ranges in the United States. To increase its profits, Sears adopted a policy of refusing to install anti-tip brackets during normal installation unless the customer agreed to incur a substantial cost. At the same time, Sears failed to disclose the hazards associated with forgoing anti-tip bracket installation.

In January 2008, the Court granted final approval of a settlement which provided complete relief to the class by requiring Sears to install anti-tip brackets for the affected members of the class as well as requiring the installation of such brackets in the future. The settlement is valued at more than $544.5 million.

This settlement was touted by the public interest organization Public Citizen as an example of how consumer class actions benefit society.  Public Citizen nominated Stephen Tillery as Trial Lawyers for Public Justice's Trial Lawyer of the Year based upon his role in this case.

***Hoormann v. SmithKline Beecham Corp.*, 04-L-715 (Ill. Cir. Ct. May 17, 2007):** In July 2004, Korein Tillery filed suit on behalf of a nationwide class of purchasers alleging that SmithKline Beecham promoted Paxil® and Paxil CR™ for prescription to children and adolescents despite having actual knowledge that these drugs exposed children and adolescents to dangerous side effects while failing to treat their symptoms. Following three years of litigation, Korein Tillery obtained a settlement that established a $63.8 million dollar fund to reimburse class members 100 percent of their out-of-pocket expenses. This case was featured in The American Lawyer, Aruna Viswanatha, *King & Spalding Lawyer Stirs State Judge's Ire*, [29] 1 Am.Law., Jan. 2007, at 50, and mentioned in the National Law Journal. *The Plaintiffs' Hot List*, 30 Nat'l L.J. S8 (Nov. 22, 2007).

***CUNA Mutual Mortgage-Backed Securities Litigation*:** CMFG Life Insurance Company, CUMIS Insurance Society, Inc., and MEMBERS Life Insurance Company (collectively referred to as "CUNA Mutual") are financial services and insurance firms that offer insurance, investment, and retirement products and services to credit unions and their members. Korein Tillery and Kellogg Hansen filed a series of individual lawsuits in 2011 and 2013 on behalf of CUNA Mutual against eight Wall Street investment banks seeking to recover losses on $300 million of Residential Mortgage Backed Securities ("RMBS") purchases using the novel common-law theory of contract rescission. As in NCUA, CUNA Mutual alleged that the banks misrepresented in offering documents that all loans backing the RMBS complied with originator underwriting guidelines or had sufficient  compensating factors to allow exceptions to the guidelines. CUNA Mutual also

alleged that the banks misrepresented that it conducted due diligence to verify the accuracy of its offering document representations. In mid-2015, an appellate court issued a favorable opinion in CUNA Mutual's bellwether case approving of CUNA Mutual's primary litigation arguments. *CMFG Life Ins. Co. v. RBS Sec., Inc.*, 799 F.3d 729 (7th Cir. 2015). On remand, the case settled in December 2015 for a confidential amount. CUNA Mutual eventually settled its remaining RMBS cases over the next two years for confidential amounts. *See, e.g.*, *CMFG Life Ins. Co. v. Credit Suisse Sec. (USA) LLC*, 3:14-cv-00249-wmc (W.D. Wis.) (settled in Oct. 2017); *CMFG Life Ins. Co. v. Morgan Stanley & Co., LLC*, 3:13-cv-00577-jdp (W.D. Wis.) (settled in Sept. 2017); *CMFG Life Ins. Co. v. J.P. Morgan Sec, LLC*, 3:13-cv-00580-wmc (W.D. Wis.) (settled in Mar. 2016).

***Axiom Investment Advisors, LLC v. Barclays Bank PLC*, No. 15-cv-9323-LGS (S.D.N.Y.):** From 2008 to 2015, Barclays Bank PLC acted as both a buyer and seller of various foreign and domestic currencies through various trading platforms. Instead of executing foreign exchange orders placed by Barclays' customers on these platforms, Barclays instituted a secret "last look" policy that delayed execution of matched trades for several hundred milliseconds or even several seconds which allowed Barclays to determine through its algorithms whether the trade would be unfavorable to its position. If the matched trade would be unfavorable, Barclays reneged on the agreed price and rejected the trade or placed the order at a worse price. Barclays used last look to reject millions of trades that would otherwise have been executed.

Korein Tillery, along with its co-counsel Scott+Scott, Attorneys at Law, LLP and Hausfeld LLP, filed a class action against Barclays Bank PLC regarding its use of "last look," raising breach of contract and other claims. The court appointed Korein Tillery and Scott+Scott as class counsel. Counsel was successful in securing a $50 million settlement from Barclays on behalf of the class, which the court ultimately approved.

