# EXHIBIT F



Portfolio Media. Inc. | 111 West 19th Street, 5th floor | New York, NY 10011 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# Competition Group Of The Year: Hagens Berman

By **Christopher Cole**

Law360 (February 8, 2022, 2:00 PM EST) -- In a colossal win for college athletes, Hagens Berman Sobol Shapiro LLP won a unanimous U.S. Supreme Court ruling that the NCAA cannot restrict players' education-related compensation and benefits, earning the firm a spot among **Law360's 2021 Competition Groups of the Year**.



Hagens Berman also scored a $100 million settlement against Apple over the tech behemoth's App Store commission rates and rules, which software developers claimed are anti-competitive, and reached a string of settlements totaling almost $454 million to resolve claims that pharmaceutical companies plotted to keep prices high on a profitable diabetes drug.

Over the course of a frenetic year, Hagens Berman also oversaw **settlements with poultry giants** in massive antitrust litigation and a

Case 3:23-md-03071    Document 259-8    Filed 06/06/23    Page 2 of 4 PageID #: 1443

**deal** to resolve a class action over a blockbuster birth control pill.

Managing partner Steve Berman said the NCAA case triggered far-reaching effects across the college sports world, and was especially gratifying given the high court's **9-0 ruling** and unexpected criticism of the athletic group from Justice Brett Kavanaugh.

Berman also **represented athletes** in a proposed antitrust class action challenging the NCAA's prohibition on athletes being paid for use of their names, images and likenesses. The athletic group said in June that it would suspend long-held amateurism rules prohibiting college athletes from being paid for the use of their NILs.

"You can see the impact every day," said Berman, pointing to stories profiling how student athletes are monetizing their NILs. He said that the Supreme Court case over the limits on compensation "prompted that kind of attention in America [as to] how these athletes have been exploited."

"The other thing about the case is, it was just a heck of a lot of fun," he added. "It was just an interesting subject. A lot of antitrust cases are really boring, right? You've got a bunch of economists, you're looking at ambiguous emails about whether people were price-fixing or not … and whether that price fix was passed on to consumers. Not really interesting stuff," he said. "Here it was more, What was the basis for the NCAA rules?"

Berman, who played soccer at the University of Michigan, really delved into the subject matter, even wearing his alma mater tie and button to a hearing where he told The Ohio State University's athletic director, one of the witnesses, "Just think of this as Michigan versus Ohio State … me against you. Are you ready?"

The case was remarkable not just for its impact on college sports, but also because it was litigated under the rule of reason, which says potentially anti-competitive behavior must be weighed against possible consumer benefits — a rarely used analysis, but one that worked in the players' favor. Berman pointed out that it was "murky" under high court case law whether the NCAA could even face the lawsuit.

Hagens Berman had a banner year on multiple fronts, including the pharmaceutical world. In September, the firm **announced settlements** with Bausch Health Cos., Salix Pharmaceuticals, Santarus Inc., Assertio Therapeutics Inc. and Lupin Pharmaceuticals totaling $453.85 million.

The deals were reached on behalf of direct purchasers of diabetes drug Glumetza who claimed they overpaid for the brand and generic medication due to an alleged conspiracy to suppress generic competition.

"It was the largest recovery in a Hatch-Waxman case, so I think that's what's significant about it," Berman said, referring to the far-reaching 1984 law that established modern regulation of generic drugs.

The firm's antitrust practice also reached a **$100 million settlement** against Apple regarding its App Store, on behalf of developers who claimed the tech giant "knowingly used its monopoly to implement 'profit-killing' commissions and fees" on their digital wares.

Hagens Berman saw the deal as a big win for iOS developers in the U.S., more than 99% of whom will benefit, also noting that the settlement brought changes to App Store policies and practices regarding transparency. For at least three years, Apple will not raise the 15% commission rate for those participating in its Small Business Program.

Ben Harrington, a partner who worked on the Apple case, called the settlement "a terrific result for the class," saying in an email that the small developers who comprise the settlement class "will receive substantial monetary relief, but beyond that, the settlement also requires that Apple make important structural reforms to the App Store."

Case 3:23-md-03071     Document 259-8     Filed 06/06/23     Page 3 of 4 PageID #: 1444

"Going forward, these reforms will help small developers reach consumers and monetize their apps," Harrington said.

--Additional reporting by Zachary Zagger, Hannah Albarazi and Lauren Berg. Editing by Ellen Johnson.

All Content © 2003-2023, Portfolio Media, Inc.

Case 3:23-md-03071    Document 259-8    Filed 06/06/23    Page 4 of 4 PageID #: 1445