**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II)** | **Case No. 3:23-CV-3071**<br>**MDL-3071**<br><br>**LRO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>**THIS DOCUMENT RELATES TO ALL CASES**<br><br>**District Judge Waverly D. Crenshaw** |

**LRO DEFENDANTS' MEMORANDUM IN SUPPORT OF RULE 12(B)(6)
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

BACKGROUND ..................................................................................................................................2

    I.      Plaintiffs' alleged conspiracy is dependent on their claims of use of non-public competitor data by RealPage's RMS products' pricing algorithms..............2

    II.     Contrary to their allegations regarding RealPage's other RMS products, Plaintiffs have alleged that LRO uses only public information as an input and thus is not anticompetitive. ...............................................................................3

ARGUMENT......................................................................................................................................4

    I.      Plaintiffs' allegations as to LRO fail to allege a plausible conspiracy. ...................6

          A.     Plaintiffs have already admitted LRO's algorithm uses only public information and thus is not anticompetitive.................................................6

          B.     Plaintiffs' conspiracy theory is dependent on all the Defendants' common use of the same algorithm, so it is implausible that LRO was part of a purported conspiracy involving YieldStar and AIRM. .................8

    II.     Plaintiffs rely on impermissible group pleading as to the LRO Defendants. ..........8

CONCLUSION..................................................................................................................................10

Fifteen lessor Defendants ("LRO Defendants")[1] file this Motion to Dismiss because Plaintiffs' "First Amended Consolidated Class Action Complaint" ("FAC") fails to resolve fundamental deficiencies in alleging that Lease Rent Options ("LRO") software is part of the purported antitrust conspiracy. LRO is a legacy revenue management software ("RMS") product that RealPage acquired from The Rainmaker Group in 2017 and has continued to offer to the LRO Defendants. It is one of three different RMS products that Plaintiffs allege RealPage offers, the other two being YieldStar and AI Revenue Management ("AIRM").

While the FAC fails for all the reasons articulated in the Motion to Dismiss concurrently filed by all the Defendants, Plaintiffs' claims against the LRO Defendants suffer from two additional fatal defects. First, Plaintiffs already alleged in their original complaints that LRO's algorithm was designed to use only public information as an input, according to Plaintiffs, to avoid potential antitrust violations. It thus cannot be part of Plaintiffs' claimed conspiracy in which the Defendants allegedly conspired through the use of RealPage revenue management software that allegedly relies upon "non-public proprietary data." In short, even setting aside the FAC's infirmities as to all Defendants, Plaintiffs have pled themselves out of court to the extent they allege a conspiracy involving LRO. Second, despite purportedly conducting an extensive pre-filing investigation, including interviewing at least 10 witnesses, and amending their complaints twice (including again just days before this Motion was filed), Plaintiffs still fail to allege which LRO Defendant used which RealPage product and how the LRO Defendants

---

[1] Bell Partners, Inc.; Brookfield Properties Multifamily LLC; CONAM Management Corporation; Equity Residential; Independence Realty Trust, Inc.; Mid-America Apartment Communities, Inc.; Morgan Properties Management Company, LLC; The Related Companies, L.P.; Related Management Company, L.P.; Security Properties Inc.; Simpson Property Group, LLC; Thrive Communities Management, LLC; Windsor Property Management Company; WinnCompanies LLC; and WinnResidential Manager Corp.

1

consciously committed to joining an alleged conspiracy involving YieldStar and AIRM. Instead, Plaintiffs rely on group pleading tactics routinely rejected by courts by alleging generally that the LRO Defendants use "RealPage's RMS," a term Plaintiffs have defined to collectively refer to YieldStar, AIRM, and LRO. Accordingly, Plaintiffs' antitrust claims should be dismissed on these additional, separate grounds to the extent they seek relief under the antitrust laws for the Defendants' use of LRO, and the LRO Defendants should be dismissed from the case with prejudice.[2]

## BACKGROUND

**I.    Plaintiffs' alleged conspiracy is dependent on their claims of use of non-public competitor data by RealPage's RMS products' pricing algorithms.**

