UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-md-03071<br>MDL No. 3071<br><br>Judge Waverly D. Crenshaw, Jr.<br><br>This Document Relates to:<br>3:23-cv-00326<br>3:23-cv-00378<br>3:23-cv-00380<br>3:23-cv-00391<br>3:23-cv-00445 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE THOMA BRAVO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

James H. Mutchnik, P.C. (*pro hac vice*)
jmutchnik@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Mark McKane, P.C. (*pro hac vice*)
mark.mckane@kirkland.com
KIRKLAND & ELLIS LLP
555 California St., Suite 2900
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Counsel for Defendants*
*Thoma Bravo Fund XIII, L.P., and Thoma Bravo*
*Fund XIV, L.P. and Thoma Bravo, L.P.*

## I. INTRODUCTION

To successfully articulate a claim for antitrust conspiracy, Plaintiffs must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). With respect to Defendants Thoma Bravo Fund XIII, L.P., and Thoma Bravo Fund XIV, L.P. (collectively, the "Thoma Bravo Funds")—which were named as defendants in this litigation for the first time on July 3, 2023[1]—and Thoma Bravo, L.P. ("Thoma Bravo, L.P.," together with the Thoma Bravo Funds, the "Thoma Bravo Defendants"), Plaintiffs fail.[2]

In the broadest possible strokes, Plaintiffs' first amended consolidated class action complaint, ECF No. 314 (the "Amended Complaint"), alleges that the Thoma Bravo Defendants have some (unspecified) ownership interest in Defendant RealPage, Inc. ("RealPage")—but

---

[1] As parties who were not previously named in any prior complaint consolidated into this multidistrict litigation, the Thoma Bravo Funds are not subject to the personal jurisdiction of this Court. The Thoma Bravo Funds are Delaware limited partnerships that are not subject to the general jurisdictional reach of the Clayton Act, since none of their limited partners are domestic corporations. *See Radio Music License Comm., Inc. v. Glob. Music Rts., LLC*, 2019 WL 1437981, at *21 (E.D. Pa. 2019) (Section 12 did not apply to a "domestic entity that is not a corporation"); *World Skating Fed'n v. Int'l Skating Union*, 357 F. Supp. 2d 661, 664 (S.D.N.Y. 2006) ("[Section 12] does not apply to other entities that simply share common attributes with corporations"; declining to apply Section 12 to an "association formed under the laws of Switzerland"). The Thoma Bravo Funds, as Delaware limited partnerships, are not at home in this district for purposes of general jurisdiction. None of the allegations concerning the Thoma Bravo Funds arose in this district, and there is no allegation that Plaintiffs' claims against the Thoma Bravo Funds arise from any contacts with this state that would give rise to specific personal jurisdiction in this Court. Because neither of these bases are met, this Court lacks personal jurisdiction over the Thoma Bravo Funds. The Thoma Bravo Funds expressly reserve all rights to seek dismissal under Federal Rule of Civil Procedure 12(b)(2).

[2] As demonstrated in Defendants' Motion to Dismiss Multifamily Plaintiffs' First Amended Consolidated Class Action Complaint ("Joint Motion"), Plaintiffs' generalized and conclusory allegations fail to state any claim upon which relief can be granted, and the Thoma Bravo Defendants join in the Joint Motion and the arguments contained therein.

nothing materially more.[3] Although Plaintiffs filed the Amended Complaint to add the Thoma Bravo Funds as defendants and assert additional allegations against Thoma Bravo, the Amended Complaint still fails to allege any facts to indicate whether any of the Thoma Bravo Defendants participated in any events giving rise to this multidistrict litigation. Plaintiffs do not make specific allegations demonstrating that the Thoma Bravo Defendants affirmatively joined or acted in furtherance of the alleged conspiracy. Nor do Plaintiffs allege that the Thoma Bravo Defendants interacted with a single one of the approximately 50 named defendants who are RealPage customers (the "Lessor Defendants"). According to the Amended Complaint, the only party with whom the Thoma Bravo Defendants interacted was RealPage—but the Thoma Bravo Defendants can neither conspire with RealPage, nor be held liable for RealPage's alleged acts, merely by virtue of owning RealPage. Plaintiffs' material substantive allegations predate the Thoma Bravo Defendants' 2021 investment in RealPage. And tellingly, in their Amended Complaint, Plaintiffs do little more than attempt to conjoin RealPage and the Thoma Bravo Defendants with a manufactured, combined definition. *See* Am. Compl. at 2 (defining "RealPage" to encompass Defendants RealPage, Inc., Thoma Bravo Fund XIII, L.P., Thoma Bravo Fund XIV, L.P. and Thoma Bravo, L.P.).

