# EXHIBIT 1

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-MD-3071 MDL No. 3071 |
| | This Document Relates to: 3:22-cv-01082 3:23-cv-00357 |
| | Chief Judge Waverly D. Crenshaw, Jr. |

## DECLARATION OF JULIE STAYTON

I, Julie Stayton declare under penalty of perjury that the foregoing is true and correct:

1.      My name is Julie Stayton and the facts set forth in this Declaration are based upon my personal knowledge. I am over twenty-one (21) years of age and am competent to testify to the facts set forth in this Declaration.

2.      I am employed by Lincoln Property Company ("Lincoln") as Vice-President. I have been employed by Lincoln since January 2015 first as Senior Regional Property Manager, then Assistant Area Vice President for the Nashville Area, and then Vice President, and I have personal knowledge of the facts set forth herein and if called upon to testify, I could and would do so competently.

3.      Lincoln is a property management company that operates and oversees multifamily residential properties throughout the United States.

4.      Potential tenants seeking to rent units at a property managed by Lincoln must agree to an Apartment Lease Contract (a "lease"), specific to each property, provided by Lincoln.

Case 3:23-md-03071    Document 337-1    Filed 07/07/23    Page 2 of 50 PageID #: 2650

**The Leasing Process**

5.     As Vice President at Lincoln, I am familiar with the leasing process for renters at Lincoln properties, including 2010 West End where Mr. Watters rented.

6.     Lincoln often uses digital leases rather than physical leases. When Lincoln uses digital leases, each leasing agent is trained to undertake the following steps.

7.     To prepare a digital lease for a potential tenant, a Lincoln leasing agent completes editable fields on the lease. Examples of editable fields include the rental unit's address, the rent term, and rent amount. The leasing agent also includes applicable addenda in the lease document to send to the potential client.

8.     In order to capture a potential tenant's electronic signature, Lincoln uses the services of a company such as Dropbox Sign (formerly HelloSign) that provides software to allow parties to sign contracts and documents electronically.

9.     When the lease is prepared, the leasing agent sends the lease to the potential tenant's email address for the potential tenant to review and sign.

10.     A potential tenant must scroll through every page of the lease document, including the addenda, before completing the signature field at the end of the document.

11.     Once the potential tenant fills out the electronic signature field(s), the document's status is "Completed" and the document may be returned to the sender.

12.     A completed electronic document produces a Document History that includes when the document was sent, when the document was viewed by the recipient, and when the document was signed, and thus completed, by the recipient.

2

## Mr. Watters's Leasing Process

13.     Lincoln maintains electronic copies of its tenant's leases. To the extent tenants sign a digital copy of their lease, typically via software like HelloSign, Lincoln's database includes the captured information during the signature process, including the date the lease was sent, opened, and signed by the prospective tenant.

14.     A true and correct copy of the Apartment Lease Contract associated with Plaintiff Watters in Lincoln's records is attach hereto as Exhibit A. This lease was stored as per Lincoln's policy in its database.

15.     I have reviewed the data with regard to Mr. Watters's lease, as contained and reflected in Lincoln's database. On August 12, 2021, a Lincoln leasing agent named Harrison Young sent a digital lease document, including addenda, ("the Lease") for signature to Brandon Watters's email address. Mr. Young used the software company HelloSign to prepare the Lease with electronic signature fields on the final page of the Lease.

16.     The Lease provided for Mr. Watters to rent a unit at 2010 West End, a property in Nashville managed by Lincoln. The Lease stated that Mr. Watters would pay monthly rent in the amount of $1,610.00.

17.     The Lease's Document History reflected in the database and the document's metadata specifies that the Lease was sent at 17:29 UTC on August 12, 2021. At 17:40 UTC, on the same day, Mr. Watters viewed the lease. According to the Document History, Mr. Watters signed and completed the lease at 17:58 UTC.

18.     Upon execution of the Lease by both parties, Mr. Watters moved into the unit listed in the Lease at 2010 West End. Mr. Watters paid the rent due under the Lease while he resided at 2010 West End.

19. This Declaration is made upon my personal knowledge and based upon my review of Lincoln's documents and data kept in the ordinary course of business by those responsible for storing and maintain such documents and data, for the purpose of being used in support of Defendants' Motion to Enforce Plaintiff Watters's Class Action Waiver. I state that the facts set forth in the foregoing Declaration are, to the best of my knowledge, true and correct.

Executed on the ___6th___ day of July, 2023.

Julie Stayton

Case 3:23-md-03071   Document 337-1   Filed 07/07/23   Page 5 of 50 PageID #: 2653

# EXHIBIT 1-A

# APARTMENT LEASE CONTRACT



Date of Lease Contract: **August 12, 2021**

(when the Lease Contract is filled out)

*This is a binding document. Read carefully before signing.*

## Moving In — General Information

**1. PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between *you*, the resident(s) *(list all people signing the Lease Contract)*:

**Brandon Watters**

and *us*, the owner: **DRI/CA Nashville, LLC**

*(name of community or title holder)*. You've agreed to rent Dwelling Unit **1902** at **2010 West End Avenue**

_____ *(street address)* in **Nashville**

*(city)*, Tennessee, **37203** *(zip code)* for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors' in interest or assigns). Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

**2. OCCUPANTS.** The dwelling unit will be occupied only by you and *(list all other occupants not signing the Lease Contract)*:

No one else may occupy the dwelling unit. Persons not listed above must not stay in the dwelling unit for more than **7** consecutive days without our prior written consent, and no more than twice that many days in any one month. If the previous space isn't filled in, two days per month is the limit.

**3. LEASE TERM.** The initial term of the Lease Contract begins on the **14th** day of **August**, **2021** and ends at 11:59 p.m. the **13th** day of **October** **2022**.

**Renewal.** This Lease Contract will automatically renew month-to-month unless either party gives at least **60** days written notice of termination or intent to move-out as required by paragraph 45 (Move-Out Notice). If the number of days isn't filled in, at least 30 days notice is required.

**4. SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the dwelling unit is $ **300.00** , due on or before the date this Lease Contract is signed. Resident's security deposit is deposited at **Bank of America, 1634 Church St. Nashville, TN. 37203**

_____ (name and address of bank). This account is used only for the deposit of resident's security deposits.

**5. KEYS.** You will be provided **0** key(s), **1** mailbox key(s), **1** FOB(s), and/or **1** other access device(s) for access to the building and amenities at no additional cost at move-in. If the key, FOB, or other access device becomes damaged or lost during your tenancy or is not returned or is returned damaged when you move out, you will be responsible for the costs for the replacement and/or repair of the same.

**6. RENT AND CHARGES.** Unless modified by addenda, you will pay $ **1610.00** per month for rent, payable in advance and without demand.

☒ at the on-site manager's office, or
☒ at our online payment site, or
☐ at _____
_____
_____ .

**You specifically waive the right to receive notice of termination of tenancy for non-payment of rent. Therefore, a detainer warrant may be filed immediately upon breach of the agreement for failure to pay rent.**

Prorated rent of $ **934.84** is due for the remainder of *(check one)*: ☒ 1st month or ☐ 2nd month, on **August 14**, **2021**

Otherwise, you must pay your rent on or before the 1st day of each month (due date). Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. At our discretion, we may convert any and all checks via the Automated Clearing House (ACH) system for the purposes of collecting payment. Rent is not considered accepted, if the payment/ACH is rejected, does not clear, or is stopped for any reason. Any rent installment received after the fifth (5th) day of the month in which said installment is due shall include a late charge equal to the ten (10%) percent of the rent. This late charge shall become a portion of the rent due under the terms and conditions of this lease. Resident agrees to pay all late rents by money order, or certified funds. We will not impose the late charge if the fifth (5th) day falls on a Sunday or legal holiday and the rent is paid on the next business day. In addition, you will also pay a charge of $ **30.00** (not to exceed $30.00) for each returned check or rejected electronic payment. If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation. All payment obligations under this Lease Contract shall constitute rent under this Lease Contract.

**7. UTILITIES.** We'll pay for the following items, if checked:
☐ water   ☐ gas   ☐ electricity   ☐ master antenna
☐ wastewater   ☐ trash   ☐ cable TV
☐ other _____

You'll pay for all other utilities or services, related deposits, and any other charges or maintenance fees related to those other utilities or services. You must not allow utilities to be disconnected—including disconnection for not paying your bills—until the lease term or renewal period ends. Cable channels that are provided may be changed during the lease term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting. If any utilities or services are submetered for the dwelling unit, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance.

**8. INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

© 2020, National Apartment Association, Inc. - 6/2020, Tennessee

Page 1 of 8
Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

In addition, we urge all residents, and particularly those residing in coastal areas, areas near rivers, and areas prone to flooding, to obtain flood insurance. Renter's insurance may not cover damage to your property due to flooding. A flood insurance resource which may be available includes the National Flood Insurance Program managed by the Federal Emergency Management Agency (FEMA).

We urge you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like.

Additionally, you are *[check one]* ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance throughout your tenancy, including any renewal periods and/or lease extensions, is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

You acknowledge that no portion of the rent paid by you under this agreement will be applied to the owner's structural fire insurance and that you are in no way a co-insured under any such policy, and that, in order to reduce the cost of insurance, the Owner has chosen to purchase fire and extended coverage insurance for the property for which the above rental agreement applies, with a deductible in the amount of $ __100000.00__. If you or any member of your

household, guest or invitee causes damages to the premises in an amount that is less than the amount of this insurance deductible, you agree to indemnify and reimburse the Owner for the amount of such damages, and that you may be liable for costs in excess of the deductible under any subrogation clause of the said policy. It is recommended that you secure insurance to protect your interest in the event of such a loss.

**9. LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or within 7 days after you move in.

You may at any time ask us to change or rekey locks or latches during the Lease Term. We must comply with those requests, but you must pay for them, unless otherwise provided by law.

**Payment for Rekeying, Repairs, Etc.** You must pay for all repairs or replacements arising from misuse or damage to devices by you or your occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair or change or rekey the same device during the 30 days preceding your request and we have complied with your request. Otherwise, you must pay immediately after the work is completed.

## Special Provisions and "What If" Clauses

**10. SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed lease form.

__RPM Approval Date: 7/7/21__
_____
_____
_____
_____
See any additional special provisions.

**11. EARLY MOVE-OUT.** You'll be liable to us for a reletting charge of $ __1610.00__ (not to exceed 100% of the highest monthly rent during the lease term) if you:

(1) fail to give written move-out notice as required in paragraph 45 (Move-Out Notice) or any other applicable law; or
(2) move out without paying rent in full for the entire lease term or renewal period; or
(3) move out at our demand because of your default; or
(4) are judicially evicted.

The reletting charge is not a cancellation fee and does not release you from your obligations under this Lease Contract.

**Not a Release.** The reletting charge is not a lease cancellation fee or buyout fee. It is an agreed-to liquidated amount covering only part of our damages, that is, our time, effort, and expense in finding and processing a replacement. These damages are uncertain and difficult to ascertain—particularly those relating to inconvenience, paperwork, advertising, showing dwelling units, utilities for showing, checking prospects, office overhead, marketing costs, and locator-service fees. You agree that the reletting charge is a reasonable estimate of such damages and that the charge is due whether or not our reletting attempts succeed. If no amount is stipulated, you must pay our actual reletting costs so far as they can be determined. The reletting charge does not release you from continued liability for: future or past-due rent; charges for cleaning, repairing, repainting, or unreturned keys; or other sums due.

**12. REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the community due to a violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants. **Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following that result from your or your invitees, guests, or occupants' negligence or intentional acts: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your dwelling unit.** We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

**13. CONTRACTUAL LIEN AND PROPERTY LEFT IN DWELLING UNIT. Contractual Lien.** When perfected by the filing of form UCC-1, you hereby give us a lien upon all your property situated upon the said

rent agreed to be paid hereunder, for any damage caused by you, and for court costs and attorney's fees incurred under the terms hereof.

**Property Left in Dwelling Unit.** After abandonment, under Paragraph 50 (Deposit Return, Surrender, and Abandonment), we shall remove your possessions and personal effects from the premises and store such personal possessions and personal effects for not less than thirty days. You may reclaim such possessions and personal effects from us within such thirty-day period. If you do not reclaim such possessions and personal effects within such thirty-day period, we may sell or otherwise dispose of your possessions and personal effects and apply the proceeds of the sale to the unpaid rents, damages, storage fees, sale costs and attorney's fees. Any balances are to be held by us for a period of six months after the sale.

**14. FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, we may end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges. Our rights and remedies under paragraphs 11 (Early Move-Out) and 33 (Default by Resident) apply to acceleration under this paragraph.

**15. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10 (Special Provisions), by a written addendum or amendment signed by you and us, or by reasonable changes of dwelling unit rules allowed under paragraph 19 (Community Policies or Rules). If, at least 5 days before the advance notice deadline referred to in paragraph 3 (Lease Term), we give you written notice of rent increases or lease changes effective when the lease term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or lease changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 45 (Move-Out Notice).

**16. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or lease termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the dwelling unit.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the dwelling unit is ready for occupancy, but not later.

(1) If we give written notice to any of you when or after the initial term as set forth in Paragraph 3 (Lease Term)—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the dwelling unit will be ready on a specific date—you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

Case 3:23-md-03071   Document 337-1   Filed 07/07/23   Page 8 of 50 PageID #: 2656

(2) If we give written notice to any of you before the initial term as set forth in Paragraph 3 (Lease Term) and the notice states that construction delay is expected and that the dwelling unit will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in Paragraph 3 (Lease Term) for all purposes. This new date may not be moved to an earlier date unless we and you agree.

**17. AD VALOREM TAXES/FEES AND CHARGES - ADDITIONAL RENT.** Unless otherwise prohibited by law, if, during the term of this Agreement, any locality, city, state, or Federal Government imposes upon Us, any fee, charge, or tax, which is related to or charged by the number of occupants, or by the Premises itself, such that we are charged a fee, charge, or tax, based upon your use or occupancy of the Premises, we may add this charge as Additional Rent, during the term of the Lease Contract, with thirty (30) days advance written notice to you. After this written notice (the amount or approximate amount of the charge, will be included), you agree to pay, as Additional Rent, the amount of the charge, tax or fee imposed upon us, as a result of your occupancy. As examples, these charges can include, but are not limited to: any charges we receive for any zoning violation, sound, noise or litter charge; any charge under any nuisance or chronic nuisance type statute, 911 or other life safety, per person, or per unit charge or tax and any utility bill unpaid by you, which is then assessed to us for payment.

**18. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

---

## While You're Living in the Dwelling Unit

**19. COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written dwelling unit rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, that become effective after reasonable notice, if they are distributed and applicable to all units in the community and do not change dollar amounts on page 1 of this Lease Contract.

**20. LIMITATIONS ON CONDUCT.** The dwelling unit and other areas reserved for your private use must be kept clean and free of trash, garbage, and other debris. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. You agree to keep all passageways and common areas free of obstructions such as trash, storage items, and all forms of personal property. No person shall ride or allow bikes, skateboards, or other similar objects in the passageways. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with dwelling unit rules and posted signs. Glass containers are prohibited in all common areas. You, your occupants, or guests may not anywhere in the community: use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your dwelling unit or in the community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your dwelling unit for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude from the community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any dwelling unit rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

**21. PROHIBITED CONDUCT.** You, your occupants or guests, or the guests of any occupants, may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the community; or injuring our reputation by making bad faith allegations against us to others.

**22. PARKING.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. We may have unauthorized or illegally parked vehicles towed under an appropriate statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has not been in compliance with all applicable local or state laws relative to titling and licensing, operation, and registration for more than thirty (30) days; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the dwelling unit; or
(6) is parked in a marked accessible parking area for persons with disabilities without the legally required placard or insignia; or
(7) is parked in space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster; or
(13) belongs to a resident and is parked in a visitor or retail parking space.

**23. RELEASE OF RESIDENT.** Unless you're entitled to terminate your tenancy under paragraphs 10 (Special Provisions), 16 (Delay of Occupancy), 32 (Responsibilities of Owner), 45 (Move-Out Notice), or any other applicable law, you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

**24. MILITARY PERSONNEL CLAUSE.** All parties to this Lease Contract agree to comply with any federal law, including, but not limited to the Service Member's Civil Relief Act, or any applicable state law(s), if you are seeking to terminate this Lease Contract and/or subsequent renewals and/or Lease Contract extensions under the rights granted by such laws.

**25. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors and/or carbon monoxide detectors, if provided, keyed deadbolt locks, keyless bolting devices, window latches, and other access control devices.

**Smoke Detectors and Carbon Monoxide Detectors.** We'll furnish smoke detectors and/or carbon monoxide detectors only if required by statute, and if provided we'll only test them and provide working batteries when you first take possession. After that, you must test the smoke detectors and/or the carbon monoxide detectors on a regular basis, if provided, and pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report to us any malfunction of the smoke detector and/or carbon monoxide detector, if provided. Neither you nor others may disable the smoke detectors and/or carbon monoxide detectors, if provided. If you damage or disable the smoke detector and/or carbon monoxide detector or remove a battery without replacing it with a working battery, you may be liable to us for $100 plus one month's rent, actual damages, and attorney's fees. If you disable or damage the smoke detector and/or carbon monoxide detector, if provided, or fail to replace a dead battery or report malfunctions to us, and others for any loss, actual damages, or fines from fire, smoke, or water.

© 2020, National Apartment Association, Inc. - 6/2020, Tennessee

Page 3 of 8

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

**Fire or Casualty, Damage or Loss.** We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. We have no duty to remove any ice, sleet, or snow but may remove any amount with or without notice. During freezing weather, you must ensure that the temperature in the Dwelling Unit is sufficient to make sure that the pipes do not freeze (the appropriate temperature will depend upon weather conditions and the size and layout of your unit). If the pipes freeze or any other damage is caused by your failure to properly maintain the heat in your dwelling unit, you'll be liable for damage to our and other's property. If you ask our representatives to perform services not contemplated in this Lease Contract, you hereby indemnify us and hold us harmless from all liability for those services.

