# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-MD-3071<br>MDL No. 3071<br><br>This Document Relates to:<br>ALL CASES<br><br>Chief Judge Waverly D. Crenshaw, Jr. |

## CERTAIN DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO PLEAD AGENCY LIABILITY

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

LEGAL STANDARD..........................................................................................................2

ARGUMENT .......................................................................................................................3

    I.    THE FAC IMPERMISSIBLY RELIES ON GROUP PLEADING TO IGNORE THE DISTINCTIONS BETWEEN BUILDING OWNERS AND THE PROPERTY MANAGEMENT DEFENDANTS ................................................................................3

    II.   THE FAC FAILS TO INCLUDE ALLEGATIONS REQUIRED TO IMPOSE ANTITRUST LIABILITY ON AN AGENT ..............................................................6

CONCLUSION...................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AD/SAT, Div. of Skylight, Inc. v. Associated Press*,
  181 F.3d 216 (2d Cir. 1999)..................................................................................10

*Ago v. Begg, Inc.*,
  705 F. Supp. 613 (D.D.C. 1988), *aff'd*, 911 F.2d 819 (D.C. Cir. 1990)..................6

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  899 F.3d 87 (2d Cir. 2018)......................................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................................2-4, 8

*Cherry v. RealPage Inc.*,
  No: 22-cv-01618 (W.D. Wash. 2022)......................................................................5

*Eychaner v. Gross*,
  779 N.E.2d 1115 (Ill. 2002).....................................................................................5

*Flaherty v. Baybank Merrimack Valley, N.A.*,
  808 F. Supp. 55 (D. Mass. 1992).............................................................................6

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007).......................................................................................4

*In re Fresh & Process Potatoes Antitrust Litig.*,
  834 F. Supp. 2d 1141 (D. Idaho 2011) .................................................................6, 8

*In re Travel Agent Comm'n Antitrust Litig.*,
  583 F.3d 896 (6th Cir. 2009) ................................................................................3, 9

*In re Zinc Antitrust Litig.*,
  155 F. Supp. 3d 337 (S.D.N.Y. 2016)......................................................................4

*Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*,
  29 F.4th 337 (7th Cir. 2022) .................................................................................7-8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)..................................................................................................9

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
 465 U.S. 752 (1984)....................................................................................................2, 7

*Riverview Invs., Inc. v. Ottawa Cmty. Improvement Corp.*,
 899 F.2d 474 (6th Cir. 1990) ...........................................................................................9

*SD3, LLC v. Black & Decker (U.S.), Inc.*,
 801 F.3d 412 (4th Cir. 2015) ...........................................................................................4

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
 451 U.S. 630 (1981)..........................................................................................................6

*Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
 552 F.3d 430 (6th Cir. 2008) ...........................................................................................3

*United Mags. Co. v. Murdoch Mags. Distrib., Inc.*,
 353 F. Supp. 2d 433 (S.D.N.Y. 2004), *aff'd sub nom. United Mag. Co. v. Curtis
 Circulation Co.*, 279 F. App'x 14 (2d Cir. 2008) ......................................................6

**Other Authorities**

7 Herbert Hovenkamp & Philip E. Areeda, *Fundamentals of Antitrust Law* (3d ed. 2010)............6

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust
 Principles and Their Application* (last updated Aug. 2022) ......................................7

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust
 Principles and Their Application* (last updated Sept. 2021)......................................7

*Restatement (Third) of Agency* § 6.01 (Am. L. Inst. 2006) ............................................4

*Restatement (Third) of Agency* § 7.01 (Am. L. Inst. 2006) ............................................6

# INTRODUCTION

Defendants Avenue5 Residential, LLC ("Avenue5"), Bozzuto Management Company ("BMC"),[1] FPI Management, Inc. ("FPI"), Pinnacle Property Management Services, LLC ("Pinnacle"), and ZRS Management, LLC ("ZRS") (collectively, "the Property Management Defendants") should be dismissed from this action under Fed R. Civ. P. 12(b)(6) because the Multifamily Housing First Amended Consolidated Class Action Complaint ("FAC") (ECF No. 314) does not plausibly state a claim for relief against them.

The Property Management Defendants are property managers, not building owners. They manage multi-family residential properties as agents for their principals, the building owners. The FAC ignores that distinction and the legal implications that flow from it. Instead, it lumps property managers together with building owners under the catch-all definition "Lessor Defendants." But the Property Management Defendants are not "Lessors." Plaintiffs cannot rely on impermissible group pleading and "labels" to state a claim against the Property Management Defendants by calling them something they are not and failing to offer any specific factual allegations as to the Property Management Defendants that would support liability as an agent.

