# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

|  |  |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | ) ) ) ) ) ) ) ) |

Case No. 3:23-md-3071

MDL No. 3071

Judge Waverly D. Crenshaw, Jr.

This Document Relates to: ALL CASES

## PLAINTIFFS' NOTICE OF THE NATURE OF ANTICIPATED RESPONSES TO DEFENDANTS' MOTIONS TO DISMISS

Pursuant to the Court's June 1, 2023 Order, the undersigned Plaintiffs notify the Court of the nature of anticipated responses they intend to file in opposition to Defendants' motions to dismiss the Multi-Family Housing First Amended Consolidated Class Action Complaint ("FACCAC"). (Dkt. No. 310-1). After Defendants filed their Notice of Nature and Number of Anticipated Motions on June 21, 2023 (Dkt. No. 297), the parties met and conferred about potential grounds for dismissal of the Consolidated Class Action Complaints for the Multi-Family Housing Plaintiffs (Dkt. No. 291) and the Student Housing Plaintiffs (Dkt. No. 291). To address the concerns raised by certain Defendants, the Multi-Family Plaintiffs sought leave to file an amendment, which this Court granted on July 5, 2023. (Dkt. No. 313). To address the concerns raised by certain other Defendants, the Student Plaintiffs voluntarily dismissed their Consolidated Amended Complaint (Dkt. No. 312).[1] The Court issued an Order dated June 22, 2023, which ruled on Defendants' filing and set forth the parties' page limits for the motion to dismiss briefing. (Dkt. No. 298).

---

[1] Plaintiffs intend to refile a Student Housing Complaint in a court in which Student Housing Defendants agree personal jurisdiction and venue are proper.

I.   **Response to Defendants' Omnibus Motion to Dismiss**

Plaintiffs oppose Defendants' motion to dismiss for failure to state a claim.

**A.  Plaintiffs have plausibly alleged an agreement under the Sherman Act.**

The FACCAC contains factual allegations that more than plausibly allege an agreement with respect to pricing decisions and supply restrictions—including witness accounts and Defendants' own documents. Prior to the conspiracy, Lessor Defendants sought to maintain the highest possible occupancy levels and keep turnover of tenants to a minimum (*i.e.*, keep "heads in beds"), even if it meant lowering prices or offering rent reductions. FACCAC ¶¶ 94-97. Upon significant adoption of RealPage RMS, Lessor Defendants were able to avoid competing on price by outsourcing leasing decisions to RealPage, which used its vast data pool of commercially sensitive information to set prices above market and soften price competition among competitors. FACCAC ¶¶ 120-140, 137-139. Plaintiffs offer facts demonstrating that RealPage and Lessor Defendants enforced the Lessor Defendants' compliance with the agreed pricing and supply decision. *See, e.g.*, *id.* ¶¶ 7, 128-29, 135, 158, 161-62, 167-69 (detailing how RealPage 'Pricing Advisors' and Lessor Defendants' internal staff trained by RealPage circulated competitively sensitive information and enforced RealPage's "recommendations"); and *id.* ¶¶ 10, 137-43, 148, 166, 173-74 (detailing RealPage's requirement that Lessor Defendants obtain approval for deviating from RealPage's "recommendations"). These facts and others, combined with the "strong plus factors" outlined in the FACCAC (¶¶ 211-236), more than satisfy Plaintiffs' pleading burden under Rule 8. *Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995, 1009 (6th Cir. 1999).

**B.  Plaintiffs have sufficiently alleged a per se violation of the Sherman Act.**

The FACCAC adequately pleads an agreement between horizontal competitors, facilitated by RealPage, to fix prices and depress supply of multi-family residential leases. The FACCAC alleges that RealPage, as the hub of the conspiracy, relayed information to members of the

conspiracy so that all Defendants knew that they could increase prices, decrease occupancy, and avoid a race to the bottom (*i.e.,* avoid competition on price). FACCAC ¶¶ 97-98, 120-140; *see also id.* ¶¶ 222-31 (alleging direct inter-Lessor Defendant communications). The FACCAC also alleges that, absent an agreement with their competitors, Defendants would have been acting against their rational self-interest (and basic supply and demand forces) in increasing rental rates in the face of declining occupancy. FACCAC ¶¶ 18, 132. That is all that controlling precedent requires. *See Interstate Cir. v. United States*, 306 U.S. 208 (1939); *Toys "R" Us, Inc. v. F.T.C.*, 221 F.3d 928, 935 (7th Cir. 2000); *United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015).

