# EXHIBIT 1

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Richard Gibson and Heriberto Valiente, | Case No. 2:23-cv-00140-MMD-DJA |
| Plaintiffs, | |
| v. | Order |
| MGM Resorts International; Cendyn Group, LLC; The Rainmaker Group Unlimited, Inc.; Caesars Entertainment, Inc.; Treasure Island, LLC; Wynn Resorts Holdings, LLC; | |
| Defendants. | |

This is an antitrust case arising out of Plaintiffs Richard Gibson and Heriberto Valiente's claim that certain Las Vegas hotels used a common third-party algorithm to artificially inflate hotel prices. Plaintiffs bring their claims on their own behalf and that of other persons who rented hotel rooms in Las Vegas. Plaintiffs sue Defendants MGM Resorts International; Caesars Entertainment, Inc.; Treasure Island, LLC; Wynn Resorts Holdings, LLC; Cendyn Group, LLC; and The Rainmaker Group Unlimited for damages, alleging one cause of action for violation of Section 1 of the Sherman Act for agreement in restraint of trade.

Plaintiffs move to appoint interim class counsel. (ECF No. 93). Cendyn, Rainmaker, Caesars, Treasure Island, Wynn, and Plaintiffs filed a joint proposed discovery plan. (ECF No. 111). Cendyn, Rainmaker, Caesars, Treasure Island, and Wynn jointly move to stay discovery. (ECF No. 114). MGM separately moves to stay discovery. (ECF No. 116).

Because the Court finds that appointment of interim class counsel is unnecessary at this stage, it denies Plaintiffs' motion to appoint interim class counsel without prejudice. Because the Court finds that Defendants have demonstrated good cause to stay discovery, but that Defendants should provide certain preliminary discovery, it grants Cendyn, Rainmaker, Caesars, Treasure Island, and Wynn's motion to stay discovery and grants in part and denies in part MGM's motion

to stay discovery. Because the Court has stayed discovery and finds that the parties' plan contains certain deficiencies, it denies the joint discovery plan without prejudice.

**I.     Discussion.**

　　**A.     *Plaintiffs' motion to appoint interim class counsel.***

Plaintiffs move to appoint the law firms of Hagens Berman Sobol Shapiro, LLP and Panish Shea Boyle Ravipudi, LLP—Plaintiffs' current counsel—as interim class counsel for the proposed class of hotel room purchasers. (ECF No. 93). Treasure Island opposes the motion, arguing that appointing class counsel is unnecessary here because the case has not been consolidated with other putative class actions, there are not multiple firms vying to be class counsel, and there are not a number of overlapping or duplicative suits pending in other courts. (ECF No. 97). Plaintiffs reply that Treasure Island has not voiced its opposition to their counsel being appointed as interim lead counsel, but only argued that the appointment would be premature because there are no competing cases or attorneys. (ECF No. 98). Plaintiffs assert that, despite Treasure Island's arguments, appointing counsel is appropriate here to ensure the active management of this case.

"The court may designate interim class counsel to act on behalf of a putative class before determining whether to certify the action as a class action" when it is "necessary to protect the interests" of class members. Fed. R. Civ. P. 23(g)(3); Manual for Complex Litigation (Fourth) § 21.11 (2004); Fed. R. Civ. P. 23(g) advisory committee's note to 2003 amendment. "Even without this designation, however, 'an attorney who acts on behalf of the class before certification must act in the best interests of the class as a whole.'" *Kroshus v. United States*, No. 3:08-cv-00246-LDG-RAM, 2009 WL 10711152, at *1 (D. Nev. Mar. 16, 2009) (quoting Fed. R. Civ. P. 23(g) advisory committee's note to 2003 amendment). Interim counsel may be necessary when an attorney must "take action to prepare for the certification decision." *Id.* The Committee Notes suggest three scenarios when such pre-certification work is necessary: (1) certification-related discovery; (2) the need to make or respond to motions before certification; and (3) settlement discussions. *Id.* The Rules further note that these tasks are typically handled by the lawyer who filed the action. *Id.* The exception is when "rivalry or uncertainty ... makes formal designation of

