# EXHIBIT 3



TEXAS APARTMENT ASSOCIATION
**M E M B E R**

This Lease Contract is valid only if filled out before January 1, 2020.

# Apartment Lease Contract
**This is a binding contract. Read carefully before signing.**

Date of Lease Contract: _____
(when this Lease Contract is filled out)

## Moving In — General Information

1. **Parties.** This Lease Contract ("Lease") is between you, the resident(s) (*list all people signing the Lease*):

   _____
   _____
   _____
   _____
   _____

   and us, the owner: _____
   _____
   _____
   _____

   **(name of apartment community or title holder). You are renting Apartment No.** _____, at _____
   _____

   (street address) in _____

   (city), Texas _____ (zip code) for use as a private residence only. The terms "you" and "your" refer to all residents listed above or, in the event of a sole resident's death, to someone authorized to act for the estate. The terms "we," "us," and "our" refer to the owner listed above and not to property managers or anyone else. *Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease is the entire agreement between you and us.*

2. **Occupants.** The apartment will be occupied only by you and (*list all other occupants not signing the Lease*):

   _____
   _____
   _____

   —and no one else. Anyone not listed here cannot stay in the apartment for more than _____ days in one week without our prior written consent, and no more than twice that many days in any one month. *If the previous space isn't filled in, 2 days total per week will be the limit.*

3. **Lease Term.** The initial term of the Lease begins on the _____ day of _____ (month), _____(year), and ends at 11:59 p.m. the _____ day of _____(month), _____(year). After that, this Lease will automatically renew month-to-month unless either party gives at least _____ days' written notice of termination or intent to move out as required by Par. 36. *If the number of days isn't filled in, notice of at least 30 days is required.*

4. **Security Deposit.** The total security deposit for all residents is $_____, due on or before the date this Lease is signed. This amount [*check one*] ❏ does *or* ❏ does not include an animal deposit. Any animal deposit will be designated in an animal addendum. Security-deposit refund check and any deduction itemizations will be by [*check one*]:
   ❏ one check jointly payable to all residents and mailed to any one resident we choose, *or*
   ❏ one check payable to and mailed to _____
   _____
   (specify name of one resident).
   If neither option is checked here, the first option applies. See Par. 40 and 41 for security-deposit return information.

5. **Keys, Move-Out, and Furniture.** You'll be given _____ apartment key(s), _____ mailbox key(s), and _____ other access devices for _____ .
   *Before moving out, you must give our representative advance written move-out notice as stated in Par. 36.* The move-out date in your notice [*check one*]: ❏ must be the last day of the month, *or* ❏ may be the exact day designated in your notice. If neither option is checked here, the second option applies. Any resident, occupant, or spouse who, according to a remaining resident's affidavit, has permanently moved out or is under court order not to enter the apartment, is (at our option) no longer entitled to occupancy, keys, or other access devices, unless authorized by court order. Your apartment will be [*check one*]: ❏ furnished *or* ❏ unfurnished.

6. **Rent and Charges.** You will pay $ _____ per month for rent, in advance and without demand [*check one*]:
   ❏ at the onsite manager's office
   ❏ through our online payment site
   ❏ at _____

Prorated rent of $_____ is due for the remainder of the [*check one*]: ❏ 1st month *or* ❏ 2nd month, on the _____ day of _____ (month), _____(year).
*You must pay your rent on or before the 1st day of each month (due date). There is no grace period for the payment of rent, and you agree that not paying rent on or before the 1st of each month is a material breach of this Lease. Cash is not acceptable without our prior written permission. You cannot withhold or offset rent unless authorized by law.* We may, at our option, require at any time that you pay all rent and other sums in one single payment by any method we specify. If you don't pay all rent on or before the _____ day of the month, you'll pay the reasonable initial late charge of $_____, plus the reasonable daily late charge of $_____ per day after that date until the amount due is paid in full. You agree that these late charges are a reasonable estimate of uncertain damages to us that are incapable of precise calculation and result from late payment of rent. Daily late charges cannot exceed 15 days for any single month's rent. We won't impose late charges until at least the third day of the month. You'll also pay a charge of $_____ for each returned check or rejected electronic payment, plus initial and daily late charges, until we receive acceptable payment. If you don't pay rent on time, you'll be in default and subject to all remedies under state law and this Lease.

7. **Utilities and Services.** We'll pay for the following items, if checked: ❏ gas ❏ water ❏ wastewater ❏ electricity ❏ trash/recycling ❏ cable/satellite ❏ master antenna ❏ Internet ❏ stormwater/drainage
   ❏ other _____ .
   You'll pay for all other utilities and services, related deposits, and any charges or fees on such utilities and services during your Lease term. See Par. 12 for other related provisions regarding utilities and services.

8. **Insurance.** *Our insurance doesn't cover the loss of or damage to your personal property.* You are [*check one*]:
   ❏ required to buy and maintain renter's or liability insurance (see attached addendum), *or*
   ❏ not required to buy renter's or liability insurance.
   *If neither option is checked, insurance is not required but is still strongly recommended. Even if not required, we urge you to get your own insurance for losses due to theft, fire, water, pipe leaks, and similar occurrences.* Renter's insurance doesn't cover losses due to a flood. Information on renter's insurance is available from the Texas Department of Insurance.

9. **Special Provisions.** The following or attached special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease and will supersede any conflicting provisions of this printed Lease form.

   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

10. **Unlawful Early Move-Out And Reletting Charge.**
    **10.1 Your Responsibility.** You'll be liable for a reletting charge of $_____ (not to exceed 85% of the highest monthly rent during the Lease term) if you: (A) fail to move in, or fail to give written move-out notice as required in Par. 23 or 36; (B) move out without paying rent in full for the entire Lease term or renewal period; (C) move out at our demand because of your default; or (D) are judicially evicted. *The reletting charge is not a cancellation fee and does not release you from your obligations under this Lease. See the next section.*

SAMPLE
NOT FOR USE

Your Initials: _____    Initials of Our Representative: _____    Apartment Lease Contract ©2017, Texas Apartment Association, Inc.    Page 1 of 8

**10.2 Not a Release.** The reletting charge is neither a Lease cancellation nor a buyout fee. It is a liquidated amount covering only part of our damages—for our time, effort, and expense in finding and processing a replacement resident. These damages are uncertain and hard to ascertain—particularly those relating to inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, overhead, marketing costs, and locator-service fees. You agree that the reletting charge is a reasonable estimate of our damages and that the charge is due whether or not our reletting attempts succeed. If no amount is stipulated, you must pay our actual reletting costs as far as they can be determined. The reletting charge doesn't release you from continued liability for future or past-due rent; charges for cleaning, repairing, repainting, or dealing with unreturned keys; or other sums due.

