UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-md-3071<br>MDL No. 3071<br><br>Honorable Judge Waverly D. Crenshaw, Jr.<br><br>JURY DEMAND<br><br>This Document Relates to:<br>ALL CASES |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO ENFORCE CLASS ACTION WAIVER**

Defendants have moved to strike the class allegations from Plaintiffs' operative complaint (Dkt. 314) as they relate to Plaintiffs Jeffrey Weaver ("Weaver") and Brandon Watters ("Watters"). Dkt. 338. On the undisputed facts, their Motion fails. Both Weaver and Watters leased from two different Defendants who used RealPage's Revenue Management Solutions ("RMS") during the class period: Camden Property Trust ("Camden") and Bell Partners, Inc. ("Bell") for Weaver, and Lincoln Property Company ("Lincoln") and UDR, Inc. ("UDR") for Watters.

For each Plaintiff, only one of these landlords claims to have a class action waiver clause in its respective lease. For Weaver, Camden claims to have a class action waiver clause, but Bell does not. For Watters, Lincoln claims to have such a clause, but UDR does not. Other co-Defendants cannot enforce the Camden and Lincoln contracts: they are not third-party beneficiaries to those contracts and the doctrine of equitable estoppel has no application here.

On these facts, Defendants' Motion provides no basis to strike Weaver's and Watters' class allegations against all Defendants. The Camden and Lincoln contracts do not extend to: a) Defendants' joint and several liability for the damages that these Plaintiffs incurred paying supracompetitive rent to Bell and UDR; and b) Camden's and Lincoln's co-Defendants' joint and several liability for the damages Weaver and Watters incurred by paying supracompetitive rent to Camden and Lincoln.

The Motion should additionally be denied because: (a) Camden's class action waiver does not encompass the present dispute on its terms; (b) the Lincoln lease was not executed by the parties as required by its terms; and (c) further discovery is needed to determine whether both class action waivers should be voided for unconscionability.

I. **ARGUMENT**

At this stage, to strike class allegations, Defendants must show that "the plaintiff will be unable to demonstrate facts supporting certification, even after discovery and the creation of a full

1

factual record." *Albright v. Sherwin-Williams Co.*, 2019 WL 5307068, at *16 (N.D. Ohio Jan. 29, 2019); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (defendant must show that "no proffered or potential factual development offers any hope" that plaintiffs can ultimately certify a class).[1] "[S]triking a plaintiff's class allegations prior to discovery and a motion for class certification is a rare remedy." *Nixon v. Anthem, Inc.*, 2021 WL 4037824, at * 2 (E.D. Ky. Sept. 3, 2021); *Lammert v. Auto-Owners (Mut.) Ins. Co.*, 415 F. Supp. 3d 807, 812 (M.D. Tenn. 2019) (pre-discovery Rule 12(f) motion is an "improper vehicle" for litigating fact-intensive issues).

### A. Defendants' Arguments Are Insufficient to Warrant Striking Weaver's and Watters' Class Allegations.

#### 1. Plaintiffs Can Maintain Their Class Allegations Against Defendants Even if Camden's and Lincoln's Waiver Provisions Are Binding.

Both Weaver and Watters rented from two Defendants during the Class Period:

- ***Jeffrey Weaver***: Weaver leased a Denver, Colorado apartment from Camden, from March 2017 through August 2021. Dkt. 314, ¶ 35[2]; *see also* Dkt. 337-2. Thereafter, he rented a separate Denver apartment from Bell, under a separate lease from August 2021 through the present. ¶ 35. Bell has not claimed that Weaver signed a class action waiver with it.

- ***Brandon Watters***: Watters leased an apartment in Nashville, Tennessee from UDR from November 2019 through July 2021. ¶ 38. UDR has not claimed that Watters signed a class action waiver with it. After leaving that property, Watters rented another Nashville apartment, in a building managed by Lincoln between August 2021 and May 2022.

