# EXHIBIT A

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-md-3071<br>MDL No. 3071<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br><br>JURY DEMAND<br><br>This Document Relates to:<br>ALL CASES |

## PLAINTIFFS' PROPOSED SCHEDULING ORDER

Following an initial status conference that the Court held on May 31, 2023, the Court directed the Parties to meet and confer in person with the goal of developing a proposed scheduling order, which it ordered the Parties to file no later than **July 24, 2023**. (Dkt. 243, ¶7.)

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, the Local Rules of this Court, and the Court's June 1 Order (Dkt. 243), and to secure the just, speedy, and inexpensive determination of this action, the Court orders that the following schedule shall govern proceedings.

Any motion to modify the case management order or any case management deadline shall be filed at least seven days in advance of the earliest impacted deadline. Unless a joint motion, the motion for modification should include a statement confirming that counsel for the moving party has met and conferred with opposing counsel as to the requested modification(s) or extension(s), and whether there is any objection. The motion for modification should also include: (i) the trial date and all deadlines, even unaffected deadlines, so that it will not be necessary for the Court to review one or more previous case management orders in consideration of the motion; and (ii) a statement that the requested extension will still conform to the requirements of Local Rule

1

16.01(h)(1) that no dispositive motion deadline, including response and reply briefs, shall be later than 90 days in advance of the trial date. Motions for extensions should also demonstrate good cause as required by Fed. R. Civ. P. 16(b)(4). Counsel must promptly notify the Court of developments in the case that could significantly affect the case management schedule.

The Court expects the Parties and their counsel to work cooperatively throughout this litigation to narrow the issues in dispute, and to use reasonable, good faith, and proportional efforts to preserve, request, identify, and produce relevant information and resolve discovery disputes.

**PLEADINGS**

1. Defendants must file their answer to the Multifamily Plaintiffs' First Amended Consolidated Class Action Complaint ("CAC") within **30 days** of the Court's decision on the motions to dismiss (should the motion be denied in full or substantially denied).

2. Plaintiffs must file their motion for leave to file a First Amended Consolidated Amended Student Complaint ("Student CAC") on or before **August 1, 2023**.

3. Plaintiffs and Defendants must file a joint statement outlining their proposed schedule for Defendants to move to dismiss or answer the Student CAC within seven days of the Court's order on Defendants' omnibus motion to dismiss the CAC (Dkt. 341).

4. Any motion that seeks the Court's permission to amend or supplement the pleadings or to add Parties, together with supporting documents, must be filed and served on or before **August 1, 2024**. This deadline does not impact the parties' rights to amend their pleadings as of right under the Federal Rules.

5. Any motion that seeks to amend or supplement the pleadings with the Court's permission must include a redlined version reflecting the changes contained in the proposed pleading.

6. Such motions must comply with Local Rules 7.01 and 15.01. Failure to comply with local rules may result in summary denial of the motion(s).

7. The moving Party may file a reply memorandum as a matter of right in connection with a motion for leave to amend a pleading if the other side argues that the amendment would be futile.

**DISCOVERY DEADLINES AND LIMITS**

1. For purposes of Rule 26(d)(1), discovery requests may be served on or after **August 8, 2023**, and the prior discovery stay is lifted as of that date.

2. The Parties shall serve their initial disclosures required by Rule 26(a)(1) on or before **August 18, 2023**. In all subsequently consolidated actions, the newly added parties shall serve initial disclosures within **21 days** of consolidation. If the newly-added parties disclose(d) documents by category and location pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii), they will produce copies of the documents themselves in response to discovery requests.

3. The Parties must disclose the documents and/or information described in Attachment 1 on or before **August 18, 2023**, without the need for a request pursuant to Fed. R. Civ. P. 34 ("Attachment 1 Disclosures"). In all subsequently consolidated actions, the newly added parties shall serve Attachment 1 Disclosures within **21 days** of consolidation.

