# EXHIBIT A

**From:** Fatima Brizuela <fbrizuela@scott-scott.com>
**Sent:** Friday, July 28, 2023 10:28 PM
**To:** Srinivasan, Jay P. <JSrinivasan@gibsondunn.com>; bmiller@mayerbrown.com; sfunk@simsfunk.com; casasg@gtlaw.com; chittinger@bakerlaw.com; michael.maddigan@hoganlovells.com
**Cc:** Patrick McGahan <pmcgahan@scott-scott.com>; Carmen Medici <cmedici@scott-scott.com>; Swathi Bojedla <sbojedla@hausfeld.com>; Gary I. Smith, Jr. <GSmith@hausfeld.com>; Stacey Slaughter <sslaughter@robinskaplan.com>; G Kozen <gkozen@robinskaplan.com>; Isabella De Lisi <idelisi@scott-scott.com>; Michael P. Srodoski <msrodoski@scott-scott.com>; Patrick Coughlin <pcoughlin@scott-scott.com>
**Subject:** In re RealPage, Inc., Rental Software Antitrust Litig. (II), No. 3:23-md-03071

[WARNING: External Email]

Counsel,

Attached please find Plaintiffs' proposed initial structured data requests to the Lessor Defendants. The proposed structured data requests are provided here as a courtesy, and Plaintiffs reserve the right to amend these requests prior to discovery opening. We welcome the opportunity to discuss these in the near term.

Have a nice weekend, all.

Fatima



**Fatima Brizuela**, Attorney
619.798.5312
fbrizuela@scott-scott.com
www.scott-scott.com
600 W. Broadway + Suite 3300
San Diego, CA 92101
NEW YORK+LONDON+AMSTERDAM+BERLIN+CALIFORNIA+CONNECTICUT+VIRGINIA+OHIO+ARIZONA

This e-mail may contain confidential or privileged information. If you believe you have received it in error, please notify the sender immediately and delete this message without copying or disclosing it.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

|  |  |
|---|---|
| **IN RE REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II)** | **Case No. 3:23-md-3071**<br>**MDL No. 3071**<br><br>**This Document Relates to:**<br>**ALL CASES** |

## PLAINTIFFS' FIRST SET OF REQUESTS
## TO LESSOR DEFENDANTS FOR THE PRODUCTION OF DOCUMENTS AND
## ELECTRONICALLY STORED INFORMATION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs Jason Goldman, Jeffrey Weaver, Billie Jo White, Nancy Alexander, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Mia Lauder, Rachel Meredith, Benjamin Dempsey, and Ivonne Arriola Mendieta ("Plaintiffs"), on behalf of themselves and all others similarly situated, and by and through counsel, hereby request that Lessor Defendants respond to this First Set of Requests for Production of Documents and Electronically Stored Information and produce the documents and electronically stored information requested herein no later than 30 days after the commencement of discovery or other date ordered by the Court or agreed upon by the parties, at the offices of Scott+Scott Attorneys At Law LLP (The Helmsley Building, 230 Park Avenue, 17th Fl. New York, NY 10169), by secure electronic file transfer, or by such other mutually agreeable means of transfer or delivery, in accordance with the ESI Protocol, to be agreed

by the Parties or entered by the Court. Corrections to, and supplemental responses of, the production of documents and electronically stored information are required as provided for in the Federal Rules of Civil Procedure.

## DEFINITIONS

1. The definitions and rules of construction set forth in Federal Rule of Civil Procedure 34 are hereby incorporated and shall apply to Plaintiffs' First Set of Requests to Lessor Defendants for the Production of Documents and Electronically Stored Information ("Requests").

2. All definitions and abbreviations in these Requests have the same meaning as the definitions and abbreviations in the First Amended Consolidated Class Action Complaint (ECF No. 314), unless otherwise stated herein.

3. The following additional definitions and rules of construction shall apply:

    a. The singular form of a word includes the plural and vice versa;

    b. The present tense shall be construed to include the past tense and vice versa;

    c. "And" and "or" shall be construed either disjunctively or conjunctively, whichever is appropriate, to have the broadest reach;

    d. "Any" means one or more, "Each" means each and every, and "All" means all and any;

    e. "Concerning" means relating to, referring to, describing, evidencing or constituting;

f. "Including" means including but not limited to and including without limitation;

g. The masculine, feminine, or neuter pronoun(s) shall not exclude other genders; and

4. "You" or "Your" means the responding Defendant and any of its officers, directors, Employees, partners, parents, subsidiaries, affiliates, divisions, predecessors, successors, representatives, agents, attorneys, and assigns, and also includes any other entities or individuals acting or purporting to act on their behalf or at their direction.

5. "Agreement" means any oral or written contract, arrangement or understanding, whether formal or informal, between two or more Persons, including all drafts, versions, modifications, amendments, attachments, exhibits, and appendices.

6. "Communications" includes every manner or means of disclosure, transfer, or exchange of information (in the form of facts, ideas, inquiries, or otherwise), whether orally, electronically, by document, telecopier, mail, personal delivery, or otherwise. The phrase "Communication between" is defined to include instances where one party addresses the other party, but the other party does not necessarily respond.

7. "Defendant" means any company, organization, entity, or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, owners, other subsidiaries, departments, divisions, joint ventures, other affiliates, and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers, Employees, agents,

attorneys, representatives, or any person acting or purporting to act on behalf of a Defendant.

8. "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and includes without limitation, the original and all non-identical copies of writings, including without limitation, handwritten, typed, printed, or electronically stored electronic material. Each and every draft of a Document is a separate Document for the purpose of these Requests.

9. "Employee" means, without limitation, current and former officers, directors, executives, managers, sales personnel, secretaries, clerical staff, messengers, or any other person paid directly or indirectly by You, whether on a regular, contract, or any other basis, during the Relevant Time Period.

10. "ESI" or "electronically stored information" means information that is stored electronically, regardless of media or whether it is in the original format in which it was created.

11. "ESI Protocol" means the ESI Protocol that is agreed by the parties or entered by the Court, as amended or supplemented from time to time.

12. "Lease" means a contract between a lessor and lessee regarding the rental of a unit, dwelling, or bed from the Owner or Manager of a property, and includes any renewal of an existing Lease, even if the only change to the Lease is its duration or type (i.e., change from fixed term to month-to-month).

13. "Manage/Managed/Manages" means in relation to Multifamily Rental Properties and/or Student Rental Properties, the Person(s) who/that were responsible for

setting rental rates at some point during the relevant time period.  "Manager" is one who Managed a Multifamily Rental Property.  For this Definition, it is not required that the Person "Owned" such property as contemplated in these Definitions.

