UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-md-03071<br>MDL No. 3071<br><br>Judge Waverly D. Crenshaw, Jr.<br><br>This Document Relates to:<br>3:23-cv-00326<br>3:23-cv-00378<br>3:23-cv-00380<br>3:23-cv-00391<br>3:23-cv-00445 |

**THE THOMA BRAVO DEFENDANTS' REPLY IN
SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED CLASS ACTION COMPLAINT**

James H. Mutchnik, P.C. (*pro hac vice*)
jmutchnik@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Mark McKane, P.C. (*pro hac vice*)
mark.mckane@kirkland.com
KIRKLAND & ELLIS LLP
555 California St., Suite 2900
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Counsel for Defendants
Thoma Bravo Fund XIII, L.P., and Thoma Bravo
Fund XIV, L.P. and Thoma Bravo, L.P.*

In their Opposition to the Thoma Bravo Defendants' Motion to Dismiss, ECF No. 390 ("Opposition" or "Opp."), Plaintiffs concede both that the Thoma Bravo Defendants[1] cannot conspire with RealPage as a matter of law, and that their Amended Complaint does not allege any contacts between the Thoma Bravo Defendants and any of the Lessor Defendants. Opp. 1 n.2, 5. Yet Plaintiffs insist the Amended Complaint's three paragraphs identifying the Thoma Bravo Defendants allege facts sufficient to state a claim for their *independent* involvement in an alleged price fixing conspiracy under federal and state antitrust laws. Those three paragraphs, located in the "Parties" section of the Amended Complaint, state nothing more than generalized facts showing a generic equity ownership relationship that arose long after most of the alleged facts. The Opposition's reliance on the so-called "single enterprise" theory—which the Sixth Circuit has never adopted—does not save their case: Under Plaintiffs' own recitation of this theory, they must still allege facts sufficient to show that each Thoma Bravo Defendant independently participated in the anticompetitive scheme. As illustrated by the Opposition's cited cases, Plaintiffs fall short. This Court should grant the Thoma Bravo Defendants' Motion.

**I.  ARGUMENT**

    **A.  Plaintiffs cannot remedy their failure to plead alter ego liability through their nonbinding "single enterprise" theory of liability.**

The Opposition does not dispute that the Amended Complaint alleges insufficient facts to state any veil piercing, alter ego, or respondeat superior claim, as required to hold the Thoma Bravo Defendants vicariously liable for RealPage's alleged actions. Opp. 8 n.11. Instead, Plaintiffs rely on "single enterprise liability," a "theory of liability" that they acknowledge "[t]he

---

[1] Capitalized terms used but not defined herein shall have the meaning set forth in the Memorandum of Points and Authorities in Support of the Thoma Bravo Defendants' Motion to Dismiss Plaintiffs' First Amended Consolidated Class Action Complaint, ECF. No. 336 (the "MTD" or "Motion").

Sixth Circuit has not [] endorsed" and "this Court has not addressed." Opp. 6 n.10, 8 n.11. From the notion that a parent cannot conspire with its wholly owned subsidiary for antitrust purposes, *see Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 777 (1984), certain courts have reasoned that the unity of interests among corporate affiliates permits treating a corporate enterprise as a single economic unit for pleading antitrust claims. *E.g.*, *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1236 (10th Cir. 2017) (noting in dicta that a corporate affiliate could be viewed as a single economic entity for Section 2 monopoly claims); *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 628-31 (9th Cir. 2018) (finding a subsidiary that was alleged to have "made an essential contribution" to its parent's antitrust conspiracy could be jointly liable); *Jones v. Varsity Brands, LLC*, 618 F. Supp. 3d 713, 721-22 (W.D. Tenn. 2022) (finding, in connection with a subsidiary's horizontal monopoly of a market, plaintiff had stated a claim against owners that had funded and directed its subsidiary's acquisition of a rival).

But other courts have rejected this theory. *E.g.*, *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 342 n.44 (3d Cir. 2010) ("Contrary to plaintiffs' suggestion, however, it does not follow from *Copperweld* that subsidiary entities are automatically liable under § 1 for any agreements to which the parent is a party."); *Acuity Optical Lab'ys., LLC v. Davis Vision, Inc.*, 2016 WL 4467883, at *9 (C.D. Ill. Aug. 23, 2016) (declining "to find increased antitrust liability based on commonality of ownership, in the absence of specific evidence of coordinated activity.").

Whether the single enterprise theory is appropriate in other circumstances, here Plaintiffs misuse it in an attempt to circumvent alleging facts sufficient for alter ego liability. It is well-established that "[a] parent corporation generally is not liable for the acts of its subsidiary, even

if its subsidiary is wholly owned." *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007) (noting that courts may pierce the corporate veil, disregard the corporate entity, and treat the parent corporation and its subsidiary as a single entity only "in extraordinary cases"). Plaintiffs cannot make only general allegations regarding the Thoma Bravo Defendants' ownership interest in RealPage and thereby bypass the corporate form based on the nonbinding, controversial single enterprise theory. *Cf. Burks v. Lasker*, 441 U.S. 471, 478 (1979) ("Congress has never indicated that the entire corpus of state corporation law is to be replaced simply because a plaintiff's cause of action is based upon a federal statute.").

**B.  Plaintiffs' bare allegations of corporate ownership fail to show independent participation in the alleged price-fixing conspiracy.**

The Opposition acknowledges that, even under the single enterprise theory, a plaintiff "must allege that [each defendant] entity 'independently participated in the enterprise's scheme.'" Opp. 8 (quoting *Lenox*, 847 F.3d at 1237; *Varsity Brands*, 618 F. Supp. 3d at 723). Indeed, Plaintiffs' own cases underscore that independent participation in the conspiracy must be well-pleaded. Plaintiffs' sparse allegations against the Thoma Bravo Defendants are inadequate.

