| | |
|---|---|
| **IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II)** | **Case No. 3:23-MD-3071 MDL-3071**<br><br>**LRO DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>**THIS DOCUMENT RELATES TO ALL CASES**<br><br>Chief Judge Waverly D. Crenshaw, Jr. |

# LRO DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

## TABLE OF CONTENTS

                                                                          **Page**

ARGUMENT ............................................................................................................................... 1

     I.     The alleged conspiracy, as pled, does not plausibly include the LRO Defendants. ......................................................................................................... 1

     II.    The LRO Allegation is an admission and does not create an issue of fact. ............ 4

The conspiracy as pled in the FAC alleges the Lessor Defendants use the "same" RealPage algorithm that allegedly relies on non-public, proprietary data to make pricing recommendations. FAC (Dkt. 314) ¶ 5 ("RealPage then trains its machine learning and artificial intelligence across that pool of its clients' *proprietary data* and uses algorithms to generate rental prices daily for each of RealPage's client's available units through its RMS" (emphasis added)); *id.* ¶¶ 3, 116 (discussing alleged collection and use of "proprietary" or "non-public" data); *id.* ¶ 18. However, the LRO Defendants do not fit into an alleged conspiracy that relies on the supposed exchange of confidential information. In an effort to keep them in the case, Plaintiffs improperly change their theory (solely in an attempt to defeat the LRO Motion to Dismiss) so that the algorithm they describe throughout the FAC is not a necessary part of the conspiracy at all. Plaintiffs' attempt to alter the entire nature of their conspiracy theory lays bare their dispositive pleading deficiencies as to the LRO Defendants, independent of the infirmities that apply to all Defendants. The Court should grant the 15 LRO Defendants' Motion to Dismiss.

## ARGUMENT

**I.       The alleged conspiracy, as pled, does not plausibly include the LRO Defendants.**

While Plaintiffs' opposition brief claims that the LRO Defendants "misconstrue the essence of the alleged conspiracy" (Dkt. 385 at 1), they concede otherwise by putting forth an entirely new theory—one that, for the first time, does not include an algorithm's use of allegedly non-public, proprietary data. Plaintiffs now claim the alleged conspiracy is an agreement to "delegate . . . rental price and supply decisions to RealPage," and argue, "[w]hether [the LRO Defendants] took different steps . . . by using different software interfaces, exchanging more or less information . . . is immaterial." *Id.* This new theory is not in the FAC.

Having already admitted that LRO's algorithm was designed to use only public information as an input to avoid potential antitrust violations, Plaintiffs have shifted the nature of

their conspiracy to try to salvage their claims against the LRO Defendants. But in their opposition to the Defendants' Joint Motion to Dismiss (Dkt. 388), Plaintiffs slip back to the FAC's actual allegations. On the very first page of that simultaneously filed brief, Plaintiffs analyze a situation where "confidential price strategy information" is collected and then, importantly, disseminated to alleged co-conspirators in what they argue is "the exact situation in front of the Court." *Id.* at 1. Plaintiffs state the Defendants "shared their confidential pricing information with RealPage, who then used that information in its RMS . . ." *Id.* Plaintiffs also starkly claim, "RealPage RMS rely on non-public data they received from licensed users . . ." *Id.* at 2. That "non-public information" is allegedly used to "set prices," and "Defendants [allegedly] share this proprietary information knowing that RealPage will use it to . . . set prices." *Id.* at 3.

The FAC tells a different story from Plaintiffs' opposition brief as there are no allegations in the 162-page FAC alleging that LRO has *ever* used non-public, proprietary information in its algorithm. The only allegation about LRO's algorithm is the LRO Allegation in Plaintiffs' numerous prior complaints, which states that LRO was designed to use only public data. As the LRO Defendants' opening brief shows, the use of public information, even via LRO's algorithm, does not raise an inference of conspiracy sufficient to state a plausible antitrust claim to survive a motion to dismiss. *Cf. In re Citric Acid Litig.*, 996 F. Supp. 951, 959 (N.D. Cal. 1998) (noting the use of "publicly available information does not support an inference of conspiracy."), *aff'd*, 191 F.3d 1090 (9th Cir. 1999). Plaintiffs have not cited any case law to the contrary.

