UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-MD-3071<br>MDL No. 3071<br><br>This Document Relates to:<br>ALL CASES<br><br>Chief Judge Waverly D. Crenshaw, Jr. |

**CERTAIN DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS FOR FAILURE TO PLEAD AGENCY LIABILITY**

Plaintiffs agree that (1) group pleading is improper and the Complaint must plausibly allege how each of the Property Management Defendants[1] was involved in the alleged conspiracy, *see* ECF No. 384, Opp. at 9-10; (2) there is an agency relationship between property managers and building owners, Opp. at 7; and (3) an agent can only be liable "for the acts of its principal in an antitrust conspiracy" if "the agent assisted in its principal's participation in a horizontal restraint" and the agent had knowledge of the unlawful objective to restrain trade, intended to restrain trade, and contributed materially to the restraint of trade, Opp. at 6 & n3.[2]

Thus, the only question is whether the First Amended Complaint ("FAC") (ECF No. 314) meets these standards. It does not. Plaintiffs engage in generic group pleading rather than allege the facts necessary to impose liability on the Property Management Defendants as agents. There are no plausible allegations that each had knowledge of the alleged conspiracy to restrain trade, intended to engage in that conspiracy, and contributed materially to it.

The opening brief identified numerous categories of facts about Property Management Defendants that Plaintiffs fail to plead. Plaintiffs fail to allege that the Property Management Defendants did anything other than use RealPage revenue management software on behalf of some

---

[1] The Property Management Defendants joining this motion are Avenue5 Residential, LLC ("Avenue5"), Bozzuto Management Company ("BMC"), FPI Management, Inc. ("FPI"), Pinnacle Property Management Services, LLC ("Pinnacle"), and ZRS Management, LLC ("ZRS").

[2] In a footnote, Plaintiffs cite the Areeda treatise to argue that the "the agency exception… does not apply to horizontal restraints of trade." Opp. at n.3. The treatise section cited relates to "commission agents agree[ing] with *each other* to charge a given amount" of commissions. Areeda at ¶1473. But there is no allegation the Property Management Defendants conspired to fix the property management fees that they charge. The allegations relate to apartment rents, where property managers are acting as agents for the owners of apartment buildings they manage.

Plaintiffs also cite a number of off-point cases that say that an agent can be held liable for wrongful conduct where the agent exceeds the scope of its authority. But those cases are beside the point because Plaintiffs do not plausibly allege that the Property Management Defendants engaged in any wrongful conduct or exceeded the scope of their authority.

1

of their building owner clients. They fail to allege, for example, that the Property Management Defendants agreed with building owners that were not their clients or with other property managers to use RealPage software; that they agreed to adopt or enforce RealPage recommendations; or that they had knowledge of any objective to unlawfully increase rents and intended to unlawfully increase rents. The Plaintiffs fail to point to anything in the FAC making these types of allegations because there is nothing. Thus, Plaintiffs fail to meet their burden of plausibly alleging that the Property Management Defendants engaged in illegal fixing of apartment rents rather than that they simply acted as agents by providing management services at buildings owned by others.

Plaintiffs wrongly assert that they have pled "specific misconduct attributable" to the Property Management Defendants and that they have pled that the Property Management Defendants "affirmatively and directly participated" in the alleged conspiracy. Opp. at 3, 5. Plaintiffs cite only seven paragraphs that refer to the Property Management Defendants by name. Five of those paragraphs are in the section of the Complaint labeled "The Parties" that merely lists all of the dozens of defendants in the case and formulaically recites that they use RealPage revenue management software at "some or all" properties. *See* FAC ¶¶ 48, 51, 63, 75, 90. But the mere use of RealPage software is consistent with unilateral behavior and in no way suggests that the Property Management Defendants knew of, joined, and materially advanced any alleged unlawful conspiracy among lessors. *See, e.g.*, *Amory Invs. LLC v. Utrecht-Am. Holdings, Inc.*, 2023 WL 4673282, at *1 (7th Cir. July 21, 2023) (affirming dismissal of antitrust claims where "The complaint does not allege that [defendant] served as a conduit for the producers' agreement, that it helped them coordinate their production... or even that [defendant] knew that the producers were coordinating among themselves."); *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 309192, *13 (N.D. Cal. Jan. 21, 2014) ("Plaintiffs' theory fails because it conflates agency with conspiracy"

and granting motion to dismiss where complaints "offer only boilerplate assertions of an agency relationship with the parties whose participation in the conspiracy is more directly alleged.").

