**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-MD-3071<br>MDL No. 3071<br><br>This Document Relates to:<br>ALL CASES<br><br>Chief Judge Waverly D. Crenshaw, Jr. |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS MULTIFAMILY PLAINTIFFS' FIRST AMENDED
CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.     ARGUMENT ............................................................................................... 1

    A.     Plaintiffs' Group Pleading Allegations of Conspiracy Fail ................................... 1

    B.     Plaintiffs Have Not Alleged Direct Evidence of an Agreement ........................... 4

    C.     Plaintiffs Have Not Alleged Circumstantial Evidence of an Agreement ............. 5

          i.     Plaintiffs Do Not Allege Parallel Conduct ................................................. 5

          ii.    Plaintiffs' Alleged Plus Factors Do Not Evince Any Conspiracy ............. 7

    D.     The Rule of Reason Applies ................................................................................ 10

          i.     Plaintiffs Fail to Allege a Plausible Relevant Market ............................. 12

          ii.    Plaintiffs Have Not Alleged Market Power ............................................. 13

    E.     Plaintiffs Lack Antitrust Standing ..................................................................... 14

    F.     Plaintiffs' State-Law Claims Fail ....................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson News, L.L.C. v. Am. Media, Inc.*,
680 F.3d 162 (2d Cir. 2012)...................................................................................6

*Ariz. v. Maricopa Cnty. Med. Soc'y*,
457 U.S. 332 (1982).............................................................................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................7

*In re Blood Reagents Antitrust Litig.*,
756 F. Supp. 2d 623 (E.D. Penn. 2010) .................................................................6

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993).............................................................................................13

*Catalano, Inc. v. Target Sales, Inc.*,
446 U.S. 643 (1980).............................................................................................11

*C.S. Sewell, M.D. P.C. v. Amerigroup Tenn., Inc.*,
2018 WL 6591429 (M.D. Tenn. Dec. 14, 2018)....................................................7

*Debjo Sales, LLC v. Houghton Mifflin Harcourt Publ'g Co.*,
2015 WL 1969380 (D.N.J. Apr. 29, 2015) ..........................................................13

*In re Diisocyanates Antitrust Litig.*,
2020 WL 1140244 (W.D. Penn. Mar. 9, 2020) ......................................................6

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*,
28 F.4th 42 (9th Cir. 2022) .....................................................................................8

*Erie Cnty. v. Morton Salt, Inc.*,
702 F.3d 860 (6th Cir. 2012) ................................................................................10

*Expert Masonry, Inc. v. Boone Cnty.*,
440 F.3d 336 (6th Cir. 2006) ................................................................................10

*Fox v. Saginaw County*,
67 F.4th 284 (6th Cir. 2023) .................................................................................15

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) ................................................................................10

*Gelboim v. Bank of Am. Corp.*,
823 F.3d 759 (2d Cir. 2016)..................................................................................11

ii

# TABLE OF AUTHORITIES
(continued)

*Hicks v. PGA Tour, Inc.*,
   897 F.3d 1109 (9th Cir. 2018) ...............................................................13

*In re HIV Antitrust Litig.*,
   2023 WL 3006572 (N.D. Cal. Apr. 18, 2023) .........................................15

*Hobart-Mayfield, Inc. v. Nat'l Op. Comm. on Standards for Athletic Equip.*,
   48 F.4th 656 (6th Cir. 2022) .....................................................................7

*Hyland v. Homeservices of Am., Inc.*,
   771 F.3d 310 (6th Cir. 2014) .....................................................................5

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010)....................................................................4, 9

*Interstate Circuit, Inc. v. United States*,
   306 U.S. 208 (1939)............................................................................4, 7, 11

*Iowa Public Emps.' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   340 F. Supp. 3d 285 (S.D.N.Y. 2018).......................................................3

*Jones v. Micron Technology Inc.*,
   400 F. Supp. 3d 897 (N.D. Cal. 2019) .....................................................10

*In re K-Dur Antitrust Litig.*,
   2008 WL 2660780 (D.N.J. Feb. 28, 2008) ...............................................15

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
   551 U.S. 877 (2007)............................................................................11, 12

*In re Local TV Advert. Antitrust Litig.*,
   2020 WL 6557665 (N.D. Ill. Nov. 6, 2020) ...............................................9

*Midwest Auto Auction, Inc. v. McNeal*,
   2012 WL 3478647 (E.D. Mich. Aug. 14, 2012) .........................................9

*In re Musical Instruments & Equip. Antitrust Litig.*,
   798 F.3d 1186 (9th Cir. 2015)............................................................6, 8, 9

*Ohio v. Am. Express Co.*,
   138 S. Ct. 2274 (2018)..............................................................................12

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
   471 F. Supp. 3d 981 (N.D. Cal. 2020) .......................................................9

*Royal Drug Co. v. Grp. Life & Health Ins. Co.*,
   737 F.2d 1433 (5th Cir. 1984) .................................................................11

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
    801 F.3d 412 (4th Cir. 2015) ................................................................7

*In re Se. Milk Antitrust Litig.*,
    739 F.3d 262 (6th Cir. 2014) ..............................................................10

*In re Sulfuric Acid Antitrust Litig.*,
    703 F.3d 1004 (7th Cir. 2012) ............................................................10

*Tampa Elec. Co. v. Nashville Coal Co.*,
    365 U.S. 320 (1961)..............................................................................12

*Techmatic, Inc. v. Plating Specialists, Inc.*,
    2022 WL 16542106 (M.D. Tenn. Oct. 28, 2022) .................................10

*Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*,
    530 F.3d 204 (3d Cir. 2008)............................................................5, 11

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
    552 F.3d 430 (6th Cir. 2008) ................................................................3

*Toys "R" Us, Inc. v. FTC*,
    221 F.3d 928 (7th Cir. 2000) ................................................................4

*Trails End Campground, LLC v. Brimstone Recreation, LLC*,
    2015 WL 388313 (Tenn. App. 2015).....................................................15

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)..........................................................................15

*In re Travel Agent Comm'n Antitrust Litig.*,
    2007 WL 3171675 (N.D. Ohio Oct. 29, 2007), *aff'd*, 583 F.3d 896 (6th Cir. 2009) ...............8

*In re Travel Agent Comm'n Antitrust Litig.*,
    583 F.3d 896 (6th Cir. 2009) ............................................................2, 5

*United States v. Apple, Inc.*,
    791 F.3d 290 (2d Cir. 2015)..................................................4, 7, 11, 2

*United States v. Socony-Vacuum Oil Co.*,
    310 U.S. 150 (1940)..............................................................................11

*United States v. U.S. Gypsum Co.*,
    438 U.S. 422 (1978)..............................................................................10

*Uretek USA, Inc. v. Applied Polymerics, Inc.*,
    2011 WL 6029964 (E.D. Va. Dec. 5, 2011) ........................................13

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**STATUTES**

73 Pa. Stat. § 201-2 ................................................................................................................15

73 Pa. Stat. § 201-3 ................................................................................................................15

v

Plaintiffs' Opposition lays bare the implausible theory on which Plaintiffs built their case. Acknowledging the paucity of allegations against the vast majority of Defendants, Plaintiffs reframe the purported conspiracy as little, if anything, more than the "use of RealPage's RMS" by "any" Lessor Defendant. ECF 388 ("Opp.") at 27–28. In other words, Plaintiffs now claim that any company that agrees *with RealPage* to use one of its three revenue management products—a group comprising *hundreds* of companies throughout the country—"necessarily" becomes a member of a nationwide conspiracy to fix prices (*id.* at 27) regardless of which product it uses, much less when or where, and regardless of whether there was an agreement with its competitors to do anything. ECF 385 ("LRO Opp.") at 1. Plaintiffs cite no case in the Sherman Act's history finding a "conspiracy" on similar facts or anything remotely close. The Court should dismiss.

