UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-md-03071<br>MDL No. 3071<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br><br>This Document Relates to:<br><br>3:23-cv-00757<br>3:23-cv-00792 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE THOMA BRAVO DEFENDANTS' MOTION TO DISMISS STUDENT PLAINTIFFS' <u>FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT</u>**

James H. Mutchnik, P.C. (*pro hac vice*)
jmutchnik@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Mark McKane, P.C. (*pro hac vice*)
mark.mckane@kirkland.com
Alistair Blacklock (*pro hac vice*)
alistair.blacklock@kirkland.com
KIRKLAND & ELLIS LLP
555 California St., Suite 2900
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Counsel for Defendants*
*Thoma Bravo Fund XIII, L.P., Thoma Bravo Fund XIV, L.P., and Thoma Bravo, L.P.*

## I. INTRODUCTION

To successfully articulate a claim for antitrust conspiracy, Plaintiffs must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). With respect to Defendants Thoma Bravo Fund XIII, L.P., and Thoma Bravo Fund XIV, L.P. (collectively, the "Thoma Bravo Funds") and Thoma Bravo, L.P. ("Thoma Bravo, L.P.," together with the Thoma Bravo Funds, the "Thoma Bravo Defendants"), Plaintiffs fail.[1] Despite Plaintiffs having one "last and forever opportunity to amend their complaints," Aug. 7, 2023 Hr'g Tr., ECF No. 499 at 14:20-22, Plaintiffs assert no allegations to establish "plausible grounds" for their conspiracy claims against the Thoma Bravo Defendants. *Twombly*, 550 U.S. at 556. As such, the Court should dismiss Plaintiffs' First Amended Student Complaint[2] with prejudice.

In the broadest possible strokes, Plaintiffs' First Amended Student Complaint alleges that the Thoma Bravo Defendants have some (unspecified) ownership interest in Defendant RealPage, Inc. ("RealPage")—but alleges nothing materially more.[3] The First Amended Student Complaint

---

[1] As demonstrated in Defendants' Motion to Dismiss Student Family Plaintiffs' First Amended Consolidated Class Action Complaint (the "Joint Motion"), Plaintiffs' generalized and conclusory allegations fail to state any claim upon which relief can be granted, and the Thoma Bravo Defendants join in the Joint Motion and the arguments contained therein.

[2] As used herein, "First Amended Student Complaint" or "FASC" refers to the First Amended Consolidated Class Action Complaint filed on September 7, 2023 (ECF No. 527). "Student Plaintiffs" or "Plaintiffs" refers to the plaintiffs who filed the First Amended Student Complaint. "SAC" refers to the Second Amended Consolidated Class Action Complaint filed on September 7, 2023, by different plaintiffs. "Multifamily Plaintiffs" refers to the plaintiffs who filed the SAC.

[3] The First Amended Student Complaint generally states that "Thoma Bravo directed the Thoma Bravo Funds to acquire RealPage" in April 2021 (FASC ¶ 22), however, RealPage was acquired by Mirasol Parent, LLC and Mirasol Merger Sub, Inc., affiliates of Thoma Bravo Fund XIII, L.P. and Thoma Bravo Fund XIV, L.P., investment funds which are themselves affiliates of Thoma Bravo. *See, e.g.*, RealPage, Inc. Proxy Statement (Schedule 14A) (Feb. 5, 2021), https://www.sec.gov/Archives/edgar/data/1286225/000119312521029970/d52613ddefm14a.htm.

