UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-MD-3071<br>MDL No. 3071<br><br>This Document Relates to:<br>3:23-MD-3071<br>3:23-CV-440<br><br>Chief Judge Waverly D. Crenshaw, Jr. |

## MEMORANDUM IN SUPPORT OF BELL PARTNERS INC. MOTION TO DISMISS PLAINTIFF NANCY ALEXANDER AND RELATED CLAIMS

Defendant Bell Partners Inc. ("Bell Partners") respectfully submits this Memorandum in support of its Motion to Dismiss Plaintiff Nancy Alexander ("Ms. Alexander") and her claims pursuant to Federal Rules of Civil Procedure 12(b)(6) because there are no allegations that any other Lessor Defendants operated in Asheville, North Carolina, where Plaintiff Alexander alleges her antitrust injury occurred. With no other competitors alleged in Asheville with whom Bell Partners could have conspired, Plaintiff Alexander has not and cannot plausibly allege an unlawful agreement impacting her and her rental prices.

### BACKGROUND

The Multifamily Second Amended Consolidated Class Action Complaint ("Multifamily SAC") names Bell Partners among numerous defendants in this multidistrict litigation. ECF No. 530 at ¶ 76. One of the named plaintiffs in the Multifamily SAC is Nancy Alexander. *See id.* at ¶ 53. Ms. Alexander alleges that she rented a unit in a property known as the Verde Vista apartments

1

in Asheville, North Carolina from approximately January 2021 through January 2022. *See id.* Ms. Alexander alleges that, during that time, "Defendant Bell Partners, Inc. managed this property." *Id.* Asheville, however, is not mentioned a single other time in the sprawling, 297-page Multifamily SAC. Further, no other Lessor Defendants (Bell Partner's horizontal competitors) are alleged to have operated in Asheville, much less used revenue management software ("RMS") in Asheville.

In the one underlying action in which Ms. Alexander is the sole named plaintiff—*Alexander v. The Irvine Company, LLC et al.,* Civil Action No. 3:23-cv-00440 (M.D. Tenn.) (Waverly D. Crenshaw, Jr, presiding)—Bell Partners is not even named. In that complaint, Ms. Alexander alleged that she "rented a multifamily residential unit in a property managed," not by Bell Partners, but "by Lessor Defendant Greystar in Asheville, North Carolina, beginning in approximately January 2021 through January 2022." *Id.*[1]

In the Multifamily SAC, Plaintiffs have alleged some 45 distinct regional geographic markets in which competitors operate and use RMS, plus an additional eight markets referenced in Attachment C. *See* ECF No. 530 at ¶¶ 405-680. None of those alleged geographic markets include the Asheville, North Carolina area. Ms. Alexander appears to be the only named plaintiff alleging damages from *outside* any alleged geographic market. As a result, the Multifamily SAC does not plausibly allege that Bell Partners could have been a party to a conspiracy to raise multifamily rental rates in Asheville, North Carolina.

---

[1] "Put simply, these allegations are inconsistent." *Montague v. Schofield*, No. 2:14-CV-292-RLJ, 2016 WL 3977199, at *2 (E.D. Tenn. July 19, 2016). When a plaintiff submits "inconsistent factual allegations," such "factual allegations with respect to that issue are not well-pleaded and will not be assumed to be veracious." *Id.* at *3; *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1325-26 (Fed. Cir. 1998) (agreeing that the district court was not required to accept as true inconsistent allegations contained in a second amended complaint).

2

**LEGAL STANDARD**

Rule 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). While the court will "accept as true all the allegations contained in the complaint and construe the complaint liberally in favor" of the non-movant, the court is not required to "accept as true legal conclusions or unwarranted factual inferences." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). To survive a 12(b)(6) motion to dismiss, the complaint "must 'contain either direct or inferential allegations respecting all material elements' of the plaintiff's claims" and "must 'raise a right to relief above the speculative level'" such that the plaintiff's claim is facially plausible. *Elias v. Fed. Home Loan Mortg. Corp.*, 581 F.App'x 461, 463 (6th Cir. 2014) (internal citation omitted).

A motion to dismiss under Rule 12(b)(6) must be granted if the complaint does not provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555.

More specifically for antitrust claims, the "essential elements…must be alleged in more than vague and conclusory terms to prevent dismissal of the complaint on a defendant's 12(b)(6) motion." *Found. for Interior Design Educ. Rsch. v. Savannah Coll. of Art & Design*, 244 F.3d 521, 530 (6th Cir. 2001). The complaint must allege that "the combination or conspiracy produced adverse, anticompetitive effects within relevant product and geographic markets." *Total Benefits*

*Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008) (quoting *Brown Shoe Co. v. United States,* 370 U.S. 294, 324 (1962)). Without such plausible allegations, the Court must dismiss the claims.

