UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No.: 3:23-md-3071<br><br>MDL No. 3071<br><br>This Document Relates to:<br><br>3:23-cv-00792<br><br>Chief Judge Waverly D. Crenshaw, Jr. |

**MEMORANDUM OF LAW IN SUPPORT OF
TREV MANAGEMENT II LLC'S MOTION TO DISMISS STUDENT-HOUSING
PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Plaintiffs have improperly dragged Defendant TREV Management II LLC ("TREV") into this antitrust litigation solely on the ground that it has an ownership interest in another codefendant.[1] In addition to the reasons why the claims in the operative Complaint fail against all Defendants,[2] the arguments below show that Plaintiffs' cursory allegations against TREV are insufficient to support claims against TREV as a matter of law. All of the claims against TREV should therefore be dismissed with prejudice, and TREV should be dropped from the case.[3]

---

[1] The Court has granted a motion to substitute TREV for the improperly identified Timberline Real Estate Ventures, LLC. (ECF No. 536.)

[2] The "Complaint" (or "FASC") addressed in this motion is the First Amended Consolidated Class Action Complaint regarding student housing (ECF No. 527). Accordingly, the "Plaintiffs" referenced in this brief are the plaintiffs who filed that Complaint. TREV has also joined in the contemporaneously filed motion to dismiss that complaint on behalf of all student-housing Defendants. TREV is not a defendant named in the Second Amended Consolidated Class Action Complaint filed by different plaintiffs with respect to multifamily housing (ECF No. 530).

[3] TREV is currently named as a defendant in only one of the cases consolidated in this multidistrict litigation, *Dempsey v. RealPage, Inc.*, No. 3:23-cv-00792. (*See* ECF No. 528-1, at 6; ECF No. 536.)

1

# I. PLAINTIFFS' ALLEGATIONS AGAINST TREV

Setting aside Plaintiffs' allegations against all "Lessor Defendants" as an undifferentiated group, the 285-paragraph Complaint contains only a handful allegations against TREV. Plaintiffs are four individuals who claim to have rented student housing allegedly owned or operated by various other Lessor Defendants in Alabama, Oregon, and Florida. (FASC ¶¶ 17–20.) They allege that TREV is "a privately held real estate operator and investment manager" headquartered in New York and connected to a single student housing property in North Carolina. (*Id.* ¶¶ 30, 179.)

Critically, Plaintiffs do not allege any personal connection to TREV, not only because they have no relationship with the only property allegedly associated with TREV (in North Carolina), but also because they do not—and could not truthfully—allege that TREV *itself* owns or operates any student-housing properties at all. Although Plaintiffs allege that TREV is among a group of Lessor Defendants that "have" student-housing properties in North Carolina (FASC ¶ 179), Plaintiffs' only specific allegation against TREV, with respect to the underlying conspiracy on which their claims depend, is that TREV "utiliz[es] its fully integrated property management team *through its owned affiliate* [and codefendant] B.HOM Student Living" (*id.* ¶ 30 (emphasis added)).

Nor do Plaintiffs allege that TREV has any direct connection to RealPage, the supposed "hub" of the alleged conspiracy. Instead, they allege only that *B.HOM* "is a student housing operator Headquartered in Dallas, Texas"; that B.HOM is TREV's "wholly owned affiliate"; and that B.HOM (again, not TREV) is "one of RealPage's clients and uses its revenue management software." (*Id.* ¶¶ 26, 31.) Despite the Complaint's conclusory and collective assertion that "Timberline Real Estate Ventures, B.HOM Student Living, *and* BH Management Services used RealPage to set prices for student housing above competitive rates" (*id.* ¶ 57 (emphasis added)),

2

Plaintiffs do not allege any specific facts showing that TREV itself has been directly or independently involved in B.HOM's alleged use of RealPage—much less the underlying antitrust conspiracy—in any way.

