**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

|  |  |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | **Case No. 3:23-CV-3071** **MDL-3071** **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS LRO CLAIMS FOR FAILURE TO STATE A CLAIM** **THIS DOCUMENT RELATES TO ALL CASES** **Chief Judge Waverly D. Crenshaw** |

**MEMORANDUM IN SUPPORT OF RULE 12(b)(6)**
**MOTION TO DISMISS LRO CLAIMS FOR FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

Page

BACKGROUND ...............................................................................................................2

I.      Plaintiffs' conspiracy theory focuses on Defendants' use of RMS products that purportedly utilize non-public aggregated competitor information to suggest rent prices. ...................................................................................................2

II.     Plaintiffs have previously alleged that LRO uses only public information as an input to avoid antitrust concerns. ...................................................................3

ARGUMENT ..................................................................................................................5

I.      Plaintiffs impermissibly group RealPage's three different RMS products together. ................................................................................................................6

II.     Plaintiffs' LRO Allegations foreclose their claim against LRO. ..........................10

III.    Plaintiffs cannot avoid dismissal by ignoring the LRO Allegations......................10

IV.     Plaintiffs' continued failure to plead that LRO was changed to include non-public information to suggest pricing is fatal. ......................................................11

V.      CONCLUSION....................................................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armas*, Case No. 22-CV-1726 ........................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) (Sherman Act § 1 case) .................................................5, 6

*Blosser*, Case No. 23-CV-445 .......................................................................................4

*Boelens*, Case No. 22-CV-1802 ....................................................................................4

*Bohn*, Case No. 22-CV-1743 .........................................................................................4

*Carter*, Case No. 22-CV-1332 ......................................................................................4

*In re Citric Acid Litig.*,
    191 F.3d 1090 (9th Cir. 1999) .........................................................................9

*Corradino*, Case No. 23-CV-20165 .............................................................................4

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007)...............................................................................8

*Enders*, Case No. 23-CV-55 .........................................................................................4

*In re Loc. TV Advert. Antitrust Litig.*,
    No. 18-CV-6785, 2022 WL 13830733 (N.D. Ill. Oct. 21, 2022) ...........................9

*Mackie*, Case No. 23-CV-11 .........................................................................................4

*In re Mexican Gov't Bonds Antitrust Litig.*,
    412 F. Supp. 3d 380 (S.D.N.Y. 2019).............................................................9

*Newsboys v. Warner Bros. Recs. Inc.*,
    No. 12-CV-678, 2013 WL 3524615 (M.D. Tenn. July 11, 2013) .........................11

*NicSand, Inc. v. 3M Co.*,
    507 F.3d 442 (6th Cir. 2007) ..........................................................................10

*Pennsylvania Railroad Co. v. City of Girard*,
    210 F.2d 437 (6th Cir. 1954) ....................................................................10, 11

*PetroJebla, SA de C.V. v. Betron Enterprises, Inc.*,
    No. 19-CV-11439, 2020 WL 95802 (E.D. Mich. Jan. 8, 2020) ...........................11

*Precht*, Case No. 22-CV-12230 .................................................................................4

*Saloman*, Case No. 23-CV-21038 ............................................................................4

*SD3, LLC v. Black & Decker (U.S.), Inc.*,
    801 F.3d 412 (4th Cir. 2015) ..........................................................................8

*Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
    552 F.3d 430 (6th Cir. 2008) .....................................................................5, 8

*In re Travel Agent Comm'n Antitrust Litig.*,
    583 F.3d at 905 (6th Cir. 2009)......................................................................5

**Statutes**

28 U.S.C. § 1407 .....................................................................................................3

Fair Housing Act ....................................................................................................5

Sherman Act § 1 .................................................................................................5, 8

**Rules**

Federal Rule 11(b)(3)............................................................................................10

Local Rule 5.02(c) ................................................................................................18

