**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II)** | **Case No. 3:23-CV-3071**<br>**MDL-3071**<br><br>**LRO DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>**THIS DOCUMENT RELATES TO ALL CASES**<br><br>**Chief Judge Waverly D. Crenshaw, Jr.** |

**LRO DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF RULE 12(b)(6)**
**<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

**TABLE OF CONTENTS**

**Page**

ARGUMENT .................................................................................................................... 1

    I.       Plaintiffs' conspiracy theory requires the exchange of non-public
            information among competitors. ............................................................................ 1

    II.     After amending their complaint three times, Plaintiffs still do not allege
            that LRO uses non-public information to recommend rent prices ......................... 4

    III.    The LRO Allegation is an admission and does not create an issue of fact. ............ 7

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Braden v. United States*,
817 F.3d 926 (6th Cir. 2016) ...................................................................................8

*C.S. Sewell v. Amerigroup Tennessee, Inc.*,
No. 17-CV-62, 2018 WL 6591429 (M.D. Ten. Dec. 14, 2018) (Crenshaw,
C.J.) ..........................................................................................................................4

*In re Citric Acid Litig.*,
191 F.3d 1090 (9th Cir. 1999) .................................................................................5

*Gibson v. MGM Resorts International*,
No. 2:23-CV-140, 2023 WL 7025996 (D. Nev. Oct. 24, 2023) ..................... *passim*

*Hayward v. Cleveland Clinic Found.*,
759 F.3d 601 (6th Cir. 2014) ...................................................................................8

*Higginbotham v. Baxter Int'l, Inc.*,
495 F.3d 753 (7th Cir. 2007) ...................................................................................5

*Konkol v. Diebold, Inc.*,
590 F.3d 390 (6th Cir. 2009) ...................................................................................5

*In re Loc. TV Advert. Antitrust Litig.*,
No. 18-CV-6785, 2022 WL 13830733 (N.D. Ill. Oct. 21, 2022) .............................5

*Pennsylvania R. Co. v. City of Girard,*
210 F.2d 437 (6th Cir. 1954) ...................................................................................8

*PetroJebla, SA de C.V. v. Betron Enterprises, Inc.*,
No. 19-CV-11439, 2020 WL 95802 (E.D. Mich. Jan. 8, 2020) ...............................8

*United States v. Ferguson*,
868 F.3d 514 (6th Cir. 2017) ...................................................................................8

Case 3:23-md-03071   Document 635   Filed 11/21/23   Page 3 of 17 PageID #: 7040

In addition to the reasons raised in the motion to dismiss concurrently filed by all Defendants (Dkt. 592), the Court should dismiss the LRO claims because the SAC fails to allege LRO Users ever exchanged non-public information with competitors. Plaintiffs argue that a "contradictory" prior pleading cannot be considered an admission. However, the LRO Allegation and the SAC are consistent insofar as neither allege that LRO was ever changed to use any non-public information from competitors in its pricing suggestions, let alone disaggregated, identifiable competitor information. As Chief Judge Miranda Du of the District of Nevada held just last month in *Gibson v. MGM Resorts International*, "a successful hub and spoke theory of Sherman Act liability based on the use of algorithmic pricing," as Plaintiffs attempt to allege in their SAC, "depends in part on the exchange of nonpublic information between competitors through the algorithm." 2:23-CV-140, 2023 WL 7025996, at *4 (D. Nev. Oct. 24, 2023). After three bites at the apple, Plaintiffs still do not plausibly allege that LRO's algorithm uses or shares any non-public competitor information about. Thus, the Court should dismiss the SAC with prejudice to the extent it purports to allege a conspiracy involving LRO. Tr. of 8/7/2023 Hearing at 14 (giving Plaintiffs a "last and forever opportunity to amend their complaints").

## ARGUMENT

### I.     Plaintiffs' conspiracy theory requires the exchange of non-public information among competitors.

Plaintiffs argue "LRO Users continue to misconstrue the essence of the conspiracy" (Dkt. 621 at 1-2), but they are just downplaying the information-sharing component of their conspiracy theory by claiming their SAC is based only on the delegation of pricing decisions to RealPage. First, as the Motion to Dismiss concurrently filed by all the Defendants underscores, that delegation theory fails because the SAC acknowledges that, at most, RealPage *recommends* prices that Lessor Defendants can, and frequently do, reject. Dkt. 593 at 5-6, 11, 24.

