UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-MD-3071<br>MDL No. 3071<br><br>This Document Relates to:<br>3:23-cv-00792 (M.D. Tenn.)<br><br>Chief Judge Waverly D. Crenshaw, Jr. |

### REPLY IN SUPPORT OF TREV MANAGEMENT II LLC'S MOTION TO DISMISS

Plaintiffs insist they can state a conspiracy claim against TREV Management II LLC (TREV) without alleging that it "independently joined the cartel." Opp. 3 (Dkt. 615). It suffices, they say, that TREV allegedly has a "strong guiding presence" in a partially owned entity, B.HOM Student Living (B.HOM), which supposedly conspired with other lessors by using RealPage software. *Id.* 2-3; FASC ¶¶ 3-4, 26 (Dkt. 527). Plaintiffs' position is radical and incorrect: the Supreme Court has long held that each conspirator must have "a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984). Even Plaintiffs' cases recognize that a plaintiff must show that each separate entity named as a defendant "engaged in anticompetitive conduct." *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 633 (9th Cir. 2018).

Plaintiffs do not come close to alleging that TREV engaged in anticompetitive conduct. They focus solely on TREV's relationship with B.HOM, an entity in which TREV owns just a 50-percent stake. Plaintiffs do not plead facts demonstrating that TREV is involved in B.HOM's day-to-day operations, much less that TREV joined an alleged price-fixing conspiracy among

lessors. At most, Plaintiffs allege "circumstances typical of any parent-subsidiary relationship," which is not enough. *See Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 323 (6th Cir. 2014). The Court should dismiss with prejudice Plaintiffs' claims against TREV.

## ARGUMENT

I. **Since Plaintiffs Do Not Plead TREV's Independent Participation in the Alleged Conspiracy, They Do Not Establish That TREV is Liable.**

To state an antitrust conspiracy claim, Plaintiffs must plead facts that "specify how each defendant was involved in the alleged conspiracy." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 445 (6th Cir 2012) (cleaned up). This standard applies to *each* defendant, as courts across the Sixth Circuit have held.[1] Ignoring these cases, Plaintiffs make several flawed and unsupported arguments suggesting that the normal rules do not apply here because TREV has a partial ownership stake in B.HOM, an entity that allegedly uses RealPage software.

*First*, Plaintiffs invoke *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), in which the Supreme Court held that a parent and its wholly owned subsidiary are incapable of conspiring with one another because they are a "single economic unit." *Id.* at 771-72 & n.18. Plaintiffs insist that "[w]hen two related entities act as one economic entity, the law allows plaintiffs to plead their antitrust claims based on the enterprise's 'aggregate conduct.'" Opp. 2. Plaintiffs' argument turns *Copperweld* on its head. If adopted, nearly every owner would be liable

---

[1] *See, e.g.*, *Med. Ctr. at Elizabeth Place v. Premier Health Partners*, 2016 WL 9460026, at *26 (S.D. Ohio 2016) (requiring "independent participation in an illegal agreement . . . to create liability" for subsidiary's acts); *In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 906-07 (N.D. Ohio 2010) ("Plaintiffs must allege facts establishing the [parent's] direct and independent participation in the alleged conspiracy.") (cleaned up); *Am. Copper & Brass, Inc. v. Donald Boliden AB*, 2006 WL 8434928, at *3 (W.D. Tenn. 2006) ("Generally without evidence that both entities were involved in the challenged conduct, a court will decline to presume that a parent company participates in every decision or action of its subsidiary.").

for its partially owned subsidiaries' antitrust violations. The "elementary corporate law principle that each corporation is a separate legal unit," *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2089 (2020), would be a dead letter.

Plaintiffs do not cite any cases permitting a plaintiff to use *Copperweld* as a sword in the way they seek to here. In truth, Plaintiffs' cases only confirm their obligation to specify how TREV itself participated in the alleged conspiracy. In *Lenox*, for example, the Tenth Circuit held that under *Section 2* of the Sherman Act (not at issue here), related entities' conduct could be considered in "aggregate"—but that to hold a particular defendant liable, the plaintiff still must show that "*each* defendant independently participated in the enterprise's [anticompetitive] scheme." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1231, 1237 (10th Cir. 2017) (emphasis added). And in *Arandell*, the Ninth Circuit held that a corporate parent cannot be liable under Section 1 unless it "engaged in anticompetitive conduct" and "conspired . . . to restrain trade" *in its own right*. 900 F.3d at 633-34. As the court explained, *Copperweld* "does not supply a theory of unbounded vicarious liability for the *acts* of legally distinct entities." *Id.* at 633.

