# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | **Case No. 3:23-MD-3071**<br>**MDL No. 3071**<br><br>**Chief Judge Waverly D. Crenshaw, Jr.**<br><br>**This Document Relates to:**<br><br>    **3:23-cv-00332**<br>    **3:23-cv-00357**<br>    **3:23-cv-00378**<br>    **3:22-cv-01082**<br>    **3:23-cv-00979**<br>    **3:23-cv-00410**<br>    **3:23-cv-00413**<br>    **3:23-cv-00440**<br>    **3:23-cv-00552**<br>    **3:23-cv-00742** |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS MULTIFAMILY PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

I.  ARGUMENT .................................................................................................................. 1

    A.  Plaintiffs Concede They Have Engaged in Group Pleading .................................. 1

    B.  Plaintiffs Plead No Direct Evidence of Conspiracy................................................. 3

    C.  Plaintiffs Plead No Plausible Circumstantial Evidence of Conspiracy ................ 4

        i.  Plaintiffs Have Not Alleged Parallel Conduct ........................................ 4

        ii.  Plaintiffs Do Not Plausibly Allege "Plus Factors" ................................. 7

    D.  The Rule of Reason Applies ................................................................................. 10

        i.  Plaintiffs Fail to Allege a Plausible Relevant Market............................. 11

        ii.  Plaintiffs Fail to Allege Anticompetitive Effects.................................... 12

    E.  Plaintiffs Fail to Plead Facts Showing Antitrust Standing.................................. 14

    F.  Plaintiffs' State-Law Claims Fail......................................................................... 14

II.  CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ariz. v. Maricopa Cnty. Med. Soc'y*,
   457 U.S. 332 (1982)............................................................................................11

*In re Automotive Parts Antitrust Litig.*,
   2013 WL 2456586 (E.D. Mich. June 6, 2013)..........................................................3

*In re Baby Food Antitrust Litig.*,
   166 F.3d 112 (3d Cir. 1999)..................................................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................2, 7

*Blankenship v. City of Crossville*,
   2017 WL 4641799 (M.D. Tenn. Oct. 17, 2017) ...................................................13

*In re Blood Reagents Antitrust Litig.*,
   756 F. Supp. 2d 623 (E.D. Pa. 2010) ...................................................................5

*In re Blue Cross Blue Shield Antitrust Litig.*,
   2017 WL 2797267 (N.D. Ala. June 28, 2017).......................................................12

*Brillhart v. Mutual Med. Ins., Inc.*,
   768 F.2d 196 (7th Cir. 1985) ..............................................................................11

*In re Broiler Chicken Antitrust Litig.*,
   290 F. Supp. 3d 772 (N.D. Ill. 2017) ....................................................................5

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993)...........................................................................................13

*Catalano, Inc. v. Target Sales, Inc.*,
   446 U.S. 643 (1980)...........................................................................................10

*Cataldo v. U.S. Steel Corp.*,
   676 F.3d 542 (6th Cir. 2012) ..............................................................................15

*Comcast Corp. v. Nat'l Ass'n African American-Owned Media*,
   140 S. Ct. 1009 (2020).......................................................................................13

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
   313 F. Supp. 3d 931 (N.D. Ill. 2018) ....................................................................4

*Debjo Sales, LLC v. Houghton Mifflin Harcourt Publ'g Co.*,
   2015 WL 1969380 (D.N.J. Apr. 29, 2015) ..........................................................12

*Deom v. Walgreen Co.*,
   591 F. App'x 313 (6th Cir. 2014) .........................................................................7

*In re Diisocyanates Antitrust Litig.*,
   2020 WL 1140244 (W.D. Pa. Mar. 9, 2020) .........................................................7

# TABLE OF AUTHORITIES
(continued)

**Page**

*In re Domestic Airline Travel Antitrust Litig.*,
221 F. Supp. 3d 46 (D.D.C. 2016) ..................................................................5

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust
Litig.*,
28 F.4th 42 (9th Cir. 2022) ...........................................................................9

*Erie Cnty., Ohio v. Morton Salt, Inc.*,
702 F.3d 860 (6th Cir. 2012) .......................................................................10

*In re Flat Glass Antitrust Litig.*,
385 F.3d 350 (3d Cir. 2004) ...........................................................................9

*Fox v. Saginaw Cnty.*,
67 F.4th 284 (6th Cir. 2023) ........................................................................15

*Gelboim v. Bank of Am. Corp.*,
823 F.3d 759 (2d Cir. 2016) .........................................................................10

*Gibson v. MGM Resorts Int'l*,
2023 WL 7025996 (D. Nev. Oct. 24, 2023) ...........................................1, 2, 6, 8

*Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.*,
48 F.4th 656 (6th Cir. 2022) ...........................................................................7

*Hyland v. HomeServices of Am., Inc.*,
771 F.3d 310 (6th Cir. 2014) ...........................................................................4

*Interstate Circuit, Inc. v. United States*,
306 U.S. 208 (1939) .........................................................................2, 3, 7, 11

*Kleen Prods. LLC v. Georgia-Pacific LLC*,
910 F.3d 927 (7th Cir. 2018) ......................................................................6, 9

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
551 U.S. 877 (2007) .......................................................................................11

*In re Local TV Advert. Antitrust Litig.*,
2022 WL 3716202 (N.D. Ill. Aug. 29, 2022) ...................................................7

*In re Local TV Advert. Antitrust Litig.*,
2020 WL 6557665 (N.D. Ill. Nov. 6. 2020) .................................................5, 8

*Markson v. CRST Int'l, Inc.*,
2019 WL 6354400 (C.D. Cal. Mar. 7, 2019) ..................................................3

*Meyer v. Kalanick*,
174 F. Supp. 3d 817 (S.D.N.Y. 2016) ..........................................................3, 9

*In re Musical Instruments & Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015) ...................................................................9, 10

Page

*In re Nat'l Prescription Opiate Litig.*,
    2019 WL 3737023 (N.D. Ohio June 13, 2019).........................................................3

*NicSand, Inc. v. 3M Co.*,
    507 F.3d 442 (6th Cir. 2007) ..................................................................................13

*In re Polyurethane Foam Antitrust Litig.*,
    152 F. Supp. 3d 968 (N.D. Ohio 2015).......................................................................9

*Rhodes v. Ocwen Loan Servicing, LLC*,
    44 F. Supp. 3d 137 (D. Mass. 2014) .......................................................................14

*Royal Drug Co. v. Grp. Life & Health Ins. Co.*,
    737 F.2d 1433 (5th Cir. 1984) ................................................................................11

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
    801 F.3d 412 (4th Cir. 2015) ....................................................................................7

*In re Se. Milk Antitrust Litig.*,
    739 F.3d 262 (6th Cir. 2014) .............................................................................10, 12

*In re Smith*,
    866 F.2d 576 (3d Cir. 1983)....................................................................................14

*In re Sulfuric Acid Antitrust Litig.*,
    703 F.3d 1004 (7th Cir. 2012) ................................................................................10

*Tichy v. Hyatt Hotels Corp.*,
    376 F. Supp. 3d 821 (N.D. Ill. 2019) .........................................................................9

*Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*,
    530 F.3d 204 (3d Cir. 2008)................................................................................4, 11

*Toys "R" Us, Inc. v. FTC*,
    221 F.3d 928 (7th Cir. 2000) ................................................................................2, 3

*Trails End Campground, LLC v. Brimstone Recreation, LLC*,
    2015 WL 388313 (Tenn. Ct. App. Jan. 29, 2015) .....................................................14

*In re Travel Agent Comm'n Antitrust Litig.*,
    583 F.3d 896 (6th Cir. 2009) ...........................................................................3, 4, 10

