**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | **Case No. 3:23-MD-3071**<br>**MDL No. 3071**<br><br>**This Document Relates to:**<br>**ALL CASES**<br><br>**Chief Judge Waverly D. Crenshaw, Jr.** |

**CERTAIN DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION TO DISMISS FOR FAILURE TO PLEAD AGENCY LIABILITY**

Plaintiffs concede that there is an agency relationship between the Property Management Defendants ("PMDs") and the building owners whose properties they manage. ECF No. 613, Opp. at 11.[1] They concede that an agent can only be liable "for the acts of its principal in an antitrust cartel" if the agent had knowledge of its principal's unlawful objective to restrain trade, intended to restrain trade, and contributed materially to the restraint. Opp. at 9-10. They concede that they must plausibly allege that the PMDs "intended to restrain trade rather than simply earn [their] usual and customary commission." Opp. at 10. And they concede that group pleading is improper and that they must offer plausible factual allegations that each individual PMD participated in the alleged conspiracy. Opp. at 3-6. The SAMC does not meet these undisputed requirements.

Plaintiffs' core claim that defendants chose to use RealPage's software, share proprietary information, and delegate pricing decisions because they knew competitors were likewise using the software does not apply to the PMDs. The SAMC alleges that "the decision whether to use RealPage's RMS rested on the desires of the ownership group" and that "it is ultimately up to the Owner whether or not a multifamily rental property will price its units according to RealPage's RMS." SAMC ¶¶ 5, 199. Thus, the SAMC explicitly alleges that the principals and not the agents make decisions about "how," "where," and "whether" RealPage is used. As to the PMDs, the SAMC's main allegations are simply that the PMDs had contracts with RealPage and used RealPage's revenue management software. SAMC ¶¶ 72, 74, 83, 118, 121, 154, 163, 193. These allegations make clear that the PMDs used RealPage on behalf of and at the direction of the owners

---

[1] The SAMC incorrectly lists Pinnacle and Rose as Owner-Operators. *See* ECF 530-1, Appendix A-2. Pinnacle and Rose are property managers and do not own properties and have provided declarations to Plaintiff's counsel attesting to the same. Plaintiffs in footnote 1 of their Opposition to the PMD's motion to dismiss correctly characterize Pinnacle and Rose as Managing Defendants and therefore concede that Pinnacle and Rose are properly part of this motion to dismiss. Plaintiffs also have withdrawn their allegation that Pinnacle is an Owner-Operator over e-mail.

and were doing nothing more than "earning their usual commissions." Plaintiffs try to recast the allegations by saying that they alleged the PMDs were "integral to the cartel's success" because "[e]ach PMD 'outsource[d] lease pricing decisions to RealPage's RMS,' 'accept[ed] RealPage's pricing "recommendations,"' and relied on RealPage for other lease terms." Opp. at 11 (citing SAMC ¶¶ 227, 232, 256, 268). But this argument is contradicted by allegations in the SAMC that the owners made the decisions about whether to use RealPage and follow its recommendations.

Plaintiffs also assert that they plead "specific misconduct attributable" to the PMDs and that the PMDs "knowingly implemented the cartel." Opp. at 5, 10. But Plaintiffs just cite to paragraphs from the SAMC that generically attribute misconduct to each "Owner, Owner-Operator, and other Managing Defendant." Opp. at 1-2 (citing SAMC ¶¶ 5, 6, 8, 9, 11-12, 15, 21, 37, 40, 43, 227, 269-70, 380). As the main motion to dismiss and the PMDs' opening brief explained, this sort of group pleading is insufficient to support a claim. *See* ECF 593 at 9-13; Br. at 5.

The SAMC's failure to identify any of the building owners for which any PMD provided property management services illustrates the problem with group pleading in an agency liability context.[2] Plaintiffs agree that the PMDs can only be liable as agents if, among other things, they knew of their principals' unlawful objective to restrain trade. Opp. at 9-10. But the SAMC does not even allege who the principals are, much less that the principals had an unlawful objective to

---

[2] In a footnote, Plaintiffs argue that the "the agency exception … does not apply to horizontal restraints of trade." Opp. at 9 n.8. The section of the Areeda treatise cited as support, however, relates to "commission agents agree[ing] with *each other* to charge a given amount" of commissions. Areeda at ¶1473 (emphasis added). Here there is no allegation the PMDs conspired to fix the property management fees that they charge. Plaintiffs also cite cases where an agent is held liable *individually* for wrongful conduct that was undertaken in a representative capacity when the agent exceeded the scope of its authority. Opp. at 10-11. Those cases also do not apply. Plaintiffs do not plausibly allege that the PMDs engaged in any wrongful conduct that exceeded the scope of their authority. To the contrary, Plaintiffs affirmatively allege that the owners were the ones that decided whether to use RealPage and follow its recommendations.

restrain trade, and thus cannot plausibly allege that any PMD had knowledge of an unlawful objective. Indeed, building owners for which the PMDs provided property management services might not be defendants in this case and might not even use RealPage at all. Plaintiffs do not cite to any case law allowing agency liability where the principals are not even identified.

