UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | ) Case No. 3:23-md-03071<br>) MDL No. 3071<br>)<br>) Judge Waverly D. Crenshaw, Jr.<br>)<br>) This Document Relates to:<br>) 3:23-cv-00326<br>) 3:23-cv-00378<br>) 3:23-cv-00391<br>) 3:23-cv-00445<br>) 3:23-cv-00742<br>) 3:23-cv-00757<br>) 3:23-cv-00792<br>) 3:23-cv-00979<br>) |

**THE THOMA BRAVO DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTIONS TO DISMISS MULTIFAMILY PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND STUDENT PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

James H. Mutchnik, P.C. (*pro hac vice*)
jmutchnik@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Mark McKane, P.C. (*pro hac vice*)
mark.mckane@kirkland.com
Alistair Blacklock (*pro hac vice*)
alistair.blacklock@kirkland.com
KIRKLAND & ELLIS LLP
555 California St., Suite 2900
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Counsel for Defendants Thoma Bravo Fund XIII, L.P., Thoma Bravo Fund XIV, L.P., and Thoma Bravo, L.P.*

In their Opposition to the Thoma Bravo Defendants' Motions to Dismiss[1], ECF No. 614 ("Opposition" or "Opp."), the Multifamily Plaintiffs and Student Plaintiffs (collectively, "Plaintiffs") concede that the Thoma Bravo Defendants[2] cannot conspire with RealPage as a matter of law, and they acknowledge that even pursuant to the so-called "single enterprise liability"—which the Sixth Circuit has never adopted—Plaintiffs must allege the Thoma Bravo Defendants *independently participated* in the anticompetitive conspiracy. Opp. 7. But Plaintiffs fail to allege any contacts between the Thoma Bravo Defendants and any non-RealPage Defendant, nor do they allege facts inconsistent with ordinary course equity ownership, which are plainly insufficient to show independent participation in an antitrust conspiracy. The Court should grant the Thoma Bravo Defendants' Motions to Dismiss.

I.  ARGUMENT

   A.  **Plaintiffs cannot remedy their failure to plead alter ego liability through their nonbinding "single enterprise" theory of liability.**

Plaintiffs do not dispute that neither the Second Amended Complaint nor the First Amended Student Complaint (together, "Complaints") allege any facts sufficient for a veil piercing, alter ego, or respondeat superior claim, as required to hold the Thoma Bravo Defendants vicariously liable for RealPage's alleged actions. Opp. 7 n.8. Instead, Plaintiffs rely on so-called "single enterprise" liability, which they acknowledge "[t]he Sixth Circuit has not []

---

[1] The Thoma Bravo Defendants filed two separate Motions to Dismiss because the Multifamily Plaintiffs' SAC made certain allegations not found in the Student Plaintiffs' FASC. The Student Plaintiffs cannot rely on allegations not found in their FASC to oppose the Thoma Bravo Defendants' Motion. Attached as **Exhibit 1** to this Reply is a version of the Opposition highlighting allegations made only by the Multifamily Plaintiffs, and not contained in the Student Plaintiffs' FASC. The Court should disregard those sections in resolving the Thoma Bravo Defendants' Motion to Dismiss the Student Plaintiffs' FASC.

[2] Capitalized terms used but not defined herein shall have the meaning set forth in the Memorandum of Points and Authorities in Support of the Thoma Bravo Defendants' Motion to Dismiss Plaintiffs' First Amended Consolidated Class Action Complaint, ECF No. 573.

endorsed" and "this Court has not addressed." Opp. 6 n.7. From the notion that a parent cannot conspire with its wholly owned subsidiary for antitrust purposes, *see Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 777 (1984), certain courts have reasoned that the unity of interests among some corporate affiliates permits treating them as a single economic unit for pleading antitrust claims. *E.g.*, *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1236 (10th Cir. 2017) (noting in dicta that a corporate affiliate could be viewed as a single economic entity for Section 2 monopoly claims); *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 628-31 (9th Cir. 2018) (finding a subsidiary liable when it "made an essential contribution" to the parent's antitrust conspiracy); *Jones v. Varsity Brands, LLC*, 618 F. Supp. 3d 713, 721-22 (W.D. Tenn. 2022) (finding a parent's active direction of a subsidiary's horizontal monopoly of a market and acquisition of a rival stated an antitrust claim).

