IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-md-3071<br>MDL No. 3071<br><br>This Document Relates to:<br>3:23-cv-00742<br>3:23-cv-00979 |

**REPLY IN SUPPORT OF DEFENDANT APARTMENT INCOME REIT CORP.'S ("AIR") RENEWED MOTION TO DISMISS**

## INTRODUCTION

Plaintiffs' SAC includes a single factual allegation about <u>AIR's conduct</u>: it used a RealPage Revenue Management System ("RMS"). That lone allegation does not come close to pleading a plausible conspiracy claim against AIR—particularly given Plaintiffs' concession that AIR's use of a RealPage RMS was different and more limited than other Defendants' alleged use. Critically, AIR did <u>not</u> agree to let RealPage use AIR's nonpublic data in price recommendations for its competitors, which means AIR did not engage in the conduct that the Court deemed the "most persuasive" basis for inferring an agreement among Defendants. (Mem. Op. 20 n.10, 31, ECF 690.) Unable to make any other factual allegations about AIR's <u>conduct</u>, Plaintiffs are left asking the Court to accept unsupported inferences about AIR's supposed intent based solely on tangential allegations—that could be made against any RealPage customer—about the RealPage RMS, other Defendants, and market trends. These allegations are not enough: *Twombly*'s plausibility standard requires far more to justify subjecting an antitrust defendant to costly litigation. Plaintiffs' claims against AIR should be dismissed.

## ARGUMENT

Plaintiffs' opposition misapprehends their burden under *Twombly* in two fundamental respects. First, Plaintiffs ignore the threshold inquiry to which *Twombly* is directed—whether the SAC's factual allegations raise a plausible basis for inferring that AIR consciously committed to a price-fixing scheme. (AIR's Mem. 4−5, ECF 696.) Instead, Plaintiffs flip *Twombly*'s plausibility inquiry on its head: they begin with the premise of an existing conspiracy and, in circular fashion, argue that the Court should just infer AIR's participation from the existence of that alleged conspiracy involving others. (Pls.' Opp. 2−6, ECF 707.) That type of leap-frogging inference is precisely what *Twombly* forbids. (AIR's Mem. 4−5.)

Second, Plaintiffs mistakenly argue that *Twombly* does not require specific, or "detailed,"

allegations about AIR's conduct or intent to state a plausible claim against it—ostensibly because the Court has already determined they have alleged a plausible conspiracy involving other Defendants. (Pls.' Opp. 2−3, 6−7.) But "[i]t is not sufficient for a [conspiracy] claim to be merely plausible in the abstract"; it must still "be linked to each Defendant" through individualized factual allegations. *Jien v. Perdue Farms, Inc.*, 2020 WL 5544183, at *6 (D. Md. Sept. 16, 2020); *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 720 (E.D. Pa. 2011) (complaint must "delineate[] to some sufficiently specific degree that a defendant <u>purposefully joined</u> and participated in the conspiracy" (emphasis added)). As those individualized factual allegations are nowhere to be found in the SAC, *Twombly* requires its dismissal.

**I.   AIR's Admittedly Limited, Unique Use of RMS Is Not Enough**

Plaintiffs seek to avoid the import of having withdrawn their core conspiracy allegation against AIR by arguing that AIR still participated in the conspiracy by using a RealPage RMS. (Pls.' Opp. 2−6.) That argument ignores and fails to satisfy the threshold inquiry of *Twombly*.

Plaintiffs' ability to raise a plausible inference of an unlawful agreement among other Defendants hinges on alleged parallel conduct—a reciprocal exchange of nonpublic data allegedly against each of those Defendants' self-interest—in which Plaintiffs concede AIR did not engage. (AIR's Mem. 5−7; Mem. Op. 31−32.) Plaintiffs cannot use the Court's finding of a plausible conspiracy based on that particular conduct of others to ascribe to AIR an intent to join the alleged conspiracy when they admit AIR did not engage in the same conduct. It is irrelevant that conspirators need not <u>participate</u> in the scheme to the same degree to be liable (and AIR has not argued otherwise) (*cf.* Pls.' Opp. 2−4); there still must be plausible allegations that each Defendant <u>agreed to join</u> the conspiracy. The SAC includes no such allegations against AIR.