***AOT Holding AG and Maize Capital Group, LLC v. Archer Daniels Midland Co.*, 2:19-CV-2240-CSB-EIL (C.D. Ill.):** Korein Tillery currently represents a putative class of entities in a class action lawsuit against Archer Daniels Midland Company ("ADM") in the United States District Court for the Central District of Illinois, alleging that ADM has manipulated a key benchmark for the settlement and pricing of ethanol futures and options contracts traded on the CME dating back to as early as November 2017, costing those entities hundreds of millions of dollars in damages in violation of the Commodity Exchange Act.

The pricing, settlement, and value of various ethanol futures and options contracts are tied directly to the so-called Chicago Ethanol (Terminal) price. This Chicago Ethanol (Terminal) price is determined daily by S&P Global Platts during a 30-minute trading period for ethanol at the Kinder-Morgan fuel terminal in Argo, Illinois.

In their complaint, Plaintiffs AOT Holding AG and Maize Capital Group, LLC, allege that ADM took outsized short positions in ethanol derivatives, betting that the price of ethanol would decrease. ADM then aggressively and uneconomically sold ethanol during the 30-minute window at the Argo Terminal at prices that were below what ADM could have received elsewhere in order

to manipulate the Chicago Ethanol (Terminal) price downward. ADM's downward manipulation of the Chicago Ethanol (Terminal) price in turn artificially increased the value of ADM's massive short positions in ethanol derivatives, thus allowing ADM to reap outsized profits despite low or negative margins on physical ethanol sales.

Plaintiffs have survived a motion to dismiss, have completed extensive fact and expert discovery, and have fully briefed a motion for class certification to the Court, which remains pending. Summary judgment briefing in the litigation is stayed pending resolution of the class certification motion.

## PESTICIDE AND AGRICULTURE-RELATED LITIGATIONS

*Paraquat Litigation*:

Through the utilization of scientific expert testimony in neurology and epidemiology, Korein Tillery's team of 30 lawyers, paralegals and in-house scientists secured a massive, confidential settlement for hundreds of clients who developed Parkinson's disease and other neurological defects as a result of exposure to the weed killer paraquat from Syngenta and Chevron. The investigation and litigation took nine years and involved the review of 70 million pages of documents, as Korein Tillery expended millions of dollars on a "small army of testifying and consulting experts" and hundreds of thousands of hours of "herculean effort" according to one Illinois state judge. Leading experts throughout the world testified in this first ever victory for victims of paraquat exposure.

***City of Greenville v. Syngenta Crop Prot., Inc.*, 3:10-CV-188-JPG-PMF (S.D. Ill.):** On October 23, 2012, the U.S. District Court for the Southern District of Illinois entered an order approving a $105 million class-action settlement designed to compensate Community Water Systems throughout the United States for the cost of removing the pesticide atrazine from public drinking water. The litigation between class members and Syngenta dated back to July 2, 2004, when Holiday Shores Sanitary District filed six separate lawsuits against manufacturers and distributors of atrazine and atrazine-containing products in the Illinois Circuit Court in Madison County.

Atrazine is used to control broadleaf and grassy weeds in a variety of crops, but is applied primarily to corn fields. Atrazine has been one of the most heavily used pesticides in the U.S. Two of atrazine's key chemical characteristics – that it does not readily bind to soil and that it persists in the environment – dramatically increase atrazine's effectiveness as an herbicide. However, because atrazine does not bind to soil, it easily runs off of fields with rainfall and contaminates surface waters such as rivers, lakes, and reservoirs that act as drinking-water supplies for public water providers.

Plaintiffs alleged that atrazine had continuously entered their water supplies, and, as a result of this contamination, they had to filter atrazine from their water sources. After eight years of litigation, Korein Tillery secured a $105 million settlement fund to be distributed to several hundred community water systems for costs of filtration of atrazine from their drinking-water supplies. *City of Greenville v. Syngenta Crop Prot., Inc.*, No. 3:10-CV-188-JPG-PMF, 2012 WL 1948153 (S.D. Ill. May 30, 2012); *see also* 904 F. Supp. 2d 902 (S.D. Ill. 2012) (granting final approval of settlement and attorneys' fees). The settlement amounted to approximately 76 percent of the $139 million estimated to be the Class's maximum potential recovery.

To facilitate the settlement claims process, Korein Tillery lawyers collected 20 years of atrazine testing data into a database that was made available to each class member through a settlement website. From there, Claimants were able to view the test data already collected for their system

and provide additional evidence of atrazine contamination to claim their share of the settlement fund. Although many class actions experience claims rates of less than 15%, in this case virtually all settlement funds were distributed to class members.

Public Justice honored the Korein Tillery lawyers representing the plaintiffs in this case as finalists for its Trial Lawyer of the Year award.