Plaintiffs theorize that the Defendants conspired by allegedly using RealPage software that, they say, relies upon competitors' non-public, proprietary data in aggregated form. As Plaintiffs allege:

> RealPage's clients provide RealPage with vast amounts of their *non-public proprietary data*, including their lease transactions, rent prices, and occupancy and inventory levels. Each client's *proprietary data* is fed into a common data pool . . . . RealPage then trains its machine learning and artificial intelligence across that pool of its clients' *proprietary data* and uses algorithms to generate rental prices daily for each of RealPage's client's available units through its RMS.

FAC ¶ 5 (emphasis added); *see also id.* at ¶¶ 3, 116 (discussing collection and use of "proprietary" or "non-public" data). The alleged use of aggregated, non-public, competitor information by RealPage's software is thus an essential component of the allegations underlying Plaintiffs' antitrust claims.

---

[2] Because Plaintiffs have voluntarily dismissed their student housing cases, only the multi-family housing cases remain.

**II. Contrary to their allegations regarding RealPage's other RMS products, Plaintiffs have alleged that LRO uses only public information as an input and thus is not anticompetitive.**

There are approximately forty cases centralized in this District by the JPML "for coordinated or consolidated pretrial proceedings."[3] MDL No. 3071, Dkt. 205 at 3. Complaints filed in seventeen of those cases contain the following allegation ("LRO Allegation") concerning the algorithm used by LRO to recommend an LRO user's rental unit prices:

> Naturally, YieldStar's coordinated pricing strategy became more and more effective as more property managers implemented it. To this end, Defendant RealPage began buying up similar and competing software companies, and it has completed 26 acquisitions since its founding. The most important of these transactions came in 2017, when RealPage acquired Lease Rent Options ("LRO"), a company which offered a similar rent-setting software that was YieldStar's strongest rival. *Instead of relying on nonpublic data from competitors, however, LRO's algorithm used only public market data as [an] input. LRO's chief architect, Donald Davidoff, designed it that way specifically to avoid the potential antitrust violations arising from the use of nonpublic data to coordinate prices among competitors*.[4]

*See, e.g.*, *Weaver*, Case No. 22-CV-3224, Dkt. 1 at ¶ 50 (D. Colo.) (emphasis added).[5]

---

[3] Title 28 U.S.C. § 1407 allows the JPML to centralize cases for "pretrial proceedings" but mandates that centralized cases be remanded for trial to the district from which they were transferred. § 1407(a) ("Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated.").

[4] The LRO Allegation contains a few immaterial variations in several cases that do not concern the part of the allegation about LRO's algorithm.

[5] The other complaints that contain the LRO Allegation are: *Kramer*, Case No. 22-CV-3835, Dkt. 1 at ¶ 44 (D.D.C.); *Parker*, Case No. 23-CV-378, Dkt. 1 at ¶ 50 (S.D. Fla.); *White*, Case No. 22-CV-12134, Dkt. 1 at ¶ 43 (D. Mass.); *Watters*, Case No. 22-CV-1082, Dkt. 1 at ¶ 40 (M.D. Tenn.); *Blosser*, Case No. 23-CV-445, Dkt. 1 at ¶ 48 (M.D. Tenn.); *Vincin*, Case No. 22-CV-1329, Dkt. 1 at ¶ 45 (W.D. Tex.); *Saloman*, Case No. 23-CV-381, Dkt. 1 at ¶ 50 (S.D. Fla.); *Corradino*, Case No. 23-CV-379, Dkt. 1 at ¶ 49 (S.D. Fla.); *Enders*, Case No. 23-CV-55, Dkt. 1 at ¶ 49 (D. Colo.); *Bertlshofer*, Case No. 23-CV-18, Dkt. 1 at ¶ 41 (D. Ariz.); *Precht*, Case No. 22-CV-12230, Dkt. 1 at ¶ 43 (D. Mass.); *Mackie*, Case No. 23-CV-11, Dkt. 1 at ¶ 49 (D. Colo.); *Carter*, Case No. 22-CV-1332, Dkt. 1 at ¶ 45 (W.D. Tex.); *Boelens*, Case No. 22-CV-1802, Dkt. 1 at ¶ 43 (W.D. Wash.); *Bohn*, Case No. 22-CV-1743, Dkt. 1 at ¶ 45 (W.D. Wash.); *Armas*, Case No. 22-CV-1726, Dkt. 1 at ¶ 52 (W.D. Wash.).