Plaintiffs' threadbare allegations against the Thoma Bravo Defendants do not provide the requisite factual grounds for anything beyond indirect ownership and, as such, the Amended

---

[3] The Amended Complaint generally states that "Thoma Bravo directed the Thoma Bravo Funds to acquire RealPage" in April 2021 (Am. Compl. ¶ 42), however, RealPage was in fact acquired by Mirasol Parent, LLC and Mirasol Merger Sub, Inc., affiliates of Thoma Bravo Fund XIII, L.P. and Thoma Bravo Fund XIV, L.P., investment funds which are themselves affiliates of Thoma Bravo. *See, e.g.*, RealPage, Inc. Proxy Statement (Schedule 14A) (Feb. 5, 2021), https://seekingalpha.com/filings/pdf/14674258.

Complaint fails to state any claims against the Thoma Bravo Defendants upon which relief may be granted.

## II. BACKGROUND

In October 2022, Plaintiffs began initiating antitrust actions against RealPage and various combinations of the Lessor Defendants, asserting that RealPage and Lessor Defendants engaged in a vast, nationwide conspiracy to fix rental prices in multifamily housing units. By Plaintiffs' account, this conspiracy began no later than 2016 and continued for years. Am. Compl. ¶ 1. The conspiracy was allegedly established and perpetuated by various RealPage acquisitions in the early 2000s through the 2010s, "the most important" being RealPage's 2017 acquisition of a revenue management software developed by Lease Rent Options ("LRO"). Am. Compl. ¶¶ 105-07 (Plaintiffs allege RealPage's acquisition of LRO enabled it to monopolize an "entire market," without specifying what market). Thoma Bravo, L.P. allegedly directed the Thoma Bravo Funds to acquire RealPage in April 2021. Am. Compl. ¶ 42.

Plaintiffs initially brought over twenty lawsuits in six different districts against varying, inconsistent Defendants. Only four of these lawsuits named Thoma Bravo, L.P.—*zero* named either of the Thoma Bravo Funds. On April 10, 2023, the United States Judicial Panel on Multidistrict Litigation issued a transfer order consolidating twenty-one of these lawsuits into a single multidistrict litigation before this Court.

Thoma Bravo, L.P. is a SEC-registered investment adviser that provides investment advisory services to its private investment funds. Specializing in providing capital and strategic support to growing software and technology companies, Thoma Bravo, L.P. advises and manages private investment funds that undertake strategic investments and acquisitions of portfolio companies, including RealPage. Consistent with its well-established practice, Thoma Bravo, L.P. does not possess any direct or indirect ownership interest in RealPage; instead, RealPage is an

indirect subsidiary of certain private investment funds, which are themselves held by limited partners. Plaintiffs initially sued Thoma Bravo, L.P. on the incorrect assumption that it owned RealPage.[4] Although Plaintiffs recently added the Thoma Bravo Funds—two private investment funds affiliated with Thoma Bravo, L.P.—as defendants, their Amended Complaint does not cure the fundamental deficiencies in the original Complaint.

### III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs must state a claim that is "plausible on its face," such that the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556, 570). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

This standard requires Plaintiffs to plead specific facts and involvement with respect to *each* Defendant. *See Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 445 (6th Cir. 2012) (quoting *In re Travel Agent Com'n. Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009)) ("Furthermore, [plaintiff's allegations] must 'specify how [each] defendant [was] involved in the alleged conspiracy.'"); *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 546 (8th Cir. 2015) (affirming dismissal of antitrust complaint when plaintiffs made only "vague references to concerted action" among entities); *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (affirming dismissal of complaint that was "short on specifics" as to how a defendant purportedly

---

[4] By letter dated June 28, 2023, counsel for the Thoma Bravo Defendants advised Plaintiffs that their consolidated class action complaint, ECF No. 291, incorrectly named Thoma Bravo, L.P. as a defendant, because publicly available documents made clear that Thoma Bravo, L.P. had not acquired RealPage. In light of Plaintiffs' oversight, counsel for the Thoma Bravo Defendants requested that Plaintiffs voluntarily dismiss Thoma Bravo, L.P. from this litigation. The parties met-and-conferred on June 29, 2023; Plaintiffs declined to dismiss Thoma Bravo, L.P., and instead added the Thoma Bravo Funds as defendants to their Amended Complaint.