If the leased premises is damaged or destroyed by fire or casualty to an extent that the use of the leased premises is substantially impaired, as defined in Tennessee Code Annotated, you (1) may immediately vacate the premises; and you (2) shall notify us in writing within fourteen (14) days thereafter of your intention to terminate the lease, in which case the Lease terminates as of the date of vacating.

If the leased premises are damaged or destroyed by fire or casualty to an extent that restoring the leased premises to its undamaged condition requires you to vacate the premises, we are authorized to terminate the Lease within fourteen (14) days of providing written notice to you. If this Lease is terminated as a result of damages or destruction of the leased premises, we shall return all prepaid rent and security deposits that are recoverable by law. Accounting for rent is to occur as of the date you return the keys to us or have in fact vacated the leased premises, whichever date is earlier.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity or other emergency involving imminent harm. You should then contact our representative. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security, unless required by law. If we provide any access control devices or security measures upon the property, they are not a guarantee to prevent crime or to reduce the risk of crime on the property. You agree that no access control or security measures can eliminate all crime and that you will not rely upon any provided access control or security measures as a warranty or guarantee of any kind. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the community. If you or any occupant or guest is affected by a crime, you must make a written report to the appropriate law enforcement agency and our representative. You must also furnish us with the law-enforcement agency's incident report number upon request.

26. **CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the dwelling unit, fixtures, and furniture as is. We disclaim all implied warranties. You'll be given an Inventory and Condition form on or before move-in. You must note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the dwelling unit and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the dwelling unit. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. Installation of any such device without execution of a separate lease addendum may be considered a default under the terms and conditions of this lease contract. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors and/or carbon monoxide detectors, if provided, furniture, telephone and cable TV wiring, screens, locks, and access control devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated

from inside the dwelling unit; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the dwelling unit (whether or not we consent) become ours unless we agree otherwise in writing.

27. **REQUESTS, REPAIRS, AND MALFUNCTIONS.** IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SUBMITTED THROUGH EITHER THE ONLINE TENANT/MAINTENANCE PORTAL, OR SIGNED AND IN WRITING AND DELIVERED TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the dwelling unit if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part.

28. **ANIMALS.** Unless otherwise provided under federal, state, or local law, no animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere on the Premises unless we've so authorized in writing. You must remove an illegal or unauthorized animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. If we allow an animal as a pet, you must execute a separate animal addendum which may require additional deposits, rents, fees or other charges. An animal deposit is considered a general security deposit. When allowed by applicable laws, we will authorize an assistance animal for a disabled person. When allowed by applicable laws, before we authorize an assistance animal, if the disability is not readily apparent, we may require reliable documentation verifying the need for the assistance animal. If we authorize an assistance animal, we may require you to execute a separate animal and/or assistance animal addendum. Animal deposits, additional rents, fees or other charges will not be required for an assistance animal needed due to disability, including an emotional support or service animal, as authorized under federal, state, or local law. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the dwelling unit at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the dwelling unit, a 24-hour written notice of intent to remove the animal, and (2) following the procedures of paragraph 29 (When We May Enter). We may keep or kennel the animal or turn it over to a humane society or local authority. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. We'll return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges. We have no lien on the animal for any purpose.

29. **WHEN WE MAY ENTER.** You shall not unreasonably withhold consent for us to enter into the dwelling unit in order to inspect the premises, make necessary or agreed repairs, decorations, alterations, or improvements, supply necessary or agreed services, or exhibit the dwelling unit to prospective or actual purchasers, mortgagees, tenants, workers or contractors.

We may enter the dwelling unit without consent in case of emergency. "Emergency" means a sudden, generally unexpected occurrence or set of circumstances demanding immediate action.

© 2020, National Apartment Association, Inc. - 6/2020, Tennessee
Page 4 of 8
Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

Where no emergency exists, if any utility has been turned off due to no fault of us, we shall be permitted to enter the premises. We may then inspect the premises, ascertain any damages and make necessary repairs that have resulted from the lack of utilities.

We also have the right of access by Court Order; if you are deceased, incapacitated, or incarcerated; if you have abandoned or surrendered the premises; or during your extended absence in excess of seven (7) days. We may enter the premises without notice if you fail to repair, replace or clean as promptly as conditions require a breach of lease that materially affects health and safety.

We may also upon twenty-four (24) hours notice enter the premises within thirty (30) days of termination of tenancy for the purpose of showing the subject premises to prospective tenants.

**30. JOINT AND SEVERAL RESPONSIBILITY.** Each resident is jointly and severally liable for all lease obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of tenancy termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident is considered the agent of all other residents in the dwelling unit for service of process. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 50 (Deposit Return, Surrender, and Abandonment).

## Replacements

**31. REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, assignment, or granting a right or license to occupy, no matter the length of the term, the subject area, or the use of the subject area, is strictly prohibited unless we expressly consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we expressly consent, in writing, to the replacement, subletting, assignment, or granting a right or any license to occupy, then:

(1) a reletting charge *will not* be due; and

(2) a reasonable administrative (paperwork) and/or transfer fee *will* be due, and a rekeying fee *will* be due if rekeying is requested or required.

**Procedures for Replacement.** If we approve a replacement resident, then, the departing, remaining, and new residents must properly execute our Lease Contract Amendment to Add or Change a Roommate During Lease Term. The Addendum will not be effective until executed by all departing, remaining, and new residents, as well as Owner or Owner's representative.

## Responsibilities of Owner and Resident

**32. RESPONSIBILITIES OF OWNER.** We will act with customary diligence to comply with requirements of applicable building and housing codes materially affecting health and safety.

Notice of any non-compliance by us must be properly given to us in writing.

**33. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract or statutory obligations including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the dwelling unit rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the dwelling unit; (4) you give incorrect or false answers in a rental application, no matter when we discover the false or incorrect statements; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute (6) any illegal drugs or paraphernalia are found in your dwelling unit; (7) you or any guest or occupant engages in any of the prohibited conduct described in paragraph 21 (Prohibited Conduct); or (8) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government.

**Eviction—Counties Where Tennessee Uniform Residential Landlord and Tenant Act Applies.**

(1) With the exception of non-payment of rent, if you fail to pay for the costs of repairs, damages or any other amount due to us pursuant to this Lease Contract, you will receive a written notice specifying the violation and advising you that your tenancy will terminate upon a date not less than fourteen (14) days after receipt of this notice, if the violation is not cured within fourteen (14) days. If the violation is a repeat offense of an earlier violation occurring within six (6) months, for which notice was given, your tenancy will terminate on seven (7) days notice without a right to cure the default. If your breach involves a required repair of physical damages, you shall not proceed with the repair of those damages without our specific written consent. Any repairs made by you without our specific written consent will be additional grounds for termination of your tenancy.

**NOTICE OF TERMINATION OF TENANCY FOR NON-PAYMENT OF RENT IS HEREBY SPECIFICALLY WAIVED.**

(2) Your tenancy will terminate three (3) days from the date written notice is delivered to you, if you or any other persons in the dwelling unit, with your consent (a) willfully or intentionally commit a violent act, (b) behave in a manner which constitutes or threatens to be a real and present danger to the health, safety, or welfare of the life or property of other tenants or persons on the property that affects the health, safety or welfare of the landlord or other tenants or commit or permit premises.

(3) For all other defaults, you may receive notice that your tenancy will terminate upon a date not less than fourteen (14) days after the receipt of the notice.

After giving notice to vacate or filing an eviction suit, we may still accept rent or other sums due; this acceptance does not waive or diminish our right of eviction, or any other contractual or statutory right. Accepting money at any time does not waive our right to damages; past or future rent or other sums; or to continue with eviction proceedings.

**Eviction—Counties Where Tennessee's Uniform Residential Landlord and Tenant Act Does Not Apply.** If (1) you neglect or refuse to pay rent that is due and is in arrears, upon demand, and you have not waived your right to notice of termination of tenancy for non-payment of rent; or, (2) you or members of your household or guests damage the subject premises beyond normal wear and tear, you will receive a written notice specifying the violation and advising you that your tenancy will terminate upon a date not less than fourteen (14) days after receipt of the notice if the violation is not cured within fourteen (14) days. If the violation is a repeat offense of an earlier violation occurring within six (6) months, your tenancy will terminate on fourteen (14) days' notice without a right to cure the default. When allowed by statute, three (3) days' notice shall be sufficient to terminate tenancy if you, or any other person on the premises with your consent, willfully or intentionally commits a violent act; engages in any drug-related activity; or behaves in a manner that constitutes or threatens to be a real and present danger to the health, safety or welfare of the life or property of other tenants, the landlord, the landlord's representatives or other persons on the premises. Notice may be by: (1) regular mail; (2) certified mail, return receipt requested; or (3) personal delivery to any resident.

Termination of your possession rights or subsequent reletting does not release you from liability for future rent or other lease obligations. After giving notice to vacate or filing an eviction suit, we may still accept rent or other sums due with reservation of our rights and remedies; the filing or acceptance does not waive or diminish our right of eviction or any other contractual or statutory right. Accepting money at any time with reservation of our rights and remedies does not waive our right to damages; past or future rent or other sums; or to continue with eviction proceedings.

**Acceleration.** All monthly rent for the rest of the lease term or renewal period will be accelerated automatically without notice or demand (before or after acceleration) and will be immediately due and delinquent if, without our written consent: (1) you move out, remove property in preparing to move out, or give oral or written notice (by you or any occupant) of intent to move out before the lease term or renewal period ends; *and* (2) you've not paid all rent for the entire lease term or renewal period. Such conduct is considered a default for which we need not give you notice. Remaining rent also will be accelerated if you're judicially evicted or move out when we demand because you've defaulted. Acceleration is subject to our mitigation obligations below.

© 2020, National Apartment Association, Inc. - 6/2020, Tennessee

Page 5 of 8

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) rent for the holdover period will be increased by 25% over the then-existing rent, without notice; (3) you'll be liable to us for all rent for the full term of the previously signed Lease Contract of a new resident who can't occupy because of the holdover; and (4) at our option, we may extend the lease term—for up to one month from the date of notice of lease extension—by delivering written notice to you or your dwelling unit while you continue to hold over.

**Remedies Cumulative.** Any remedies set forth herein shall be cumulative, in addition to, and not in limitation of, any other remedies available to Landlord under any applicable law.

**Other Remedies.** We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10 (Special

Provisions), in addition to other sums due. Upon your default, we have all other legal remedies, including tenancy termination. In the event we incur attorney's fees in enforcing this Lease Contract against you or any occupants or guests, you must pay our reasonable attorneys' fees and other litigation costs. In the event we incur attorneys' fees in any lawsuits brought by you against us and we prevail, you must pay our reasonable attorneys' fees and litigation costs. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). All unpaid amounts bear 18% interest per year from due date, compounded annually. You must pay all costs of collection including but not limited to collection agency fees.

**Mitigation of Damages.** If you move out early, you'll be subject to paragraph 11 (Early Move-Out) and all other remedies. We'll exercise customary diligence to relet and mitigate damages. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

## General Clauses

**34. ENTIRE AGREEMENT.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us.

**35. NO AUTHORITY TO AMEND UNLESS IN WRITING.**
Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.

**36. NO WAIVER.** No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances.

**37. NOTICE.** Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax signatures are binding.

**38. MISCELLANEOUS.**
A. Exercising one remedy won't constitute an election or waiver of other remedies.
B. Insurance subrogation is waived by all parties.
C. All remedies are cumulative.
D. Unless prohibited by law or the respective insurance policies insurance subrogation is waived by all parties.
E. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf.
F. This Lease Contract binds subsequent owners.
G. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract.
H. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies.
I. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option.
J. All lease obligations must be performed in the county where the dwelling unit is located.
K. All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

**39. WAIVER OF JURY TRIAL.** To minimize legal expenses and, to the extent allowed by law, you and we agree that a trial of any lawsuit based on statute common law, and/or related to this Lease Contract shall be to a judge and not a jury.

**40. CONTACTING YOU.** By signing this lease, you are agreeing that we, our representative(s) or agent(s) may contact you. You agree that we may contact you using any contact information relating to your lease including any number (i) you have provided to us (ii) from which you called us, or (iii) which we obtained and through which we reasonably believe we can reach you. You agree we may use any means to contact you. This may include calls made to your cellular telephone using an automatic telephone dialing system, artificial or prerecorded voice messages, text messages, mail, e-mail, and calls to your phone or Voice over Internet Protocol (VoIP) service, or any other data or voice transmission technology. You agree to promptly notify us if you change any contact information you provide to us. You are responsible for any service provider charges as a result of us contacting you.

**41. OBLIGATION TO VACATE.** If we provide you with a notice to vacate, you shall vacate the dwelling unit and remove all your personal property therefrom at the expiration of the lease term, or by the date set forth in the notice to vacate, whichever date is earlier, without further notice or demand from us.

**42. FORCE MAJEURE.** If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**43. PAYMENTS.** Payment of all sums is an independent covenant. At our option and without notice, we may apply money received [other than sale proceeds under paragraph 13 (Contractual Lien and Property Left in Dwelling Unit) or utility payments subject to governmental regulations] first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

**44. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local dwelling unit (multi-housing) associations for the area where the dwelling unit is located.

## When Moving Out

**45. MOVE-OUT NOTICE.** Before moving out, either at the end of the lease term, any extension of the lease term, or prior to the end of the lease term, you must give your representative advance written notice of your intention to vacate as required by paragraph 3 (Lease Term). If you move out prior to the end of the lease term, your notice does not act as a release of liability for the full term of the Lease Contract. You will still be liable for the entire Lease Contract term if you move out early (paragraph 23 - Release of Resident) except if

you terminate the Lease Contract in accordance with any other applicable law. All notices to vacate must be in writing and must provide the date by which you intend to vacate. If the notice does not comply with the time requirements of paragraph 3 (Lease Term), even if you move by the last date in the lease term, you will be responsible for an additional month's rent. If you fail to vacate by the date set forth in your notice, your notice is void and you must submit a new written notice. If you fail to provide proper notice and vacate, you will be responsible for an additional month's rent.

© 2020, National Apartment Association, Inc. - 6/2020, Tennessee

Page 6 of 8
Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

**46. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the lease term or renewal period ends unless all rent for the entire lease term or renewal period is paid in full. Early move-out may result in reletting charges and acceleration of future rent under paragraphs 11 (Early Move-Out) and 33 (Default by Resident). You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must vacate the dwelling unit before the deposit refund process begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**47. CLEANING.** You must thoroughly clean the dwelling unit, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**48. MOVE-OUT INSPECTION.** You have the right to be present with our representative at the premises for a scheduled mutual move-out inspection, during normal business hours, to determine if there are any damages to the premises that are in excess of normal wear and tear. This mutual inspection will be set by us and held on the day, or within four (4) days after, you have completely vacated the premises, surrendered possession of the premises, and have returned all means of access to the premises. If you fail to attend a scheduled move-out inspection, you waive the right to contest any damage found as a result of our move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our accounting.

**49. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the dwelling unit and is missing; replacing dead or missing smoke-detector and/or carbon monoxide detector batteries, if provided; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone or TV cable services or rental items (if you so request or have moved out); trips to open the dwelling unit when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized access control devices or alarm systems; agreed reletting charges; packing, removing, or storing property removed or stored under paragraph 13 (Contractual Lien and Property Left

in Dwelling Unit); removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related charges under paragraphs 6 (Rent and Charges) and 28 (Animals); government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to smoke detectors and carbon monoxide detectors, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge (not to exceed $100) for owner/manager's time and inconvenience in our lawful removal of an animal or in any valid eviction proceeding you, plus reasonable attorney's fees, court costs, and filing fees actually paid; and other sums due under this Lease Contract.

You'll be liable to us for: (1) charges for replacing all keys and access devices referenced in paragraph 5 (Keys) if you fail to return them on or before your actual move-out date; (2) accelerated rent if you have violated paragraph 33 (Default by Resident); and (3) a reletting fee if you have violated paragraph 11 (Early Move-Out).

**50. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.**
**Deposit Return and Forwarding Address.** You are required to provide us written notice of your forwarding address, on or before termination of this Lease Contract. Within a reasonable time, we will mail you to the forwarding address you provide, your security deposit refund (less lawful deductions) and an itemized accounting of any deductions within the time frames and parameters set forth under state law after surrender or abandonment of the premises.

**Surrender.** You have *surrendered* the dwelling unit when: (1) the move-out date has passed and no one is living in the dwelling unit in our reasonable judgment; or (2) all dwelling unit keys and access devices listed in paragraph 5 (Keys) have been turned in to our managers—whichever date occurs first.

**Abandonment.** You have *abandoned* the dwelling unit when you exceed 30 days or more of unexplained and/or extended absence from the premises without payment of rent or we send proper notice to you, after you have not paid rent for fifteen (15) days past the rental due date and other reasonable factual circumstances indicate that you have permanently vacated the premises, and you fail to respond to our notice in accordance with the law.

Surrender, abandonment, and judicial eviction ends your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the dwelling unit; determine any security deposit deductions; and remove property left in the dwelling unit. Surrender, abandonment, and judicial eviction affect your rights to property left in the dwelling unit (paragraph 13 (Contractual Lien and Property Left in Dwelling Unit)), but do not affect our mitigation obligations (paragraph 33 (Default by Resident)).

---

## Severability, Originals and Attachments, and Signatures

**51. SEVERABILITY.** If any provision of this Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Lease Contract while preserving the intent of the parties.