The FAC attempts to allege a conspiracy to fix rents at multifamily residential properties across the country. The core of that alleged conspiracy is an agreement among "Lessor Defendants" to "delegate" decision-making on rents and supply to RealPage by agreeing (a) to use RealPage revenue management software, (b) to share aggregated proprietary data through the

---

[1] BMC was not specifically identified among the defendants making this motion in the prior notice to the Court, but rather was among the "similarly-situated Defendants" referenced in the notice that were considering joining the motion. *See* Notice of Number and Nature of Defendants' Anticipated Motions and Motion for Excess Pages at 5 (June 21, 2023) ECF No. 297. The above-named Defendants make this motion without intending any impact as to the ability of other Defendants to raise similar agency arguments in the future.

1

software, and (c) to follow the software's recommendations. FAC ¶ 3. The principal motion to dismiss explains why the FAC fails to allege an unlawful agreement between any defendants and why the FAC should be dismissed as to all defendants. The Property Management Defendants join in that motion. In addition, the Property Management Defendants should be dismissed for an independent reason: an agent cannot be held liable as a matter of law for an alleged conspiracy without specific factual allegations that the agent knew about the unlawful conspiracy, had a conscious commitment to join the conspiracy, and acted to materially advance the conspiracy.

The FAC contains no such allegations. Indeed, it is silent as to the roles of and relationship between the Property Management Defendants and the building owners or the involvement of the Property Management Defendants in the alleged conspiratorial conduct. For example, the FAC does not allege that the Property Management Defendants were parties to the leases with tenants, had independent authority to set rents for the properties they managed, or independently decided whether and when to use RealPage's revenue management software or whether and when to follow its recommendations. As a result, in addition to the insufficiency of the FAC's threadbare allegations discussed in the joint motion as to all defendants, the FAC fails to state a claim against the Property Management Defendants on this separate and independent ground.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must include sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Cases alleging an antitrust conspiracy require, among other things, "a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Id.* at 556. The alleged conspirators must have "a conscious commitment to a common scheme." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984). Group pleading is not permissible: the

2

allegations of a conspiracy must be adequately pled for each and every defendant individually and generic pleading about the conduct of "defendants" as a group is insufficient to state a claim. *See In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905-06 (6th Cir. 2009); *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 435-36 (6th Cir. 2008).

## ARGUMENT

Plaintiffs are tenants who allege they rented apartments in multi-family buildings from "Lessor Defendants." FAC ¶¶ 394, 405, 410. The FAC alleges that tenants paid higher rents because "Lessor Defendants" conspired to "delegate their rental price and supply decisions to a common decision maker, RealPage; share the proprietary data necessary for RealPage to make those decisions; and[ ] then abide by RealPage's price and supply decisions." FAC ¶ 3.

## I. THE FAC IMPERMISSIBLY RELIES ON GROUP PLEADING TO IGNORE THE DISTINCTIONS BETWEEN BUILDING OWNERS AND THE PROPERTY MANAGEMENT DEFENDANTS

Plaintiffs lump all the defendants together under the label "Lessor Defendants." This group pleading and reliance on "labels" is impermissible and should result in the dismissal of the FAC as to all defendants, as explained in the principal motion to dismiss. As to Property Management Defendants, this improper group pleading is especially problematic because it erases the critical distinctions between the building owners that are the lessors of the properties and the agents that manage properties on behalf of those owners.

"Generic pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy, was specifically rejected by *Twombly*." *Total Benefits*, 552 F.3d at 436. *Accord In re Travel Agent*, 583 F.3d at 905 ("Plaintiffs attempt to implicate these defendants in the purported conspiracy by relying on several vague allegations contained in the Amended Complaint that refer to 'defendants' or 'defendants' executives.' However, plaintiffs' reliance on these indeterminate assertions is misplaced because they represent precisely the type

of naked conspiratorial allegations rejected by the Supreme Court in *Twombly*."). Each "defendant is entitled to notice of the claims brought against [it]" and "to know how [it] is alleged to have conspired, with whom and for what purpose." *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 383-84 (S.D.N.Y. 2016). To survive a motion to dismiss, therefore, "Plaintiffs must be able to separately state a claim against each and every defendant." *Id.* at 384. *See also SD3, LLC v. Black & Decker (U.S.), Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) ("A plaintiff in a § 1 case cannot assemble some collection of defendants and then make vague, non-specific allegations against all of them as a group. . . . If [the complaint] fails to allege particular facts against a particular defendant, then the defendant must be dismissed."); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50-51 (2d Cir. 2007) (affirming dismissal where allegations were "in entirely general terms without any specification of any particular activities by any particular defendant" and explaining that a complaint "without any specification of any particular activities by any particular defendant" is "nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatever").