### C. Even if the Court finds no per se violation, Plaintiffs have stated a claim under the rule of reason.

The FACCAC alleges a relevant product market (which Defendants do not contest) and relevant geographic markets within the United States. FACCAC ¶¶ 239-493. The FACCAC also demonstrates that lessors and property managers who use revenue management software (which is dominated by RealPage RMS usage) have market power within each submarket. *E.g.,* FACCAC ¶ 251. Finally, the FACCAC plausibly alleges anticompetitive effects through increased pricing and decreased competition.

## II. Response to LRO Users' Motion to Dismiss

Plaintiffs oppose LRO Defendants' Motion to Dismiss for Failure to State a Claim. LRO Defendants mischaracterize Plaintiffs' pleadings to improperly claim that Plaintiffs have "plead themselves out of court." (Dkt. No. 324, at 6). Contrary to Defendants' characterization, Plaintiffs have *never* "admitted LRO's algorithm uses only public information and thus is not anticompetitive." (*Id.*). Rather, the portions of the specific superseded pleadings LRO Defendants cite to address only the ***original design*** of LRO before RealPage acquired it, and the intent behind that design. Those allegations do not contradict Plaintiffs' copious allegations, which Defendants

simply ignore, that RealPage changed the algorithm behind LRO after acquiring the software to harmonize it with RealPage's pre-existing anticompetitive offerings. Even if there were a disconnect—and there is not—LRO Defendants ignore that "amended pleadings supersede original pleadings . . . ." *Braden v. United States*, 817 F.3d 926, 930 (6th Cir. 2016). Thus, any alleged "admission" is an evidentiary issue that has no bearing at the motion to dismiss stage. *See UHLIG v. CoreLogic, Inc., et al.*, 2023 WL 4234612 *11 (D. Kansas 2023) (denying a party's request that the court treat certain factual allegations from abandoned pleadings as admissions, concluding that doing so "poses an evidentiary issue – not an issue the court can decide on a motion to dismiss."); *see also Davis v. Echo Valley Condo. Ass'n*, 349 F. Supp. 3d 645, 653 (E.D. Mich. 2018), *aff'd*, 945 F.3d 483 (6th Cir. 2019) (holding that while "pleadings withdrawn or superseded by amended pleadings are [might be] admissions against the pleader in the action in which they were filed . . . those "admissions" are evidentiary admissions, not judicial admissions.").

**III.     Response to Agency Liability Motion to Dismiss**

Plaintiffs oppose Defendants' motion to dismiss for failure to plead agency liability. Plaintiffs have plausibly stated claims against the Property Management Defendants, and did not engage in impermissible group pleading. Defendants do not dispute that there is an agency relationship between the property managers and the building owners. Agents may be liable in an antitrust conspiracy if they had knowledge of the unlawful objective to restrain trade, intended to restrain, and contributed materially to the restraint. *Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 350 (7th Cir. 2022); *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1170 (D. Idaho 2011); *see also In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2017 WL 768965, at *7 (E.D. Mich. May 5, 2017). The FACCAC alleges all of these elements, including that the property managers used RealPage's revenue management software in connection with their management of the multifamily rental properties, that they agreed

to and worked together materially with their co-conspirators to adopt (and enforce) RealPage recommendations, and did so "with the explicit and common goal of increasing rents for all members of the cartel." *See, e.g.*, FACCAC ¶¶ 4-5, 7, 9, 11, 22, 48, 51, 63, 75, 90, 171-74, 180. Moreover, the FACCAC alleges that the property managers affirmatively joined in the cartel directly themselves (beyond just serving as agents to the building owners), including by providing non-public proprietary leasing information to RealPage. *See, e.g.*, *id.* ¶¶ 5, 7. Because Plaintiffs sufficiently allege "specific misconduct attributable to" the Property Management Defendants, their motion to dismiss should be denied. *Prodanova v. H.C. Wainwright & Co., LLC*, No. LA CV17-07926-JAK (ASx), 2018 8017791, at *10 (C.D. Cal. Dec. 11, 2018).