1  interim counsel appropriate." *Id.* (quoting Fed. R. Civ. P. 23(g) advisory committee's note to
2  2003 amendment).
3  　　　　　The Manual for Complex Litigation observes that, "[i]f the lawyer who filed the suit is
4  likely to be the only lawyer seeking appointment as class counsel, appointing interim class
5  counsel may be unnecessary." Manual for Complex Litigation (Fourth) § 21.11 (2004). "If,
6  however, there are a number of overlapping, duplicative, or competing suits pending in other
7  courts, and some or all of those suits may be consolidated, a number of lawyers may compete for
8  class counsel appointment. In such cases, designation of interim counsel clarifies responsibility
9  for protecting the interests of the class during precertification activities…" *Id.*  This typically
10 occurs in cases where "a large number of putative class actions have been consolidated or
11 otherwise are pending in a single court." *Smallman v. MGM Resorts International*, No. 2:20-cv-
12 00376-GMN-NJK, 2021 WL 326135, at * (D. Nev Feb. 1 2021) (quoting *In re Nest Labs*
13 *Litigation*, No. 14-cv-01363-BLF, 2014 WL 12878556, at *1 (C.D. Cal. Aug. 18, 2014)).
14 Further, when there is competition between law firms to represent the class, designation of
15 interim class counsel is appropriate. *Id.* (citing *Parish v. Nat'l Football League Players, Inc.*, No.
16 C 07-00943 WHA, 2007 WL 1624601, at *9 (N.D. Cal. June 4, 2007) (declining to designate
17 interim class counsel without a "gaggle of law firms jockeying to be appointed")).
18 　　　　　The Court does not find appointing interim class counsel to be appropriate at this juncture
19 because it is not necessary to protect the interests of the putative class. There are no competing
20 lawsuits or firms which create the need for the Court to clarify the responsibility for protecting
21 the interests of the class. That responsibility already lies with Plaintiffs' counsel even absent
22 appointment as interim class counsel. The Court thus denies the motion without prejudice.
23 Because the Court does not find appointing class counsel necessary to protect the interests of the
24 putative class, the Court does not reach the question of whether Plaintiffs' counsel meets the
25 factors outlined under Federal Rule of Civil Procedure 23(g)(1).
26 　　　　　**B.　　Defendants' motions to stay discovery.**
27 　　　　　Defendants Cendyn, Rainmaker, Caesars, Treasure Island, and Wynn move to stay
28 discovery pending the outcome of their motion to dismiss. (ECF No. 114). MGM joins Cendyn,

| | |
|---|---|
| 1 | Rainmaker, Caesars, Treasure Island, and Wynn's motion (ECF No. 115) and also separately |
| 2 | moves to stay discovery pending its motion to dismiss (ECF No. 116). Cendyn, Rainmaker, |
| 3 | Caesars, Treasure Island, and Wynn assert that they are willing to provide certain targeted |
| 4 | discovery while the motions to dismiss are pending. But they point out that the Ninth Circuit and |
| 5 | Supreme Court have noted in dicta that the expense of discovery in antitrust cases warrants |
| 6 | postponing discovery until a court determines the legal sufficiency of a complaint. MGM makes |
| 7 | this point as well and adds that, under the preliminary peek standard staying discovery is |
| 8 | particularly appropriate for it because Plaintiff's complaint does not allege that MGM was |
| 9 | engaged in the price fixing scheme. MGM, however, asserts that it is not willing to engage in any |
| 10 | discovery pending the result of its motion to dismiss. |
| 11 | Plaintiffs respond to both motions by referencing the high bar to staying discovery and |
| 12 | emphasizing the merits of their complaint. (ECF Nos. 119, 120). Plaintiffs add that they are |
| 13 | cognizant of the expense of discovery and will work together with Defendants to tailor discovery |
| 14 | to that which is necessary pending the outcome of the dispositive motions. Specific to MGM, |
| 15 | Plaintiffs point out that if MGM does not engage in even limited discovery while the other |
| 16 | Defendants do, Plaintiffs and MGM will be forced to catch up quickly in the event Plaintiffs' |
| 17 | claim against MGM survives. |
| 18 | Cendyn, Rainmaker, Caesars, Treasure Island, and Wynn reply that Plaintiffs only |
| 19 | responded to their arguments regarding the merits of their defense, but conceded the other |
| 20 | considerations for staying discovery: whether the motion to dismiss is potentially dispositive and |
| 21 | whether the Court can decide it without further discovery. (ECF No. 125). Regarding Plaintiffs' |
| 22 | arguments that they would tailor discovery pending the outcome of the motion to dismiss, |
| 23 | Cendyn, Rainmaker, Caesars, Treasure Island, and Wynn argue that the discovery Plaintiffs have |
| 24 | already propounded is far more burdensome than what Plaintiffs describe. MGM makes a similar |
| 25 | argument in its reply, pointing out that Plaintiffs' initial discovery requests seek information |
| 26 | going back ten years and unrelated to the algorithm products at issue here. (ECF No. 126). |
| 27 | The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of |
| 28 | discovery because a potentially dispositive motion is pending. *Skellerup Indus. Ltd. v. City of* |