**11. Security Devices.**

**11.1 What We Provide.** *Texas Property Code secs. 92.151, 92.153, and 92.154 require, with some exceptions, that we provide at no cost to you when occupancy begins: (A) a window latch on each window; (B) a doorviewer (peephole) on each exterior door; (C) a pin lock on each sliding door; (D) either a door-handle latch or a security bar on each sliding door; (E) a keyless bolting device (deadbolt) on each exterior door; and (F) either a keyed doorknob lock or a keyed deadbolt lock on one entry door. Keyed locks will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or within 7 days after you move in, as required by law. If we fail to install or rekey security devices as required by law, you have the right to do so and deduct the reasonable cost from your next rent payment under Texas Property Code sec. 92.165(1). We may deactivate or not install keyless bolting devices on your doors if (A) you or an occupant in the dwelling is over 55 or disabled, and (B) the requirements of Texas Property Code sec. 92.153(e) or (f) are satisfied.*

**11.2 Who Pays What.** We'll pay for missing security devices that are required by law. *You'll pay for: (A) rekeying that you request (unless we failed to rekey after the previous resident moved out); and (B) repairs or replacements because of misuse or damage by you or your family, your occupants, or your guests.* You must pay immediately after the work is done unless state law authorizes advance payment. You must also pay in advance for any additional or changed security devices you request.

**12. Other Utilities and Services.** Television channels that are provided may be changed during the Lease term if the change applies to all residents. You may use utilities only for normal household purposes and must not waste them. If your electricity is interrupted, you must use only battery-operated lighting (no flames). You must not allow any utilities (other than cable or Internet) to be cut off or switched for any reason—including disconnection for not paying your bills—until the Lease term or renewal period ends. If a utility is submetered or prorated by an allocation formula, we'll attach an addendum to this Lease in compliance with state-agency rules. If a utility is individually metered, it must be connected in your name and you must notify the provider of your move-out date so the meter can be timely read. If you delay getting it turned on in your name by the Lease's start date or cause it to be transferred back into our name before you surrender or abandon the apartment, you'll be liable for a $_____ charge (not to exceed $50 per billing period), plus the actual or estimated cost of the utilities used while the utility should have been billed to you. If you're in an area open to competition and your apartment is individually metered, you may choose or change your retail electric provider at any time. If you qualify, your provider will be the same as ours, unless you choose a different provider. If you do choose or change your provider, you must give us written notice. You must pay all applicable provider fees, including any fees to change service back into our name after you move out.

**13. Damages and Reimbursement.**

**13.1 Damage in the Apartment Community.** You must promptly pay or reimburse us for loss, damage, consequential damages, government fines or charges, or cost of repairs or service in the apartment community because of a Lease or rules violation; improper use; negligence; other conduct by you, your invitees, your occupants, or your guests; or any other cause not due to our negligence or fault as allowed by law, except for damages by acts of God to the extent they couldn't be mitigated by your action or inaction.

**13.2 Indemnification by You.** *You'll defend, indemnify and hold us harmless from all liability arising from your conduct or that of your invitees, your occupants, your guests, or our representatives who at your request perform services not contemplated in this Lease.*

**13.3 Damage and Wastewater Stoppage.** *Unless damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacements, and damage of the following kind if occurring during the Lease term or renewal period: (A) damage to doors, windows, or screens; (B) damage from windows or doors left open; and (C) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment.*

**13.4 No Waiver.** We may require payment at any time, including advance payment to repair damage that you are liable for. Delay in demanding sums you owe is not a waiver.

**14. Contractual Lien and Property Left in Apartment.**

**14.1 Lien Against Your Property for Rent.** *All property in the apartment (unless exempt under Texas Property Code sec. 54.042) is subject to a contractual lien to secure payment of delinquent rent (except as prohibited by Texas Government Code sec. 2306.6738, for owners supported by housing-tax-credit allocations).* For this purpose, "apartment" excludes common areas but includes the interior living areas and exterior patios, balconies, attached garages, and any storerooms for your exclusive use.

**14.2 Removal After We Exercise Lien for Rent.** *If your rent is delinquent, our representative may peacefully enter the apartment, and remove and/or store all property subject to lien.* All property in the apartment is presumed to be yours unless proved otherwise. After the property is removed, a written notice of entry must be left in a conspicuous place in the apartment—including a list of items removed, the amount of delinquent rent due, and the name, address, and phone number of the person to contact. The notice must also state that the property will be promptly returned when the delinquent rent is fully paid.

**14.3 Removal After Surrender, Abandonment, or Eviction.** We, or law officers, may remove or store all property remaining in the apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) if you're judicially evicted or if you surrender or abandon the apartment (see definitions in Par. 41).

**14.4 Storage.**
(A) *No duty.* We'll store property removed under a contractual lien. We may—but we have no duty to—store property removed after judicial eviction, surrender, or abandonment of the apartment.
(B) *No liability.* We're not liable for casualty, loss, damage, or theft, except for property removed under a contractual lien.
(C) *Charges you pay.* You must pay reasonable charges for our packing, removing, storing, and selling of any property.
(D) *Our lien.* We have a lien on all property removed and stored after surrender, abandonment, or judicial eviction for all sums you owe, with one exception: our lien on property listed under Texas Property Code sec. 54.042 is limited to charges for packing, removing, and storing.

**14.5 Redemption.**
(A) *Property on which we have a lien.* If we've seized and stored property under a contractual lien for rent as authorized by law, you may redeem the property by paying all delinquent rent due at the time of seizure. But if notice of sale (see Par. 14.6(C)) is given before you seek redemption, you may redeem only by paying the delinquent rent plus our reasonable charges for packing, removing, and storing.
(B) *Property removed after surrender, abandonment, or judicial eviction.* If we've removed and stored property after surrender, abandonment, or judicial eviction, you may redeem only by paying all sums you owe, including rent, late charges, reletting charges, storage charges, damages, etc.
(C) *Place and payment for return.* We may return redeemed property at the place of storage, the management office, or the apartment (at our option). We may require payment by cash, money order, or certified check.