Weaver and Watters allege they paid supracompetitive rent to each of their respective landlords because of Defendants' conspiracy. ¶¶ 27, 35, 38, 404-06, 417-20. They seek compensation from all Defendants, not just for the harm incurred while renting from Camden and

---

[1] Unless otherwise indicated, emphasis is added and internal citations are omitted.
[2] Unless specified otherwise, all references to "¶," "¶¶," or "Fig." are to paragraphs and figures, respectively, from the First Amended Consolidated Class Action Complaint ("AC"), Dkt. 314.

Lincoln, but for the harm incurred while renting from Bell and UDR. ¶¶ 417-20. Defendants are jointly and severally liable for this harm.[3]

Defendants' brief does not even mention Bell and UDR, let alone argue that the Camden and Lincoln leases somehow preclude Weaver and Watters from maintaining a class claim in relation to losses incurred while Bell's and UDR's tenants. Nor could they. *Bridgestone Am.'s, Inc. v. Int'l Bus. Machs. Corp.*, 172 F. Supp. 3d 1007, 1023 (M.D. Tenn. 2016) ("[A] stranger to a contract has no right to sue for its breach."). Consequently, the Court can end its inquiry here. Through their silence, Defendants admit that Weaver and Watters have standing to advance class claims as a result of the injuries that they suffered while renting from Bell and UDR.

### 2. Co-Defendants Cannot Claim the Benefit of Camden's and Lincoln's Contracts

Defendants do not argue that Camden's and Lincoln's co-Defendants are (a) parties to their contracts with Weaver and Watters, or (b) otherwise intended to have been third-party beneficiaries to those contracts. The language of the relevant leases, in particular the purported class action waiver clauses, demonstrates that the parties to those contracts did not intend to extend any rights to RealPage, Inc. ("RealPage") or competing lessors. Dkt. 337-1 at 7, 337-2 at 45. The Camden waiver is explicitly limited to "claim[s] against the *Owner or the Owner's managing agents*." Dkt. 337-2 at 56, 98, 142. Owner is defined as "Camden Belleview Station," and Camden Development, Inc., is stated to be the "Owner's managing agent." Dkt. 337-2 at 45, 87, 131, 169. The unsigned waiver Lincoln relies on is limited to "any class action claim(s) against *us or our agents*." Dkt. 377-1 at 45. "Us" is defined as the owner, "DRI/CA Nashville, LLC[,]" *id.* at 7,

---

[3] *See generally Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981) (contribution not available in Sherman Act cases; defendants jointly and severally liable).

while "agent" is used throughout the lease to connote the agents of DRI/CA Nashville who provide services under the lease.

Consequently, Camden's and Lincoln's co-Defendants are not third-party beneficiaries under Colorado or Tennessee law. *Jefferson Cnty. Sch. Dist. No. R-1 v. Shorey*, 826 P.2d 830, 843 (Colo. 1992) ("parties to the agreement [must have] intended to benefit the non-party," and the benefit must be a "direct and not merely an incidental benefit of the contract."); *Owner-Operator Indep. Drivers Ass'n, Inc.* 59 S.W.3d 68-69 (contract(s) must have "the clear intent to […] operate for the benefit of a third party" and the benefit must not be "merely incidental").

Faced with these privity issues, Defendants half-heartedly argue, in a single footnote, that Camden's and Lincoln's co-Defendants can enforce the waivers via equitable estoppel. Dkt. 338 at 9, n.11.[4] The application of equitable estoppel is governed by the law of the contract, which is Tennessee (Watters) and Colorado (Weaver) here. Despite this, Defendants offer a sole Tennessee case, and no Colorado authority, to argue that equitable estoppel applies, *Green v. Mission Health Cmtys., LLC*, 2020 WL 6702866 (M.D. Tenn. Nov. 13, 2020).[5] But *Green* is inapposite. The court

---

[4] None of the other cases cited by Defendants involved an attempt by a third-party to enforce a waiver contained in that contract against a contracting party. *Cf.* Dkt. 338 at 6-8, nn.7-8.