4. Fact discovery must be commenced in time to be completed on or before **November 7, 2024**. Privilege log procedures shall be governed by the Protective Order. To facilitate the scheduling and taking of depositions and the briefing of class certification, the Court also establishes the following interim deadlines for the production of documents and data:

    a. The production of structured data that relates to issues of class certification shall be complete by **December 15, 2023**. Defendants shall each produce a sample of their structured databases no later than **September 14, 2023**, and meet and confer with Plaintiffs, including answering reasonable and proportionate questions about the form and contents of the structured data and any perceived deficiencies therein, in order to facilitate the timely production of an agreed upon scope of structured data by **December 15, 2023**.

    b. The party receiving the structured data under paragraph 1(a) shall raise questions regarding the production by **January 31, 2024**. The party producing the structured data shall provide fulsome answers to those questions by **February 28, 2024**. Further questions may be asked and answered in a reasonably prompt period.

    c. The Defendants will prioritize the production of documents from five Priority Custodians per Defendant and will complete the production for such Priority Custodians by **March 25, 2024**. The Plaintiffs will prioritize the production of documents from five Priority Custodians and will complete the production for such Priority Custodians by **March 25, 2024**. Each Party will notify all Parties when they have completed, to the best of their knowledge, productions for any given custodian.

d. The parties must substantially complete their document productions 120 days before the close of fact discovery, by **July 10, 2024**.

e. A responding Party shall begin rolling productions of documents in response to the first sets of requests for production of documents by **December 15, 2023**.

5. Limitations on Written Discovery:

    a. <u>Interrogatories</u>: Interrogatories will be counted in accordance with Fed. R. Civ. P. 33(a)(1). The parties must coordinate efforts and each side must avoid serving duplicative or unduly burdensome interrogatories.

        i. *Plaintiffs*: Plaintiffs, including Multifamily and Student Plaintiffs, may jointly serve 25 interrogatories on each Defendant.[1] In addition, each Plaintiff Class may separately serve an additional five (5) interrogatories on each Defendant.

        ii. *Defendants*: Defendants may jointly serve 25 interrogatories on each of the individual named Plaintiffs, but no more than 60 unique interrogatories across all named Plaintiffs.

    b. <u>Rule 34 Document Requests</u>: Consistent with Fed. R. Civ. P. 34, there shall be no limits on the number of requests to produce the parties may serve. Each side must endeavor to jointly serve their requests where there is overlap. Plaintiffs may direct their requests to Defendants or, for any discrete issues, to individual parties. Defendants may direct their requests to all Plaintiffs or, for any discrete issues, to an individually named Plaintiff or Plaintiff Class. No rights, obligations, or objections available by the Federal Rules of Civil Procedure are modified by this section.

    c. <u>Requests for Admission</u>:

        i. The parties will meet and confer in good faith to determine if a process for a stipulation and/or a deferred Rule 30(b)(6) deposition can be agreed to concerning various evidentiary issues addressed in the Federal Rules of Evidence ("FRE"), including authenticity (FRE 902 & 903), duplicates (FRE 1001(4) & 1003), the requirement for a sponsoring witness to establish authenticity or best evidence, and status of a document as a business record (FRE 803(6)).

---

[1] In this Order, the discovery limits applying to a "Defendant" shall apply to each Defendant family. Similarly, the discovery limits applying to a "Plaintiff" shall apply to each Plaintiff family (i.e., spouses suing as joint tenants).

4

ii. With respect to evidentiary issues not addressed in the prior paragraph, all parties must endeavor to coordinate to ensure that any such requests do not cause unnecessary duplication. With respect to such non-evidentiary issues:

   1. *Plaintiffs*: Plaintiffs, including Multifamily and Student Plaintiffs, may jointly serve 30 Requests for Admission on each Defendant. In addition, each Plaintiff Class may separately serve an additional 20 Requests for Admissions on each Defendant. These limitations exclude requests to establish the authenticity and/or admissibility of documents.