14. "MSA" means a Metropolitan Statistical Area established by the U.S. Census Bureau and Office of Management and Budget, or their predecessors and successor agencies.

15. "Multifamily Cost Data" means Documents and all relevant information fields related to the costs associated with each Multifamily Rental Property You Own and/or Manage in the United States.  Multifamily Cost Data includes data sufficient to identify:

    A.    The Multifamily Rental Property:

        i.    Building name;

        ii.    Building address (street name and number, city, state and zip);

        iii.    Year building was built;

        iv.    Building under rent control;

        v.    Building subject to affordable housing controls; and

        vi.    Total units:

    B.    All components of Multifamily Rental Property's operating costs over time, including:

        i.    Utilities:

            a)    Gas;

            b)    Electricity;

    c)  Oil;

    d)  Water,

    e)  Cable, if applicable; and

    f)  Internet, if applicable:

  ii.  Refuse/trash collection and/or disposal;

  iii.  Labor costs, including:

    a)  Employees; and

    b)  Independent contractors:

  iv.  Advertising;

  v.  Licensing costs (whether paid to a local, state, or federal governmental entity);

  vi.  Intellectual property licensing costs;

  vii.  Property management software, including Revenue Management Solutions;

  viii.  Property management fees; and

  ix.  Any other operating cost(s);

 C.  All capital expenses, including:

  i.  Building improvement costs and interest expenses;

  ii.  Building maintenance costs (*e.g.*, fixing central air conditioning unit, water, simple electrical repairs, groundskeeping, pool cleaning, etc.); and

 D.  All taxes levied on the Multifamily Rental Property.

16.  "Multifamily Lease Data" means Documents and all relevant information fields associated with each Lease of Multifamily Rental Property You Own and/or Manage

in the United States (including inter-Defendant purchases), regardless of whether those Leases were completed or cancelled. Multifamily Lease Data includes data sufficient to identify:

A.    The Multifamily Rental Property:

       i.    Building name;

     ii.    Building address (street name and number, city, state and zip);

   iii.    Year building was built;

   iv.    Year of last major renovations of building;

    v.    ADA Compliant;

   vi.    Building under rent control;

  vii.    Building subject to affordable housing controls;

 viii.    Total units;

   ix.    Total bedrooms;

    x.    Common amenities, including but not limited to:

        a)    Pool;
        b)    Rooftop / common areas;
        c)    Gym;
        d)    Outdoor grill area;
        e)    Screening room;
        f)    Onsite dining; and
        g)    Elevator;

B.    Any unique internal identifier of a Lease (*e.g.*, lease number, record ID, etc.);

C.     Any unique identifier of the lessee (*e.g.*, tenant number, membership number);

D.     Application fee for Lease formation event;

E.     Monthly rent amount, including:

     i.    the most recent listing and/or quoted rent amount for unit subject to the Lease formation event;

     ii.   the rent amount listed in the executed Lease; and

     iii.  the effective rent if a promotion or discount is applicable;

F.     Security deposit amount;

G.     Additional monthly costs for ancillary services charged to lessee outside monthly rent amount, including:

     i.    Service fees;

         a)    Pet fees;

         b)    Online payment and/or credit card processing fees,

     ii.   Utilities (*e.g.*, water, electricity, gas, heating oil);

     iii.  Refuse/trash collection and/or disposal,

H.     Details of monthly costs for ancillary services included inside the monthly Lease/rent amount (*e.g.*, service fees, pet fees, online payment and/or credit card processing fees, utilities (water, electricity, gas, heating oil), trash collection);

I.     Details on any concessions, allowances, or incentives made available or provided in connection with any lease;

J.      Lease type identifier (*e.g.*, month-to-month, short-term lease, long-term lease);

K.      Lease formation event (*e.g.*, new lease, renewal of existing lease, shift in lease type);

L.      Date of Lease formation event;

M.     Termination notice period (*e.g.*, 60-days, 90-days, etc.);

N.     Early termination fees;

O.     Jurisdiction and Governing Law Clauses:
        i.   Arbitration agreement;

P.     Revenue Management Solution(s):

        i.   Multifamily Rental Property subscribed/used Revenue Management Solution at time of Lease event;

       ii.  Name and version of Revenue Management Solution(s) Rental Property subscribed to;

     iii.  Date Multifamily Rental Property started subscribing to/using Revenue Management Solution(s);

     iv.  Date Multifamily Rental Property stopped using Revenue Management Solution(s);

      v.  Revenue Management Solution recommendation for the Lease formation event:
          a)  Date of recommendation;
          b)  Recommended lease term(s); and

          c)      Recommended monthly rent(s) per lease term(s);

      vi.     Whether You accepted the Revenue Management Solution's recommendation for the Lease formation event:

          a)      Recommended monthly rent;

          b)      Recommended lease term; and

          c)      Indication of Lease term and effective rent accepted;

      vii.     Whether Rental Rate in effective Lease was equal to, more, or less than Revenue Management Solution's recommended rent per lease term in executed Lease:

          a)      Indication of variance between effective Rental Rate in Lease and Revenue Management Solution's recommended rent for effective lease period;

Q.     Beginning date of Lease;

R.     Ending date of Lease term;

      i.     Any information on early termination; and

      ii.    Lease rollover to month-to-month;

S.     Occupancy rate / vacancy rate of Multifamily Rental Property at time of Lease execution;

T.     Rental unit details:

      i.     Unit number;

      ii.    Unit under rent control;

      iii.    Unit subject to affordable housing controls;

      iv.    Number of bedrooms;

      v.     Number of bathrooms;

vi.   Square footage of the unit;

vii.  Floor (*e.g.*, 1st floor, 2nd floor);

viii. Year unit last renovated;

ix.   Rental unit characteristics:

    a)   Fully-furnished;

    b)   Carpeting or hardwood floors;

    c)   In-unit appliances:

        1)   Washer;

        2)   Dryer;

        3)   Refrigerator and/or freezer;

        4)   Dishwasher; and

        5)   None;

    d)   Unit has outdoor space:

        1)   Balcony;

        2)   Patio;

        3)   Access to other common outdoor recreation space; and

        4)   None;

    e)   Unit has dedicated parking:

        1)   Covered / uncovered;

        2)   Is there a separate fee for parking or included in rent?;

        3)   None;

    f)   Does the unit allow pets?