Plaintiffs insist the Thoma Bravo Defendants independently participated in the alleged conspiracy between RealPage and the Lessor Defendants by, inter alia, purchasing RealPage and making public statements in a press release upon closing about their intent to partner with RealPage, to provide unspecified guidance to RealPage, select and approve unnamed acquisition targets, set unnamed company policies, and appoint a director and two officers. Opp. 9-12. But these allegations indicate nothing beyond generic ownership and fail to allege direct participation ***in the conspiracy*** by any Thoma Bravo person, fund, or entity. *See Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 857 n.12 (10th Cir. 1999) (finding plaintiffs' "'abundant evidence' consist[ing] of various facts, or circumstances, which [were] typical of any parent and subsidiary," were

3

insufficient to extend Section 1 liability of a subsidiary to a parent). Plaintiffs conflate actions demonstrating ownership broadly, with actions demonstrating involvement in a particular agreement or conspiracy, as required.[2]

As one example, Plaintiffs analogize heavily to *Varsity Brands* for the proposition that the independent participation prong is met if the parent company controls a subsidiary's investment decisions and appoints directors to the subsidiary's board. In fact, the *Varsity Brands* plaintiffs alleged the equity owner funded and directed its subsidiary to acquire a particular rival in furtherance of a horizontal conspiracy to monopolize a market. *See Varsity Brands*, 618 F. Supp. 3d at 718 (describing the parent's involvement in the anticompetitive scheme by "funding further acquisitions of rivals, including its acquisition of Epic Brands in January 2018.").

Here, all of the material facts relating to the conspiracy **predate** the Thoma Bravo Fund XIII and Fund XIV's 2021 acquisition. And in contrast to *Varsity Brands*, the Amended Complaint makes no allegation of any strategic acquisition in which all or any of the Thoma Bravo Defendants was involved, or for which any Thoma Bravo-appointed director or officer played any role. Indeed, Plaintiffs do not allege RealPage made any acquisitions at all in or after 2021. Unlike *Varsity Brands*, there are no allegations regarding the Thoma Bravo Defendants' collective or individual oversight of RealPage that connect them to the alleged antitrust conspiracy underlying Plaintiffs' claims. As a result, Plaintiffs' generalized statements regarding the Thoma Bravo Defendants' involvement in RealPage's investment decisions, and director or officer appointments, do not show independent participation in the anticompetitive scheme.

---

[2] Plaintiffs attempt to foist upon the Thoma Bravo Defendants all of their allegations against RealPage by including the Thoma Bravo Defendants within the defined term "RealPage." Am. Compl. 2. Yet nearly all of Plaintiffs' allegations against RealPage—and all allegations materially establishing and facilitating the conspiracy—predate Thoma Bravo's April 2021 acquisition.

Likewise, Plaintiffs rely on *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.* for the proposition that a party which directs, controls or encourages a subsidiary's conduct independently participates in such conduct. 311 F. Supp. 2d 1048, 1069 (D. Colo. 2004). In that case, plaintiff alleged that the parent had "repeatedly used its size and clout to coerce" market participants, including by wielding the ownership of its subsidiaries as leverage. In fact, the parent's control over its subsidiaries' recordkeeping, budgeting, and management processes was so extensive that the court upheld the plaintiffs' alter ego claim. *Id.* at 1071. These allegations are far different to Plaintiffs' bulk allegations against the Thoma Bravo Defendants—which do not, in any event, tie back to the alleged conspiracy—in the Amended Complaint (which has no alter ego claim).

Plaintiffs must allege facts that show each defendant had both "**direct and independent participation** in the alleged conspiracy." *In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 906–07 (N.D. Ohio 2010) (quoting *In re Pennsylvania Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 688 (E.D. Pa. 2009)) (emphasis added). Here, this essentially means allegations following the 2021 investment. The investment in RealPage demonstrates mere ownership interest, and the simultaneous press release makes no mention of any conspiracy. At most, the Opposition cites to just two circumstances post-dating the Thoma Bravo Defendants' acquisition of RealPage in support of the alleged conspiracy: a 2022 RealPage Yieldstar Manager Training Deck, and a statement on RealPage's website suggesting RealPage helps customers "outperform the market." Opp. 9. But the Amended Complaint fails to link any of the Thoma Bravo Defendants to either circumstance beyond a contemporaneous ownership interest, which cannot be enough.

## II. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion and dismiss the claims asserted against the Thoma Bravo Defendants with prejudice.

Dated: July 31, 2023                                   Respectfully submitted,

                                              By:  /s/ Mark McKane, P.C.
                                                   James H. Mutchnik, P.C. (*pro hac vice*)
                                                   jmutchnik@kirkland.com
                                                   KIRKLAND & ELLIS LLP
                                                   300 N. LaSalle
                                                   Chicago, IL 60654
                                                   Telephone: (312) 862-2000
                                                   Facsimile: (312) 862-2200

                                                   Mark McKane, P.C. (*pro hac vice*)
                                                   mark.mckane@kirkland.com
                                                   KIRKLAND & ELLIS LLP
                                                   555 California Street
                                                   San Francisco, California 94104
                                                   Telephone: (415) 439-1400
                                                   Facsimile: (415) 439-1500

                                                   *Counsel for Defendants*
                                                   *Thoma Bravo Fund, XIII, L.P.; Thoma Bravo*
                                                   *Fund XIV, L.P.; and Thoma Bravo, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2023, a copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

*/s/ Mark McKane, P.C.*
Mark McKane, P.C.