Plaintiffs argue that the LRO Allegation alleges only how LRO was "original[ly] design[ed]," but importantly the FAC does not allege, as required, that RealPage actually changed LRO to use non-public information or share non-public information with other Lessor Defendants. Instead, the FAC relies entirely on vague allegations about an amorphous

"integrat[ion]" (FAC ¶¶ 13, 112), cryptic "enhancements" (*id.* ¶¶ 15, 112), and an allegation that "RealPage merged LRO [without further elaboration] into its existing RMS," an undefined "combined platform" (*id.* ¶ 106). Compounding the confusion, Plaintiffs admit LRO is still offered as a separate RMS product. *Id.* ¶ 111. If Plaintiffs had information that the design of LRO changed, they already had several opportunities to amend their complaints to include them. Plaintiffs are stuck with the allegations in the FAC, and new theories and argument in an opposition brief are not proper for consideration in deciding a motion to dismiss, as this Court has held. *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791 (M.D. Tenn. 2018) (Crenshaw, C.J.) ("As a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss").

In turn, Plaintiffs allege "RealPage *intended* to comingle" YieldStar and LRO "data pools" (*id.* ¶ 106), but the FAC does not allege that RealPage actually did that or for what purpose RealPage actually uses allegedly "comingled data pools" of non-public information. The allegations about RealPage's terms of service do not say LRO users ever actually obtained competitors' non-public, proprietary information or shared their own non-public information with the other co-conspirators, only that information provided to RealPage "is not treated as confidential by RealPage if transformed or aggregated at RealPage's discretion, and not specifically identifiable to the customer." FAC ¶ 112. This does not permit an inference of a conspiracy.[1] *In re Loc. TV Advert. Antitrust Litig.*, No. 18-CV-6785, 2022 WL 13830733, at *3 (N.D. Ill. Oct. 21, 2022) ("Dissemination of *aggregated* information which avoids transactional

---

[1] Plaintiffs also allege, in another example of group pleading, "RealPage provided users with certain [undefined] historic reports." FAC ¶ 133, n.91. The admittedly "aggregated" data in these "historical" reports is allegedly drawn from "at least 5 third party comparable properties" and thus does not support an inference of conspiracy for the same reason. *Id.*

3

specificity . . . is generally favored in the antitrust context." (cleaned up)). The above-cited allegations are highlighted in Exhibit A hereto.

Finally, Plaintiffs attempt to salvage their claims by pointing to contractual provisions in AvalonBay's LRO contract. FAC ¶¶ 108-110. But there is not a single allegation that AvalonBay's amendment is unusual or changed RealPage's practices in any meaningful way. Plaintiffs' AvalonBay argument also undermines their own new conspiracy theory. According to Plaintiffs, those provisions were enough to show AvalonBay "declined to acquiesce in" the conspiracy, despite AvalonBay's continued use of LRO. Dkt. 385 at 6. But if all the conspiracy requires is agreements to use one of RealPage's RMS Products as Plaintiffs now argue (which is not a conspiracy under *Twombly*), then the provision AvalonBay negotiated in its contract about proprietary information is irrelevant. Plaintiffs cannot have it both ways.[2]

## II.     The LRO Allegation is an admission and does not create an issue of fact.

Plaintiffs fail to cite any cases overruling the Sixth Circuit's *Pennsylvania Railroad* holding (210 F.2d 437, 440-41 (6th Cir. 1954)) that courts may consider allegations from prior pleadings as admissions against the pleader. *See United States v. Ferguson*, 868 F.3d 514, 515 (6th Cir. 2017) ("One panel of this court may not overrule the decision of another panel; only the en banc court or the United States Supreme Court may overrule the prior panel."). *Pennsylvania Railroad* was cited as recently as 2020 in the Eastern District of Michigan for the proposition that an allegation in a prior pleading is an "admission" for purposes of a motion for judgment on

---

[2] Plaintiffs' other FAC allegations fail to state that the LRO Defendants shared non-public information with competitors. The quote by non-Defendant ECI Group in allegation 4 about "work[ing] together," which Plaintiffs have heavily edited, does not allege non-public information sharing. The same is true for allegation 173, which only characterizes RealPage as "urg[ing]" unidentified "clients" to "shop . . . competitors," not that non-public information was shared. Likewise, allegations 22 and 139 simply say LRO "map[s] out for our teams how they should be pacing their [lease] expirations," but those vague allegations do not say this alleged "mapping" is based on competitor information, much less non-public information.

4

the pleadings. *PetroJebla, SA de C.V. v. Betron Enterprises, Inc.*, No. 19-CV-11439, 2020 WL 95802, at *3 (E.D. Mich. Jan. 8, 2020). Therefore, *Pennsylvania Railroad* is binding case law in the Sixth Circuit unless and until the Sixth Circuit sitting *en banc* overrules it.