The other two paragraphs that Plaintiffs cite purport to quote a former Pinnacle business manager who said that RealPage "was recommending that I raise rents $400 to $500 a month per unit[.] It was a nightmare. It was embarrassing. It was absolutely ridiculous," FAC ¶ 11; and that RealPage "helped Pinnacle avoid a situation where there were a significant number of units renewing at the same time," FAC ¶ 22. But as the opening brief explained, RealPage recommending a rent increase is not indicative of collusion and there is no allegation that Pinnacle even followed the recommendation. As to lease renewals, distributing lease expirations so that not all units in a building come up for renewal at the same time is an obvious legitimate, unilateral reason for using RealPage software. Opening at 9. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567-68 (2007) (affirming dismissal of an alleged conspiracy where there was an "obvious alternative explanation"). Perhaps most importantly, these allegations do nothing to suggest that Pinnacle had knowledge of an unlawful conspiracy, intended to restrain trade, or contributed materially to the restraint and, of course, they say nothing whatsoever about the other Property Management Defendants.

Every other paragraph of the FAC cited in the Opposition simply includes generic allegations about either "Lessor Defendants" generally or some unidentified defendants, without anything specific about any Property Management Defendants. Plaintiffs cannot sustain this lawsuit against the Property Management Defendants with these generic allegations. The cases that Plaintiffs cite for the proposition that generic references to groups of defendants can sometimes state a claim for relief do not apply because those cases included specific allegations about individual defendants that are missing here. *See, e.g.*, *Rodriguez v. Providence Cmty. Corr.,*

3

*Inc.*, 191 F.Supp.3d 758, 772-73 (M.D. Tenn. 2016) ("[Plaintiffs] levy many specific allegations regarding… the Individual Defendants[.]"); *In re Auto. Parts Antitrust Litig.*, 2017 WL 7689654, at *7 (E.D. Mich. May 5, 2017) ("Plaintiffs have [specifically] alleged that Corning Inc. controlled CIKK and that CIKK provided marketing and sales services to Corning Inc.").[3] In those cases, the specific allegations made those claims plausible, but there are no specific allegations here.

The FAC's generic allegations fail to satisfy the elements of agency liability in any event. Plaintiffs assert that five paragraphs show the Property Management Defendants "knew about the unlawful objective of the conspiracy facilitated by RealPage and intended to accomplish its end." Opp. at 6-7 (citing FAC ¶¶ 5, 18, 116, 171, 174). But those paragraphs provide at most generic assertions that defendants used RealPage's revenue management software at some of the properties they manage. Nothing alleges that any of the Property Management Defendants had *knowledge* of any alleged illegal price fixing conspiracy by their principals or the *intention* to further any alleged illegal conspiracy. Indeed, Plaintiffs do not even allege that the Property Management Defendants were the ones that decided to use RealPage at these properties, as opposed to their building owner clients. *See, e.g., Marion Diagnostics Center v. Becton Dickinson & Co.*, 29 F.4th 337, 350 (7th Cir. 2022) (dismissing complaint that was "silent on whether the Distributors' sales

---

[3] The same is true for the out-of-circuit cases that Plaintiffs cite. *See Iowa Pub. Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 340 F.Supp.3d 285, 317 (S.D.N.Y. 2018) ("Because the Amended Complaint alleges each Defendant's participation separately, it is not impermissible group pleading to refer to their collective actions in furtherance of the conspiracy using a more general phrase such as 'the Prime Broker Defendants.'"); *Prodanova v. H.C. Wainwright & Co., LLC*, 2018 WL 8017791, at *10 (C.D. Cal. Dec. 11, 2018) ("The FAC does not contain the type of 'everyone did everything' allegations that warrant the application of the group pleading rule.... Rather, the FAC sufficiently alleges 'specific misconduct' attributable to" each defendant.); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F.Supp.2d 1179, 1184 (N.D. Cal. 2009) ("The amended complaints add detail about numerous illicit conspiratorial communications between and among defendants," guilty pleas entered by particular defendants, and "specific information about the group and bilateral meetings.").

4

representatives knew of any conspiracy, much less shared an intent to participate in one."). In addition, although Plaintiffs concede that they need to plausibly allege that the Property Management Defendants "intended to restrain trade *rather than simply earn their customary commission*," Opp. at 6 (emphasis added), the FAC fails to allege that the Property Management Defendants did anything other than provide management services to building owners in their customary fashion.