## I.    ARGUMENT

### A.    Plaintiffs' Group Pleading Allegations of Conspiracy Fail

Plaintiffs concede that their Complaint makes no specific allegations about all but a few of the 48 Lessor Defendants—indeed more than 30 Lessor Defendants are mentioned only once in the "Parties" section and never again. ECF 342-2. That alone requires dismissal of Plaintiffs' claims. Plaintiffs attempt to excuse this fatal infirmity by claiming the Complaint "connects each Defendant to the conspiracy, *through each Lessor Defendant's use of RealPage's RMS*." Opp. at 27 (emphasis added). At bottom, Plaintiffs' theory is that *any* company's use of *any* RealPage RMS product constitutes conspiracy.[1] But Plaintiffs offer no allegations about specific Lessor Defendants' use of RealPage's products that would support their implausible theory; in fact, they

---

[1] *See* Opp. at 28 ("any Lessor's use of" any RealPage revenue management product "demonstrates participation in" the alleged conspiracy); *id.* at 26 ("by virtue of each Lessor Defendants' use of" any of the three RealPage revenue management products, each Defendant "became a member of the conspiracy").

1

argue those facts are irrelevant. According to Plaintiffs, it does not matter whether a Lessor Defendant used the software "more actively" than others or for different periods of time, used different RealPage products from those used by other Lessor Defendants, "took different steps to implement" the alleged agreement, shared varying types and amounts of information with RealPage, or employed internal rather than external advisors to operate the software. *Id.* at 18 & n.12; LRO Opp. at 1. It does not even matter whether a lessor has been named as a defendant, since Plaintiffs plead that all "other RealPage RMS users" are "unnamed co-conspirators . . . with whom Defendants are jointly and severally liable." Opp. at 13 n.9 (citing MC ¶ 91).

Plaintiffs' Complaint does not state an antitrust claim. Allegations that each Lessor Defendant joined the conspiracy based solely on its independent *vertical* agreement with RealPage are insufficient as a matter of law to plead a plausible *horizontal* conspiracy to fix prices, much less a "conscious commitment" by *each* Lessor Defendant to such conspiracy. *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 907 (6th Cir. 2009). *Travel Agent* rejected allegations just like those Plaintiffs make here. *Id.* at 905. The Sixth Circuit held that the plaintiffs there (i) did not "aver facts sufficient" to connect defendants to the alleged conspiracy where they did not appear in the body of the complaint and (ii) could not rely on group pleading regarding "defendants" or "defendants' executives" to meet their burden. *Id.* The same holds here.

Plaintiffs claim the Complaint "explicitly details, at length, why any Lessor's use of RealPage's RMS products to set prices demonstrates participation in the anticompetitive conspiracy" (Opp. at 28), yet they cite no allegations containing those details. While they rely heavily upon the notion that the adoption of RealPage's software coincided with alleged strategy changes, they do not allege when or how any Lessor Defendant began using any of RealPage's RMS products, much less when or how each purportedly *agreed with the others* to do so—let alone

2

when and how they agreed to *fix prices*.  The failure to allege these critical facts is fatal.  *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 435 (6th Cir. 2008) (affirming dismissal of antitrust complaint for failing to connect each defendant to alleged conspiracy).  Plaintiffs cannot survive dismissal merely by pointing to (i) RealPage's marketing campaigns (MC ¶¶ 119, 181); (ii) RealPage's interactions with a few of its clients (MC ¶¶ 125– 37); (iii) a handful of Lessor Defendants' *internal* pricing decisions (MC ¶¶ 151–52); and (iv) alleged average "rent growth" *across the entire industry*, without specificity to the Lessor Defendants (MC ¶¶ 200–10, Figs. 11–15).  None of these allegations plead a *horizontal* agreement.

Plaintiffs' naked allegation that each Lessor Defendant agreed "to remove itself as an independent decision center and to instead delegate pricing authority to RealPage" (*see* Opp. at 2, 17 n.12, 25) is not only conclusory, but also refuted by the Complaint's factual allegations conceding that Lessor Defendants *maintain* independent discretion over pricing and routinely reject RealPage pricing recommendations.  MC ¶ 170 (alleging some Lessor Defendants have "low acceptance rate[s]"); MC ¶¶ 5, 129 (alleging other Lessor Defendants accept "up to" 80–90% of RealPage pricing recommendations; meaning they reject at least 10–20% of recommendations).

Plaintiffs' cases confirm the Complaint's defects.  For example, in *Iowa Public Emps.' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 340 F. Supp. 3d 285 (S.D.N.Y. 2018), the court found that the plaintiffs had "allege[d] each [d]efendant's participation *separately*," through dozens of paragraphs identifying, for example, when each defendant joined the conspiracy, the specific actions each took, and the "specific employees by name who held themselves out as representing the interests of their employers." *Id.* at 317 (emphasis added).  By contrast, Plaintiffs do not reference a single employee for all but a few Defendants, much less allege specific actions by anyone in furtherance of an agreement.  Plaintiffs instead improperly rely on group pleading.

3

Plaintiffs try to conceal these defects by analogizing their claims to those in *Interstate Circuit, Inc. v. United States*, 306 U.S. 208 (1939), *Toys "R" Us, Inc. v. FTC* ("*TRU*"), 221 F.3d 928 (7th Cir. 2000), and *United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015). Opp. at 9–11. But in those cases the alleged conspiracies brought together virtually all of the (few) competitors in the relevant markets—eight film distributors in *Interstate Circuit*, seven toy manufacturers in *TRU*, and five publishers in *Apple*. Those few competitors purportedly were organized by powerful "ringmaster[s]"—hubs that supposedly were able to secure compliance by either threatening to impose or offering to solve looming "mortal threats." *TRU*, 221 F.3d at 930–31, 934; *Apple*, 791 F.3d at 317 n.16; *Interstate Circuit*, 306 U.S. at 215–17 & n.2. By the Complaint's own allegations, RealPage has no similar power and, regardless, could hardly enlist and deliver up "all" or virtually all competing lessors.[2] This case thus "stands in stark contrast to the hub-and-spoke conspiracies found in *Interstate Circuit* and *Toys 'R' Us*," in which only a few competitors were alleged to have conspired, they did so under a hub that wielded power over them, and "each firm's motivation to enter into the vertical agreement was contingent on *all* of its competitors' [sic] doing the same." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 333 n.30 (3d Cir. 2010) (emphasis added). And whereas the agreements in *Interstate Circuit*, 306 U.S. at 231, and *TRU*, 221 F.3d at 938, were unaccompanied by any remotely procompetitive business activity, here Plaintiffs do not dispute RealPage software's numerous efficiencies. ECF 341 ("Mem.") at 16.