recites bare conclusory allegations and fails to allege any specific facts to indicate whether any of the Thoma Bravo Defendants participated in any events giving rise to this multidistrict litigation. Plaintiffs do not make specific allegations demonstrating that the Thoma Bravo Defendants affirmatively joined or acted in furtherance of the alleged conspiracy. Nor do Plaintiffs allege that the Thoma Bravo Defendants interacted with a single one of the named defendants who are RealPage customers (the "Lessor Defendants"). According to the First Amended Student Complaint, the only party with whom the Thoma Bravo Defendants interacted was RealPage—but the Thoma Bravo Defendants can neither conspire with RealPage, nor be held liable for RealPage's alleged acts, merely by virtue of owning RealPage. Plaintiffs' material substantive allegations predate the Thoma Bravo Defendants' 2021 investment in RealPage. And tellingly, in their First Amended Student Complaint, Plaintiffs do little more than attempt to conjoin RealPage and the Thoma Bravo Defendants with a manufactured, combined definition. *See* FASC at 1 (defining "RealPage" to encompass Defendants RealPage, Inc., Thoma Bravo Fund XIII, L.P., Thoma Bravo Fund XIV, L.P. and Thoma Bravo, L.P.).

Plaintiffs' threadbare allegations against the Thoma Bravo Defendants do not provide the requisite factual grounds for anything beyond indirect ownership and, as such, the First Amended Student Complaint fails to state any claims against the Thoma Bravo Defendants upon which relief may be granted.

## II. BACKGROUND

In October 2022, certain plaintiffs began initiating antitrust actions against RealPage and various combinations of Defendants, asserting that RealPage and Defendants engaged in a vast, nationwide conspiracy to fix rental prices in multifamily housing units in violation of Section 1 of the Sherman Act and various state antitrust laws (the "Multifamily Lawsuits"). Similar litigation was subsequently brought by other plaintiffs alleging an analogous conspiracy with respect to

2

student housing units (the "Student Housing Lawsuits").  While four of the initial Multifamily Lawsuits named Thoma Bravo, L.P. as a Defendant (without naming the Thoma Bravo Funds), ***none*** of the initial Student Housing Lawsuits named any of the Thoma Bravo Defendants.  On April 10, 2023, the United States Judicial Panel on Multidistrict Litigation issued a transfer order consolidating twenty-one of these Multifamily and Student Housing Lawsuits into a single multidistrict litigation before this Court.

Following an initial status conference, the Student Plaintiffs filed a consolidated amended class action complaint (the "Initial Consolidated Student Complaint").  ECF No. 290.  The Student Plaintiffs did not name the Thoma Bravo Defendants as defendants to the Initial Consolidated Student Complaint, nor did any of their allegations reference the Thoma Bravo Defendants.  Then, in July 2023, two additional Student Housing Lawsuits were filed, naming the Thoma Bravo Defendants for the first time.  The first complaint mentioned the Thoma Bravo Defendants just once, when lumping them into the definition of "RealPage."  *See Lauder v. RealPage*, No. 6:23-cv-01025, ECF No. 1 at 5 (D. Or. Jul. 13, 2023).  The second repeated word-for-word the allegations that the Multifamily Plaintiffs asserted against the Thoma Bravo Defendants in their first amended complaint.  *Compare Dempsey v. RealPage, Inc.*, No. 1:23-cv-01832, ECF No. 1 at ¶¶ 16-19 (D. Col. Jul. 19, 2023) *with* Multifamily Plaintiffs' First Amended Consolidated Class Action Compl., ECF No. 314, at ¶¶ 41-44.  Plaintiffs again repeat those same allegations against the Thoma Bravo Defendants here.  *See* FASC ¶¶ 21-24.

By Plaintiffs' account, the conspiracy was allegedly established and perpetuated by various RealPage software launches and acquisitions "at least as early as January 1, 2010."  FASC ¶ 204.  Plaintiffs allege that RealPage acquired revenue management software in 2002 and launched a student housing product in 2009, "obtain[ing] a buy-in from a critical mass of customers."  FASC

3

¶¶ 39-40. Plaintiffs further allege that in 2017, RealPage acquired "its only significant competitor," doubling RealPage's client base. FASC ¶ 46. Thoma Bravo, L.P. allegedly directed the Thoma Bravo Funds to acquire RealPage five years later in April 2021. FASC ¶ 22.