## ARGUMENT

Ms. Alexander alleges that she suffered antitrust injury in the form of higher rental rates in Asheville, North Carolina. *See* ECF No. 530 at ¶ 53. However, the Multifamily SAC glaringly omits Asheville from the list of 53 distinct regional submarkets and there are no allegations of an Asheville conspiracy or other concerted action between competitors because there are no allegations that any of Bell Partners' competitors operated in Asheville or used RMS in Asheville.

Ms. Alexander's *per se* claim against Bell Partners fails on its face because the Multifamily SAC does not allege any agreement between Bell Partners and any horizontal competitor. *See Med. Ctr. at Elizabeth Place v. Premier Health Partners*, No. 3:12-CV-26, 2016 WL 9460026, at *9 (S.D. Ohio Oct. 6, 2016) ("Collusion among horizontal competitors to reduce, or eliminate competition is a quintessential *per se* violation of the antitrust laws.") (citing *United States v. Coop. Theaters of Ohio, Inc.*, 845 F.2d 1367, 1373 (6th Cir. 1988)). Moreover, Ms. Alexander's Rule of Reason claim likewise fails because, as admitted in the Multifamily SAC, she was "not within [any of the 53] relevant geographic markets for antitrust purposes." *Id.* at ¶ 408. Therefore, under either theory, Plaintiffs allegations with regard to Ms. Alexander and Asheville, North Carolina are implausible and must be dismissed.

When a complaint fails to "identify any competitors" within a certain market, courts in this Circuit have found this omission to constitute a failure to "properly plead an essential element of a Sherman Act claim." *Caudill v. Lancaster Bingo Co.*, No. 2:04-CV-695, 2005 WL 2738930, at *7 (S.D. Ohio Oct. 24, 2005). Here, Plaintiffs have failed to identify any of Bell Partners'

4

competitors that operate or use RMS in Asheville, North Carolina. The allegations against one firm in a market cannot support Plaintiffs' conspiracy claims. Section One of the Sherman Act prohibits only agreements in restraint of trade. *See* 15 U.S.C. § 1 ("Every contract, combination…, or conspiracy in restraint of trade or commerce…is declared to be illegal."). Thus, "Section 1 applies only to concerted action that restrains trade," rather than independent action of a single actor. *American Needle, Inc. v. National Football League*, 560 U.S. 183, 190 (2010). In other words, it takes two to tango. *See Nurse Midwifery Assocs. v. Hibbett*, 689 F. Supp. 799, 803 (M.D. Tenn. 1988) (a "corporation cannot combine or conspire with itself, and the acts of a corporation alone…generally are not cognizable" under the Sherman Act) (citing *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 769 (1984)).

But in the Multifamily SAC, Bell Partners is left without a dancing partner in Asheville. Plaintiffs have made an isolated allegation regarding one renter, for one year, against one lessor. There are no allegations of an Asheville conspiracy, contract, agreement, or other concerted action between competitors. Therefore, on its face, the Multifamily SAC fails to plausibly allege a combination or conspiracy and these claims with regard to Ms. Alexander and Asheville, North Carolina must be dismissed.

Moreover, the fact that Plaintiffs saw fit to define some 53 geographic submarkets—while identifying each Lessor Defendant alleged to have operated and used RMS in those markets—underscores the futility of any argument that Ms. Alexander was victimized by one lessor of one property when no other area property managers took part in the alleged "conspiracy." Indeed, if Bell Partners had raised its rates above a competitive level, Ms. Alexander would have her pick of any other rental property (not alleged to have raised prices as part of a conspiracy with Bell Partners) in Asheville. That is not antitrust injury. *See Brunswick Corp.* v. *Pueblo Bowl-O-Mat,*

5

*Inc.*, 429 U.S. 477, 489 (1977). Therefore, the notion that Ms. Alexander or any other renter in Asheville could have been harmed by a conspiracy with no other alleged competitors in Asheville is implausible on its face. *See Twombly*, 550 U.S. at 569-70 (holding that allegations of a conspiracy must be plausible to survive a motion to dismiss).