## II. LEGAL STANDARD

A plaintiff bringing claims under Section 1 of the Sherman Act must allege *facts*—not just assert conclusions—showing how *each* defendant conspired in violation of the antitrust laws. *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009) (affirming dismissal of antitrust claims against two defendants where "plaintiffs [do not] specify how these defendants are involved in the alleged conspiracy"); *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) (dismissing claims against corporate parents and subsidiaries where the complaint failed to allege any facts pertaining to them). "[M]erely being the parent company does not make the parent liable for the acts of a subsidiary." *Pictsweet Co. v. R.D. Offutt Farms Co.*, No. 3:19-CV-00722, 2021 WL 4034222, at *22 (M.D. Tenn. Sept. 3, 2021). And a defendant's alleged involvement must amount to "more than mere ownership" of another entity. *Jones v. Varsity Brands, LLC*, 618 F. Supp. 3d. 713, 723 (W.D. Tenn. 2022). "The fact that two separate legal entities may have a corporate affiliation does not alter [the] pleading requirement" to separately identify each defendant's involvement in the alleged conspiracy. *In re Aluminum Warehousing Antitrust Litig.*, No. 13–md–2481 (KBF), 2015 WL 1344429, at *2 (S.D.N.Y. Mar. 23, 2015).

Because alleging mere ownership in another codefendant is insufficient to satisfy Plaintiffs' pleading obligations with respect to any claims against TREV, they needed to set forth facts establishing the "parent [company's] direct and independent participation in the alleged conspiracy." *In re Title Ins. Antitrust Cases,* 702 F. Supp. 2d 840, 907 (N.D. Ohio 2010) (quoting *In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 688 (E.D. Pa. 2009)); *Nobody in*

3

*Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1068–69 (D. Colo. 2004) ("Absent allegations or evidence of 'independent conduct' on the part of the parent, there is no basis upon which to hold a parent directly liable for the acts of a subsidiary."). Plaintiffs failed to meet that standard.

### III. ARGUMENT

Even if the Complaint is not dismissed in its entirety, the Court should still dismiss all claims to the extent they have been asserted against TREV, which cannot be held liable on the basis of Plaintiffs' allegations about TREV's relationship with B.HOM.

#### A. TREV Cannot Be Held Liable as Part of an Alleged Antitrust Conspiracy Simply Because of Its Ownership Interest in a Codefendant.

Plaintiffs' only allegations purporting to connect TREV to the alleged conspiracy here concern its "wholly owned" subsidiary B.HOM (FASC ¶ 31), but it is blackletter law that the coordinated activity of a parent company and its wholly owned subsidiary cannot constitute a conspiracy under Section 1 of the Sherman Act. *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 776 (1984). Thus, even if Plaintiffs' allegations are taken at face value, TREV cannot be held liable just for conspiring with or "utiliz[ing]" B.HOM. (FASC ¶ 30.)

Nor is there any basis to impute liability for B.HOM's alleged use of RealPage to TREV. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *Chism v. Chemring N. Am. Grp., Inc.*, No. 15-1033, 2015 WL 8207899, at *2 (W.D. Tenn. Dec. 7, 2015) (*quoting United States v. Bestfoods*, 524 U.S. 51, 61 (1998)). Courts often cite this principle to dismiss antitrust claims based solely on corporate proximity. *See, e.g.*, *Cupp v. Alberto–Culver USA, Inc.*, 310 F. Supp. 2d 963, 974 (W.D. Tenn. 2004) (dismissing Section 1 claim because "mere existence of a corporate relationship [does not] implicate a parent in its subsidiary's actions"); *In*

*re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d at 687 ("[P]laintiffs can not rely merely on the parents' ownership interest in their respective subsidiaries to sustain a § 1 claim against parent defendants."); *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, 630 F. Supp. 3d 968, 992 (N.D. Ill. 2022) (dismissing Section 1 claims where complaint did not allege any plausible grounds for holding parent company liable for subsidiary's purported misconduct); *In re Aluminum Warehousing Antitrust Litig.*, 2015 WL 1344429, at *3 (same).