Sixteen multi-family lessor Defendants ("LRO Defendants")[1] file this Motion to Dismiss because Plaintiffs fail yet again in their Second Amended Consolidated Class Action Complaint in the multi-family housing cases ("SAC") to resolve fundamental deficiencies in alleging that a Defendant's use of Lease Rent Options ("LRO") software is plausibly part of an alleged antitrust conspiracy. While the SAC fails for all the reasons articulated in the Motion to Dismiss concurrently filed by all the Defendants, Plaintiffs' claims against the LRO Defendants suffer from an additional fatal defect. Plaintiffs alleged in their original complaints that LRO uses only public information as an input, according to Plaintiffs, to avoid potential antitrust concerns. In the face of that prior allegation, Plaintiffs' SAC, like their First Amended Consolidated Class Action Complaint ("FAC"), fails to plead that RealPage has ever used non-public information to suggest prices to LRO users. LRO thus cannot plausibly be part of Plaintiffs' claimed conspiracy in which the Defendants allegedly conspired by using revenue management software ("RMS") that purportedly relies upon competitors' aggregated "non-public," "proprietary," "confidential," or "commercially sensitive" information to suggest rent prices. In short, setting aside the SAC's infirmities as to all Defendants, Plaintiffs have pled themselves out of court with respect to LRO.

Accordingly, Plaintiffs' claims concerning LRO should be dismissed for the following reasons: Plaintiffs cannot just lump LRO together with other RealPage products and then fail to make specific allegations about why LRO users are allegedly implicated in the conspiracy. Plaintiffs previously conceded that LRO does not use non-public information—entirely

---

[1] Bell Partners, Inc.; Brookfield Properties Multifamily LLC; CONAM Management Corporation; ECI Group, Inc.; Equity Residential; Independence Realty Trust, Inc.; Mid-America Apartment Communities, Inc. and Mid-America Apartments, L.P.; Morgan Properties Management Company, LLC; The Related Companies, L.P.; Related Management Company, L.P.; Security Properties Residential LLC; Simpson Property Group, LLC; Thrive Communities Management, LLC; Windsor Property Management Company; WinnCompanies LLC; and WinnResidential Manager Corp.

1

undermining their liability theory even aside from its other infirmities—and cannot pretend they did not make those allegations now. And Plaintiffs fail to allege LRO's algorithm was ever changed to use *non-public competitor* information, and thus does not satisfy an essential (though not itself sufficient) part of the alleged conspiracy.

## **<u>BACKGROUND</u>**

I.     **Plaintiffs' conspiracy theory focuses on Defendants' use of RMS products that purportedly utilize non-public aggregated competitor information to suggest rent prices.**

On July 3, 2023, Plaintiffs sought, and the Court later granted, leave to file a FAC. Dkt. 310 (motion to amend); Dkt. 313 (granting motion). In Plaintiffs' FAC, they theorized that the lessor Defendants conspired by allegedly using RealPage RMS products that, they said, relied upon competitors' aggregated non-public information in suggesting rent prices:

> RealPage's clients provide RealPage with vast amounts of their *non-public proprietary data*, including their lease transactions, rent prices, and occupancy and inventory levels. Each client's *proprietary data* is fed into a common data pool . . . . RealPage then trains its machine learning and artificial intelligence across that pool of its clients' *proprietary data* and uses algorithms to generate rental prices daily for each of RealPage's client's available units through its RMS.

Dkt. 314 at ¶ 5 (emphasis added); *see also id.* at ¶¶ 3, 5, 116 (discussing collection and use of "proprietary" or "non-public" data). These allegations showed that the purported use of non-public competitor information (in aggregated form) by RealPage's RMS was an essential component of Plaintiffs' antitrust conspiracy theory.

During the August 7, 2023 case management conference, this Court "g[a]ve the Plaintiffs their last and forever opportunity to amend their [FAC]," "put[ing] . . . no restrictions on what [Plaintiffs] can add to [their FAC]." Tr. of 8/7/2023 Case Management Conference at 14, 19. Accordingly, Plaintiffs filed their SAC on September 7, 2023 (Dkt. 530). In it, they purported to add further allegations about the alleged use of aggregated, non-public competitor information

2

(or "proprietary," "confidential," or "commercially sensitive" information) to suggest prices. But those allegations simply rehashed similar allegations in the FAC and still do not mention LRO. *See* Dkt. 530 at ¶¶ 4, 13, 227, 287, 380.