Second, the purported use of non-public information in recommending prices is an essential part of Plaintiffs' theory, whether founded on delegation or not. *See* Dkt. 530 (SAC) at ¶¶ 4, 13, 227, 287, 380; Dkt. 621 at 1-2 (Plaintiffs' brief) (arguing "each Defendant agreed to delegate their rental price and supply decisions to RealPage—decisions dependent on the *proprietary data* Defendants provide RealPage with in exchange for its RMS pricing determinations" (emphasis added)); *see also* Dkt. 623 at 2 (Plaintiffs' brief in response to all Defendants' motion to dismiss (Dkt. 593)) (arguing "each of the Property Defendants provided RealPage with detailed, real-time, and *non-public information* concerning pricing . . . knowing that RealPage will use it to assist them and their competitors to set prices and control supply." (emphasis added)); Dkt. 619 at 105 (Plaintiffs' opposition to AIR's motion to dismiss) (arguing that alleged conspiracy allowed participants to "benefit from the commercially sensitive pricing and occupancy information of its horizontal competitors" and that price-setting function was "informed by AIR's horizontal competitors' sensitive pricing and lease information" and was "based on competitively sensitive information").

Absent allegations that an algorithm's pricing recommendations are based on an exchange of non-public information (at the very least), a hub-and-spoke price-fixing conspiracy is not plausible. That is the conclusion reached just last month by Chief Judge Miranda Du of the District of Nevada in *Gibson v. MGM Resorts International*, No. 2:23-CV-140, 2023 WL 7025996 (D. Nev. Oct. 24, 2023).[1] There, the plaintiffs "allege[d] that defendant hotel operators

---

[1] Plaintiffs attempt to distinguish *Gibson* in a footnote in their response to the motion to dismiss concurrently filed by all the Defendants by arguing that the complaint in *Gibson* "lack[ed]" "detailed statistical and economic analysis" and "quotes from employees of the co-conspirators." Dkt. 623 at 29 n.27. However, the *Gibson* Court did not cite any deficiencies in statistical or economic analysis, nor a lack of quotes from co-conspirators, in dismissing that complaint. And the Defendants do not challenge the SAC on those grounds.

on the Las Vegas strip unlawfully restrained trade in violation of Section 1 of the Sherman

Antitrust Act by artificially inflating the price of hotel rooms after agreeing to all use

[algorithmic] pricing software marketed by the same company, Defendant Cendyn Group, LLC."

*Id*. at *1. "The gist of the alleged conspiracy is that all of the hotel operators agreed to use a

shared set of pricing algorithms offered by the Rainmaker subsidiary of Cendyn that recommend

supracompetitive prices to the hotel operators," a "hub and spoke conspiracy." *Id*. at *1, 4.

In October 2023, Chief Judge Du granted a motion to dismiss filed by the hotel

defendants and Cendyn, the software vendor, finding the "allegations do not support" a "hub and

spoke conspiracy" because "plaintiffs never quite allege (though they suggest by implication)

that hotel operators get nonpublic information from other hotel operators by virtue of using

insufficiently specified algorithmic pricing software." *Id*. at *4. "Indeed, as [former FTC]

Commissioner Ohlhausen described it,"[2] Chief Judge Du continued, "a successful hub and spoke

theory of Sherman Act liability based on the use of algorithmic pricing depends in part on the

exchange of nonpublic information between competitors through the algorithm." *Id*. While the

hotel operations were alleged to have "provide[d] real-time pricing and supply information [to

the algorithm]," there were no allegations "explicitly say[ing] that one hotel operator ever

receive[d] confidential information belonging to another hotel operator," nor that the algorithm

used competitors' non-public information to recommend prices. *Id*. at *4-5 ("unclear whether the

pricing recommendations . . . include that confidential information fed in"). Absent these express

allegations, the Court found: "Plaintiffs attempt to create an inference of the exchange of

nonpublic information in their Complaint without actually alleging such an exchange." *Id*. at *4.

---

[2] This is the same statement by former Commissioner Ohlhausen that Plaintiffs cite in
their SAC for the notion that "multiple firms outsourcing pricing decisions to a single third-party
actor . . . raise serious antitrust concerns." Dkt. 530 at ¶ 229 & n.129.