Plaintiffs' backward reading of *Copperweld* also contravenes black-letter corporate law that a subsidiary's misconduct cannot be imputed to its parent absent "evidence to support piercing the corporate veil," such as facts supporting "an alter ego theory of liability." *Hyland*, 771 F.3d at 322-23 (rejecting "liability of [parent] for actions taken by [its subsidiary] in the alleged price-fixing conspiracy"); *see United States v. Bestfoods*, 524 U.S. 51, 61-64 (1998) (it is "ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries," except "when (but only when) the veil may be pierced") (cleaned up). Yet Plaintiffs do not even argue that the veil-piercing theory applies here. *See* Opp. 7.

*Second*, Plaintiffs ultimately acknowledge that they must "allege involvement that is 'more than mere ownership.'" *Id.* (quoting *Jones v. Varsity Brands, LLC*, 618 F. Supp. 3d 713, 723 (W.D. Tenn. 2022)). But neither *Varsity Brands* nor any other case cited by Plaintiffs holds that *anything* "more than mere ownership" is *sufficient* to hold a parent liable for conspiracy. To the contrary, *Varsity Brands* recognizes that "a plaintiff asserting a § 1 or § 2 claim under the Sherman Act must still provide 'evidence that each defendant *independently participated* in the enterprise's scheme to justify holding that defendant liable as part of the enterprise.'" 618 F. Supp. 3d at 723 (quoting *Arandell*, 900 F.3d at 633) (emphasis added); *see also id.* at 723-25 (declining to dismiss claims against holding-company defendants that "actively participated" in the alleged monopolization scheme, such as by funding allegedly unlawful acquisitions, "maintaining control of . . . rule making bodies," and, as part of Varsity Brand's leadership, entering into allegedly anticompetitive exclusive-dealing arrangements).

Plaintiffs cite no case absolving them of pleading TREV's independent participation in the alleged conspiracy. Absent plausible allegations that TREV knowingly and "independently joined the cartel" (Opp. 3), the Court must dismiss Plaintiffs' claims against TREV.

## II. Because Plaintiffs' Allegations About TREV Are Typical of Any Parent-Subsidiary Relationship, They Do Not Establish That TREV Conspired.

Plaintiffs do not plead any facts showing that TREV "conspired . . . to restrain trade." *Arandell*, 900 F.3d at 634. The sum total of their factual allegations against TREV are (1) that TREV "wholly own[s]" B.HOM (FASC ¶ 57), which, as Plaintiffs now appear to concede, is factually incorrect (Mot. 7 n.4 (Dkt. 579); *see* Opp. 5-6 (conceding error)); (2) that TREV "utiliz[es] its fully integrated property management team through its owned affiliate B.HOM" (FASC ¶ 30); and (3) that TREV is "vertically-integrated" and "hands-on" (Opp. 2).

That TREV allegedly has a "fully integrated property management team" or is "hands-on" says little, if anything, about its involvement in B.HOM's day-to-day business—and it comes nowhere near establishing that TREV "independently participated" in a price-fixing conspiracy. *Varsity Brands*, 618 F. Supp. 3d at 723. Plaintiffs make "no factual allegations . . . as to how or when" TREV "joined the alleged conspiracy," *In re Cal. Title Ins. Antitrust Litig.*, 2009 WL 1458025 at *7 (N.D. Cal. 2009), nor do they allege that TREV "took specific action, separate and apart from [B.HOM's] actions, that generally furthered" the conspiracy, *Reg'l Multiple Listing Serv. of Minn., Inc. v. Am. Home Realty Network, Inc.*, 9 F. Supp. 3d 1032, 1045 (D. Minn. 2014). Plaintiffs do not plead "any connection or contract between [TREV] [and] any other alleged co-conspirator," *Title Ins.*, 702 F. Supp. 2d at 908, and their allegations of "vertical integration and overlapping owners and management" do not "directly connect [TREV] to the conspiracy," *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 747-48 (E.D. Pa. 2011).

At most, Plaintiffs' allegations suggest that TREV has some general involvement in or oversight over B.HOM's business affairs, which is "typical of any parent and subsidiary." *See In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 689 (E.D. Pa. 2009) (cleaned up). But under Sixth Circuit precedent, a "parent may articulate and formulate general policies and procedures for its subsidiaries; may coordinate and cooperate and regularly share financial and operating information; may approve its subsidiaries' budgets; and may be directly involved in financing and micro-management of its subsidiaries"—all "[w]ithout incurring liability" for the subsidiary's acts—because those acts "merely show[] circumstances typical of any parent-subsidiary relationship." *Hyland*, 771 F.3d at 323. That is fatal to Plaintiffs' claims.

## CONCLUSION

The Court should dismiss with prejudice Plaintiffs' claims against TREV.

Dated: November 22, 2023

Respectfully submitted,

*/s/ Ian Simmons*
Ian Simmons
isimmons@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300

Stephen J. McIntyre
smcintyre@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071
Telephone: (213) 430-6000

*Counsel for Defendant TREV Management II LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record registered on the CM/ECF system.

DATED: November 22, 2023

*/s/ Ian Simmons*
Ian Simmons
isimmons@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300

*Counsel for Defendant TREV Management II LLC*