*United States v. Apple, Inc.*,
    791 F.3d 290 (2d Cir. 2015)..........................................................................2, 10, 11

*United States v. Blue Cross Blue Shield of Mich.*,
    809 F. Supp. 2d 665 (E.D. Mich. 2011)....................................................................12

*United States v. Conn. Nat'l Bank*,
    418 U.S. 656 (1974)...............................................................................................11

iv

# TABLE OF AUTHORITIES
(continued)

**Page**

*United States v. Socony-Vacuum Oil Co.*,
   310 U.S. 150 (1940)................................................................................................10

*United States v. U.S. Gypsum Co.*,
   438 U.S. 422 (1978)..................................................................................................8

*Uretek USA, Inc. v. Applied Polymerics, Inc.*,
   2011 WL 6029964 (E.D. Va. Dec. 5, 2011) ...........................................................12

## Statutes

73 Pa. Stat. § 201-3 .......................................................................................................14

S.C. § 39-3-30 ................................................................................................................14

Despite having yet another chance to amend—their "last and forever opportunity" (ECF 499 at 14:20–22)—Plaintiffs still cannot connect any Defendant to any supposed horizontal conspiracy. Plaintiffs instead double down on the same implausible theory that was in their prior complaints: that Defendants' mere use of RealPage RMS makes them conspirators, without regard for when or why Defendants licensed any of the three products or how they were used. As Defendants observed previously, Plaintiffs have not cited a single case in the Sherman Act's history that finds a "conspiracy" on similar facts or anything remotely close. Indeed, last month another court dismissed a complaint (filed by the same counsel representing Plaintiffs here) that alleged hotels in Las Vegas were conspiring to fix prices merely because they use revenue management software. *Gibson v. MGM Resorts Int'l*, 2023 WL 7025996, at *3–4, *6 (D. Nev. Oct. 24, 2023). This Court should do the same, and dismiss with prejudice.[1]

## I. ARGUMENT

### A. Plaintiffs Concede They Have Engaged in Group Pleading

Plaintiffs admit that the SAMC must include "enough factual allegations to *connect each defendant* to *the conspiracy*." Opp. at 27–28 (emphases added). They claim they have satisfied this standard—and alleged "detail for each Defendant"—in a span of almost 130 paragraphs in the SAMC. *Id.* at 27. Those paragraphs, however, repeat the same six allegations nearly verbatim for each Lessor Defendant and concern each Lessor Defendant's *vertical* agreement with RealPage to license one of its RMS products. *See* SAMC ¶¶ 67–193. Plaintiffs never allege what any Lessor Defendant supposedly did to join a *horizontal agreement* with its competitors to fix prices. *Id.*

---

[1] Due to Plaintiffs' voluntary dismissal of 45 named plaintiffs whom they did not name in this MDL (*see* Dkt. No. 563), only 12 of the 43 actions originally consolidated into this MDL remain—10 actions related to the multifamily complaint and two actions related to the student housing complaint.

1

And Plaintiffs' reliance on putative "public statements from . . . Defendants confirming the nature and effect of the agreement" does not help. Opp. at 27. None of the statements alleged—which concern only a handful of the 49 Lessor Defendants' dealings with RealPage—hints at any price-fixing agreement among Lessor Defendants.

Lacking plausible factual allegations showing the requisite "meeting of the minds" among Lessor Defendants (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)), Plaintiffs try a different tactic: they argue mere "use of RealPage RMS products to set prices demonstrates a conscious commitment to participate in the cartel." Opp. at 29. In other words, simply using RealPage RMS after 2016, without anything else, is equivalent to joining a cartel—even if a lessor was using it before 2016 as a legitimate "advisory product" (SAMC ¶ 212), and regardless of how "actively" a lessor accepted its pricing recommendations after 2016 (Opp. at 20). This is group pleading at its worst. And it ignores the software's many unilateral benefits that incentivize an individual lessor to license it—benefits that Plaintiffs acknowledge existed before 2016. Mot. at 6–7.

*Gibson v. MGM Resorts International*—which Plaintiffs bury in a misleading, cursory footnote—confirms the SAMC's failings. Opp. at 29 n.27. That case challenged hotels' use of revenue management software. Plaintiffs claim the court dismissed that case "for failing to allege that the defendant's algorithm used sensitive information." *Id.* In reality, the court found that the plaintiffs failed to allege "what software Hotel Operators all agreed to use, who entered into any purported agreement, and when they entered into any agreement." *Gibson*, 2023 WL 7025996, at *4. The same is true here, and the SAMC should be dismissed for the same reason. Mot. at 6–7.

Nor do *Interstate Circuit, Inc. v. United States*, 306 U.S. 208 (1939), *Toys "R" Us, Inc. v. FTC* ("*TRU*"), 221 F.3d 928 (7th Cir. 2000), or *United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015), save Plaintiffs. Plaintiffs do not address Defendants' arguments about these cases, in which

2

a handful of competitors engaged in the same conduct that was contrary to their individual interests after receiving specific and contemporaneous communications about doing so. *See, e.g.*, *Interstate*, 306 U.S. at 222–23. The Sixth Circuit highlighted these distinctions in *Travel Agent*, rebuking plaintiffs there for "fail[ing] to acknowledge the salient evidence of unlawful collusion presented in *Interstate*." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 906 (6th Cir. 2009). Such evidence is missing here. Indeed, Plaintiffs concede that the use of RealPage RMS comports with each Lessor Defendants' unilateral interests (*see* Mot. at 12–13) and base their claims on public marketing materials emphasizing that RealPage RMS sometimes recommends reducing prices. *See, e.g.*, ECF 594-1 (Whittaker Decl. Ex. A) at 3–4. *Interstate*, *TRU*, and *Apple* also involved "an abrupt shift from the past." *TRU*, 221 F.3d at 935. But Plaintiffs' charts here show the opposite: *no change* before and after 2016, when the alleged conspiracy supposedly began. *See, e.g.*, SAMC ¶ 22 fig. 2. And unlike the powerful "ringmaster" hubs in those cases (*TRU*, 221 F.3d at 934), Plaintiffs concede not only that RealPage cannot force Lessor Defendants to accept price recommendations, but also that Lessor Defendants often reject them. Mot. at 5, 23–24. *Interstate*, *TRU*, and *Apple* are thus distinguishable, as are the other cases Plaintiffs cite.[2]

## B. Plaintiffs Plead No Direct Evidence of Conspiracy

Plaintiffs allege no direct evidence of a horizontal agreement among Lessor Defendants. Direct evidence is "tantamount to an acknowledgement of guilt" and "requires *no inferences* to

---

[2] *In re Automotive Parts Antitrust Litig.*, 2013 WL 2456586, at *3 (E.D. Mich. June 6, 2013) (defendants had pled guilty to bid-rigging); *Meyer v. Kalanick*, 174 F. Supp. 3d 817, 824 (S.D.N.Y. 2016) ("plaintiff has alleged that drivers agree with Uber to charge certain fares with the clear understanding that all other Uber drivers are agreeing to charge the same fares"); *In re Nat'l Prescription Opiate Litig.*, 2019 WL 3737023, at *3 (N.D. Ohio June 13, 2019) (plaintiffs satisfied heightened particularity requirement); *Markson v. CRST Int'l, Inc.*, 2019 WL 6354400, at *3 (C.D. Cal. Mar. 7, 2019) (plaintiffs pled specific "terms of Defendants' agreement," "communications to maintain and continue the agreement," and "resulting hiring decisions").

3

establish the proposition or conclusion being asserted." *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 318 (6th Cir. 2014) (emphasis added). Nothing in the SAMC meets that standard.