Plaintiffs also cite to inapposite cases for the proposition that generic references to groups of defendants can sometimes support a claim. Those cases also included the kind of specific allegations about individual defendants that are missing here. *See, e.g.*, *Rodriguez v. Providence Cmty. Corr., Inc.*, 191 F.Supp.3d 758, 772-73 (M.D. Tenn. 2016) ("[Plaintiffs] levy many specific allegations regarding… the Individual Defendants[.]"); *In re Auto. Parts Antitrust Litig.*, 2017 WL 7689654, at *7 (E.D. Mich. May 5, 2017) ("Plaintiffs have [specifically] alleged that Corning Inc. controlled CIKK and that CIKK provided marketing and sales services to Corning Inc.").[3] In contrast, in the SAMC, Plaintiffs repeat the same generic allegations against roughly 50 defendants regardless of their specific situation or status as owners, property managers, or both.

The PMDs' original motion further explained that the SAMC failed to allege that the PMDs had an economic incentive to conspire and did not allege how the PMDs were compensated. Br.

---

[3] The same is true for the out-of-circuit cases cited. *See, e.g.*, *Iowa Pub. Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 340 F. Supp. 3d 285, 317 (S.D.N.Y. 2018) ("The Amended Complaint alleges each Defendant's participation separately[.]"); *Prodanova v. H.C. Wainwright & Co., LLC*, 2018 WL 8017791, at *10 (C.D. Cal. Dec. 11, 2018) ("The FAC sufficiently alleges 'specific misconduct' attributable to" each defendant.); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1184 (N.D. Cal. 2009) ("The amended complaints add detail about numerous illicit conspiratorial communications between and among defendants," guilty pleas, and "specific information about the group and bilateral meetings."); *In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 74 (D.D.C. 2016) ("Plaintiffs pointed to specific statements made by Southwest's executive indicating that the airline was reducing capacity[.]").

Plaintiffs also cite to an unpublished out-of-circuit case, *Dillon v. Clackamas Cnty.*, 2014 WL 6809772 (D. Or. Dec. 2, 2014), to argue that their cut-and-paste allegations are legitimate. Opp. at 7. In *Dillon*, however, the plaintiff was suing two defendants for precisely the same course of conduct where the plaintiffs made the same allegations in two separate complaints. *See* 2014 WL 6809772, at *2. That is not the situation here.

at 10. Plaintiffs now argue that PMDs increased their own profits as they obtained higher revenues and profits for their owner clients, Opp. at 12, but the SAMC paragraphs they cite do not say anything about how any PMD is compensated and thus do not plausibly allege that the PMDs had an economic incentive to conspire. *See* SAMC ¶¶ 21, 33-34, 381. Plaintiffs also suggest that economic incentive is irrelevant, but the only case they cite does not support that assertion and simply held that a well-pled conspiracy was not rendered implausible by one conspirator backing out of the scheme. *See Acad. of Allergy & Asthma in Primary Care v. Superior Healthplan, Inc.*, 2020 WL 10051766, at *14 (W.D. Tex. May 4, 2020).

In short, Plaintiffs have failed to plausibly allege that the PMDs knew of, joined, and materially advanced any alleged unlawful conspiracy among their owner clients. Thus, the case against the PMDs must be dismissed. *See, e.g.*, *Amory Invs. LLC v. Utrecht-Am. Holdings, Inc.*, 74 F.4th 525, 526-27 (7th Cir. 2023) (affirming dismissal of antitrust claims where the "complaint does not allege that [defendant] served as a conduit for the producers' agreement, that it helped them coordinate their production ... or even that [defendant] knew that the producers were coordinating among themselves."); *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 309192, at *13 (N.D. Cal. Jan. 21, 2014) ("Plaintiffs' theory fails because it conflates agency with conspiracy" and granting motions to dismiss where complaints "offer only boilerplate assertions of an agency relationship with the parties whose participation in the conspiracy is more directly alleged").

A limited number of more specific allegations about some individual PMDs do not support a conspiracy, but rather are equally consistent with legitimate non-conspiratorial behavior. *See* Br. at 5-8. Plaintiffs do not seriously dispute that these allegations are consistent with legitimate non-conspiratorial behavior. Instead, they argue that the Court cannot dismiss a complaint where the

4

allegations are "equally consistent" with non-conspiratorial conduct. Opp. at 7. But that is **_exactly_** what the Court must do under _Twombly_, where the Supreme Court specifically held that dismissal in an antitrust case is required where the alleged conduct is "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 554 (2007). Plaintiffs cite inapposite cases that had specific factual allegations that supported the existence of a conspiracy as well as allegations of conduct equally consistent with unilateral behavior. _See_ Opp. at 5-9. Here, there are no specific allegations that support the PMDs' participation in a conspiracy.