Moreover, other courts have rejected the single-enterprise theory. *E.g.*, *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 342 n.44 (3d Cir. 2010) ("[I]t does not follow from *Copperweld* that subsidiary entities are automatically liable under § 1 for any agreements to which the parent is a party."); *Acuity Optical Lab'ys., LLC v. Davis Vision, Inc.*, 2016 WL 4467883, at *9 (C.D. Ill. Aug. 23, 2016) (declining "to find increased antitrust liability based on commonality of ownership, in the absence of specific evidence of coordinated activity").

Whether single enterprise liability is appropriate in other circumstances, here Plaintiffs misuse it in an attempt to circumvent their failure to allege facts sufficient for alter ego liability.[3]

---

[3] Plaintiffs insist that their lack of veil-piercing allegations is "irrelevant," Opp. 7 n.8, to divert attention from the fact that they have not met their **own** proposed standard that requires demonstrating "more than mere ownership" for single enterprise liability. Opp. 7 (quoting *Varsity Brands*, 618 F. Supp. 3d at 723). Instead of pleading any active involvement in the purported conspiracy, as required, *see Lenox MacLaren*, 847 F.3d at 1237, Plaintiffs instead point to standard characteristics of the parent-subsidiary relationship, such as strategic direction and director and officer appointment. Opp. 10-11. But these facts showing

2

Plaintiffs cannot bypass the corporate form and pursue independent antitrust claims against the Thoma Bravo Defendants, based solely on general actions consistent with their ownership interest in RealPage. *Cf. Burks v. Lasker*, 441 U.S. 471, 478 (1979) ("Congress has never indicated that the entire corpus of state corporation law is to be replaced simply because a plaintiff's cause of action is based upon a federal statute.").

> **B.** **Plaintiffs' bare allegations of corporate ownership fail to show independent participation in the alleged price-fixing conspiracy.**

The Opposition acknowledges that, even within single enterprise liability, a plaintiff "must allege that [each defendant] entity 'independently participated in the enterprise's scheme.'" Opp. 7 (quoting *Lenox*, 847 F.3d at 1237; *Varsity Brands*, 618 F. Supp. 3d at 723). Indeed, Plaintiffs' own cases illustrate that allegations beyond corporate ownership are necessary to show independent participation in the alleged conspiracy, as required to state a claim.

Plaintiffs insist the Thoma Bravo Defendants independently participated in the alleged conspiracy between RealPage and the Lessor Defendants by, *inter alia*, making statements about their intent to partner with RealPage at the time of the acquisition, providing unspecified guidance to RealPage, selecting and approving unnamed acquisition targets, setting unnamed company policies, and appointing a director and two officers. Opp. 8-12. But Plaintiffs conflate these actions, which are entirely consistent with ownership, with actions demonstrating involvement in an antitrust conspiracy, failing to link any of the Thoma Bravo Defendants to a

---

ownership are plainly insufficient to establish parent liability. "A parent corporation generally is not liable for the acts of its subsidiary, even if its subsidiary is wholly owned." *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007) (noting that courts may pierce the corporate veil, disregard the corporate entity, and treat the parent corporation and its subsidiary as a single entity only "in extraordinary cases").

3

particular agreement or conspiracy, as is required.[4]  *See Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 857 n.12 (10th Cir. 1999) (finding plaintiffs' "'abundant evidence' consist[ing] of various facts, or circumstances, which [were] typical of any parent and subsidiary," were insufficient to extend Section 1 liability of subsidiary to a parent).

Plaintiffs analogize heavily to *Varsity Brands* for the overstated proposition that the independent participation prong is met if the parent company controls a subsidiary's investment decisions and appoints directors to the subsidiary's board.  This stretches *Varsity Brands* too far.  The *Varsity Brands* plaintiffs alleged the equity owner funded acquisitions of rivals and maintained and expanded the subsidiary's market share in furtherance of a horizontal conspiracy to monopolize a market.  *See Varsity Brands*, 618 F. Supp. 3d at 718 (describing the parent's involvement in the anticompetitive scheme by "funding further acquisitions of rivals [within the same market], including its acquisition of Epic Brands in January 2018.").  By contrast, the Complaints here make **no** allegations of any strategic acquisition which has any nexus to the alleged price-fixing conspiracy.  And unlike *Varsity Brands*, there are no allegations regarding the Thoma Bravo Defendants' collective or individual oversight of RealPage that connect them to the alleged antitrust conspiracy.