Plaintiffs' arguments about AIR's purported participation in the alleged conspiracy further illustrate the weakness of their position. They argue AIR participated in the purported

3

conspiracy because it used RealPage's RMS while supposedly knowing how it functioned, that its competitors were also using RealPage's RMS, and that it would benefit from RealPage's recommendations. (Pls.' Opp. 5−6.) Those are still conclusory allegations that do not raise a plausible inference that AIR <u>agreed</u> to any conspiracy.[1] To hold otherwise would mean that merely using a RealPage RMS would, by itself, raise a plausible inference that every RealPage customer agreed to a price-fixing conspiracy.

## II. Group Pleading and Market-Wide Analyses Do Not Show Parallel Conduct by AIR

Plaintiffs attempt to defend the SAC's parallel-conduct allegations against AIR by incorrectly arguing they are not required to make allegations that a particular defendant engaged in such conduct. (Pls.' Opp. 6−7.) But specific allegations showing that AIR engaged in parallel conduct from which a conspiracy can be inferred—here, shifting its rental "occupancy strategy" by using a RealPage RMS—is a prerequisite for stating a plausible claim against AIR.[2] The cases Plaintiffs cite make clear that they cannot plead a plausible claim against AIR with speculative inferences drawn from market-wide data and vague allegations about a collective strategy shift.

The *Pork Antitrust Litigation* is an apt example. Plaintiffs cite one decision from that case, in which the court denied motions to dismiss an amended complaint, to argue they "need

---

[1] *See Jien*, 2020 WL 5544183, at *8 ("[T]he fact that [defendants] all used the same benchmarking compan[y's] data to inform their wages is insufficient to permit a circumstantial inference of collusion."); *Processed Egg Prods.*, 821 F. Supp. 2d at 735 (allegations suggesting only that defendant was "aware of what other [d]efendants were doing, knew the implications of restricted supply and increased prices, and even likely benefited" did not support the "the requisite factual leap" that defendant "outright agreed to and participated in the [supply-reduction] conspiracy").

[2] *See, e.g.*, *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 769−70 (D. Minn. 2020) (dismissing antitrust claim against single defendant where complaint made "no specific allegations" showing that it took any action to reduce supply, the alleged parallel conduct); *In re Travel Agent Comm'n Antitrust Litig.*, 2007 WL 3171675, at *4 (N.D. Ohio Oct. 29, 2007) (dismissing antitrust claim against single defendant where plaintiffs did not allege it "engaged in [the] parallel conduct" on which conspiracy claim was based), *aff'd*, 583 F.3d 896 (6th Cir. 2009).

'not provide specifics' for every defendant," including AIR. (Pls.' Opp. 7 (quoting *Pork Antitrust Litig.*, 495 F. Supp. 3d at 768−71).) But Plaintiffs ignore the court's earlier decision <u>granting</u> the motions to dismiss because the initial complaint lacked defendant-specific allegations showing parallel conduct. *In re Pork Antitrust Litig.*, 2019 WL 3752497, at *8−9 (D. Minn. Aug. 8, 2019). Like the SAC here, the initial complaint in the *Pork* litigation relied on "industry-wide data" showing an overall decrease in pork production and "public statements made by some of the individual Defendants" to plead that all defendants undertook action to artificially reduce the supply of pork (the alleged parallel conduct). *Id.* at *8. But, as the court recognized, those allegations did "nothing to indicate how any of the individual Defendants acted" or whether any one of them "affirmatively acted to reduce the supply of pork"—information the court deemed "vital to pleading parallel conduct." *Id.* Thus, absent "more specific facts," the complaint did not adequately allege parallel conduct by the individual defendants under *Twombly*:

> The Court will not engage in such speculation [by inferring individual conduct from industry-wide data]. While it is entirely possible that each of the accused Defendants engaged in production cuts as alleged, "[t]he plausibility standard . . . asks for more than a sheer possibility . . . . *Iqbal*, 556 U.S. at 678 (citing *Twombly* . . . ). Without more specific facts, Plaintiffs' allegations that the Defendants engaged in production cuts are nothing more than bare assertions.