With one exception, the LRO Allegation in those complaints cites as support an October 2022 ProPublica article titled *Rent Going Up? One Company's Algorithm Could Be Why*. *See, e.g.*, *Weaver*, Case No. 22-CV-3224, Dkt. 1 at ¶ 50 n.25 (citing ProPublica article in LRO Allegation). The ProPublica article states that LRO was intentionally designed to avoid potential antitrust concerns by using only public market data:

> [Donald Davidoff] designed his program differently [from other RMS products], to head off any concerns about collusion. Instead of relying on a digital warehouse that includes competitor data, Davidoff used a complex formula and public market data to steer LRO's algorithm. The system relied on incremental price shifts to manage demand for apartments, said Davidoff, an MIT-educated former rocket engineer. "That's not dissimilar to changing a trajectory of a rocket through inflection of a nozzle," he said — making small changes that can dramatically alter something's course over time. Davidoff said he was careful to avoid features that might run counter not only to anti-discrimination laws, such as the Fair Housing Act, but also those that bar competitors from conspiring to set prices.

Heather Vogell, Haru Coryne, and Ryan Little, *Rent Going Up? One Company's Algorithm Could Be Why*, PROPUBLICA (Oct. 15, 2022), https://www.propublica.org/article/yieldstar-rent-increase-realpage-rent.

On July 3, 2023, Plaintiffs sought leave to file their FAC, which omitted the LRO Allegation. However, Plaintiffs continue to cite the same ProPublica article. *See* FAC ¶¶ 1, n.1, 23, 26. Instead of alleging any specifics about the LRO Defendants and how they joined the alleged conspiracy, Plaintiffs rely on group allegations about "RealPage RMS," which do not differentiate among the various RealPage products. FAC ¶ 2, n.2.

## ARGUMENT

When pleading a Sherman Act § 1 claim, a complaint must allege "enough factual matter (taken as true) to suggest that an [illegal] agreement was made." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (Sherman Act § 1 case). In antitrust cases, the *Twombly* standard "provides an additional safeguard against the risk of false inferences" at the pleading stage and "addresses

the dilemma of extensive litigation costs associated with prosecuting and defending antitrust lawsuits." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009) (cleaned up) (affirming dismissal of antitrust conspiracy claim); *Twombly*, 550 U.S. at 546 ("It is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive." (cleaned up)).

To state an antitrust conspiracy claim, the Sixth Circuit has made clear that Plaintiffs must allege how each named defendant participated in the alleged conspiracy. *See Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008) (affirming dismissal of hub-and-spoke conspiracy where "plaintiffs only offer[ed] bare allegations without any reference to the who, what, where, when, how or why," and holding: "Generic pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy, was specifically rejected by *Twombly*." (cleaned up)); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d at 905 (affirming dismissal of amended complaint alleging an antitrust conspiracy claim against some defendants due to failure to plead how those defendants were involved in the conspiracy, noting "indeterminate assertions" about "defendants or defendants' executives" "represent precisely the type of naked conspiratorial allegations rejected by the Supreme Court in *Twombly*" (cleaned up)).

Even setting aside the FAC's other deficiencies, because the Plaintiffs still fail, after two amendments, to assert any allegations tying the LRO Defendants' use of LRO to the alleged conspiracy—and cannot, given their allegation that LRO was designed "specifically to avoid potential antitrust violations" by using only non-public information—all claims relating to the use of LRO and Defendants that used LRO should be dismissed with prejudice.