"joined the conspiracy"); *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*, 854 F.2d 802, 805 (6th Cir. 1988) ("The essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent dismissal of the complaint on a defendant's 12(b)(6) motion."). "This involvement must be more than mere ownership." *Jones v. Varsity Brands*, LLC, 618 F. Supp. 3d 713, 723 (W.D. Tenn. 2022).

## IV. LEGAL ARGUMENT

In the event the Court does not dismiss the Amended Complaint in its entirety, the Court should dismiss the Thoma Bravo Defendants because Plaintiffs fail to allege any facts suggesting that the Thoma Bravo Defendants either (1) actively joined or directly participated in the alleged conspiracy or (2) can be held liable for their mere ownership interest in RealPage.

### A. Plaintiffs Fail to Assert Any Conspiracy Between the Thoma Bravo Defendants and Any Other Party.

Plaintiffs fail to sufficiently allege the Thoma Bravo Defendants' participation in the purported conspiracy. To state a claim under Section 1 of the Sherman Act (or under the relevant state laws), Plaintiffs must allege particularized facts to show that defendants combined or conspired with an intent to unreasonably restrain trade. *See Nurse Midwifery Assocs. v. Hibbett*, 918 F.2d 605 (6th Cir. 1990), opinion *modified on reh'g*, 927 F.2d 904 (6th Cir. 1991); *Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.*, 48 F.4th 656, 663 (6th Cir. 2022) ("To establish a violation of § 1 of the Sherman Act a plaintiff must demonstrate that there is: 1) an agreement, which may be in the form of a contract, combination, or conspiracy; 2) affecting interstate commerce; 3) that imposes an unreasonable restraint on trade."); *see also Tacker v. Wilson*, 830 F. Supp. 422, 430 (W.D. Tenn. 1993) (dismissing Tennessee state law antitrust claims where plaintiff alleged no facts to indicate that plaintiff transacted business with any of the defendants).

A parent company and subsidiaries who share "common" objectives and "centers of decisionmaking," cannot combine or conspire in a manner that would violate Section 1 of the

5

Sherman Act. *See American Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 196-97 (2010); *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984). As a policy matter to promote firms' incentives to compete vigorously in the marketplace, the Sherman Act limits antitrust exposure for single firms acting unilaterally to conduct that threatens ***actual monopolization***; but imposes a heightened standard for concerted activity between *separate* entities, as such activity "deprives the marketplace of the independent centers of decisionmaking that competition assumes and demands." *Copperweld*, *467 U.S.* at 768-69 ("[I]t is perfectly plain that an internal 'agreement' to implement a single, unitary firm's policies does not raise the antitrust dangers that § 1 was designed to police.").

        *1.    No Facts Sufficient for Conspiracy with Defendant RealPage.*

As a threshold matter, the Amended Complaint fails to allege that RealPage and the Thoma Bravo Defendants (as purported owners of RealPage) are legally distinct entities capable of conspiring under the antitrust laws. The Amended Complaint generally alleges that "Thoma Bravo directed the Thoma Bravo Funds to acquire" RealPage in a take-private transaction in April 2021, without specifying the nature of the Thoma Bravo Defendants' ownership of RealPage, including whether or not the Thoma Bravo Funds directly or indirectly hold ownership interests in RealPage, or whether any other parties hold any ownership interest. *See* Am. Compl. ¶ 42. Nor do Plaintiffs specify whether the Thoma Bravo Defendants and RealPage are legally separate entities. *See* Am. Compl. ¶ 42. Plaintiffs' definition of "RealPage," in fact, suggests that Plaintiffs consider them to be a single entity. Am. Compl. at 2 ("Defendants RealPage, Inc., Thoma Bravo Fund XIII, L.P., Thoma Bravo Fund XIV, L.P., and Thoma Bravo, L.P. (collectively, 'RealPage')"). Absent *any* allegation that the Thoma Bravo Defendants and RealPage are distinct entities for antitrust purposes, antitrust liability cannot possibly lie for agreements between Thoma Bravo and RealPage. *See Copperweld*, 467 U.S. at 771.

        *2.    No Facts Sufficient for Conspiracy with Lessor Defendants.*

Plaintiffs' claims further fail because they do not sufficiently allege "more than [the Thoma Bravo Defendants'] mere ownership" of RealPage. *Jones*, 618 F. Supp. 3d at 723. To begin, the

Amended Complaint does not contain a single allegation that the Thoma Bravo Defendants interacted in any way with any of the Lessor Defendants. Indeed, the Thoma Bravo Defendants' actions are never even mentioned within the same paragraph as the Lessor Defendants. As such, the Amended Complaint falls woefully short of alleging the requisite facts, including the "specific time, place or person," to plausibly suggest the Thoma Bravo Defendants participated in the alleged conspiracy. *Twombly*, 550 U.S. at 565 n.10.