**52. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures. We will provide you with one copy of the Lease Contract, to be retained by you, for your records. Your copy of the Lease Contract may be in paper format, in an electronic format at your request, or sent via

e-mail if we have communicated by e-mail about this Lease. Our rules and community policies, if any, will be attached to the Lease Contract and provided to you at signing. When an Inventory and Condition form is completed and you should retain a copy for your records. Any addenda or amendments you sign as a part of executing this Lease Contract are binding and hereby incorporated into and made part of the Lease Contract between you and us. This lease is the entire agreement between you and us. You acknowledge that you are NOT relying on any oral representations. A copy or scan of this Lease Contract and related addenda, amendments, and agreements may be used for any purpose and shall be treated as an original.

---

> **You are legally bound by this document.**
> **Read it carefully before signing.**

**Resident or Residents** *(all sign below)*      **Date of Execution**

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

**Owner or Owner's Representative** *(signing on behalf of owner)*    **Date of Execution**

_____    _____

© 2020, National Apartment Association, Inc. - 6/2020, Tennessee

Page 7 of 8
Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

**Address and phone number of owner's representative for notice purposes**

2010 West End Avenue

Nashville, TN. 37203

(615)844-4148

**Name and address of locater service** *(if applicable)*

N/A

**Date form is filled out** *(same as on top of page 1)*

08/12/2021

**SPECIAL PROVISIONS (CONTINUED FROM PAGE 2)**

© 2020, National Apartment Association, Inc.    Tennessee/National Apartment Association Official Form, June 2020    Page 8 of 8

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6



**DWELLING UNIT DESCRIPTION.** Unit No. _____1902_____ _____2010 West End Avenue_____
_____ *(street address)* in
_____Nashville_____ *(city)*, Tennessee, _____37203_____ *(zip code)*.
**LEASE CONTRACT DESCRIPTION.** Lease Contract date:___**August 12, 2021**___ Owner's name: **DRI/CA Nashville,**
**LLC**_____

Residents *(list all residents)*:
**Brandon Watters**

You must note on this form all defects or damage and return it to our representative. Otherwise, everything will be considered as in a clean, safe, and good working condition. Please mark through items listed below if they don't exist. This form protects both you (the resident) and us (the owner). We'll use it in determining what should and should not be considered your responsibility upon move-out.

Resident's Name:**Brandon Watters**_____
Home Phone: (_____) _____ Work Phone: (_____) _____

Resident's Name:_____
Home Phone: (_____) _____ Work Phone: (_____) _____

Resident's Name:_____
Home Phone: (_____) _____ Work Phone: (_____) _____

Resident's Name:_____
Home Phone: (_____) _____ Work Phone: (_____) _____

Resident's Name:_____
Home Phone: (_____) _____ Work Phone: (_____) _____

Resident's Name:_____
Home Phone: (_____) _____ Work Phone: (_____) _____

| ☐ Move-In   or   ☐ Move-Out Condition *(Check one)* |
|---|

**Living Room**
Walls _____
_____
Wallpaper _____
Plugs, Switches, A/C Vents _____
Woodwork/Baseboards _____
Ceiling _____
Light Fixtures, Bulbs _____
Floor/Carpet _____
_____
Doors, Stops, Locks _____
Windows, Latches, Screens _____
Window Coverings _____
Closets, Rods, Shelves _____
Closet Lights, Fixtures _____
Lamps, Bulbs _____
Other _____

**Kitchen**
Walls _____
_____
Wallpaper _____
Plugs, Switches, A/C Vents _____
Woodwork/Baseboards _____
Ceiling _____
Light Fixtures, Bulbs _____
Floor/Carpet _____
_____
Doors, Stops, Locks _____
Windows, Latches, Screens _____
Window Coverings _____
Cabinets, Drawers, Handles _____
Countertops _____
Stove/Oven, Trays, Pans, Shelves _____
Vent Hood _____
Refrigerator, Trays, Shelves _____
Refrigerator Light, Crisper _____

Dishwasher, Dispensers, Racks _____
Sink/Disposal _____
Microwave _____
Other _____

**General Items**
Thermostat _____
Cable TV or Master Antenna _____
A/C Filter _____
Washer/Dryer _____
Garage Door _____
Ceiling Fans _____
Exterior Doors, Screens/Screen Doors, Doorbell _____
Fireplace _____
Other _____
_____

**Dining Room**
Walls _____
_____
Wallpaper _____
Plugs, Switches, A/C Vents _____
Woodwork/Baseboards _____
Ceiling _____
Light Fixtures, Bulbs _____
Floor/Carpet _____
_____
Doors, Stops, Locks _____
Windows, Latches, Screens _____
Window Coverings _____
Closets, Rods, Shelves _____
Closet Lights, Fixtures _____
Other _____

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee

Page 1 of 3

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

**Halls**

Walls _____

_____

Wallpaper _____
Plugs, Switches, A/C Vents _____
Woodwork/Baseboards _____
Ceiling _____
Light Fixtures, Bulbs _____
Floor/Carpet _____

_____

Doors, Stops, Locks _____
Closets, Rods, Shelves _____
Closet Lights, Fixtures _____
Other _____

**Exterior** *(if applicable)*

Patio/Yard _____
Fences/Gates/Gate Latches or Locks _____
Faucets _____
Balconies _____
Other _____

_____

**Bedroom** *(describe which one):* _____

Walls _____

_____

Wallpaper _____
Plugs, Switches, A/C Vents _____
Woodwork/Baseboards _____
Ceiling _____
Light Fixtures, Bulbs _____
Floor/Carpet _____

_____

Doors, Stops, Locks _____
Windows, Latches, Screens _____
Window Coverings _____
Closets, Rods, Shelves _____
Closet Lights, Fixtures _____
Other _____

_____

**Bedroom** *(describe which one):* _____

Walls _____

_____

Wallpaper _____
Plugs, Switches, A/C Vents _____
Woodwork/Baseboards _____
Ceiling _____
Light Fixtures, Bulbs _____
Floor/Carpet _____

_____

Doors, Stops, Locks _____
Windows, Latches, Screens _____
Window Coverings _____
Closets, Rods, Shelves _____
Closet Lights, Fixtures _____
Other _____

_____

**Bath** *(describe which one):* _____

Walls _____

_____

Wallpaper _____
Plugs, Switches, A/C Vents _____
Woodwork/Baseboards _____
Ceiling _____
Light Fixtures, Bulbs _____
Exhaust Fan/Heater _____
Floor/Carpet _____

_____

Doors, Stops, Locks _____
Windows, Latches, Screens _____
Window Coverings _____
Sink, Faucet, Handles, Stopper _____
Countertops _____
Mirror _____
Cabinets, Drawers, Handles _____
Toilet, Paper Holder _____
Bathtub, Enclosure, Stopper _____

Shower, Doors, Rods _____
Tile _____
Other _____

**Half Bath**

Walls _____

_____

Wallpaper _____
Plugs, Switches, A/C Vents _____
Woodwork/Baseboards _____
Ceiling _____
Light Fixtures, Bulbs _____
Exhaust Fan/Heater _____
Floor/Carpet _____

_____

Doors, Stops, Locks _____
Windows, Latches, Screens _____
Window Coverings _____
Sink, Faucet, Handles, Stopper _____
Countertops _____
Mirror _____
Cabinets, Drawers, Handles _____
Toilet, Paper Holder _____
Tile _____
Other _____

_____

**Bedroom** *(describe which one):* _____

Walls _____

_____

Wallpaper _____
Plugs, Switches, A/C Vents _____
Woodwork/Baseboards _____
Ceiling _____
Light Fixtures, Bulbs _____
Floor/Carpet _____

_____

Doors, Stops, Locks _____
Windows, Latches, Screens _____
Window Coverings _____
Closets, Rods, Shelves _____
Closet Lights, Fixtures _____
Other _____

_____

**Bath** *(describe which one):* _____

Walls _____

_____

Wallpaper _____
Plugs, Switches, A/C Vents _____
Woodwork/Baseboards _____
Ceiling _____
Light Fixtures, Bulbs _____
Exhaust Fan/Heater _____
Floor/Carpet _____

_____

Doors, Stops, Locks _____
Windows, Latches, Screens _____
Window Coverings _____
Sink, Faucet, Handles, Stopper _____
Countertops _____
Mirror _____
Cabinets, Drawers, Handles _____
Toilet, Paper Holder _____
Bathtub, Enclosure, Stopper _____
Shower, Doors, Rods _____
Tile _____
Other _____

_____

**Safety-Related Items** *(Put "N/A" if not applicable)*

Door Knob Locks _____
Keyed Deadbolt Locks _____

_____

Keyless Deadbolts _____

_____

Sliding Door Pin Locks _____
Sliding Door Latches _____

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee
Page 2 of 3

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

Sliding Door Security Bars _____     Other _____

Doorviewers _____           _____
Window Latches _____           _____
Porch and Patio Lights _____
Smoke Detectors _____     **Date of Move-In:** _____
Alarm System _____      *or*
Fire Extinguishers (look at charge level BUT DON'T TEST!)     **Date of Move-Out:** _____
_____
Garage Door Opener _____
Gate Access Card(s) _____


**SPECIAL PROVISIONS.**   The following special provisions control over conflicting provisions of this printed form:

**N/A** _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Acknowledgment.** You acknowledge that you have inspected and tested all of the safety-related items (if in the dwelling) and that they are working, except as noted above. All items will be assumed to be in good condition unless otherwise noted on this form. You acknowledge receiving written operating instructions on the alarm system and gate access entry systems (if there are any). You acknowledge testing the smoke detector(s) and verify that they are working. You acknowledge that you and management have inspected the apartment unit and that no signs of bedbugs or other pests are present. This unit is in a decent, safe and sanitary condition.

*In signing below, you accept this inventory as part of the Lease Contract and agree that it accurately reflects the condition of the premises for purposes of determining any refund due to you when you move out.*


**Resident or Resident's Agent:** _____     **Date of Signing:** _____

**Owner or Owner's Representative:** _____     **Date of Signing:** _____

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee
Page 3 of 3
Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

# ANIMAL ADDENDUM
*Becomes part of Lease Contract*



Date: _____ **August 12, 2021** _____
(when this Addendum is filled out)

*Please note: We consider animals a serious responsibility and a risk to each resident in the dwelling. If you do not properly control and care for an animal, you'll be held liable if it causes any damage or disturbs other residents.*

*In this document, the terms "you" and "your" refer to all residents listed below and all occupants or guests; and the terms "we," "us," and "our" refer to the owner named in the Lease Contract (not to the property manager or anyone else).*

**1. DWELLING UNIT DESCRIPTION.**

Unit No. _____**1902**_____ **2010 West End**
**Avenue**
_____ *(street address)* in
_____
_____**Nashville**_____
*(city)*, Tennessee, _____**37203**_____ *(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**

Lease Contract Date: **August 12, 2021**
Owner's name: **DRI/CA Nashville, LLC**
_____
_____
_____
_____

Residents *(list all residents)*:

**Brandon Watters**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control. The Lease Contract is referred to in this Addendum as the "Lease Contract."

**3. A. ☐ NO APPROVED ANIMALS.** If this box is checked, you are not allowed to have animals (including mammals, reptiles, birds, fish, rodents, and insects), even temporarily, anywhere on the Premises unless we've authorized so in writing. We will authorize support and/or service animals for you, your guests, and occupants pursuant to the parameters and guidelines established by the Fair Housing Act, HUD regulatory guidelines, and any applicable state and/or local laws.

**B. ☐ CONDITIONAL AUTHORIZATION FOR ANIMAL.** If this box is checked, you may keep the animal that is described below in the dwelling until the Lease Contract expires. But we may terminate this authorization sooner if your right of occupancy is lawfully terminated or if in our sole judgment you and your animal, your guests, or any occupant violate any of the rules in this Addendum.

**4. ANIMAL DEPOSIT.** An animal deposit of $ ____**0.00**____ will be charged. We *[check one]* ☒ will consider, or ☐ will not consider this additional security deposit the general security deposit for all purposes. The security deposit amount in the Lease Contract *[check one]* ☐ does, or ☒ *does not include* this additional deposit amount. Refund of the animal deposit will be subject to the terms and conditions set forth in the Lease Contract regardless of whether it is considered part of the general security deposit.

**5. ADDITIONAL MONTHLY RENT.** Your total monthly rent (as stated in the Lease Contract) will be increased by $ ____**25.00**____. The monthly rent amount in the Lease Contract *[check one]* ☐ includes ☒ does not include this additional animal rent.

**6. ADDITIONAL FEE.** You must also pay a one-time non-refundable fee of $ ____**350.00**____ for having the animal in the dwelling unit.

**7. LIABILITY NOT LIMITED.** The additional monthly rent and additional security deposit under this Animal Addendum do not limit residents' liability for property damages, cleaning, deodorization, defleaing, replacements, or personal injuries.

**8. DESCRIPTION OF ANIMAL(S).** You may keep only the animal(s) described below. You may not substitute any other animal(s). Neither you nor your guests or occupants may bring any other animal(s)—mammal, reptile, bird, amphibian, fish, rodent, arachnid, or insect—into the dwelling or apartment community.

Animal's name: _____
Type: _____
Breed: _____
Color: _____
Weight: _____ Age: _____
City of license: _____
License no.: _____
Date of last rabies shot: _____
Housebroken? _____
Animal owner's name: _____
_____
_____

Animal's name: _____
Type: _____
Breed: _____
Color: _____
Weight: _____ Age: _____
City of license: _____
License no.: _____
Date of last rabies shot: _____
Housebroken? _____
Animal owner's name: _____

**9. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

**Maximum of 2 pets per apartment.**
**Aggressive breeds are not allowed,**
**including, but not limited to: Pit Bull**
**Terriers, Staffordshire Terriers,**
**Rottweilers, German Shepherds, Presa**
**Canarios, Chows Chows, Doberman, Akitas,**
**Wolf-hybrids, Mastiffs, Cane Corsos, Great**
**Danes, Alaskan Malamutes, Siberian**
**Huskies, Belgian Malanois, St. Bernard,**
**Breed list may change at the property**
**management's discretion. No mix of**
**restricted breeds will be accepted.**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

© 2020, National Apartment Association, Inc. - 2/2020 Tennessee

Page 1 of 2
Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

**10. EMERGENCY.** In an emergency involving an accident or injury to your animal, we have the right, but not a duty, to take the animal to the following veterinarian for treatment, at your expense.

Doctor: _____

Address: _____

City/State/Zip: _____

Phone: _____

**11. ANIMAL RULES.** You are responsible for the animal's actions at all times. You agree to abide by these rules:

- The animal must not disturb the neighbors or other residents, regardless of whether the animal is inside or outside the dwelling.

- Dogs, cats, and support animals must be housebroken. All other animals must be caged at all times. No animal offspring are allowed.

- Inside, the animal may urinate or defecate *only* in these designated areas: **Not permitted**

- Outside, the animal may urinate or defecate *only* in these designated areas: **Dog Run**

- Animals may not be tied to any fixed object anywhere outside the dwelling units, except in fenced yards (if any) for your exclusive use.

- You must not let an animal other than support animals into swimming-pool areas, laundry rooms, offices, clubrooms, other recreational facilities, or other dwelling units.

- Your animal must be fed and watered inside the dwelling unit. Don't leave animal food or water outside the dwelling unit at any time, except in fenced yards (if any) for your exclusive use.

- You must keep the animal on a leash and under your supervision when outside the dwelling or any private fenced area. We or our representative may pick up unleashed animals and/or report them to the proper authorities. We may impose reasonable charges for picking up and/or keeping unleashed animals.

- Unless we have designated a particular area in your dwelling unit or on the grounds for animal defecation and urination, you are prohibited from letting an animal defecate or urinate *anywhere* on our property. You must take the animal off our property for that purpose. If we allow animal defecation inside the dwelling unit in this Addendum, you must ensure that it's done in a litter box with a kitty litter-type mix. If the animal defecates anywhere on our property (including in a fenced yard for your exclusive use), you'll be responsible for immediately removing the waste and repairing any damage. Despite anything this Addendum says, you must comply with all local ordinances regarding animal defecation.

**12. ADDITIONAL RULES.** We have the right to make reasonable changes to the animal rules from time to time if we distribute a written copy of any changes to every resident who is allowed to have animals.

**13. VIOLATION OF RULES.** If you, your guest, or any occupant violates any rule or provision of this Animal Addendum (based upon our sole judgment) and we give you written notice, you must remove the animal immediately and permanently from the premises. We also have all other rights and remedies set forth in the Lease Contract, including damages, eviction, and attorney's fees to the extent allowed by law.

**14. COMPLAINTS ABOUT ANIMAL.** You must immediately and permanently remove the animal from the premises if we receive a reasonable complaint from a neighbor or other resident or if we, in our sole discretion, determine that the animal has disturbed neighbors or other residents.

**15. LIABILITY FOR DAMAGES, INJURIES, CLEANING, ETC.** You and all co-residents will be jointly and severally liable for the entire amount of all damages caused by the animal, including all cleaning, defleaing, and deodorizing. This provision applies to all parts of the dwelling unit, including carpets, doors, walls, drapes, wallpaper, windows, screens, furniture, appliances, as well as landscaping and other outside improvements. If items cannot be satisfactorily cleaned or repaired, you must pay for us to replace them completely. Payment for damages, repairs, cleaning, replacements, etc. are due immediately upon demand.

As owner of the animal, you're strictly liable for the entire amount of any injury that the animal causes to a person or anyone's property. You'll indemnify us for all costs of litigation and attorney's fees resulting from any such damage.

**16. MOVE-OUT.** When you move out, you'll pay for defleaing, deodorizing, and shampooing to protect future residents from possible health hazards, regardless of how long the animal was there. We—not you—will arrange for these services.