The FAC comes nowhere close to pleading a claim against each individual Property Management Defendant. The Property Management Defendants are "pure play" property management companies that do not own properties, but rather provide management services as agents for the owners of the properties. They do not lease the apartments that they manage and are not "lessors" in any sense. It is clear they are not "lessors" as a matter of agency law because "when an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, (1) the principal and the third party are parties to the contract; and (2) the agent is not a party to the contract unless the agent and third party agree otherwise." *Restatement (Third) of*

*Agency* § 6.01 (Am. L. Inst. 2006). Thus, the FAC's allegations about the "Lessor Defendants" do not apply to the Property Management Defendants and do not support a claim against them.

The FAC acknowledges that building owners and property managers are distinct, as it refers to them separately in various places. *See* FAC ¶¶ 121, 219, 251. Yet the FAC ignores the different roles of and relationship between building owners and property managers and makes no factual allegations on these points. But Plaintiffs cannot make this critical distinction disappear. Plaintiffs were on notice of the grounds for this motion: the Property Management Defendants explained to Plaintiffs in the Court-ordered meet and confer, prior to Plaintiffs filing their FAC, that the Property Management Defendants were only property managers that acted as agents for the building owners, yet Plaintiffs chose not to address this issue.[2] Materials cited in the complaint in the underlying case *Cherry v. RealPage Inc.*, No: 22-cv-01618 (W.D. Wash. 2022) recognize this critical distinction. That complaint cites a lease agreement for an Avenue5-managed building that states that the lease is entered between "the resident[s]" and "us, the owner: 225 Roy LLC," and that Avenue5 is only the "manager" and acts solely as the owner's on-site representative. *See* Declaration of James G. Kress (July 7, 2023), Ex. A. Courts have also recognized the principal-agent relationship between building owners and property managers in the multi-family context. *See, e.g.*, *Eychaner v. Gross*, 779 N.E.2d 1115, 1134 (Ill. 2002) ("An apartment building owner directs her property manager to manage the building with discretion to make decisions concerning building maintenance and finances. However, the delegation of these duties does not alienate the same rights from the owner, who can always step in and make decisions on her own relating to those matters. Also, the building owner retains the ultimate power to prevent the manager from taking any action with respect to her property or to discharge the manager altogether.").

---

[2] Defendants Avenue5, FPI, and Pinnacle participated in the meet and confer on June 29, 2023.

## II. THE FAC FAILS TO INCLUDE ALLEGATIONS REQUIRED TO IMPOSE ANTITRUST LIABILITY ON AN AGENT

Because the Property Management Defendants are agents for building owners, Plaintiffs must allege specific facts that support agent liability for each Property Management Defendant. "Only an agent's own tortious conduct subjects the agent to liability . . . . An agent is not subject to liability for torts committed by the agent's principal that do not implicate the agent's own conduct . . . ." *Restatement (Third) of Agency* § 7.01 (Am. L. Inst. 2006). *See also, e.g.*, *Ago v. Begg, Inc.*, 705 F. Supp. 613, 617-18 (D.D.C. 1988), *aff'd*, 911 F.2d 819 (D.C. Cir. 1990) ("While the law of agency often holds a principal responsible for knowledge known by his agent . . . it sensibly does not hold agents responsible for knowledge known only by the principal."); *United Mags. Co. v. Murdoch Mags. Distrib., Inc.*, 353 F. Supp. 2d 433, 441 (S.D.N.Y. 2004), *aff'd sub nom. United Mag. Co. v. Curtis Circulation Co.*, 279 F. App'x 14 (2d Cir. 2008) ("Under principals of tort law, an agent is not liable for its principal's tortious conduct . . . ."); *Flaherty v. Baybank Merrimack Valley, N.A.*, 808 F. Supp. 55, 61 (D. Mass. 1992) ("Plaintiffs have offered no legal support for their 'respondeat inferior' theory that the attorney agents are somehow vicariously liable for the tortious acts of their principals.").