## IV. Response to Motions to Dismiss for Lack of Personal Jurisdiction

Various Defendants argue that this Court lacks personal jurisdiction over them for various reasons, including that the transferor court lacked personal jurisdiction in the first instance. *See* Dkt. Nos. 327-1, 329-1, 343-1. Plaintiffs will oppose in a single opposition brief, limited to 15 pages total,[2] and will show, *inter alia*, that this Court has personal jurisdiction under controlling Sixth Circuit law, which holds that "when a statute allows for nationwide service of process it confers personal jurisdiction in any federal district court over any defendant with minimum contacts to the United States." *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993); *see also Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*, 244 F. Supp. 3d 705, 710 (M.D. Tenn. 2017) (nationwide jurisdiction and service under 15 U.S.C. § 22) (Crenshaw, J.).

---

[2] The Court had granted Plaintiffs' 12 pages to oppose each specific personal jurisdiction brief. *See* Dkt. No. 298. The Plaintiffs' responses will otherwise conform to the page limits set out in the Court's prior order. *Id.*

## V. Response to Motion to Dismiss by Thoma Bravo Defendants

Thoma Bravo moves to dismiss, arguing that Plaintiffs have alleged Thoma Bravo has an "ownership interest" in RealPage, but "nothing materially more." Dkt. 336, at 2-3. Plaintiffs will oppose and demonstrate that the FACCAC contains allegations that Thoma Bravo "independently participated in the enterprise by playing a role in steering the organization, funding acquisitions, and maintaining and expanding [RealPage]'s market share." *Jones v. Varsity Brands, LLC*, 618 F. Supp. 3d 713, 725 (W.D. Tenn. 2022); *see* FACCAC ¶¶ 42-44.

## VI. Response to Motion to Enforce Class Action Waiver as to named plaintiff Brandon Watters

Defendants argue that this court should strike Brandon Watters' and Jeffrey Weaver's class allegations on the basis of class action waivers contained in leases they signed with Defendants. (*See* Dkt. Nos. 338). Plaintiffs oppose and will demonstrate that Defendants' motion to strike class allegations is premature because a 12(f) motion is an "improper vehicle" for litigating fact-intensive issues related to class certification. *Lammert v. Auto-Owners (Mut.) Ins. Co.*, 415 F. Supp. 3d 807, 812 (M.D. Tenn. 2019); *see also Morris v. City of Charlottesville*, No. CIV. A. 300CV00029, 2001 WL 743771, at *7 (W.D. Va. July 3, 2001). Additionally, even if the Court were to entertain Defendants' argument to strike class allegations at this stage of the litigation, Plaintiffs will show that the waiver clauses in Mr. Watters' and Mr. Weaver's leases should not be enforced because both clauses are void as against public policy and, further, Mr. Weaver's lease was a contract of adhesion.

## VII. Response to Motion to Stay Discovery Pending Decision on the Motion to Dismiss

Plaintiffs oppose Defendants' motion to stay discovery. The Local Rules of this District specifically set forth that "[d]iscovery is not stayed, including during the pendency of dispositive motions, unless specifically authorized by Fed. R. Civ. P. 26(d) or by order of the Court, or with

regard to e-discovery, as outlined in Administrative Order 174-1." LR 16.01(g). Accordingly, "unless the motion raises an issue such as immunity from suit, which would be substantially vitiated absent a stay, or unless it is patent that the case lacks merit and will almost certainly be dismissed, a stay should not ordinarily be granted to a party who has filed a garden-variety Rule 12(b)(6) motion." *United States ex rel. Cutler v. Cigna Corp.*, No. 3:21-CV-00748, 2023 WL 2552340, at *2 (M.D. Tenn. Mar. 3, 2023) (internal citation omitted). Moreover, the Defendants' reliance on *In re Travel Agent Commission Antitrust Litig.,* 583 F.3d 896, 908-09 (6th Circ. 2009), does not support a stay of discovery. The court in *Acad. of Allergy & Asthma in Primary Care v. Amerigroup Tennessee, Inc.* recently explained that:

> [defendants] are incorrect in stating that *Travel Agent* requires district courts to stay discovery in antitrust cases while dismissal motions are pending. In that case, the Sixth Circuit did not speak to a stay of discovery, but instead analyzed whether an antitrust claim should be dismissed. *See id.* More specifically, that court held that if a district court finds that a plaintiff's complaint is insufficient, then the parties may not be forced to "engage in protracted litigation and bear excessive discovery costs." *Id.* at 908-909 (quoting *Twombly*, 550 U.S. at 558-59). Here, this Court finds applicable the general rule that "the mere filing of a dispositive motion," such as a motion to dismiss, "is insufficient to support a stay of discovery." *Baker*, 2015 WL 6964702, at *1. Therefore, a stay of discovery is not warranted.