1   *L.A.*, 163 F.R.D. 598, 600–01 (C.D. Cal. 1995).  A court may, however, stay discovery under Fed.
2   R. Civ. P. 26(c).  The standard for staying discovery under Rule 26(c) is good cause.
3   The Ninth Circuit has not provided a rule or test that district courts must apply to determine if
4   good cause exists to stay discovery.  But it has identified one scenario in which a district court
5   may stay discovery and one scenario in which a district court may not stay discovery.  The Ninth
6   Circuit has held that a district court may stay discovery when it is convinced that the plaintiff will
7   be unable to state a claim upon which relief can be granted.  *See Wood v. McEwen*, 644 F.2d 797,
8   801 (9th Cir. 1981).  The Ninth Circuit also has held that a district court may not stay discovery
9   when discovery is needed to litigate the dispositive motion.  *Alaska Cargo Transp., Inc. v. Alaska*
10  *R.R. Corp.*, 5 F.3d 378, 383 (9th Cir. 1993).

11          Based on this Ninth Circuit law, district courts in the District of Nevada typically apply
12  the preliminary peek test to determine when discovery may be stayed.  *See, e.g.*, *Kor Media*
13  *Group, LLC v. Green*, 294 F.R.D. 579 (D. Nev. 2013).  The point of the preliminary peek test is
14  to "evaluate the propriety of an order staying or limiting discovery with the goal of accomplishing
15  the objectives of [Federal] Rule [of Civil Procedure] 1." *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D.
16  597, 603 (D. Nev. 2011).  This Court, however, agrees with the Honorable Magistrate Judge
17  Brenda Weksler's reasoning in *Schrader v. Wynn Las Vegas, LLC* that the preliminary peek test
18  can sometimes be problematic because it can be inaccurate and inefficient.  *See Schrader v. Wynn*
19  *Las Vegas, LLC*, No. 2:19-cv-02159-JCM-BNW, 2021 WL 4810324, at *3-4 (D. Nev. Oct. 14,
20  2021).  This Court believes that Judge Weksler articulated a better analytical framework for
21  determining when motions to stay should be granted and has employed that framework in
22  deciding motions and stipulations to stay.[1]  *See Wong v. Night Swim Lane Trust*, No. 2:22-cv-
23  01985-APG-DJA at ECF No. 15 (D. Nev. March 27, 2023); *see Ornelas et al. v. Amazon.com,*
24  *Inc. et al.*, No. 2:22-cv-00304-JCM-DJA at ECF No. 32 (D. Nev. March 6, 2023).

---

[1] The Court recognizes that it has recently adopted this analytical framework, meaning that its decisions may not have appeared on search engines like Westlaw and Lexis.

As a result, the test this Court applies considers (1) whether the dispositive motion can be decided without further discovery, and (2) whether good cause exists to stay discovery. *See id.* Good cause may be established using the preliminary peek test, but it may also be established by other factors not related to the merits of the dispositive motion. For example, in many cases, the movant seeks a stay of discovery to prevent "undue burden or expense." *See* Fed. R. Civ. P. 26(c)(1). Accordingly, the movant must establish what undue burden or expense will result from discovery proceeding when a dispositive motion is pending. Ultimately, guided by Fed. R. Civ. P. 1, the Court is trying to determine "whether it is more just to speed the parties along in discovery and other proceedings while a dispositive motion is pending, or whether it is more just to delay or limit discovery and other proceedings to accomplish the inexpensive determination of the case." *Tradebay*, 278 F.R.D. at 603. "The burden is upon the party seeking the order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004).