**14.6 Disposition or Sale.**
(A) *Our options.* Except for animals, we may throw away or give to a charitable organization all personal property that is:
(1) left in the apartment after surrender, abandonment or death of a sole resident, or

(2) left outside more than 1 hour after writ of posses-sion is executed, following judicial eviction.

**(B)** *Animals.* An animal removed after surrender, abandonment, or eviction may be kenneled or turned over to a local authority, humane society, or rescue organization.

**(C)** *Sale of property.* Property not thrown away or given to charity may be disposed of only by sale, which must be held no sooner than 30 days after written notice of the date, time, and place of sale is sent by both regular mail and certified mail (return receipt requested) to your last known address. The notice must itemize the amounts you owe and provide the name, address, and phone number of the person to contact about the sale, the amount owed, and your right to redeem the property. The sale may be public or private; is subject to any third-party ownership or lien claims; must be to the highest cash bidder; and may be in bulk, in batches, or item-by-item. If the proceeds from the sale are more than you owe, the excess amount must be mailed to you at your last known address within 30 days after sale.

**15. Failing to Pay First Month's Rent.** If you don't pay the first month's rent when or before the Lease begins, all future rent for the Lease term will be automatically accelerated without notice and become immediately due. We also may end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges. Our rights, remedies and duties under Par. 10 and 32 apply to acceleration under this paragraph.

**16. Rent Increases and Lease Changes.** No rent increases or Lease changes are allowed before the initial Lease term ends, except for those allowed by special provisions in Par. 9, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under Par. 19. If, at least 5 days before the advance-notice deadline referred to in Par. 3, we give you written notice of rent increases or Lease changes that become effective when the Lease term or renewal period ends, this Lease will automatically continue month-to-month with the increased rent or Lease changes. The new modified Lease will begin on the date stated in the notice (without needing your signature) unless you give us written move-out notice under Par. 36. The written move-out notice under Par. 36 applies only to the end of the current Lease or renewal period.

**17. Delay of Occupancy.**

**17.1 Lease Remains In Force.** We are not responsible for any delay of your occupancy caused by construction, repairs, cleaning, or a previous resident's holding over. This Lease will remain in force subject to:
(A) abatement of rent on a daily basis during delay, *and*
(B) your right to terminate the lease in writing as set forth below.

**17.2 Your Termination Rights.** Termination notice must be in writing. After termination under 17.1(B), you are entitled only to refund of any deposit(s) and any rent you paid. Rent abatement or Lease termination does not apply if the delay is for cleaning or repairs that don't prevent you from moving into the apartment.

**17.3 Notice of Delay.** If there is a delay of your occupancy and we haven't given notice of delay as set forth immediately below, you may terminate this Lease up to the date when the apartment is ready for occupancy, but not later.
(a) If we give written notice to any of you or your occupants when or after the Lease begins—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date— you may terminate the Lease within 3 days after you receive written notice, but no later.
(b) If we give any of you written notice before the date the Lease begins and the notice states that a construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease within 7 days after receiving written notice, but no later. The readiness date stated in the written notice becomes the new effective Lease date for all purposes. This new date can't be moved to an earlier date unless we and you agree in writing.

**18. Disclosure of Information.** If someone requests information about you or your rental history for law-enforcement, governmental, or business purposes, we may provide it. At our request, any utility provider may give us information about pending or actual connections or disconnections of utility service to your apartment.

**19. Community Policies and Rules.**

**19.1 Generally.** Our rules are considered part of this Lease. You must comply with our written apartment rules and

---

written apartment rules and community policies, including instructions for care of our property. We may regulate: (A) the use of patios, balconies, and porches; (B) the conduct of furniture movers and delivery persons; and (C) activities in common areas. We may make reasonable changes to written rules, and those rules can become effective immediately if the rules are distributed and applicable to all units in the apartment community and do not change the dollar amounts on pages 1 or 2 of this Lease.

**19.2 Some Specifics.** Your apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. You will use balconies with care and will not overload them. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care and in accordance with apartment rules and posted signs.

**19.3 Limitations on Conduct.** Glass containers are prohibited in or near pools and all other common areas. Within the apartment community, you, your occupants, and your guests must not use candles or kerosene lamps or heaters without our prior written approval, or cook on balconies or outside. You, your occupants, and your guests must not solicit business or contributions. Conducting any kind of business (including child-care services) in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes.

**19.4 Exclusion of Persons.** We may exclude from the apartment community any guests or others who, in our judgment, have been violating the law, violating this Lease or our rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area anyone who refuses to show photo identification or refuses to identify himself or herself as a resident, an occupant, or a guest of a specific resident in the community.

**19.5 Notice of Convictions and Registration.** You must notify us within 15 days if you or any of your occupants are convicted of (A) any felony, or (B) any misdemeanor involving a controlled substance, violence to another person, or destruction of property. You must also notify us within 15 days if you or any of your occupants register as a sex offender. Informing us of a criminal conviction or sex-offender registration doesn't waive any rights we may have against you.

**20. Prohibited Conduct.** You, your occupants, and your guests may not engage in the following activities:
(a) criminal conduct, regardless of whether or where arrest or conviction occurs, including but not limited to: manufacturing, delivering, or possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by law; discharging a firearm in the apartment community; or, except when allowed by law, displaying or possessing a gun, knife, or other weapon in the common area, or in a way that may alarm others;
(b) behaving in a loud or obnoxious manner;
(c) disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community;
(d) disrupting our business operations;
(e) storing anything in closets containing gas appliances;
(f) tampering with utilities or telecommunications;
(g) bringing hazardous materials into the apartment community;
(h) using windows for entry or exit;
(i) heating the apartment with a gas-operated cooking stove or oven; *or*
(j) making bad-faith or false allegations against us or our agents to others.

**21. Parking.** We may regulate the time, manner, and place of parking all cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles. Motorcycles or motorized bikes must not be parked inside an apartment, on sidewalks, under stairwells, or in handicapped-parking areas. We may have any unauthorized or illegally parked vehicles towed according to state law at the owner or operator's expense at any time if the vehicle:
(a) has a flat tire or is otherwise inoperable;
(b) is on jacks, on blocks, or has a wheel missing;
(c) takes up more than one parking space;
(d) belongs to a resident or occupant who has surrendered or abandoned the apartment;
(e) is in a handicapped space without the legally required handicapped insignia;

Your Initials: _____   Initials of Our Representative: _____      Apartment Lease Contract ©2017, Texas Apartment Association, Inc.      Page 3 of 8

(f) is in a space marked for office visitors, managers, or staff;
(g) blocks another vehicle from exiting;
(h) is in a fire lane or designated "no parking" area;
(i) is in a space marked for another resident or apartment;
(j) is on the grass, sidewalk, or patio;
(k) blocks a garbage truck from access to a dumpster;
(l) has no current license or registration, and we have given you at least 10 days' notice that the vehicle will be towed if not removed; *or*
(m) is not moved to allow parking lot maintenance.