[5] The other three cases cited by Defendants in footnote 11 fair no better. In *Ordosgoitti*, the court addressed the limited circumstances–not present here–under Nebraskan law where estoppel may apply: "This is not a situation, then, where the nonsignatory co-conspirator 'is a complete stranger to the plaintiffs' ... agreements[,] ... did not sign them, ... is not mentioned in them, and ... performs no function whatsoever relating to their operation." *Ordosgoitti v. Werner Enterprises, Inc.*, 2022 WL 874600, at *9 (D. Neb. Mar. 24, 2022) (allowing subsidiary of contracting party to enforce the waiver). Likewise, in *Naranjo*, the defendant invoking Texas equitable estoppel law was part of the corporate group involved in the employment dispute, thus was no stranger to the plaintiff. *Naranjo v. Nick's Mgmt., Inc.*, 2023 WL 416313, at *10-11 (N.D. Tex. Jan. 25, 2023). Finally, the court in *In re Titanium Dioxide Antitrust Litig.*, an outlying decision, assumed that Fourth Circuit law was the same as Ohio, Delaware and New York law, recognized that other courts require a stronger showing than it did to invoke equitable estoppel and, gave great weight to the fact that the FAA establishes that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 850-51, 853–54 (D. Md. 2013). But the FAA has no application to class action waivers.

found that the non-signatory, attempting to enforce an employment contract, was the joint employer of the plaintiff under the contract, a fact the plaintiff admitted. The claims against the joint employer were thus so intertwined with the employment contract that the plaintiff was estopped from denying the application of the contract's arbitration provision. The court stressed that the Tennessee Supreme Court is "skeptic[al] of a broadly applied 'intertwinement test' for extending the estoppel doctrine." *Id.*, at *9.

It is unsurprising that Defendants turned to out-of-state decisions given that Tennessee and Colorado have not adopted the liberal application of equitable estoppel espoused by Defendants. Indeed, the Tennessee Court of Appeals has criticized attempts to use equitable estoppel to confer "virtually the same rights to non-signatories as they have to signatories." *Blue Water Bay at Ctr. Hill, LLC v. Hasty*, 2017 WL 5665410, at *14 (Tenn. Ct. App. Nov. 27, 2017). Non-signatories under Tennessee law can only invoke equitable estoppel in situations where a signatory to the contract "attempts to hold the nonsignatory liable pursuant to the underlying agreement." *Id.* Defendants do not meet this test as Watters' claim arises from Defendants' collective breach of the Sherman Act, not their breach of the Lincoln lease, to which they are strangers.

The Supreme Court of Colorado has also held that estoppel should only be used "as a shield to prevent injustice rather than a sword to compel arbitration," *Santich v. VCG Holding Corp.*, 2019 CO 67, ¶¶ 10-11, 443 P.3d 62, 66, and that the "traditionally defined elements of equitable estoppel" must be shown by the party invoking it:

> […] estoppel may not be applied as a bar absent a *clear showing of each of the following four elements*: […] [1] [T]he party against whom the estoppel is asserted must know the [relevant] facts; [2] that party must also intend that its conduct be acted upon or must lead the other party to believe that its conduct is so intended; [3] the party claiming estoppel must be ignorant of the true facts; and [4] the party asserting the estoppel must detrimentally rely on the other party's conduct.

*Id.* at 65.

Defendants cannot satisfy any of these elements. There is nothing that suggests Weaver intended that Camden's co-Defendants would rely upon his execution of his lease, or the co-Defendants were even aware of its terms (or Weaver) prior to this suit. The Court should reject Defendants' equitable estoppel arguments.

### B. Neither Camden's nor Lincoln's Class Action Waiver Clause Applies Here.

#### 1. Camden's Clause Does Not Cover the Dispute at Issue.

Under Colorado law, "the primary goal of contract interpretation is to give effect to the intent of the parties, which is to be determined primarily from the language of the agreement itself." *Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 494 (Colo. App. 2011). The content and placement of the Camden clause demonstrates that the parties intended that Weaver was only waiving a right to bring a class action claim against Camden for its default under the lease. The waiver is conspicuously included under the heading "Default by Owner," and follows a discussion of Weaver's rights to make repair requests and seek rental abatements, providing:

> ***Default by Owner.*** Owner agrees to abide by applicable law regarding repairs and performance under this Lease. ALL REQUESTS FOR REPAIRS MUST BE IN WRITING. Unless exercising a right specifically granted by applicable law, Resident shall not be entitled to any abatement of Rent for any inconvenience or annoyance in connection with Owner's repairs or maintenance and may not withhold Rent under any circumstances, regardless of any alleged failure by Owner to repair or maintain, unless otherwise provided by applicable law. **To the extent allowed by applicable law, Resident waives any ability or right to serve as a representative party for others similarly situated or participate in a class action suit or claim against the Owner or the Owner's managing agents. Resident acknowledges that this waiver does not, in any way, affect Resident's right to pursue any rights or remedies Resident may have against Owner as a result of Owner's default. This waiver only restricts Resident's ability to serve as a representative party or participate in a class action suit or claim against Owner or Owner's managing agents.**

Dkt. 337-2 at 56, 98, 142.

Indeed, the bolded language, which contains the purported waiver, was tacked onto the pre-existing "Default by Owner" clause contained in Weaver's 2017 lease when Weaver and Camden renewed it in 2018. *Cf.* Dkt. 337-2 at 14 to *id.* at 56. If the parties intended a wider waiver, they would have used broader language or placed the waiver in a standalone clause. Such a clause could have been inserted alongside the contract's separate "Applicable Law" clause (*id.* at 59) and used the "any disputes and claims between [the parties] that arise out of or relate" language typical of such clauses. *See Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002) ("When a contract is organized into separate parts, a provision or definition found in one part or section of the contract is not necessarily intended to apply to other parts."). But the parties did not do this. As written, the clause does not bar Weaver's class action claims against Camden (or any other Defendant).[6]

### 2. Lincoln's Contract Was Not Executed in Accordance with its Terms.

Lincoln's declaration attaches what it claims to be a true and correct copy of Watters' lease executed in 2021, which Plaintiffs accept for the purpose of this Motion. Dkt. 337-1, ¶ 14, Ex. A. Under the heading "Severability, Originals and Attachments, and Signatures[,]" Clause 52 ("Originals and Attachments") requires the parties to sign addenda to make them binding: "Any addenda or amendments you sign as a part of executing this Lease Contract are binding and hereby incorporated into and made part of the Lease Contract between you and us." Dkt. 337-1 at 7-14 ("Lease Contract," refers to the lease terms on these pages). After the Lease Contract, there is an inventory form and 15 distinct "addenda," each with their own signature block. *Id.* at 15-49. Despite Clause 52's requirement for the parties to sign the signature block to incorporate them into the contract, Exhibit A evidences a solitary electronic signature by Watters. That signature appears

---

[6] Indeed, at best Camden could argue that the waiver clause is ambiguous and necessitates discovery of extrinsic evidence. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 915 (Colo. 1996) (reversing grant of motion to dismiss where contract was ambiguous, and parties should have been permitted to present parole evidence to the fact finder).

in the signature block of the "Construction Addendum." *Id.* at 49. Neither party signed in the signature block of the "Class Action Waiver Addendum" that Lincoln relies upon. *Id.* at 44-45. Thus, by the lease's own terms, the "Class Action Waiver Addendum" is not binding.

Lincoln's untested and self-serving declaration cannot plug these gaps.[7] Consequently, the Court must deny Lincoln's Motion.[8]

### C. Even if the Clauses Applied, Plaintiffs Are Entitled to Discovery to Show They Are Unconscionable and/or Contrary to Public Policy.

Should the Court disagree with Plaintiffs' positions above, the Court should still deny Lincoln's and Camden's Motion without prejudice to permit Plaintiffs to take discovery pertinent to the question of unconscionability, including Plaintiffs' allegations that Defendants, including Lincoln and Camden, used trade associations such as the Texas Apartment Association ("TAA") and the National Apartment Association ("NAA") to collusively set common lease terms, including the class waiver clauses, to extract money from tenants and foreclose their access to remedies. ¶¶ 230-235; *see also* Declaration of Kyle Dingman filed herewith ("Dingman Decl.").

This discovery is needed to resolve the present Motion and Defendants' wider contention that absent class members have class waivers, jury waivers, and arbitration agreements that not only prevent them from serving as named representatives, but also as class members themselves. Dkt. 338 at 4, n.4. Because the parties will need discovery to resolve Defendants' purported

---

[7] The Court should disregard the portions of Defendants' declarations that go beyond exhibiting Weaver's and Watters' leases, as these introduce facts not incorporated by reference nor central to Plaintiffs' claims. *Finley v. Kelly*, 384 F. Supp. 3d 898, 908 (M.D. Tenn. 2019). Moreover, the Court cannot now determine–as a matter of law–what contractual terms, if any, were agreed by the parties through their course of conduct. *Cf.* Dkt. 338 at 5.

[8] To the extent Lincoln argues that all its tenants only ever electronically sign the final page of the agreement, that is both inconsistent with the express terms of Clause 52, and Lincoln's declaration, which admits its electronic forms permit multiple "electronic signature field(s)". *Cf.* Dkt. 337-1, ¶¶ 10-11. It is also a factual assertion Plaintiffs are entitled to test in discovery.

defenses, there is no efficiency to be gained by deciding this issue now as it relates specifically to Weaver and Watters.

### 1. The Federal Arbitration Act and the Case Law in Favor of Arbitration Does Not Apply.

Many of Defendants' authorities address situations where a class action waiver is included alongside a binding arbitration agreement. These cases are inapposite, as valid arbitration clauses are enforceable by the terms of the Federal Arbitration Act, which establishes a federal policy in favor of arbitration and precludes the application of state-law doctrines that might otherwise invalidate an arbitration clause. *Compare Pace v. Hamilton Cove*, 2023 WL 3521797, at *5 (N.J. Super. Ct. App. Div. May 18, 2023) (finding a class action waiver to be unconscionable, and holding "[w]hen unaffected by the case law emanating from the [Federal Arbitration Act], contractual provisions that dismantle or disable important procedures and due process rights provided in our […] rules should not be enforced."); *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 592 (6th Cir. 2014) (FAA case law does not control the validity of a straight class action waiver).

Divorced from an arbitration clause, Defendants cite to no federal statute or policy in favor of enforcing naked class action waiver clauses, likely because such a policy would run contrary to the purpose of Rule 23. *Martrano v. Quizno's Franchise Co.*, 2009 WL 1704469, at *21 (W.D. Pa. June 15, 2009) (Rule 23 "leaves no room for enforceability of private agreements among litigants to forego the efficiencies" of classwide adjudication). The *Quizno's* court thus disregarded class action waivers as well as forum selection clauses in class members' contracts, finding that they undermined the federal policies underlying collective redress under Rule 23. *Id.*

## 2. The Camden Class Action Waiver Clauses Are Voidable.

The Colorado Supreme Court has adopted a fact specific, seven factor test to determine whether a contractual provision is unconscionable. *See Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986). While it is premature to apply this test in the absence of discovery, Plaintiffs offer the following observations which point to the procedural and substantive unconscionability of Camden's class waiver clause, and which warrants further discovery:

- Camden's lease was a standardized form, presented on a take-it-or leave it basis, from a party with significantly more bargaining power. Dkt. 337-2 at 45.
- Camden's 2018 lease was identical to its 2017 lease, bar the insertion of the waiver language at the end of clause 27. *Cf.* Dkt. 337-2 at 5-42 with *id.* at 45-84.
- The cover letter to the 2018 lease does not draw attention to this change. *Id.* at 43.
- The waiver clause was buried in a provision addressing the effects of a default by the owner. Indeed, so buried was the waiver that Camden's attorneys failed to identify them until days before their motion was due despite being ordered by the Court on May 31, 2023, to identify them. *Cf.* Dkt., 338 at 1 n.1.

Consequently, even before discovery, there are factors that suggest a Colorado Court might treat the Camden leases as unconscionable contracts of adhesion.[9] Indeed, on June 5, 2023, Colorado passed legislation that prohibits class action waivers in rental agreements, a factor that would drive a Colorado Court's decision. *See* HOUSE BILL 23-1095;[10] *see also Mason v. Orthodontic Ctrs. of Colo., Inc.*, 516 F. Supp. 2d 1205, 1210 (D. Colo. 2007) (public policy analysis focuses on whether "the Agreement violates public policies as embodied in current statutory law").

---

[9] The Tenth Circuit and Colorado define a contract of adhesion as "not bargained for, but imposed on the public for a **necessary service** on a take it or leave it basis." *Bauer v. Aspen Highlands Skiing Corp.*, 788 F. Supp. 472, 474 (D. Colo. 1992).
[10] https://leg.colorado.gov/sites/default/files/2023a_1095_signed.pdf

### 3. The Lincoln Class Action Waiver Clauses Are Voidable.

Tennessee Courts recognize that "a lack of meaningful choice on the part of one party," "contract terms that are unreasonably harsh," standardization of an agreement, and unequal bargaining power are indicative of unconscionable contract terms. *Rubio v. Carreca Enterprises, Inc.*, 490 F. Supp. 3d 1277, 1289 (M.D. Tenn. 2020). Tennessee Court's undertake a fact-intensive inquiry to determine unconscionability. *All Com. Floors, Inc. v. Com. Floor Prods., LLC*, 2019 WL 330880 at * 5 (court must consider "all the facts and circumstances"); Tenn. Code Ann. § 66-28-204 (2)(b) (if a party raises unconscionability "the parties shall be afforded a reasonable opportunity to present evidence as to the setting, purpose, and effect of the rental agreement or settlement to aid the court in making the determination.").

As with Camden's clauses, there are various facts that require development before the Court can resolve the unconscionability analysis. The partially signed Lincoln lease exhibited is the NAA standard form lease, presented to Lincoln's renters on a take-it-or-leave it basis, with the class waiver provision buried among over 15 addenda, and alongside several one-sided provisions. Dkt. 337-1 at 53 (granting Lincoln a free license of its tenants' likenesses). Importantly, the NAA class action waiver addenda included in Lincoln's lease appears to be the result of the collusive model lease setting process challenged by Plaintiffs. ¶¶ 230-235.[11] Specifically: a) the NAA model lease set by the Defendants was modeled upon the TAA model lease developed by the Defendants (Dingman Decl., Ex. 1 at 25; Ex. 2 at "Lease Advisory"); b) the TAA first introduced a class action

---

[11] Indeed, Defendants' efforts to jointly insert class action waivers appears to be directed to avoiding suits such as this, in which the quantum of the individuals' losses are too little to bring an individual claim in light of the complexities and expenses involved with such claim (*e.g.*, discovery costs and expert evidence). In this manner, the class waiver can be seen to contradict the Tennessee legislature's strong "public policy against exculpatory clauses in landlord-tenant contracts", epitomized by their prohibition in T.C.A. § 66-28-203(a). *Cole v. Wyndchase Aspen Grove Acquisition Corp.*, 2006 WL 2827452, at *7 (M.D. Tenn. Sept. 28, 2006). *See also Fiser v. Dell Comput. Corp.*, 2008-NMSC-046, 144 N.M. 464, 188 P.3d 1215, 1221.

waiver into its model lease in or around 2017 (*id.*, Ex. 3, clause 43); c) the NAA first introduced the class action waiver addenda to their form lease in 2018 (*id.*, Ex. 4; Ex. 5 at "Sample NAA Addenda/Form"); and d) in response to reports that tenants did not wish to sign class action waivers in the model leases, in Spring 2018 counsel for TAA advised landlords to make the tenants sign the model waiver (along with all the other terms) or "tell them they will have to live elsewhere." *Id.* Ex. 6 at 34.

These facts concerning Lincoln's formation and implementation of this contractual provision would be an independent basis for voiding Defendants' class waiver clauses. *Currency Conversion Fee Antitrust Litig.*, 2012 WL 401113, *7-9 (S.D.N.Y. Feb. 8, 2012) (Section 1 violation for banks to agree to include mandatory arbitration clauses in their respective agreements). As such, at minimum, the Court should deny Defendants' Motion without prejudice to permit discovery.

## II. **CONCLUSION**

For the above reasons, the Court must deny Defendants' Motion.

Dated: July 21, 2023          /s/ *Tricia R. Herzfeld*

Tricia R. Herzfeld (#26014)
Anthony A. Orlandi (#33988)
**HERZFELD SUETHOLZ GASTEL LENISKI AND WALL, PLLC**
223 Rosa L. Parks Avenue, Suite 300
Nashville, TN 37203
Telephone: (615) 800-6225
tricia@hsglawgroup.com
tony@hsglawgroup.com

*Liaison Counsel*

Patrick J. Coughlin
Carmen A. Medici
Fatima Brizuela
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 798-5325
Facsimile: (619) 233-0508
pcoughlin@scott-scott.com
cmedici@scott-scott.com
fbrizuela@scott-scott.com

Patrick McGahan
Amanda F. Lawrence
Michael Srodoski
G. Dustin Foster
Isabella De Lisi
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06145
Telephone: (860) 537-5537
Facsimile: (860) 537-4432
pmcgahan@scott-scott.com
alawrence@scott-scott.com
msrodoski@scott-scott.com
gfoster@scott-scott.com
idelisi@scott-scott.com

Kyle Dingman
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
7718 Wood Hollow Drive

13

Suite 105
Austin, TX 78731
Telephone: (512) 337-8430
Facsimile: (512) 727-3432
kdingman@scott-scott.com

Stacey Slaughter
Thomas J. Undlin
Geoffrey H. Kozen
Stephanie A. Chen
J. Austin Hurt
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
sslaughter@robinskaplan.com
tundlin@robinskaplan.com
gkozen@robinskaplan.com
schen@robinskaplan.com
ahurt@robinskaplan.com

Swathi Bojedla
Mandy Boltax
**HAUSFELD LLP**
888 16th Street, N.W., Suite 300
Washington, DC 20006
Telephone: (202) 540-7200
sbojedla@hausfeld.com
mboltax@hausfeld.com

Gary I. Smith, Jr.
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
gsmith@hausfeld.com

Katie R. Beran
**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Telephone: 1 215 985 3270
kberan@hausfeld.com

*Interim Co-Lead Counsel*

14

Eric L. Cramer
Michaela L. Wallin
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
ecramer@bm.net
mwallin@bm.net

Daniel J. Walker
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20006
Telephone: (202) 559-9745
dwalker@bm.net

Brendan P. Glackin
Dean M. Harvey
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, Suite 2900
San Francisco, CA 94111
Telephone: 415-956-1000
bglackin@lchb.com
dharvey@lchb.com

Mark P. Chalos
Hannah R. Lazarz
Kenneth S. Byrd
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
222 2nd Avenue South, Ste. 1640
Nashville, TN 37201
(615) 313-9000
mchalos@lchb.com
hlazarz@lchb.com
kbyrd@lchb.com

Steve W. Berman
Breanna Van Engelen
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292

Christian P. Levis
Vincent Briganti
Peter Demato
Radhika Gupta
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
pdemato@lowey.com
rgupta@lowey.com

Christopher M. Burke
Walter W. Noss
Yifan (Kate) Lv
**KOREIN TILLERY P.C.**
707 Broadway, Suite 1410
San Diego, CA 92101
Telephone: (619) 625-5621
Facsimile (314) 241-3525
cburke@koreintillery.com
wnoss@koreintillery.com
klv@koreintillery.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri
Steven N. Williams
Cadio Zirpoli
Kevin E. Rayhill
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
czirpoli@saverilawfirm.com
krayhill@saverilawfirm.com

Jennifer W. Sprengel
Daniel O. Herrera
Alexander Sweatman
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, IL 60603

Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Benjamin J. Widlanski
Javier A. Lopez
**KOZYAK TROPIN &
THROCKMORTON LLP**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
bwidlanski@kttlaw.com
jal@kttlaw.com

Telephone: 312-782-4880
Facsimile: 312-782-4485
jsprengel@caffertyclobes.com
dherrera@caffertyclobes.com
asweatman@caffertyclobes.com

*Plaintiffs' Steering Committee Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

                                        */s/ Tricia R. Herzfeld*
                                        Tricia R. Herzfeld