   2. *Defendants*: Defendants may jointly serve 30 Requests for Admission on each named Plaintiff, but no more than 60 unique requests across all named Plaintiffs.

iii. Requests for Admission must be served no later than 90 days before the close of fact discovery, except for requests to establish the authenticity and/or admissibility of documents.

d. <u>Depositions</u>: Depositions shall be governed by the Order for Deposition Protocol.

e. <u>Third Party Subpoenas</u>:

   i. Absent good cause to the contrary, all third-party subpoenas must be served in sufficient time, taking into account the nature and volume of the material requested, to allow for resolution of reasonably anticipated disputes and production of the material requested no later than the deadline for the completion of all fact discovery. In no event shall third-party subpoenas be served less than 45 days prior to the deadline for completion of fact discovery.

   ii. Plaintiffs and Defendants must give each side notice of the issuance of a third-party subpoena. Such notice must be given at least two (2) business days in advance per Local Rule 45.01(d). Plaintiffs and Defendants must exchange all third-party productions within 14 days of receipt of the productions or at least 14 days before the deposition of the producing third party, whichever is earlier.

## **ADDITIONAL DISCOVERY ORDERS**

1. The parties will meet and confer to negotiate a stipulated proposed Protective Order, Deposition Protocol, and Order on the Production of Electronically Stored Information and Paper Documents ("ESI Protocol") by **August 17, 2023**. The parties will submit the proposed stipulated orders, or if no agreement is reached,

5

competing proposed orders accompanied by a joint letter brief of no more than 10 pages per proposed order, by **August 28, 2023**.

2. The parties will meet and confer to negotiate a stipulated proposed Order Regarding Search Methodology for Electronically Stored Information ("SMO") by **September 8, 2023**. The parties will submit the proposed stipulated order, or if no agreement is reached, competing proposed orders accompanied by a joint letter brief of no more than 10 pages per proposed order, by **September 22, 2023**.

3. The Protective Order, Deposition Protocol, ESI Protocol, and SMO entered by Court shall automatically apply to parties in all subsequently consolidated actions, unless modified by the Court in response to a motion filed by such newly added party within 14 days of their consolidation. Notice of the SMO shall be provided to recipients of Third-Party Subpoenas, who shall be bound by the SMO.

## **CLASS CERTIFICATION MOTIONS AND RELATED EXPERT DISCOVERY**

4. Plaintiffs must file and serve their motions for class certification, together with supporting documents and related expert reports on or before **July 23, 2024**.[2]

5. Defendants must file and serve their memoranda in opposition to class certification, together with supporting documents and related expert reports, on or before **August 22, 2024**. In addition, Defendants must file and serve any *Daubert* motion seeking to exclude expert opinion pertaining to class certification on or before **August 22, 2024**.

6. Plaintiffs must file and serve their reply memoranda and any rebuttal expert reports on or before **September 19, 2024**. In addition, Plaintiffs must file and serve any *Daubert* motions seeking to exclude expert opinion pertaining to class certification, and their memoranda in response to any *Daubert* motions filed by Defendants, on or before **September 19, 2024**.

7. Defendants must file and serve their memoranda in response to any *Daubert* motions filed by Plaintiffs, and their reply in support of their own *Daubert* motions, on or before **October 3, 2024**.

8. Plaintiffs must file and serve their reply memoranda in support of their own *Daubert* motions on or before **October 17, 2024**.

9. All expert material, including back-up data, relied upon in any expert report pertaining to class certification must be produced no later than three (3) business days after service of the expert report.

---

[2] These deadlines are contingent on Defendants satisfying their obligations regarding the timely production of structured data and providing satisfactory answers to structured data questions.

## **TRIAL EXPERTS**

Disclosure of the identities of expert witnesses under Rule 26(a)(2)(A), the full disclosures required by Rule 26(a)(2)(B) (including the written report prepared and signed by each expert witness), and the full disclosures required by Rule 26(a)(2)(C), must be made as follows:

1. Identification and Rule 26(a)(2)(B) and 26(a)(2)(C) disclosures must be made for any expert who may testify at trial regarding issues on which the proffering party bears the burden of persuasion no later than **December 6, 2024**.