        1)   Dogs;

        2)   Cats;

        3)   Other,

U.   Any structural factor that may affect the rent received, including:

    i.   Is there construction work currently being done to the building;

    ii.   Are certain amenities not operating; and

    iii.   Major construction near the building;

V.   Any Structured Database field summarizing terms of each such Lease or Agreements or contracts for renting the unit to the lessee;

W.   Tenant information:

    i.   Name(s) of tenants;

    ii.   Phone number(s), address(es), email address(es) for each such tenant (including any identification numbers); and

    iii.   Number of tenants;

    iv.   Family;

    v.   Age of tenant(s);

    vi.   Credit score(s); and

    vii.   Income; and

X.   Any other data available in Your Structure Databases concerning each such Lease.

17.   "Multifamily Lease Data (Third Party)" means Documents and all relevant information fields associated with each Lease of Multifamily Rental Property Owned and/or Managed in the United States by third parties, including other Defendants, regardless of whether those Leases were completed or cancelled. Multifamily Lease Data

(Third Party) includes data sufficient to identify the same data fields identified in the Definition of Multifamily Lease Data.

18.     "Multifamily Payment Data" means Documents and all relevant information fields associated with each payment made by a lessee (including payments made on their behalf) pursuant to any Lease of Multifamily Rental Property You Own and/or Manage in the United States (including inter-Defendant purchases), regardless of whether those Leases were completed or cancelled.    Multifamily Payment Data includes data sufficient to identify:

A.    The Multifamily Rental Property:

i.     Building name;
ii.    Building address (street name and number, city, state and zip);
iii.   Unit number; and
iv.    Any unique internal identifier of building (*e.g.*, building number, etc.);

B.    Any unique internal identifier of a Lease (*e.g.*, lease number, record ID, etc.);

C.    Application fee for Lease formation event;

D.    Any unique identifier of the lessee(s);

E.    Tenant information:

i.     Name(s) of tenant(s); and
ii.    Number of tenants;

F.      Any unique number associated with each such payment (*e.g.*, invoice number or purchase order number);

G.      Payment due date;

H.      Payment date;

I.      Monthly payment amount received for rent before the addition of any tax;

J.      Monthly payment amount received for other/ancillary services, before the addition of any tax or delivery charges, including:

    i.      Service fees:

       a)      Pet fees; and

       b)      Online payment and/or credit card processing fees;

    ii.     Utilities (*e.g.*, water, electricity, gas, heating oil); and

    iii.    Refuse/trash collection and/or disposal:

K.      Any delivery charges paid for other/ancillary services;

L.      Late fees (including interest applied to late payments);

M.      Cancellation fees;

N.      Any other fee or service charge;

O.      Any record of Your profit from each such payment(s);

P.      Indication of cancellations, including indication of quantity cancelled and method to link a cancellation for each such payment;

Q.     Indication of refunds, including indication of sum refunded and method to link a refund for each such payment;

R.     Indication of credits/debits/or adjustments to rent, including indication of sum credited/debited/or adjusted and method to link credits/debits/or adjustments for each such payment;

S.     Indication of credits/debits/or adjustments to non-rent payments, including indication of sum credited/debited/or adjusted and method to link credits/debits/or adjustments for each such payment;

T.     Indication of credit or refund, including of amount, for a return of security deposit, including an indicator identifying that transaction reflects a refund or credit of security deposit; and

U.     Any Structured Database field summarizing terms of each such payment.

19.     "Multifamily Rental Property" means any residential property containing multiple separate rental housing units for residential inhabitants within one building, or within several buildings in one complex.

20.     "Non-Market Rate" means the rental rate for Multifamily Rental Property and/or Student Rental Property subject to subsidies, rent supplements, rent control, and/or other measures to reduce the Rental Rate below prevailing market value for comparable units, including, but not limited to, affordable housing and military housing.

21. "Own/Owned/Owns" means in relation to a Multifamily Rental Property and/or Student Rental Property, the Person(s) who was the real estate titleholder (or any portion thereof) at some point during the relevant time period. "Owner" is one who Owned a Multifamily Rental Property and/or Student Rental Property. For this Definition, it is not required that the Person "Managed" such property as contemplated in these Definitions.

22. "Person" means, without limitation, any natural person, corporation, partnership, limited liability company, proprietorship, joint venture, association, government entity, group, or other form of legal entity.

23. "Price" or "pricing" means any actual, proposed, suggested, or recommended monthly rent amount, as well as any increases or decreases in the monthly rent amount, quotations or offers, rental price lists, announcements, discounts, rebates, other lease terms impacting the rental amount, and any changes or proposed changes in the above.

24. "Protective Order" means the Protective Order that is agreed to by the parties or entered by the Court in this matter, as amended or supplemented from time to time.

25. "Relevant Geographic Submarket" means the submarkets identified in the First Amended Consolidated Class Action Complaint (ECF No. 314) and supplied here as Appendix 1. To the extent that Appendix 1 differs from those identified in the First Amended Consolidated Class Action Complaint, the First Amended Consolidated Class Action Complaint controls.

26. "Rental Rate" means the amount of rent charged to a lessee for a term provided in the lease.

27. "Rental Property" means Multifamily Rental Property and/or Student Rental Property.

28. "Revenue Management Solution" or "RMS" means RealPage's revenue management software solutions, including RealPage Revenue Management, Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management, and all versions thereof.

29. "Structured Data" or "Structured Database" refers to any electronic data that resides in a fixed field within a record or file, such as data stored in Oracle, SQL, or files that are in Columns/Rows or a fixed field with a predefined format.

30. "Student Lease Data" means Documents and all relevant information fields associated with each Lease of Student Rental Property You Own and/or Manage in the United States (including inter-Defendant purchases), regardless of whether those Leases were completed or cancelled. Student Lease Data includes data sufficient to identify:

   A. The Student Rental Property:

      i. Building name;

      ii. Building address (street name and number, city, state and zip);

      iii. Year building was built;

      iv. Date of last major renovation of building;

      v. ADA Compliant;

      vi. Building under rent control;

      vii. Building subject to affordable housing controls;

      viii. Total units;

ix.   Total bedrooms;

x.   Total beds;

xi.   Common amenities:

    a)   Pool;

    b)   Rooftop / common areas;

    c)   Gym;

    d)   Outdoor grill area;

    e)   Screening room;

    f)   Onsite dining; and

    g)   Elevators;