Further, Plaintiffs' argument that amended pleadings supersede the original pleadings misses the point. This is not a dispute about which complaint is the operative pleading. The LRO Defendants are merely stating that prior pleadings are judicial admissions—a point that has been black letter law in this Circuit for nearly 70 years. And the cases cited by Plaintiffs for the proposition that "amended pleadings supersede original pleadings" (Dkt. 385 at 9-10) acknowledge well-established exceptions to that rule. *See e.g.*, *Braden v. United States*, 817 F.3d 926, 930 (6th Cir. 2016) (noting that there are "recognized exceptions" to rule that amended pleadings "generally" supersede original pleadings); *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617-18 (6th Cir. 2014) (same and applying an exception); *see also Uhlig LLC v. CoreLogic, Inc.*, No. 21-2543, 2023 WL 4234612, at *11 (D. Kan. June 28, 2023) (finding only, "[plaintiff] *doesn't cite any cases* holding that allegations from an abandoned pleading bind a party on a motion to dismiss a later iteration of the pleading." (emphasis added)).

The LRO Allegation does not create a factual dispute because, as discussed, the FAC does not allege LRO's algorithm uses non-public information in recommending prices. The FAC thus does not *contradict* Plaintiffs' prior admission that LRO does not use non-public data. Regardless, Plaintiffs' suggestion that prior admissions can only be considered on summary judgment is wrong. The *PetroJebla* Court rejected this same argument and concluded that an allegation in a prior pleading was a dispositive admission on a motion to reconsider a motion for judgment on the pleadings. 2020 WL 95802, at *3-4.

DATED: July 31, 2023

Respectfully submitted,

| | |
|---|---|
| */s/ Carl W. Hittinger* | /s/ *Marguerite Willis* |
| Carl W. Hittinger | Marguerite Willis (admitted *pro hac vice*) |
| chittinger@bakerlaw.com | mwillis@maynardnexsen.com |
| Alyse F. Stach | MAYNARD NEXSEN PC |
| astach@bakerlaw.com | 104 South Main Street |
| Tyson Y. Herrold | Greenville, SC 29601 |
| therrold@bakerlaw.com | Telephone: (864) 370-2211 |
| BAKER & HOSTETLER LLP | |
| 1735 Market Street, Suite 3300 | Michael A. Parente (admitted *pro hac vice*) |
| Philadelphia, PA 19103-7501 | mparente@maynardnexsen.com |
| Telephone: (215) 568-3100 | MAYNARD NEXSEN PC |
| | 1230 Main Street, Suite 700 |
| Stephen J. Zralek, BPR #018971 | Columbia, SC 29201 |
| szralek@spencerfane.com | Telephone: (803) 771-8900 |
| S. Chase Fann, BPR #036794 | |
| cfann@spencerfane.com | Margaret M. Siller (BPR No. 039058) |
| SPENCER FANE LLP | msiller@maynardnexsen.com |
| 511 Union Street, Suite 1000 | MAYNARD NEXSEN PC |
| Nashville, TN 37219 | 1201 Villa Place, Suite 103 |
| Telephone: (615) 238-6300 | Nashville, Tennessee 37212 |
| | Telephone: (629) 258-2253 |
| *Counsel for Defendant Equity Residential* | |
| | *Counsel for Defendant Bell Partners, Inc.* |

*/s/ Yehudah L. Buchweitz*
Yehudah L. Buchweitz
yehudah.buchweitz@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8256

Jeff L. White
Jeff.white@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW
Washington, DC 20036
Telephone: (202) 682-7059

R. Dale Grimes, BPR #006223
dgrimes@bassberry.com
BASS, BARRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6244

*Counsel for Defendant Brookfield Properties Multifamily LLC*

*/s/ Lynn H. Murray*
Lynn H. Murray
lhmurray@shb.com
Maveric Ray Searle
msearle@shb.com
SHOOK, HARDY & BACON L.L.P.
111 S. Wacker Dr., Suite 4700
Chicago, IL 60606
Telephone: (312) 704-7766

*/s/ Benjamin R. Nagin*
Benjamin R. Nagin
bnagin@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300

*Counsel for Defendant ConAm Management Corporation*

*/s/ John J. Sullivan*
John J. Sullivan
jsullivan@cozen.com
COZEN O'CONNOR P.C.
3 WTC, 175 Greenwich St., 55th Floor
New York, NY 10007
Telephone: (212) 453-3729