Plaintiffs also do not plead facts to plausibly show that the Property Management Defendants "contributed materially" to a conspiracy. Plaintiffs cite generic allegations that defendants used RealPage software, Opp. at 8 (citing FAC ¶¶ 10, 22, 27, 48, 51, 63, 75, 90, 116, 121, 125, 141, 153, 163); that some defendants might have spoken with RealPage or with one another, but without allegations of any specific conversations much less any specific conversations involving any Property Management Defendants, *id.* (citing FAC ¶¶ 5, 7, 116, 224); and that one defendant that is not a Property Management Defendant instructed its own employees to follow RealPage recommendations, *id.* (citing FAC ¶ 9). None of those allegations plausibly suggest that Property Management Defendants did anything other than use the software. That is far short of alleging that they joined a conspiracy, much less that they "contributed materially" to it.

At bottom, the FAC relies upon generalized and conclusory allegations that do not satisfy *Twombly*. That is true as to all defendants, and Property Management Defendants join in the main motion to dismiss. But as to the Property Management Defendants in particular, the FAC does not allege facts that support any of the additional elements that Plaintiffs acknowledge would be necessary to impose liability on agents.

For these reasons, pursuant to Fed R. Civ. P. 12(b)(6), Plaintiffs fail to state a claim for relief and the claims against the Property Management Defendants should be dismissed.

DATED: July 31, 2023

Respectfully submitted,

| | |
|---|---|
| */s/ Danny David* | */s/ James D. Bragdon* |
| Danny David | James D. Bragdon |
| danny.david@bakerbotts.com | jbragdon@gejlaw.com |
| BAKER BOTTS LLP | Sam Cowin |
| 910 Louisiana Street | scowin@gejlaw.com |
| Houston, TX 77002 | GALLAGHER EVELIUS & JONES LLP |
| Telephone: (713) 229-4055 | 218 N. Charles St., Suite 400 |
| | Baltimore, MD 21201 |
| James Kress | Telephone: (410) 727-7702 |
| (*pro hac* forthcoming) | |
| james.kress@bakerbotts.com | Philip A. Giordano (admitted *pro hac vice*) |
| Paul Cuomo | philip.giordano@hugheshubbard.com |
| (*pro hac* forthcoming) | HUGHES HUBBARD & REED LLP |
| paul.cuomo@bakerbotts.com | 1775 I Street NW |
| BAKER BOTTS LLP | Washington, DC 20007 |
| 700 K. Street, NW | Telephone: (202) 721-4776 |
| Washington, DC 20001 | |
| Telephone: (202) 639-7884 | Charles E. Elder, BPR # 038250 |
| | celder@bradley.com |
| *Counsel for Defendant Avenue5 Residential, LLC* | BRADLEY ARANT BOULT CUMMINGS LLP |
| | 1600 Division Street, Suite 700 |
| | Nashville, Tennessee 37203 |
| | P: 615.252.3597 |
| | |
| | *Counsel for Defendant Bozzuto Management Company* |

/s/ Charles H. Samel
Charles H. Samel
charles.samel@stoel.com
Edward C. Duckers
ed.duckers@stoel.com
STOEL RIVES LLP
1 Montgomery Street, Suite 3230
San Francisco, CA 94104
Telephone: (415) 617-8900

George A. Guthrie
gguthrie@wilkefleury.com
WILKE FLEURY LLP
621 Capitol Mall, Suite 900
Sacramento, CA 95814
Telephone: (916) 441-2430

*Counsel for Defendant FPI Management, Inc.*


/s/ Ferdose al-Taie
Ferdose al-Taie (admitted *pro hac vice*)
faltaie@bakerdonelson.com
BAKER, DONELSON, BEARMAN CALDWELL &
BERKOWITZ, P.C.
956 Sherry Lane, 20th Floor
Dallas, TX 75225
Telephone: (214) 391-7210

Christopher E. Thorsen (BPR # 21049)
cthorsen@bakerdonelson.com
BAKER, DONELSON, BEARMAN CALDWELL &
BERKOWITZ, P.C.
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, TN 37201
Telephone: (615) 726-5600
*Counsel for Defendant ZRS Management, LLC*

/s/ Kenneth Reinker
Kenneth Reinker
kreinker@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1522

Joseph M. Kay
jkay@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2745

*Counsel for Defendant Pinnacle Property Management Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record registered on the CM/ECF system.

DATED this 31st day of July, 2023.

/s/ *Kenneth Reinker*
Kenneth Reinker