### B. Plaintiffs Have Not Alleged Direct Evidence of an Agreement

Plaintiffs claim to allege "direct evidence" of an agreement, but direct evidence must be

---

[2] Plaintiffs concede that the vast majority of lessors do not use RealPage software. *See, e.g.*, MC ¶ 113 (in 2022 RealPage priced "4 million rental units"); ¶ 213 ("22 million investment-grade units in the country"). These lessors could undercut supracompetitive prices and the conspiracy would fail, as Plaintiffs admit. Mem. at 25–27; MC ¶ 97.

"tantamount to an acknowledgement of guilt" and therefore "requires *no inferences* to establish the proposition or conclusion being asserted." *Hyland v. Homeservices of Am., Inc.*, 771 F.3d 310, 318 (6th Cir. 2014) (emphasis added). The Complaint does not offer anything close.

Plaintiffs claim their direct evidence consists of allegations that: (i) RealPage provides at least one product to each Lessor Defendant and the products are similar; (ii) some Lessor Defendants use Pricing Advisors, while others use their own employees to perform similar functions; (iii) online "user groups" purportedly permit information exchanges among Lessor Defendants; (iv) some unspecified individual Lessor Defendants choose mostly, but not always, to follow RealPage's price recommendations; and (v) a property manager not named as a defendant and with no identified geography allegedly made the vague statement that "RealPage RMS 'helps us work together.'" Opp. at 12–13 (emphasis deleted). But none of this is direct evidence because it does not *explicitly*—i.e., without resort to inferences—acknowledge a horizontal *agreement* among hundreds of lessors to use RealPage RMS as a pretext for price-fixing. *Hyland*, 771 F.3d at 318 (direct evidence is "explicit").[3]

### C. Plaintiffs Have Not Alleged Circumstantial Evidence of an Agreement

### i. Plaintiffs Do Not Allege Parallel Conduct

Plaintiffs insist they allege "parallel conduct," but the only actions they allege are the purported "widespread adoption of RealPage's RMS" and a supposed shift in strategies from "heads in beds" to "price-over-volume." Opp. at 16. Those wholly conclusory allegations do not reflect parallel conduct because they do not allege a "pattern of uniform business conduct" that makes an inference of collusion more plausible. *Travel Agent*, 583 F.3d at 903.

---

[3] Unlike *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 220 (3d Cir. 2008), in which truck dealers allegedly admitted to "gentleman's agreements" not to compete on price and territory (*see* Opp. at 14), the Complaint contains no remotely comparable acknowledgments.

*First*, the alleged price increases on which Plaintiffs principally rely do not constitute parallel conduct as a matter of law. *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1197 (9th Cir. 2015) (alleged industry-wide average retail price increase for guitars and amplifiers insufficient to suggest collusion). Were it otherwise, Plaintiffs would establish "parallel conduct" in every case alleging that prices have increased across an industry. More is required— as Plaintiffs' own cases show. Unlike the plaintiffs in the cases they cite,[4] Plaintiffs do not allege *any* specific parallel pricing (or supply reductions) by any *Lessor Defendants*. They instead allege that market prices increased across several cherry-picked cities generally, not just for Lessor Defendants but also for the many other lessors who do not use any RealPage RMS product. MC ¶¶ 21, 191–210. At most, Plaintiffs' generalized pricing allegations suggest that any price increases by Lessor Defendants were consistent with rising *market* prices during the relevant period. Plaintiffs' superficial analyses offer no insight into *Lessor Defendants'* prices (or vacancies), nor do they show any connection between such pricing and RealPage's RMS products.

*Second*, Lessor Defendants' "adoption of RealPage's RMS" is far from parallel. As the Complaint acknowledges, not only did Lessor Defendants use three different RealPage RMS products, their respective uses of those products began at different times. YieldStar has been in use since at least 2002 when RealPage purchased it, and RealPage purportedly began in 2004 to "use that software to drive higher average rents." MC ¶ 101. Plaintiffs omit when LRO was released but admit that it predates 2017 when RealPage acquired it, and their own cited evidence

---

[4] *See, e.g.*, *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623, 626–30 (E.D. Penn. 2010) (alleging "near-parallel price movements" in same month); *In re Diisocyanates Antitrust Litig.*, 2020 WL 1140244, at *3 (W.D. Penn. Mar. 9, 2020) (alleging "coordinated parallel conduct, price increases, plant closures and supply disruptions" and communications "prior to pricing announcements"); *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 190–91 (2d Cir. 2012) (defendants ceased dealing with plaintiff within three days of each other).

indicates LRO already "provided revenue management services for over 1.5 million apartments" at that time. *Id.* ¶ 106 & n.61. Plaintiffs allege that RealPage released the third RMS solution, AI Revenue Management, years later in 2020. *Id.* ¶ 15. Plaintiffs are silent on when each—or *any*— Lessor Defendant adopted any of these tools or even which ones each adopted; but they do not dispute that Lessor Defendants began doing so at very different times during the last *20-plus years*. Plaintiffs are likewise silent on when or how each—or *any*—Lessor Defendant supposedly shifted to a "price-over-volume strategy," especially for those with "a low acceptance rate of RealPage's pricing recommendations." *Id.* ¶ 170. Plaintiffs' claim that they do not have to show "simultaneous action" is a red herring. Opp. at 16–17. They allege *no* specific actions by each Lessor Defendant, let alone actions within a similar timeframe. What they do allege is *not* parallel conduct, in stark contrast to the cases Plaintiffs cite.[5]

### ii.  Plaintiffs' Alleged Plus Factors Do Not Evince Any Conspiracy

Contrary to Plaintiffs' assertion regarding the pleading standard (Opp. at 20), the Sixth Circuit made clear just last year that a plaintiff must plausibly allege "sufficient circumstantial evidence tending to exclude the possibility of independent conduct." *Hobart-Mayfield, Inc. v. Nat'l Op. Comm. on Standards for Athletic Equip.*, 48 F.4th 656, 664 (6th Cir. 2022); *see also C.S. Sewell, M.D. P.C. v. Amerigroup Tenn., Inc.*, 2018 WL 6591429, at *4 (M.D. Tenn. Dec. 14, 2018) (Crenshaw, J.) (dismissing where allegations did not "negate the likelihood of independent action"). Individually or together, Plaintiffs' alleged plus-factors do not supply the "factual matter" needed to infer a conspiracy. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

---

[5] *See, e.g.*, *Interstate Circuit*, 306 U.S. at 221–22 (defendants imposed minimum price after receiving same letter from supplier demanding minimum price); *Apple*, 791 F.3d at 306–07 (within a two-week period, Apple negotiated and entered into agreements with book publishers); *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 420 (4th Cir. 2015) (defendants met and in a "matter of months" refused to work with plaintiff).

**Actions Against Self-Interest.** Plaintiffs attempt to recast their allegation that Lessor Defendants "restrict[ed] supply"—i.e. allowed units to remain vacant—"while maintaining higher rental prices" as conduct against self-interest. *See* Opp. at 21; MC ¶¶ 211–36. The Complaint is bereft of plausible factual allegations supporting this theory. Plaintiffs make no allegations about any particular Lessor Defendant setting a higher price for a particular unit and letting it sit vacant. And sources the Complaint cites repeatedly say exactly the opposite. *See, e.g.*, ECF 342-1 at 1 ("The goal of 'revenue optimization' is to set rents at the optimum balance *to ensure units do not sit vacant due to being overpriced . . . .*") (emphasis added).