Thoma Bravo, L.P. is a SEC-registered investment adviser that provides investment advisory services to its private investment funds. Specializing in providing capital and strategic support to growing software and technology companies, Thoma Bravo, L.P. advises and manages private investment funds that undertake strategic investments and acquisitions of portfolio companies, including RealPage. Consistent with its established practice, Thoma Bravo, L.P. does not possess any direct or indirect ownership interest in RealPage; instead, RealPage is an indirect subsidiary of certain private investment funds, which are themselves held by limited partners.

Although Court gave Plaintiffs a "last and forever opportunity to amend their complaint[]," Aug. 7, 2023 Hr'g Tr., ECF No. 499 at 14:20-22, Plaintiffs assert no new allegations against the Thoma Bravo Defendants. Instead, Plaintiffs choose to repeat the same four paragraphs asserted by the Multifamily Plaintiffs in an earlier pleading. *See* FASC ¶¶ 21-24. As in the prior pleadings, these sparse allegations fail to state a claim against the Thoma Bravo Defendants.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs must state a claim that is "plausible on its face," such that the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556, 570). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to any presumption of truth. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

This standard requires Plaintiffs to plead specific facts and involvement with respect to *each* Defendant. *See Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 445 (6th Cir. 2012) (quoting *In re Travel Agent Com'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009)) ("Furthermore, [plaintiff's allegations] must 'specify how [each] defendant [was] involved in the alleged conspiracy.'"); *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 546 (8th Cir. 2015) (affirming dismissal of antitrust complaint when plaintiffs made only "vague references to concerted action" among entities); *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (affirming dismissal of complaint that was "short on specifics" as to how a defendant purportedly "joined the conspiracy"); *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*, 854 F.2d 802, 805 (6th Cir. 1988) ("The essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent dismissal of the complaint on a defendant's 12(b)(6) motion."). "This involvement must be more than mere ownership." *Jones v. Varsity Brands, LLC*, 618 F. Supp. 3d 713, 723 (W.D. Tenn. 2022).

## IV.  LEGAL ARGUMENT

In the event the Court does not dismiss the First Amended Student Complaint in its entirety, the Court should dismiss the Thoma Bravo Defendants because Plaintiffs fail to allege any facts suggesting that the Thoma Bravo Defendants either (1) actively joined or directly participated in the alleged conspiracy or (2) can be held liable for their ownership interest in RealPage.

### A.  Plaintiffs Fail to Assert Any Conspiracy Between the Thoma Bravo Defendants and Any Other Party.

Plaintiffs fail to sufficiently allege the Thoma Bravo Defendants' participation in the purported conspiracy. To state a claim under Section 1 of the Sherman Act (or under the relevant state laws), Plaintiffs must allege particularized facts to show that defendants combined or conspired with an intent to unreasonably restrain trade. *See Nurse Midwifery Assocs. v. Hibbett*, 918 F.2d 605 (6th Cir. 1990), opinion *modified on reh'g*, 927 F.2d 904 (6th Cir. 1991); *Hobart-*

5

*Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.*, 48 F.4th 656, 663 (6th Cir. 2022) ("To establish a violation of § 1 of the Sherman Act a plaintiff must demonstrate that there is: 1) an agreement, which may be in the form of a contract, combination, or conspiracy; 2) affecting interstate commerce; 3) that imposes an unreasonable restraint on trade."); *see also Tacker v. Wilson*, 830 F. Supp. 422, 430 (W.D. Tenn. 1993) (dismissing Tennessee state law antitrust claims where plaintiff alleged no facts to indicate that plaintiff transacted business with any of the defendants).

A parent company and subsidiaries who share "common" objectives and "centers of decisionmaking," cannot combine or conspire in a manner that would violate Section 1 of the Sherman Act. *See American Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 196-97 (2010); *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984). As a policy matter to promote firms' incentives to compete vigorously in the marketplace, the Sherman Act limits antitrust exposure for single firms acting unilaterally to conduct that threatens **actual monopolization under Section 2,** a provision under which plaintiffs make no claims; but the Sherman Act imposes a heightened standard for concerted activity between *separate* entities, as such activity "deprives the marketplace of the independent centers of decisionmaking that competition assumes and demands." *Copperweld*, 467 U.S. at 769 ("[I]t is perfectly plain that an internal 'agreement' to implement a single, unitary firm's policies does not raise the antitrust dangers that § 1 was designed to police.").