Nor can Plaintiffs sweep Ms. Alexander in some implicit overarching—and wholly unsubstantiated and implausible—allegation of a "nationwide" market impacting every renter who leased any property from any defendant using RMS anywhere in the country.[2] ECF No. 530 at ¶¶ 400; 405. At the same time, Plaintiffs admit that "housing markets are regional." *Id.* at ¶ 406. That makes sense because it cannot be the case that multifamily rental prices in Asheville, North Carolina have any effect on multifamily rental prices in New York City, Chicago, Las Vegas, or Los Angeles (enumerated regional submarkets) or vice versa. In addition, Plaintiffs admit that "[r]enters in any given MSA do not consider multifamily residential leases in other MSAs as adequate substitutes for multifamily residential leases in their own MSA." *Id.* at ¶ 408. That only makes sense—an Asheville renter would not be expected to pack up and move to Austin or San Francisco (enumerated regional submarkets) in response to a rental price increase. This is because, as Plaintiffs concede, "housing markets are regional and many are tied to a center of commerce or education and the immediately surrounding areas." *Id.* at ¶ 406. Therefore, including Ms.

---

[2] While Plaintiffs appeared to remove explicit reference to a relevant geographic market of the entire United States as previously pled (*see* ECF No. 291 at ¶ 234), the Multifamily SAC defines class members as "[a]ll persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease." ECF No. 530 at ¶ 681. Among other numerous references to nationwide effects, the Multifamily SAC also alleges that competition was "restrained or eliminated with respect to the leasing of multifamily residential rental units nationwide." *Id.* at ¶ 691. Plaintiffs cannot have it both ways. *See Semertzides v. Bethesda N. Hosp.*, 2014 WL 2573073, at *4 (S.D. Ohio June 9, 2014), *aff'd*, 608 F. App'x 378 (6th Cir. 2015) (dismissing complaint because it alleged that relevant geographic market was certain counties or states and elsewhere that it was "the entire United States").

Alexander is some nationwide allegations fails as it is implausible just as Ms. Alexander's alleged antitrust injury is implausible.

For their alternative "potential Rule of Reason analysis," Plaintiffs identify 45 distinct regional submarkets where Plaintiffs allege multiple Lessor Defendants operate and use RMS. *Id*. at ¶ 409; *see also* ECF No. 530-3 (identifying eight additional markets). Ms. Alexander alleges that she "rented a multifamily residential unit in a property known as the Verde Vista apartments in Asheville, North Carolina." ECF No. 530 at ¶ 53. However, Asheville, North Carolina is not contained or even close to any of the alleged geographic markets, where Plaintiffs allege that other Lessor Defendants operated and also used RMS. Therefore, Ms. Alexander has no Rule of Reason claim. Plaintiffs concede as much stating that "multifamily residential real estate **outside the MSA are not within the relevant geographic markets for antitrust purposes**." *Id.* at ¶ 408 (emphasis added). This concession in fatal to Ms. Alexander's claims in Asheville as it is outside of the Plaintiffs' identified regional submarket. Therefore, Ms. Alexander's allegations should be dismissed.

## CONCLUSION

Pleadings standards as defined by the Supreme Court in *Twombly* require a plaintiff to "nudge[] their claims across the line from conceivable to plausible," otherwise they must be dismissed. *Id.*, 550 U.S. at 570. The allegations relating to Ms. Alexander and Asheville, however, are far from plausible. Nor are they even conceivable. Taking the allegations set forth in the Multifamily SAC as true, the idea that Ms. Alexander could have suffered any alleged antitrust injury from her 2021 Asheville lease is facially impossible. Therefore, this Court should dismiss plaintiff Nancy Alexander and any related claims in Asheville, North Carolina.

*[signature page follows]*

7

DATED: October 9, 2023               Respectfully submitted,


                                     /s/ *Marguerite S. Willis*
                                     Marguerite S. Willis (admitted *pro hac vice*)
                                     mwillis@maynardnexsen.com
                                     MAYNARD NEXSEN PC
                                     104 South Main Street
                                     Greenville, SC 29601
                                     Telephone: (864) 370-2211

                                     Michael A. Parente (admitted *pro hac vice*)
                                     mparente@maynardnexsen.com
                                     MAYNARD NEXSEN PC
                                     1230 Main Street, Suite 700
                                     Columbia, SC 29201
                                     Telephone: (803) 771-8900

                                     Margaret M. Siller (BPR No. 039058)
                                     msiller@maynardnexsen.com
                                     MAYNARD NEXSEN PC
                                     1131 4th Avenue South, Suite 320
                                     Nashville, Tennessee 37210
                                     Telephone: (629) 258-2253

                                     *Counsel for Defendant Bell Partners, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record registered on the CM/ECF system.

DATED this 9th day of October, 2023.

/s/ Marguertie S. Willis<br>
Marguerite S. Willis