The U.S. Court of Appeals for the Sixth Circuit has similarly held that courts generally may not ascribe the allegedly anticompetitive conduct of a subsidiary to the parent company unless the parent company's control over the subsidiary was so "extensive" that the subsidiary was the parent's "alter ego[]." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 445 (6th Cir. 2012). "The burden of proof to demonstrate grounds for piercing the corporate veil" in this manner "is on the party seeking to impose liability on the parent corporation," which may be treated as a "single entity" with its subsidiary only "in extraordinary cases, such as [when] the corporate form [is] being used for wrongful purposes" like fraud. *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007) (*citing Bestfoods*, 524 U.S. at or 62); *cf. Se. Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 673 (6th Cir. 2006) ("[Plaintiff's] argument that fraud is not a required element of an action to pierce the corporate veil under Tennessee law has already been considered and rejected by this court.").

Plaintiffs do not come anywhere close to carrying that burden. Their only allegation regarding the corporate relationship between TREV and B.HOM is that B. HOM is "its owned affiliate." (FASC ¶ 30.) Plaintiffs do not allege that B.HOM was TREV's alter ego; allege that TREV controlled or directed B.HOM's operations or business decisions, including its alleged use of RealPage; or allege any failure to observe corporate formalities. And Plaintiffs certainly do not

5

allege that TREV used B.HOM's corporate form (i.e., as a limited liability company) to commit fraud. Accordingly, TREV cannot be held liable for any alleged misconduct by B.HOM, and because Plaintiffs' claims depend on such a theory of liability, they should be dismissed.

### B. Plaintiffs Cannot Distort *Copperweld* to State a Claim Against TREV.

The Court should reject any suggestion (as Plaintiffs argued in a previous filing) that "when determining whether a conspiracy claim is adequately pled against a parent company based on anticompetitive conduct of its subsidiary, a court should . . . assign liability to any participating or directing corporate entity" under *Copperweld*, regardless of whether the parent company participated directly in the alleged conspiracy. (ECF No. 390, at 8.) To the extent that Plaintiffs believe that they can state a claim against TREV under such a theory of liability, they are wrong.

*Copperweld*'s holding that the coordinated activity of a parent company and its wholly-owned subsidiary cannot constitute a conspiracy for purposes of Section 1, 467 U.S. at 771, should not be turned on its head to treat TREV and B.HOM like a single corporate entity here. As Plaintiffs conceded in prior briefing, the Sixth Circuit has never endorsed such a "single enterprise framework" of liability. (ECF No. 390, at 7 n.10.) And other courts around the country have refused to misapply *Copperweld* to "allow § 1 liability for both a parent and its subsidiary 'even where there is no evidence that *both* were involved in the challenged conduct.'" *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, 630 F. Supp. 3d at 991 (N.D. Ill. 2022) (emphasis added) (quoting *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 857 (10th Cir. 1999)); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341 n.44 (3d Cir. 2010) ("Contrary to plaintiffs' suggestion, however, it does not follow from *Copperweld* that subsidiary entities are automatically liable under § 1 for any agreements to which the parent is a party."); *Mitchael*, 179

F.3d at 857 ("[W]e decline to be the first court to interpret *Copperweld* dicta in the expansive way plaintiffs wish.").