## II. Plaintiffs have previously alleged that LRO uses only public information as an input to avoid antitrust concerns.

Setting aside the fatal flaws in Plaintiffs' theory as to all Defendants, LRO in particular does not fit into Plaintiffs' theory that RealPage's RMS products used non-public pricing information to suggest prices. LRO is a legacy RMS product that RealPage acquired from the Rainmaker Group in 2017 and has continued to offer to the LRO Defendants. Dkt. 530 at ¶ 26. It is one of the 3 different RMS products that Plaintiffs allege RealPage offers, the other two being YieldStar and AIRM. Dkt. 530 at ¶ 2, n.2. Instead of making specific allegations about LRO, Plaintiffs lump these RMS products together, referring to them collectively throughout the SAC as "Revenue Management Solutions" or "RMS." *Id.*

This MDL is composed of dozens of cases originally filed in various District Courts around the country that have been centralized in this District by the JPML "for coordinated or consolidated pretrial proceedings."[2] MDL No. 3071, Dkt. 205 at 3. Complaints originally filed in many of those cases contain the following allegation(s) ("LRO Allegation(s)") concerning the algorithm used to suggest rent prices to LRO users:

> Naturally, YieldStar's coordinated pricing strategy became more and more effective as more property managers implemented it. To this end, Defendant RealPage began buying up similar and competing software companies, and it has completed 26 acquisitions since its founding. The most important of these transactions came in 2017, when RealPage acquired Lease Rent Options ("LRO"),

---

[2] Title 28 U.S.C. § 1407 allows the JPML to centralize cases for "pretrial proceedings" but mandates that centralized cases be remanded for trial to the district from which they were transferred. § 1407(a) ("Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated.").

a company which offered a similar rent-setting software that was YieldStar's strongest rival. *Instead of relying on nonpublic data from competitors, however, LRO's algorithm used only public market data as [an] input. LRO's chief architect, Donald Davidoff, designed it that way specifically to avoid the potential antitrust violations arising from the use of nonpublic data to coordinate prices among competitors.*[3]

*See, e.g.*, *Weaver*, Case No. 22-CV-3224, Dkt. 1 at ¶ 50 (D. Colo.) (emphasis added).[4]

With one exception, the LRO Allegations in those original complaints cite as support an October 2022 ProPublica article titled *Rent Going Up? One Company's Algorithm Could Be Why*. *See, e.g.*, *Weaver*, Case No. 22-CV-3224, Dkt. 1 at ¶ 50 n.25 (citing ProPublica article in LRO Allegation). The ProPublica article, like the LRO Allegation, states that LRO was deliberately designed to use only public market data to avoid potential antitrust concerns:

> [Donald Davidoff] *designed his program differently [from other RMS products], to head off any concerns about collusion. Instead of relying on a digital warehouse that includes competitor data, Davidoff used a complex formula and public market data to steer LRO's algorithm.* The system relied on incremental price shifts to manage demand for apartments, said Davidoff, an MIT-educated former rocket engineer. "That's not dissimilar to changing a trajectory of a rocket through inflection of a nozzle," he said — making small changes that can dramatically alter something's course over time. Davidoff said he was careful to avoid features that

---

[3] The LRO Allegations have a few immaterial variations in several cases that do not concern the part of the Allegation about LRO using only public information.

[4] The following cases containing the LRO Allegation were filed by Plaintiffs included in the SAC as putative class representatives: *Kramer*, Case No. 22-CV-3835, Dkt. 1 at ¶ 44 (D.D.C.); *Parker*, Case No. 23-CV-20160, Dkt. 1 at ¶ 50 (S.D. Fla.); *White*, Case No. 22-CV-12134, Dkt. 1 at ¶ 43 (D. Mass.); *Watters*, Case No. 22-CV-1082, Dkt. 1 at ¶ 40 (M.D. Tenn.); *Vincin*, Case No. 22-CV-1329, Dkt. 1 at ¶ 45 (W.D. Tex.).