3

**II.**     **After amending their complaint three times, Plaintiffs still do not allege that LRO uses non-public information to recommend rent prices.**

Plaintiffs claim there are "over 100 paragraphs in the [SAC] establishing" that LRO "used non-public information to suggest prices to LRO users." Dkt. 621 at 4-6. However, many of these allegations have nothing to do with how LRO actually works. *See*, *e.g.*, Dkt. 530 at ¶¶ 26-28, 200, 214-15, 219-20, 226, 247-49; *see also id*. at ¶ 9 (heavily edited and vague quotation about "work[ing] together" without alleging how LRO recommends prices). Other allegations discuss RealPage or its software generally without mentioning LRO, an inadequate form of group pleading that, considering Plaintiffs' admission in the LRO Allegation, fails to implicate LRO in a conspiracy based on algorithmic pricing recommendations. *Id*. at ¶¶ 4-5, 13, 208, 287-89, 291-92, 380; *see Gibson*, 2023 WL 7026984, at *2 (allegation that "MGM is one of Cendyn's clients and uses its revenue management software" was not specific enough to allege use of purportedly anticompetitive software where "Cendyn presumably has many products").

As for the other allegations cited by the Plaintiffs, they ask this Court to infer that LRO uses non-public information without ever actually alleging that it does. This tactic was expressly rejected in *Gibson.* 2023 WL 7025996, at *4 (rejecting plaintiffs' "attempt to create an inference of the exchange of nonpublic information in their Complaint without actually alleging such an exchange"); *see also C.S. Sewell v. Amerigroup Tennessee, Inc.*, No. 17-CV-62, 2018 WL 6591429, at *4 (M.D. Ten. Dec. 14, 2018) (Crenshaw, C.J.) (without "alleg[ing] facts from which to infer an actual agreement" "the Court concludes that [plaintiff's antitrust] allegations are legally insufficient to establish the relevant who, what, where, when, how, or why").

For example, Plaintiffs refer cryptically to "enhancements" or "modifications" to LRO without any elaboration necessary to infer LRO was changed to use non-public information. Dkt. 530 at ¶¶ 26-28, 223. Plaintiffs also cite to an allegation that says: "[P]er the Terms of Service,

4

LRO users are informed that their data may be included in pooled data sets and that they likewise may be provided with their regional competitors' pooled data." *Id.* at ¶ 290. Alleging what RealPage "may" hypothetically do with "pooled data sets" is far different than alleging what it actually does. Further, that allegation says nothing about how LRO itself works, nor whether the "pooled data" referred to therein is public or non-public. *Gibson*, 2023 WL 7025996, at *5-6 (faulting plaintiffs for failing to clearly allege whether shared information was public or non-public and declining to draw inference that it was non-public). Plaintiffs also concede that RealPage's Terms of Service require that confidential data be "aggregated" and "not specifically identifiable to the customer" (Dkt. 530 at ¶ 223), barring any inference of conspiracy even if the "pooled data" at issue were non-public.[3] For the same reason, footnote 143 in the SAC does not support an inference of conspiracy because it concerns "aggregated historical reports that include data regarding at least 5 third party comparable properties (as determined by RealPage)."

In any event, the Court should discount allegation 290 to the extent Plaintiffs cite it as to LRO because the information therein is attributed to two confidential witnesses, not identified on the public record, that are not alleged to have any knowledge about how LRO works.[4] "Witness 6" is an unidentified employee of Lessor Defendant Pinnacle that is only alleged to have interacted with YieldStar, not LRO. Dkt. 530 at ¶ 20 n.27. Similarly, "Witness 7" is an

---

[3] *In re Loc. TV Advert. Antitrust Litig.*, No. 18-CV-6785, 2022 WL 13830733, at *3 (N.D. Ill. Oct. 21, 2022); *In re Citric Acid Litig.*, 191 F.3d 1090, 1098-99 (9th Cir. 1999).