Plaintiffs' putative "direct evidence" is a hodgepodge of disconnected contentions: (i) that RealPage RMS allowed users to work as a "community" in their pricing; (ii) Defendants "outsourced" daily pricing decisions to RealPage (although they admittedly always retained discretion over pricing); (iii) some Defendants used RealPage price advisory services; and (iv) users switched from an "occupancy focus"—whatever that vague phrase may mean—to a "rent growth" strategy. Opp. at 12–13. Plaintiffs also claim that RealPage encouraged Defendants to create user groups and that some Defendants followed RealPage's pricing recommendations frequently, supposedly leading to rent increases. *Id.* at 13–14. But none of this is an explicit acknowledgement of any horizontal agreement to set rents. *Hyland*, 771 F.3d at 318. Indeed, *Hyland* rejected a contention that statements made by competing real estate brokers at a public hearing were direct evidence of price-fixing—statements far more direct than anything Plaintiffs allege here. *Id.* at 319.[3]

### C. Plaintiffs Plead No Plausible Circumstantial Evidence of Conspiracy

#### i. Plaintiffs Have Not Alleged Parallel Conduct

Plaintiffs fail to allege a "pattern of uniform business conduct" that would support a finding of conspiracy. *Travel Agent*, 583 F.3d at 903.

*First*, Plaintiffs' graphs do not show "parallel increases in price." Opp. at 16. Instead, they show: (1) increases in average annual asking rents beginning as early as 2013, among *both* Lessor

---

[3] *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 220 (3d Cir. 2008), does not help Plaintiffs. There, the defendants admitted to "gentleman's agreements" not to compete on price or in each other's territories. *Id.* Likewise, *In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 950–51 (N.D. Ill. 2018) alleged an express agreement between defendants. Plaintiffs make no comparable allegations here.

Defendants and *non-defendants* (*see* SAMC ¶¶ 21–22 figs. 1 & 2); and (2) significant variation in rates and direction of rates (up and down) charged by Lessor Defendants year over year. Mot. at 16. Unable to explain how this constitutes parallel pricing, Plaintiffs attack a straw man, claiming that Defendants require Plaintiffs "to allege daily parallel pricing, down to the property level." Opp. at 16. Not so; Defendants argue only that Plaintiffs must allege parallelism in *actual prices* offered by Lessor Defendants (not general trends based on aggregated annual averages). Of course, since Plaintiffs bought "Defendant-specific pricing data" that allowed for a "detailed analysis" and calculation of yearly average pricing (*id.* at 16, 32), they presumably have *actual asking prices* during those years. But they chose not to allege them—much less that Lessor Defendant's actual asking prices moved in parallel—and thus have not alleged the "consistently and nearly simultaneous[]" or "perfectly coordinated " prices they claim. SAMC ¶ 337; *cf. In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623, 626–30 (E.D. Pa. 2010) (alleging "near-parallel price movements" in same *month*); *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 791 (N.D. Ill. 2017) (two extended periods of production cuts among defendants sufficiently alleged conduct "that took place at the same time").

*Second*, while claiming they "tied their statistical and economic analysis to other plausible factual allegations about the cartel" (Opp. at 17), they do not cite (or have) any allegations to support this claim.[4] There are no alleged facts to connect Lessor Defendants' separate adoption of distinct RMS products over a 20-year period to any conspiracy. Mot. at 14. Plaintiffs concede

---

[4] The complaints in Plaintiffs' cases alleged facts to connect challenged conduct to alleged conspiracies. *Cf. In re Local TV Advert. Antitrust Litig.*, 2020 WL 6557665, at *8 (N.D. Ill. Nov. 6, 2020) (direct competitor communications and consent decrees supported allegations of increased prices); *In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 59 (D.D.C. 2016) (executives statements close in time about need for capacity discipline accompanied by limited capacity growth).

that before 2016, Lessor Defendants used the software as a legitimate "advisory product," and never explain how use of the software changed thereafter. SAMC ¶ 212. Nor does the SAMC allege that any Lessor Defendant based a purported price increase on a recommendation from RealPage, much less that any two Lessor Defendants followed the same or similar recommendations. Mot. at 16. This is fatal, given that the SAMC acknowledges that Lessor Defendants frequently reject RealPage pricing recommendations. SAMC ¶ 15 (recommendations accepted "up to" 80-90% of the time); *id.* ¶ 286 (noting some lessors' "low acceptance" and "high variance rate"). *See Gibson*, 2023 WL 7025996, at *4 (that defendants were not "required to accept the prices that the . . . pricing software recommends to them[] further undermin[ed] the plausibility of [Plaintiffs'] conclusory allegations that Defendants entered into a conspiracy to charge higher prices by accepting the prices recommended to them by algorithmic pricing software").

*Third*, Plaintiffs now argue the parallel conduct is not adoption of RealPage RMS, but a "shift" to a "price-over-volume" strategy that "lead to explosive rent growth." Opp. at 15–16, 19. But Plaintiffs' graphs do not show any dramatic change (and certainly no explosive growth) in pricing beginning in 2016; rather, they show gradual increases in average asking rents (for Defendants and non-defendants alike) *beginning in 2013. See, e.g.*, SAMC ¶¶ 21 fig.1, 22 fig.2, 339 fig.11; *cf. Kleen Prods. LLC v. Georgia-Pacific LLC*, 910 F.3d 927, 937 (7th Cir. 2018) ("A continuation of a historic pattern . . . does not plausibly allow one to infer the existence of a cartel."). Further, the SAMC never says when any Lessor Defendant shifted to a "price-over-volume" strategy or how this "shift" was "parallel" among them, especially those with "a low acceptance rate of RealPage's pricing recommendations." SAMC ¶ 286. And Plaintiffs' claim that they do not have to show "simultaneous action" misses the mark. Opp. at 16. They allege *no* specific actions by each Lessor that would support an inference of conspiracy, in stark contrast to

the cases Plaintiffs cite.[5]

### ii. Plaintiffs Do Not Plausibly Allege "Plus Factors"

A plaintiff pleads a conspiracy only by alleging facts "tending to exclude the possibility of independent conduct." *Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.*, 48 F.4th 656, 664 (6th Cir. 2022). Plaintiffs are wrong that "innocent explanations" for Defendants' actions are irrelevant. Opp. at 11 nn.14 & 23. "[W]hen factual allegations [are] at most consistent with both conduct that is actionable and conduct that is not, more is required to 'nudge the claims across the line from conceivable to plausible.'" *Deom v. Walgreen Co.*, 591 F. App'x 313, 320 (6th Cir. 2014) (quoting *Twombly*, 550 U.S. at 570) (cleaned up). None of Plaintiffs' alleged plus factors tend to exclude independent conduct.

**Information Sharing**: Plaintiffs admit RealPage does not share one competitor's transaction data with other competitors. Opp. at 24–25. But they contend this does not matter because RealPage used Lessors' transaction-level data to "set collusive prices *on behalf* of the other" Lessors. *Id.* This argument has no basis in the SAMC. Plaintiffs acknowledge RealPage does not "set" any prices—it recommends prices that Lessor Defendants individually decide to accept or reject. Mot. at 4–5; *see also* SAMC ¶ 13. Nor could RealPage's alleged use of Lessors' data to generate price recommendations—including price *decreases*—be a plus factor: it is alleged to be a feature of RealPage's RMS that helps Lessors maximize revenues (SAMC ¶ 252), a goal that serves each Lessor Defendant's independent self-interest. *Cf. In re Local TV Advert. Antitrust*

---

[5] *Interstate Circuit*, 306 U.S. at 221–22 (distributors imposed minimum price after receiving same letter demanding it); *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 420 (4th Cir. 2015) (defendants met and in "a matter of months" refused to work with plaintiff); *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 190–91 (2d Cir. 2012) (defendants ceased dealing with plaintiff within days of each other); *In re Diisocyanates Antitrust Litig.*, 2020 WL 1140244, at *3 (W.D. Pa. Mar. 9, 2020) (alleging "coordinated parallel conduct, price increases, plant closures and supply disruptions" and communications "prior to pricing announcements").