Plaintiffs also complain that the PMDs attempt to "dismember" the SAMC's allegations. Opp. at 7. There are hardly enough factual allegations to "dismember." The SAMC simply combines generic group pleading allegations, which cannot support Plaintiffs' claims, with a few limited allegations about some individual PMDs that are equally consistent with legitimate non-conspiratorial conduct, and thus also cannot support Plaintiffs' claims. Combining two insufficient sets of allegations do not make those allegations sufficient to support Plaintiffs' claims.

At bottom, the SAMC relies upon generalized and conclusory allegations and does not allege facts to show any of the elements that Plaintiffs acknowledge would be necessary to impose liability on the PMDs as agents for building owners. Plaintiffs concede that the few specific allegations about individual PMDs are equally consistent with legitimate non-conspiratorial conduct, yet ignore the Supreme Court's holding in _Twombly_ that requires dismissal in those circumstances. For these reasons, pursuant to Fed. R. Civ. P. 12(b)(6), the SAMC fails to state a claim for relief against any of the PMDs and should be dismissed with prejudice.

DATED: November 22, 2023

Respectfully submitted,

/s/ Kenneth S. Reinker
Kenneth S. Reinker
kreinker@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1522

Joseph M. Kay
jkay@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2745

*Counsel for Defendant Pinnacle Property Management Services, LLC*

/s/ Danny David
Danny David
danny.david@bakerbotts.com
BAKER BOTTS LLP
910 Louisiana Street
Houston, TX 77002
Telephone: (713) 229-4055

James Kress
(*pro hac* forthcoming)
james.kress@bakerbotts.com
Paul Cuomo
(*pro hac* forthcoming)
paul.cuomo@bakerbotts.com
BAKER BOTTS LLP
700 K. Street, NW
Washington, DC 20001
Telephone: (202) 639-7884

*Counsel for Defendant Avenue5 Residential, LLC*

*/s/ James D. Bragdon*
 James D. Bragdon
jbragdon@gejlaw.com
Sam Cowin
scowin@gejlaw.com
GALLAGHER EVELIUS & JONES LLP
218 N. Charles St., Suite 400
Baltimore, MD 21201
Telephone: (410) 727-7702

Philip A. Giordano (admitted *pro hac vice*)
philip.giordano@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1775 I Street NW
Washington, DC 20007
Telephone: (202) 721-4776

Charles E. Elder, BPR # 038250
celder@bradley.com
BRADLEY ARANTBOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Telephone: 615.252.3597

*Counsel for Defendant Bozzuto Management Company*

*/s/ Charles H. Samel*
Charles H. Samel
charles.samel@stoel.com
Edward C. Duckers
ed.duckers@stoel.com
STOEL RIVES LLP
1 Montgomery Street, Suite 3230
San Francisco, CA 94104
Telephone: (415) 617-8900

George A. Guthrie
gguthrie@wilkefleury.com
WILKE FLEURY LLP
621 Capitol Mall, Suite 900
Sacramento, CA 95814
Telephone: (916) 441-2430

*Counsel for Defendant FPI Management, Inc.*

7

/s/ Ferdose al-Taie
Ferdose al-Taie (admitted *pro hac vice*)
faltaie@bakerdonelson.com
BAKER, DONELSON, BEARMAN CALDWELL &
BERKOWITZ, P.C.
956 Sherry Lane, 20th Floor
Dallas, TX 75225
Telephone: (214) 391-7210

Christopher E. Thorsen (BPR # 21049)
cthorsen@bakerdonelson.com
BAKER, DONELSON, BEARMAN CALDWELL &
BERKOWITZ, P.C.
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, TN 37201
Telephone: (615) 726-5600

*Counsel for Defendant ZRS Management, LLC*

/s/ Richard P. Sybert
Richard P. Sybert (WSBA No. 8357)
rsybert@grsm.com
GORDON REES SCULLY MANSUKHANI
701 Fifth Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 321-5222

*Counsel for Defendant Rose Associates Inc.
and First Communities Management, Inc.*

/s/ Sarah B. Miller
Sarah B. Miller (TN#33441)
BASS, BERRY & SIMS PLC
150 Third Ave. South #2800
Nashville, TN 37201
Telephone: (615) 742-6200
smiller@bassberry.com

Amy F. Sorenson (admitted *pro hac vice*)
SNELL & WILMER, L.L.P.
15 West South Temple, Ste. 1200
Salt Lake City, UT 84101
Telephone: (801) 257-1900
asorenson@swlaw.com

Colin P. Ahler (admitted *pro hac vice*)
SNELL & WILMER, L.L.P.
One East Washington St., Ste. 2700
Phoenix, AZ 85004
Telephone: (602) 382-6000
cahler@swlaw.com

*Counsel for Defendant Apartment Management
Consultants, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record registered on the CM/ECF system.

DATED this 22nd day of November, 2023.

/s/ *Kenneth S. Reinker*
Kenneth S. Reinker