Likewise, Plaintiffs rely on *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.* for the proposition that a party which directs and controls a subsidiary's conduct independently participates in such conduct.  311 F. Supp. 2d 1048, 1069 (D. Colo. 2004).  But in that case, the plaintiff alleged that the parent had "repeatedly used its size and clout to coerce"

---

[4] Plaintiffs attempt to foist upon the Thoma Bravo Defendants all their allegations against RealPage by including the Thoma Bravo Defendants within the defined term "RealPage". *See* SAC ¶ 1-2, FASC ¶ 1.  This impermissible group pleading cannot satisfy federal pleading requirements, and nearly all of Plaintiffs' allegations against RealPage—and all allegations materially establishing and facilitating the conspiracy—predate Thoma Bravo's April 2021 acquisition.

market participants by wielding the ownership of its subsidiaries as leverage, and the parent's extensive control over its subsidiaries' recordkeeping, budgeting, and management processes was so extensive that the court upheld the plaintiffs' alter ego claim. *Id.* at 1071-72. These allegations are a far cry from Plaintiffs' allegations that the Thoma Bravo Defendants appointed directors and officers—which do not, in any event, show ***any*** relation to the alleged conspiracy.

Plaintiffs cite *In re Aluminum Warehousing Antitrust Litigation* and *In re Sulfuric Acid Antitrust Litigation* to argue that "a court should examine the conduct of the 'economic unit' as a whole and assign liability to any participating or directing corporate entity." Opp. 6. Neither of these cases supports this proposition. *Aluminum Warehousing* involved parent entities who had independent agreements with ***unaffiliated*** subsidiaries in ***different corporate families***, thereby creating a "web" of agreements giving rise to a potential conspiracy. 95 F. Supp. 3d 419, 446 (S.D.N.Y. 2015) (holding that "as a matter of law" parent entities "cannot conspire . . . with the [subsidiary] entities with which they are affiliated"). Here, Plaintiffs allege no "web" similar to *Aluminum Warehousing*; indeed, there are no allegations that connect ***any*** of the Thoma Bravo Defendants to ***any*** of the Lessor Defendants. Moreover, *Sulfuric Acid* involved disagreement whether an entity and its largest shareholder constitute a single entity for *Copperweld* purposes. 743 F. Supp. 2d 827, 885 (N.D. Ill. 2010). But Plaintiffs do not dispute the Thoma Bravo Defendants cannot conspire with RealPage under *Copperweld*. Opp. 5. In short, Plaintiffs fail to cite any cases in which courts held that mere allegations consistent with common ownership, like to those asserted against the Thoma Bravo Defendants, stated a claim for Section 1 conspiracy.

## II. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion and dismiss the claims asserted against the Thoma Bravo Defendants with prejudice.

Dated: November 22, 2023								Respectfully submitted,

											By: */s/ Mark McKane, P.C.*
											James H. Mutchnik, P.C. (*pro hac vice*)
											jmutchnik@kirkland.com
											KIRKLAND & ELLIS LLP
											300 N. LaSalle
											Chicago, Illinois 60654
											Telephone: (312) 862-2000
											Facsimile: (312) 862-2200

											Mark McKane, P.C. (*pro hac vice*)
											mark.mckane@kirkland.com
											Alistair Blacklock (*pro hac vice*)
											alistair.blacklock@kirkland.com
											KIRKLAND & ELLIS LLP
											555 California Street
											San Francisco, California 94104
											Telephone: (415) 439-1400
											Facsimile: (415) 439-1500

											*Counsel for Defendants Thoma Bravo Fund, XIII, L.P., Thoma Bravo Fund XIV, L.P., and Thoma Bravo, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2023, a copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

*/s/ Mark McKane, P.C.*
Mark McKane, P.C.