*Id.* Only after the plaintiffs added "individualized content" to their supply-reduction allegations did the court find the plaintiffs adequately pled parallel conduct on behalf of those defendants. *Pork Antitrust Litig.*, 495 F. Supp. 3d at 768−72.

The court in *Jien v. Perdue Farms, Inc.*, another case cited by Plaintiffs, reached the same conclusion.[3] There, the plaintiffs alleged a wage-fixing conspiracy supported by allegations of

---

[3] Once again, Plaintiffs rely on a single statement in a decision denying motions to dismiss an amended complaint to argue that group-focused allegations are sufficient, while ignoring the more salient discussion in the earlier decision granting motions to dismiss. (Pls.' Opp.7 n.3 (citing *Jien v. Perdue Farms, Inc.*, 2021 WL 927456, at *3 (Mar. 10, 2021)).) In any event, even in the decision Plaintiffs cite, the *Jien* court explained that the complaint "links [the defendant]

direct evidence (as to some defendants) and industry-wide wage data. *Jien*, 2020 WL 5544183, at *5−8. The court concluded that allegations of direct evidence pertaining to <u>some</u> defendants were insufficient to state a claim against <u>all</u> defendants; rather, the complaint "must next link each specific Defendant" to those allegations through something other than "group allegations" that do not otherwise mention specific defendants. *Id.* at *6−7. The court also found the plaintiffs' group-focused allegations of wage alignment were equally deficient when it came to alleging parallel conduct because they pled "no facts . . . to support a conclusion that [a particular defendant] set similar or uniform wages to those of other Defendant[s]." *Id.* at *8. Of particular relevance here, the *Jien* court explained why the plaintiffs' use of aggregate, industry-wide data failed to satisfy their burden as to individual defendants:

> Reference to average wage levels across the . . . industry is similarly insufficient, as it fails to provide any insight into how Defendants acted with regards to one another. Averages are more or less another form of inappropriate group pleading, lumping the various parties together without any insight into any specific Defendant's behavior. Moreover, the average earnings data in the Amended Complaint appears to cover the entire poultry processing industry, not just the Defendant[s] . . . , further diminishing its specificity and utility in determining how the Defendant[s] . . . acted in relation to one another.

*Id.* at *8 n.9.

As these cases show, Plaintiffs' group pleading cannot serve as a predicate for any claim against AIR because it fails to raise a plausible inference that <u>AIR</u> ever changed its "occupancy strategy" at all, let alone in connection with its use of RealPage's RMS. Plaintiffs ask the Court to assume that, because RealPage and other Defendants allegedly touted the use of the RMS in conjunction with a shift in occupancy strategy, AIR must have shifted its strategy too—even though AIR otherwise used the RealPage RMS differently than everyone else. That unsupported

---

specifically to the secret compensation meetings" that the court found to be direct evidence of a wage-fixing conspiracy. *Jien*, 2021 WL 927456, at *3−4.

leap is not a plausible inference, and would apply with more force to all other RealPage customers.

While Plaintiffs argue they should not be required to plead more before engaging in discovery, this attempt to survive dismissal should be rejected with respect to AIR. Plaintiffs have conspicuously chosen to ignore publicly available information concerning AIR's occupancy rates both before and during the alleged conspiracy, all of which are set forth in AIR's SEC filings and directly contradict Plaintiffs' group pleading. Permitting Plaintiffs to proceed on the basis of vague, collective allegations on such a fundamental point as whether AIR engaged in parallel conduct would not only nullify *Twombly*'s plausibility standard but also relieve Plaintiffs of the constraints imposed by Rule 11. *See Processed Egg Prods.*, 821 F. Supp. 2d at 720 ("Conclusory, collective language is too convenient, too undisciplined, and too unfocused in light of exposures to litigation expense and disruption (even without ultimate liability) that are so great in antitrust (and other) cases.").

### III. The Generic Allegations Against AIR Are Not Proper Plus Factors

Because Plaintiffs do not adequately allege that AIR engaged in parallel conduct, the Court need not consider their plus-factor allegations. *See Pork Antitrust Litig.*, 2019 WL 3752497, at *7 ("[P]lus factors without plausible allegations of parallel conduct are insufficient to establish an inference of an agreement."). But regardless, Plaintiffs' plus-factor arguments fail.