5

## I. Plaintiffs' allegations as to LRO fail to allege a plausible conspiracy.

### A. Plaintiffs have already admitted LRO's algorithm uses only public information and thus is not anticompetitive.

The LRO Allegations are unequivocal: "Instead of relying on nonpublic data from competitors, however, LRO's algorithm used only public market data as [an] input. LRO's chief architect, Donald Davidoff, designed it that way specifically to avoid the potential antitrust violations arising from the use of nonpublic data to coordinate prices among competitors." Of the seventeen complaints that include the LRO Allegation, four of those were filed by six of the named Plaintiffs (and putative class representatives) in the FAC: Jefferey Weaver, Patrick Parker, Priscilla Parker, Barry Amar-Hoover, Billie Jo White, and Brandon Watters. *Weaver*, Case No. 22-CV-3224, Dkt. 1 at ¶ 50 (D. Colo.); *Parker*, Case No. 23-CV-378, Dkt. 1 at ¶ 50 (S.D. Fla.); *White*, Case No. 22-CV-12134, Dkt. 1 at ¶ 43 (D. Mass.); *Watters*, Case No. 22-CV-1082, Dkt. 1 at ¶ 40 (M.D. Tenn.). Those same complaints were filed by Scott + Scott and Robins Kaplan, two of the law firms appointed by the Court to serve as Plaintiffs' Interim Co-Lead Counsel. *Weaver*, Case No. 22-CV-3224, Dkt. 1 at ¶ 50 (D. Colo.); *Parker*, Case No. 23-CV-378, Dkt. 1 at ¶ 50 (S.D. Fla.); *White*, Case No. 22-CV-12134, Dkt. 1 at ¶ 43 (D. Mass.); *Watters*, Case No. 22-CV-1082, Dkt. 1 at ¶ 40 (M.D. Tenn.).

By adopting the LRO Allegation from the ProPublica article titled "*Rent Going Up? One Company's Algorithm Could Be Why*,"—and including it in pleadings signed and filed by Counsel and thus subject to Federal Rule 11(b)(3)—Plaintiffs have represented that LRO's algorithm lacks the supposed use of non-public information that Plaintiffs allege is necessary for their conspiracy theory. Plaintiffs have thus managed to "plead themselves out of court" with respect to LRO. *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 458 (6th Cir. 2007) (affirming district court's dismissal of antitrust claims based on admissions in the Complaint: "When the complaint

6

itself gives reasons to doubt plaintiff's theory and when later pleadings confirm those doubts, it is not our task to resuscitate the claim but to put it to rest. Nothing prevents a plaintiff from pleading itself out of court, which is all that happened here." (cleaned up)).

While Plaintiffs did not include the prior LRO Allegation in their FAC, the Court is allowed under Sixth Circuit case law to consider the allegations in earlier pleadings filed by the same Plaintiffs and their same Counsel. *See Pa. R. Co. v. City of Girard*, 210 F.2d 437, 440-41 (6th Cir. 1954) (taking judicial notice of allegation in prior petition, holding: "The fact that the original petition was withdrawn and that these statements were eliminated in the amended cross-petition is immaterial, for pleadings withdrawn or superseded by amended pleadings are admissions against the pleader in the action in which they were filed."); *PetroJebla, SA de C.V. v. Betron Enterprises, Inc.*, No. 19-CV-11439, 2020 WL 95802, at *4 (E.D. Mich. Jan. 8, 2020) (citing *Pennsylvania Railroad*: "[T]he Sixth Circuit has held that pleadings withdrawn or superseded by amended pleadings are admissions against the pleader in the action in which they were filed." (cleaned up)). The Court may also consider the allegations in the ProPublica article saying the same thing, since the FAC (and the LRO Allegations in the original complaints) cites and relies upon that article. FAC ¶¶ 1 n.1 & 23; *Newsboys v. Warner Bros. Recs. Inc.*, No. 12-CV-678, 2013 WL 3524615, at *1 n.2 (M.D. Tenn. July 11, 2013) ("On a motion to dismiss, the Court may consider attachments to a complaint or documents cited in a complaint without converting the motion into a motion for summary judgment."). Thus, the Court should dismiss Plaintiffs' FAC to the extent it seeks relief under the antitrust laws relating to LRO and dismiss the LRO Defendants because Plaintiffs' own allegations show such a claim is not plausible.