Nor does the Amended Complaint otherwise identify a single action taken by the Thoma Bravo Defendants in furtherance of the conspiracy, as required for liability. *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1237 (10th Cir. 2017) ("[A]lthough we agree that [the plaintiff] was entitled to pursue its § 2 claims against Defendants as a single enterprise, . . . [the plaintiff] was still required to come forward with evidence that each defendant independently participated in the enterprise's scheme, to justify holding that defendant liable as part of the enterprise."); *Cupp v. Alberto-Culver USA, Inc.*, 310 F. Supp. 2d 963, 972-73 (W.D. Tenn. 2004) (granting motion to dismiss when plaintiffs "mentions absolutely no action by either [parent company] regarding either the Agreement or anything at all; rather, from the complaint, it appears that only [the subsidiary] and Plaintiff had any interaction concerning the Agreement."). Plaintiffs' factual allegations outlining the steps allegedly taken to initiate and orchestrate the conspiracy almost entirely predate the Thoma Bravo Funds' 2021 investment. While Plaintiffs broadly allege that Thoma Bravo, L.P. was "actively involved" in "selecting and approving acquisition targets for RealPage" (Am. Compl. ¶ 44), the Amended Complaint fails to provide any details whatsoever regarding acquisitions since 2021, or to otherwise allege that any of these unidentified targets relate in ***any*** way to the alleged conspiracy. To the contrary, Plaintiffs contend that the acquisitions to establish and facilitate the alleged cartel—including the "most important"

of all the acquisitions—occurred years before the Thoma Bravo Funds' 2021 acquisition of ownership interest in RealPage.  Am. Compl. ¶¶ 100-106.

Similarly, Plaintiffs' generalized allegations that Thoma Bravo has some influence in "setting company policies" and "hiring top RealPage executives from other Thoma Bravo companies" serve no purpose but to demonstrate ownership.  Am. Compl. ¶ 44.  Plaintiffs do not allege that Thoma Bravo in any way established or condoned specific policies to further the alleged conspiracy.  The two executives that Thoma Bravo allegedly had a hand in hiring are not named elsewhere in the Amended Complaint or otherwise alleged to have facilitated the conspiracy, directly or indirectly.

Accordingly, the Amended Complaint fails to make any allegations whatsoever plausibly suggesting Thoma Bravo's involvement in the alleged conspiracy.

### B. Plaintiffs Cannot Impute Their Allegations Against RealPage to the Thoma Bravo Defendants.

Plaintiffs fail to allege any other facts sufficient for liability to attach to the Thoma Bravo Defendants for RealPage's actions.  "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *Chism v. Chemring N. Am. Grp., Inc.*, 2015 WL 8207899, at *2 (W.D. Tenn. Dec. 7, 2015) (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)).  "[L]iability will not be imposed on a parent corporation merely because of its ownership of the subsidiary." *Excel Energy v. Cannelton*, 337 F. App'x 480, 484 (6th Cir. 2009).  Without specific allegations pertaining to the parent entity, courts will "decline[] to presume that a parent company participates in every decision or action of

8

its subsidiary." *See Cupp*, 310 F. Supp. 2d at 973 (citing *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 857 (10th Cir. 1999)).[5]

In the antitrust context, courts in the Sixth Circuit do not ascribe the allegedly anticompetitive conduct of the subsidiary to the parent company without a showing that the parent was actively involved in the specific conduct alleged. *See Cupp*, 310 F. Supp. 2d at 973. The relevant inquiry is whether control of the parent was "sufficiently extensive to permit imputation of the conspiracy" such that the subsidiary can be treated as an alter ego of the parent. *Carrier Corp.*, 673 F.3d at 445.[6] These principles are particularly applicable here where RealPage's alleged indirect owners are investment funds and the post-closing actions were allegedly taken by a separate investment advisor.

As noted above, Plaintiffs fail to plead with any specificity the relationship between the Thoma Bravo Defendants and RealPage. They offer only vague allegations regarding ownership interests and generalized assertions that fail to demonstrate control or participation in the alleged conspiracy. From their allegations, it is impossible to determine whether they contend the Thoma Bravo Defendants and RealPage are distinct legal entities for antitrust or other purposes. The Amended Complaint fails to allege any specific action by the Thoma Bravo Defendants in furtherance of the purported antitrust conspiracy or any other basis on which to connect or impute

---

[5] Plaintiffs also bear the burden of proof to demonstrate the reasons warranting the disfavored step of piercing the corporate veil and holding a parent company liable for the acts of its subsidiary. *See Transition Healthcare v. Tri-State Health*, 306 F. App'x 273, 280 (6th Cir. 2009). Plaintiffs make **zero** allegations on this front.