**17. JOINT AND SEVERAL RESPONSIBILITY.** Each resident who signed the Lease Contract must sign this Animal Addendum. You, your guests, and any occupants must follow all animal rules. Each resident is jointly and severally liable for damages and all other obligations set forth in this Animal Addendum, even if the resident does not own the animal.

**18. GENERAL.** You acknowledge that no other oral or written agreement exists regarding animals. Except for written rule changes under paragraph 9 above, our representative has no authority to modify this Animal Addendum or the animal rules except in writing. This Animal Addendum and the animal rules are considered part of the Lease Contract described above. It has been executed in multiple originals, one for you and one or more for us.

**This is a binding legal document. Read it carefully before signing.**

| **Resident or Residents** | **Owner or Owner's Representative** |
| *(All residents must sign)* | *(Signs below)* |

_____

_____

_____

_____

_____

_____

© 2020, National Apartment Association, Inc. - 2/2020, Tennessee

Page 2 of 2

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

# UTILITY ADDENDUM



This Utility Addendum is incorporated into the Lease Contract (referred to in this addendum as "Lease Contract" or "Lease") dated **August 12, 2021** between **DRI/CA Nashville, LLC**

("We" and/or "we" and/or "us") and **Brandon Watters**

("You" and/or "you") of Apt. No. **1902** located at **2010 West End Avenue**

(street address) in **Nashville, TN 37203**
and is in addition to all terms and conditions in the Lease. This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**1.** Responsibility for payment of utilities, and the method of metering or otherwise measuring the cost of the utility, will be as indicated below.

a) **Water** service to your dwelling will be paid by you either:
- ☐ directly to the utility service provider; or
- ☐ water bills will be billed by the service provider to us and then allocated to you based on the following formula: **N/A**
  - ☐ If flat rate is selected, the current flat rate is $ **0.00** per month.
  - ☐ 3rd party billing company if applicable **N/A**

b) **Sewer** service to your dwelling will be paid by you either:
- ☐ directly to the utility service provider; or
- ☐ sewer bills will be billed by the service provider to us and then allocated to you based on the following formula: **N/A**
  - ☐ If flat rate is selected, the current flat rate is $ **0.00** per month.
  - ☐ 3rd party billing company if applicable **N/A**

c) **Gas** service to your dwelling will be paid by you either:
- ☐ directly to the utility service provider; or
- ☐ gas bills will be billed by the service provider to us and then allocated to you based on the following formula: **N/A**
  - ☐ If flat rate is selected, the current flat rate is $ **0.00** per month.
  - ☐ 3rd party billing company if applicable **N/A**

d) **Trash** service to your dwelling will be paid by you either:
- ☐ directly to the utility service provider; or
- ☐ trash bills will be billed by the service provider to us and then allocated to you based on the following formula: **N/A**
  - ☐ If flat rate is selected, the current flat rate is $ **0.00** per month.
  - ☐ 3rd party billing company if applicable **N/A**

e) **Electric** service to your dwelling will be paid by you either:
- ☒ directly to the utility service provider; or
- ☐ electric bills will be billed by the service provider to us and then allocated to you based on the following formula: **N/A**
  - ☐ If flat rate is selected, the current flat rate is $ **0.00** per month.
  - ☒ 3rd party billing company if applicable **Nashville Electric Service**

f) **Stormwater** service to your dwelling will be paid by you either:
- ☐ directly to the utility service provider; or
- ☐ stormwater bills will be billed by the service provider to us and then allocated to you based on the following formula: **N/A**
  - ☐ If flat rate is selected, the current flat rate is $ **0.00** per month.
  - ☐ 3rd party billing company if applicable **N/A**

g) **Cable TV** service to your dwelling will be paid by you either:
- ☐ directly to the utility service provider; or
- ☐ cable TV bills will be billed by the service provider to us and then allocated to you based on the following formula: **N/A**
  - ☐ If flat rate is selected, the current flat rate is $ **0.00** per month.
  - ☐ 3rd party billing company if applicable **N/A**

h) **Master Antenna** service to your dwelling will be paid by you either:
- ☐ directly to the utility service provider; or
- ☐ master antenna bills will be billed by the service provider to us and then allocated to you based on the following formula: **N/A**
  - ☐ If flat rate is selected, the current flat rate is $ **0.00** per month.
  - ☐ 3rd party billing company if applicable **N/A**

i) **Internet** service to your dwelling will be paid by you either:
- ☐ directly to the utility service provider; or
- ☐ internet bills will be billed by the service provider to us and then allocated to you based on the following formula: **N/A**
  - ☐ If flat rate is selected, the current flat rate is $ **0.00** per month.
  - ☐ 3rd party billing company if applicable **N/A**

j) **Pest Control** service to your dwelling will be paid by you either:
- ☐ directly to the utility service provider; or
- ☐ pest control bills will be billed by the service provider to us and then allocated to you based on the following formula: **N/A**
  - ☐ If flat rate is selected, the current flat rate is $ **0.00** per month.
  - ☐ 3rd party billing company if applicable **N/A**

k) (Other) **Monthly Package Flat Rate** service to your dwelling will be paid by you either:
- ☐ directly to the utility service provider; or
- ☒ bills will be billed by the service provider to us and then allocated to you based on the following formula: **N/A**
  - ☒ If flat rate is selected, the current flat rate is $ **115.00** per month.
  - ☐ 3rd party billing company if applicable **N/A**

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

Page 1 of 3

l) (Other) **N/A**_____ service to your dwelling will be paid by you either:
- ☐ directly to the utility service provider; or
- ☐ bills will be billed by the service provider to us and then allocated to you based on the following formula: **N/A**_____
  - ☐ If flat rate is selected, the current flat rate is $ _____**0.00**_____ per month.
  - ☐ 3rd party billing company if applicable **N/A**_____

METERING/ALLOCATION METHOD KEY
"1"  - Sub-metering of all of your water/gas/electric use
"2"  - Calculation of your total water use based on sub-metering of hot water
"3"  - Calculation of your total water use based on sub-metering of cold water
"4"  - Flat rate per month
"5"  - Allocation based on the number of persons residing in your dwelling unit
"6"  - Allocation based on the number of persons residing in your dwelling unit using a ratio occupancy formula
"7"  - Allocation based on square footage of your dwelling unit
"8"  - Allocation based on a combination of square footage of your dwelling unit and the number of persons residing in your dwelling unit
"9"  - Allocation based on the number of bedrooms in your dwelling unit
"10"- Allocation based on a lawful formula not listed here
      (Note: if method "10" is selected, a separate sheet will be attached describing the formula used)

2. If an allocation method is used, we or our billing company will calculate your allocated share of the utilities and services provided and all costs in accordance with state and local statutes. Under any allocation method, Resident may be paying for part of the utility usage in common areas or in other residential units as well as administrative fees. Both Resident and Owner agree that using a calculation or allocation formula as a basis for estimating total utility consumption is fair and reasonable, while recognizing that the allocation method may or may not accurately reflect actual total utility consumption for Resident. Where lawful, we may change the above methods of determining your allocated share of utilities and services and all other billing methods, in our sole discretion, and after providing written notice to you. More detailed descriptions of billing methods, calculations and allocation formulas will be provided upon request.

   If a flat fee method for trash or other utility service is used, Resident and Owner agree that the charges indicated in this Agreement (as may be amended with written notice as specified above) represent a fair and reasonable amount for the service(s) provided and that the amount billed is not based on a monthly per unit cost.

3. When billed by us directly or through our billing company, you must pay utility bills within _____**5**_____ days of the date when the utility bill is issued at the place indicated on your bill, or the payment will be late. If a payment is late, you will be responsible for a late fee as indicated below. The late payment of a bill or failure to pay any utility bill is a material and substantial breach of the Lease and we will exercise all remedies available under the Lease, up to and including eviction for nonpayment. To the extent there are any new account, monthly administrative, late or final bill fees, you shall pay such fees as indicated below.

| | | |
|---|---|---|
| New Account Fee: | $ _____**0.00**_____ | (not to exceed $ _____**0.00**_____ ) |
| Monthly Administrative Billing Fee: | $ _____**0.00**_____ | (not to exceed $ _____**0.00**_____ ) |
| Late Fee: | $ _____**0.00**_____ | (not to exceed $ _____**0.00**_____ ) |
| Final Bill Fee: | $ _____**0.00**_____ | (not to exceed $ _____**0.00**_____ ) |

   If allowed by state law, we at our sole discretion may amend these fees, with written notice to you.

4. You will be charged for the full period of time that you were living in, occupying, or responsible for payment of rent or utility charges on the dwelling. If you breach the Lease, you will be responsible for utility charges for the time period you were obliged to pay the charges under the Lease, subject to our mitigation of damages. In the event you fail to timely establish utility services, we may charge you for any utility service billed to us for your dwelling and may charge a reasonable administration fee for billing for the utility service in the amount of $ _____**0.00**_____.

5. When you move out, you will receive a final bill which may be estimated based on your prior utility usage. This bill must be paid at the time you move out or it will be deducted from the security deposit.

6. We are not liable for any losses or damages you incur as a result of outages, interruptions, or fluctuations in utility services provided to the dwelling unless such loss or damage was the direct result of negligence by us or our employees. You release us from any and all such claims and waive any claims for offset or reduction of rent or diminished rental value of the dwelling due to such outages, interruptions, or fluctuations.

7. You agree not to tamper with, adjust, or disconnect any utility sub-metering system or device. Violation of this provision is a material breach of your Lease and may subject you to eviction or other remedies available to us under your Lease, this Utility Addendum and at law.

8. Where lawful, all utilities, charges and fees of any kind under this lease shall be considered additional rent, and if partial payments are accepted by the Owner, they will be allocated first to non-rent charges and to rent last.

9. You represent that all occupants that will be residing in the Unit are accurately identified in the Lease. You agree to promptly notify Owner of any change in such number of occupants.

10. You agree that you may, upon thirty (30) days prior written notice from Owner to you, begin receiving a bill for additional utilities and services, at which time such additional utilities and services shall for all purposes be included in the term Utilities.

11. This Addendum is designed for use in multiple jurisdictions, and no billing method, charge, or fee mentioned herein will be used in any jurisdiction where such use would be unlawful. If any provision of this addendum or the Lease is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this addendum or the Lease. Except as specifically stated herein, all other terms and conditions of the Lease shall remain unchanged. In the event of any conflict between the terms of this Addendum and the terms of the Lease, the terms of this Addendum shall control.

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee
Page 2 of 3
Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

**12.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Utility Addendum and will supersede any conflicting provisions of this printed Utility Addendum and/or the Lease Contract.

**Residents will be responsible for a monthly package flat rate. The monthly package flat rate included a flat rate for Water, Sewer, Trash, Internet/Cable, Pest Control: $115 – Studio/Convertible, $130 - 1 Bedroom, $155 - 2 Bedroom. Residents will be charged $50 per month in addition to usage if electricity is not entered in the resident's name.**

Resident Signature _____ Date _____

Resident Signature _____ Date _____

Resident Signature _____ Date _____

Resident Signature _____ Date _____

Resident Signature _____ Date _____

Resident Signature _____ Date _____

Management _____ Date _____

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

# BED BUG ADDENDUM



Date: **August 12, 2021**
(when this Addendum is filled out)

*Please note: It is our goal to maintain a quality living environment for our residents. To help achieve this goal, it is important to work together to minimize the potential for any bed bugs in your dwelling or surrounding dwellings. This addendum contains important information that outlines your responsibility and potential liability with regard to bed bugs.*

**1. DWELLING UNIT DESCRIPTION.**
Unit No. **1902** **2010 West End**
**Avenue**
_____ *(street address)* in
**Nashville**
*(city)*, Tennessee, **37203** *(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **August 12, 2021**
Owner's name: **DRI/CA Nashville, LLC**
_____
_____
_____
_____

Residents *(list all residents):*
**Brandon Watters**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. PURPOSE.** This Addendum modifies the Lease Contract and address situations related to bed bugs *(cimex lectularius)* which may be discovered infesting the dwelling or personal property in the dwelling. You understand that we relied on your representations to us in this Addendum.

**4. INSPECTION AND INFESTATIONS.** BY SIGNING THIS ADDENDUM, YOU REPRESENT THAT:

- YOU HAVE INSPECTED THE DWELLING PRIOR TO MOVING IN, OR PRIOR TO SIGNING THIS ADDENDUM, AND YOU DID NOT FIND ANY EVIDENCE OF BED BUGS OR A BED BUG INFESTATION;

OR

- YOU WILL INSPECT THE DWELLING WITHIN 48 HOURS AFTER MOVING IN, OR WITHIN 48 HOURS AFTER SIGNING THIS ADDENDUM AND WILL NOTIFY US OF ANY BED BUGS OR BED BUG INFESTATIONS.

You agree that you have read the information provided in this Addendum and that you are not aware of any infestation or presence of bed bugs in your current or previous dwellings, furniture, clothing, personal property, or possessions. You also acknowledge that you have fully disclosed to us any previous bed bug infestations or bed bug issues that you have experienced.

If you disclose to us a previous experience with bed bug infestations or other bed bug related issues, we can review documentation of the previous treatment(s) and inspect your personal property and possession to confirm the absence of bed bugs.

**5. ACCESS FOR INSPECTION AND PEST TREATMENT.** You must allow us and our pest control agents access to the dwelling at reasonable times to inspect for or treat bed bugs as allowed by law. You and your family members, occupants, guests, and invitees must cooperate and will not interfere with inspections or treatments. We have the right to select any licensed pest control professional to treat the dwelling and building. We can select the method of treating the dwelling, building and common areas for bed bugs. We can also inspect and treat adjacent or neighboring dwellings to the infestation even if those dwellings are not the source or cause of the known infestation. Unless otherwise prohibited by law, you are responsible for and must, at your own expense, have your own personal property, furniture, clothing and possessions treated according to accepted treatment methods established by a licensed pest control firm that we approve. You must do so as close as possible to the time we treated the dwelling. If you fail to do so, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract. You agree not to treat the dwelling for a bed bug infestation on your own.

**6. NOTIFICATION.** You must promptly notify us:

- of any known or suspected bed bug infestation or presence in the dwelling, or in any of your clothing, furniture or personal property.
- of any recurring or unexplained bites, stings, irritations, or sores of the skin or body which you believe is caused by bed bugs, or by any condition or pest you believe is in the dwelling.
- if you discover any condition or evidence that might indicate the presence or infestation of bed bugs, or of any confirmation of bed bug presence by a licensed pest control professional or other authoritative source.

**7. COOPERATION.** If we confirm the presence or infestation of bed bugs, you must cooperate and coordinate with us and our pest control agents to treat and eliminate the bed bugs. You must follow all directions from us or our agents to clean and treat the dwelling and building that are infested. You must remove or destroy personal property that cannot be treated or cleaned as close as possible to the time we treated the dwelling. Any items you remove from the dwelling must be disposed of off-site and not in the property's trash receptacles. If we confirm the presence or infestation of bed bugs in your dwelling, we have the right to require you to temporarily vacate the dwelling and remove all furniture, clothing and personal belongings in order for us to perform pest control services. If you fail to cooperate with us, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract.

**8. RESPONSIBILITIES.** You may be required to pay all reasonable costs of cleaning and pest control treatments incurred by us to treat your dwelling unit for bed bugs. If we confirm the presence or infestation of bed bugs after you vacate your dwelling, you may be responsible for the cost of cleaning and pest control treatments. If we must move other residents in order to treat adjoining or neighboring dwellings to your dwelling unit, you may be liable for payment of any lost rental income and other expenses incurred by us to relocate the neighboring residents and to clean and perform pest control treatments to eradicate infestations in other dwellings. If you fail to pay us for any costs you are liable for, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract, and obtain immediate possession of the dwelling. If you fail to move out after your right of occupancy has been terminated, you will be liable for holdover rent under the Lease Contract.

© 2020, National Apartment Association, Inc. - 2/2020, Tennessee

Page 1 of 3

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

9. **TRANSFERS.** If we allow you to transfer to another dwelling in the community because of the presence of bed bugs, you must have your personal property and possessions treated according to accepted treatment methods or procedures established by a licensed pest control professional. You must provide proof of such cleaning and treatment to our satisfaction.

10. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**You are legally bound by this document. Please read it carefully.**

**Resident or Residents**
*(All residents must sign)*

**Owner or Owner's Representative**
*(Signs below)*

_____

_____

_____          **Date of Signing Addendum**

_____

_____          _____

_____

*You are entitled to receive an original of this Addendum after it is fully signed. Keep it in a safe place.*

© 2020, National Apartment Association, Inc. - 2/2020, Tennessee

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

# BED BUGS — A Guide for Rental Housing Residents

Bed bugs, with a typical lifespan of 6 to 12 months, are wingless, flat, broadly oval-shaped insects. Capable of reaching the size of an apple seed at full growth, bed bugs are distinguishable by their reddish-brown color, although after feeding on the blood of humans and warm-blooded animals—their sole food source—the bugs assume a distinctly blood-red hue until digestion is complete.

## Bed bugs don't discriminate

Bed bugs increased presence across the United States in recent decades can be attributed largely to a surge in international travel and trade. It's no surprise then that bed bugs have been found time and time again to have taken up residence in some of the fanciest hotels and apartment buildings in some of the nation's most expensive neighborhoods.

Nonetheless, false claims that associate bed bugs presence with poor hygiene and uncleanliness have caused rental housing residents, out of shame, to avoid notifying owners of their presence. This serves only to enable the spread of bed bugs.

While bed bugs are, by their very nature, more attracted to clutter, they're certainly not discouraged by cleanliness.

Bottom line: bed bugs know no social and economic bounds; claims to the contrary are false.