These principles of agency law apply with full force in the context of an alleged antitrust conspiracy. As a general matter, "actions under the antitrust laws are analogous to common-law actions sounding in tort." *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 634 (1981). More specifically, an agent "is not liable for the acts of its alleged principal in a [Sherman Act] § 1 conspiracy unless the agent (1) had 'knowledge of its [principal's] purpose to restrain trade,' (2) 'intended to restrain trade itself rather than simply earn its usual and customary commission,' and (3) 'contribute[d] materially to the restraint.'" *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1170 (D. Idaho 2011) (second alteration in original) (quoting 7 Herbert

Hovenkamp & Philip E. Areeda, *Fundamentals of Antitrust Law* ¶ 1474c (3d ed. 2010)); *Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 350 (7th Cir. 2022) ("To participate in a conspiracy, agents of a defendant must have 'knowledge of the principal's unlawful objective' and 'an intent to restrain trade.'") (quoting Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1474c (last updated Sept. 2021)). The leading antitrust treatise explains that an agent "must have a stake in the restraint, as distinct from merely selling its own services for their usual market price." Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1474a (last updated Aug. 2022). Thus, an agent "who merely earns its commission . . . does not share a 'conscious commitment to a common scheme designed to achieve an unlawful objective,' as the Supreme Court has required." *Id.* ¶ 1474c (quoting *Monsanto Co.*, 465 U.S. at 764).

Plaintiffs do not come close to meeting these pleading requirements. The FAC fails to include any allegations about the roles of and the relationship between building owners and property managers. The FAC alleges only that the Property Management Defendants "us[e] RealPage's [revenue management software] to manage some or all" of the rental units they manage. FAC ¶ 48 (Avenue5); ¶ 51 (BMC); ¶ 63 (FPI); ¶ 75 (Pinnacle); ¶ 90 (ZRS). But it fails to offer well-pled allegations about what each Property Management Defendant knew about the alleged conspiracy, their intent to join that conspiracy as opposed to merely earning their usual commissions, or what they did to materially contribute to the alleged conspiracy. For example, among other deficiencies, the FAC does not contain well-pled allegations that the Property Management Defendants did any of the following:

- Entered leases with apartment tenants as a counterparty;

- Established and approved rents;

- Retained rent payments from tenants;

- Chose whether to use revenue management software or not;

- Decided what revenue management software to use;

- Contracted with RealPage for revenue management software;

- Agreed to follow recommendations from RealPage or actually followed them;

- Handled revenue management functions;

- Shared proprietary information with other defendants.

The FAC also contains no allegations that the Property Management Defendants did any of these things on their own behalf rather than in their role as agents.

Due to the absence of any well-pled allegations about the knowledge, intent, and actions of the Property Management Defendants, the FAC fails to plausibly allege a claim against them. Plaintiffs cannot point to general allegations made about building owners – *i.e.*, "Lessor Defendants" – to bootstrap liability onto the Property Management Defendants. Mere "labels," much less inaccurate labels, will not suffice. *Twombly*, 550 U. S. at 555. Instead, the FAC must make specific allegations about the knowledge, intent, and involvement of the agents themselves. The absence of those allegations compels dismissal as to the Property Management Defendants. *See, e.g.*, *Marion Diagnostic Ctr.*, 29 F.4th 337 at 350 (affirming dismissal of complaint that was "silent on whether the [agent] knew of any conspiracy, much less shared an intent to participate in one"); *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d. at 1170 (dismissing complaint against marketing agent).

In fact, the only specific factual allegations in the FAC about the Property Management Defendants are conclusory and inconsistent with the conspiracy alleged:

- As to FPI, the FAC alleges "Witness 2 also worked as a leasing consultant with Defendant FPI Management, Inc . . . . however **she did not use RealPage's pricing platform** at Defendant FPI Management as the building she worked at was classified as affordable housing." *See* FAC ¶ 7 n.13 (emphasis added).

- As to Pinnacle, the FAC alleges Witness 6 considered RealPage's recommendations to be "ridiculous" and "embarrassing" and never alleges that Pinnacle followed those recommendations, *see* FAC ¶ 11, and that RealPage helped Pinnacle "avoid a situation where there were a significant number of units renewing at the same time," which is a non-conspiratorial reason to use RealPage's software, *see* FAC ¶ 22.

- As to Avenue5, BMC, and ZRS, the FAC mentions them only in its list of all defendants. *See* FAC ¶¶ 48, 51, 90.

Finally, the FAC does not allege that the Property Management Defendants receive rent payments and cannot in good faith allege that they received rent payments in any capacity other than as agents for the building owners. The FAC also nowhere alleges how the Property Management Defendants are compensated. These issues bear directly on the plausibility of their involvement in an alleged conspiracy to fix rents. *See, e.g.*, *In re Travel Agent*, 583 F.3d at 909 ("the plausibility of plaintiffs' conspiracy claim is inversely correlated to the magnitude of defendants' economic self-interest"); *Riverview Invs., Inc. v. Ottawa Cmty. Improvement Corp.*, 899 F.2d 474, 483 (6th Cir. 1990) ("A fact finder may not infer a conspiracy if there is no economic motive to conspire and there is a nonconspiratorial explanation for the alleged conspiratorial conduct."). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596 (1986) ("Lack of motive bears on the range of permissible conclusions that might be drawn from ambiguous evidence . . . ."); *Anderson News, L.L.C. v. Am. Media, Inc.*, 899 F.3d 87, 102 (2d Cir.