*Acad. of Allergy & Asthma in Primary Care v. Amerigroup Tennessee, Inc.*, No. 3:19-CV-00180, 2020 WL 8254263, at *2-3 (E.D. Tenn. Aug. 12, 2020).

Dated: July 11, 2023        */s/ Tricia R. Herzfeld*
Tricia R. Herzfeld (#26014)
Anthony A. Orlandi (#33988)
**HERZFELD SUETHOLZ GASTEL LENISKI AND WALL, PLLC**
223 Rosa L. Parks Avenue, Suite 300
Nashville, TN 37203
Telephone: (615) 800-6225
tricia@hsglawgroup.com
tony@hsglawgroup.com

*Liaison Counsel*

Patrick J. Coughlin
Carmen A. Medici
Fatima Brizuela
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 798-5325
Facsimile: (619) 233-0508
pcoughlin@scott-scott.com
cmedici@scott-scott.com
fbrizuela@scott-scott.com

Patrick McGahan
Michael Srodoski
G. Dustin Foster
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06145
Telephone: (860) 537-5537
Facsimile: (860) 537-4432
pmcgahan@scott-scott.com
msrodoski@scott-scott.com
gfoster@scott-scott.com

Stacey Slaughter
Thomas J. Undlin
Geoffrey H. Kozen
Stephanie Chen (*pro hac* pending)
J. Austin Hurt
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
sslaughter@robinskaplan.com
tundlin@robinskaplan.com
gkozen@robinskaplan.com
schen@robinskaplan.com
ahurt@robinskaplan.com

Swathi Bojedla

Mandy Boltax
**HAUSFELD LLP**
888 16th Street, N.W., Suite 300
Washington, DC 20006
Telephone: (202) 540-7200
sbojedla@hausfeld.com
mboltax@hausfeld.com

Gary I. Smith, Jr.
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
gsmith@hausfeld.com

Katie R. Beran
**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Telephone: 1 215 985 3270
kberan@hausfeld.com

*Interim Co-Lead Counsel*

Eric L. Cramer
Michaela L. Wallin
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
ecramer@bm.net
mwallin@bm.net

Daniel J. Walker
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20006
Telephone: (202) 559-9745
dwalker@bm.net

Brendan P. Glackin
Dean M. Harvey
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, Suite 2900
San Francisco, CA 94111
Telephone: 415-956-1000
bglackin@lchb.com
dharvey@lchb.com

Steve W. Berman
Breanna Van Engelen
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Benjamin J. Widlanski
Javier A. Lopez
**KOZYAK TROPIN & THROCKMORTON LLP**
2525 Ponce de Leon Blvd., 9th Floor

Christian P. Levis
Vincent Briganti
Peter Demato
Radhika Gupta
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
pdemato@lowey.com
rgupta@lowey.com

Christopher M. Burke
Walter W. Noss
Yifan (Kate) Lv
**KOREIN TILLERY P.C.**
707 Broadway, Suite 1410
San Diego, CA 92101
Telephone: (619) 625-5621
Facsimile (314) 241-3525
cburke@koreintillery.com
wnoss@koreintillery.com
klv@koreintillery.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri
Steven N. Williams
Cadio Zirpoli
Kevin E. Rayhill
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
czirpoli@saverilawfirm.com
krayhill@saverilawfirm.com

Jennifer W. Sprengel
Daniel O. Herrera
Alexander Sweatman
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**

Coral Gables, Florida 33134
Telephone: (305) 372-1800
bwidlanski@kttlaw.com
jal@kttlaw.com

135 S. LaSalle, Suite 3210
Chicago, IL 60603
Telephone: 312-782-4880
Facsimile: 312-782-4485
jsprengel@caffertyclobes.com
dherrera@caffertyclobes.com
asweatman@caffertyclobes.com

*Plaintiffs' Steering Committee Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

/s/ *Tricia R. Herzfeld*
Tricia R. Herzfeld