Given the Supreme Court's discussion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and the Ninth Circuit's discussion in *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729 (9th Cir. 1987), district courts pay particular mind to the burden of discovery when considering motions to stay in antitrust cases. *See Top Rank, Inc. v. Haymon*, No. CV-154961-JFW-MRW-X, 2015 WL 9952887, at *2 (C.D. Cal. Sept. 17, 2015). In *Twombly*, the Supreme Court observed that "proceeding to antitrust discovery can be expensive" and thus, "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Twombly*, 550 U.S. at 558. The Ninth Circuit expressed similar concerns in *Rutman*, pointing out that "[t]he purpose of F.R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery. In antitrust cases, this procedure especially makes sense because the costs of discovery in such actions are prohibitive." *Rutman*, 829 F.2d at 738. Applying these decisions to the motion-to-stay context, California district courts have noted that,

> to allow antitrust discovery prior to sustaining a complaint would defeat one of the rationales of *Twombly*, at least when the discovery

Page 6 of 10

would be burdensome.  When, however, the discovery would not be
so burdensome, a closer question is presented, a question calling for
the exercise of discretion and the balancing of competing factors.

*Top Rank*, 2015 WL 9952887, at *2 (citing *In re Graphics Processing Units Antitrust Litig.*, No. C-06-07417-WHA, 2007 WL 2127577, at *4 (N.D. Cal. July 24, 2007)).

Here, applying the good cause analysis and considering the burden of discovery, the Court finds that a discovery stay is appropriate.  While the Federal Rules do not provide for automatic or blanket stays of discovery, the Court finds that Defendants have demonstrated the good cause required under Rule 26(c) and under the *Schrader* analysis.  First, the dispositive motions—because they are on the pleadings—can be decided without further discovery.  Second, Defendants have established good cause by pointing to the burden and expense of discovery.  This factor is particularly poignant given the Supreme Court and Ninth Circuit's discussions cautioning district courts to remain cognizant of the burdens that anti-trust discovery can cause.  And, while not binding on this Court, it is persuasive that California district courts have considered the burdens of discovery carefully when deciding motions to stay in anti-trust cases.

In this case, while Plaintiffs and Defendants have different perceptions of the extent of the preliminary discovery Plaintiffs have propounded, the Court finds that Defendants have persuasively argued that the discovery would be burdensome.  Defendants have pointed out that even the tailored discovery Plaintiffs suggest would be extremely expensive to gather, requiring them to go back many years in their systems and to compile large swaths of data.  While the Court appreciates Plaintiffs' willingness to limit discovery pending the outcome of the motions to dismiss, even limited discovery would be expansive given the broad underlying allegations involving multiple, complex organizations.

It is also unclear what prejudice Plaintiffs would face by the discovery stay.  This is particularly true because Cendyn, Rainmaker, Caesars, Treasure Island, and Wynn have agreed to respond to two of Plaintiffs' interrogatories, provide organizational charts in response to a request for production, and negotiate an ESI and protective order while the motion to dismiss is pending.  And the Court will require the same of MGM.  Plaintiffs have also identified no reasons—like the

ill health or age of a witness, for example—why the Court should speed the parties along in discovery.

Ultimately, the Court must determine—guided by Rule 1—whether it is more just to speed the parties along in discovery or whether it is more just to delay or limit discovery to accomplish the inexpensive determination of the case. Although it is a closer call in this instance, the Court finds it more just to limit discovery pending the outcome of the motions to dismiss. The Court will thus grant Cendyn, Rainmaker, Caesars, Treasure Island, and Wynn's motion to stay discovery and grant in part and deny in part MGM's motion to stay discovery. The Court denies MGM's motion to stay discovery regarding its request that the Court rule that MGM need not respond to any discovery. To keep Defendants on the same schedule, all Defendants including MGM must exchange initial disclosures, engage in negotiating an ESI and protective order, respond to Plaintiffs' Interrogatory Nos. 1 and 2 as directed to each respective party, and provide an organizational chart in response to Plaintiffs' Request for Production No. 1 as directed to each respective party.

### C. Joint discovery plan.

Because the Court has stayed discovery, it declines to enter either version of Cendyn, Rainmaker, Caesars, Treasure Island, Wynn, and Plaintiffs' joint proposed discovery plan. The parties shall file a renewed stipulated discovery plan after the Court rules on their motions to dismiss. The Court will also require any renewed stipulated discovery plan to comport with the considerations below:

First, in their renewed stipulation, the parties must include calendar dates for the deadlines required by Local Rule 26-1(b)(1) – (4). Those provisions require that the parties provide calendar dates for the discovery cutoff deadline, the deadline to amend pleadings and add parties, expert disclosures, and dispositive motions. The instant joint discovery plan tethers deadlines to an uncertain date, meaning many deadlines lack calendar dates.