## 22. Release of Resident.

**22.1 Generally.** *You may have the right under Texas law to terminate the Lease early in certain situations involving family violence, certain sexual offenses, or stalking.* Otherwise, unless you're entitled to terminate this Lease under Par. 9, 17, 23, 31, or 36, you won't be released from this Lease for any reason—including voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of coresidents, loss of employment, bad health, property purchase, or death.

**22.2 Death of Sole Resident.** If you are the sole resident and die during the Lease term, an authorized representative of your estate may terminate the Lease without penalty by giving at least 30 days' written notice. Your estate will be liable for your Lease obligations until the latter of: (A) the termination date or (B) removal of all possessions in the apartment. Your estate will also be liable for all charges and damages until the apartment is vacated, and any removal or storage costs.

## 23. Military Personnel.

**23.1 Termination Rights.** *You may have the right under Texas law to terminate the Lease in certain situations involving military deployment or transfer.* You may terminate the Lease if you enlist, are drafted into, or are commissioned in the U.S. Armed Forces. You also may terminate the Lease if:
(a) you are (1) a member of the U.S. Armed Forces or Reserves on active duty, or (2) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; *and*
(b) you (1) receive orders for a permanent change of station, (2) receive orders to deploy with a military unit or as an individual in support of a military operation for 90 days or more, or (3) are relieved or released from active duty.

**23.2 How to Terminate Under This Par. 23.** You must furnish us a copy of your military orders, such as permanent-change-of-station orders, call-up orders, or deployment orders (or letter equivalent). Military permission for base housing doesn't constitute a permanent-change-of-station order. You must deliver to us your written termination notice, after which the Lease will be terminated under this military clause 30 days after the date your next rental payment is due. After your move-out, we'll return your security deposit, less lawful deductions.

**23.3 Who May Be Released.** For the purposes of this Lease, orders described in (b) under Par. 23.1 above will release only the resident who qualifies under both (a) and (b) above and receives the orders during the Lease term, plus that resident's spouse or legal dependents living in the resident's household. A coresident who is not the spouse or dependent of a military resident cannot terminate under this military clause.

**23.4 Your Representations.** Unless you state otherwise in Par. 9, you represent when signing this Lease that:
(a) you do not already have deployment or change-of-station orders;
(b) you will not be retiring from the military during the Lease term; *and*
(c) the term of your enlistment or obligation will not end before the Lease term ends.

You must notify us immediately if you are called to active duty or receive deployment or permanent-change-of-station orders.

**23.5 Damages for False Representations.** Liquidated damages for making a false representation of the above will be the amount of unpaid rent for the remainder of the Lease term when and if you move out, minus rents from others received in mitigation under Par. 32.6.

## 24. Resident Safety and Loss.

**24.1 Disclaimer.** *We disclaim any express or implied warranties of security.* We care about your safety and that of other occupants and guests. You agree to make every effort to follow the Security Guidelines on the last page attached

to this Lease. *No security system is failsafe. Even the best system can't prevent crime. Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error. The best safety measures are the ones you take as a matter of common sense and habit.*

**24.2 Your Duty of Due Care.** You, your occupants, and your guests must exercise due care for your own and others' safety and security, especially in using smoke alarms and other detection devices, door and window locks, and other safety or security devices. Window screens are not for security or to keep people from falling out of windows.

**24.3 Alarm and Detection Devices.**
(A) *What we'll do.* We'll furnish smoke alarms or other detection devices required by law or city ordinance. We may install additional detectors not so required. We'll test them and provide working batteries when you first take possession of your apartment. Upon request, we'll provide, as required by law, a smoke alarm capable of alerting a person with a hearing-impairment disability.
(B) *Your duties.* You must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report alarm or detector malfunctions to us. Neither you nor others may disable alarms or detectors. *If you damage or disable the smoke alarm, or remove a battery without replacing it with a working battery, you may be liable to us under Texas Property Code sec. 92.2611 for $100 plus one month's rent, actual damages, and attorney's fees.* You'll be liable to us and others if you fail to report malfunctions, or fail to report any loss, damage, or fines resulting from fire, smoke, or water.

**24.4 Loss.** Unless otherwise required by law, we're not liable to any resident, guest, or occupant for personal injury or damage, loss of personal property, or loss of business or personal income, from any cause, including fire, smoke, rain, flood, water leaks, hail, ice, snow, lightning, wind, explosions, interruption of utilities, pipe leaks, theft, vandalism, and negligent or intentional acts of residents, occupants, or guests. We have no duty to remove any ice, sleet, or snow but may remove any amount with or without notice. Unless we instruct otherwise, during freezing weather you must for 24 hours a day: (A) keep the apartment heated to at least 50° Fahrenheit, (B) keep cabinet and closet doors open, and (C) drip hot- and cold-water faucets. You'll be liable for any damage to our and others' property caused by broken water pipes due to your violating these requirements.

**24.5 Crime or Emergency.** Immediately dial 911 or call local medical-emergency, fire, or police personnel in case of accident, fire, smoke, suspected criminal activity, or any other emergency involving imminent harm. You should then contact our representative. None of our security measures are an express or implied warranty of security—or a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you, your occupants, or your guests for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. Even if previously provided, we're not obliged to furnish security personnel, patrols, lighting, gates, fences, or other forms of security unless required by law. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you, your occupants, or your guests are affected by a crime, you must make a written report to the appropriate local law-enforcement agency and to our representative. You must also give us the law-enforcement agency's incident-report number upon request.

## 25. Condition of the Premises and Alterations.

**25.1 As-Is.** *We disclaim all implied warranties.* You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. You'll be given an Inventory & Condition form on or before move-in. Within 48 hours after move-in, you must note on the form all defects or damage, sign the form, and return it to us. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

**25.2 Standards and Improvements.** You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by law or by us in writing, you must not do any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. Unless our rules state otherwise, we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and grooves of wood-paneled walls. No

Case 2:23-cv-09071   Document 3-4   Filed 07/21/23   Page 5 of 9 Page ID #: 320

water furniture, washing machines, extra phone or television outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless allowed by law or we've consented in writing. You may install a satellite dish or antenna, but only if you sign our satellite-dish or antenna lease addendum, which complies with reasonable restrictions allowed by federal law. You must not alter, damage, or remove our property, including alarm systems, detection devices, furniture, telephone and television wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (made with or without our consent) become ours unless we agree otherwise in writing.

**25.3 Fair Housing.** In accordance with fair-housing laws, we'll make reasonable accommodations to our rules, policies, practices, or services. We'll allow reasonable modifications under these laws to give disabled persons access to and use of this apartment community. We may require you to sign an addendum regarding the implementation of any accommodations or modifications, as well as your restoration obligations, if any.

## 26. Requests, Repairs, and Malfunctions.

**26.1 Written Requests Required.** *If you or any occupant needs to send a notice or request—for example, for repairs, installations, services, ownership disclosure, or security-related matters—it must be written, signed, and delivered to our designated representative in accordance with our policies* (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, crime in progress, or fair-housing accommodation or modification). Our written notes on your oral request do not constitute a written request from you. Our complying with or responding to any oral request regarding security or any other matter doesn't waive the strict requirement for written notices under this Lease.

**26.2 Required Notifications.** You must promptly notify us in writing of water leaks, mold, electrical problems, malfunctioning lights, broken or missing locks or latches, and other conditions that pose a hazard to property, health, or safety.

**26.3 Utilities.** We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately.

**26.4 Casualty Loss and Equipment Repair.** We'll act with customary diligence to make repairs and reconnections, taking into consideration when casualty-insurance proceeds are received. Unless required by statute after a casualty loss, or during equipment repair, your rent will not abate in whole or in part. Air-conditioning problems are normally not emergencies. If air-conditioning or other equipment malfunctions, you must notify us as soon as possible on a business day.

**26.5 Our Right to Terminate.** If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease by giving you at least 5 days' written notice. We also have the right to terminate this Lease during the Lease term by giving you at least 30 days' written notice of termination if we are demolishing your apartment or closing it and it will no longer be used for residential purposes for at least 6 months. If the Lease is so terminated, we'll refund prorated rent and all deposits, less lawful deductions. We may also remove and dispose of personal property if we believe it causes a health or safety hazard.

## 27. Animals.

**27.1 No Animals Without Consent.** *No animals (including mammals, reptiles, birds, fish, rodents, amphibians, arachnids, and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've given written permission.* If we allow an animal, you must sign a separate animal addendum and, except as set forth in the addendum, pay an animal deposit. An animal deposit is considered a general security deposit. The animal addendum includes information governing animals, including assistance or service animals. We'll authorize an assistance or support animal for a disabled person without requiring an animal deposit. We may require verification of your disability and the need for such an animal. You must not feed stray or wild animals.

**27.2 Violations of Animal Policies.**
**(A) Charges for violations.** If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease.

rules, you'll pay an initial charge of $_____ per animal (not to exceed $100 per animal) and a daily charge of $_____ per animal (not to exceed $10 per day per animal) from the date the animal was brought into your apartment until it is removed. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), you must pay for all cleaning and repair costs, including defleaing, deodorizing, and shampooing.

**(B) Removal and return of animal.** We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the apartment, a written notice of our intent to remove the animal within 24 hours; and (2) following the procedures of Par. 28. We may keep or kennel the animal, or turn it over to a humane society, local authority or rescue organization. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. You must pay for the animal's reasonable care and kenneling charges. We'll return the animal to you upon request if it has not already been turned over to a humane society, local authority or rescue organization.

## 28. When We May Enter.
If you or any guest or occupant is present, then repairers, servicers, contractors, government representatives, lenders, appraisers, prospective residents or buyers, insurance agents, persons authorized to enter under your rental application, or our representatives may peacefully enter the apartment at reasonable times for reasonable business purposes. If nobody is in the apartment, then any such person may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary) for reasonable business purposes if written notice of the entry is left in a conspicuous place in the apartment immediately after the entry. Law officers with a search or arrest warrant or those in hot pursuit may be allowed to enter. We are under no obligation to enter only when you are present, and we may, but are under no obligation to, give prior notice or make appointments.

## 29. Multiple Residents.
Each resident is jointly and severally liable for all Lease obligations. If you or any guest or occupant violates the Lease or rules, all residents are considered to have violated the Lease. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant constitute notice from all residents. Your notice of Lease termination may be given only by a resident. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Any resident who defaults under this Lease will indemnify the nondefaulting residents and their guarantors.

## Replacements

## 30. Replacements and Subletting.

**30.1 When Allowed.** Replacing a resident, subletting, licensing or assigning a resident's rights is allowed *only when we consent in writing.* If a departing or remaining resident finds a replacement resident acceptable to us before moving out and we expressly consent to the replacement, subletting, or assignment, then:
(a) a reletting charge will not be due;
(b) a reasonable administrative (paperwork) fee will be due, and a rekeying fee will be due if rekeying is requested or required; *and*
(c) the departing and remaining residents will remain liable for all Lease obligations for the rest of the original Lease term.

**30.2 Procedures for Replacement.** If we approve a replacement resident, then, at our option: (A) the replacement resident must sign this Lease with or without an increase in the total security deposit; or (B) the remaining and replacement residents must sign an entirely new Lease. Unless we agree otherwise in writing, the departing resident's security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or to a security-deposit refund, but will remain liable for the remainder of the original Lease term unless we agree otherwise in writing—even if a new Lease is signed.

**30.3 Rental Prohibited.** You agree that you won't rent, or offer to rent or license all or any part of your apartment to anyone else unless otherwise agreed to by us in writing. You agree that you won't accept anything of value from anyone else for the use of any part of your apartment. You agree not to list any part of your apartment on any lodging rental website or with any person or service that advertises dwellings for rent.

Case 3:23-md-03071  Document 878-4  Filed 07/21/23  Page 6 of 9 PageID #: 3341

**31. Our Responsibilities.**

**31.1 Generally.** We'll act with customary diligence to:
(a) keep common areas reasonably clean, subject to Par. 25;
(b) maintain fixtures, hot water, heating, and air-conditioning equipment;
(c) substantially comply with all applicable laws regarding safety, sanitation, and fair housing; *and*
(d) make all reasonable repairs, subject to your obligation to pay for damages for which you're liable.
The time, manner, method and means of performing maintenance and repairs, including whether or which vendors to use, are within our sole discretion.

**31.2 Your Remedies.** *If we violate any of the above, you may possibly terminate this Lease and exercise other remedies under Texas Property Code Sec. 92.056 by following this procedure:*
(a) all rent must be current, and you must make a written request for repair or remedy of the condition—after which we'll have a reasonable time for repair or remedy;
(b) if you fail to do so, you must make a second written request for the repair or remedy (to make sure that there has been no miscommunication between us)—after which we'll have a reasonable time to repair or remedy; *and*
(c) if the repair or remedy still hasn't been accomplished within that reasonable time period, you may immediately terminate this Lease by giving us a final written notice.
*You also may exercise other statutory remedies, including those under Texas Property Code sec. 92.0561.*

**31.3 Request by Mail.** Instead of giving the two written requests referred to above, you may give us one request by certified mail, return receipt requested, by registered mail, or by any trackable mail or delivery method through the postal service or a private delivery service—after which we'll have a reasonable time to repair or remedy. "Reasonable time" accounts for the nature of the problem and the reasonable availability of materials, labor, and utilities. Your rent must be current when you make your request. We'll refund security deposits and prorated rent as required by law.

**32. Default by Resident.**

**32.1 Acts of Default.** You'll be in default if: (A) you don't timely pay rent or other amounts you owe; (B) you or any guest or occupant violates this Lease, apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (C) you abandon the apartment; (D) you give incorrect or false answers in a rental application; (E) you or any occupant is arrested, charged, detained, convicted, or given deferred adjudication or pretrial diversion for (1) an offense involving actual or potential physical harm to a person, or involving the manufacture or delivery of a controlled substance, marijuana, or drug paraphernalia as defined in the Texas Controlled Substances Act, or (2) any sex-related crime, including a misdemeanor; (F) any illegal drugs or paraphernalia are found in your apartment; or (G) you or any occupant, in bad faith, makes an invalid habitability complaint to an official or employee of a utility company or the government.

**32.2 Eviction.** *If you default or hold over, we may end your right of occupancy by giving you at least a 24-hour written notice to vacate.* Notice may be given by: (A) regular mail; (B) certified mail, return receipt requested; (C) personal delivery to any resident; (D) personal delivery at the apartment to any occupant over 16 years old; (E) affixing the notice to the inside of the apartment's main entry door; or (F) securely affixing the notice to the outside of the apartment's main entry door as allowed by law. Notice by mail under (A) or (B) will be considered delivered on the earlier of actual delivery, or 3 days after the notice is deposited in the U.S. Postal Service with postage. Termination of your possession rights or a later reletting doesn't release you from liability for future rent or other Lease obligations. *After giving notice to vacate or filing an eviction suit, we may still accept rent or other sums due;* the filing or acceptance doesn't waive or diminish our right of eviction or any other contractual or statutory right. Accepting money at any time doesn't waive our right to damages, to past or future rent or other sums, or to our continuing with eviction proceedings. *In an eviction, rent is owed for the full rental period and will not be prorated.*

**32.3 Acceleration.** Unless we elect not to accelerate rent, all monthly rent for the rest of the Lease term or renewal period will be accelerated automatically without notice or demand (before or after acceleration) and will be immediately due and delinquent if, without our written consent: (A) you move out, remove property in preparing to move

out, or you or any occupant gives oral or written notice of intent to move out before the Lease term or renewal period ends; and (B) you haven't paid all rent for the entire Lease term or renewal period. Such conduct is considered a default for which we need not give you notice. Remaining rent will also be accelerated if you're judicially evicted or move out when we demand because you've defaulted. Acceleration is subject to our mitigation obligations below.

**32.4 Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then (A) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (B) rent for the holdover period will be increased by 25% over the then-existing rent, without notice; (C) you'll be liable to us (subject to our mitigation duties) for all rent for the full term of the previously signed Lease of a new resident who can't occupy because of the holdover; and (D) at our option, we may extend the Lease term—for up to one month from the date of notice of Lease extension—by delivering written notice to you or your apartment while you continue to hold over.

**32.5 Other Remedies.** We may report unpaid amounts to credit agencies as allowed by law. If we or our debt collector tries to collect any money you owe us, you agree that we or the debt collector may contact you by any legal means, including texting, calling your cell phone, and using an automated dialer. If you default, you will pay us, in addition to other sums due, any amounts stated to be rental discounts or concessions agreed to in writing. Upon your default, we have all other legal remedies, including Lease termination and statutory lockout under Texas Property Code sec. 92.0081, *except as lockouts and liens are prohibited by Texas Government Code sec. 2306.6738 for owners supported by housing-tax-credit allocations.* A prevailing party may recover reasonable attorney's fees and all other litigation costs from the nonprevailing parties, except a party may not recover attorney's fees and litigation costs in connection with a party's claims seeking personal-injury, sentimental, exemplary or punitive damages. We may recover attorney's fees in connection with enforcing our rights under this Lease. All unpaid amounts you owe, including judgments, bear 18% interest per year from the due date, compounded annually. You must pay all collection-agency fees if you fail to pay sums due within 10 days after we mail you a letter demanding payment and stating that collection-agency fees will be added if you don't pay all sums by that deadline.

**32.6 Mitigation of Damages.** If you move out early, you'll be subject to Par. 10 and all other remedies. We'll exercise customary diligence to relet and minimize damages. We'll credit all later rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

**33. Other Important Provisions.**

**33.1 Representatives' Authority; Waivers; Notice.** *Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease or any part of it unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives, unless in writing.* Any dimensions and sizes provided to you relating to the apartment are only approximations or estimates; actual dimensions and sizes may vary. No action or omission by us will be considered a waiver of our rights or of any subsequent violation, default, or time or place of performance. *Our choice to enforce, not enforce or delay enforcement of written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances.* Except when notice or demand is required by law, you waive any notice and demand for performance from us if you default. If anyone else has guaranteed performance of this Lease, a separate Lease Guaranty for each guarantor must be executed. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease should keep a copy or record of it. Fax or electronic signatures are binding. All notices must be signed. Notice may be given electronically *by us to you* if allowed by law. If allowed by law and in accordance with our policies, electronic notice *from you to us* must be addressed to the email address we provide for notice purposes or submitted through an online portal.

**33.2 Miscellaneous.** All remedies are cumulative. Exercising one remedy won't constitute an election or waiver of other remedies. All provisions regarding our nonliability or non-duty apply to our employees, agents, and management companies. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease binds subsequent owners. This Lease is subordinate to existing and future recorded mortgages, unless the owner's lender chooses otherwise. All Lease obligations must be performed in the county where the apartment is located. If you have insurance covering the apartment or your personal belongings at the time you or we suffer or allege a loss, you agree to waive any insurance subrogation rights. All notices and documents may be in English and, at our option, in any other language that you read or speak. The term "including" in this Lease should be interpreted to mean "including but not limited to."

**33.3 Severability.** If any provision of this Lease is invalid or unenforceable under applicable law, it won't invalidate the remainder of the Lease or change the intent of the parties. Neither an invalid clause nor the omission of initials on any page invalidates this Lease.

**34. Payments.** Payment of each sum due is an independent covenant. When we receive money, other than sale proceeds under Par. 14 or water payments subject to government regulation, we may apply it at our option and without notice first to any of your unpaid obligations, then to current rent. We may do so regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept any payments.

**35. TAA Membership.** We represent that, at the time of signing this Lease, we, the management company representing us, or any locator service that procured you is a member in good standing of both the Texas Apartment Association and the affiliated local apartment association for the area where the apartment is located. The member is either an owner/management-company member or an associate member doing business as a locator service (whose name and address must be disclosed on page 8). If not, the following applies: (A) this Lease is voidable at your option and is unenforceable by us (except for property damages); and (B) we may not recover past or future rent or other charges. The above remedies also apply if both of the following occur: (1) the Lease is automatically renewed on a month-to-month basis more than once after membership in TAA and the local association has lapsed; and (2) neither the owner nor the management company is a member of TAA and the local association during the third automatic renewal. A signed affidavit from the affiliated local apartment association attesting to nonmembership when the Lease or renewal was signed will be conclusive evidence of nonmembership. Governmental entities may use TAA forms if TAA agrees in writing.

<h2 style="background:#e3003a;color:white;text-align:center">When Moving Out</h2>

**36. Move-Out Notice.**

**36.1 Requirements and Compliance.** Your move-out notice doesn't release you from liability for the full term of the Lease or renewal term. You'll still be liable for the entire Lease term if you move out early except under Par. 9, 17, 22, 23, or 31. *Your move-out notice must comply with each of the following:*

  (a) We must receive advance written notice of your move-out date. You must give notice in advance by at least the number of days required in Par. 3 or in special provisions—even if the Lease has become a month-to-month lease. Unless we require more than 30 days' notice, if you give notice on the first day of the month you intend to move out, it will suffice for move-out on the last day of that month, as long as all other requirements below are met.

  (b) Your move-out notice must be in writing. An oral move-out notice will not be accepted and will not terminate your Lease.

  (c) Your move-out notice must not terminate the Lease sooner than the end of the Lease term or renewal period.

  (d) If we require you to give us more than 30 days' written notice to move out before the end of the Lease term, we will give you 1 written reminder not less than 5 days nor more than 90 days before your deadline for giving us your written move-out notice. If we fail to give a reminder notice, 30 days' written notice to move-out is required.

**36.2 Unacceptable Notice.** *Your notice is not acceptable if it doesn't comply with all of the above.* We recommend that you use our written move-out form to ensure that you provide all the information needed. You must get from us a written acknowledgment of your notice. If we fail to give a reminder notice, 30 days' written notice to move out is required. If we terminate the Lease, we must give you the same 30 days' written notice unless you're in default.

**37. Move-Out Procedures.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease term or renewal period ends unless all rent for the entire Lease term or renewal period is paid in full. Early move-out may result in reletting charges and acceleration of future rent under Par. 10 and 32. You're prohibited by law from applying any security deposit to rent. You can't stay beyond the date you're supposed to move out. All residents, guests, and occupants must surrender or abandon the apartment before the 30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**38. Cleaning.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges—including charges for cleaning carpets, draperies, furniture, walls, etc. that are soiled beyond normal wear (that is, wear or soiling that occurs without negligence, carelessness, accident, or abuse).

**39. Move-Out Inspection.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final accounting or refunding.

**40. Security Deposit Deductions and Other Charges.** You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing alarm or detection-device batteries at any time; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone, Internet, television services, or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized security devices or alarm systems; agreed reletting charges; packing, removing, or storing property removed or stored under Par. 14; removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related charges under Par. 6 and 27; government fees or fines against us for violation (by you, your occupants, or your guests) of local ordinances relating to alarms and detection devices, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge (not to exceed $150) for our time and inconvenience in our lawful removal of an animal or in any valid eviction proceeding against you, plus attorney's fees, court costs, and filing fees actually paid; and other sums due under this Lease. You'll be liable to us for: (A) charges for replacing any keys and access devices referenced in Par. 5 if you don't return them all on or before your actual move-out date; (B) accelerated rent if you've violated Par. 32; and (C) a reletting fee if you've violated Par. 10. *We may also deduct from your security deposit our reasonable costs incurred in rekeying security devices required by law if you vacate the apartment in breach of this Lease.*

**41. Deposit Return, Surrender, and Abandonment.**

**41.1 Your Deposit.** We'll mail you your security-deposit refund (less lawful deductions) and an itemized accounting of any deductions, no later than 30 days after surrender or abandonment, unless laws provide otherwise.

**41.2 Surrender.** You have *surrendered* the apartment when: (A) the move-out date has passed and no one is living in the apartment in our reasonable judgment; *or* (B) apartment keys and access devices listed in Par. 5 have been turned in to us—whichever happens first.

**41.3 Abandonment.** You have *abandoned* the apartment when all of the following have occurred: (A) everyone appears to have moved out in our reasonable judgment; (B) clothes, furniture, and personal belongings have been substantially removed in our reasonable judgment; (C) you've been in default for nonpayment of rent for 5 consecutive days, or water, gas, or electric service for the apartment not connected in our name has been terminated or transferred; *and* (D) you've not responded for 2 days to our notice left on the inside of the main entry door stating that we consider the apartment abandoned. An apartment is also considered abandoned 10 days after the death of a sole resident.

**41.4 The Ending of Your Rights.** Surrender, abandonment, or judicial eviction ends your right of possession for all purposes and gives us the immediate right to clean up, make repairs in, and relet the apartment; determine any security-deposit deductions; and remove property left in the apartment. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (Par. 14), but

- Address: _____ Unit # _____
- Beginning date of Lease (Par. 3) _____    ■ Ending date of Lease (Par. 3) _____
- Number of days notice for termination (Par. 3) _____    ■ Consent for guests staying more than _____ days (Par. 2)
- Total security deposit (Par. 4)        $ _____    ■ Animal deposit (if any)        $ _____
- Security deposit (Par. 4) ❑ does **OR** ❑ does not include an animal deposit.
- Security deposit refund check will be by (Par. 5) (*check one*) ❑ one check jointly payable to all residents (default), **OR** ❑ one check payable to and mailed to _____
- # of keys/access devices (Par. 5) for ____ unit, ____ mailbox, ____other _____
- Your move-out notice will terminate Lease on (Par. 5): (*check one*) ❑ last day of month **OR** ❑ exact day designated in notice
- Check here ❑ if the dwelling is to be furnished (Par. 5)    ■ Check here ❑ if there is a concession addendum
- Rent to be paid (Par. 6): (*check all that apply*) ❑ at the onsite manager's office, ❑ through our online payment site, OR ❑ at _____
- Check here if included in monthly rent: ❑ garage, ❑ storage, ❑ carport, ❑ washer/dryer, or ❑ other _____
- Total monthly rent (Par. 6)        $ _____    ■ Prorated rent (Par. 6) for (*check one*)
- Late charges if rent is not paid on or before (Par. 6)        ❑ first month **OR** ❑ second month        $ _____
- Initial late charge (Par. 6)        $ _____    ■ Daily late charge (Par. 6)        $ _____
- Returned-check charge (Par. 6)        $ _____    ■ Animal violation charges (Par. 27)
- Monthly animal rent (if any)        $ _____        Initial $ _____        Daily        $ _____
- Monthly pest control (if any)        $ _____    ■ Monthly trash / waste (if any)        $ _____
- Utilities paid by owner (Par. 7): (*check all that apply*) ❑ electricity, ❑ gas, ❑ water, ❑ wastewater, ❑ trash/recycling, ❑ cable/satellite, ❑ master antenna, ❑ Internet, ❑ stormwater/drainage, ❑ other _____
- Utility connection charge (Par. 12)        $ _____    ■ You are: (*check one*) ❑ required to buy insurance **OR**
- Agreed reletting charge (Par. 10)        $ _____        ❑ not required to buy insurance (Par. 8)
- Special provisions (Par. 9): _____
  _____
  _____
  _____
  _____

## Signatures and Attachments

**42. Attachments.** We will provide you with a copy of the Lease as required by statute. This may be in paper format, in an electronic format if you request it, or by e-mail if we have communicated by e-mail about this Lease. Our rules and community policies, if any, will be attached to the Lease and given to you at signing. When an Inventory and Condition form is completed, both you and we should retain a copy. The items checked below are attached to and become a part of this Lease and are binding even if not initialed or signed.

❑ Access Gate Addendum
❑ Additional Special Provisions
❑ Allocation Addendum for: ❑ electricity ❑ water ❑ gas
    ❑ central system costs ❑ trash/recycling ❑ cable/satellite
    ❑ stormwater/drainage ❑ services/government fees
❑ Animal Addendum
❑ Apartment Rules or Community Policies
❑ Asbestos Addendum (if asbestos is present)
❑ Bed Bug Addendum
❑ Early Termination Addendum
❑ Enclosed Garage, Carport, or Storage Unit Addendum
❑ Intrusion Alarm Addendum
❑ Inventory & Condition Form
❑ Lead Hazard Information and Disclosure Addendum
❑ Lease Contract Addendum for Units Participating in
    Government Regulated Affordable Housing Programs
❑ Lease Contract Guaranty (guaranties, if more than one)
❑ Legal Description of Apartment (optional, if rental term
    longer than one year)
❑ Military SCRA Addendum
❑ Mold Information and Prevention Addendum
❑ Move-Out Cleaning Instructions
❑ Notice of Intent to Move Out Form
❑ Parking Permit or Sticker (quantity:_____)
❑ Rent Concession Addendum
❑ Renter's or Liability Insurance Addendum
❑ Repair or Service Request Form
❑ Satellite Dish or Antenna Addendum
❑ Security Guidelines Addendum
❑ PUC Tenant Guide to Water Allocation
❑ Utility Submetering Addendum: ❑ electricity ❑ water
    ❑ gas
❑ Other_____
❑ Other_____
❑ Other_____
❑ Other_____

*Name, address and telephone number of locator service (if applicable —must be completed to verify TAA membership under Par. 35):*

_____
_____
_____
_____

After-hours phone number _____
    (Always call 911 for police, fire, or medical emergencies.)

Date form is filled out (same as on top of page 1) _____

**43. Class Action Waiver.** You agree that you will not participate in any class action claims against us or our representatives. You must file any claim against us individually, and *you expressly waive your ability to bring, represent, join or otherwise maintain a class action, collective action or similar proceeding against us in any forum.*

YOU UNDERSTAND THAT, WITHOUT THIS WAIVER, YOU COULD BE A PARTY IN A CLASS ACTION LAWSUIT. *BY SIGNING THIS LEASE, YOU ACCEPT THIS WAIVER AND CHOOSE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY.* THE PROVISIONS OF THIS PAR. 43 SHALL SURVIVE THE TERMINATION OR EXPIRATION OF THIS LEASE.

Resident initials: _____

**You are legally bound by this document. Please read it carefully. A facsimile or electronic signature on this Lease is as binding as an original signature.**

**Before submitting a rental application or signing a Lease, you may take a copy of these documents to review and/or consult an attorney. Additional provisions or changes may be made in the Lease if agreed to in writing by all parties.**

**You are entitled to receive a copy of this Lease after it is fully signed. Keep it in a safe place. This lease is the entire agreement between you and us. You are NOT relying on any oral representations.**

*Resident or Residents (all sign below):*

_____
(Name of Resident)                              Date signed

_____
(Name of Resident)                              Date signed

_____
(Name of Resident)                              Date signed

_____
(Name of Resident)                              Date signed

_____
(Name of Resident)                              Date signed

_____
(Name of Resident)                              Date signed

*Owner or Owner's Representative (signing on behalf of owner)*

_____

Address and phone number of owner's representative for notice purposes

_____
_____

Your Initials: _____    Initials of Our Representative: _____    Apartment Lease Contract, TAA Official Statewide Form 17-A/B-1/B-2/B-3 Revised October 2017    Page 8 of 8