2. Identification and Rule 26(a)(2)(B) and 26(a)(2)(C) disclosures must be made for any expert who may testify at trial in rebuttal to any initial expert ("Rebuttal Report") no later than **January 10, 2025**. In addition, Parties must file and serve any *Daubert* motion seeking to exclude expert opinion pertaining to an Opening Report on or before **January 10, 2025**.

3. Written reports and accompanying 26(a)(2)(C) disclosures in reply to any Rebuttal Report ("Reply Reports) must be served by **January 31, 2025**. Parties must file and serve their memoranda in response to any *Daubert* motions seeking to exclude expert opinion pertaining an Opening Report on or before **January 31, 2025**. Parties must file and serve any *Daubert* motions seeking to exclude expert opinion offered in rebuttal to any Opening Report on or before **January 31, 2025**.

4. Parties must file and serve their reply memoranda in support of their *Daubert* motions seeking to exclude expert opinion pertaining to an Opening Report on or before **February 14, 2025**. Parties must file and serve their memoranda in response to any *Daubert* motions seeking to exclude expert opinion offered in rebuttal to any Opening Report on or before **February 14, 2025**. Parties must file and serve any *Daubert* motion seeking to exclude expert opinion pertaining to a Reply Report on or before **February 14, 2025**.

5. Parties must file and serve their reply memoranda in support of their *Daubert* motions seeking to exclude expert opinion offered in rebuttal to any initial expert on or before **February 28, 2025**. Parties must file and serve their memoranda in response to any *Daubert* motions seeking to exclude expert opinion pertaining to a Reply Report on or before **February 28, 2025**.

6. Parties must file and serve their reply memoranda in support of their *Daubert* motions seeking to exclude expert opinion pertaining to a Reply Report on or before **March 7, 2025**.

7. All expert material, including back-up data, relied upon in any report of an expert who may testify at trial must be produced no later than three (3) business days after service of the expert report.

**DISPOSITIVE MOTIONS AND TRIAL READY DATE**

Motions for Summary Judgment under Rule 56(a) shall be made in accordance with the following schedule. No party may file a motion for summary judgment before all fact and expert discovery has been completed without first obtaining permission from the Court. Permission must be sought by electronically filing a letter of no more than three (3) pages briefly setting forth the basis for the motion, whether discovery relating to the issue or issues to be addressed by the motion is complete, and why judicial efficiency would be served by allowing the motion to proceed. The other party or parties may file brief letters in support of or in response to the request within five (5) days. Denial of a request for permission to file an interim dispositive motion shall not be taken as an indication of the Court's view about the merits of the proposed motion.

1. The Parties shall file any Motions for Summary Judgment under Rule 56 on or before **March 17, 2025**.

2. Parties must file and serve their memoranda in response to any Summary Judgment motions on or before **April 14, 2025**.

3. Parties must file and serve their replies in support of any Summary Judgment motions on or before **April 28, 2025**.

4. Argument on the Parties' Summary Judgment motions, will be held in **May 2025** (if necessary, *see* Local Rule 78.01).

5. For cases filed in the Middle District of Tennessee, the Parties shall be trial ready no later than **July 28, 2025**. The Court will set a trial for six (6) weeks starting on a convenient date shortly thereafter.

**MEDIATION AND ALTERNATIVE DISPUTE RESOLUTION**

1. The Parties shall provide lists of acceptable and available mediators, ranked in order of preference, on or before **July 25, 2023**. To the extent possible, the Parties should file a joint list of acceptable mediators.

2. The Parties shall engage in good-faith mediation before a mutually agreed upon mediator, or a mediator appointed from the Parties' lists if the Parties cannot agree, no later than **October 20, 2023**.

3. In the event the Parties have not resolved the claims, they shall engage in good-faith mediation before a mutually agreed upon mediator, or a mediator appointed from the Parties' lists if the Parties cannot agree, no later than **October 25, 2024**.

4. Nothing in this Order shall prevent the Parties, or a subset of the Parties, from engaging in additional mediation or settlement conferences with the aim of resolving the claims in this case.

5. The Court may *sua sponte* schedule status conferences or settlement conferences to explore options for alternative dispute resolution.

**CASE MANAGEMENT CONFERENCES**

1. The Parties shall conduct status conferences before Magistrate Judge Holmes **every 30 days** from **September 6, 2023** to **December 31, 2024**. These conferences shall be scheduled in accordance with Magistrate Judge Holmes's calendar.

2. The Parties shall conduct status conferences before Judge Crenshaw **every 60 days** from **October 6, 2023** to **December 31, 2024**. The Parties will provide their availability for these conferences within five days of entry of this Order.

3. The Parties will submit a joint status report **seven (7) days** before each status conference.

**IT IS SO ORDERED.**

Date: _____, 2023

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

**ATTACHMENT 1**

As part of these initial, limited disclosures, the parties need not disclose every document falling within items 1-6 below, but will disclose documents sufficient to show the requested information for each year for the period from January 1, 2016 through June 30, 2023, to the extent such documents exist and are readily available. Such disclosures will be subject to a duty to supplement or amend the disclosures once discovery commences.

By providing information pursuant to these disclosures, the parties do not waive or limit their respective rights to object to, or oppose, any request for further disclosure or discovery.

The omission of any particular category of documents from this Order does not preclude the parties from seeking such documents in discovery once discovery commences. In making the disclosures pursuant to this Attachment, a disclosing party is not making any representations regarding whether it may use any documents, people, or information in support of its claims or defenses, reserves all rights to challenge the relevance of any disclosures, and is not agreeing that the persons disclosed possess information relevant to the claims or defenses.

1. **Key Personnel and Lease Information**

    a. **Lessor Defendants:**

      i. Provide documents sufficient to show the names and titles of individuals with the following positions or responsibilities relating to your ownership and/or management of Multifamily and/or Student Housing rental properties ("Properties"):

        1. member of the board of directors;

2. all executives with the title of Director, Vice President, or higher (such as SVP, CEO, COO, CFO, etc.), as well as their administrative assistants or secretaries;

3. investor and/or creditor relations;

4. the person or persons who have responsibility for:

    a. determining, setting, adopting, or implementing the rental price at which each of your units and/or beds is set at each of your Properties;

    b. determining, setting, adopting, or implementing occupancy strategies and/or policies for each of your Properties;

    c. gathering competitive intelligence and/or comparable ("comps"), regarding prices, occupancy, and revenue management in the Multifamily and/or Student Housing markets;

    d. handling tenant complaints concerning the pricing of their unit and/or bed within your Properties;

    e. communicating with RealPage and/or any RealPage Pricing Advisor, Revenue Manager, and/or LRO Advisor concerning pricing, lease terms, market data, and/or competitive intelligence relating to the Multifamily and/or Student Housing markets;

5. the person or persons who supervise the department(s) responsible for pricing, leasing, occupancy, and competitive intelligence;

11

6. all executives with the title of Director, Vice President, or higher, as well as certain limited executives with the title of Manager,[3] who were an officer or board member of, or otherwise formally-designated participant (such as a member of a relevant committee) of any of the following:

    a. National Apartment Association;

    b. National Multifamily Housing Council;

    c. Institute of Real Estate Management;

    d. National Association of Residential Property Managers;

    e. Pension and Real Estate Association;

    f. Urban Land Institute; and

    g. Any other regional trade association and chapter, including rental housing associations, multifamily housing associations, apartment associations, real estate associations, property management associations, and/or property owners' associations in the Multifamily and Student Housing markets within which you operate.

ii. All executives with the title of Director, Vice President, or higher, as well as certain limited executives with the title of Manager, whose responsibilities include determining and/or approving your own Multifamily and/or Student Housing rental unit/bed pricing, leasing, or occupancy decisions.

---

[3] "Manager" refers to an individual who oversees a business unit within the Defendant, but not individuals with the position of 'manager' who report to such individuals.

12

Case 3:23-md-03071 Document 387-1 Filed 07/24/23 Page 13 of 20 PageID #: 3487

iii. You may create a list of individuals with the job responsibilities listed in item 1(a)(i)-(ii) above in lieu of producing a formal organizational chart, so long as such a list provides, to the extent the information is readily available, the individual's name, title, the time period during which they held that title, and for item 1(a)(i)(6) above, the name of the trade association of which they were an officer, board member, or formally-designated participant and any committee memberships held.

iv. Provide documents or information sufficient to identify: (1) each Property that you owned and/or managed in the United States between January 1, 2016 and June 30, 2023, by name and address; (2) the total number of units and/or beds for each of the Properties identified; (3) identify any and all revenue management, dynamic pricing, and/or rental pricing software used at each of the Properties identified, whether to set rental prices or guide decision-making in any respect; (4) the time period during which each software program identified in sub-paragraph (3) was used at the Properties identified; (5) annual revenues for each Property utilizing revenue management software including LRO, YieldStar, and/or AI Revenue Management, from 2016 through 2023; and (6) net profits earned for each Property utilizing revenue management software including LRO, YieldStar, and/or AI Revenue Management, from 2016 through 2023.

v. Identify whether you are covered by any insurance agreement which may be liable to satisfy in whole or in part any judgment which may be entered in

13

this action or to indemnify or reimburse for payments made to satisfy such judgment, and if so, state:

1. The full and correct name of each such insurance company;

2. The insurance policy number for each company policy;

3. The maximum limit of insurance provided by each such policy;

4. The name and address of the person having custody of the policies; and

5. Whether defense costs are deducted from the coverage provided;

vi. If your answer to 1(a)(iv) was affirmative, is there more than one insurance policy? If so, please identify:

1. Which policy or policies provide primary insurance coverage, and which provide additional or excess coverage; and

2. the dollar amount of coverage for each policy.

vii. Provide documents or information sufficient to identify whether you were assigned a RealPage Pricing Advisor, Pricing Analyst, Revenue Manager, and/or LRO Advisor, and if so: (1) identify the Property or Properties for which a RealPage Pricing Advisor, Pricing Analyst, Revenue Manager, and/or LRO Advisor is/was used; (2) the identities of all RealPage Pricing Advisors, Pricing Analysts, Revenue Managers, and LRO Advisors assigned to the Properties identified in sub-paragraph (1); and (3) the time period during which each Pricing Advisor, Pricing Analyst, Revenue Manager, and/or LRO Advisor was in this role for their respective property assignments.

14

viii. If you do not use RealPage's pricing advisory services, identify whether you employed any in-house personnel who once worked for RealPage and/or was trained by RealPage in its revenue management software, including YieldStar, LRO, and AI Revenue Management, who were responsible for, including but not limited to reviewing, accepting, and/or overriding RealPage's recommended rental price. If so, identify those individuals, their titles, the properties they were responsible for, and tenure.

ix. Provide documents or information sufficient to identify whether any of your standard Property lease agreements contain an arbitration provision, jury waiver, class waiver, or release of claims, and if so, identify all states in which your standard lease agreements contain an arbitration provision, jury waiver, class waiver, or release of claims, and produce examples of all such leases.

b. **RealPage/Thoma Bravo Defendants:**

i. Organizational charts and/or documents sufficient to show the names and titles of individuals with the following positions or responsibilities relating to RealPage's price optimization and/or revenue management software for the Multifamily and Student Housing markets, including YieldStar, LRO, Market Analytics, and RealPage's AI Revenue Management, as well as any functionality that communicates with any RealPage pricing algorithm that generates recommended rental prices for the Multifamily and Student Housing markets (together "RealPage's RMS").

1. member of the board of directors;

15

2. all executives with the title of Director, Vice President, or higher (such as SVP, CEO, COO, CFO, etc.), as well as their administrative assistants or secretaries;

3. investor and/or creditor relations;

4. the person or persons who have responsibility for:

   a. the design, innovation, and implementation of RealPage's RMS;

   b. overseeing the gathering and compiling of the data RealPage trains its RMS with to make pricing and occupancy recommendation to its clients, including but not limited to survey data and transactional data input into the RealPage platform;

   c. business development with Property management companies and/or owners who use, or may use in the future, RealPage's RMS; and

   d. communications with clients concerning a client's low acceptance rate, a high deviation, and/or high variance rate, relation to RealPage recommended pricing or occupancy levels at the client's Property and/or Properties;

ii. Identify the person(s) and department(s) responsible for supervising and training RealPage Pricing Advisors, Revenue Managers, and/or LRO Advisors, as well as any of your employees responsible for interpreting the output and/or pricing recommendations of any RealPage RMS;

16

iii. Identify all Pricing Advisors, Revenue Managers, and LRO Advisors, including the Lessors and regions within the U.S. to which they were assigned, and for what time periods;

iv. Identify: (a) the Properties using RealPage RMS for every year from the start of the relevant period, January 1, 2016 through June 30, 2023; (b) the owner and or operator of those Properties who contracts with RealPage for use of its RMS at those Properties;

v. Identify all executives with the title of Director, Vice President, or higher, as well as certain limited executives with the title of Manager, who were an officer or board member of, or otherwise formally-designated participant (such as a member of a relevant committee) of any of the following:

1. National Apartment Association;

2. National Multifamily Housing Council;

3. Institute of Real Estate Management;

4. National Association of Residential Property Managers;

5. Pension and Real Estate Association;

6. Urban Land Institute; and

7. Any other regional trade association and chapter, including rental housing associations, multifamily housing associations, apartment associations, real estate associations, property management associations, and/or property owners' associations in the Multifamily and Student rental housing markets within which you operate.

    c. **Additional Thoma Bravo Disclosure:** Identify the person or persons who had and/or have primary responsibility for: (a) Thoma Bravo's acquisition of RealPage; (b) management of Thoma Bravo's investment in RealPage; and (c) communicating with RealPage's executives.

    d. **Plaintiffs:** Identify the units and/or beds rented within the Property or Properties during the relevant time period, by name, address and landlord, as well as any price increase experienced during that time.

2. **Email Systems:** Identification of the email system used, including the name of the email system, version number (including applicable dates for different versions, if readily available), and time period or number of days for which email is retained on the system.

3. **Non-custodial Data Sources:** A list of known non-custodial data sources (*e.g.*, shared drives, servers, etc.), if any, likely to contain discoverable ESI. These lists will identify all databases that are likely to contain discoverable structured data, and the particular type of data each source of structured data contains, and

4. **Document Retention Policies:** Document retention and/or destruction policies, including policies or systems that automatically deleted certain types of documents or data (*e.g.*, email) after a certain period, that applied to documents and data likely to be relevant to the claims or defenses in these cases and that were in effect at any time during the period from January 1, 2016 to June 30, 2023.

5. **Employee Technology Use Policies:** Employee Technology Use Policies in effect during the period of January 1, 2016 to June 30, 2023, including (if they exist) policies concerning use by employees of cellphones, notebook computers, and tablets for business purposes. Without intending to limit, such policies may go by the following names: bring-your-own

device (BYOD) policies, choose-your-own-device (CYOD) policies, corporate-liable-employee-owned (CLEO) policies, corporate-owned/personally enabled (COPE) policies, mobile-device-management (MDM) policies, and dual-use device policies. Plaintiffs and Defendants will disclose if they had no such policies during the identified time period.

6. **Inaccessible Data:** A list of known data sources, if any, likely to contain discoverable ESI and that the party asserts are not reasonably accessible under Rule 26(b)(B) or Rule 26(b)(2)(C)(i).

7. **Government Productions**: Defendants shall produce all documents and correspondence previously produced to the Department of Justice, the Federal Trade Commission, Congress, any State Attorney General, and/or any other state or federal regulatory agency in relation to any civil investigative demand or any formal or informal document discovery, any white papers, narrative responses, or any other manner of discovery provided to such regulators, concerning the operation of RealPage RMS.[4]

---

[4] This includes, but is not limited to, Defendant RealPage's responses to the November 22, 2022 letter request from Senators Elizabeth Warren, Tina Smith, Bernard Sanders, and Edward J. Markey to the Chief Executive Officer and President of RealPage, as well as any related follow up correspondence.

19