B.   Any unique internal identifier of a Lease (*e.g.*, lease number, record ID, etc.);

C.   Application fee for Lease formation event;

D.   Any unique identifier of the lessee (*e.g.*, tenant number, membership number);

E.   Monthly rent amount, including:

i.   the most recent listing and/or quoted rent amount;

ii.   the rent amount listed in the executed Lease; and

iii.   the effective rent if a promotion or discount is applicable;

F.   Security deposit amount;

G.   Additional monthly costs for ancillary services charged to lessee outside monthly rent amount, including:

      i.     Service fees;

           a)     Pet fees; and

           b)     Online payment and/or credit card processing fees;

     ii.    Utilities (*e.g.*, water, electricity, gas, heating oil); and

    iii.    Refuse/trash collection and/or disposal;

H.    Details of monthly costs for ancillary services included inside the monthly Lease/rent amount (*e.g.*, service fees, pet fees, online payment and/or credit card processing fees, utilities (water, electricity, gas, heating oil), and trash collection);

I.    Details on any concessions, allowances, or incentives made available or provided in connection with any Lease;

J.    Lease type identifier (*e.g.*, month-to-month, short-term lease, long-term lease);

K.    Lease formation event (*e.g.*, new lease, renewal of existing lease, shift in lease type);

L.    Date of Lease formation event;

M.    Termination notice period (*e.g.*, 60 days, 90 days, etc.);

N.    Early Termination fees;

O.    Jurisdiction and Governing Law Clauses:

      i.     Arbitration agreement;

19

P.    Revenue Management Solution:

   i.   Student    Rental    Property    subscribed/used    Revenue
        Management Solution at time of Lease event;

   ii.  Name and version of Revenue Management Solution(s) Rental
        Property subscribed to;

   iii. Date Student Rental Property started subscribing to/using
        Revenue Management Solution(s);

   iv.  Date Student Rental Property stopped using Revenue
        Management Solution(s);

   v.   Revenue Management Solution recommendation for the lease
        formation event:

        a)    Date of recommendation;

        b)    Recommended lease term(s); and

        c)    Recommended monthly rent(s) per lease term(s);

   vi.  Whether You accepted the Revenue Management Solution's
        recommendation for the lease formation event:

        a)    Recommended monthly rent; and

        b)    Recommended lease term;

   vii. Indication of Lease term and effective rent accepted; and

   viii. Whether Rental Rate in effective Lease was equal to, more, or
         less than Revenue Management Software's recommended rent
         per lease terms in executed Lease:

         a)   Indication of variance between effective Rental Rate in
              Lease    and    Revenue    Management    Software's
              recommended rent for effective lease period:

Q.	Beginning date of Lease;

R.	Ending date of Lease term;

    i.	Any information on early termination; and

    ii.	Lease rollover to month-to-month;

S.	Occupancy rate / vacancy rate of Student Rental Property at time of Lease execution;

T.	Rental unit details:

    i.	Unit number;

    ii.	Unit under rent control;

    iii.	Unit subject to affordable housing controls;

    iv.	Number of bedrooms;

    v.	Number of beds;

    vi.	Number of bathrooms;

    vii.	Square footage of the unit;

    viii.	Floor (*e.g.*, 1st floor, 2nd floor);

    ix.	Year unit last renovated; and

    x.	Rental unit characteristics:

        a)	Fully-furnished;

        b)	Carpeting or hardwood floors;

        c)	In-unit appliances:

            1)	Washer;

            2)	Dryer;

<div style="margin-left: 2em;">

    3)     Refrigerator and/or freezer;

    4)     Dishwasher; and

    5)     None;

d)    Unit has outdoor space:

    1)     Balcony;

    2)     Patio;

    3)     Access to other common outdoor recreation space ; and

    4)     None;

e)    Unit has dedicated parking:

    1)     Covered / uncovered;

    2)     Is there a separate fee for parking or included in rent?; and

    3)     None;

f)    Does the unit allow pets?

    1)     Dogs;

    2)     Cats;

    3)     Other,

</div>

U.    Any structural factor that may affect the rent received, including:

    i.    Is there construction work currently being done to the building;

    ii.    Are certain amenities not operating; and

    iii.    Is there major construction near the building?;

V.    Any Structured Database field summarizing terms of each such Lease or Agreements or contracts for renting the unit to the lessee;

W.   Tenant information:

    i.     Name(s) of tenants;

    ii.    Phone number(s), address(es), email address(es) for each such tenant (including any identification numbers);

    iii.   Number of tenants;

    iv.   Family;

    v.    Age of tenant(s);

    vi.   Credit score(s); and

    vii.  Income; and

X.   Any other data available in Your Structure Databases concerning each such Lease.

31.   "Student Lease Data (Third Party)" means Documents and all relevant information fields associated with each Lease of Student Rental Property Owned and/or Managed in the United States by third parties, including other Defendants, regardless of whether those Leases were completed or cancelled.  Student Lease Data (Third Party) includes data sufficient to identify the same data fields identified in the Definition of Student Lease Data.

32.   "Student Cost Data" means Documents and all relevant information fields related to the costs associated with each Student Rental Property You Own and/or Manage in the United States.  Student Cost Data includes data sufficient to identify:

A. The Student Rental Property:

    i. Building name;

    ii. Building address (street name and number, city, state and zip);

    iii. Year building was built;

    iv. Building under rent control;

    v. Building subject to affordable housing controls; and

    vi. Total units;

B. All components of Student Rental Property's operating costs over time, including:

    i. Utilities:

        a) Gas;

        b) Electricity;

        c) Oil;

        d) Water;

        e) Cable, if applicable

        f) Internet, if applicable; and

    ii. Refuse/trash collection and/or disposal;

    iii. Labor costs, including:

        a) Employees; and

        b) Independent contractors;

    iv. Advertising;

    v. Licensing costs (whether paid to a local, state or federal governmental entity);

    vi. Intellectual property licensing costs;

vii.      Property management software, including Revenue Management Solutions;

viii.    Property management fees; and

ix.      Any other operating cost(s);

C.      All capital expenses, including:

i.       building improvement costs and interest expenses; and

ii.      building maintenance costs (*e.g.*, fixing central air conditioning unit, water, simple electrical repairs, groundskeeping, pool cleaning, etc.);

D.      All taxes levied on the Student Rental Property.

33.     "Student Payment Data" means Documents and all relevant information fields associated with each payment made by a lessee (including payments made on their behalf) pursuant to any Lease of Student Rental Property You Own and/or Manage in the United States (including inter-Defendant purchases), regardless of whether those Leases were completed or cancelled.  Student Payment Data includes data sufficient to identify:

A.      The Student Rental Property:

i.       Building name;

ii.      Building address (street name and number, city, state and zip); and

iii.    Unit number;

B.      Any unique internal identifier of a Lease (*e.g.*, lease number, record ID, etc.);

C.      Application fee for Lease formation event;

D. Any unique identifier of the lessee;

E. Tenant information:
   i. Name(s) of tenants; and
   ii. Number of tenants;

F. Any unique number associated with each such payment (*e.g.*, invoice number or purchase order number);

G. Payment due date;

H. Payment date;

I. Monthly payment amount received for rent before the addition of any tax; and

J. Monthly payment amount received for other/ancillary services, before the addition of any tax or delivery chargers, including:
   i. Service fees,
      a) Pet fees;
      b) Online payment and/or credit card processing fees;
   ii. Utilities (*e.g.*, water, electricity, gas, heating oil); and
   iii. Refuse/trash collection and/or disposal,

K. Any delivery charges paid for other/ancillary services;

L. Late fees (including interest applied to late payments);

M. Cancellation fees;

N. Any other fee or service charge;

O.   Any record of Your profit from each such payment(s);

P.   Indication of cancellations, including indication of quantity cancelled and method to link a cancellation for each such payment;

Q.   Indication of refunds, including indication of sum refunded and method to link a refund for each such payment;

R.   Indication of credits/debits/or adjustments to rent, including indication of sum credited/debited/ and/or adjusted and method to link credits/debits/or adjustments for each such payment;

S.   Indication of credits/debits/ and/or adjustments to non-rent payments, including indication of sum credited/debited/or adjusted and method to link credits/debits/ and/or adjustments for each such payment;

T.   Indication of credit or refund, including of amount, for a return of security deposit, including an indicator identifying transaction reflects a refund or credit of security deposit; and

U.   Any Structured Database field summarizing terms of each such payment.

34.   "Student Rental Property" means any residential property containing multiple separate rental housing units for inhabitants within one building, or within several buildings in one complex, either purpose-built designed for residents pursuing higher education or intentionally marketed towards students or potential students pursuing higher education.

35. "Trade Association" means any formal or informal association, group, marketing entity, or organization of merchants or business firms, including any board, sub-group, executive committee, steering committee, or other committee, or working group thereof, including but not limited to the National Multifamily Housing Council; Institute of Real Estate Management; National Apartment Association; National Association of Residential Property Managers; Pension and Real Estate Association; Urban Land Institute and all other trade associations listed in the First Amended Consolidated Class Action Complaint (ECF No. 314, ¶¶227, 230-36).

36. The use of any definition for the purposes of these requests shall not be deemed to constitute an agreement or acknowledgement on the part of Plaintiffs that such definition is accurate, meaningful, or appropriate for any other purpose in this action.

## **INSTRUCTIONS**

1. These instructions hereby incorporate the Protective Order and ESI Protocol, whose terms shall prevail in the event of a conflict between those orders and these Instructions.

2. These Requests are deemed to be continuing in accordance with Federal Rule of Civil Procedure 26(e). You shall supplement Your responses within a reasonable time if You obtain or become aware of any further Documents responsive to these Requests.

3. Unless otherwise indicated, the Documents requested include all Documents and data in Your possession, custody, or control. Without limitation of the terms "possession, custody, or control," as used in the preceding sentence, a Document is in Your

possession, custody, or control if You have actual possession or custody or the right or practical ability to obtain the Document or a copy thereof upon demand from one or more of Your representatives, advisors, attorneys, or any other person or public or private entity that has actual physical possession thereof.

4.      As the term "possession" relates to e-mail, the term includes, but is not limited to, email contained in Your electronic e-mail directories, including but not limited to: (a) "deleted" emails which have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories; (b) "sent" e-mails, including all subdirectories irrespective of the title of such subdirectories; and (c) "received" e-mails, including all subdirectories irrespective of the title of such subdirectories.

5.      With respect to the Documents produced, You shall produce them as they are kept in the usual course of business, including producing any tabs, labels, or directories of files identifying the Documents.

6.      You must produce entire Documents including attachments, enclosures, cover letters, memoranda, and appendices.  Documents not otherwise responsive to the Requests are to be produced if such Documents are attached to, or enclosed with, any Document that is responsive.  Examples of such Documents include email attachments, routing slips, transmittal memoranda or letters, comments, evaluations, or similar Documents.  In the case of email attachments, if either the email or any of its attachments is responsive, produce the email and all of the corresponding attachments.  Documents attached to each other shall not be separated.

7. A Document with handwritten, typewritten, or other recorded notes, editing marks, etc., is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

8. The term "original" includes the file copy or copies of any Document if there is no actual original copy.

9. All Documents shall be produced in their native format where available.

10. All data are to be produced in a spreadsheet or nonproprietary database format. For data in trading systems or other proprietary databases, You should identify the system used to create, store, and/or maintain that data. The data can be exported to a spreadsheet or delimited text files, using pipe ("|") delimiters, in a manner that preserves the precision of and relationships among the original data, and with a schema description containing column names and data types/sizes.

11. All data are to be accompanied by documentation sufficient to understand the meaning of all fields in the data provided and the methods, models, and data used in their calculation.

12. Pursuant to Federal Rule of Civil Procedure 26(b)(5), if any Document responsive to a Request below is withheld from production on the basis of any claim of privilege, You shall submit, in lieu of any such Document, a privilege log in accordance with the Protective Order.

13. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(C), if You object to any individual Request, You must state whether any responsive materials are being withheld

on the basis of that objection, and You must specify the part of the Request to which You are objecting and produce all materials that are responsive to the remainder of the Request.

14. In the event that You object to any Request on the ground that it is overbroad or unduly burdensome for any reason, respond to that Request as narrowed to the least extent necessary, in Your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which You have narrowed that Request for purposes of Your response and the factual basis for Your conclusion. When a Document or ESI contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a Document or ESI, you must clearly indicate the portions as to which the privilege is claimed. When a Document or ESI has been redacted, identify as to each such Document or ESI the reason for the redaction. Any redaction must be clearly indicated on the face of the redacted Document or ESI.

15. In the event that any Document responsive to any Request once was, but is no longer, in Your possession, custody, or control, or has been lost, destroyed, discarded, or otherwise disposed of, You are requested to identify such Document as completely as possible, including without limitation, the following information:

    A.    the nature of the Document;

    B.    the person who prepared or authorized the Document and, if applicable, the person to whom the Document was sent; the date on which the Document was prepared or transmitted; and

C.    if possible, what has happened to the Document and where it or any copies of it may be located, or if the Document was lost or destroyed, the date on which the Document was lost or destroyed, and, if destroyed, the conditions of and the reasons for such destruction and the persons requesting and performing the destruction.

16.    Each Request shall be construed independently, and no Request shall be viewed as limiting the scope of any other Request.

17.    Each Document is to be produced along with all drafts, without abbreviation or redaction.

18.    If no Documents are responsive to a particular Request, You are to state that no responsive Documents exist.  If You object to the scope or breadth of any of these requests, You should identify, to the extent possible, those Documents that You will produce notwithstanding the objection.

19.    Unless a specific request indicates otherwise, each Request calls for production of Documents and data dated, prepared, or received during, or otherwise related to, the period from January 1, 2010, through the date of your response.  However, if a Document prepared before January 1, 2010, is necessary for a correct and/or complete understanding of any Document covered by the Request, such earlier Document shall be produced.  If any Document is undated, or the date of its preparation cannot be determined, the Document shall be produced if otherwise responsive to the Request.  Plaintiffs will meet and confer with You regarding the appropriate custodians whose email accounts and

other Documents should be searched in responding to these requests and whether any search terms or other culling parameters are appropriate.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

Produce, for each Rental Property that you Owned and/or Managed from January 1, 2010 to present in the United States, Documents sufficient to show:

A.    Property name;

B.    Property address (street name and number, city, zip code);

C.    Year the property was built;

D.    Year of last major renovations of building (*e.g.*, construction to add additional unit(s), remodeling, adding pool(s) and/or other amenities, elevator(s), etc.);

E.    Date You bought the property;

F.    Date You sold the property;

G.    Date You began Managing the property;

        i.    If you did not manage the property at any point during the requested period, Documents sufficient to identify the property manager(s) used for any such period;

H.    Date You ceased Managing the property;

I.    The number of units in the property, broken down by type (*e.g.*, number of bedrooms, number of bathrooms, and square feet) as well as by class or grade of the unit;

      i.    If the number of units changed for a given property over time, Documents sufficient to show the changes in the number of units over time;

J.    Whether the property has any of the following amenities, and if so, the dates those amenities were available:

      i.    Pool(s);

      ii.    Rooftop/ common areas;

      iii.    Gym(s);

      iv.    Outdoor grill area(s);

      v.    Screening room(s);

      vi.    On-site dining; and

      vii.    Elevator(s);

K.    Whether the property has any Non-Market Rate units (*e.g.*, rent control, subsidized, affordable housing, military);

      i.    Number of units subject to Non-Market Rate rent prices.  If the number of units subject to Non-Market Rate rent prices changed for a given property over time, documents sufficient to show the changes in the number of units over time;

L.    Monthly number of occupied units in each Rental Property broken down by type (*e.g.*, number of bedrooms, number of bathrooms, and square feet).

**REQUEST NO. 2:**

Produce, for each Rental Property that you Owned and/or Managed from January 1, 2010 to present in the United States, Documents sufficient to show whether the property used any RealPage Revenue Management Solution at any time during the periods from January 1, 2010 to the present; and

A. For each such Revenue Management Solution(s) and versions used during the time period, identify the Revenue Management Solution used, and produce the start and end dates for the use of each service.

B. If the Revenue Management Solution was only used for some, but not all, units within a Rental Property, details of the units for which it was used for broken out by type (*e.g.*, number of bedrooms, number of bathrooms, and square feet).

**REQUEST NO. 3:**

Lease-level data for each Lease of a residential property within a Multifamily Rental Property You Own and/or Manage in the United States, including all Multifamily Lease Data. Plaintiffs request this information in the most disaggregated form in which it is kept, and Defendants should produce the data in a comma-delimited text file. If You maintain separate or distinct sets of such data, Plaintiffs' Request is for each separate set of data.

**REQUEST NO. 4:**

Lease-level data for each Lease of a residential property within a Multifamily Rental Property Owned and/or Managed in the United States by third parties, including Multifamily Lease Data (Third Party). Plaintiffs request this information in the most disaggregated form in which it is kept, and Defendants should produce the data in a comma-delimited text file. If You maintain separate or distinct sets of such data, Plaintiffs' Request is for each separate set of data. This Request encompasses data compiled by third parties, including but not limited to RealPage, AppFolio, CoStar, Yardi Matrix, Real Capital

Analytics, Inc., CoreLogic, Axiometrics, Rainmaker Group, and Experian Information Solutions, Inc., to which you are or have previously been provided access to.

**REQUEST NO. 5:**

Lease-level data for each Lease of a residential property within a Student Rental Property You Own and/or Manage in the United States, including Student Lease Data. Plaintiffs request this information in the most disaggregated form in which it is kept, and Defendants should produce the data in a comma-delimited text file. If You maintain separate or distinct sets of such data, Plaintiffs' Request is for each separate set of data.

**REQUEST NO. 6:**

Lease-level data for each Lease of a residential property within a Student Rental Property Owned and/or Managed in the United States by third parties, including Student Lease Data (Third Party). Plaintiffs request this information in the most disaggregated form in which it is kept, and Defendants should produce the data in a comma-delimited text file. If You maintain separate or distinct sets of such data, Plaintiffs' Request is for each separate set of data. This Request encompasses data compiled by third parties, including but not limited to RealPage, AppFolio, CoStar, Yardi Matrix, Real Capital Analytics, Inc., CoreLogic, Axiometrics, Rainmaker Group, and Experian Information Solutions, Inc., to which you are or have previously been provided access to.

**REQUEST NO. 7:**

Transaction-level data for all payments received from or on behalf of tenants of Multifamily Rental Properties Owned or Managed by You in the United States, including

all Multifamily Payment Data. Plaintiffs request this information in the most disaggregated form in which it is kept, and Defendants should produce the data in a comma-delimited text file. If You maintain separate or distinct sets of such data, Plaintiffs' Request is for each separate set of data.

## REQUEST NO. 8:

Transaction-level data for all payments received from or on behalf of tenants of Student Rental Properties Owned or Managed by You in the United States, including all Student Payment Data. Plaintiffs request this information in the most disaggregated form in which it is kept, and Defendants should produce the data in a comma-delimited text file. If You maintain separate or distinct sets of such data, Plaintiffs' Request is for each separate set of data.

## REQUEST NO. 9:

Transaction-level data for all costs incurred in relation to each Multifamily Rental Property Owned or Managed by You in the United States, including all Multifamily Cost Data. Plaintiffs request this information on a monthly basis, in the most disaggregated form in which it is kept, and Defendants should produce the data in a comma-delimited text file. If You maintain separate or distinct sets of such data, Plaintiffs' Request is for each separate set of data. If You do not maintain the requested data in a manner that permits its production on a monthly basis, Plaintiffs request its production on a weekly or daily basis.

**REQUEST NO. 10:**

Transaction-level data for all costs incurred in relation to each Student Rental Property Owned or Managed by You in the United states, including all Student Cost Data. Plaintiffs request this information on a monthly basis, in the most disaggregated form in which it is kept, and Defendants should produce the data in a comma-delimited text file. If You maintain separate or distinct sets of such data, Plaintiffs' Request is for each separate set of data. If You do not maintain the requested data in a manner that permits its production on a monthly basis, Plaintiffs request its production on a weekly or daily basis.

**REQUEST NO. 11:**

Lease-level data for each Lease of a residential property within a Multifamily Rental Property You Own or Manage in the United states reflecting any lease length terms (*e.g.*, 6, 9, 12-month lease terms) recommended by RealPage's Revenue Management Solutions, as well as lease level data reflecting deviations, if any, from the lease length term recommended by RealPage and that lease length term actually implemented.

**REQUEST NO. 12:**

Lease-level data for each Lease of a residential property within a Student Rental Property You Own or Manage in the United states reflecting any lease length terms (*e.g.*, 6, 9, 12-month lease terms) recommended by RealPage's Revenue Management Solutions, as well as lease level data reflecting deviations, if any, from the lease length term recommended by RealPage and that lease length term actually implemented.

**REQUEST NO. 13:**

If, other than the data requested to be produced in Request Nos. 3-12, You provided, inputted, or otherwise transferred any data to any Revenue Management Solution, OneSite, and/or any other RealPage price optimization, asset optimization, data analytics, property management and/or revenue management software, platform, server, program, and/or system, produce that data and Documents sufficient to: (a) identify that data; and (b) identify the Revenue Management Solution, and/or all other RealPage software, platform, server, program, and/or system to which the data was input or otherwise transferred.

**REQUEST NO. 14:**

All profit and loss (P&L) Structured Data detailing, recording or estimates the components of Your revenues, costs of goods sold, production costs, selling expenses, and margins (in dollars and as percentages (%)). This Structured Data should be provided at the lowest levels of granularity for each dimension for which it is tracked (*e.g.*, by property, property type, region, state, by company/business division). If You do not maintain Structured Data recording these fields, please produce Documents sufficient to show these fields for each month from January 1, 2010 to the present.

**REQUEST NO. 15:**

Structured Data, data series and/or analysis recording, analyzing, or estimating the monthly average, mean, or medium rental prices for any Multifamily Rental Property and/or Student Rental Property market (whether local, regional, statewide, nationwide, or MSA-wide), broken down by: a) number of bedrooms; b) square feet; c) number of bathroom; d)

property classification; and/or e) zip. If You maintain separate or distinct sets of such data, Plaintiffs' Request is for each separate set of data.

**REQUEST NO. 16:**

Structured Data, data series and/or analysis recording, analyzing, or estimating the monthly number of Multifamily Rental Property units and/or Student Rental Property beds in a specified geographic area (whether local, regional, statewide, nationwide or MSA-wide), broken down by: a) number of bedrooms; b) square feet; c) number of bathroom; d) property classification; and/or e) zip. If You maintain separate or distinct sets of such data, Plaintiffs' Request is for each separate set of data.

**REQUEST NO. 17:**

Structured Data, data series and/or analysis recording, analyzing, or estimating the monthly occupancy levels and/or vacancy levels of Multifamily Rental Property units and/or Student Rental Property beds in a specified geographic area (whether local, regional, statewide, nationwide or MSA-wide), broken down by: a) number of bedrooms; b) square feet; c) number of bathroom; d) property classification; and/or e) zip. If You maintain separate or distinct sets of such data, Plaintiffs' Request is for each separate set of data.

**REQUEST NO. 18:**

Structured Data, data series and/or analysis recording, analyzing, or estimating, on a least a monthly basis, the number of new Multifamily Rental Property buildings and units and/or Student Rental Property buildings and units/beds, in a specified geographic area (whether local, regional, statewide, nationwide or MSA-wide), broken down by: a) number of

bedrooms; b) square feet; c) number of bathroom; d) property classification; and/or e) zip. If You maintain separate or distinct sets of such data, Plaintiffs' Request is for each separate set of data.

**REQUEST NO. 19:**

Structured Data, data series and/or analysis recording, analyzing, or estimating the average, mean, and medium income levels (both total and disposable) of the population living within any Multifamily Rental Property and/or Student Rental Property market, however defined (*e.g.*, local, regional, statewide, nationwide, or MSA-wide).

**REQUEST NO. 20:**

Structured Data, data series and/or analysis recording, analyzing, or estimating the population living within any Multifamily Rental Property and/or Student Rental Property market, however defined (*e.g.*, local, regional, statewide, nationwide, or MSA-wide), broken down by any demographic tracked by that Structured Data, data series and/or analysis (*e.g.*, age, sex, race, employment status, education). If You maintain separate or distinct sets of such data, Plaintiffs' Request is for each separate set of data.

**REQUEST NO. 21:**

Any Structured Data, data series and/or reports that you received from RealPage containing data analysis. Examples of such data and/or reports include without limitations, forecast data, commercial portfolio management reports, competitor analysis, market analytics, asset analytics, exponential reporting data, business intelligence, benchmarking, financial reports, budget variance analysis reports, pricing reports (including daily YieldStar pricing

report, daily LRO pricing report, AIRM pricing report, etc.), rate acceptance reports, lease compliance reports, variance rate reports, occupancy and revenue trends reports, performance reports, historical data sheets, management reports, leasing reports, renewal and forecasting reports, resident reports, corporate client reports, accounting reports, building reports, tracking reports, student housing reports, audit reports, market intelligence, and compilations of pricing, lease term, revenue, override reports, marketing status reports, rent increase records, and vacancy/occupancy rate recommendations made by any of RealPage's Revenue Management Solutions. Plaintiffs request this information in the most disaggregated form in which it is kept, and Defendants should produce the data in a comma-delimited text file. If You maintain separate or distinct sets of such data, Plaintiffs' Request is for each separate set of data.

**REQUEST NO. 22:**

Documents and Communications sufficient to link Your employee's username(s), logins, and/or other unique identifier with the employee's use of and/or access to RealPage's Revenue Management Solutions and OneSite including but not limited to all discussion groups, messaging boards, User Group(s), training materials, and online forums.

**REQUEST NO. 23:**

Structured Data, data series and/or analysis recording, analyzing, estimating, or measuring the impact and/or effect of using RealPage's Revenue Management Solutions in relation to rental prices, rental terms, occupancy, turnover rates, revenue, and/or costs.

**REQUEST NO. 24:**

Structured Data, data series and/or analysis comparing the performance of Multifamily Rental Properties that use Revenue Management Solutions as compared to those Multifamily Rental Properties that do not use Revenue Management Solutions or use it only in part. Included in this Request are comparisons of the performance of Multifamily Rental Properties which accept the recommendations of Revenue Management Solutions as to price and lease terms at different levels, and any A/B testing conducted by You regarding the use, or non-use, of Revenue Management Solutions.

**REQUEST NO. 25:**

Structured Data, data series and/or analysis comparing the performance of Student Rental Properties that use Revenue Management Solutions as compared to those Student Rental Properties that do not use Revenue Management Solutions or use it only in part. Included in this Request are comparisons of the performance of Student Rental Properties which accept the recommendations of Revenue Management Solutions as to price and lease terms at different levels, and any A/B testing conducted by You regarding the use, or non-use, of Revenue Management Solutions.

**REQUEST NO. 26:**

All Structured Data, data series and/or analysis tracking Rental Property vacancy rates and/or occupancy rates on a monthly basis across any and all dimensions for which these are tracked (*e.g.*, by Rental Property, intra-Defendant, inter-Defendant, geography (*e.g.*, suburb, city, regional, state or national level), property class, property price point),

including any studies or reports tracking, estimating, and/or analyzing increases to Your profitability resulting from increased vacancy rates and/or occupancy rates. If You maintain separate or distinct sets of such data, Plaintiffs' Request is for each separate set of data. If You do not maintain the requested data in a manner that permits its production on a monthly basis, Plaintiffs request its production on a weekly or daily basis.

**REQUEST NO. 27:**

All Structured Data, data series and/or analysis compiled for internal analyses, estimating and/or analyzing the relevant product market for each property You Managed and/or Owned, including sub-markets.

**REQUEST NO. 28:**

All Structured Data, data series and/or analysis compiled for internal analyses, estimating and/or analyzing the boundaries and/or size of each geographic market within which you Manage and/or Own properties.

**REQUSET NO. 29:**

All Documents and Communications discussing or analyzing: (a) the short run and long run supply elasticity of Multifamily Rental Property units; (b) the short run and long run price elasticity of Multifamily Rental Property units; and/or (c) price sensitivity of Multifamily Rental Property units.

**REQUEST NO. 30:**

All Documents and Communications discussing or analyzing: (a) the short run and long run supply elasticity of Student Rental Property beds and/or defined unit; (b) the short run

44

and long run price elasticity of Student Rental Property beds and/or defined unit; and/or

(c) price sensitivity of Student Rental Property beds and/or defined unit.

Dated: July 28, 2023

/s/ Tricia R. Herzfeld
Tricia R. Herzfeld (#26014)
Anthony A. Orlandi (#33988)
**HERZFELD SUETHOLZ GASTEL LENISKI AND WALL, PLLC**
223 Rosa L. Parks Avenue, Suite 300
Nashville, TN 37203
Telephone: (615) 800-6225
tricia@hsglawgroup.com
tony@hsglawgroup.com

*Liaison Counsel*

Patrick J. Coughlin
Carmen A. Medici
Fatima Brizuela
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 798-5325
Facsimile: (619) 233-0508
pcoughlin@scott-scott.com
cmedici@scott-scott.com
fbrizuela@scott-scott.com

Patrick McGahan
Michael Srodoski
G. Dustin Foster
Isabella De Lisi
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06145
Telephone: (860) 537-5537
Facsimile: (860) 537-4432
pmcgahan@scott-scott.com
msrodoski@scott-scott.com
gfoster@scott-scott.com

Stacey Slaughter

Thomas J. Undlin
Geoffrey H. Kozen
J. Austin Hurt
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
sslaughter@robinskaplan.com
tundlin@robinskaplan.com
gkozen@robinskaplan.com
ahurt@robinskaplan.com

Swathi Bojedla
Mandy Boltax
**HAUSFELD LLP**
888 16th Street, N.W., Suite 300
Washington, DC 20006
Telephone: (202) 540-7200
sbojedla@hausfeld.com
mboltax@hausfeld.com

Gary I. Smith, Jr.
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
gsmith@hausfeld.com

Katie R. Beran
**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Telephone: 1 215 985 3270
kberan@hausfeld.com

*Interim Co-Lead Counsel*

46

Eric L. Cramer
Michaela L. Wallin
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
ecramer@bm.net
mwallin@bm.net

Daniel J. Walker
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20006
Telephone: (202) 559-9745
dwalker@bm.net

Brendan P. Glackin
Dean M. Harvey
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, Suite 2900
San Francisco, CA 94111
Telephone: 415-956-1000
bglackin@lchb.com
dharvey@lchb.com

Steve W. Berman
Breanna Van Engelen
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Benjamin J. Widlanski
Javier A. Lopez
**KOZYAK TROPIN & THROCKMORTON LLP**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
bwidlanski@kttlaw.com

Christian P. Levis
Vincent Briganti
Peter Demato
Radhika Gupta
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
pdemato@lowey.com
rgupta@lowey.com

Christopher M. Burke
Walter W. Noss
Yifan (Kate) Lv
**KOREIN TILLERY P.C.**
707 Broadway, Suite 1410
San Diego, CA 92101
Telephone: (619) 625-5621
Facsimile (314) 241-3525
cburke@koreintillery.com
wnoss@koreintillery.com
klv@koreintillery.com

Joseph R. Saveri
Steven N. Williams
Cadio Zirpoli
Kevin E. Rayhill
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
czirpoli@saverilawfirm.com
krayhill@saverilawfirm.com

Jennifer W. Sprengel
Daniel O. Herrera
Alexander Sweatman
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, IL 60603

47

jal@kttlaw.com

Telephone:  312-782-4880
Facsimile: 312-782-4485
jsprengel@caffertyclobes.com
dherrera@caffertyclobes.com
asweatman@caffertyclobes.com

*Plaintiffs' Steering Committee Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July xx, 2023, a true and correct copy of the foregoing PLAINTIFFS' FIRST SET OF REQUESTS TO ALL DEFENDANTS FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION was served by email on Defendants' counsel of record.

_____

Patrick Coughlin