*Counsel for Defendant Independence Realty Trust, Inc.*

*/s/ Britt M. Miller*
Britt M. Miller (admitted *pro hac vice*)
bmiller@mayerbrown.com
Daniel T. Fenske (admitted *pro hac vice*)
dfenske@mayerbrown.com
Matthew D. Provance (admitted *pro hac vice*)
mprovance@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 6006
Telephone: (312) 701-8663

Scott D. Carey (#15406)
scarey@bakerdonelson.com
Ryan P. Loofbourrow (#33414)
rloofbourrow@bakerdonelson.com
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, TN 37203
Telephone: (615) 726-5600

*Counsel for Defendant Mid-America Apartment Communities, Inc.*

*/s/ Jeffrey C. Bank*
Jeffrey C. Bank
jbank@wsgr.com
WILSON SONSINI GOODRICH & ROSATI PC
1700 K Street NW, Fifth Floor
Washington, DC 20006
Telephone: (202) 973-8800

*Counsel for Defendant Morgan Properties Management Company, LLC*

*/s/ Andrew Harris*
Andrew Harris
Andrew.Harris@Levittboccio.com
LEVITT & BOCCIO, LLP
423 West 55th Street
New York, NY 10019
Telephone: (212) 801-1104

*/s/ Nicholas A. Gravante, Jr.*
Nicholas A. Gravante, Jr. (admitted *pro hac vice*)
nicholas.gravante@cwt.com
Philip J. Iovieno (admitted *pro hac vice*)
philip.iovieno@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000

*Counsel for The Related Companies, Inc. and Related Management Company, L.P.*

*/s/ Jose Dino Vasquez*
Jose Dino Vasquez
dvasquez@karrtuttle.com
Jason Hoeft
jhoeft@karrtuttle.com
KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: (206) 223-1313

*Counsel for Defendant Security Properties, Inc.*

*/s/ Brent Justus*
Brent Justus
bjustus@mcguirewoods.com
Nick Giles
ngiles@mcguirewoods.com
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1000

*Counsel for Defendant Simpson Property Group, LLC*

*/s/ Benjamin I. VandenBerghe*
Benjamin I. VandenBerghe
biv@montgomerypurdue.com
Kaya R. Lurie
klurie@montgomerypurdue.com
MONTGOMERY PURDUE PLLC
701 Fifth Avenue, Suite 5500
Seattle, Washington 98104-7096

*Counsel for Defendant Thrive Communities Management, LLC*

| */s/ Craig Seebald* | */s/ Evan Fray-Witzer* |
|---|---|
| Jessalyn H. Zeigler | Evan Fray-Witzer |
| jzeigler@bassberry.com | Evan@CFWLegal.com |
| BASS, BERRY & SIMS, PLC | CIAMPA FRAY-WITZER, LLP |
| 150 Third Avenue South | 20 Park Plaza, Suite 505 |
| Suite 2800 | Boston, MA 02116 |
| Nashville, TN 37201 | Telephone: 617-426-0000 |
| Telephone: (615) 742-6200 | |
| | *Counsel for Defendants WinnCompanies LLC, and WinnResidential Manager Corp.* |
| Craig P. Seebald (admitted *pro hac vice*) | |
| cseebald@velaw.com | |
| Stephen M. Medlock (admitted *pro hac vice*) | |
| smedlock@velaw.com | |
| VINSON & ELKINS LLP | |
| 2200 Pennsylvania Ave., N.W. | |
| Suite 500 West | |
| Washington, D.C. 20037 | |
| Telephone: (202) 639-6500 | |
| | |
| Christopher W. James (admitted *pro hac vice*) | |
| cjames@velaw.com | |
| VINSON & ELKINS LLP | |
| 555 Mission Street | |
| Suite 2000 | |
| San Francisco, CA 94105 | |
| Telephone: (415) 979-6900 | |

*Counsel for Defendant Windsor Property Management Company*

# CERTIFICATE OF SERVICE

    I, Carl W. Hittinger, served the foregoing Reply in Support of Motion to Dismiss for Failure to State a Claim upon all counsel of record on July 31, 2023 by filing it electronically using the Court's CM/ECF system, which caused this document to be served on all Electronic Filing Users, as directed by Local Rule 5.02(c).

    /s/ *Carl W. Hittinger*
    Carl W. Hittinger