But even assuming *arguendo* that Plaintiffs adequately pleaded this theory, that conduct is independently rational. *See In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 49–50 (9th Cir. 2022) (it is "economically rational" to "focus on profitability" over "market share"). Defendants' supposed shift is not "so unusual" that "no reasonable firm" would have done it absent conspiracy. *In re Travel Agent Comm'n Antitrust Litig.,* 2007 WL 3171675, at *11 (N.D. Ohio Oct. 29, 2007), *aff'd*, 583 F.3d 896 (6th Cir. 2009). Plaintiffs claim it is "only economically rational" for a lessor to accept RealPage's alleged "high" price recommendations, and allow units to sit vacant, if it knows other lessors will do the same. Opp. at 22. But by alleging that users reject recommended prices at least 20% of the time, the Complaint concedes no Lessor Defendant plausibly expected others to do that. *Supra* at 3. Even if the Complaint alleged otherwise, "mutual awareness" of a competitor's "anticipated reactions" is not collusion because "two firms may arrive at identical decisions independently" due to "similar market pressures." *Musical Instruments*, 798 F.3d at 1193 (affirming dismissal).

**Motive to Conspire.** Plaintiffs concede that Lessor Defendants' supposed motive to conspire—i.e., to "increase revenues beyond what could be achieved in a competitive market"—

is "economically rational." Opp. at 25. For good reason: the "common motive for increased profits always exists" and does not evince conspiracy. *Musical Instruments*, 798 F.3d at 1194 n.8.

**Opportunities to Conspire.** Plaintiffs' conjecture that Defendants *could have* conspired through meetings, online user groups, and trade associations (Opp. at 22–23) does not imply collusion. *See Midwest Auto Auction, Inc. v. McNeal*, 2012 WL 3478647, at *10 (E.D. Mich. Aug. 14, 2012) (alleged "'[n]umerous opportunities' [to collude] are not sufficient" to infer conspiracy).

**Information Sharing.** Plaintiffs do not deny that their information-sharing allegations overwhelmingly describe individual Lessor Defendants' provision of information to RealPage rather than exchanges among Lessor Defendants. Opp. at 23. Bilateral information-sharing between each "spoke" and the "hub" does *not* establish the necessary "rim"—the agreement among the spokes.[6] Mem. at 17; *see, e.g.*, *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 988–89, 1003 (N.D. Cal. 2020).

Plaintiffs cite a case in which an intermediary allegedly acted as a "conduit" for information exchanges between conspirators (Opp. at 23), but there the conduit purportedly directly transmitted defendant-specific data to facilitate a separate conspiracy. *In re Local TV Advert. Antitrust Litig.*, 2020 WL 6557665 (N.D. Ill. Nov. 6, 2020). Far from alleging that RealPage facilitated the exchange of identifiable, competitor-specific data, Plaintiffs recognize that RealPage's products provide only *aggregated* data. Mem. at 19; *e.g.*, MC ¶ 115 & Fig. 5; *see also* Opp. at 23 (conceding "RealPage did not necessarily provide the raw data"). They now suggest that RealPage discloses competitor-specific data during quarterly "PTM" meetings (Opp. at 23), but the Complaint acknowledges that RealPage shared only "pooled" or "blended" "market data" showing "overall

---

[6] Plaintiffs seek to distinguish *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010) by citing an inapposite portion of the opinion dealing with a hub's solicitation of "exclusive-dealing agreements" from the spokes. *Id.* at 332–33; *see* Opp. at 24.

market performance" at those meetings.  MC ¶¶ 125–33.  And even if certain Lessor Defendants had one-off contacts (Opp. at 23), limited exchanges do not imply a years-long, *per se* illegal price-fixing agreement.  *See United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978).

**Market Structure.**  Even if viewed with other allegations (Opp. at 25–26), Plaintiffs' market-structure allegations "are simply descriptions of the market, not allegations of anything that the defendants did."  *Erie Cnty. v. Morton Salt, Inc.*, 702 F.3d 860, 870 (6th Cir. 2012).[7]

### D.     The Rule of Reason Applies

Even if Plaintiffs had plausibly alleged a horizontal agreement, the rule of reason would apply.[8]  The *per se* rule applies only when alleged conduct "clearly and unquestionably falls within one of the handful of categories that have been collectively deemed *per se* anticompetitive." *Expert Masonry, Inc. v. Boone Cnty.*, 440 F.3d 336, 343–44 (6th Cir. 2006).  Courts do not apply the *per se* rule where the alleged agreement involves novel technology.  *In re Sulfuric Acid Antitrust Litig.*, 703 F.3d 1004, 1008 (7th Cir. 2012) ("[it] is a bad idea to subject a novel way of doing business . . . to per se treatment"); *see also FTC v. Qualcomm Inc.*, 969 F.3d 974, 990–91 (9th Cir. 2020).  Plaintiffs cite no case where a court has *evaluated* competitors' use of price-recommending algorithms, much less declared it *per se* unlawful.  With no judicial experience with this novel theory, the "automatic presumption in favor of the rule of reason standard" applies. *In re Se. Milk Antitrust Litig.*, 739 F.3d 262, 273 (6th Cir. 2014) (internal quotation marks omitted).

Plaintiffs' response is that this is "a garden-variety price-fixing case," and the software

---

[7] Plaintiffs' argument regarding *Jones v. Micron Technology Inc.* fails—plaintiffs there relied on more than market structure and the Complaint was still dismissed.  400 F. Supp. 3d 897, 916–22 (N.D. Cal. 2019) (alleging market conditions, opportunities to collude, public statements, actions against self-interest, deviation from past behavior, and historical conduct).

[8] The applicability of the rule of reason can be determined at the motion to dismiss stage because it is a "question of legal characterization."  *Techmatic, Inc. v. Plating Specialists, Inc.*, 2022 WL 16542106, at *13 (M.D. Tenn. Oct. 28, 2022).

constitutes a "naked" restraint to which the *per se* rule applies. Opp. at 8, 9. But calling the use of software "price fixing" does not make it so. The Complaint acknowledges why it is in each Defendant's unilateral interest to use RealPage's RMS—by Plaintiffs' own allegations, then, it is not a naked restraint. *See* Mem. at 16. Nor is it correct, as Plaintiffs contend, that an alleged restraint's "purpose and effect . . . dictate the mode of analysis" regardless of judicial experience with it. Opp. at 7. The cases Plaintiffs cite for this assertion involved the types of explicit horizontal agreements courts have deemed *per se* illegal.[9]

Further, Plaintiffs do not dispute that the rule of reason applies to both (i) any agreement to share information, and (ii) the vertical agreements between RealPage and Lessor Defendants. Even if the Plaintiffs' conclusory allegation of horizontal collusion via vertical agreements was credited—and it cannot be (*see* Mem. at 18–20, 23–25)—it would still be subject to the rule of reason. "To the extent a vertical agreement setting minimum resale prices is entered upon to facilitate [a horizontal] cartel, it . . . would need to be held unlawful under the rule of reason." *Leegin Creative Leather Prods, Inc. v. PSKS, Inc.*, 551 U.S. 877, 893 (2007); *see also Toledo Mack*, 530 F.3d at 225 ("The rule of reason analysis applies even when . . . the plaintiff alleges that the purpose of the vertical agreement between a manufacturer and its dealers is to support illegal horizontal agreements between multiple dealers."). Nor do *Interstate Circuit*, *TRU*, and *Apple* suggest otherwise. Notwithstanding Plaintiffs' argument (Opp. at 11), *Interstate Circuit* was not even a *per se* case. 306 U.S. at 230–32; *see Royal Drug Co. v. Grp. Life & Health Ins. Co.*, 737 F.2d 1433, 1437 (5th Cir. 1984) (the "analysis [in *Interstate Circuit*] was predicated upon

---

[9] *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 222 (1940) (horizontal agreement to set "floor" for gasoline prices); *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 648–49 (1980) (agreement to fix credit terms); *Apple*, 791 F.3d at 327 (horizontal boycott); *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 771 (2d Cir. 2016) (agreement to fix interest rates); *Ariz. v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 339 (1982) (agreement to maximum fees charged).

the rule of reason").  The Supreme Court in *Leegin* cited *TRU* as an example of a vertical arrangement that is subject to the rule of reason.  551 U.S. at 893–94.  And the court in *Apple* applied the *per se* rule to direct allegations of a "horizontal agreement that Apple organized among the Publisher Defendants," *not* to Apple's "vertical" agreements with each Publisher.  *Apple*, 791 F.3d at 323.

### i.        Plaintiffs Fail to Allege a Plausible Relevant Market

Plaintiffs claim that Defendants challenged Plaintiffs' alleged national market "solely" because Plaintiffs also allege regional submarkets.  Opp. at 33.  This is wrong; the national market is implausible on its face because, as Plaintiffs allege, "commuting distance to a place of work or school is a significant (if not the primary) geographic constraint on where a person chooses to live."  MC ¶ 246.  Based on Plaintiffs' own allegations (and common sense), a California renter could not plausibly rent housing in Florida as an alternative.  *See Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961) (a relevant geographic market is the "area in which the seller operates, and to which the purchaser *can practicably turn for supplies*." (emphasis added)).  Plaintiffs' contention that its "national market for the lease of multifamily residential real estate satisfies [the SSNIP] test" fails for the same reason.  Opp. at 33.  As the Sixth Circuit has explained, under that test the relevant geographic market is limited to the region "*where the buyer could turn for supplies if prices increased*."  *In re Se. Milk*, 739 F.3d at 282 (emphasis added).

Similarly, it is not plausible that a renter would consider housing that is in the same MSA but 85 miles away from where she works to be a reasonable substitute.  *See id.*  That Courts have found MSAs to be relevant geographic markets *in non-housing contexts* does not prove otherwise.  Plaintiffs cite two cases about health insurance, for example, where plaintiffs pleaded facts showing that MSAs were areas in which patients could "practicably turn" for alternative

healthcare providers—a much different issue than *housing*. *See* Opp. at 34 n.21.

Finally, Plaintiffs are wrong that an overbroad market definition is not deficient. Opp. at 34. Courts dismiss claims premised on overbroad markets. *E.g.*, *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1121 (9th Cir. 2018) (affirming dismissal where product and geographic markets were "not natural," "artificial," and "contorted to meet their litigation needs."); *Uretek USA, Inc. v. Applied Polymerics, Inc.*, 2011 WL 6029964, at *5 (E.D. Va. Dec. 5, 2011); *Debjo Sales, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 2015 WL 1969380, at *6 (D.N.J. Apr. 29, 2015).

### ii.    Plaintiffs Have Not Alleged Market Power

Plaintiffs claim they have pleaded both direct and indirect allegations of market power, but neither is true. To plead direct allegations, Plaintiffs must allege that a *Lessor Defendant* could and did charge prices "above a competitive price." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2288 (2018). But Plaintiffs' scattered allegations about prices and vacancies are based on *average data* for *all* units (whether leased by a Lessor Defendant or not). *E.g.*, MC ¶¶ 196–210, 252; *id.* ¶ 10 Fig. 1; Mem. at 35–36. They reveal nothing about *Lessor Defendants'* prices or vacancies, much less how those compared to other competitors. *Cf. Musical Instruments*, 798 F.3d at 1197. At most, Plaintiffs allege that average prices rose year over year. But the mere "occurrence of a price increase does not in itself permit a rational inference of . . . supracompetitive pricing." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 237 (1993).

Plaintiffs' other assertions of direct effects fare no better. They allege RealPage markets its software as helping users increase *revenue* (Opp. at 31–32), but revenue is not price; the software can increase revenue by decreasing vacancy, as the FAQ document states. ECF 342-1 at 1. And these allegations reveal nothing about how Lessor Defendants' prices compared to competitors'. Similarly, Plaintiffs cite a witness who claims RealPage recommended price

increases to a Lessor Defendant at an undisclosed property (Opp. at 31 (citing MC ¶ 11)), but an allegation that a single Defendant received such a recommendation cannot suffice to show that the 48 Lessor Defendants charged supracompetitive prices in any of the alleged submarkets.

Nor do Plaintiffs plead indirect evidence of market power by alleging the minimum share often required as a threshold for market power: 30% in any alleged submarket. Plaintiffs argue the Court can *infer* such a share based on RealPage's supposed dominance in the "revenue management software space" coupled with Plaintiffs' allegation that 53% to 81% of lessors in the alleged submarkets use some form of revenue management software (not specific to RealPage)— but this math does not work. *Id.* at 36. While Plaintiffs allege that RealPage has "over 31,700 clients" that manage units accounting for "nearly 90% of the U.S. market" (MC ¶¶ 113, 213), this is RealPage's *entire client base* across *multiple unrelated products and services* (MC ¶ 100)—not RealPage's *RMS* customers. With respect to RealPage *RMS products*, Plaintiffs allege that in 2022 they were used to "set the price for more than four million rental units" (MC ¶ 113), compared to "a total of 22 million investment-grade units in the country" (MC ¶ 213)—*less than 20%.*

### E. Plaintiffs Lack Antitrust Standing

Plaintiffs concede they lack antitrust standing. Despite contending they "could not be reasonably expected to know, at the pleading stage," whether *any* rent they paid to *any* Lessor Defendant was set using RealPage RMS products (Opp. at 36–37) Plaintiffs concede that Lessor Defendants depart from the recommendations *at least* 10–20% of the time (MC ¶¶ 5, 129) and that some Lessor Defendants do so frequently (MC ¶ 170). They do not dispute that this may have occurred for *all* the rental rates they paid. Nor do they dispute that RealPage may have suggested, and a Lessor Defendant adopted, rent *decreases*. Plaintiffs thus fail to plead facts demonstrating antitrust standing. Mem. at 36 (citing cases). While they speculate that "[i]t is plausible that even

14

the overridden prices that the Lessors charged were inflated" and that there was "marketwide distortion of prices," (Opp. at 38), they cite no allegations for these new theories, nor could they.

### F.     Plaintiffs' State-Law Claims Fail

To save their state-law claims, Plaintiffs mischaracterize their claims and the law.  They argue Pennsylvania's UTPCPL "*explicitly* creates a private right of action for antitrust claims" (Opp. at 38), but antitrust-based claims are not among the methods of "unfair competition" the statute proscribes.  *See* 73 Pa. Stat. §§ 201-2, 201-3; *In re HIV Antitrust Litig.*, 2023 WL 3006572, at *3–4 (N.D. Cal. Apr. 18, 2023); *In re K-Dur Antitrust Litig.*, 2008 WL 2660780, at *4 (D.N.J. Feb. 28, 2008).  Next Plaintiffs argue claims they *did not make* should save ones they did.  They concede Georgia's antitrust statute has no private right of action, but argue Georgia recognizes a common-law tort for restraint of trade, which *they do not plead*.  Opp. at 38; MC ¶ 434.  They do not contest that Massachusetts's antitrust law (Chapter 93) *does not apply* to real property and instead argue that a *different* statute (Chapter 93A) does—but again Plaintiffs do not plead a claim under Chapter 93A.  Opp. at 38; MC ¶ 444.  Plaintiffs agree that Tennessee's antitrust law applies only to goods and not services, but offer that a lease for an apartment *might* be a "good."  They are wrong.  *See Trails End Campground, LLC v. Brimstone Recreation, LLC*, 2015 WL 388313, at *11 (Tenn. App. 2015) (TTPA only applies to tangible goods).

Finally, Plaintiffs say they have standing to assert claims under the laws of states where they neither lived nor were supposedly injured, and ask this Court to rely on a decision it made *before* the Sixth Circuit decided *Fox v. Saginaw County*, 67 F.4th 284 (6th Cir. 2023).  But *Fox* held that named representatives cannot rely on absent class members for standing; they must have standing for each claim they bring.  *Id.* at 295; *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("[P]laintiffs must demonstrate standing for each claim that they press . . . .").

DATED:  July 31, 2023

Respectfully submitted,

| | |
|---|---|
| */s/ Jay Srinivasan* | */s/ Edwin Buffmire* |
| Jay Srinivasan (admitted *pro hac vice*) | Edwin Buffmire |
| jsrinivasan@gibsondunn.com | ebuffmire@jw.com |
| Daniel G. Swanson (admitted *pro hac vice*) | Michael Moran |
| dswanson@gibsondunn.com | mmoran@jw.com |
| GIBSON, DUNN & CRUTCHER LLP | JACKSON WALKER LLP |
| 333 South Grand Avenue | 2323 Ross Ave., Suite 600 |
| Los Angeles, CA 90071 | Dallas, TX 75201 |
| Telephone: (213) 229-7430 | Telephone: (214) 953-6000 |

Stephen Weissman (admitted *pro hac vice*)
sweissman@gibsondunn.com
Michael J. Perry (admitted *pro hac vice*)
mjperry@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 955-8678

Stephen C. Whittaker (admitted *pro hac vice*)
cwhittaker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1361 Michelson Drive
Irvine, CA 92612
Telephone: (212) 351-2671

Ben A. Sherwood (admitted *pro hac vice*)
bsherwood@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-2671

Thomas H. Dundon (SBN: 004539)
tdundon@nealharwell.com
Neal & Harwell, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
Telephone: (615) 244-1713

*Counsel for Defendant RealPage, Inc.*

Kevin Fulton
kevin@fultonlg.com
THE FULTON LAW GROUP PLLC
7676 Hillmont St., Suite 191
Houston, TX 77040
Telephone: (713) 589-6964

*Counsel for Defendant Allied Orion Group, LLC*

*/s/ Katie A. Reilly*
Katie A. Reilly
reilly@wtotrial.com
Michael T. Williams
williams@wtotrial.com
Judith P. Youngman
youngman@wtotrial.com
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: (303) 244-1800

Mark Bell
Mark.Bell@hklaw.com
HOLLAND & KNIGHT LLP
Nashville City Center
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 850-8850

*Counsel for Defendant Apartment Income REIT Corp., d/b/a AIR Communities*

/s/ Danny David
Danny David
danny.david@bakerbotts.com
BAKER BOTTS LLP
910 Louisiana Street
Houston, TX 77002
Telephone: (713) 229-4055

James Kress (*pro hac vice* forthcoming)
james.kress@bakerbotts.com
Paul Cuomo (*pro hac vice* forthcoming)
paul.cuomo@bakerbotts.com
BAKER BOTTS LLP
700 K. Street, NW
Washington, DC 20001
Telephone: (202) 639-7884

*Counsel for Defendant Avenue5 Residential, LLC*

/s/ Matt T. Adamson
Matt T. Adamson
madamson@jpclaw.com
JAMESON PEPPLE CANTU PLLC
801 Second Avenue, Suite 700
Seattle, WA 98104
Telephone: (206) 292-1994

*Counsel for Defendant B/T Washington, LLC d/b/a Blanton Turner*

/s/ Marguerite Willis
Marguerite Willis (admitted *pro hac vice*)
mwillis@maynardnexsen.com
MAYNARD NEXSEN PC
104 South Main Street
Greenville, SC 29601
Telephone: (864) 370-2211

Michael A. Parente (admitted *pro hac vice*)
mparente@maynardnexsen.com
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: (803) 771-8900

Margaret M. Siller (BPR No. 039058)
msiller@maynardnexsen.com
MAYNARD NEXSEN PC
1131 4th Avenue South, Suite 320
Nashville, Tennessee 37210
Telephone: (629) 258-2253

*Counsel for Defendant Bell Partners, Inc.*

/s/ Ian Simmons
Ian Simmons
isimmons@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5196

Stephen McIntyre
smcintyre@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000

*Counsel for Defendant BH Management Services, LLC*

17

/s/ James D. Bragdon

James D. Bragdon
jbragdon@gejlaw.com
Sam Cowin
scowin@gejlaw.com
GALLAGHER EVELIUS & JONES LLP
218 N. Charles St., Suite 400
Baltimore, MD 21201
Telephone: (410) 727-7702


Philip A. Giordano (admitted *pro hac vice*)
philip.giordano@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1775 I Street NW
Washington, DC 20007
Telephone: (202) 721-4776


Charles E. Elder, BPR # 038250
celder@bradley.com
BRADLEY ARANTBOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
P: 615.252.3597


*Counsel for Defendant*
*Bozzuto Management Company*

/s/ Yehudah L. Buchweitz

Yehudah L. Buchweitz
yehudah.buchweitz@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8256


Jeff L. White
jeff.white@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW
Washington, DC 20036
Telephone: (202) 682-7059


R. Dale Grimes, BPR #006223
dgrimes@bassberry.com
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6244


*Counsel for Defendant Brookfield Properties*
*Multifamily LLC*

/s/ J. Douglas Baldridge

J. Douglas Baldridge
jbaldridge@venable.com
Danielle R. Foley (admitted *pro hac vice*)
drfoley@venable.com
Andrew B. Dickson (admitted *pro have vice*)
abdickson@venable.com
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, D.C. 20001
(202) 344-4300

*Counsel for Defendant CH Real Estate Services, LLC*

/s/ Benjamin R. Nagin

Benjamin R. Nagin
bnagin@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300

*Counsel for Defendant ConAm Management Corporation*

/s/ Lynn H. Murray

Lynn H. Murray
lhmurray@shb.com
Maveric Ray Searle
msearle@shb.com
SHOOK, HARDY & BACON L.L.P.
111 S. Wacker Dr., Suite 4700
Chicago, IL 60606
Telephone: (312) 704-7766

Ryan Sandrock
rsandrock@shb.com
Shook, Hardy & Bacon L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 544-1944

Laurie A. Novion
lnovion@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 559-2352

*Counsel for Defendant Camden Property Trust*

19

/s/ Ronald W. Breaux
Ronald W. Breaux
Ron.Breaux@haynesboone.com
Bradley W. Foster
Brad.Foster@haynesboone.com
HAYNES AND BOONE LLP
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Fax: (214) 200-0376

*Counsel for Defendant Conti Capital*

/s/ Kenneth Reinker
Kenneth Reinker
kreinker@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1522

Joseph M. Kay
jkay@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2745

*Counsel for Defendant Pinnacle Property Management Services, LLC*

/s/ Todd R. Seelman
Todd R. Seelman
todd.seelman@lewisbrisbois.com
Thomas L. Dyer
thomas.dyer@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
1700 Lincoln Street, Suite 4000
Denver, CO 80203
Telephone: (720) 292-2002

*Counsel for Defendant Cortland Management, LLC*

/s/ Ann MacDonald
Ann MacDonald
Ann.macdonald@afslaw.com
Barry Hyman
Barry.hyman@afslaw.com
ARENTFOX SCHIFF LLP
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Telephone: (312) 258-5500

*Counsel for Defendant CWS Apartment Homes, LLC*

/s/ Bradley C. Weber
Bradley C. Weber (admitted *pro hac vice*)
bweber@lockelord.com
Locke Lord LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Telephone: (214) 740-8497

*Counsel for Defendant Dayrise Residential, LLC*

/s/ Charles H. Samel
Charles H. Samel
charles.samel@stoel.com
Edward C. Duckers
ed.duckers@stoel.com
STOEL RIVES LLP
1 Montgomery Street, Suite 3230
San Francisco, CA 94104
Telephone:  (415) 617-8900

George A. Guthrie
gguthrie@wilkefleury.com
WILKE FLEURY LLP
621 Capitol Mall, Suite 900
Sacramento, CA 95814
Telephone: (916) 441-2430

*Counsel for Defendant FPI Management, Inc.*

.

/s/ Carl W. Hittinger
Carl W. Hittinger
chittinger@bakerlaw.com
Alyse F. Stach
astach@bakerlaw.com
Tyson Y. Herrold
therrold@bakerlaw.com
BAKER & HOSTETLER LLP
1735 Market Street, Suite 3300
Philadelphia, PA 19103-7501
Telephone: (215) 568-3100

Stephen J. Zralek, BPR #018971
szralek@spencerfane.com
S. Chase Fann, BPR #036794
cfann@spencerfane.com
SPENCER FANE LLP
511 Union Street, Suite 1000
Nashville, TN 37219
Telephone: (615) 238-6300

*Counsel for Defendant Equity Residential*

/s/ Leo D. Caseria
Leo D. Caseria
lcaseria@sheppardmullin.com
Helen C. Eckert
heckert@sheppardmullin.com
SHEPPARD MULLIN RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC, 20006
Telephone: (202) 747-1925

Arman Oruc
aoruc@goodwinlaw.com
GOODWIN PROCTER, LLP
1900 N Street, NW
Washington, DC 20036
Telephone:  (202) 346-4000

*Counsel for Defendant Essex Property Trust, Inc.*

/s/ *Michael D. Bonanno*

Michael D. Bonanno (admitted *pro hac vice*)
mikebonanno@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
1300 I St. NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8225

Christopher Daniel Kercher (admitted *pro hac vice*)
christopherkercher@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor,
New York, New York 10010
Telephone: (212) 849-7000

Andrew Gardella, Esq. (TN Bar #027247)
agardella@martintate.com
MARTIN, TATE, MORROW & MARSTON P.C.
315 Deaderick Street, Suite 1550
Nashville, TN 37238
Telephone: (615) 627-0668

*Counsel for Defendant Highmark Residential, LLC*

/s/ *Cliff A. Wade*

Cliff A. Wade
cliff.wade@bakerlopez.com
Chelsea L. Futrell
chelsea.futrell@bakerlopez.com
BAKER LOPEZ PLLC
5728 LBJ Freeway, Suite 150
Dallas, Texas 75240
Telephone: (469) 206-9384

*Counsel for Defendant Knightvest Residential*

/s/ *Michael M. Maddigan*

Michael M. Maddigan
michael.maddigan@hoganlovells.com
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4727

William L. Monts, III
william.monts@hoganlovells.com
Benjamin F. Holt
benjamin.holt@hoganlovells.com
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-6440

Joshua C. Cumby (BPR No. 37949)
joshua.cumby@arlaw.com
F. Laurens Brock (BPR No. 17666)
larry.brock@arlaw.com
Rocklan W. King, III (BPR No. 30643)
rocky.king@arlaw.com
ADAMS AND REESE LLP
1600 West End Avenue, Suite 1400
Nashville, Tennessee 37203
Telephone: (615) 259-1450

*Counsel for Defendant Greystar Management Services, LLC (formerly Greystar Management Services, LP)*

/s/ Gregory J. Casas
Gregory J. Casas (admitted *pro hac vice*)
casasg@gtlaw.com
Emily W. Collins (admitted *pro hac vice*)
Emily.Collins@gtlaw.com
GREENBERG TRAURIG, LLP
300 West 6th Street, Suite 2050
Austin, TX 78701-4052
Telephone: (512) 320-7200

Robert J. Herrington (admitted *pro hac vice*)
Robert.Herrington@gtlaw.com
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: (310) 586-7700

Becky L. Caruso (admitted *pro hac vice*)
Becky.Caruso@gtlaw.com
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Telephone: (973) 443-3252

/s/ Ryan T. Holt
Ryan T. Holt (No. 30191)
rholt@srvhlaw.com
Mark Alexander Carver (No. 36754)
acarver@srvhlaw.com
SHERRARD ROE VOIGT & HARBISON, PLC
150 Third Avenue South, Suite 1100
Nashville, Tennessee 37201
Tel. (615) 742-4200

*Counsel for Defendant Lincoln Property Company*

/s/ John J. Sullivan
John J. Sullivan
jsullivan@cozen.com
COZEN O'CONNOR P.C.
3 WTC, 175 Greenwich St., 55th Floor
New York, NY 10007
Telephone: (212) 453-3729

Molly Rucki
mrucki@cozen.com
COZEN O'CONNOR P.C.
1200 19th St. NW, Suite 300
Washington, DC 20036
Telephone: (202) 912-4884

*Counsel for Defendant Independence Realty Trust, Inc.*

/s/ Eliot Turner
Eliot Turner
eliot.turner@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100,
Houston, Texas 77010
Telephone: (713) 651-5151

*Counsel for Defendant Kairoi Management LLC*

*/s/ Michael W. Scarborough*
Michael W. Scarborough (admitted *pro hac vice*)
mscarborough@velaw.com
Dylan I. Ballard (admitted *pro hac vice*)
dballard@velaw.com
VINSON & ELKINS LLP
555 Mission Street, Suite 2000
San Francisco, CA 94105
Telephone: (415) 979-6900

*Counsel for Defendant Lantower Luxury Living LLC*

*/s/ Britt M. Miller*
Britt M. Miller (admitted *pro hac vice*)
bmiller@mayerbrown.com
Daniel T. Fenske (admitted *pro hac vice*)
dfenske@mayerbrown.com
Matthew D. Provance (admitted *pro hac vice*)
mprovance@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 6006
Telephone: (312) 701-8663

Scott D. Carey (#15406)
scarey@bakerdonelson.com
Ryan P. Loofbourrow (#33414)
rloofbourrow@bakerdonelson.com
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, TN 37203
Telephone: (615) 726-5600

*Counsel for Defendant Mid-America Apartment Communities, Inc.*

*/s/ Karen H. Safran*
Karen H. Safran
ksafran@goodspeedmerrill.com
Robert S. Hunger
rhunger@goodspeedmerrill.com
GOODSPEED MERRILL
9605 South Kingston Court, Suite 200
Englewood, CO 80112
Telephone: (720) 473-7644

*Counsel for Defendant Lyon Management Group, Inc.*

/s/ Jeffrey C. Bank
Jeffrey C. Bank
jbank@wsgr.com
WILSON SONSINI GOODRICH & ROSATI PC
1700 K Street NW, Fifth Floor
Washington, DC 20006
Telephone: (202) 973-8800

*Counsel for Defendant Morgan Properties*
*Management Company, LLC*


/s/ Richard P. Sybert
Richard P. Sybert (WSBA No. 8357)
rsybert@grsm.com
GORDON REES SCULLY MANSUKHANI
701 Fifth Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 321-5222

*Counsel for Defendant Rose Associates Inc.*

/s/ Judith A. Zahid
Judith A. Zahid (admitted *pro hac vice*)
jzahid@zellelaw.com
Heather T. Rankie (admitted *pro hac vice*)
hrankie@zellelaw.com
ZELLE LLP
555 12th Street, Suite 1230
Oakland, CA 94607
Telephone: (415) 633-1916

*Counsel for Defendant Prometheus Real Estate*
*Group, Inc.*

/s/ Valentine Hoy
Valentine Hoy
vhoy@allenmatkins.com
Scott Perlin
sperlin@allenmatkins.com
ALLEN MATKINS LECK GAMBLE MALLORY &
NATSIS
600 West Broadway, 27th Floor
San Diego, CA 92101
Telephone: (619) 233-1155

Patrick E. Breen
pbreen@allenmatkins.com
ALLEN MATKINS LECK GAMBLE MALLORY &
NATSIS
865 South Figueroa Street, Suite 2800
Los Angeles, CA 90017
Telephone: (213) 622-5555

*Counsel for Defendant Sares Regis Group
Commercial, Inc.*

/s/ Jose Dino Vasquez
Jose Dino Vasquez
dvasquez@karrtuttle.com
Jason Hoeft
jhoeft@karrtuttle.com
KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: (206) 223-1313

*Counsel for Defendant Security Properties, Inc.*

/s/ David A. Walton
David A. Walton
dwalton@bellnunnally.com
Troy Lee (T.J.) Hales
thales@bellnunnally.com
BELL NUNNALLY & MARTIN, LLP
2323 Ross Avenue, Suite 1900
Dallas, TX 75201

*Counsel for Defendant RPM Living, LLC*

/s/ Diane R. Hazel
Diane R. Hazel
dhazel@foley.com
FOLEY & LARDNER LLP
1400 16th Street, Suite 200
Denver, CO 80202
Telephone: (720) 437-2000

Elizabeth A. N. Haas (admitted *pro hac vice*)
ehaas@foley.com
Ian Hampton (admitted *pro hac vice*)
ihampton@foley.com
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
Telephone: (414) 271-2400

Tara L. Swafford, BPR #17577
tara@swaffordlawfirm.com
Dylan Harper, BPR #36820
dylan@swaffordlawfirm.com
THE SWAFFORD LAW FIRM, PLLC
321 Billingsly Court, Suite 19
Franklin, Tennessee 37067
Telephone: (615) 599-8406

*Counsel for Defendant Sherman Associates,
Inc.*

/s/ Brent Justus
Brent Justus
bjustus@mcguirewoods.com
Nick Giles
ngiles@mcguirewoods.com
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1000

*Counsel for Defendant Simpson Property Group, LLC*

/s/ Yonaton Rosenzweig
Yonaton Rosenzweig
yonirosenzweig@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017

Fred B. Burnside
fredburnside@dwt.com
MaryAnn T. Almeida
maryannalmeida@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: (206) 757-8016

*Counsel for Defendant Mission Rock Residential, LLC*

/s/ Andrew Harris
Andrew Harris
Andrew.Harris@Levittboccio.com
LEVITT & BOCCIO, LLP
423 West 55th Street
New York, NY 10019
Telephone: (212) 801-1104

/s/ Nicholas A. Gravante, Jr.
Nicholas A. Gravante, Jr. (admitted *pro hac vice*)
nicholas.gravante@cwt.com
Philip J. Iovieno (admitted *pro hac vice*)
philp.iovieno@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000

*Counsel for Defendants The Related Companies, L.P. and Related Management Company, L.P.*

/s/ Benjamin I. VandenBerghe
Benjamin I. VandenBerghe
biv@montgomerypurdue.com
Kaya R. Lurie
klurie@montgomerypurdue.com
MONTGOMERY PURDUE PLLC
701 Fifth Avenue, Suite 5500
Seattle, Washington 98104-7096

*Counsel for Defendant Thrive Communities Management, LLC*

/s/ David D. Cross

David D. Cross (admitted *pro hac vice*)
dcross@mofo.com
Jeffrey A. Jaeckel (admitted *pro hac vice*)
jjaeckel@mofo.com
Robert W. Manoso (admitted *pro hac vice*)
rmanoso@mofo.com
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C., 20037
Telephone: (202) 887-1500

Eliot A. Adelson (admitted *pro hac vice*)
eadelson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000

/s/ Joshua L. Burgener

Joshua L. Burgener
jburgener@dickinsonwright.com
DICKINSON WRIGHT PLLC
424 Church Street, Suite 800
Nashville, TN 37219
Telephone: (615) 620-1757

*Counsel for Defendant UDR, Inc.*

/s/ Evan Fray-Witzer

Evan Fray-Witzer
Evan@CFWLegal.com
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, MA 02116
Telephone: 617-426-0000

*Counsel for Defendants WinnCompanies LLC, and WinnResidential Manager Corp.*

/s/ Craig Seebald

Jessalyn H. Zeigler
jzeigler@bassberry.com
BASS, BERRY & SIMS, PLC
150 Third Avenue South
Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6200

Craig P. Seebald (admitted *pro hac vice*)
cseebald@velaw.com
Stephen M. Medlock (admitted *pro hac vice*)
smedlock@velaw.com
Molly McDonald
mmcdonald@velaw.com
VINSON & ELKINS LLP
2200 Pennsylvania Ave., N.W.
Suite 500 West
Washington, D.C. 20037
Telephone: (202) 639-6500

Christopher W. James (admitted *pro hac vice*)
cjames@velaw.com
VINSON & ELKINS LLP
555 Mission Street
Suite 2000
San Francisco, CA 94105
Telephone: (415) 979-6900

*Counsel for Defendant Windsor Property Management Company*

/s/ James H. Mutchnik

James H. Mutchnik
james.mutchnik@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

*Counsel for Defendants Thoma Bravo L.P., Thoma Bravo Fund XIII, L.P., and Thoma Bravo Fund XIV, L.P.*

*/s/ Ferdose al-Taie*
Ferdose al-Taie (admitted *pro hac vice*)
faltaie@bakerdonelson.com
BAKER, DONELSON, BEARMAN CALDWELL &
BERKOWITZ, P.C.
956 Sherry Lane, 20th Floor
Dallas, TX 75225
Telephone: (214) 391-7210

Christopher E. Thorsen (BPR # 21049)
cthorsen@bakerdonelson.com
BAKER, DONELSON, BEARMAN CALDWELL &
BERKOWITZ, P.C.
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, TN 37201
Telephone: (615) 726-5600

*Counsel for Defendant ZRS Management, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record registered on the CM/ECF system.

DATED this 31st day of July, 2023.

/s/ *Jay Srinivasan*
Jay Srinivasan