### 1. No Facts Sufficient for Conspiracy with Defendant RealPage.

As a threshold matter, the First Amended Student Complaint fails to allege that RealPage and the Thoma Bravo Defendants (as purported owners of RealPage) are legally distinct entities capable of conspiring under the antitrust laws. The First Amended Student Complaint generally alleges that "Thoma Bravo directed the Thoma Bravo Funds to acquire" RealPage in a take-private transaction in April 2021, without specifying the nature of the Thoma Bravo Defendants' ownership of RealPage, including whether or not the Thoma Bravo Funds directly or indirectly hold ownership interests in RealPage, or whether any other parties hold any ownership interest.

*See* FASC ¶ 22. Nor do Plaintiffs specify whether the Thoma Bravo Defendants and RealPage are legally separate entities. *See id.* Plaintiffs' definition of "RealPage," in fact, suggests that Plaintiffs consider them to be a single entity. FASC at 1 ("Defendants RealPage, Inc., Thoma Bravo Fund XIII, L.P., Thoma Bravo Fund XIV, L.P., and Thoma Bravo, L.P. (collectively, 'RealPage')"). Absent *any* allegation that the Thoma Bravo Defendants and RealPage are distinct entities for antitrust purposes, antitrust liability cannot possibly lie for agreements between Thoma Bravo and RealPage. *See Copperweld*, 467 U.S. at 771.

### 2. No Facts Sufficient for Conspiracy with Lessor Defendants.

Plaintiffs' claims further fail because they do not sufficiently allege "more than [the Thoma Bravo Defendants'] mere ownership" of RealPage. *Jones*, 618 F. Supp. 3d at 723. To begin, the First Amended Student Complaint does not contain a single allegation that the Thoma Bravo Defendants interacted in any way with any of the Lessor Defendants. Indeed, the Thoma Bravo Defendants' actions are never mentioned within the same paragraph as the Lessor Defendants. As such, the First Amended Student Complaint falls woefully short of alleging the requisite facts, including the "specific time, place or person," to plausibly suggest the Thoma Bravo Defendants participated in the alleged conspiracy. *Twombly*, 550 U.S. at 565 n.10.

Nor does the First Amended Student Complaint otherwise identify a single action taken by the Thoma Bravo Defendants in furtherance of the conspiracy, as required for liability. *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1237 (10th Cir. 2017) ("[A]lthough we agree that [the plaintiff] was entitled to pursue its § 2 claims against Defendants as a single enterprise, . . . [the plaintiff] was still required to come forward with evidence that each defendant independently participated in the enterprise's scheme, to justify holding that defendant liable as part of the enterprise."); *Cupp v. Alberto-Culver USA, Inc.*, 310 F. Supp. 2d 963, 972-73 (W.D. Tenn. 2004) (granting motion to dismiss when plaintiffs "mentions absolutely no action by either

[parent company] regarding either the Agreement or anything at all; rather, from the complaint, it appears that only [the subsidiary] and Plaintiff had any interaction concerning the Agreement."). Plaintiffs' factual allegations outlining the steps allegedly taken to initiate and orchestrate the conspiracy almost entirely predate the Thoma Bravo Funds' 2021 investment. While Plaintiffs broadly allege that Thoma Bravo, L.P. was "actively involved" in "selecting and approving acquisition targets for RealPage" (FASC ¶ 24), the First Amended Student Complaint fails to provide any details whatsoever that identify any of the Thoma Bravo Defendants' involvement in the alleged price-fixing conspiracy, and fails to make any factual allegation that sufficiently connects the acquisition of RealPage in *any* way to the alleged conspiracy between RealPage and the Lessor Defendants. To the contrary, Plaintiffs contend that the acquisitions to establish and facilitate the alleged cartel took place from roughly 2002 to 2017, years before the Thoma Bravo Funds' 2021 acquisition of ownership interest in RealPage. FASC ¶¶ 39-46. Nowhere does the First Amended Student Complaint plead any specific action taken by Thoma Bravo Defendants in furtherance of the alleged price-fixing conspiracy.

Similarly, Plaintiffs' generalized allegations that Thoma Bravo has some influence in "setting company policies" and "hiring top RealPage executives from other Thoma Bravo companies" serve no purpose but to demonstrate ownership. FASC ¶ 24. Plaintiffs do not allege that Thoma Bravo in any way established or condoned specific policies to further the alleged conspiracy. The two executives that Thoma Bravo allegedly had a hand in hiring are not named elsewhere in the First Amended Student Complaint or otherwise alleged to have facilitated the conspiracy, directly or indirectly. Likewise, Plaintiffs' allegation that "Thoma Bravo Operating Partner Charles Goodman is Chairman of RealPage's board of directors" does not establish Thoma Bravo's involvement in any "day-to-day operations" at RealPage, FASC ¶ 24, especially because

8

Mr. Goodman is not mentioned anywhere else in the First Amended Student Complaint's 285 paragraphs. It is neither unusual nor extraordinary for a parent company or majority shareholder to appoint a director to the board of its subsidiary.

> **B.  Plaintiffs Cannot Impute Their Allegations Against RealPage to the Thoma Bravo Defendants.**

Plaintiffs fail to allege any other facts sufficient for liability to extend to the Thoma Bravo Defendants for RealPage's actions. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *Chism v. Chemring N. Am. Grp., Inc.*, 2015 WL 8207899, at *2 (W.D. Tenn. Dec. 7, 2015) (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)). "[L]iability will not be imposed on a parent corporation merely because of its ownership of the subsidiary." *Excel Energy v. Cannelton*, 337 F. App'x 480, 484 (6th Cir. 2009). Without specific allegations pertaining to the parent entity, courts will "decline[] to presume that a parent company participates in every decision or action of its subsidiary." *See Cupp*, 310 F. Supp. 2d at 973 (citing *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 857 (10th Cir. 1999)).[4]

In the antitrust context, courts in the Sixth Circuit do not ascribe the allegedly anticompetitive conduct of the subsidiary to the parent company without a showing that the parent was actively involved in the specific conduct alleged. *See Cupp*, 310 F. Supp. 2d at 973. The relevant inquiry is whether control of the parent was "sufficiently extensive to permit imputation of the conspiracy" such that the subsidiary can be treated as an alter ego of the parent. *Carrier*

---

[4]  Plaintiffs also bear the burden of proof to demonstrate the reasons warranting the disfavored step of piercing the corporate veil and holding a parent company liable for the acts of its subsidiary. *See Transition Healthcare v. Tri-State Health*, 306 F. App'x 273, 280 (6th Cir. 2009). Plaintiffs make ***zero*** allegations on this front.

9

*Corp.*, 673 F.3d at 445.[5]  These principles are particularly applicable here where RealPage's alleged indirect owners are investment funds and the post-closing actions were allegedly taken by a separate investment advisor.

As noted above, Plaintiffs fail to plead with any specificity the relationship between the Thoma Bravo Defendants and RealPage.  They offer only vague allegations regarding ownership interests and generalized assertions that do not demonstrate control or participation in the alleged conspiracy.  From their allegations, it is impossible to determine whether they contend the Thoma Bravo Defendants and RealPage are distinct legal entities for antitrust or other purposes.  The First Amended Student Complaint fails to allege any specific action by any of the Thoma Bravo Defendants in furtherance of the purported antitrust conspiracy or any other basis on which to connect or impute the supposed misconduct of RealPage to the Thoma Bravo Defendants.  Broad sweeping allegations that Thoma Bravo is "actively involved in the day-to-day operations of RealPage, including selecting and approving acquisition targets" and setting similarly unidentified company policies—without even an allegation that such acquisitions or policies *related* to the alleged conspiracy—are insufficient to show the requisite active involvement in the alleged conspiracy.  FASC ¶ 24.

Similarly, the allegation that the Thoma Bravo Defendants selected two RealPage officers from a separate Thoma Bravo subsidiary is not only factually inaccurate (Thoma Bravo had sold

---

[5] Tennessee law imposes a heightened standard for pleading that a subsidiary acted as a parent's alter ego.  "To state an alter ego theory under Tennessee law that will survive a motion to dismiss, a plaintiff must allege that the parent-subsidiary corporate form was used to sanction a fraud." *Tenpenny v. Prime Now, LLC*, 2020 WL 2062121, at *6 (M.D. Tenn. Apr. 29, 2020) (citing *Southeast v. Prime*, 462 F.3d 666, 673 (6th Cir. 2006) ("Southeast's argument that fraud is not a required element of an action to pierce the corporate veil under Tennessee law has already been considered and rejected by this court.")).

its majority interest in that subsidiary several years before acquiring RealPage[6]) but, more importantly, is irrelevant. Plaintiffs' allegations disregard the "well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *Bestfoods*, 524 U.S. at 69 (quoting *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 779 (5th Cir. 1997)).

Despite having access to the Thoma Bravo Defendants' prior motion to dismiss the Multifamily Plaintiffs' first consolidated amended complaint, Plaintiffs do not allege **any** new allegations. Rather, Plaintiffs choose to rest on allegations that are woefully deficient in asserting any sort of antitrust claim against Thoma Bravo Defendants. Plaintiffs provide a paragraph quoting at length from a press release issued upon the completion of the Thoma Bravo Funds' investment—which notably makes no reference to any unlawful agreements or cartel profits. FASC ¶ 23. Furthermore, Plaintiffs' allegation that a Thoma Bravo operating partner[7] is chairman of RealPage's board of directors changes nothing: "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *Bestfoods*, 524 U.S. at 69 (quoting *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 57 (2d Cir. 1988), *cert. denied*, 488 U.S. 852 (1988)).

---

[6] Private investment funds affiliated with Thoma Bravo, L.P. divested their majority stake in Sparta Systems in 2017. *See* Thoma Bravo, *New Mountain Capital Completes Investment in Sparta Systems* (Aug. 22, 2017), https://www.thomabravo.com/press-releases/new-mountain-capital-completes-investment-in-sparta-systems.

[7] Notably, Plaintiffs' First Amended Student Complaint omits that Thoma Bravo's operating partners are not employees or affiliates of Thoma Bravo entities, but instead act as independent contractors that advise Thoma Bravo and its affiliates. *See* Thoma Bravo, *Operating Partners and Advisors*, https://www.thomabravo.com/team/operating-partners-advisors (last visited October 6, 2023).

Accordingly, in their "final and forever amended complaint," Plaintiffs have fallen far short of sufficiently alleging the Thoma Bravo Defendants' involvement in, or liability for, the alleged conspiracy. Aug. 7, 2023 Hr'g Tr., ECF No. 499 at 16:9-10. On such deficient facts, Plaintiffs should not be permitted to subject the Thoma Bravo Defendants to notoriously expensive and burdensome discovery. *See Twombly*, 550 U.S. at 546. Their claims against the Thoma Bravo Defendants must be dismissed.

## V. CONCLUSION

For the foregoing reasons, and for those stated in Defendants' Joint Motion, the Thoma Bravo Defendants respectfully request that this Court dismiss all Plaintiffs' claims against them with prejudice.

Dated: October 9, 2023	Respectfully submitted,

/s/ Mark McKane, P.C.
James H. Mutchnik, P.C. (*pro hac vice*)
jmutchnik@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Mark McKane, P.C. (*pro hac vice*)
mark.mckane@kirkland.com
Alistair Blacklock (*pro hac vice*)
alistair.blacklock@kirkland.com
KIRKLAND & ELLIS LLP
555 California St., Suite 2900
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Counsel for Defendants*
*Thoma Bravo Fund XIII, L.P., Thoma Bravo Fund*
*XIV, L.P., and Thoma Bravo, L.P.*

13

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2023, a copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

*/s/ Mark McKane, P.C.*
Mark McKane, P.C.