Although some courts have reasoned that the unity of interests among corporate affiliates permits them to be viewed as sharing the *purpose* of a single economic unit, even those courts have required additional allegations that each affiliate took some direct *action* in furtherance of the alleged conspiracy. *See, e.g.*, *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1237 (10th Cir. 2017) (noting in dicta that affiliate could be viewed as sharing purpose of single economic entity for Section 2 monopolization claims, but cautioning that "an affiliated corporation cannot be held liable as a part of the enterprise where there is no evidence that the corporation was involved in the challenged conduct" (internal citations and quotation marks omitted)); *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 633 (9th Cir. 2018) (finding common purpose within a single "economic unit" but declining to "supply a theory of unbounded vicarious liability for the *acts* of legally distinct entities"). In *Jones v. Varsity Brands*, for example, the U.S. District Court for the Western District of Tennessee accepted allegations that owners were part of a "joint enterprise" with a wholly owned subsidiary, but that court still required allegations that each affiliate had "'*independently* participated in the enterprise's scheme.'" 618 F. Supp. 3d at 723 (emphasis added) (quoting *Arandell*, 900 F.3d at 631).

Even if a single-enterprise theory might be appropriate in other circumstances, it is not appropriate with respect to TREV here, where Plaintiffs have not alleged any *independent* action by TREV in furtherance of the alleged conspiracy (as explained further below).[4] Plaintiffs allege

---

[4] The single-enterprise theory in *Varsity Brands* also turned on allegations that the parent companies *did* in fact wholly own the subsidiary at issue, but TREV is not B.HOM's sole owner. As reported in B.HOM's previously filed Business Entity Disclosure (ECF No. 490), TREV is only one of two members with ownership interests in B.HOM. Plaintiffs' counsel were informed that TREV is not a controlling or majority owner of B.HOM before filing the Complaint.

only that TREV has an ownership interest in B.HOM, which in turn allegedly used RealPage. Plaintiffs' allegations of ownership are thus insufficient to bypass the corporate form and attribute B.HOM's alleged use of RealPage or role in the supposed conspiracy to TREV.

### C. Plaintiffs Do Not Plausibly Allege That TREV Independently Participated in the Conspiracy.

Because TREV cannot be held liable solely on the basis of its relationship with B.HOM, Plaintiffs can avoid dismissal *only* if their Complaint sets forth specific facts establishing TREV's direct and independent participation in the alleged conspiracy. *In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d at 688 ("[T]o state a claim against parent corporations, plaintiffs must set forth facts establishing the parent corporations' direct and independent participation in the alleged conspiracy."); *see also Varsity Brands*, 618 F. Supp. 3d at 725 (finding sufficient allegations of parent company's direct, independent participation in the alleged conspiracy). The Complaint does not pass this test.

Quite the contrary: in over 100 pages purporting to detail an alleged conspiracy involving the use of RealPage software, the Complaint makes just a single assertion about TREV's participation in that scheme: "Timberline Real Estate Ventures, B.HOM Student Living, and BH Management Services used RealPage to set prices for student housing above competitive rates." (FASC ¶ 57.) This conclusory allegation is little more than a "formulaic recitation of the elements" of Plaintiffs' antitrust claim, and it "will not do" in the context of this motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing *Twombly*, 550 U.S. at 555)).

When plaintiffs fail to make well-pleaded factual allegations against one or more members in a group of antitrust defendants, the courts do not hesitate to dismiss claims against
8

only that TREV has an ownership interest in B.HOM, which in turn allegedly used RealPage. Plaintiffs' allegations of ownership are thus insufficient to bypass the corporate form and attribute B.HOM's alleged use of RealPage or role in the supposed conspiracy to TREV.

### C. Plaintiffs Do Not Plausibly Allege That TREV Independently Participated in the Conspiracy.

Because TREV cannot be held liable solely on the basis of its relationship with B.HOM, Plaintiffs can avoid dismissal *only* if their Complaint sets forth specific facts establishing TREV's direct and independent participation in the alleged conspiracy. *In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d at 688 ("[T]o state a claim against parent corporations, plaintiffs must set forth facts establishing the parent corporations' direct and independent participation in the alleged conspiracy."); *see also Varsity Brands*, 618 F. Supp. 3d at 725 (finding sufficient allegations of parent company's direct, independent participation in the alleged conspiracy). The Complaint does not pass this test.

Quite the contrary: in over 100 pages purporting to detail an alleged conspiracy involving the use of RealPage software, the Complaint makes just a single assertion about TREV's participation in that scheme: "Timberline Real Estate Ventures, B.HOM Student Living, and BH Management Services used RealPage to set prices for student housing above competitive rates." (FASC ¶ 57.) This conclusory allegation is little more than a "formulaic recitation of the elements" of Plaintiffs' antitrust claim, and it "will not do" in the context of this motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing *Twombly*, 550 U.S. at 555)).

When plaintiffs fail to make well-pleaded factual allegations against one or more members in a group of antitrust defendants, the courts do not hesitate to dismiss claims against

any defendant not specifically accused of participating directly in the alleged conspiracy. *See, e.g.*, *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d at 905 (affirming dismissal of antitrust claims against two defendants where "plaintiffs [do not] specify how these defendants are involved in the alleged conspiracy"); *SD3*, 801 F.3d at 423 (noting that "unadorned conclusory allegations . . . are akin to no allegations at all" (internal citations and quotation marks omitted)); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (holding a complaint's enumeration of "basically every type of conspiratorial activity that one could imagine . . . in entirely general terms without any specification of any particular activities by any particular defendant" is insufficient), *cited with approval in Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.*, 535 F. Supp. 3d 638, 648 (E.D. Mich. 2021), *aff'd*, 48 F.4th 656 (6th Cir. 2022).[5] Plaintiffs' claims against TREV should meet the same fate.

## IV. CONCLUSION

TREV cannot be held liable based on Plaintiffs' allegations of an ownership interest in codefendant B.HOM, and Plaintiffs have failed to allege that TREV independently participated in the alleged conspiracy at the heart of their claims. For those reasons alone (albeit in addition to the reasons supporting the Motion to Dismiss Student Family Plaintiffs' First Amended

---

[5] *Accord In re GSE Bonds Antitrust Litig.*, 396 F. Supp. 3d 354, 364 (S.D.N.Y. 2019) (dismissing claims against certain defendants because "there must be something in the complaint that ties each defendant to the conspiracy"); *In re Optical Disk Drive Antitrust Litig.*, Nos. 3:10-md-2143-RS, 3:13-cv-04991-RS, 2014 WL 3378336, at *4 (N.D. Cal. July 10, 2014) (dismissing claims against a defendant because plaintiffs "must at least, include allegations specific to each defendant alleging that defendant's role in the alleged conspiracy," and "[t]he sparse and conclusory allegations . . . in the complaint do not presently meet that standard" (internal quotation marks omitted)); *In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 541 F. Supp. 2d 487, 491 (D. Conn. 2008) (dismissing claims where "the complaint alleges general conspiratorial activity without reference to specific actions by a particular defendant at a particular time").

Consolidated Class Action Complaint), any claims against TREV should be dismissed with prejudice.

Dated: October 9, 2023

Respectfully submitted,

*/s/ Lee A. Peifer*
Lee A. Peifer (admitted *pro hac vice*)
leepeifer@eversheds-sutherland.com
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street NE, Suite 2300
Atlanta, Georgia 30309-3996
Telephone: (404) 853-8000

Douglas Berry (#6927)
doug.berry@millermartin.com
Jessica Malloy-Thorpe (#35234)
jessica.malloy-thorpe@millermartin.com
MILLER & MARTIN PLLC
401 Commerce Street, Suite 1010
Nashville, Tennessee 37219
Telephone: (615) 244-9270

*Counsel for Defendant
TREV Management II LLC*

## CERTIFICATE OF SERVICE

I certify that on October 9, 2023, this document is being filed with the Clerk of Court using the CM/ECF system, which will serve the document electronically on all counsel of record in accordance with the Court's Practice and Procedures Notice.

*/s/ Lee A. Peifer*
Lee A. Peifer