Further, the following cases containing the LRO Allegation were filed by Plaintiffs who are not named in the SAC as putative class representatives, some having been dismissed, but who were represented by Interim Co-Lead Counsel in this MDL in pleading the LRO Allegation: *Blosser*, Case No. 23-CV-445, Dkt. 1 at ¶ 48 (M.D. Tenn.); *Saloman*, Case No. 23-CV-21038, Dkt. 1 at ¶ 50 (S.D. Fla.); *Corradino*, Case No. 23-CV-20165, Dkt. 1 at ¶ 49 (S.D. Fla.); *Enders*, Case No. 23-CV-55, Dkt. 1 at ¶ 49 (D. Colo.); *Bertlshofer*, Case No. 23-CV-18, Dkt. 1 at ¶ 41 (D. Ariz.); *Precht*, Case No. 22-CV-12230, Dkt. 1 at ¶ 43 (D. Mass.); *Mackie*, Case No. 23-CV-11, Dkt. 1 at ¶ 49 (D. Colo.); *Carter*, Case No. 22-CV-1332, Dkt. 1 at ¶ 45 (W.D. Tex.); *Boelens*, Case No. 22-CV-1802, Dkt. 1 at ¶ 43 (W.D. Wash.); *Bohn*, Case No. 22-CV-1743, Dkt. 1 at ¶ 45 (W.D. Wash.); *Armas*, Case No. 22-CV-1726, Dkt. 1 at ¶ 52 (W.D. Wash.).

4

might run counter not only to anti-discrimination laws, such as the Fair Housing Act, but also those that bar competitors from conspiring to set prices.

Exhibit 1 at 7-8 (emphasis added). Plaintiffs' SAC omits the specific LRO Allegation but continues to cite the same ProPublica article the Plaintiffs had previously used as support for the LRO Allegations. Dkt. 530 (SAC) at ¶ 1 n.1.

## ARGUMENT

When pleading a Sherman Act § 1 claim, a complaint must allege "enough factual matter (taken as true) to suggest that an [illegal] agreement was made." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (Sherman Act § 1 case). In antitrust cases, the *Twombly* standard "provides an additional safeguard against the risk of false inferences" at the pleading stage and "addresses the dilemma of extensive litigation costs associated with prosecuting and defending antitrust lawsuits." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009) (cleaned up) (affirming dismissal of antitrust conspiracy claim); *Twombly*, 550 U.S. at 546 ("It is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive." (cleaned up)).

The Sixth Circuit requires that Plaintiffs must allege how each named defendant participated in the alleged conspiracy. *See Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008) (affirming dismissal of hub-and-spoke conspiracy where "plaintiffs only offer[ed] bare allegations without any reference to the who, what, where, when, how or why," and holding: "Generic pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy, was specifically rejected by *Twombly*." (cleaned up)); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d at 905 (affirming dismissal of complaint alleging an antitrust conspiracy claim against some defendants on grounds that plaintiffs failed to plead how those defendants were involved in the

5

conspiracy and noting that "indeterminate assertions" about "defendants or defendants' executives" "represent precisely the type of naked conspiratorial allegations rejected by the Supreme Court in *Twombly*" (cleaned up)).

In addition to the SAC's other pleading deficiencies, as set forth in the Defendants' concurrently filed Motion to Dismiss, Plaintiffs still fail to allege, after at least three opportunities to amend,[5] that LRO has ever used non-public information to suggest prices to LRO users. Instead, Plaintiffs lump together RealPage's distinct RMS products and refer to them collectively throughout the SAC as "Revenue Management Solutions" or "RMS" when attempting to articulate purportedly anticompetitive conduct. Dkt. 530 at ¶ 2 n.2 (defining terms to mean all of "RealPage's revenue management software solutions"); *id.* at ¶¶ 4, 14, 31, 227, 287-89, 380 (alleging generally how RMS suggests prices, but failing to allege LRO has ever used non-public information). Having admitted that LRO was designed to use only *public* information to avoid antitrust concerns, Plaintiffs were then required to allege in their SAC that, at a bare minimum, LRO's algorithm was later changed to use *non-public competitor* information, an essential part of Plaintiffs' alleged conspiracy. By failing to do so, and for this independent reason, Plaintiffs do not plausibly state an antitrust claim involving LRO.

**I.      Plaintiffs impermissibly group RealPage's three different RMS products together.**

As the LRO Defendants pointed out in their last motion to dismiss (Dkt. 324 at 2, 8), an essential element of Plaintiffs' conspiracy theory, as previously alleged in the FAC, is the purported use of non-public competitor data by RealPage's RMS products to suggest rent prices to the lessor Defendants. Dkt. 314 at ¶¶ 3, 5, 116. In responding to the LRO Defendants' first motion, Plaintiffs argued that the LRO Defendants "misconstrue[d] the essence of the alleged

---

[5] Dkt. 291 ("Amended Complaint"); Dkt. 314 (FAC); Dkt. 530 (SAC).

6

conspiracy," which Plaintiffs argued was the "delegat[ion of] their rental price and supply decisions to RealPage." Dkt. 385 at 1. However, Plaintiffs' response to the Defendants' *other* joint motion to dismiss the FAC confirmed that the purported use of non-public information in suggesting rent prices was nonetheless essential to their conspiracy theory. *See* Dkt. 388 at 1 (using analogy of "guy named Bob . . . collect[ing] *confidential* price strategy information from all the participants in a market, and then tell[ing] everybody how they should price" and calling that analogy "the exact situation in front of the Court" (emphasis added)); *id*. at 1-2 (arguing Defendants "shared their *confidential* pricing information with RealPage, who then used that information in its RMS" and "RealPage['s] RMS rely on *non-public* data they received from licensed users" (emphasis added)); *id*. at 3 (arguing that "*non-public* information" is allegedly used to "set prices" and that "Defendants [allegedly] share this *proprietary* information knowing that RealPage will use it to . . . set prices" (emphasis added)).

In the SAC, Plaintiffs have now doubled down on their allegations about RealPage's purported use of non-public information to suggest rent prices. The SAC alleges "RealPage's RMS services are the linchpin of Defendants' anticompetitive scheme" (Dkt. 530 at ¶ 208) and further alleges:

- "[RealPage users] provide RealPage with vast amounts of their *non-public proprietary data*, including their lease transactions, rent prices, and occupancy and inventory levels. *This commercially sensitive data* is fed into a common data pool, along with additional data collected by Defendant RealPage's other data-analytics, benchmarking, and rental-management software products. RealPage then *trains its machine learning and artificial intelligence algorithms across that pool of proprietary data, generating rental prices daily for each RMS user's available units* . . . ." Dkt. 530 at ¶ 13 (emphasis added).

- "Defendant RealPage requires clients to input data on actual rents paid and occupancy rates, along with detailed records of lease transactions. *This data, which would normally be kept private, is fed into RealPage's RMS algorithm(s) which sets coordinated rents* among competing property owners and managers." *Id*. at ¶ 380 (emphasis added).

- "RealPage then quickly pushes the *non-public*, daily, real-time *data* from those competitors' properties *into its algorithm to influence RealPage's pricing decisions*." Id. at ¶ 289 (emphasis added).

In short, RealPage's purported use of non-public information to suggest rent prices is one of the essential components of Plaintiffs' conspiracy theory. Yet, despite purportedly interviewing 12 confidential industry witnesses, and after repeated opportunities to amend, there are simply no allegations in the SAC that LRO ever used non-public information to suggest rent prices. To the extent Plaintiffs make generic allegations about RealPage's RMS products as a whole, those allegations are insufficient to state an antitrust claim at all, much less against LRO, especially given Plaintiffs' prior admission in the LRO Allegation. Group pleading that lumps distinct products together is just as impermissible as group pleading that lumps different defendants together. *See Total Benefits Plan. Agency, Inc.*, 552 F.3d at 436 (affirming dismissal of hub-and-spoke conspiracy where "plaintiffs only offer[ed] bare allegations without any reference to the who, what, where, when, how or why," and holding: "Generic pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy, was specifically rejected by Twombly." (cleaned up)); *see also SD3, LLC v. Black & Decker (U.S.), Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) ("A plaintiff in a § 1 case cannot assemble some collection of defendants and then make vague, non-specific allegations against all of them as a group. . . . [I]f [the complaint] fails to allege particular facts against a particular defendant, then the defendant must be dismissed."); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50-51 (2d Cir. 2007) (a complaint "without any specification of any particular activities by any particular defendant" is "nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatsoever."); *In re Mexican Gov't Bonds Antitrust Litig.*, 412 F.

8

Supp. 3d 380, 389 (S.D.N.Y. 2019) (condemning allegations that "are simply 'group pleading in another form.'").

Plaintiffs' references to the supposed "integration of LRO and YieldStar" (Dkt. 530 at ¶ 221) do not salvage the SAC because Plaintiffs concede that LRO remains a "separate" product (*id*.), but even more fundamentally, they never allege that the so-called "[e]nhancements" made to LRO involve the use of non-public information. *Id*. at ¶¶ 28, 223. While Plaintiffs cite RealPage's general terms of service for the proposition that RealPage *may collect* information *from* RealPage customers generally (but not specifically from LRO users), those terms of service do nothing to suggest that non-public information was actually *used to recommend rent prices to* LRO users. In any event, Plaintiffs admit that information that may be collected pursuant to the terms of service is "transformed or aggregated," and by implication anonymized, and thus "not specifically identifiable to the customer." Dkt. 530 at ¶ 223; *see also* ¶ 247 n.143 (alleging RealPage provided "aggregated historical reports that include data regarding at least 5 third party comparable properties (as determined by RealPage)"). Such allegations, without expressly alleging that LRO uses non-public data to recommend rent prices, do not support an inference of an antitrust conspiracy. *In re Loc. TV Advert. Antitrust Litig.*, No. 18-CV-6785, 2022 WL 13830733, at *3 (N.D. Ill. Oct. 21, 2022) ("Dissemination of *aggregated* information which avoids transactional specificity (for example, data exchanged in the form of industry averages) is generally favored in the antitrust context." (cleaned up)); *In re Citric Acid Litig.*, 191 F.3d 1090, 1098-99 (9th Cir. 1999) (affirming grant of summary judgment in price fixing case and finding that industry trade association's sharing of defendant's "production and sales" information in "aggregated" form was "as consistent with legitimate behavior as with conspiratorial behavior" and thus did not support inference of conspiracy).

## II.     Plaintiffs' LRO Allegations foreclose their claim against LRO.

The LRO Allegations are unequivocal: "Instead of relying on nonpublic data from competitors, however, LRO's algorithm used only public market data as [an] input. LRO's chief architect, Donald Davidoff, designed it that way specifically to avoid the potential antitrust concerns arising from the use of nonpublic data to coordinate prices among competitors."

By adopting the LRO Allegation from the ProPublica article titled "*Rent Going Up? One Company's Algorithm Could Be Why*,"—and including it in pleadings signed and filed by Counsel and thus subject to Federal Rule 11(b)(3)— Plaintiffs have represented that LRO's algorithm was designed not to use the very non-public information that Plaintiffs allege is one of the central tenets of their conspiracy theory. Plaintiffs have thus managed to "plead themselves out of the Courthouse" with respect to LRO. *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 458 (6th Cir. 2007) (affirming district court's 12(b)(6) dismissal of antitrust claims: "When the complaint itself gives reasons to doubt plaintiff's theory and when later pleadings confirm those doubts, it is not our task to resuscitate the claim but to put it to rest. Nothing prevents a plaintiff from pleading itself out of court, which is all that happened here." (cleaned up)). And as noted above, the SAC's attempts to lump LRO with RealPage's other products fail because –among their other infirmities—those allegations do not allege that LRO uses non-public information—which the LRO Allegations make clear LRO was designed *not* to do.

## III.     Plaintiffs cannot avoid dismissal by ignoring the LRO Allegations.

Plaintiffs cannot avoid dismissal by sweeping the LRO Allegations under the rug. While Plaintiffs have not included the LRO Allegation in their SAC, courts in the Sixth Circuit can and do consider allegations in earlier pleadings filed by the same Plaintiffs and their same Counsel. *See Pennsylvania Railroad Co. v. City of Girard*, 210 F.2d 437, 440-41 (6th Cir. 1954) (taking judicial notice of allegation in prior petition, holding: "The fact that the original petition was

withdrawn and that these statements were eliminated in the amended cross-petition is immaterial, for pleadings withdrawn or superseded by amended pleadings are admissions against the pleader in the action in which they were filed."). *Pennsylvania Railroad* remains binding authority in the Sixth Circuit and was cited by the Eastern District of Michigan in 2020 for the proposition that an allegation in a prior pleading is an "admission" for purposes of a motion challenging the adequacy of an operative pleading. *See PetroJebla, SA de C.V. v. Betron Enterprises, Inc.*, No. 19-CV-11439, 2020 WL 95802, at *4 (E.D. Mich. Jan. 8, 2020) (citing *Pennsylvania Railroad*: "[T]he Sixth Circuit has held that pleadings withdrawn or superseded by amended pleadings are admissions against the pleader in the action in which they were filed." (cleaned up)).

The Court may also consider the allegations in the ProPublica article upon which the LRO Allegation is based because the Plaintiffs still cite and rely upon that article in the SAC (as do the LRO Allegations in the original complaints). FAC ¶¶ 1 n.1 & 23; *Newsboys v. Warner Bros. Recs. Inc.*, No. 12-CV-678, 2013 WL 3524615, at *1 n.2 (M.D. Tenn. July 11, 2013) ("On a motion to dismiss, the Court may consider attachments to a complaint or documents cited in a complaint without converting the motion into a motion for summary judgment."). As a result, the Court cannot ignore the LRO Allegations.

## IV. Plaintiffs' continued failure to plead that LRO was changed to include non-public information to suggest pricing is fatal.

Plaintiffs previously admitted and continue to incorporate by reference in the SAC the ProPublica article explaining that LRO is not anti-competitive because it uses public information. Nevertheless, with an opportunity to unequivocally allege in their SAC that LRO's algorithm was later changed to use *non-public competitor* information to set rent at anti-competitive rates, an essential part of Plaintiffs' alleged conspiracy, Plaintiffs failed to do so.

11

Consequently, Plaintiffs do not plausibly state an antitrust claim involving LRO for this independent reason.

## V.    CONCLUSION

In light of the foregoing, Plaintiffs' claims as to LRO should be dismissed.

/s/ Carl W. Hittinger
Carl W. Hittinger
chittinger@bakerlaw.com
Alyse F. Stach
astach@bakerlaw.com
Tyson Y. Herrold
therrold@bakerlaw.com
BAKER & HOSTETLER LLP
1735 Market Street, Suite 3300
Philadelphia, PA 19103-7501
Telephone: (215) 568-3100

Stephen J. Zralek, BPR #018971
szralek@spencerfane.com
S. Chase Fann, BPR #036794
cfann@spencerfane.com
SPENCER FANE LLP
511 Union Street, Suite 1000
Nashville, TN 37219
Telephone: (615) 238-6300

*Counsel for Defendant Equity Residential*

/s/ Yehudah L. Buchweitz
Yehudah L. Buchweitz
yehudah.buchweitz@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8256

Jeff L. White
jeff.white@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW
Washington, DC 20036
Telephone: (202) 682-7059

R. Dale Grimes, BPR #006223
dgrimes@bassberry.com
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6244

*Counsel for Defendant Brookfield Properties
Multifamily LLC*

/s/ Marguerite Willis
Marguerite Willis (admitted *pro hac vice*)
mwillis@maynardnexsen.com
MAYNARD NEXSEN PC
104 South Main Street
Greenville, SC 29601
Telephone: (864) 370-2211

Michael A. Parente (admitted *pro hac vice*)
mparente@maynardnexsen.com
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: (803) 771-8900

Margaret M. Siller (BPR No. 039058)
msiller@maynardnexsen.com
MAYNARD NEXSEN PC
1131 4th Avenue South, Suite 320
Nashville, Tennessee 37210
Telephone: (629) 258-2253

Counsel for Defendant Bell Partners, Inc.

/s/ Jeffrey S. Cashdan
Jeffrey S. Cashdan*
Emily S. Newton*
Lohr A. Beck*
Carley H. Thompson*
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
jcashdan@kslaw.com
enewton@kslaw.com
lohr.beck@kslaw.com
chthompson@kslaw.com

*admitted *pro hac vice*

Counsel for Defendant
 ECI Group, Inc..

/s/ Benjamin R. Nagin
Benjamin R. Nagin
bnagin@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300

Counsel for Defendant ConAm Management
Corporation

/s/ John J. Sullivan
John J. Sullivan (admitted *pro hac vice*)
jsullivan@cozen.com
COZEN O'CONNOR P.C.
3 WTC, 175 Greenwich St., 55th Floor
New York, NY 10007
Telephone: (212) 453-3729

Molly Rucki (admitted *pro hac vice*)
mrucki@cozen.com
COZEN O'CONNOR P.C.
1200 19th St. NW, Suite 300
Washington, DC 20036
Telephone: (202) 912-4884

Counsel for Defendant Independence Realty
Trust, Inc.

14

/s/ Britt M. Miller
Britt M. Miller (admitted *pro hac vice*)
bmiller@mayerbrown.com
Daniel T. Fenske (admitted *pro hac vice*)
dfenske@mayerbrown.com
Matthew D. Provance (admitted *pro hac vice*)
mprovance@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 6006
Telephone: (312) 701-8663

Scott D. Carey (#15406)
scarey@bakerdonelson.com
Ryan P. Loofbourrow (#33414)
rloofbourrow@bakerdonelson.com
BAKER, DONELSON, BEARMAN, CALDWELL &
BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, TN 37203
Telephone: (615) 726-5600

*Counsel for Defendants Mid-America
Apartment Communities, Inc. and Mid-America
Apartments, L.P.*

/s/ Jeffrey C. Bank
Jeffrey C. Bank
jbank@wsgr.com
WILSON SONSINI GOODRICH & ROSATI PC
1700 K Street NW, Fifth Floor
Washington, DC 20006
Telephone: (202) 973-8800

*Counsel for Defendant Morgan Properties
Management Company, LLC*

15

<u>/s/ Andrew Harris</u>
Andrew Harris
Andrew.Harris@Levittboccio.com
LEVITT & BOCCIO, LLP
423 West 55th Street
New York, NY 10019
Telephone: (212) 801-1104

<u>/s/ Nicholas A. Gravante, Jr.</u>
Nicholas A. Gravante, Jr. (admitted *pro hac vice*)
nicholas.gravante@cwt.com
Philip J. Iovieno (admitted *pro hac vice*)
philp.iovieno@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000

*Counsel for Defendants The Related Companies, L.P. and Related Management Company, L.P.*

<u>/s/ Brent Justus</u>
Brent Justus
bjustus@mcguirewoods.com
Nick Giles
ngiles@mcguirewoods.com
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1000

*Counsel for Defendant Simpson Property Group, LLC*

<u>/s/ Jose Dino Vasquez</u>
Jose Dino Vasquez
dvasquez@karrtuttle.com
Jason Hoeft
jhoeft@karrtuttle.com
KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: (206) 223-1313

*Counsel for Defendant Security Properties Residential, LLC*

<u>/s/ Benjamin I. VandenBerghe</u>
Benjamin I. VandenBerghe
biv@montgomerypurdue.com
Kaya R. Lurie
klurie@montgomerypurdue.com
MONTGOMERY PURDUE PLLC
701 Fifth Avenue, Suite 5500
Seattle, Washington 98104-7096

*Counsel for Defendant Thrive Communities Management, LLC*

16

/s/ Craig Seebald
Jessalyn H. Zeigler
jzeigler@bassberry.com
BASS, BERRY & SIMS, PLC
150 Third Avenue South
Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6200

Craig P. Seebald (admitted *pro hac vice*)
cseebald@velaw.com
Stephen M. Medlock (admitted *pro hac vice*)
smedlock@velaw.com
Molly McDonald
mmcdonald@velaw.com
VINSON & ELKINS LLP
2200 Pennsylvania Ave., N.W.
Suite 500 West
Washington, D.C. 20037
Telephone: (202) 639-6500

Christopher W. James (admitted *pro hac vice*)
cjames@velaw.com
VINSON & ELKINS LLP
555 Mission Street
Suite 2000
San Francisco, CA 94105
Telephone: (415) 979-6900

*Counsel for Defendant Windsor Property
Management Company*

/s/ Evan Fray-Witzer
Evan Fray-Witzer
Evan@CFWLegal.com
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, MA 02116
Telephone: 617-426-0000

*Counsel for Defendants WinnCompanies LLC,
and WinnResidential Manager Corp.*

17

**<u>CERTIFICATE OF SERVICE</u>**

I, Carl W. Hittinger, served the foregoing Motion to Dismiss for Failure to State a Claim upon all counsel of record on October 9, 2023 by filing it electronically using the Court's CM/ECF system, which caused this document to be served on all Electronic Filing Users, as directed by Local Rule 5.02(c).

/s/ *Carl W. Hittinger*
Carl W. Hittinger