[4] *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 757 (7th Cir. 2007) (Easterbrook, Posner, and Ripple) (affirming dismissal of securities case: "It is hard to see how information from anonymous sources could be deemed compelling or how we could take account of plausible opposing inferences. Perhaps these confidential sources have axes to grind. Perhaps they are lying." (cleaned up)); *Konkol v. Diebold, Inc.*, 590 F.3d 390, 399, 400-01 (6th Cir. 2009) (abrogated, in part, on other grounds) (citing *Higginbotham* and concluding that confidential witness allegations should be discounted where the complaint does not provide sufficient detail to conclude that the witness would have information about the subject matter of the allegation).

unidentified former employee of RealPage (*id.* at ¶ 237 n.140), and later an employee of an unidentified "Seattle-based property management company," that is only alleged to have interacted with YieldStar and AIRM. *Id.* at ¶ 307. The SAC does not even allege when Witness 7 worked for RealPage—pre-2017, before RealPage acquired LRO, or after. *Id.* at ¶ 237 n.140.

Plaintiffs also string cite, without commentary, dozens of allegations purporting to identify which RealPage RMS each Lessor Defendant uses. Dkt. 621 at 2 n.3, 5. But those boilerplate allegations all state, in conclusory language without sufficient detail to support plausibility, that the Defendants' use of RealPage RMS "required [them] to share confidential, competitively sensitive pricing and lease information with [their] horizontal competitors in order to allow them to adjust their rental prices." *See, e.g.*, Dkt. 530 at ¶ 124; *Gibson*, 2023 WL 7025996, at *5 (refusing to infer a conspiracy based on "conclusory" allegation that "[h]otel operators also understand that their competitors participate in and contribute data to the pricing and forecasting services offered by Rainmaker Group."). Plaintiffs fail to elaborate how any such information was purportedly shared, whether it was aggregated per RealPage's Terms of Service, or whether any non-public information was used by LRO to recommend prices.

Finally, Plaintiffs cite allegation 221 for the proposition that "the transactional data from [the YieldStar and LRO databases] was integrated into a unitary database to be used as inputs for the pricing determinations generated for LRO and YieldStar users alike, using a combined set of commercially sensitive transactional lease data as inputs." Dkt. 621 at 5. However, that allegation does not say there was a "unitary database," nor does it say that LRO ever used "commercially sensitive transactional lease data as [an] input[]." Rather, it selectively quotes an earnings call in which RealPage's former CEO indicated that the LRO and YieldStar databases were being "integrated" to facilitate the development of AIRM—a different RMS—but that the

6

LRO and YieldStar databases "are still separate" and "will remain separate until we deploy the next generation of our revenue management," *i.e.*, AIRM. Dkt. 530 at ¶ 221. Further, allegation 221 misrepresents the earnings call it purports to cite. Not once was there any mention in that call about "the integration of LRO and YieldStar *into a unified platform*,"[5] a turn of phrase Plaintiffs appear to have concocted to shoehorn the earnings call into their conspiracy narrative.

It is telling that, despite Plaintiffs' purported access to 12 confidential witness and three opportunities to amend their pleading, Plaintiffs have still failed to allege that LRO has ever used non-public information (let alone disaggregated, identifiable competitor data) to recommend prices. *See Gibson*, 2023 WL 7025996, at *4-5 (faulting plaintiffs for "vague," "ambiguous," and "conclusory" allegations that failed to clearly plead whether the information used by the pricing algorithm at issue was public or non-public). Even if Plaintiffs have arguably alleged that LRO Users share unidentified information with RealPage, the SAC does not allege that non-public information was used to suggest LRO prices, nor that disaggregated information was shared with competitors. *Id*. at *5 (declining to infer a conspiracy where hotel operators shared data with algorithmic pricing software, finding: "This allegation says confidential information is fed in, but less clearly out, of the algorithms.").

### III.    The LRO Allegation is an admission and does not create an issue of fact.

The LRO Allegation does not create an "evidentiary issue" (Dkt. 621 at 10), nor do the LRO Defendants argue "that the [SAC] cannot be squared with that Allegation," because the SAC does not allege that LRO's algorithm was ever changed to use non-public information in recommending prices. Thus, the SAC does not contradict Plaintiffs' prior admission that LRO

---

[5] As alleged in the SAC, ¶ 221 n.116, this earnings call can be accessed at https://seeking alpha.com/article/4244097-realpage-inc-s-rp-ceo-steve-winn-on-q4-2018-results-earnings-call-transcript.

was designed to use only public information. It was Plaintiffs that raised the LRO Allegation in many of their initial complaints. Having previously admitted that LRO was designed to use only public information, Plaintiffs cannot now avoid alleging that it was later changed to use non-public information, an essential component of their conspiracy theory.

Even if the SAC and the LRO Allegation were somehow contradictory, Plaintiffs fail to cite any cases overruling the Sixth Circuit's *Pennsylvania Railroad* holding. *See Pennsylvania R. Co. v. City of Girard*, 210 F.2d 437, 440-41 (6th Cir. 1954) that courts may consider allegations from prior pleadings as admissions against the pleader in the context of motions at the pleading stage. *See United States v. Ferguson*, 868 F.3d 514, 515 (6th Cir. 2017) ("One panel of this court may not overrule the decision of another panel; only the *en banc* court or the United States Supreme Court may overrule the prior panel."). *Pennsylvania Railroad* was cited as recently as 2020 for the proposition that an allegation in a prior pleading is an "admission" for purposes of a motion for judgment on the pleadings. *PetroJebla, SA de C.V. v. Betron Enterprises, Inc.*, No. 19-CV-11439, 2020 WL 95802, at *3 (E.D. Mich. Jan. 8, 2020). It thus remains binding case law in the Sixth Circuit unless the Sixth Circuit sitting *en banc* overrules it.

Finally, Plaintiffs' argument that amended pleadings supersede original pleadings misses the point. This is not a dispute about which complaint is the operative pleading. The LRO Defendants are merely stating that prior pleadings are judicial admissions—black letter law in this Circuit for nearly 70 years. And the cases cited by Plaintiffs for the proposition that "amended pleadings supersede original pleadings" (Dkt. 621 at 9-10) acknowledge "recognized exceptions" to that rule. *See e.g.*, *Braden v. United States*, 817 F.3d 926, 930 (6th Cir. 2016); *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617-18 (6th Cir. 2014) (same).

8

DATED: November 21, 2023

Respectfully submitted,

/s/ *Carl W. Hittinger*

Carl W. Hittinger
chittinger@bakerlaw.com
Alyse F. Stach
astach@bakerlaw.com
Tyson Y. Herrold
therrold@bakerlaw.com
BAKER & HOSTETLER LLP
1735 Market Street, Suite 3300
Philadelphia, PA 19103-7501
Telephone: (215) 568-3100

Stephen J. Zralek, BPR #018971
szralek@spencerfane.com
S. Chase Fann, BPR #036794
cfann@spencerfane.com
SPENCER FANE LLP
511 Union Street, Suite 1000
Nashville, TN 37219
Telephone: (615) 238-6300

*Counsel for Defendant Equity Residential*

/s/ *Marguerite Willis*

Marguerite Willis (admitted *pro hac vice*)
mwillis@maynardnexsen.com
MAYNARD NEXSEN PC
104 South Main Street
Greenville, SC 29601
Telephone: (864) 370-2211

Michael A. Parente (admitted *pro hac vice*)
mparente@maynardnexsen.com
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: (803) 771-8900

Margaret M. Siller (BPR No. 039058)
msiller@maynardnexsen.com
MAYNARD NEXSEN PC
1201 Villa Place, Suite 103
Nashville, Tennessee 37212
Telephone: (629) 258-2253

*Counsel for Defendant Bell Partners, Inc.*

9

/s/ Yehudah L. Buchweitz
Yehudah L. Buchweitz
yehudah.buchweitz@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8256

Jeff L. White
Jeff.white@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW
Washington, DC 20036
Telephone: (202) 682-7059

R. Dale Grimes, BPR #006223
dgrimes@bassberry.com
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6244

*Counsel for Defendant Brookfield Properties
Multifamily LLC*

/s/ Jeffrey S. Cashdan
Jeffrey S. Cashdan (admitted *pro hac vice*)
jcashdan@kslaw.com
Emily S. Newton (admitted *pro hac vice*)
enewton@kslaw.com
Lohr A. Beck (admitted *pro hac vice*)
lohr.beck@kslaw.com
Carley H. Thompson (admitted *pro hac vice*)
chthompson@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia 30309
Telephone: (404) 572-4600

*Counsel for Defendant ECI Management,
LLC*

/s/ Lynn H. Murray
Lynn H. Murray
lhmurray@shb.com
Maveric Ray Searle
msearle@shb.com
SHOOK, HARDY & BACON L.L.P.
111 S. Wacker Dr., Suite 4700
Chicago, IL 60606
Telephone: (312) 704-7766

/s/ Benjamin R. Nagin
Benjamin R. Nagin
bnagin@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300

*Counsel for Defendant ConAm Management
Corporation*

10

/s/ John J. Sullivan
John J. Sullivan
jsullivan@cozen.com
COZEN O'CONNOR P.C.
3 WTC, 175 Greenwich St., 55th Floor
New York, NY 10007
Telephone: (212) 453-3729

*Counsel for Defendant Independence Realty Trust, Inc.*

/s/ Britt M. Miller
Britt M. Miller (admitted *pro hac vice*)
bmiller@mayerbrown.com
Daniel T. Fenske (admitted *pro hac vice*)
dfenske@mayerbrown.com
Matthew D. Provance (admitted *pro hac vice*)
mprovance@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 6006
Telephone: (312) 701-8663

Scott D. Carey (#15406)
scarey@bakerdonelson.com
Ryan P. Loofbourrow (#33414)
rloofbourrow@bakerdonelson.com
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, TN 37203
Telephone: (615) 726-5600

*Counsel for Defendant Mid-America Apartment Communities, Inc.*

/s/ Jeffrey C. Bank
Jeffrey C. Bank
jbank@wsgr.com
WILSON SONSINI GOODRICH & ROSATI PC
1700 K Street NW, Fifth Floor
Washington, DC 20006
Telephone: (202) 973-8800

*Counsel for Defendant Morgan Properties Management Company, LLC*

/s/ Andrew Harris
Andrew Harris
Andrew.Harris@Levittboccio.com
LEVITT & BOCCIO, LLP
423 West 55th Street
New York, NY 10019
Telephone: (212) 801-1104

/s/ Nicholas A. Gravante, Jr.
Nicholas A. Gravante, Jr. (admitted *pro hac vice*)
nicholas.gravante@cwt.com
Philip J. Iovieno (admitted *pro hac vice*)
philip.iovieno@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000

*Counsel for The Related Companies, Inc. and Related Management Company, L.P.*

/s/ Jose Dino Vasquez
Jose Dino Vasquez
dvasquez@karrtuttle.com
Jason Hoeft
jhoeft@karrtuttle.com
KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: (206) 223-1313

*Counsel for Defendant Security Properties, Inc.*

/s/ Brent Justus
Brent Justus
bjustus@mcguirewoods.com
Nick Giles
ngiles@mcguirewoods.com
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1000

*Counsel for Defendant Simpson Property Group, LLC*

/s/ Benjamin I. VandenBerghe
Benjamin I. VandenBerghe
biv@montgomerypurdue.com
Kaya R. Lurie
klurie@montgomerypurdue.com
MONTGOMERY PURDUE PLLC
701 Fifth Avenue, Suite 5500
Seattle, Washington 98104-7096

*Counsel for Defendant Thrive Communities Management, LLC*

/s/ Craig Seebald
Jessalyn H. Zeigler
jzeigler@bassberry.com
BASS, BERRY & SIMS, PLC
150 Third Avenue South
Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6200

Craig P. Seebald (admitted *pro hac vice*)
cseebald@velaw.com
Stephen M. Medlock (admitted *pro hac vice*)
smedlock@velaw.com
VINSON & ELKINS LLP
2200 Pennsylvania Ave., N.W.
Suite 500 West
Washington, D.C. 20037
Telephone: (202) 639-6500

Christopher W. James (admitted *pro hac vice*)
cjames@velaw.com
VINSON & ELKINS LLP
555 Mission Street
Suite 2000
San Francisco, CA 94105
Telephone: (415) 979-6900

*Counsel for Defendant Windsor Property Management Company*

/s/ Evan Fray-Witzer
Evan Fray-Witzer
Evan@CFWLegal.com
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, MA 02116
Telephone: 617-426-0000

*Counsel for Defendants WinnCompanies LLC, and WinnResidential Manager Corp.*

**CERTIFICATE OF SERVICE**

I, Carl W. Hittinger, served the foregoing Reply in Support of Motion to Dismiss for

Failure to State a Claim upon all counsel of record on November 21, 2023 by filing it

electronically using the Court's CM/ECF system, which caused this document to be served on all

Electronic Filing Users, as directed by Local Rule 5.02(c).


/s/ *Carl W. Hittinger*
Carl W. Hittinger