*Litig.*, 2022 WL 3716202, at *6 (N.D. Ill. Aug. 29, 2022) (dismissing claims that defendant used competitor data in product that "helped companies adjust prices in response to market behavior to maximize their profits" (cleaned up)).

Plaintiffs' concession that "transaction-level data" is not shared with competitors (Opp. at 25) also undermines Plaintiffs' reliance on *TV Advertising*.  There, "conduits" allegedly provided *competitor-specific* data to all competitors, which "facilitated the [competitors'] ability to exchange competitively sensitive information *with one another*."  *TV Advert.*, 2020 WL 6557665, at *9.  Plaintiffs admit that is not true here.  *Cf. Gibson*, 2023 WL 7025996, at *6 (providing data to software vendor not a plus factor absent allegations that hotels "exchange nonpublic information *with each other*" through their use of that same software" (emphasis added)).

While Plaintiffs assert that RealPage discloses information during quarterly "PTM" meetings (Opp. at 25), the SAMC itself concedes that RealPage at most shares only "pooled" or "blended" data at those meetings (SAMC ¶¶ 239–47).  Similarly, general allegations that RealPage encouraged Lessors to exchange information (Opp. at 25) do not allege a years-long price-fixing agreement.  *See United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978).  And alleging that lessors can "choose" which data is used in recommending prices (Opp. at 25) does not indicate that any lessor had any competitor-specific data allowing them to police an agreement.

**Actions Against Self-Interest**: Lessor Defendants supposedly acted against their self-interest by "prioritizing rent increases" and "restricting supply" rather than focusing on occupancy.  Opp. at 21–22.  Yet Plaintiffs do not actually allege that Defendants restricted supply—instead, the sources the SAMC cites show the software's ability to *reduce* vacancies.  Mot. at 17.  Regardless, increasing prices is consistent with unilateral efforts to maximize revenue, which Plaintiffs concede is the software's aim.  Opp. at 22 (RealPage "helped [Lessors] . . . maximize

revenues"). Companies may increase prices at the expense of quantity to maximize profits. *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 49–50 (9th Cir. 2022) ("economically rational" to "focus on profitability" instead of market share.). That RealPage allegedly "pushes you to go to places that you wouldn't have gone if you weren't using it" does not imply "collective action" (Opp. at 21); it is consistent with rational individual actions to "maximize revenues."

Nor is *In re Flat Glass Antitrust Litig.*, 385 F.3d 350 (3d Cir. 2004) to the contrary. Opp. at 21. There, "no evidence" correlated "the increase in list prices . . . with any changes in costs or demand." *Flat Glass*, 385 F.3d at 362. Here, Plaintiffs' own figures show average rent increases both before and after the putative conspiracy began. *See, e.g.*, SAMC ¶¶ 21 fig.1, 22 fig.2, 339 fig.11. Industry-wide price increases, starting *before* any alleged conspiracy, do not suggest collusion. *See Kleen*, 910 F.3d at 937; *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1197 (9th Cir. 2015). And none of Plaintiffs' cases suggest such price increases are against Lessors' unilateral self-interest.[6]

**Other Alleged Plus Factors**: Plaintiffs' remaining alleged plus factors are, at most, neutral and consistent with independent conduct. The alleged motive to collude—to "increase revenues by up to 7%" (Opp. at 23)—is a "legitimate understandable motive to increase profits." *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 137 (3d Cir. 1999). Plaintiffs fail to allege who participated in any of the supposed "face-to-face meetings" and "trade associations" that Plaintiffs deem

---

[6] *See In re Polyurethane Foam Antitrust Litig.*, 152 F. Supp. 3d 968, 989 (N.D. Ohio 2015) (direct exchange of highly sensitive price information can be plus factor); *Meyer*, 174 F. Supp. 3d at 824 (drivers' contracting with Uber with "clear understanding that all other Uber drivers are agreeing to charge the same fares" supports inference of agreement); *Tichy v. Hyatt Hotels Corp.*, 376 F. Supp. 3d 821, 836 (N.D. Ill. 2019) (parallel decision to stop bidding on competitors' keywords suggested they irrationally relinquished "opportunities to take business away from" others).

"opportunities to collude" (Opp. at 23–24), but even if they did, such allegations are consistent with proper business activities and reflect the lawful purpose of trade associations. *See Travel Agent*, 583 F.3d at 910–11 ("[G]ather[ing] at industry trade association meetings" is "more likely explained by . . . lawful, free-market behavior"). That RealPage allegedly presented on "rent price optimization" and using revenue management "to set above-market pricing" (Opp. at 24) are similarly consistent with Lessors' individual efforts to increase revenues. *See Musical Instruments*, 798 F.3d at 1196 ("[M]ere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest [conspiracy]."). Finally, Plaintiffs' generic allegations about various putative submarkets—with high entry barriers, inelastic demand, and fungibility (Opp. at 25–26)—"are simply descriptions of the market, not allegations of anything that the defendants did." *Erie Cnty. v. Morton Salt, Inc.*, 702 F.3d 860, 870 (6th Cir. 2012).

### D. The Rule of Reason Applies

Because "[i]t is a bad idea to subject a novel way of doing business . . . to per se treatment" (*In re Sulfuric Acid Antitrust Litig.*, 703 F.3d 1004, 1008 (7th Cir. 2012)), the Sixth Circuit's "automatic presumption in favor of the rule of reason standard" applies here. *In re Se. Milk Antitrust Litig.*, 739 F.3d 262, 273 (6th Cir. 2014) (quotation marks omitted). Plaintiffs argue that "[c]ourts are perfectly familiar with price-fixing" and RMS is merely the "machinery employed" here. Opp. at 7. But calling the use of software "price-fixing" does not make it so, especially when Plaintiffs acknowledge that such use is in each Defendant's unilateral interest. *See* Mot. at 17–18; *see also* SAMC ¶ 300. Nor is it correct, as Plaintiffs contend, that an alleged restraint's "purpose and effect . . . dictate the mode of analysis" regardless of judicial experience with it. Opp. at 7. Plaintiffs' cases involved naked horizontal agreements courts have long deemed *per se*

illegal.[7]

Even if Plaintiffs had plausibly alleged horizontal collusion through vertical agreements[8]—they do not—the rule of reason would apply. *Leegin Creative Leather Prods, Inc. v. PSKS, Inc.*, 551 U.S. 877, 893 (2007); *Toledo*, 530 F.3d at 225. Nor do *TRU*, *Apple*, and *Interstate Circuit* suggest otherwise. *Leegin*, 551 U.S. at 893–94 (citing *TRU* as an example of a vertical arrangement subject to the rule of reason); *Apple*, 791 F.3d at 323 (*per se* rule applies to allegations of a "horizontal agreement that Apple organized among the Publisher Defendants," not to Apple's "vertical" agreements with each publisher). *Interstate Circuit* was not a *per se* case. 306 U.S. at 230–32, 232; *see Royal Drug Co. v. Grp. Life & Health Ins. Co.*, 737 F.2d 1433, 1437 (5th Cir. 1984) (the "analysis [in *Interstate Circuit*] was predicated upon the rule of reason").

### i. Plaintiffs Fail to Allege a Plausible Relevant Market

Plaintiffs' MSA-based submarkets fail. As an initial matter, Plaintiffs ignore *United States v. Conn. Nat'l Bank*'s admonition that an antitrust plaintiff "cannot rely, without more, on Standard Metropolitan Statistical Areas ("MSAs") as defining the geographic markets," including because they may not be "sufficiently refined" and thus lead to "inaccuracies." 418 U.S. 656, 670 (1974). Plaintiffs' proposed markets only underscore the problem. For example, Plaintiffs' alleged Tennessee submarket implausibly assumes a renter in Robertson County would view an apartment 85 miles away in Maury County as substitutable. *See* SAMC ¶ 410. Plaintiffs try to minimize the

---

[7] *See United States v. Socony-Vacuum Oil Co*., 310 U.S. 150, 222 (1940) (horizontal agreement to set "floor" for gasoline prices); *Catalano, Inc. v. Target Sales, Inc*., 446 U.S. 643, 648–49 (1980) (agreement to fix credit terms); *Apple*, 791 F.3d at 327 (horizontal group boycott); *Gelboim v. Bank of Am. Corp*., 823 F.3d 759, 771 (2d Cir. 2016) (agreement to fix interest rates); *Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 339 (1982) (agreement to fix maximum fees charged).

[8] To the extent Plaintiffs argue vertical relationships are confined to the distribution context (Opp. at 8), they are wrong. *Brillhart v. Mutual Med. Ins., Inc.*, 768 F.2d 196, 199–200 (7th Cir. 1985) (agreement between buyer and sellers was vertical; collecting cases).

issue, characterizing it as a mere dispute over "whether a renter in the New York, NY submarket would consider . . . Jersey City, NJ as an adequate substitute." Opp. at 34. But the MSA markets alleged are far broader—indeed Plaintiffs allege that the New York rental market extends into *Pennsylvania*. *See* SAMC ¶ 522. Plaintiffs' markets are implausible.

Plaintiffs' claim that courts have recognized MSAs as relevant geographic markets also fails. Opp. at 34. They rely on two cases alleging that MSAs were relevant healthcare markets because patients could seek alternative healthcare providers in the same region—a much different issue than *housing*. *See id.* at 35 n.33 (citing *United States v. Blue Cross Blue Shield of Mich.*, 809 F. Supp. 2d 665, 673 (E.D. Mich. 2011); *In re Blue Cross Blue Shield Antitrust Litig.*, 2017 WL 2797267, at *11 (N.D. Ala. June 28, 2017)). The same goes for Plaintiffs' reliance on the SSNIP test. Agencies use that standard to determine the "smallest area" in which a hypothetical monopolist "that controls all the suppliers in a proposed market" could profitably increase prices. *Se. Milk*, 739 F.3d at 277–78. Here, Plaintiffs did not start with the narrowest possible market, as required; they started with expansive geographic areas because they were MSAs.

Plaintiffs are also wrong that an overbroad market definition does not warrant dismissal. Opp. at 35. Courts dismiss claims premised on overbroad markets. *E.g.*, *Uretek USA, Inc. v. Applied Polymerics, Inc.*, 2011 WL 6029964, at *5 (E.D. Va. Dec. 5, 2011); *Debjo Sales, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 2015 WL 1969380, at *6 (D.N.J. Apr. 29, 2015).

### ii. Plaintiffs Fail to Allege Anticompetitive Effects

Plaintiffs plead neither direct nor indirect allegations of anticompetitive effects. Regarding direct allegations, Plaintiffs' arguments about "an increase in rental prices" fail. Opp. at 31–32. Plaintiffs' alleged analyses show only that some Lessor Defendants' aggregate average prices went up year-over-year (*see, e.g.*, SAMC ¶ 22 fig.2), while at the same time, average prices for *all*

*lessors* (not just Defendants) went up, including during a period of historic inflation (*see, e.g.*, SAMC ¶ 21 fig.1). Allegations that average prices went up for *all lessors* do not support a plausible inference that Lessor Defendants' prices were supracompetitive (instead, they show Lessor Defendants' pricing was in line with market prices). *See Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 237 (1993).[9] Nor do statements about increasing *revenue* help Plaintiffs. Revenue is not price, and the software can, *inter alia*, increase revenue by reducing vacancies (or prices). Mot. at 33–34.

Plaintiffs have not pleaded plausible indirect allegations either. Central to Plaintiffs' market-share calculations is the claim that RealPage has a two-thirds share of "the RMS market." *E.g.*, SAMC ¶ 412. That claim is based on a misreading of an investor transcript cited in the SAMC. Mot. at 35–36. While Plaintiffs claim the Court must credit the "inference" they draw from that transcript (Opp. at 37 & n.36), the Court is not "bound to accept . . . unwarranted inferences, including allegedly inferable 'facts' or conclusions which contradict documentary evidence appended to, or referenced within, the plaintiff's complaint." *Blankenship v. City of Crossville*, 2017 WL 4641799, at *2 (M.D. Tenn. Oct. 17, 2017). And Plaintiffs do not explain how a transcript that says RealPage and one other competitor together accounted for only *thirty percent of RMS users* supports an inference that RealPage has *sixty-six percent* of the alleged RMS market.[10]

---

[9] Plaintiffs argue that they are not required to "prove" supracompetitive pricing until trial. Opp. at 32–33. That may be, but they must plausibly *allege* it now. *See Comcast Corp. v. Nat'l Ass'n African American-Owned Media*, 140 S. Ct. 1009, 1014 (2020) (a plaintiff must plead "at the outset of a lawsuit . . . what [it] must prove in the trial").

[10] Plaintiffs also seek to rely on the SSNIP test to show market power (Opp. at 36–37), but that *hypothetical* test reveals nothing about Lessor Defendants' market shares.

### E.    Plaintiffs Fail to Plead Facts Showing Antitrust Standing

Plaintiffs concede they do not meet the "threshold" requirement of antitrust standing. *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007). They admit they do not allege that *any* rent they paid to *any* Lessor Defendant was set using RealPage RMS products. Opp. at 37–38. This is fatal. Although Plaintiffs argue they "could not be reasonably expected to know [this], at the pleading stage" (*id.*), they cite no authority excusing them from alleging *antitrust injury*—i.e., that at least *one* of the rents *each* Plaintiff paid was set via the purportedly anticompetitive mechanism of the alleged conspiracy. That pleading obligation is important here because Plaintiffs admit Lessor Defendants reject RMS recommendations *at least* 10–20% of the time (SAMC ¶ 15), and that some do so often (SAMC ¶ 286). Thus, Plaintiffs fail to allege any link between their own rents and the challenged conduct.

### F.    Plaintiffs' State-Law Claims Fail

Plaintiffs misstate their claims and the law. They argue Section 9.2 of Pennsylvania's UTPCPL "provides 'a private remedy for all violations . . . which might otherwise escape remedy'" (Opp. at 38 n.38 (alteration in original)), but the case they rely on cabins that private remedy to "*violations of Section 3*" of the UTPCPL (*In re Smith*, 866 F.2d 576, 583 (3d Cir. 1983)), which does not proscribe antitrust violations. 73 Pa. Stat. § 201-3. Plaintiffs argue Georgia recognizes a common-law tort for restraint of trade, but sought relief under Georgia's statute, which they concede doesn't allow a private right of action. SAMC ¶ 721. Plaintiffs try to distinguish *Trails End Campground, LLC v. Brimstone Recreation, LLC*, 2015 WL 388313 (Tenn. Ct. App. Jan. 29, 2015), but the court held that the TTPA does not apply to a "lease of property." *Id.* at *11. Plaintiffs ignore South Carolina Code § 39-3-30, which limits claims "*described in Section § 39-3-10*" (which Plaintiffs sued under) *to goods*. S.C. § 39-3-30 (emphasis added). Plaintiffs also

claim they did not need to send the pre-suit demand letter required by Massachusetts law because they made claims under Section 11, but that provision applies only to business claims. *Rhodes v. Ocwen Loan Servicing, LLC*, 44 F. Supp. 3d 137, 143 (D. Mass. 2014).

Plaintiffs do not dispute that certain state-law claims are time-barred, but argue those issues "generally" should not be decided on a motion to dismiss. Opp. at 40. But dismissal is appropriate where "the allegations in the complaint affirmatively show that the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (affirming dismissal of time-barred claims).

Finally, Plaintiffs say they have standing to assert claims under the laws of states where they neither lived nor were injured, but *Fox v. Saginaw Cnty.*, 67 F.4th 284 (6th Cir. 2023), held that named plaintiffs cannot rely on absent class members for standing; *representative plaintiffs* must have standing *for each claim* they bring. *Id.* at 295. Plaintiffs do not.

## II. CONCLUSION

The Court should dismiss Plaintiffs' claims with prejudice.

DATED: November 22, 2023

Respectfully submitted,

/s/ Jay Srinivasan

Jay Srinivasan (admitted *pro hac vice*)
jsrinivasan@gibsondunn.com
Daniel G. Swanson (admitted *pro hac vice*)
dswanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7430

Stephen Weissman (admitted *pro hac vice*)
sweissman@gibsondunn.com
Michael J. Perry (admitted *pro hac vice*)
mjperry@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 955-8678

Stephen C. Whittaker (admitted *pro hac vice*)
cwhittaker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1361 Michelson Drive
Irvine, CA 92612
Telephone: (212) 351-2671

Ben A. Sherwood (admitted *pro hac vice*)
bsherwood@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-2671

Thomas H. Dundon (SBN: 004539)
tdundon@nealharwell.com
NEAL & HARWELL, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
Telephone: (615) 244-1713

*Counsel for Defendant RealPage, Inc.*

/s/ Edwin Buffmire

Edwin Buffmire
ebuffmire@jw.com
Michael Moran
mmoran@jw.com
JACKSON WALKER LLP
2323 Ross Ave., Suite 600
Dallas, TX 75201
Telephone: (214) 953-6000

Kevin Fulton
kevin@fultonlg.com
THE FULTON LAW GROUP PLLC
7676 Hillmont St., Suite 191
Houston, TX 77040
Telephone: (713) 589-6964

*Counsel for Defendant Allied Orion Group, LLC*

/s/ Katie A. Reilly

Katie A. Reilly
reilly@wtotrial.com
Michael T. Williams
williams@wtotrial.com
Judith P. Youngman
youngman@wtotrial.com
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: (303) 244-1800

Mark Bell
Mark.Bell@hklaw.com
HOLLAND & KNIGHT LLP
Nashville City Center
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 850-8850

*Counsel for Defendant Apartment Income REIT Corp., d/b/a AIR Communities*

/s/ Danny David
Danny David
danny.david@bakerbotts.com
BAKER BOTTS LLP
910 Louisiana Street
Houston, TX 77002
Telephone: (713) 229-4055

James Kress (*pro hac vice* forthcoming)
james.kress@bakerbotts.com
Paul Cuomo (*pro hac vice* forthcoming)
paul.cuomo@bakerbotts.com
BAKER BOTTS LLP
700 K. Street, NW
Washington, DC 20001
Telephone: (202) 639-7884

John R. Jacobson (#14365)
jjacobson@rjfirm.com
Milton S. McGee, III (#24150)
tmcgee@rjfirm.com
RILEY & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
Telephone: (615) 320-3700

*Counsel for Defendant Avenue5 Residential, LLC*

/s/ Ian Simmons
Ian Simmons
isimmons@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5196

Stephen McIntyre
smcintyre@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000

*Counsel for Defendants BH Management Services, LLC*

/s/ *Marguerite Willis*

Marguerite Willis (admitted *pro hac vice*)
mwillis@maynardnexsen.com
MAYNARD NEXSEN PC
104 South Main Street
Greenville, SC 29601
Telephone: (864) 370-2211

Michael A. Parente (admitted *pro hac vice*)
mparente@maynardnexsen.com
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: (803) 771-8900

Margaret M. Siller (BPR No. 039058)
msiller@maynardnexsen.com
MAYNARD NEXSEN PC
1131 4th Avenue South, Suite 320
Nashville, TN 37210
Telephone: (629) 258-2253

*Counsel for Defendant Bell Partners, Inc.*

/s/ *Edwin Buffmire*

Edwin Buffmire
ebuffmire@jw.com
Michael Moran
mmoran@jw.com
JACKSON WALKER LLP
2323 Ross Ave., Suite 600
Dallas, TX 75201
Telephone: (214) 953-6000

*Counsel for Defendants Trammell Crow
Residential Company and Crow Holdings, LP*

/s/ James D. Bragdon

James D. Bragdon
jbragdon@gejlaw.com
Sam Cowin
scowin@gejlaw.com
GALLAGHER EVELIUS & JONES LLP
218 N. Charles St., Suite 400
Baltimore, MD 21201
Telephone: (410) 727-7702

Philip A. Giordano (admitted *pro hac vice*)
philip.giordano@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1775 I Street NW
Washington, DC 20007
Telephone: (202) 721-4776

Charles E. Elder, BPR # 038250
celder@bradley.com
BRADLEY ARANTBOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, TN 37203
Telephone: (615) 252-3597

*Counsel for Defendant*
*Bozzuto Management Company*

/s/ Yehudah L. Buchweitz

Yehudah L. Buchweitz
yehudah.buchweitz@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8256

Jeff L. White
jeff.white@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW
Washington, DC 20036
Telephone: (202) 682-7059

R. Dale Grimes, BPR #006223
dgrimes@bassberry.com
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6244

*Counsel for Defendant Brookfield Properties*
*Multifamily LLC*

/s/ Danielle R. Foley
Danielle R. Foley (admitted *pro hac vice*)
drfoley@venable.com
Andrew B. Dickson (admitted *pro hac vice*)
abdickson@venable.com
Victoria L. Glover (admitted *pro hac vice*)
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, D.C. 20001
Telephone: (202) 344-4300

*Counsel for Defendant CH Real Estate Services, LLC*

/s/ Benjamin R. Nagin
Benjamin R. Nagin
bnagin@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300

*Counsel for Defendant ConAm Management Corporation*

/s/ Lynn H. Murray
Lynn H. Murray
lhmurray@shb.com
Maveric Ray Searle
msearle@shb.com
SHOOK, HARDY & BACON L.L.P.
111 S. Wacker Dr., Suite 4700
Chicago, IL 60606
Telephone: (312) 704-7766

Ryan Sandrock
rsandrock@shb.com
SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 544-1944

Laurie A. Novion
lnovion@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 559-2352

*Counsel for Defendant Camden Property Trust*

/s/ Ronald W. Breaux

Ronald W. Breaux
Ron.Breaux@haynesboone.com
Bradley W. Foster
Brad.Foster@haynesboone.com
HAYNES AND BOONE LLP
2801 N. Harwood Street, Suite 2300
Dallas, TX 75201
Telephone: (214) 651-5000
Fax: (214) 200-0376

*Counsel for Defendant CONTI Texas Organization, Inc. d/b/a CONTI Capital*

/s/ Kenneth Reinker

Kenneth Reinker
kreinker@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1522

Joseph M. Kay
jkay@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2745

*Counsel for Defendant Pinnacle Property Management Services, LLC*

/s/ Todd R. Seelman

Todd R. Seelman
todd.seelman@lewisbrisbois.com
Thomas L. Dyer
thomas.dyer@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
1700 Lincoln Street, Suite 4000
Denver, CO 80203
Telephone: (720) 292-2002

*Counsel for Defendant Cortland Management, LLC*

/s/ Ann MacDonald

Ann MacDonald
Ann.macdonald@afslaw.com
Barry Hyman
Barry.hyman@afslaw.com
ARENTFOX SCHIFF LLP
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Telephone: (312) 258-5500

*Counsel for Defendant CWS Apartment Homes, LLC*

/s/ Bradley C. Weber

Bradley C. Weber (admitted *pro hac vice*)
bweber@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Telephone: (214) 740-8497

*Counsel for Defendant Dayrise Residential, LLC*

21

/s/ Charles H. Samel
Charles H. Samel
charles.samel@stoel.com
Edward C. Duckers
ed.duckers@stoel.com
STOEL RIVES LLP
1 Montgomery Street, Suite 3230
San Francisco, CA 94104
Telephone: (415) 617-8900

George A. Guthrie
gguthrie@wilkefleury.com
WILKE FLEURY LLP
621 Capitol Mall, Suite 900
Sacramento, CA 95814
Telephone: (916) 441-2430

*Counsel for Defendant FPI Management, Inc.*

.

/s/ Carl W. Hittinger
Carl W. Hittinger
chittinger@bakerlaw.com
Alyse F. Stach
astach@bakerlaw.com
Tyson Y. Herrold
therrold@bakerlaw.com
BAKER & HOSTETLER LLP
1735 Market Street, Suite 3300
Philadelphia, PA 19103-7501
Telephone: (215) 568-3100

Stephen J. Zralek, BPR #018971
szralek@spencerfane.com
S. Chase Fann, BPR #036794
cfann@spencerfane.com
SPENCER FANE LLP
511 Union Street, Suite 1000
Nashville, TN 37219
Telephone: (615) 238-6300

*Counsel for Defendant Equity Residential*

/s/ Leo D. Caseria
Leo D. Caseria
lcaseria@sheppardmullin.com
Helen C. Eckert
heckert@sheppardmullin.com
SHEPPARD MULLIN RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006
Telephone: (202) 747-1925

Arman Oruc
aoruc@goodwinlaw.com
GOODWIN PROCTER, LLP
1900 N Street, NW
Washington, DC 20036
Telephone: (202) 346-4000

*Counsel for Defendant Essex Property Trust, Inc.*

/s/ *Michael D. Bonanno*

Michael D. Bonanno (admitted *pro hac vice*)
mikebonanno@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
1300 I St. NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8225

Christopher Daniel Kercher (admitted *pro hac vice*)
christopherkercher@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor,
New York, New York 10010
Telephone: (212) 849-7000

Andrew Gardella, Esq. (TN Bar #027247)
agardella@martintate.com
MARTIN, TATE, MORROW & MARSTON P.C.
315 Deaderick Street, Suite 1550
Nashville, TN 37238
Telephone: (615) 627-0668

*Counsel for Defendant Highmark Residential, LLC*

/s/ *Cliff A. Wade*

Cliff A. Wade
cliff.wade@bakerlopez.com
Chelsea L. Futrell
chelsea.futrell@bakerlopez.com
BAKER LOPEZ PLLC
5728 LBJ Freeway, Suite 150
Dallas, Texas 75240
Telephone: (469) 206-9384

*Counsel for Defendant Knightvest Residential*

/s/ *Michael M. Maddigan*

Michael M. Maddigan
michael.maddigan@hoganlovells.com
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4727

William L. Monts, III
william.monts@hoganlovells.com
Benjamin F. Holt
benjamin.holt@hoganlovells.com
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-6440

Joshua C. Cumby (BPR No. 37949)
joshua.cumby@arlaw.com
F. Laurens Brock (BPR No. 17666)
larry.brock@arlaw.com
Rocklan W. King, III (BPR No. 30643)
rocky.king@arlaw.com
ADAMS AND REESE LLP
1600 West End Avenue, Suite 1400
Nashville, TN 37203
Telephone: (615) 259-1450

*Counsel for Defendant Greystar Management Services, LLC*

/s/ Gregory J. Casas
Gregory J. Casas (admitted *pro hac vice*)
casasg@gtlaw.com
Emily W. Collins (admitted *pro hac vice*)
Emily.Collins@gtlaw.com
GREENBERG TRAURIG, LLP
300 West 6th Street, Suite 2050
Austin, TX 78701-4052
Telephone: (512) 320-7200

Robert J. Herrington (admitted *pro hac vice*)
Robert.Herrington@gtlaw.com
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: (310) 586-7700

Becky L. Caruso (admitted *pro hac vice*)
Becky.Caruso@gtlaw.com
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Telephone: (973) 443-3252

/s/ Ryan T. Holt
Ryan T. Holt (No. 30191)
rholt@srvhlaw.com
Mark Alexander Carver (No. 36754)
acarver@srvhlaw.com
SHERRARD ROE VOIGT & HARBISON, PLC
150 Third Avenue South, Suite 1100
Nashville, TN 37201
Telephone: (615) 742-4200

*Counsel for Defendant Lincoln Property
Company*

/s/ John J. Sullivan
John J. Sullivan (admitted *pro hac vice*)
jsullivan@cozen.com
COZEN O'CONNOR P.C.
3 WTC, 175 Greenwich St., 55th Floor
New York, NY 10007
Telephone: (212) 453-3729

*Counsel for Defendant Independence Realty
Trust, Inc.*

/s/ Eliot Turner
Eliot Turner
eliot.turner@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100,
Houston, TX 77010
Telephone: (713) 651-5151

*Counsel for Defendant Kairoi Management,
LLC*

/s/ *Michael W. Scarborough*

Michael W. Scarborough (admitted *pro hac vice*)
mscarborough@velaw.com
Dylan I. Ballard (admitted *pro hac vice*)
dballard@velaw.com
VINSON & ELKINS LLP
555 Mission Street, Suite 2000
San Francisco, CA 94105
Telephone: (415) 979-6900

*Counsel for Defendant Lantower Luxury Living, LLC*

/s/ *Britt M. Miller*

Britt M. Miller (admitted *pro hac vice*)
bmiller@mayerbrown.com
Daniel T. Fenske (admitted *pro hac vice*)
dfenske@mayerbrown.com
Matthew D. Provance (admitted *pro hac vice*)
mprovance@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 6006
Telephone: (312) 701-8663

Scott D. Carey (#15406)
scarey@bakerdonelson.com
Ryan P. Loofbourrow (#33414)
rloofbourrow@bakerdonelson.com
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, TN 37203
Telephone: (615) 726-5600

*Counsel for Defendants Mid-America Apartment Communities, Inc. and Mid-America Apartments, L.P.*

/s/ *Judith A. Zahid*

Judith A. Zahid (admitted *pro hac vice*)
jzahid@zellelaw.com
Heather T. Rankie (admitted *pro hac vice*)
hrankie@zellelaw.com
ZELLE LLP
555 12th Street, Suite 1230
Oakland, CA 94607
Telephone: (415) 633-1916

*Counsel for Defendant Prometheus Real Estate Group, Inc.*

/s/ Jeffrey C. Bank
Jeffrey C. Bank
jbank@wsgr.com
WILSON SONSINI GOODRICH & ROSATI PC
1700 K Street NW, Fifth Floor
Washington, DC 20006
Telephone: (202) 973-8800

*Counsel for Defendant Morgan Properties Management Company, LLC*

/s/ Richard P. Sybert
Richard P. Sybert (WSBA No. 8357)
rsybert@grsm.com
GORDON REES SCULLY MANSUKHANI
701 Fifth Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 321-5222

*Counsel for Defendant Rose Associates Inc. and First Communities Management, Inc.*

/s/ Valentine Hoy
Valentine Hoy
vhoy@allenmatkins.com
Scott Perlin
sperlin@allenmatkins.com
ALLEN MATKINS LECK GAMBLE MALLORY &
NATSIS
600 West Broadway, 27th Floor
San Diego, CA 92101
Telephone: (619) 233-1155

Patrick E. Breen
pbreen@allenmatkins.com
ALLEN MATKINS LECK GAMBLE MALLORY &
NATSIS
865 South Figueroa Street, Suite 2800
Los Angeles, CA 90017
Telephone: (213) 622-5555

*Counsel for Defendant Sares Regis Group Commercial, Inc.*

/s/ Jose Dino Vasquez
Jose Dino Vasquez
dvasquez@karrtuttle.com
Jason Hoeft
jhoeft@karrtuttle.com
KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: (206) 223-1313

*Counsel for Defendant Security Properties Residential, LLC*

/s/ David A. Walton
David A. Walton
dwalton@bellnunnally.com
Troy Lee (T.J.) Hales
thales@bellnunnally.com
BELL NUNNALLY & MARTIN, LLP
2323 Ross Avenue, Suite 1900
Dallas, TX 75201

*Counsel for Defendant RPM Living, LLC*

/s/ Diane R. Hazel
Diane R. Hazel
dhazel@foley.com
FOLEY & LARDNER LLP
1400 16th Street, Suite 200
Denver, CO 80202
Telephone: (720) 437-2000

Elizabeth A. N. Haas (admitted *pro hac vice*)
ehaas@foley.com
Ian Hampton (admitted *pro hac vice*)
ihampton@foley.com
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
Telephone: (414) 271-2400

Tara L. Swafford, BPR #17577
tara@swaffordlawfirm.com
Dylan Harper, BPR #36820
dylan@swaffordlawfirm.com
THE SWAFFORD LAW FIRM, PLLC
321 Billingsly Court, Suite 19
Franklin, TN 37067
Telephone: (615) 599-8406

*Counsel for Defendant Sherman Associates, Inc.*

/s/ Brent Justus
Brent Justus
bjustus@mcguirewoods.com
Nick Giles
ngiles@mcguirewoods.com
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1000

*Counsel for Defendant Simpson Property Group, LLC*

/s/ Andrew Harris
Andrew Harris
Andrew.Harris@Levittboccio.com
LEVITT & BOCCIO, LLP
423 West 55th Street
New York, NY 10019
Telephone: (212) 801-1104

/s/ Nicholas A. Gravante, Jr.
Nicholas A. Gravante, Jr. (admitted *pro hac vice*)
nicholas.gravante@cwt.com
Philip J. Iovieno (admitted *pro hac vice*)
philp.iovieno@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000

*Counsel for Defendants The Related Companies, L.P. and Related Management Company, L.P.*

/s/ Yonaton Rosenzweig
Yonaton Rosenzweig
yonirosenzweig@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone: (212) 633-6800

Fred B. Burnside
fredburnside@dwt.com
MaryAnn T. Almeida
maryannalmeida@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: (206) 757-8016

*Counsel for Defendant Mission Rock Residential, LLC*

/s/ Benjamin I. VandenBerghe
Benjamin I. VandenBerghe
biv@montgomerypurdue.com
Kaya R. Lurie
klurie@montgomerypurdue.com
MONTGOMERY PURDUE PLLC
701 Fifth Avenue, Suite 5500
Seattle, WA 98104-7096
Telephone: (206) 682-7090

*Counsel for Defendant Thrive Communities Management, LLC*

/s/ David D. Cross

David D. Cross (admitted *pro hac vice*)
dcross@mofo.com
Jeffrey A. Jaeckel (admitted *pro hac vice*)
jjaeckel@mofo.com
Robert W. Manoso (admitted *pro hac vice*)
rmanoso@mofo.com
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
Telephone: (202) 887-1500

Eliot A. Adelson (admitted *pro hac vice*)
eadelson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000

Mika M. Fitzgerald (admitted *pro hac vice*)
mfitzgerald@mofo.com
MORRISON & FOERSTER LLP
250 W 55th Street
New York, NY 10019
Telephone: (212) 468-8000

/s/ Joshua L. Burgener

Joshua L. Burgener
jburgener@dickinsonwright.com
DICKINSON WRIGHT PLLC
424 Church Street, Suite 800
Nashville, TN 37219
Telephone: (615) 620-1757

*Counsel for Defendant UDR, Inc.*

/s/ Craig Seebald

Jessalyn H. Zeigler
jzeigler@bassberry.com
BASS, BERRY & SIMS, PLC
150 Third Avenue South
Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6200

Craig P. Seebald (admitted *pro hac vice*)
cseebald@velaw.com
Stephen M. Medlock (admitted *pro hac vice*)
smedlock@velaw.com
VINSON & ELKINS LLP
2200 Pennsylvania Ave., N.W.
Suite 500 West
Washington, D.C. 20037
Telephone: (202) 639-6500

Christopher W. James (admitted *pro hac vice*)
cjames@velaw.com
VINSON & ELKINS LLP
555 Mission Street
Suite 2000
San Francisco, CA 94105
Telephone: (415) 979-6900

*Counsel for Defendant Windsor Property
Management Company*

/s/ Evan Fray-Witzer
Evan Fray-Witzer
Evan@CFWLegal.com
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, MA 02116
Telephone: (617) 426-0000

*Counsel for Defendants WinnCompanies LLC, and WinnResidential Manager Corp.*

/s/ Ferdose al-Taie
Ferdose al-Taie (admitted *pro hac vice*)
faltaie@bakerdonelson.com
BAKER, DONELSON, BEARMAN CALDWELL & BERKOWITZ, P.C.
956 Sherry Lane, 20th Floor
Dallas, TX 75225
Telephone: (214) 391-7210

Christopher E. Thorsen (BPR # 21049)
cthorsen@bakerdonelson.com
BAKER, DONELSON, BEARMAN CALDWELL & BERKOWITZ, P.C.
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, TN 37201
Telephone: (615) 726-5600

*Counsel for Defendant ZRS Management, LLC*

/s/ James H. Mutchnik
James H. Mutchnik
james.mutchnik@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

*Counsel for Defendants Thoma Bravo L.P., Thoma Bravo Fund XIII, L.P., and Thoma Bravo Fund XIV, L.P.*

/s/ Jeffrey S. Cashdan
Jeffrey S. Cashdan (admitted *pro hac vice*)
jcashdan@kslaw.com
Emily S. Newton (admitted *pro hac vice*)
enewton@kslaw.com
Lohr A. Beck (admitted *pro hac vice*)
lohr.beck@kslaw.com
Carley H. Thompson (admitted *pro hac vice*)
chthompson@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600

*Counsel for Defendant ECI Management, LLC*

/s/ *Sarah B. Miller*
Sarah B. Miller (TN#33441)
smiller@bassberry.com
BASS, BERRY & SIMS PLC
150 Third Ave. South #2800
Nashville, TN 37201
Telephone: (615) 742-6200

Amy F. Sorenson (admitted *pro hac vice*)
asorenson@swlaw.com
SNELL & WILMER, L.L.P.
15 West South Temple, Ste. 1200
Salt Lake City, UT 84101
Telephone: (801) 257-1900

Colin P. Ahler (admitted *pro hac vice*)
cahler@swlaw.com
SNELL & WILMER, L.L.P.
One East Washington St., Ste. 2700
Phoenix, AZ 85004
Telephone: (602) 382-6000

*Counsel for Defendant Apartment Management*
*Consultants, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record registered on the CM/ECF system.

DATED this 22nd day of November, 2023.


_____/s/ *Jay Srinivasan*_____
Jay Srinivasan