The alleged plus factors pertaining to AIR are not just individually insufficient; rather, each is so paltry that even collective consideration of the factors fails to move any needle pointing to AIR. Plaintiffs rely on the Court's statement that various, generic allegations "bolster[]" the Court's finding that the "most persuasive" plus-factor evidence—an allegation of reciprocal information-sharing (that does not apply to AIR)—shows the plausibility of a conspiracy. (Pls.' Opp. 8−9; Mem. Op. 31−32.) As to AIR, however, there is nothing to "bolster."

Plaintiffs' various, generic allegations must do the work on their own, and they cannot.

7
Case 3:23-md-03071     Document 709     Filed 01/29/24     Page 7 of 10 PageID #: 7917

Their generic allegations about trade group membership and market characteristics, without more, carry no weight.[4] Further, Plaintiffs are wrong again in arguing that their group pleading about Defendants' alleged common use of RealPage RMS, including with respect to acceptance rates and Pricing Advisors, reasonably can be inferred to apply to AIR. (*See* Pls.' Opp. 9 (noting that law requires only that "reasonable inferences" be drawn in Plaintiffs favor).) Plaintiffs argue that "where Plaintiffs' theory is that multiple Defendants 'engaged in the same pattern of conduct,' Plaintiffs need not 'reiterate their allegations against each defendant individually.'" (*Id.* at 7 n.3.) Yet, Plaintiffs have not alleged AIR "engaged in the same pattern of conduct" as other Defendants; Plaintiffs concede AIR used the RMS differently. So, it cannot reasonably be inferred that AIR's limited use of the RMS was consistent with any of the alleged plus factors related to others.

Plaintiffs do not cite a single case in which such a meager and poorly-supported group of inapplicable plus factors were found sufficient to state a plausible conspiracy claim, especially when combined with the type of vague parallel-conduct alleged against AIR.[5]

## CONCLUSION

Plaintiffs' allegations do not raise a plausible inference that AIR joined the conspiracy alleged in the SAC. The Court should reject Plaintiffs' arguments that AIR's limited use of RealPage RMS is enough to support their conspiracy claims and dismiss all claims against AIR.

---

[4] *Compare, e.g., Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, 2019 WL 130535, at *3−4 (E.D. Pa. Jan. 8, 2019) (dismissing claims where plaintiffs did not plead "specific allegations regarding [] participation" in the trade association beyond mere membership), *with Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, 2019 WL 1514215, at *4 (E.D. Pa. Apr. 8, 2019) (refusing to dismiss claims that alleged each trade association member attended meetings where they voted in favor of and agreed to use allegedly anticompetitive pricing and supply policies).

[5] Because Plaintiffs have not adequately alleged that AIR changed its "occupancy strategy," the Court should not treat such alleged conduct as a plus-factor showing that AIR acted against its self-interest. Further, even if adequately alleged, the Court should decline to "'double-count' what it considers parallel conduct as plus factors or vice versa." (Mem. Op. 41 n.15.)

Dated: January 29, 2024					Respectfully submitted,

					*/s/ Kathryn A. Reilly*
					Kathryn A. Reilly
					Michael T. Williams
					Judith P. Youngman
					Wheeler Trigg O'Donnell LLP
					370 Seventeenth Street, Suite 4500
					Denver, CO 80202
					Telephone:  303.244.1800
					Facsimile:  303.244.1879
					Email:  reilly@wtotrial.com
						williams@wtotrial.com
						youngman@wtotrial.com

					And

					Mark Bell
					Holland & Knight LLP
					511 Union Street, Suite 2700
					Nashville, Tennessee 37219
					Telephone:  615.244.6380
					Email:  mark.bell@hklaw.com

					Attorneys for Apartment Income REIT Corp.

9

**CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on January 29, 2024, I electronically filed the foregoing REPLY IN SUPPORT OF DEFENDANT APARTMENT INCOME REIT CORP.'S RENEWED MOTION TO DISMISS with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record:

*s/ Claudia L. Jones for Kathryn A. Reilly*