7

### B. Plaintiffs' conspiracy theory is dependent on all the Defendants' common use of the same algorithm, so it is implausible that LRO was part of a purported conspiracy involving YieldStar and AIRM.

Plaintiffs' own allegations make clear that Defendants' use of the "same algorithm" is an element of the alleged conspiracy. Plaintiffs allege:

> Vacancy rates rose because each Lessor Defendant could (and did) allow a larger share of their units to remain vacant, thereby artificially restricting supply, while maintaining higher rental prices across their properties. This behavior is only rational if Lessor Defendants know that their competitors are setting rental prices using the *same algorithm* and thus would not attempt to undercut them.

FAC ¶ 18 (emphasis added); *see also id.* at ¶ 165 ("It is problematic enough that groups of competing Lessors in a given area or city are outsourcing their price-setting functions to the *same algorithm* . . . ." (emphasis added)). As explained, Plaintiffs have alleged that LRO is a different algorithm that uses only public information as an input. Those allegations contradict Plaintiffs' allegations that the alleged conspiracy incorporates "non-public, proprietary data" from competitors. Thus, it is implausible to infer that LRO's algorithm was used in conjunction with RealPage's other RMS products' algorithms to fix prices, as Plaintiffs allege. *In re Citric Acid Litig.*, 996 F. Supp. 951, 959 (N.D. Cal. 1998) ("[T]he exchange of publicly available information does not support an inference of conspiracy."), *aff'd*, 191 F.3d 1090 (9th Cir. 1999).

### II. Plaintiffs rely on impermissible group pleading as to the LRO Defendants.

Having pled LRO out of their case, it was incumbent on Plaintiffs to allege at a bare minimum that each of the LRO Defendants uses YieldStar or AIRM to participate in the alleged conspiracy. *See Total Benefits Plan. Agency, Inc.*, 552 F.3d at 436 ("Generic pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy, was specifically rejected by *Twombly*."). Instead, Plaintiffs conflate LRO, YieldStar, and AIRM in the FAC by referring to them collectively throughout as "Revenue Management Software" or "RMS" and generally alleging that the LRO Defendants use "RealPage's RMS," a

8

term defined by Plaintiffs to include all three of RealPage's RMS products. FAC ¶¶ 2 n.2, 49, 52, 55, 61, 66, 72, 74, 77, 81, 83-84, 88-89. This is a classic example of group pleading that fails to tie each named Defendant to the alleged conspiracy, a pleading practice the Sixth Circuit and numerous other courts have soundly rejected in similar antitrust cases.[6] *Total Benefits Plan. Agency, Inc.*, 552 F.3d at 436; *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d at 905; *see also SD3, LLC v. Black & Decker (U.S.), Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) ("A plaintiff in a § 1 case cannot assemble some collection of defendants and then make vague, non-specific allegations against all of them as a group. . . . [I]f [the complaint] fails to allege particular facts against a particular defendant, then the defendant must be dismissed."); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50-51 (2d Cir. 2007) (a complaint "without any specification of any particular activities by any particular defendant" is "nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatsoever" (cleaned up)).

Plaintiffs' failure to allege which LRO Defendant uses which RMS product is a material pleading deficiency, not merely an academic exercise. As Plaintiffs were informed during the parties' June 28th meet and confer on this Motion to Dismiss, each of the undersigned LRO Defendants uses LRO exclusively or virtually exclusively. Critically, after two bites at the amendment apple, Plaintiffs fail to allege that the LRO Defendants *chose* to use YieldStar or AIRM at their properties and thus to plead that they consciously committed to joining an alleged conspiracy involving an alleged agreement to use those RMS products' algorithms and adhere to the pricing recommendations they generated. *In re Travel Agent Comm'n Antitrust Litig.*, 583 at 907 (antitrust claim requires "conscious commitment to a common scheme designed to achieve

---

[6] This conduct is emblematic of the lack of precision in suing defendants that other courts have characterized as "shoot first, aim later" pleading. *See City of Livonia Employees' Ret. Sys. v. Boeing Co.*, 306 F.R.D. 175, 181 (N.D. Ill. 2014).

9

an unlawful objective"); *see also Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 517 (8th Cir. 2018) (affirming dismissal of Sherman Act § 1 claim: "Because [plaintiff] fails to plausibly plead parallel conduct, no discussion of any plus factors is necessary."); *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193 (9th Cir. 2015) (affirming dismissal of hub-and-spoke conspiracy case and explaining that parallel conduct under *Twombly* means "competitors adopting similar policies around the same time in response to similar market conditions").

## CONCLUSION

Plaintiffs fail to state a claim against the LRO Defendants for which relief can be granted. Accordingly, Plaintiffs' antitrust claims should be dismissed to the extent they seek relief under the antitrust laws for the Defendants' use of LRO, and the LRO Defendants should be dismissed from the case with prejudice.

DATED: July 7, 2023

Respectfully submitted,

/s/ Carl W. Hittinger
Carl W. Hittinger
chittinger@bakerlaw.com
Alyse F. Stach
astach@bakerlaw.com
Tyson Y. Herrold
therrold@bakerlaw.com
BAKER & HOSTETLER LLP
1735 Market Street, Suite 3300
Philadelphia, PA 19103-7501
Telephone: (215) 568-3100

Stephen J. Zralek, BPR #018971
szralek@spencerfane.com
S. Chase Fann, BPR #036794
cfann@spencerfane.com
SPENCER FANE LLP
511 Union Street, Suite 1000
Nashville, TN 37219
Telephone: (615) 238-6300

*Counsel for Defendant Equity Residential*

/s/ *Marguerite Willis*
Marguerite Willis (admitted *pro hac vice*)
mwillis@maynardnexsen.com
MAYNARD NEXSEN PC
104 South Main Street
Greenville, SC 29601
Telephone: (864) 370-2211

Michael A. Parente (admitted *pro hac vice*)
mparente@maynardnexsen.com
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: (803) 771-8900

Margaret M. Siller (BPR No. 039058)
msiller@maynardnexsen.com
MAYNARD NEXSEN PC
1201 Villa Place, Suite 103
Nashville, Tennessee 37212
Telephone: (629) 258-2253

*Counsel for Defendant Bell Partners, Inc.*

*/s/ Yehudah L. Buchweitz*
Yehudah L. Buchweitz
yehudah.buchweitz@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8256

Jeff L. White
Jeff.white@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW
Washington, DC 20036
Telephone: (202) 682-7059

R. Dale Grimes, BPR #006223
dgrimes@bassberry.com
BASS, BARRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6244

*Counsel for Defendant Brookfield Properties Multifamily LLC*

*/s/ Lynn H. Murray*
Lynn H. Murray
lhmurray@shb.com
Maveric Ray Searle
msearle@shb.com
SHOOK, HARDY & BACON L.L.P.
111 S. Wacker Dr., Suite 4700
Chicago, IL 60606
Telephone: (312) 704-7766

*/s/ Benjamin R. Nagin*
Benjamin R. Nagin
bnagin@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300

*Counsel for Defendant ConAm Management Corporation*

*/s/ John J. Sullivan*
John J. Sullivan
jsullivan@cozen.com
COZEN O'CONNOR P.C.
3 WTC, 175 Greenwich St., 55th Floor
New York, NY 10007
Telephone: (212) 453-3729

*Counsel for Defendant Independence Realty Trust, Inc.*

*/s/ Britt M. Miller*
Britt M. Miller (admitted *pro hac vice*)
bmiller@mayerbrown.com
Daniel T. Fenske (admitted *pro hac vice*)
dfenske@mayerbrown.com
Matthew D. Provance (admitted *pro hac vice*)
mprovance@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 6006
Telephone: (312) 701-8663

Scott D. Carey (#15406)
scarey@bakerdonelson.com
Ryan P. Loofbourrow (#33414)
rloofbourrow@bakerdonelson.com
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, TN 37203
Telephone: (615) 726-5600

*Counsel for Defendant Mid-America Apartment Communities, Inc.*

*/s/ Jeffrey C. Bank*
Jeffrey C. Bank
jbank@wsgr.com
WILSON SONSINI GOODRICH & ROSATI PC
1700 K Street NW, Fifth Floor
Washington, DC 20006
Telephone: (202) 973-8800

*Counsel for Defendant Morgan Properties Management Company, LLC*

*/s/ Andrew Harris*
Andrew Harris
Andrew.Harris@Levittboccio.com
LEVITT & BOCCIO, LLP
423 West 55th Street
New York, NY 10019
Telephone: (212) 801-1104

*/s/ Nicholas A. Gravante, Jr.*
Nicholas A. Gravante, Jr. (admitted *pro hac vice*)
nicholas.gravante@cwt.com
Philip J. Iovieno (admitted *pro hac vice*)
philp.iovieno@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000

*Counsel for The Related Companies, Inc. and Related Management Company, L.P.*

*/s/ Jose Dino Vasquez*
Jose Dino Vasquez
dvasquez@karrtuttle.com
Jason Hoeft
jhoeft@karrtuttle.com
KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: (206) 223-1313

*Counsel for Defendant Security Properties, Inc.*

*/s/ Brent Justus*
Brent Justus
bjustus@mcguirewoods.com
Nick Giles
ngiles@mcguirewoods.com
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1000

*Counsel for Defendant Simpson Property Group, LLC*

*/s/ Benjamin I. VandenBerghe*
Benjamin I. VandenBerghe
biv@montgomerypurdue.com
Kaya R. Lurie
klurie@montgomerypurdue.com
MONTGOMERY PURDUE PLLC
701 Fifth Avenue, Suite 5500
Seattle, Washington 98104-7096

*Counsel for Defendant Thrive Communities Management, LLC*

| | |
|---|---|
| */s/ Craig Seebald* | */s/ Evan Fray-Witzer* |
| Jessalyn H. Zeigler | Evan Fray-Witzer |
| jzeigler@bassberry.com | Evan@CFWLegal.com |
| BASS, BERRY & SIMS, PLC | CIAMPA FRAY-WITZER, LLP |
| 150 Third Avenue South | 20 Park Plaza, Suite 505 |
| Suite 2800 | Boston, MA 02116 |
| Nashville, TN 37201 | Telephone: 617-426-0000 |
| Telephone: (615) 742-6200 | |
| | *Counsel for Defendants WinnCompanies* |
| Craig P. Seebald (admitted *pro hac vice*) | *LLC, and WinnResidential Manager Corp.* |
| cseebald@velaw.com | |
| Stephen M. Medlock (admitted *pro hac vice*) | |
| smedlock@velaw.com | |
| VINSON & ELKINS LLP | |
| 2200 Pennsylvania Ave., N.W. | |
| Suite 500 West | |
| Washington, D.C. 20037 | |
| Telephone: (202) 639-6500 | |
| | |
| Christopher W. James (admitted *pro hac vice*) | |
| cjames@velaw.com | |
| VINSON & ELKINS LLP | |
| 555 Mission Street | |
| Suite 2000 | |
| San Francisco, CA 94105 | |
| Telephone: (415) 979-6900 | |
| | |
| *Counsel for Defendant Windsor Property Management Company* | |

15

# CERTIFICATE OF SERVICE

    I, Carl W. Hittinger, served the foregoing Motion to Dismiss for Failure to State a Claim upon all counsel of record on July 7, 2023 by filing it electronically using the Court's CM/ECF system, which caused this document to be served on all Electronic Filing Users, as directed by Local Rule 5.02(c).

                                                    /s/ *Carl W. Hittinger*
                                                    Carl W. Hittinger