[6] Tennessee law imposes a heightened standard for pleading that a subsidiary acted as a parent's alter ego. "To state an alter ego theory under Tennessee law that will survive a motion to dismiss, a plaintiff must allege that the parent-subsidiary corporate form was used to sanction a fraud." *Tenpenny v. Prime Now, LLC*, 2020 WL 2062121, at *6 (M.D. Tenn. Apr. 29, 2020) (citing *Southeast v. Prime*, 462 F.3d 666, 673 (6th Cir. 2006) ("Southeast's argument that fraud is not a required element of an action to pierce the corporate veil under Tennessee law has already been considered and rejected by this court.")).

the supposed misconduct of RealPage to the Thoma Bravo Defendants. Broad sweeping allegations that "Thoma Bravo is actively involved in the day-to-day operations of RealPage, including selecting and approving" unidentified acquisition targets and setting similarly unidentified company policies—without even an allegation that such acquisitions or policies related to the alleged conspiracy—are insufficient to show the requisite active involvement in the alleged conspiracy.

Similarly, the allegation that the Thoma Bravo Defendants selected two RealPage officers from a totally separate Thoma Bravo subsidiary is not only factually inaccurate (Thoma Bravo had sold its majority interest in that subsidiary several years before acquiring RealPage[7]) but, more importantly, is irrelevant. Plaintiffs' allegations disregard the "well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *Bestfoods*, 524 U.S. at 69 (quoting *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 779 (5th Cir. 1997)).

Though the Amended Complaint added allegations against the Thoma Bravo Defendants, Plaintiffs fare no better with a second bite at the apple. Rather, Plaintiffs add length but no substance. Plaintiffs provide a new paragraph quoting at length from a press release issued upon the completion of the Thoma Bravo Funds' investment—which notably makes no reference to any unlawful agreements or cartel profits. Am. Compl. ¶ 43. And Plaintiffs' new allegation that a

---

[7] Private investment funds affiliated with Thoma Bravo, L.P. divested their majority stake in Sparta Systems in 2017. *See* Thoma Bravo, *New Mountain Capital Completes Investment in Sparta Systems* (Aug. 22, 2017), https://www.thomabravo.com/press-releases/new-mountain-capital-completes-investment-in-sparta-systems.

Thoma Bravo operating partner[8] is chairman of RealPage's board of directors changes nothing: "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *Bestfoods*, 524 U.S. at 69 (quoting *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 57 (2d Cir. 1988), *cert. denied*, 488 U.S. 852 (1988)).

Accordingly, in 470 paragraphs Plaintiffs have fallen far short of sufficiently alleging the Thoma Bravo Defendants' involvement in, or liability for, the alleged conspiracy. On such deficient facts, Plaintiffs should not be permitted to subject the Thoma Bravo Defendants to notoriously expensive and burdensome discovery. *See Twombly*, 550 U.S. at 546. Their claims against the Thoma Bravo Defendants must be summarily dismissed.

## V. CONCLUSION

For the foregoing reasons, and for those stated in Defendants' Joint Motion, the Thoma Bravo Defendants respectfully request that this Court dismiss all Plaintiffs' claims against them with prejudice.

---

[8] Notably, Plaintiffs' Amended Complaint omits that Thoma Bravo's operating partners are not employees or affiliates of Thoma Bravo entities, but instead act as independent contractors that advise Thoma Bravo and its affiliates. *See* Thoma Bravo, *Operating Partners and Advisors*, https://www.thomabravo.com/team/operating-partners-advisors (last visited July 5, 2023).

Dated: July 7, 2023	Respectfully submitted,

/s/ Mark McKane, P.C.
James H. Mutchnik, P.C. (*pro hac vice*)
jmutchnik@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Mark McKane, P.C. (*pro hac vice*)
mark.mckane@kirkland.com
KIRKLAND & ELLIS LLP
555 California St., Suite 2900
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Counsel for Defendants*
*Thoma Bravo Fund XIII, L.P., and Thoma Bravo*
*Fund XIV, L.P. and  Thoma Bravo, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2023, a copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

*/s/ Mark McKane, P.C.*
Mark McKane, P.C.