## Bed bugs don't transmit disease

There exists no scientific evidence that bed bugs transmit disease. In fact, federal agencies tasked with addressing pest of public health concern, namely the U.S. Environmental Protection Agency and the Centers for Disease Control and Prevention, have refused to elevate bed bugs to the threat level posed by disease transmitting pests. Again, claims associating bed bugs with disease are false.

## Identifying bed bugs

*Bed bugs can often be found in, around and between:*
- Bedding
- Bed frames
- Mattress seams
- Upholstered furniture, especially under cushions and along seams
- Around, behind and under wood furniture, especially along areas where drawers slide
- Curtains and draperies
- Along window and door frames
- Ceiling and wall junctions
- Crown moldings
- Behind and around wall hangings and loose wallpaper
- Between carpeting and walls (carpet can be pulled away from the wall and tack strip)
- Cracks and crevices in walls and floors
- Inside electronic devices, such as smoke and carbon monoxide detectors

- Because bed bugs leave some persons with itchy welts strikingly similar to those caused by fleas and mosquitoes, the origination of such markings often go misdiagnosed. However, welts caused by bed bugs often times appear in succession and on exposed areas of skin, such as the face, neck and arms. In some cases, an individual may not experience any visible reaction resulting from direct contact with bed bugs.
- While bed bugs typically prefer to act at night, they often do not succeed in returning to their hiding spots without leaving traces of their presence through fecal markings of a red to dark brown color, visible on or near beds. Blood stains tend also to appear when the bugs have been squashed, usually by an unsuspecting host in their sleep. And, because they shed, it's not uncommon for skin casts to be left behind in areas typically frequented by bed bugs.

## Preventing bed bug encounters when traveling

Because humans serve as bed bugs' main mode of transportation, it is extremely important to be mindful of bed bugs when away from home. Experts agree that the spread of bed bugs across all regions of the United States is largely attributed to an increase in international travel and trade. Travelers are therefore encouraged to take a few minutes upon arriving to their temporary destination to thoroughly inspect their accommodations, so as to ensure that any uninvited guests are detected before the decision is made to unpack.

Because bed bugs can easily travel from one room to another, it is also recommended that travelers thoroughly inspect their luggage and belongings for bed bugs before departing from home.

## Bed bug do's and don'ts

- **Do not bring used furniture from unknown sources into your dwelling.** Countless bed bug infestations have stemmed directly from the introduction into a resident's unit of second-hand and abandoned furniture. Unless the determination can be made with absolute certainty that a piece of second-hand furniture is bed bug-free, residents should assume that the reason a seemingly nice looking leather couch, for example, is sitting curbside, waiting to be hauled off to the landfill, may very well be due to the fact that it's teeming with bed bugs.
- **Do address bed bug sightings immediately.** Rental housing residents who suspect the presence of bed bugs in their unit must immediately notify the owner.
- **Do not attempt to treat bed bug infestations.** Under no circumstance should you attempt to eradicate bed bugs. Health hazards associated with the misapplication of traditional and non-traditional, chemical-based insecticides and pesticides poses too great a risk to you and your neighbors.
- **Do comply with eradication protocol.** If the determination is made that your unit is indeed playing host to bed bugs, you must comply with the bed bug eradication protocol set forth by both your owner and their designated pest management company.

© 2020, National Apartment Association, Inc. - 2/2020, Tennessee

Case 3:23-md-03071     Document 337-1     Filed 07/07/23     Page 25 of 50 PageID #: 12673

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6



*Please note: It is our goal to maintain a quality living environment for our residents. To help achieve this goal, it is important to work together to minimize any mold growth in your dwelling. That is why this addendum contains important information for you, and responsibilities for both you and us.*

**1. DWELLING UNIT DESCRIPTION.**
Unit No. __1902__ __2010 West End__
__Avenue__
_____ *(street address)* in
_____ __Nashville__
*(city)*, Tennessee, __37203__ *(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: __August 12, 2021__
Owner's name: __DRI/CA Nashville, LLC__
_____
_____
_____
_____

Residents *(list all residents)*:
__Brandon Watters__
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. ABOUT MOLD.** Mold is found virtually everywhere in our environment—both indoors and outdoors and in both new and old structures. Molds are naturally occurring microscopic organisms which reproduce by spores and have existed practically from the beginning of time. All of us have lived with mold spores all our lives. Without molds we would all be struggling with large amounts of dead organic matter.

Mold breaks down organic matter in the environment and uses the end product for its food. Mold spores (like plant pollen) spread through the air and are commonly transported by shoes, clothing and other materials. When excess moisture is present inside a dwelling, mold can grow. A 2004 Federal Centers for Disease Control and Prevention study found that there is currently no scientific evidence that the accumulation of mold causes any significant health risks for person with normally functioning immune systems. Nonetheless, appropriate precautions need to be taken.

**4. PREVENTING MOLD BEGINS WITH YOU.** In order to minimize the potential for mold growth in your dwelling, you must do the following:

- Keep your dwelling clean—particularly the kitchen, the bathroom(s), carpets and floors. Regular vacuuming, mopping and using a household cleaner to clean hard surfaces is important to remove the household dirt and debris that harbor mold or food for mold. Immediately throw away moldy food.

- Remove visible moisture accumulation on windows, walls, ceilings, floors and other surfaces as soon as reasonably possible. Look for leaks in washing machine hoses and discharge lines—especially if the leak is large enough for water to infiltrate nearby walls. Turn on any exhaust fans in the bathroom and kitchen *before* you start showering or cooking with open pots. When showering, be sure to keep the shower curtain *inside* the tub or fully close the shower doors. Also, the experts recommend that after taking a shower or bath, you: (1) wipe moisture off of shower walls, shower doors, the bathtub and the bathroom floor; (2) leave the bathroom door open until all moisture on the mirrors and bathroom walls and tile surfaces has dissipated; and (3) hang up your towels and bath mats so they will completely dry out.

- Promptly notify us in writing about any air conditioning or heating system problems you discover. Follow our rules, if any, regarding replacement of air filters. Also, it is recommended that you periodically open windows and doors on days when the outdoor weather is dry (i.e., humidity is below 50 percent) to help humid areas of your dwelling dry out.

- Promptly notify us in writing about any signs of water leaks, water infiltration or mold. We will respond in accordance with state law and the Lease Contract to repair or remedy the situation, as necessary.

- Keep the thermostat set to automatically circulate air in the event temperatures rise to or above 80 degrees Fahrenheit.

**5. IN ORDER TO AVOID MOLD GROWTH,** it is important to prevent excessive moisture buildup in your dwelling. Failure to promptly pay attention to leaks and moisture that might accumulate on dwelling surfaces or that might get inside walls or ceilings can encourage mold growth. Prolonged moisture can result from a wide variety of sources, such as:

- rainwater leaking from roofs, windows, doors and outside walls, as well as flood waters rising above floor level;

- overflows from showers, bathtubs, toilets, lavatories, sinks, washing machines, dehumidifiers, refrigerator or A/C drip pans or clogged up A/C condensation lines;

- leaks from plumbing lines or fixtures, and leaks into walls from bad or missing grouting/caulking around showers, tubs or sinks;

- washing machine hose leaks, plant watering overflows, pet urine, cooking spills, beverage spills and steam from excessive open-pot cooking;

- leaks from clothes dryer discharge vents (which can put lots of moisture in the air); and

- insufficient drying of carpets, carpet pads, shower walls and bathroom floors.

**6. IF SMALL AREAS OF MOLD HAVE ALREADY OCCURRED ON** *NON-POROUS* **SURFACES** (such as ceramic tile, formica, vinyl flooring, metal, wood or plastic), the federal Environmental Protection Agency (EPA) recommends that you first clean the areas with soap (or detergent) and water, let the surface dry, and then within 24 hours apply a pre-mixed, spray-on-type household biocide, such as Lysol Disinfectant®, Pine-Sol Disinfectant® (original pine-scented), Tilex Mildew Remover® or Clorox Cleanup®. (Note: Only a few of the common household cleaners will actually kill mold). Tilex® and Clorox® contain bleach which can discolor or stain. **Be sure to follow the instructions on the container.** Applying biocides without first cleaning away the dirt and oils from the surface is like painting over old paint without first cleaning and preparing the surface.

Always clean and apply a biocide to an area 5 or 6 times larger than any visible mold because mold may be adjacent in quantities not yet visible to the naked eye. A vacuum cleaner with a high-efficiency particulate air (HEPA) filter can be

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee
Page 1 of 2
Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

used to help remove non-visible mold products from *porous items*, such as fibers in sofas, chairs, drapes and carpets— provided the fibers are completely dry. Machine washing or dry cleaning will remove mold from clothes.

**7. DO NOT CLEAN OR APPLY BIOCIDES TO:** (1) visible mold on *porous surfaces*, such as sheetrock walls or ceilings, or (2) *large areas* of visible mold on *non-porous* surfaces. Instead, notify us in writing, and we will take appropriate action.

**8. COMPLIANCE.** Complying with this addendum will help prevent mold growth in your dwelling, and both you and we will be able to respond correctly if problems develop that could lead to mold growth. If you have questions regarding this addendum, please contact us at the management office or at the phone number shown in your Lease Contract.

**If you fail to comply with this Addendum, you can be held responsible for property damage to the dwelling and any health problems that may result. We can't fix problems in your dwelling unless we know about them.**

**9. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

N/A

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign here)*

_____
_____
_____
_____
_____
_____

**Owner or Owner's Representative**
*(Signs here)*

_____

**Date of Lease Contract**

**August 12, 2021**

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6



# COMMUNITY POLICIES, RULES AND REGULATIONS
# ADDENDUM

*This addendum is incorporated into the Lease Contract (the "Lease") identified below and is in addition to all the terms and conditions contained in the Lease. If any terms of this Addendum conflict with the Lease, the terms of this Addendum shall be controlling:*

*Property Owner:* **DRI/CA Nashville, LLC**

*Resident(s):* **Brandon Watters**

*Unit No./Address:* **#1902, 2010 West End Avenue, Nashville, TN 37203**

*Lease Date:* **08/12/2021**

**I. GENERAL CONDITIONS FOR USE OF DWELLING PROPERTY AND RECREATIONAL FACILITIES.**

Resident(s) permission for use of all common areas, Resident amenities, and recreational facilities (together, "Amenities") located at the Dwelling Community is a privilege and license granted by Owner, and not a contractual right except as otherwise provided for in the Lease. Such permission is expressly conditioned upon Resident's adherence to the terms of the Lease, this Addendum, and the Community rules and regulations ("Rules") in effect at any given time, and such permission may be revoked by Owner at any time for any lawful reason. In all cases, the most strict terms of either the Lease, this Addendum, or the Community Rules shall control. Owner reserves the right to set the days and hours of use for all Amenities and to change the character of or close any Amenity based upon the needs of Owner and in Owner's sole and absolute discretion, without notice, obligation or recompense of any nature to Resident. Owner and management may make changes to the Rules for use of any Amenity at any time.

**Additionally, Resident(s) expressly agrees to assume all risks of every type, including but not limited to risks of personal injury or property damage, of whatever nature or severity, related to Resident's use of the amenities at the Community. Resident(s) agrees to hold Owner harmless and release and waive any and all claims, allegations, actions, damages, losses, or liabilities of every type, whether or not foreseeable, that Resident(s) may have against Owner and that are in any way related to or arise from such use. This provision shall be enforceable to the fullest extent of the law.**

**THE TERMS OF THIS ADDENDUM SHALL ALSO APPLY TO RESIDENT(S)' OCCUPANTS, AGENTS AND INVITEES, TOGETHER WITH THE HEIRS, ASSIGNS, ESTATES AND LEGAL REPRESENTATIVES OF THEM ALL, AND RESIDENT(S) SHALL BE SOLELY RESPONSIBLE FOR THE COMPLIANCE OF SUCH PERSONS WITH THE LEASE, THIS ADDENDUM, AND COMMUNITY RULES AND REGULATIONS, AND RESIDENT(S) INTEND TO AND SHALL INDEMNIFY AND HOLD OWNER HARMLESS FROM ALL CLAIMS OF SUCH PERSONS AS DESCRIBED IN THE PRECEDING PARAGRAPH. The term "Owner" shall include the Management, officers, partners, employees, agents, assigns, Owners, subsidiaries and affiliates of Owner.**

**II. POOL.** This Community ☒ **DOES;** ☐ **DOES NOT** have a pool. When using the pool, Resident(s) agrees to the following:
- Residents and guests will adhere to the rules and regulations posted in the pool area and Management policies.
- All Swimmers swim at their own risk. Owner is not responsible for accidents or injuries. See Paragraph I above.
- For their safety, Residents should not swim alone.
- Pool hours are posted at the pool.
- No glass, pets, or alcoholic beverages are permitted in the pool area. Use paper or plastic containers only.
- No running or rough activities are allowed in the pool area. Respect others by minimizing noise, covering pool furniture with a towel when using suntan oils, leaving pool furniture in pool areas, disposing of trash, and keeping pool gates closed.
- Resident(s) must accompany their guests at all times.
- Resident(s) must notify Owner any time there is a problem or safety hazard at the pool.

**IN CASE OF EMERGENCY DIAL 911**

**III. FITNESS CENTER.** This Community ☒ **DOES;** ☐ **DOES NOT** have a fitness center. When using the fitness center, Resident agrees to the following:
- Residents and guests will adhere to the rules and regulations posted in the fitness center and Management policies.
- The Fitness Center is not supervised. Resident(s) are solely responsible for their own appropriate use of equipment.
- Resident(s) shall carefully inspect each piece of equipment prior to Resident's use and shall refrain from using any equipment that may be functioning improperly or that may be damaged or dangerous.
- Resident(s) shall immediately report to Management any equipment that is not functioning properly, is damaged or appears dangerous, as well any other person's use that appears to be dangerous or in violation of Management Rules and Policies.
- Resident(s) shall consult a physician before using any equipment in the Fitness Center and before participating in any aerobics or exercise class, and will refrain from such use or participation unless approved by Resident's physician.
- Resident(s) will keep Fitness Center locked at all times during Resident's visit to the Fitness Center.
- Resident(s) will not admit any person to the Fitness Center who has not registered with the Management Office.
- Resident(s) must accompany guests, and no glass, smoking, eating, alcoholic beverages, pets, or black sole shoes are permitted in the Fitness Center.

Card # issued:

| | | | | | |
|---|---|---|---|---|---|
| (1) | **N/A** | (3) | **N/A** | (5) | **N/A** |
| (2) | **N/A** | (4) | **N/A** | (6) | **N/A** |

**IV. PACKAGE RELEASE.** This Community ☒ **DOES;** ☐ **DOES NOT** accept packages on behalf of Residents.

***For communities that do accept packages on behalf of its Residents:***

Resident(s) gives Owner permission to sign and accept any parcels or letters sent to Resident(s) through UPS, Federal Express, Airborne, United States Postal Service or the like. Resident agrees that Owner does not accept responsibility or liability for any loss, theft, or unordered deliveries and agrees in writing to release Owner for any/all loss for damages.

Case 3:23-md-03071   Document 337-1   Filed 07/07/23   Page 28 of 50 PageID #: 2676

V.    **BUSINESS CENTER.**   This Community ❑ **DOES;**  ☒ **DOES NOT** have a business center.
Resident(s) agrees to use the business center at Resident(s) sole risk and according to the Rules and Regulations posted in the business center and Management policies. Owner is not responsible for data, files, programs or any other information lost or damaged on Business Center computers or in the Business Center for any reason. No software may be loaded on Business Center computers without the written approval of Community Management. No inappropriate, offensive, or pornographic images or files (in the sole judgment of Owner) will be viewed or loaded onto the Business Center computers at any time. Residents will limit time on computers to _____**0**_____ minutes if others are waiting to use them. Smoking, eating, alcoholic beverages, pets, and any disturbing behavior are prohibited in the business center.

VI.   **AUTOMOBILES/BOATS/RECREATIONAL VEHICLES.**   The following policies are in addition to those in the Lease, and may be modified by the additional rules in effect at the Community at any given time:
- Only _____**1**_____ vehicle per licensed Resident is allowed.
- All vehicles must be registered at the Management office.
- Any vehicle(s) not registered, considered abandoned, or violating the Lease, this Addendum, or the Community Rules, in the sole judgment of Management, will be towed at the vehicle owner's expense after proper notice.
- Notwithstanding this, any vehicle illegally parked in a fire lane, designated no parking space or handicapped space, or blocking an entrance, exit, driveway, dumpster, or parked illegally in a designated parking space, will be towed, at the vehicle owner's expense in accordance with the law.
- The washing of vehicles is not permitted on the property unless specifically allowed in designated area.
- Any on property repairs and/or maintenance of any vehicle must be with the prior written permission of the Management.
- Recreational vehicles, boats or trailers may only be parked on the property with Management's written permission (in Management's sole discretion), and must be registered with the Management Office and parked in the area(s) designated by Management.

VII.  **FIRE HAZARDS.**   In order to minimize fire hazards and comply with city ordinances, Resident shall comply with the following:
- Residents and guests will adhere to the Community rules and regulations other Management policies concerning fire hazards, which may be revised from time to time.
- No person shall knowingly maintain a fire hazard.
- **Barbeques and any other outdoor cooking or open  lame devices will be used only on the ground level and will be placed a minimum of _____15_____ feet from any building.** Such devices will not be used close to combustible materials, tall grass or weeds, on exterior walls or on roofs, indoors, on balconies or patios, or in other locations which may cause fires. No grills are allowed without our express written consent.
- **Fireplaces:**   Only firewood is permitted in the fireplace. No artificial substances, such as Duraflame® logs are permitted. Ashes must be disposed of in metal containers, after ensuring the ashes are cold.
- Flammable or combustible liquids and fuels shall not be used or stored (including stock for sale) in dwellings, near exits, stairways breezeways, or areas normally used for the ingress and egress of people. This includes motorcycles and any apparatus or engine using flammable or combustible liquid as fuel.
- No person shall block or obstruct any exit, aisle, passageway, hallway or stairway leading to or from any structure.
- Resident(s) are solely responsible for fines or penalties caused by their actions in violation of local fire protection codes.

VIII. **EXTERMINATING.f**  Unless prohibited by statute or otherwise stated in the Lease, Owner may conduct extermination operations in Residents' dwelling several times a year and as needed to prevent insect infestation. Owner will notify Residents in advance of extermination in Residents' Dwelling, and give Resident instructions for the preparation of the Dwelling and safe contact with pesticides.Residents will be responsible for preparing the Dwelling for extermination in accordance with Owner's instructions. Residents must request extermination treatments in addition to those regularly provided by Owner in writing. **Residents agree to perform the tasks required by Owner on the day of interior extermination to ensure the safety and effectiveness of the extermination. These tasks will include, but are not limited to, the following:**
- Clean in all cabinets, drawers and closets in kitchen and pantry.
- If roaches have been seen in closets, remove contents from shelves and floor.
- Remove infants and young children from the dwelling.
- Remove pets or place them in bedrooms, and notify Owner of such placement.
- Remove chain locks or other types of obstruction on day of service.
- Cover fish tanks and turn off their air pumps.
- Do not wipe out cabinets after treatment.

In the case of suspected or confirmed bed bug infestation, resident will agree to the following:
- Resident will wash all clothing, bed sheets, draperies, towels, etc. in extremely hot water.
- Resident will thoroughly clean, off premises, all luggage, handbags, shoes and clothes hanging containers.
- Resident will cooperate with Owner's cleaning efforts for all mattresses and seat cushions or other upholstered furniture, and will dispose of same if requested.

**RESIDENTS ARE SOLELY RESPONSIBLE TO NOTIFY OWNER IN WRITING PRIOR TO
EXTERMINATION OF ANY ANTICIPATED HEALTH OR SAFETY CONCERNS RELATED TO
EXTERMINATION AND THE USE OF PESTICIDES**

IX.   **DRAPES AND SHADES.**   Drapes or shades installed by Resident, when allowed, must be lined in white and present a uniform exterior appearance.

X.    **WATER BEDS.**   Resident shall not have water beds or other water furniture in the dwelling without prior written permission of Owner.

XI.   **BALCONY or PATIO.**   Balconies and patios shall be kept neat and clean at all times. No rugs, towels, laundry, clothing, appliances or other items shall be stored, hung or draped on railings or other portions of balconies or patios. No misuse of the space is permitted, including but not limited to, throwing, spilling or pouring liquids or other items, whether intentionally or negligently, over the balconies or patios.

XII.  **SIGNS.**   Resident shall not display any signs, exterior lights or markings on dwelling. No awnings or other projections shall be attached to the outside of the building of which dwelling is a part.

Revised 1/2019, Tennessee

Page 2 of 3
Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

**XIII. SATELLITE DISHES/ANTENNAS.** You must complete a satellite addendum and abide by its terms prior to installation or use.

**XIV. WAIVER/SEVERABILITY CLAUSE.** No waiver of any provision herein, or in any Community rules and regulations, shall be effective unless granted by the Owner in a signed and dated writing. If any court of competent jurisdiction finds that any clause, phrase, or provision of this Part is invalid for any reason whatsoever, this finding shall not effect the validity of the remaining portions of this addendum, the Lease Contract or any other addenda to the Lease Contract.

**XV. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

`Pool hours are from 6AM - 10PM. Grilling is only allowed on the outside amenity terraces` `where grills are installed. No grilling allowed on balconies.`

_____

_____

_____

_____

_____

_____

_____

_____

_____


I have read, understand and agree to comply with the preceding provisions.




_____          _____
Resident                    Date          Resident                    Date


_____          _____
Resident                    Date          Resident                    Date


_____          _____
Resident                    Date          Resident                    Date


_____          _____
Owner Representative                      Date

Revised 1/2019, Tennessee
Page 3 of 3
Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

# LEASE ADDENDUM FOR RENT CONCESSION
## OR OTHER RENT DISCOUNT



**1. DWELLING UNIT DESCRIPTION.**
Unit No. **1902** **2010 West End Avenue**
_____ *(street address)* in
_____
**Nashville**
*(city)*, Tennessee, **37203** *(zip code).*

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **August 12, 2021**
Owner's name: **DRI/CA Nashville, LLC**
_____
_____
_____
_____

Residents *(list all residents)*:
**Brandon Watters**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. CONCESSION/DISCOUNT AGREEMENT.** As consideration for your agreement to remain in your dwelling and to fulfill your Lease obligations throughout the full term of your Lease, you will receive the following rent Concession and or Discount.

*(Check all that apply)*

[X] **One-Time Concession.** You will receive a One-Time Concession off the rent indicated in the Lease Contract in the total amount of $ **1610.00** . This Concession will be credited to your rent due for the month(s) of: **September**
_____
_____ .

[ ] **Monthly Discount/Concession.** The rent indicated in the Lease Contract includes a Monthly Discount of $ _____ per month off of the suggested rental rate for your dwelling.

[ ] **Other Discount/Concession.** You will receive the following discount off the rent indicated in the Lease Contract:
_____
_____
_____
_____

[ ] **Non-Monetary Concession.** You will receive the following non-monetary concession during the term of the Lease:
_____
_____
_____
_____
_____

**4. CONCESSION CANCELLATION AND CHARGE-BACK.** The concession and discounts indicated above are provided to you as an incentive and with the understanding that you will fulfill your obligations under the Lease Contract through the entire term of your Lease.

If your lease is terminated early due to your default (for example, if you abandon the premises without paying rent or are evicted), this Concession/Discount Agreement will be immediately terminated, and you will be required to immediately repay to the Owner the amounts of all *(Check all that apply)*

[X] Concessions
[ ] Discounts

that you have actually received for the months you resided in the Premises, and without further notice from us.

**5. MARKET RENT.** The market rent for this dwelling is the rent stated in the Lease Contract. You acknowledge that the market rent is a fair representation of what the specific dwelling would actually rent for at the time the Lease Contract was negotiated and executed, and is reflective of the rent for a similar dwelling at comparable properties.

**6. SPECIAL PROVISIONS.** The following special provisions control over any conflicting provisions of this printed Addendum form or the Lease Contract.

**Any concession or special must be reimbursed if lease contract if not fulfilled.**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign)*

_____
_____
_____
_____

**Owner or Owner's Representative**
*(signs here)*

_____

**Date of Lease Contract**

**August 12, 2021**

© 2019, National Apartment Association, Inc. - 2/2019, Tennessee

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6



**1. DWELLING UNIT DESCRIPTION.**
Unit No. **1902** **2010 West End Avenue** (street address) in **Nashville** (city), Tennessee, **37203** (zip code).

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **August 12, 2021**
Owner's name: **DRI/CA Nashville, LLC**

Residents (list all residents):
**Brandon Watters**

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. ACKNOWLEDGMENT CONCERNING INSURANCE OR DAMAGE WAIVER.** You acknowledge that we do not maintain insurance to protect you against personal injury, loss or damage to your personal property or belongings, or to cover your own liability for injury, loss or damage you (or your occupants or guests) may cause others. You also acknowledge that by not maintaining your own policy of personal liability insurance, you may be responsible to others (including us) for the full cost of any injury, loss or damage caused by your actions or the actions of your occupants or guests. You understand that the Lease Contract requires you to maintain a liability insurance policy, which provides limits of liability to third parties in an amount not less than $ **100000.00** per occurrence. You understand and agree to maintain at all times during the Term of the Lease Contract and any renewal periods a policy of personal liability insurance satisfying the requirements listed below, at your sole expense.

**4. REQUIRED POLICY.** You are required to purchase and maintain personal liability insurance covering you, your occupants and guests, for personal injury and property damage any of you cause to third parties (including damage to our property), in a minimum policy coverage amount of $ **100000.00** , from a carrier with an AM Best rating of A-VII

or better, licensed to do business in Tennessee. The carrier is required to provide notice to us within 30 days of any cancellation, non-renewal, or material change in your coverage. We retain the right to hold you responsible for any loss in excess of your insurance coverage.

**5. We may provide you with information of an insurance program that we make available to residents, which provides you with an opportunity to buy renter's insurance from a preferred company. However, you are free to contract for the required insurance with a provider of your choosing.**

**6. SUBROGATION ALLOWED.** You and we agree that subrogation is allowed by all parties and that this agreement supersedes any language to the contrary in the Lease Contract.

**7. YOUR INSURANCE COVERAGE.** You have purchased the required personal liability insurance from the insurance company of your choosing listed below that is licensed to do business in this state, and have provided us with written proof of this insurance prior to the execution and commencement of the Lease Contract. You will provide additional proof of insurance in the future at our request.

Insurance Company: **Resident's choice**

**8. DEFAULT.** Any default under the terms of this Addendum shall be deemed an immediate, material and incurable default under the terms of the Lease Contract, and we shall be entitled to exercise all rights and remedies under the law.

**9. MISCELLANEOUS.** Except as specifically stated in this Addendum, all other terms and conditions of the Lease Contract shall remain unchanged. In the event of any conflict between the terms of this Addendum and the terms of the Lease Contract, the terms of this Addendum shall control.

**10. SPECIAL PROVISIONS:**
**2010 West End and property address must be listed as an additional interested party on all renter's liability insurance policies.**

**I have read, understand and agree to comply with the preceding provisions.**

**Resident or Residents**
(All residents must sign here)

**Owner or Owner's Representative**
(signs here)

**Date of Lease Contract**

**August 12, 2021**

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6



1. **DWELLING UNIT DESCRIPTION.**
   Unit No. __1902__ __2010 West End Avenue__
   _____ *(street address)* in
   __Nashville__
   *(city)*, Tennessee, __37203__ *(zip code)*.

2. **LEASE CONTRACT DESCRIPTION.**
   Lease Contract Date: **August 12, 2021**
   Owner's name: **DRI/CA Nashville, LLC**
   _____
   _____
   _____

   Residents *(list all residents)*:
   **Brandon Watters**
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

   This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

3. **REMOTE CONTROL/CARDS/CODE FOR GATE ACCESS.**
   ☒ **Remote control for gate access.** Each person who is listed as a resident on the lease will be given a remote control at no cost to use during his or her residency. Each additional remote control for you or other occupants will require a $ __150.00__ non-refundable fee.

   ☐ **Cards for gate access.** Each person who is listed as a resident on the lease will be given a card at no cost to use during his or her residency. Each additional card for you or other occupants will require a $ _____ non-refundable fee.

   ☐ **Code for gate access.** Each resident will be given, at no cost, an access code (keypad number) for the pedestrian or vehicular access gates. It is to be used only during your residency. We may change the access code at any time and will notify you of any such changes.

4. **DAMAGED, LOST OR UNRETURNED REMOTE CONTROLS, CARDS OR CODE CHANGES.**
   ☒ If a remote control is lost, stolen or damaged, a $ __150.00__ fee will be charged for a replacement. If a remote control is not returned or is returned damaged when you move out, there will be a $ __150.00__ deduction from the security deposit.

   ☐ If a card is lost, stolen or damaged, a $ _____ fee will be charged for a replacement card. If a card is not returned or is returned damaged when you move out, there will be a $ _____ deduction from the security deposit.

   ☐ We may change the code(s) at any time and notify you accordingly.

5. **REPORT DAMAGE OR MALFUNCTIONS.** Please immediately report to the office any malfunction or damage to gates, fencing, locks or related equipment.

6. **FOLLOW WRITTEN INSTRUCTIONS.** We ask that you and all other occupants read the written instructions that have been furnished to you regarding the access gates. This is important because if the gates are damaged by you or other occupants, guests or invitees through negligence or misuse, you are liable for the damages under your lease, and collection of damage amounts will be pursued.

7. **PERSONAL INJURY AND/OR PERSONAL PROPERTY DAMAGE.** Except as specifically required by law, we have no duty to maintain the gates and cannot guaranty against gate malfunctions. We make no representations or guarantees to you concerning security of the community. Any measures, devices, or activities taken by us are solely for the benefit of us and for the protection of our property and interests, and any benefit to you of the same is purely incidental. Anything mechanical or electronic is subject to malfunction. Fencing, gates or other devices will not prevent all crime. No security system or device is foolproof or 100 percent successful in deterring crime. Crime can still occur. Protecting residents, their families, occupants, guests and invitees from crime is the sole responsibility of residents, occupants and law enforcement agencies. You should first call 911 or other appropriate emergency police numbers if a crime occurs or is suspected. We are not liable to any resident, family member, guest, occupant or invitee for personal injury, death or damage/loss of personal property from incidents related to perimeter fencing, automobile access gates and/or pedestrian access gates. We reserve the right to modify or eliminate security systems other than those statutorily required. You will be held responsible for the actions of any persons to whom you provide access to the community.

8. **RULES IN USING VEHICLE GATES.**
   - Always approach entry and exit gates with caution and at a very slow rate of speed.
   - Never stop your car where the gate can hit your vehicle as the gates open or closes.
   - Never follow another vehicle into an open gate. Always use your card to gain entry.
   - Report to management the vehicle license plate number of any vehicle that piggybacks through the gate.
   - Never force the gate open with your car.
   - Never get out of your vehicle while the gates are opening or closing.
   - If you are using the gates with a boat or trailer, please contact management for assistance. The length and width of the trailer may cause recognition problems with the safety loop detector and could cause damage.
   - Do not operate the gate if there are small children nearby who might get caught in it as it opens or closes.
   - If you lose your card, please contact the management office immediately.
   - Do not give your card or code to anyone else.
   - Do not tamper with gate or allow your occupants to tamper or play with gates.

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee

Page 1 of 2

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

**9. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
_(All residents must sign here)_

           **Owner or Owner's Representative**
_(signs here)_

_____

_____        **Date of Lease Contract**

_____

_____        **August 12, 2021**

_____

_____

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

# NO-SMOKING ADDENDUM



Date: _____**August 12, 2021**_____
*(when this Addendum is filled out)*

*All use of any tobacco product involving smoking, burning, or combustion of tobacco is prohibited in any portion of the apartment community. You are entitled to receive an original of this No-Smoking Addendum after it is fully signed. Keep it in a safe place.*

**1. DWELLING UNIT DESCRIPTION.**
Unit No. ____**1902**_____**2010 West End**____
**Avenue**_____ *(street address)* in
_____**Nashville**_____
*(city)*, Tennessee, _____**37203**_____ *(zip code)*.

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: __**August 12, 2021**__
Owner's name: **DRI/CA Nashville, LLC**
_____
_____
_____
_____

Residents *(list all residents)*:
**Brandon Watters**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. DEFINITION OF SMOKING.** Smoking refers to any use or possession of a cigar, cigarette, e-cigarette, hookah, vaporizer, or pipe containing tobacco or a tobacco product while that tobacco or tobacco product is burning, lighted, vaporized, or ignited, regardless of whether the person using or possessing the product is inhaling or exhaling the smoke from such product. The term includes, but is not limited to any form, compound, or synthesis of the plant of the genus Nicotiana or the species N. tabacum which is cultivated for its leaves to be used in cigarettes, cigars, e-cigarettes, hookahs, vaporizers, or pipes. Smoking also refers to use or possession of burning, lighted, vaporized, or ignited non-tobacco products if they are noxious, offensive, unsafe, unhealthy, or irritating to other persons.

**4. SMOKING ANYWHERE INSIDE BUILDINGS OF THE APARTMENT COMMUNITY IS STRICTLY PROHIBITED.** All forms and use of burning, lighted, vaporized, or ignited tobacco products and smoking of tobacco products inside any dwelling, building, or interior of any portion of the apartment community is strictly prohibited. Any violation of the no-smoking policy is a material and substantial violation of this Addendum and the Lease Contract.

The prohibition on use of any burning, lighted, vaporized, or ignited tobacco products or smoking of any tobacco products extends to all residents, their occupants, guests, invitees and all others who are present on or in any portion of the apartment community. The no-smoking policy and rules extend to, but are not limited to, the management and leasing offices, building interiors and hallways, building common areas, dwellings, club house, exercise or spa facility, tennis courts, all interior areas of the apartment community, commercial shops, businesses, and spaces, work areas, and all other spaces whether in the interior of the apartment community or in the common areas, and the surrounding grounds and exterior

Smoking of non-tobacco products which are harmful to the health, safety, and welfare of other residents inside any dwelling or building is also prohibited by this Addendum and other provisions of the Lease Contract.

**5. SMOKING OUTSIDE BUILDINGS OF THE APARTMENT COMMUNITY.** Smoking is permitted only in specially designated areas outside the buildings of the apartment community. Smoking must be at least __**25**__ feet from the buildings in the apartment community, including administrative office buildings. If the previous field is not completed, smoking is only permitted at least 25 feet from the buildings in the apartment community, including administrative office buildings. The smoking-permissible areas are marked by signage.

Smoking on balconies, patios, and limited common areas attached to or outside of your dwelling ☐ is ☒ is not permitted.

The following outside areas of the community may be used for smoking: **Off property**
_____
_____

Even though smoking may be permitted in certain limited outside areas, we reserve the right to direct that you and your occupants, family, guests, and invitees cease and desist from smoking in those areas if smoke is entering the dwellings or buildings or if it is interfering with the health, safety, or welfare or disturbing the quiet enjoyment, or business operations of us, other residents, or guests.

**6. YOUR RESPONSIBILITY FOR DAMAGES AND CLEANING.** You are responsible for payment of all costs and damages to your dwelling, other residents' dwellings, or any other portion of the apartment community for repair, replacement, or cleaning due to smoking or smoke related damage caused by you or your occupants, family, guests, or invitees, regardless of whether such use was a violation of this Addendum. Any costs or damages we incur related to repairs, replacement, and cleaning due to your smoking or due to your violation of the no-smoking provisions of the Lease Contract are in excess of normal wear and tear. Smoke related damage, including but not limited to, the smell of tobacco smoke which permeates sheetrock, carpeting, wood, insulation, or other components of the dwelling or building is in excess of normal wear and tear in our smoke free apartment community.

**7. YOUR RESPONSIBILITY FOR LOSS OF RENTAL INCOME AND ECONOMIC DAMAGES REGARDING OTHER RESIDENTS.** You are responsible for payment of all lost rental income or other economic and financial damages or loss to us due to smoking or smoke related damage caused by you or your occupants, family, guests, or invitees which results in or causes other residents to vacate their dwellings, results in disruption of other residents' quiet enjoyment, or adversely affects other residents' or occupants' health, safety, or welfare.

**8. LEASE CONTRACT TERMINATION FOR VIOLATION OF THIS ADDENDUM.** We have the right to terminate your Lease Contract or right of occupancy of the dwelling for any violation of this No-Smoking Addendum. Violation of the no-smoking provisions is a material and substantial default or violation of the Lease Contract. Despite the termination of the Lease Contract or your occupancy, you will remain liable for rent through the end of the Lease Contract term or the date on which the dwelling is re-rented to a new occupant, whichever comes first. Therefore, you may be responsible for payment of rent after you vacate the leased premises even though you

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee

9. **EXTENT OF YOUR LIABILITY FOR LOSSES DUE TO SMOKING.** Your responsibility for damages, cleaning, loss of rental income, and loss of other economic damages under this No-Smoking Addendum are in addition to, and not in lieu of, your responsibility for any other damages or loss under the Lease Contract or any other addendum.

10. **YOUR RESPONSIBILITY FOR CONDUCT OF OCCUPANTS, FAMILY MEMBERS, AND GUESTS.** You are responsible for communicating this community's no-smoking policy and for ensuring compliance with this Addendum by your occupants, family, guests, and invitees.

11. **THERE IS NO WARRANTY OF A SMOKE FREE ENVIRONMENT.** Although we prohibit smoking in all interior parts of the apartment community, there is no warranty or guaranty of any kind that your dwelling or the apartment community is smoke free. Smoking in certain limited outside areas is allowed as provided above. Enforcement of our no-smoking policy is a joint responsibility which requires your cooperation in reporting incidents or suspected violations of smoking. You must report violations of our no-smoking policy before we are obligated to investigate and act, and you must thereafter cooperate with us in prosecution of such violations.

This is an important and binding legal document. By signing this Addendum you are agreeing to follow our no-smoking policy and you are acknowledging that a violation could lead to termination of your Lease Contract or right to continue living in the dwelling. If you or someone in your household is a smoker, you should carefully consider whether you will be able to abide by the terms of this Addendum.

12. **SPECIAL PROVISIONS.** The following special provisions control over any conflicting provisions of this printed Addendum form or the Lease Contract:

Off property

_____

**Resident or Residents**
*(All residents must sign here)*

_____
_____
_____
_____
_____

**Owner or Owner's Representative**
*(Sign here)*

_____

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee

Page 2 of 2

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

# ELECTRONIC MAIL ADDENDUM
## FOR NOTICE FROM US TO YOU



**1. ADDENDUM.** This is an addendum to the Apartment Lease Contract executed on _____ **August 12, 2021** _____ by you, the Resident(s), **Brandon Watters** _____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

for the dwelling unit you have agreed to rent. That dwelling is: Apt. # _____ **1902** _____ at **DRI/CA Nashville, LLC** _____

_____

*(name of apartments)* located at **2010 West End Avenue** _____

_____ *(street address)* in _____ **Nashville, TN 37203** _____.

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**2. PROVIDING ELECTRONIC MAIL ADDRESS IS VOLUNTARY.** We cannot require that you provide us with an electronic mail address as a condition of your entering into an Apartment Lease Contract with us. However, you may choose to accept electronic mail as a means of communication of legally required notice from us. Your acceptance of this means of communication is indicated herein below by your voluntarily providing us with your electronic mail address.

**3. ELECTRONIC MAIL COMMUNICATION IS LIMITED TO COMMUNICATION FROM US TO YOU.** The statute allowing us to use electronic mail as a means of communication of certain required notice does not provide that we are required to accept electronic mail notification from you.

**4. VERIFICATION OF RESIDENT'S ELECTRONIC MAIL ADDRESS.** Verify your electronic mail address if you wish for us to use electronic mail in accordance with the provisions of this Addendum and the underlying Lease Contract.

YOUR ELECTRONIC MAIL ADDRESS:

_____
_____

**5. MAINTAINING PROPER ELECTRONIC MAIL ADDRESS.** Any electronic mail notifications attempted by us through the electronic mail address provided by you shall be deemed to be received. Therefore, you are required to keep us informed as to any change of your electronic mail address by delivery of your new electronic mail address in writing at the Apartment Community's on-site office.

**6. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:
**N/A**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident(s)**
*(All residents must sign)*

_____
_____
_____
_____
_____
_____

**Owner or Owner's Representative**

_____

**Date of Signing Addendum**

_____
_____
_____
_____
_____

**Date of Signing Addendum**

_____

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

# RESIDENT PARKING ADDENDUM



Date: **August 12, 2021**
(when this Addendum is filled out)

1. **DWELLING UNIT DESCRIPTION.**
Unit No. **1902** **2010 West End Avenue**
_____ *(street address)* in
**Nashville**
*(city)*, Tennessee, **37203** *(zip code).*

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **August 12, 2021**
Owner's name: **DRI/CA Nashville, LLC**
_____
_____
_____
_____

Residents *(list all residents):*
**Brandon Watters**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

The term of this Parking Addendum is as follows:
Begins on **August 14th** , **2021** and
ending on _____ , _____.

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**RESIDENT AND OWNER AGREE AS FOLLOWS:**

3. You agree to properly register all vehicles with management. If you get a new or replacement vehicle you must notify us and complete a revised agreement.

4. If you are provided with a parking tag or sticker it must be properly installed and displayed.

5. Unless your vehicle(s) has been assigned a specific space(s) you may park in any available space(s) in the parking areas, with the exception of spaces reserved for a particular use or any accessible parking for persons with disabilities, unless you possess a government issued disabled parking decal or similar signage.

6. If you are assigned a specific parking space(s) we shall assign you the space(s) and retain the right to change assigned space(s) at our sole discretion.

7. You understand and accept that we have the right at any time, without notice, to tow unauthorized or non-registered vehicles from any parking space on the property.

8. You agree to use parking spaces in accordance with the terms of the Lease and Community Rules.

9. Any vehicles which are improperly parked or are in violation of this addendum, the terms of the Lease or Community Rules will be towed at your expense. You agree that we shall not be liable to you for damages related to the physical towing nor any consequential damages you may incur through loss of use of the vehicle(s).

10. You understand that we will not be held liable for any damage or theft that may occur while your vehicle(s) is parked on any part of the property. Upon signing this agreement you knowingly accept the risk of parking any vehicle(s) on the property.

11. Any action by you, any occupant, guest, or visitor that violates this addendum shall constitute a violation of the Lease Contract.

12. You understand and agree that any judgment of possession entered against you shall be a judgment for possession of any parking spaces which you are entitled to under this addendum. Once such judgment is rendered and executed upon you, you shall immediately remove all vehicles from the property parking areas. If you fail to remove your vehicle(s), we shall tow the vehicle(s) at your expense. You agree that we shall not be liable to you for damages related to the physical towing nor any consequential damages you may incur through loss of use of the vehicle(s).

**COST FOR PARKING**

Resident agrees to pay a onetime fee of $ **0.00** per vehicle on or before the **14th** day of **August** , **2021** . In alternative resident agrees to pay $ **150.00** monthly per vehicle due on or before the **5th** day of the month. If no amount is filled in parking shall be free for properly registered and authorized vehicles.

Resident understands and accepts that all-parking rights and privileges will immediately be revoked in the case that Resident is **0** days delinquent in paying the required parking fee. After which, Resident's vehicle may be towed, in accordance with the law.

Resident agrees to pay $ **30.00** returned check fee (fee is not to exceed $30.00) for all checks returned for any reason.

**VEHICLE INFORMATION:**

**Vehicle 1**
Make: **Ford**
Model & Year: **Escape 2020**
State: **TN**
License Plate: **KG4PK**
Permit Number: _____
Phone Number: _____
Parking Space: **R 126**

**Vehicle 2**
Make: _____
Model & Year: _____
State: _____
License Plate: _____
Permit Number: _____
Phone Number: _____
Parking Space: _____

**Vehicle 3**
Make: _____
Model & Year: _____
State: _____
License Plate: _____
Permit Number: _____
Phone Number: _____
Parking Space: _____

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee

Page 1 of 2

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

**13. SPECIAL PROVISIONS.**

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign)*

**Owner or Owner's Representative**
*(Signs below)*

_____

_____

_____                    **Date of Signing Addendum**

_____

_____

_____

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

# CRIME/DRUG FREE HOUSING ADDENDUM



**1. DWELLING UNIT DESCRIPTION.**
Unit No. ___1902___ ___2010 West End___ ___Avenue___
_____ *(street address)* in
___Nashville___
*(city)*, Tennessee, ___37203___ *(zip code)*.

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **August 12, 2021**
Owner's name: **DRI/CA Nashville, LLC**
_____
_____
_____
_____

Residents *(list all residents)*:
**Brandon Watters**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**3. ADDENDUM APPLICABILITY.** In the event any provision in this Addendum is inconsistent with any provision(s) contained in other portions of, or attachments to, the above-mentioned Lease Contract, then the provisions of this Addendum shall control. For purposes of this Addendum, the term "Premises" shall include the dwelling unit, all common areas, all other dwelling units on the property or any common areas or other dwelling units on or about other property owned by or managed by the Owner. The parties hereby amend and supplement the Lease Contract as follows:

**4. CRIME/DRUG FREE HOUSING.** Resident, members of the Resident's household, Resident's guests, and all other persons affiliated with the Resident:

A. Shall not engage in any illegal or criminal activity. The phrase, "illegal or criminal activity" shall include, but is not limited to, the following:

1. Engaging in any act intended to facilitate any type of criminal activity.

2. Permitting the Premises to be used for, or facilitating any type of criminal activity or drug related activity, regardless of whether the individual engaging such activity is a member of the household, or a guest.

3. The unlawful manufacturing, selling, using, storing, keeping, purchasing or giving of an illegal or controlled substance or paraphernalia as defined in city, county, state or federal laws, including but not limited to the State of Tennessee and/or the Federal Controlled Substances Act.

4. Violation of any federal drug laws governing the use, possession, sale, manufacturing and distribution of marijuana, regardless of state or local laws. (So long as the use, possession, sale, manufacturing and distribution of marijuana remains a violation of federal law, violation of any such federal law shall constitute a material violation of this rental agreement.)

5. Engaging in, or allowing, any behavior that is associated with drug activity, including but not limited to having excessive vehicle or foot traffic associated with his or her unit.

6. Any breach of the Lease Contract that otherwise jeopardizes the health, safety, and welfare of the Owner, Owner's agents, or other Residents, or involving imminent, actual or substantial property damage.

7. Engaging in or committing any act that would be a violation of the Owner's screening criteria for criminal conduct or which resulted in denial of Resident's application due to criminal conduct.

8. Engaging in any activity that constitutes waste, nuisance, or unlawful use.

B. AGREE THAT ANY VIOLATION OF THE ABOVE PROVISIONS CONSTITUTES A MATERIAL VIOLATION OF THE PARTIES' LEASE CONTRACT AND GOOD CAUSE FOR TERMINATION OF TENANCY. A single violation of any of the provisions of this Addendum shall be deemed a serious violation, and a material default, of the parties' Lease Contract. It is understood that a single violation shall be good cause for termination of the Lease Contract. Notwithstanding the foregoing comments, Owner may terminate Resident's tenancy for any lawful reason, and by any lawful method, with or without good cause.

**5. CRIMINAL CONVICTION NOT REQUIRED.** Unless otherwise provided by law, proof of violation of any criminal law shall not require a criminal conviction.

**6. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:
**N/A**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents** *(sign here)*
_____
_____
_____
_____
_____

**Date of Signing Addendum**
_____
_____
_____
_____
_____

**Owner or Owner's Representative** *(signs here)*
_____

**Date of Signing Addendum**
_____

© 2019, National Apartment Association, Inc. · 1/2019, Tennessee

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

# ADDENDUM PROHIBITING
## SHORT-TERM SUBLETTING OR RENTAL



**1. DWELLING UNIT DESCRIPTION.**
Unit No. **1902**        **2010 West End Avenue**
_____ *(street address)* in
_____**Nashville**_____
*(city)*, Tennessee, _____**37203**_____ *(zip code)*.

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **August 12, 2021**
Owner's name: **DRI/CA Nashville, LLC**
_____
_____
_____

Residents *(list all residents)*:
**Brandon Watters**
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. SHORT TERM SUBLEASE OR RENTING PROHIBITED.** Without limiting the prohibition in the Lease on subletting and assignment and without limiting any of our rights or remedies, this Addendum to the Lease further supplements and defines the requirements and prohibitions contained in the Lease Contract between you and us. You are hereby strictly prohibited from subletting or renting to any third party, or allowing occupancy by any third party, of all or any portion of the dwelling, whether for an overnight use or duration of any length, without our prior written consent in each instance. This prohibition applies to overnight stays or any other stays arranged on Airbnb.com or other similar internet sites.

**4. PROHIBITION ON LISTING OR ADVERTISING DWELLING ON OVERNIGHT SUBLETTING OR RENTING WEBSITES.** You agree not to list or advertise the dwelling as being available for short term subletting or rental or occupancy by others on Airbnb.com or similar internet websites. You agree that listing or advertising the dwelling on Airbnb.com or similar internet websites shall be a violation of this Addendum and a breach of your Lease Contract.

**5. VIOLATION OF LEASE AGREEMENT.** Your Lease Contract allows for use of your dwelling as a private residence only and strictly prohibits conducting any kind of business in, from, or involving your dwelling unless expressly permitted by law. Separately, your Lease Contract prohibits subletting or occupancy by others of the dwelling for any period of time

without our prior written consent. Permitting your dwelling to be used for any subletting or rental or occupancy by others (including, without limitation, for a short term), regardless of the value of consideration received or if no consideration is received, is a violation and breach of this Addendum and your Lease Contract.

**6. REMEDY FOR VIOLATION.** Any violation of this Addendum constitutes a material violation of the Lease Contract, and as such we may exercise any default remedies permitted in the Lease Contract, including termination of your tenancy, in accordance with local law. This clause shall not be interpreted to restrict our rights to terminate your tenancy for any lawful reason, or by any lawful method.

**7. RESIDENT LIABILITY.** You are responsible for and shall be held liable for any and all losses, damages, and/or fines that we incur as a result of your violations of the terms of this Addendum or the Lease Contract. Further, you agree you are responsible for and shall be held liable for any and all actions of any person(s) who occupy your dwelling in violation of the terms of this Addendum or the Lease Contract, including, but not limited to, property damage, disturbance of other residents, and violence or attempted violence to another person. In accordance with applicable law, without limiting your liability you agree we shall have the right to collect against any renter's or liability insurance policy maintained by you for any losses or damages that we incur as the result of any violation of the terms of this Addendum.

**8. SEVERABILITY.** If any provision of this Addendum or the Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Addendum or the Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Addendum while preserving the intent of the parties.

**9. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:
**N/A**_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign)*

**Owner or Owner's Representative**
*(Signs below)*

_____

_____

_____

**Date of Signing Addendum**

_____

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6



**1. DWELLING UNIT DESCRIPTION.**
Unit No. _____**1902**_____ **2010 West End**
**Avenue**
_____ *(street address)* in
_____**Nashville**_____
*(city)*, Tennessee, _____**37203**_____ *(zip code)*.

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **August 12, 2021**
Owner's name: **DRI/CA Nashville, LLC**
_____
_____
_____
_____

Residents *(list all residents)*:
**Brandon Watters**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. PURPOSE OF ADDENDUM.** By signing this Addendum, you wish for us to sign for, and to accept, U.S. mail and privately-delivered packages or other items on your behalf, subject to the terms and conditions set forth herein.

**4. PACKAGE ACCEPTANCE.**
**A. Generally.** You hereby authorize us and our agent to accept, on your behalf, any package or item delivered to our on-site management office during disclosed business hours, including but not limited to any package delivered by the U.S. Postal Service or by any private courier service or individual. You also specifically authorize us to sign on your behalf if the person or entity delivering said package or item requires an adult signature prior to delivery, including but not limited to the delivery of certified or registered mail. A photo I.D. is required before any packages will be released. Packages will only be released to verified Residents or approved representatives.

**B. Limitations.** You understand and agree that we may refuse to accept any package for any reason or no reason at all.

**5. TIME LIMITATION.** Due to limited storage space, we must ask that you pick up your package as soon as possible. You also agree that we shall have no duty whatsoever to hold or store any package for more than ___**3**___ days after receipt (accordingly, you should notify the management office if you are going to be away from the apartment home and expect to be receiving a package(s)). After said time, you agree that any such package is deemed abandoned and you authorize us to return the package to its original sender.

**6. DUTY OF CARE, INDEMNIFICATION, ASSUMPTION OF RISKS AND WAIVER.** As to any package for which we sign and/or receive on your behalf, you understand and agree that we have no duty to notify you of our receipt of such package, nor do we have any duty to maintain, protect, or deliver said package to you, nor do we have any duty to make said package available to you outside disclosed business hours. Any packages or personal property delivered to us or stored by us shall be at your sole risk, and you assume all risks whatsoever associated with any loss or damage to your packages and personal property. You, your guests, family, invitees, and agents hereby waive any and all claims against us or our agents of any nature regarding or relating to any package or item received by us, including but not limited to, claims for theft, misplacing or damaging any such package, except in the event of our or our agent's gross negligence or willful misconduct. You also agree to defend and indemnify us and our agents and hold us both harmless from any and all claims that may be brought by any third party relating to any injury sustained relating to or arising from any package that we received on your behalf. You also agree to indemnify us and our agents and hold us harmless from any damage caused to us or our agents by any package received by us for you. You also authorize us to throw away or otherwise dispose of any package that we, in our sole discretion, deem to be dangerous, noxious, or in the case of packaged food, spoiled, and waive any claim whatsoever resulting from such disposal.

**7. SEVERABILITY.** If any provision of this Addendum or the Lease Contract is illegal, invalid or unenforceable under any applicable law, then it is the intention of the parties that (a) such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Addendum or the Lease, (b) the remainder of this Addendum shall not be affected thereby, and (c) it is also the intention of the parties to this Addendum that in lieu of each clause or provision that is illegal, invalid or unenforceable, there be added as a part of this Addendum a clause or provision similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable.

**8. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:
**Luxer Package Room**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents** *(All residents must sign)*

_____
_____
_____
_____

**Owner or Owner's Representative** *(Signs below)*

_____

**Date of Signing Addendum**

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6



**1. DWELLING UNIT DESCRIPTION.**
Unit No. **1902**      **2010 West End Avenue**
_____ *(street address)* in
_____
**Nashville**
*(city)*, Tennessee, **37203**      *(zip code)*.

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **August 12, 2021**
Owner's name: **DRI/CA Nashville, LLC**
_____
_____
_____
_____

Residents *(list all residents)*:
**Brandon Watters**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Occupants *(list all occupants)*:
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. PURPOSE OF ADDENDUM.** By signing this Addendum, you, without payment or other consideration, agree to grant us permission to use your likeness in photographs, videos and/or other electronic and/or digital reproductions, including voice, in any and all of our publications, including, without limitation, any website entries, advertising websites, social media websites, and any other marketing materials. For purposes of this addendum, photographs, videos, written comments, statements, and other digital reproductions will hereinafter be collectively referred to as "media."

A. CONSENT FOR MINOR OCCUPANTS. By signing this Addendum, if any minor occupants are named above, you further certify that you are the parent, or legal guardian of the minor occupant(s) named above, and you, without payment or other consideration, agree to grant us permission to use their likeness in photographs, videos and/ or other electronic and/or digital reproductions, including voice, in any and all of our publications, including, without limitation, any website entries, advertising websites, social media websites, and any other marketing materials. For purposes of this addendum, photographs, videos, written comments, statements, and other digital reproductions will hereinafter be collectively referred to as "media."

**4. PHOTO AND VIDEO RELEASE.** You hereby grant us and our agents and affiliates (collectively, the "Released Parties") permission and a license to take, use, reuse, and publish the likeness of you and any minor occupants in all photographs or other electronic and/or digital media in any and all of our publications, including, without limitation, any website entries, advertising websites, and any other marketing materials. You understand and agree that these materials will become the property of the Released Parties and will not be returned. You agree to irrevocably authorize the Released Parties to edit, alter, copy, exhibit, publish, or distribute this media for any lawful purpose whatsoever including, without limitation, promotional and advertising uses. You waive the right to inspect or approve the finished product, including any written or electronic copy, wherein your likeness appears now or in the future. In addition, you waive any right to payment, royalties, or any other compensation arising or related to the use of the media.

**5. CONSENT TO USE YOUR NAME, LIKENESS, WRITTEN COMMENTS, AND STATEMENTS.** You are expressly agreeing to allow us to post your name, picture, written comments, and statements, and/or the names, pictures, written comments, and statements of any minor occupants in any and all of our publications, including, without limitation, any website entries, advertising websites, social media websites, and any other marketing materials. You hereby grant the Released Parties permission and a license to use, reproduce, and publish any media on its website, social media platforms, or in other marketing-related materials, whether in electronic or print form.

**6. RELEASE OF LIABILITY.** You hereby release, hold harmless, and forever discharge us from any claims or causes of actions including, without limitation, any and all claims for libel or violation of any right of publicity or privacy, related to our use of the media in any and all of our publications, including any website entries, advertising websites, social media websites, and any other marketing material so long as the claim or cause of action does not result from our intentional misconduct or gross negligence. This consent and release shall be binding upon you and your heirs, legal representatives and assigns.

**7. REVOCATION.** You have the right to revoke your consent to our use of your name, picture, video, voice, written comments, or statement, and/or the name, picture, video, voice, written comments, or statement of any minor occupants, by written notice to us.

**8. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:
**N/A**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee
Page 1 of 2

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

**Resident or Residents**
*(All residents must sign)*

**Owner or Owner's Representative**
*(signs below)*

_____

_____

_____          **Date of Signing Addendum**

_____

_____          _____

_____

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

# CLASS ACTION WAIVER ADDENDUM



## 1. DWELLING UNIT DESCRIPTION.

Unit No. **1902** **2010 West End Avenue**
_____ _(street address)_ in
_____
**Nashville**
_(city)_, Tennessee, **37203** _(zip code)._

## 2. LEASE CONTRACT DESCRIPTION.

Lease Contract Date: **August 12, 2021**
Owner's name: **DRI/CA Nashville, LLC**
_____
_____
_____
_____

Residents _(list all residents)_:
**Brandon Watters**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

## 3. ADDENDUM.
This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

## 4. CLASS ACTION WAIVER.
You agree that you hereby waive your ability to participate either as a class representative or member of any class action claim(s) against us or our agents. While you are not waiving any right(s) to pursue claims against us related to your tenancy, you hereby agree to file any claim(s) against us in your individual capacity, and you may not be a class action plaintiff, class representative, or member in any purported class action lawsuit ("Class Action"). Accordingly, **you expressly waive any right and/or ability to bring, represent, join, or otherwise maintain a Class Action or similar proceeding against us or our agents in any forum.**

Any claim that all or any part of this Class Action waiver provision is unenforceable, unconscionable, void, or voidable shall be determined solely by a court of competent jurisdiction.

**YOU UNDERSTAND THAT, WITHOUT THIS WAIVER, YOU MAY HAVE POSSESSED THE ABILITY TO BE A PARTY TO A CLASS ACTION LAWSUIT. BY SIGNING THIS AGREEMENT, YOU UNDERSTAND AND CHOOSE TO WAIVE SUCH ABILITY AND CHOOSE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY. THIS CLASS ACTION WAIVER SHALL SURVIVE THE TERMINATION OR EXPIRATION OF THIS LEASE CONTRACT.**

## 5. SEVERABILITY.
If any clause or provision of this Addendum is illegal, invalid or unenforceable under any present or future laws, then it is the intention of the parties hereto that the remainder of this Addendum shall not be affected thereby.

## 6. SPECIAL PROVISIONS.
The following special provisions control over any conflicting provisions of this printed Addendum form or the Lease Contract.

**N/A**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident's Acknowledgment**          **Date of Signing Addendum**

_____          _____
_____          _____
_____          _____
_____          _____
_____          _____

**Landlord (or Landlord Agent) Acknowledgment**          **Date of Signing Addendum**

_____          _____

© 2019, National Apartment Association, Inc. - 1/2019, Tennessee

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

**Purpose of Form:** The Violence Against Women Act ("VAWA") protects applicants, tenants, and program participants in certain HUD programs from being evicted, denied housing assistance, or terminated from housing assistance based on acts of domestic violence, dating violence, sexual assault, or stalking against them. Despite the name of this law, VAWA protection is available to victims of domestic violence, dating violence, sexual assault, and stalking, regardless of sex, gender identity, or sexual orientation.

**Use of This Optional Form:** If you are seeking VAWA protections from your housing provider, your housing provider may give you a written request that asks you to submit documentation about the incident or incidents of domestic violence, dating violence, sexual assault, or stalking.

In response to this request, you or someone on your behalf may complete this optional form and submit it to your housing provider, or you may submit one of the following types of third-party documentation:

(1) A document signed by you and an employee, agent, or volunteer of a victim service provider, an attorney, or medical professional, or a mental health professional (collectively, "professional") from whom you have sought assistance relating to domestic violence, dating violence, sexual assault, or stalking, or the effects of abuse. The document must specify, under penalty of perjury, that the professional believes the incident or incidents of domestic violence, dating violence, sexual assault, or stalking occurred and meet the definition of "domestic violence," "dating violence," "sexual assault," or "stalking" in HUD's regulations at 24 CFR 5.2003.

(2) A record of a Federal, State, tribal, territorial or local law enforcement agency, court, or administrative agency; or

(3) At the discretion of the housing provider, a statement or other evidence provided by the applicant or tenant.

**Submission of Documentation:** The time period to submit documentation is 14 business days from the date that you receive a written request from your housing provider asking that you provide documentation of the occurrence of domestic violence, dating violence, sexual assault, or stalking. Your housing provider may, but is not required to, extend the time period to submit the documentation, if you request an extension of the time period. If the requested information is not received within 14 business days of when you received the request for the documentation, or any extension of the date provided by your housing provider, your housing provider does not need to grant you any of the VAWA protections. Distribution or issuance of this form does not serve as a written request for certification.

**Confidentiality:** All information provided to your housing provider concerning the incident(s) of domestic violence, dating violence, sexual assault, or stalking shall be kept confidential and such details shall not be entered into any shared database. Employees of your housing provider are not to have access to these details unless to grant or deny VAWA protections to you, and such employees may not disclose this information to any other entity or individual, except to the extent that disclosure is: (i) consented to by you in writing in a time-limited release; (ii) required for use in an eviction proceeding or hearing regarding termination of assistance; or (iii) otherwise required by applicable law.

**TO BE COMPLETED BY OR ON BEHALF OF THE VICTIM OF DOMESTIC VIOLENCE, DATING VIOLENCE, SEXUAL ASSAULT, OR STALKING**

1. **Date the written request is received by victim:** _____

2. **Name of victim:** _____

3. **Your name (if different from victim's):** _____

4. **Name(s) of other family member(s) listed on the lease:** _____ _____

5. **Residence of victim:** _____

6. **Name of the accused perpetrator (if known and can be safely disclosed):** _____ _____

7. **Relationship of the accused perpetrator to the victim:** _____

8. **Date(s) and times(s) of incident(s) (if known):** _____ _____

9. **Location of incident(s):** _____

In your own words, briefly describe the incident(s):

_____
_____
_____
_____
_____

This is to certify that the information provided on this form is true and correct to the best of my knowledge and recollection, and that the individual named above in Item 2 is or has been a victim of domestic violence, dating violence, sexual assault, or stalking. I acknowledge that submission of false information could jeopardize program eligibility and could be the basis for denial of admission, termination of assistance, or eviction.

Signature _____ Signed on (Date) _____

**Public Reporting Burden:** The public reporting burden for this collection of information is estimated to average 1 hour per response. This includes the time for collecting, reviewing, and reporting the data. The information provided is to be used by the housing provider to request certification that the applicant or tenant is a victim of domestic violence, dating violence, sexual assault, or stalking. The information is subject to the confidentiality requirements of VAWA. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid Office of Management and Budget control number.



## 1. DWELLING UNIT DESCRIPTION.

Unit No. **1902** **2010 West End Avenue** _____ *(street address)* in
_____ **Nashville** _____
*(city)*, Tennessee, **37203** *(zip code)*.

## 2. LEASE CONTRACT DESCRIPTION.

Lease Contract Date: **August 12, 2021**
Owner's name: **DRI/CA Nashville, LLC**
_____
_____
_____
_____

Residents *(list all residents)*:

**Brandon Watters**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

## 3. PURPOSE OF ADDENDUM.

By signing this Addendum, Resident acknowledges that existing, on-going, or future construction on the property may affect your use, view from, and enjoyment of such property.

## 4. RESIDENT ACKNOWLEDGMENT OF CONSTRUCTION ON PROPERTY.

Resident acknowledges that the property, including its common areas and dwelling units, may currently or in the future, be under repair, renovation, improvement, or construction. Owner does not guarantee that the repair, renovation, improvement, or construction will be completed on a set date or time and therefore, is not under any obligation to have said repair, renovation, improvement, or construction completed by a set date or time. Resident also acknowledges that the repair, renovation, improvement, or construction does not represent a breach of Owner's obligations under the Lease Contract or applicable state law or local ordinance.

## 5. USE OF AMENITIES AND SERVICES.

To the extent permitted by applicable state law or local ordinance, repair, renovation, improvement, or construction at the property may create conditions where Resident's use of the property's amenities and services may be limited or not available.

## 6. NOISE AND OTHER DISTURBANCES.

Repair, renovation, improvement, or construction at or near the property may create noise or other disturbances, and the property itself, or portions thereof, may be unfinished for some time with respect to landscaping, building exteriors, interiors, amenities, walkways, lighting and the like. Resident acknowledges that these conditions may create inconveniences. Resident agrees that despite these inconveniences, the obligations of the Resident, including payment of rent, as set forth in the Lease Contract will still be in effect.

## 7. RELEASE OF LIABILITY.

To the extent allowed by state law or local ordinance, by signing this Addendum, Resident agrees to waive all claims related to Resident's inability to access, use, and enjoy the amenities, services, and facilities affected by existing, on-going, or future repair, renovation, improvement, or construction on the property.

The existing, on-going, or future construction at the property includes but is not limited to:

Title/Description: **Completion of all new development construction at 2010 West End.**
Anticipated Start Date: _____
Anticipated End Date: **December 31st, 2021**

To the extent allowed by state law or local ordinance, Resident further agrees that any inconvenience associated with the repair, renovation, improvement, or construction, such as, but not limited to, those disclosed herein, will not be deemed to give Resident any offset to rent obligations, or other compensation, nor will they be the basis for a complaint(s) or defense(s) against Owner for rent relief, constructive eviction, fitness and habitability, peaceful and quiet enjoyment, nuisance, or any other claim, right or remedy.

## 8. DELAY OF OCCUPANCY.

Resident acknowledges that occupancy of the dwelling unit may be delayed due to repair, renovation, improvement, or construction of the property, including common areas and dwelling units. Such repair, renovation, improvement, or construction may cause unforeseen delays due to scheduling conflicts, delay in permit issuance, acts of God, and other things beyond the control of Owner. The Lease Contract will remain in effect subject to: (1) the start date of the term of the lease contract shall be changed to the first day that Owner provides Resident the Dwelling Unit for occupancy, and rent shall be abated until occupancy is provided; and (2) your right to terminate as set forth in your Lease Contract under DELAY OF OCCUPANCY, and in accordance with applicable state law or local ordinance.

Resident hereby knowingly and voluntarily accepts the risks of delays and the dwelling unit not being ready for occupancy on the date set forth in the Lease Contract. Resident agrees that Owner's failure to have the dwelling unit ready on the set date in the Lease Contract due to a repair, renovation, improvement, or construction delay does not constitute a willful failure to deliver possession of the dwelling unit. Resident hereby waives and relinquishes any rights, claims, or causes of action against Owner related to delays in delivering the dwelling unit, including, but not limited to, any holdover rent, or other penalties imposed at Resident's current place of residence, provided however, that Owner agrees that rent will not commence under the Lease Contract until possession is available to Resident.

## 9. DISPLACEMENT.

In the event Resident must be displaced from the dwelling unit that is the subject of the Lease Contract due to repair, renovation, improvement, or construction in or around the dwelling unit, Owner, at Owner's sole option, shall transfer Resident to another dwelling unit within the community that is not affected by the repair, renovation, improvement, or construction or shall provide appropriate comparable accommodations for Resident. However, in the event of Resident's displacement and subsequent re-location, the terms of the Lease Contract, including but not limited to the payment of rent shall remain in full force and effect.

## 10. SEVERABILITY.

If any provision of this Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Lease Contract. The court shall interpret the lease contract and provisions herein in a manner such as to uphold the valid portions of this Lease Contract while preserving the intent of the parties.

© 2019, National Apartment Association, Inc. - 2/2019, Tennessee

Page 1 of 2

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6

11. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

This property is a new construction
community. We anticipate full completion
of the property, with all construction
contractors being out of the property by
December 31, 2021. Should we deem it
necessary to have construction contractors
in the building beyond December 31, 2021,
property management will be sure to inform
any and all residents of the work to be
done, with an expected completion date.

**Resident or Residents**
*(All residents must sign)*

**Owner or Owner's Representative**
*(signs below)*

*Harrison Young*

**Date of Signing Addendum**

08 / 12 / 2021

© 2019, National Apartment Association, Inc. - 2/2019, Tennessee    Page 5 of 2

Doc ID: 5c716a3b7840a30edb8b7410c42cee89ef605fd6


| | |
|---|---|
| **TITLE** | 2010 West End Lease Document #1902 |
| **FILE NAME** | 1902 Watters - Lease.pdf |
| **DOCUMENT ID** | 5c716a3b7840a30edb8b7410c42cee89ef605fd6 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

## Document History

| | | |
|---|---|---|
| ⤴ **SENT** | **08 / 12 / 2021**<br>17:29:39 UTC | Sent for signature to Brandon Watters (███████████.com) from 2010westendmgr@lincolnapts.com<br>IP: 156.146.103.94 |
| 👁 **VIEWED** | **08 / 12 / 2021**<br>17:40:45 UTC | Viewed by Brandon Watters (███████████.com)<br>IP: 34.99.114.38 |
| ✍ **SIGNED** | **08 / 12 / 2021**<br>17:58:12 UTC | Signed by Brandon Watters (███████████.com)<br>IP: 34.99.114.38 |
| ⊘ **COMPLETED** | **08 / 12 / 2021**<br>17:58:12 UTC | The document has been completed. |