2018) ("In light of the minimal economic benefit that [defendants] would realize . . . 'defendants had no rational economic motive to join the alleged conspiracies.'") (quoting and discussing *AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 235 (2d Cir. 1999)).

## CONCLUSION

In short, the FAC engages in impermissible group pleading by lumping the Property Management Defendants together with building owners under the definition "Lessor Defendants." By doing so, it ignores that the Property Management Defendants are not lessors but are only agents for the lessors. The FAC also fails to allege facts that plausibly support liability for the Property Management Defendants as agents as it does not allege that the Property Management Defendants knew of the alleged conspiracy, intended to join it, and materially advanced it.

For these reasons, as well as those above and in the principal motion to dismiss, Avenue5 Residential, LLC, Bozzuto Management Company, FPI Management, Inc., Pinnacle Property Management Services, LLC, and ZRS Management, LLC, respectfully request that the FAC be dismissed in its entirety.

DATED: July 7, 2023

Respectfully submitted,

| | |
|---|---|
| */s/ Danny David* | */s/ James D. Bragdon* |
| Danny David | James D. Bragdon |
| danny.david@bakerbotts.com | jbragdon@gejlaw.com |
| BAKER BOTTS LLP | Sam Cowin |
| 910 Louisiana Street | scowin@gejlaw.com |
| Houston, TX 77002 | GALLAGHER EVELIUS & JONES LLP |
| Telephone: (713) 229-4055 | 218 N. Charles St., Suite 400 |
| | Baltimore, MD 21201 |
| James Kress | Telephone: (410) 727-7702 |
| (*pro hac* forthcoming) | |
| james.kress@bakerbotts.com | Philip A. Giordano (admitted *pro hac vice*) |
| Paul Cuomo | philip.giordano@hugheshubbard.com |
| (*pro hac* forthcoming) | HUGHES HUBBARD & REED LLP |
| paul.cuomo@bakerbotts.com | 1775 I Street NW |
| BAKER BOTTS LLP | Washington, DC 20007 |
| 700 K. Street, NW | Telephone: (202) 721-4776 |
| Washington, DC 20001 | |
| Telephone: (202) 639-7884 | Charles E. Elder, BPR # 038250 |
| | celder@bradley.com |
| *Counsel for Defendant Avenue5 Residential, LLC* | BRADLEY ARANTBOULT CUMMINGS LLP |
| | 1600 Division Street, Suite 700 |
| | Nashville, Tennessee 37203 |
| | P: 615.252.3597 |
| | |
| | *Counsel for Defendant Bozzuto Management Company* |

11

/s/ Charles H. Samel
Charles H. Samel
charles.samel@stoel.com
Edward C. Duckers
ed.duckers@stoel.com
STOEL RIVES LLP
1 Montgomery Street, Suite 3230
San Francisco, CA 94104
Telephone: (415) 617-8900

George A. Guthrie
gguthrie@wilkefleury.com
WILKE FLEURY LLP
621 Capitol Mall, Suite 900
Sacramento, CA 95814
Telephone: (916) 441-2430

*Counsel for Defendant FPI Management, Inc.*


/s/ Ferdose al-Taie
Ferdose al-Taie (admitted *pro hac vice*)
faltaie@bakerdonelson.com
BAKER, DONELSON, BEARMAN CALDWELL &
BERKOWITZ, P.C.
956 Sherry Lane, 20th Floor
Dallas, TX 75225
Telephone: (214) 391-7210

Christopher E. Thorsen (BPR # 21049)
cthorsen@bakerdonelson.com
BAKER, DONELSON, BEARMAN CALDWELL &
BERKOWITZ, P.C.
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, TN 37201
Telephone: (615) 726-5600
*Counsel for Defendant ZRS Management, LLC*

/s/ Kenneth Reinker
Kenneth Reinker
kreinker@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1522

Joseph M. Kay
jkay@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2745

*Counsel for Defendant Pinnacle Property Management Services, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record registered on the CM/ECF system.

DATED this 7th day of July, 2023.


/s/ *Kenneth Reinker*
Kenneth Reinker