Second, in their renewed stipulation, the parties should refrain from including briefing schedules. The instant joint discovery plan seeks to set longer briefing schedules for Plaintiffs' class certification motion and Defendants' *Daubert* motion than the timelines provided in Local

1   Rule 7-2(b).  *See* LR 7-2(b) (providing a fourteen-day deadline for responses to motions and a
2   seven-day deadline for replies).  But by seeking longer briefing schedules through the discovery
3   plan—rather than through a motion—the joint discovery plan asks the Court to decide whether an
4   extension is proper before the issue is ripe.  This is particularly true because the joint discovery
5   plan does not explain the reasons for the extensions requested as required by Local Rule IA 6-1.
6   *See* LR IA 6-1 ("[a] motion or stipulation to extend time must state the reasons for the extension
7   requested…").  Nor does it reference Fed. R. Civ. P. 6(b), which governs extensions of time.  *See*
8   Fed. R. Civ. P. 6(b).  Additionally, class certification motions are motions which a magistrate
9   judge may not finally determine under 28 U.S.C. § 636(b)(1)(A).  And motions related to the
10  admissibility of an expert witness' opinion at trial—including *Daubert* issues—are typically
11  determined by the district judge presiding over the trial.  This means that unless the assigned
12  district judge refers the motions to the undersigned magistrate judge under 28 U.S.C.
13  § 636(b)(1)(B) and Local Rule IB 1-4, the decision whether to extend the briefing schedule for
14  these motions is more properly decided by the district judge.

   Third, in their renewed stipulation, the parties should refrain from including deadlines governing issues like discovery exchanges and negotiations.  The instant joint discovery plan's proposals ask the Court to set granular deadlines governing the parties' discovery and negotiations, which issues parties typically determine between themselves without Court involvement.  The Court is not inclined to set deadlines like these, unrelated to those outlined in Local Rule 26-1, without very good reason because discovery is supposed to proceed with minimal involvement of the Court.  *V5 Technologies v. Switch, Ltd.*, 334 F.R.D. 297, 306 (D. Nev. 2019).  And while the parties differ at this stage regarding how discovery should proceed, they have demonstrated the ability to come to reasonable agreements on other issues.  The Court is thus confident that the parties can determine a schedule for their discovery responses and negotiations amongst themselves.  In the event the parties reach an impasse on these issues, they may file the appropriate motion

1    **IT IS THEREFORE ORDERED** that Plaintiffs' motion for appointment of interim class
2    counsel (ECF No. 93) is **denied without prejudice.**

3    **IT IS FURTHER ORDERED** that the joint proposed discovery plan (ECF No. 111) is
4    **denied without prejudice.**

5    **IT IS FURTHER ORDERED** that Cendyn, Rainmaker, Caesars, Treasure Island, and
6    Wynn's motion to stay discovery (ECF No. 114) is **granted.** Cendyn, Rainmaker, Caesars,
7    Treasure Island, and Wynn shall nonetheless exchange initial disclosures, negotiate an ESI and
8    protective order, respond to Plaintiffs' Interrogatory Nos. 1 and 2 as directed to each respective
9    party, and provide an organizational chart in response to Plaintiffs' Request for Production No. 1
10   as directed to each respective party.

11   **IT IS FURTHER ORDERED** that MGM's motion to stay discovery (ECF No. 116) is
12   **granted in part and denied in part.** It is denied in part regarding MGM's request that MGM be
13   permitted to refrain from engaging in the limited discovery to which the other Defendants have
14   agreed. It is granted in part regarding MGM's request that the remainder of discovery be stayed.
15   MGM shall exchange initial disclosures, engage in negotiations regarding an ESI and protective
16   order, respond to Plaintiffs' Interrogatory Nos. 1 and 2 directed to MGM, and provide an
17   organizational chart in response to Plaintiffs' Request for Production No. 1 directed to MGM.

18   **IT IS FURTHER ORDERED** that in the event the motions to dismiss are not granted in
19   full, the parties shall file a stipulated proposed discovery plan and scheduling order no later than
20   fourteen days after a decision on the pending motions to dismiss (ECF Nos. 91 and 92) is issued
21   by the court.

DATED: July 11, 2023

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE