# Appendix A
# Disputes Related to Proposed Case Management Order

I. **Government Productions**

| Plaintiffs' Proposal | Defendants' Proposal |
|---|---|
| On or before March 15, 2024, Defendants shall produce all documents and correspondence that, as of February 29, 2024, Defendants produced to the Department of Justice, the Federal Trade Commission, Congress, any State Attorney General, and/or any other state or federal regulatory agency in relation to any civil investigative demand or any formal or informal document discovery, any white papers, narrative responses, or any other manner of discovery provided to such regulators, concerning its Revenue Management Solutions. | [This section should be omitted from the Case Management Order.] |

**PLAINTIFFS' POSITION:**

Plaintiffs served their First and Second Set of Requests for Production of Documents and Information ("Requests") on February 6, 2024, and while the Parties had already completed the Rule 26(f) conference at that time, Plaintiffs further offered that the requests would be deemed served on February 16, 2024, giving Defendants extra time to review and begin working on their responses. One of those requests asks for the category of documents sought in Plaintiffs' proposed provision above. As a result, by March 15, Defendants will have had this request for nearly two months. To the extent that any Defendant has already collected, compiled, reviewed, and produced documents to any government regulator concerning RealPage's RMS, those documents are unquestionably relevant and there is virtually no burden for that Defendant to reproduce such documents to Plaintiffs. Nor should there be any concerns about waiving privilege; the agreed-upon portions of the Parties' Rule 502(d) Order provide Defendants with the right to claw back

1

any privileged documents inadvertently disclosed. Defendants argue that such a production should be made in the due course of document production pursuant to Plaintiffs' discovery requests (which have already been sent to Defendants, and are deemed served on February 16, 2024). Having this interim deadline set for these already-compiled documents early in the discovery process will help to narrow discovery going forward and promote judicial economy, including by providing Plaintiffs with information about potential custodians and search terms to target document production and depositions in an effort to reduce the need for Court intervention to resolve additional discovery disputes.

**DEFENDANTS' POSITION:**

Plaintiffs have requested that all Defendants produce by March 15, 2024, all documents and correspondence produced, as of February 29, 2024, to the Department of Justice, the Federal Trade Commission, Congress, any State Attorney General, and/or any other state or federal regulatory agency, or any document discovery, white papers, narratives, or any other discovery provided to regulators regarding RealPage Revenue Management Software. Defendants' position is that Plaintiffs can and should make this request through the ordinary discovery process so that each Defendant can respond. Plaintiffs' overbroad general request seeks a wide variety of material, some of which may be confidential or otherwise protected from discovery. Defendants are differently situated with respect to Plaintiff's request. Some Defendants may have no responsive material, some Defendants may agree to produce the requested material, some Defendants may agree to produce certain material and not others, and some Defendants may object to the request. In light of this reality, Defendants view is that Plaintiffs should serve discovery requesting the information they want Defendants to produce and Defendants should respond to that request in the ordinary course, rather through an overbroad "omnibus" request outside of the discovery process.

## II. Supplemental Disclosures

| Plaintiffs' Proposal | Defendants' Proposal |
|---|---|
| On or before April 1, 2024, all parties disclose the documents/information requested in Attachment 1 to Plaintiffs' scheduling proposal. | [This section should be omitted from the Case Management Order.] |

**PLAINTIFFS' POSITION:**

Plaintiffs have proposed a tailored set of additional disclosure requests ("Attachment 1 Disclosures") that, like their request for government productions, are designed to streamline discovery negotiations going forward. For example, Plaintiffs have requested that each Defendant identify key individuals at each property, such as the people responsible for pricing, gathering competitive intelligence, handling tenant complaints about pricing, and communicating with RealPage about pricing. This information will be crucial in negotiating custodians and will allow Plaintiffs to focus in on the key individuals with potentially relevant documents. To alleviate any burden, Plaintiffs' Attachment 1 Disclosures allow Defendants to produce this information in any manner that is convenient for them (*i.e.* there is no requirement to search and produce organizational charts to respond to these disclosures.) The Attachment 1 Disclosures also request additional information about data sources above and beyond Fed. R. Civ. P. 26(a)(1)(A)(ii), which will again provide Plaintiffs with necessary information to quickly move through custodian and search negotiations and is frequently utilized in large, multi-party complex antitrust class actions such as this. *See* Ex. A1, Order on Discovery Pending Resolution of Motions to Dismiss and Attachment 1 ("Cattle Disclosures"), *In re Cattle Antitrust Litig.*, Case No. 19-cv-01222 (D. Minn. 2020) (ordering the parties to produce additional disclosures outlined in Attachment 1 without the need for a request pursuant to Rule 34); Ex. A2, ESI Order, *In re Cattle/Beef Antitrust* Litig., Case No. 20-cv-01319 (D. Minn. 2020) ECF 93, §V. B (adopting Cattle Disclosures); Ex. A3, Pretrial

Scheduling Order, *In re Pork Antitrust Litig.*, Case No. 18-cv-01776, ECF 290 (D. Minn. 2019) (ordering additional disclosures of documents and information delineated therein, without the need for formal discovery request).

**DEFENDANTS' POSITION:**

Plaintiffs also have requested extensive initial discovery, outside of the ordinary discovery process, as part of what Plaintiffs have called "Attachment 1 Disclosures." Through these disclosures, Plaintiffs seek a wide variety of information and documents, including, among many other things, information and/or documents showing (i) everyone at Defendant with a title of director or higher and their assistants, (ii) the individuals responsible for "determining, setting, adopting, or implementing" the rental price or occupancy strategy for each unit that Defendants manage, (iii) all individuals who participate in any trade association, and (iv) many or all of Defendants' individual lease agreements. As with their requests for information provided to government regulators, Plaintiffs' "Attachment 1" requests are incredibly overbroad. Some of the requests in Attachment 1 are unclear, other requests seek information that is not relevant. Each Defendant is organized differently and operates differently, meaning that the burden and appropriateness of providing the information requested in Attachment 1 will vary from Defendant to Defendant. Plaintiffs should seek the information they have identified on Attachment 1 through the normal discovery process.

### III.  Written Discovery Limits

| Plaintiffs' Proposal | Defendants' Proposal |
|---|---|
| **Interrogatories**<br>• Plaintiffs may jointly serve 30 interrogatories on each Defendant (defined as each named Defendant in a Defendant family)<br><br>• Defendants may jointly serve 30 interrogatories on each of the | **Interrogatories**<br>• Plaintiffs may jointly serve 30 interrogatories on each Defendant.<br><br>• Defendants may jointly serve 30 interrogatories on each of the individual named Plaintiffs and each |

| Plaintiffs' Proposal | Defendants' Proposal |
|---|---|
| individual named Plaintiffs, but no more than 60 unique interrogatories across all named Plaintiffs.<br><br>**Requests for Admission**<br>- Plaintiffs may jointly serve 50 Requests for Admission on each Defendant.<br><br>- Defendants may jointly serve 30 Requests for Admission on each named Plaintiff, but no more than 60 unique requests across all named Plaintiffs. | Defendant is also entitled to serve up to 10 individual interrogatories on Plaintiffs.<br><br>**Requests for Admission**<br>- Plaintiffs are allowed to serve 30 joint requests per Defendant, and an additional 20 joint requests on each Defendant.<br><br>- Defendants may jointly serve 30 Requests for Admission on each named Plaintiff, and each Defendant is also entitled to serve up to 10 individual requests on plaintiffs. |

## IV. Completion of Document Production

| Plaintiffs' Proposal | Defendants' Proposal |
|---|---|
| Full completion of document production by March 28, 2025 | Substantial completion of document production by March 28, 2025 |

**PLAINTIFFS' POSITION:**

In the interest of compromise, Plaintiffs have agreed to use Defendants' proposed dates for completion of document production and completion of fact discovery, both of which were months later than the dates requested by Plaintiffs. By March 28, 2025, Defendants will have had Plaintiffs' Requests for over a year. Indeed, Defendants were provided with a courtesy draft of many of Plaintiffs' requests as far back as July 28, 2023, each request of which overlaps to a high degree with the Requests served on all Defendants February 6, 2024. Dkt. 437-1. It is reasonable to expect that Defendants can fully complete document production March 28, 2025. Plaintiffs are concerned that "substantial" completion leaves the door open to additional delay in the schedule, if any producing Party makes productions after March 28, 2025, as the Parties will only have seven

months to review all the documents and take all of the depositions in the case. Therefore, to ensure certainty and finality, Plaintiffs request a hard deadline for completion of document production.

**DEFENDANTS' POSITION:**

The parties agree on a March 28, 2025 date for completion of document production. Plaintiffs want document production to be "fully" complete on that date, whereas Defendants want "substantial" completion. In Defendants' view the "substantial" completion requirement will move the case forward in the same way as Plaintiffs' requested deadline. However, requiring "substantial," rather than "full" completion will avoid "gotcha" type disputes about whether a party is in violation of the CMO in the event that technical issues, normal discovery follow-up, or similar "ordinary course" issues result in the production of a small number of documents after the deadline. As a practical matter, Defendants think their approach will move the case forward as effectively as Plaintiffs but will avoid creating a deadline that could lead to collateral disputes and issues.

## V. Class Certification, Experts, Summary Judgment, and Trial

| Plaintiffs' Proposal | Defendants' Proposal |
|---|---|
| A single round of expert reports for class and merits issues, with expert discovery on both class and merits issues to begin after the close of fact discovery, on February 19, 2026, and close June 4, 2026 | Class certification briefing with related expert discovery beginning on August 15, 2025, followed by *Daubert* briefing on class expert reports, through March 23, 2026. |
| Class certification briefing to follow expert discovery, from July 20, 2026 through October 7, 2026 | Hearing on class certification and *Daubert* class reports in April 2026. |
| A single round of *Daubert* briefing, tracking class certification, from July 20, 2026 through November 6, 2026 | Expert merits reports from June 19, 2026 through September 18, 2026. |
| Hearing on class certification and *Daubert* motions in November 2026 | *Daubert* briefing for expert merits reports from October 23, 2026 through January 22, 2027. |
| Summary judgment briefing to follow class certification, to begin March 1, 2027 and end June 14, 2027, with a hearing in July 2027 | Hearing on *Daubert* merits reports to be held at the convenience of the Court.

Summary judgment briefing from |

| Plaintiffs' Proposal | Defendants' Proposal |
|---|---|
| For M.D. Tenn. cases, parties to be trial ready by October 1, 2027 | April 16, 2027 through June, 25, 2027 with a hearing to be held at the convenience of the Court.<br><br>For M.D. Tenn. cases, parties to be trial ready no later than 75-100 days after the Court's ruling on the motions for summary judgment. |

**PLAINTIFFS' POSITION:**

Plaintiffs have proposed a sensible, streamlined approach to expert discovery, class certification, and summary judgment, acknowledging that the standard for seeking certification of a class in an antitrust case nearly converges with an analysis of the merits of Plaintiffs' claims. Once fact discovery is complete, Plaintiffs propose a single expert discovery period and exchange of expert reports for all issues, including both class certification and merits. This would be followed by a single round of briefing on class certification and all *Daubert* challenges—whether for class or merits issues. Upon receiving a ruling on class certification, the Parties could immediately move into summary judgment briefing, without undergoing another time-consuming, costly, and redundant round of expert discovery and *Daubert* briefing.

In contrast, Defendants' proposal contemplates essentially bifurcating discovery (given that class certification would begin before discovery was completed), two rounds of expert reports, two rounds of *Daubert* briefing, and up to four depositions per plaintiff expert, introducing multiple opportunities for delay as the Parties litigate the same issues twice. Such an approach is inconsistent with current class certification standards. At class certification, and as often recited by Defendants, the Supreme Court requires that Plaintiffs show that their case can be proved on a predominantly classwide basis. *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 557 U.S. 442, 453 (2016) ("When one or more of the central issues in the action are common to the class and can be

said to predominate, the action may be considered proper under Rule 23(b)(3)." (internal quotation marks omitted)); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (class certification analysis in antitrust cases will "frequently entail overlap with the merits of the plaintiff's underlying claim," because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action" (internal quotation marks and citations omitted)). For an antitrust plaintiff, the best way to demonstrate that their claims are capable of classwide proof (and thus should be certified) is to *lay out the proof* of each element of their claim. That is what Plaintiffs will do at the class certification stage here, in a single round of reports covering both class and merits issue.

Recognizing this trend and acknowledging the inefficiencies of multiple rounds of overlapping expert reports, numerous courts have recently adopted a single round of expert reports, just as Plaintiffs have proposed here. *See* Exhibits A4-A16.[1] Indeed, as recently as February 6,

---

[1] *See, e.g.*, Ex. A4, Scheduling Order, *Fusion Elite All Stars v. Varsity Brands, LLC*, No. 20-cv-2600 (W.D. Tenn. Oct. 15, 2020), ECF No. 61; Ex. A5, Case Mgmt Order No. 1, *Carbone v. Brown Univ.*, No. 22-cv-00125 (N.D. Ill. Sept. 8, 2022), ECF No. 195; Ex. A6, Order, *Uriel Pharm. Health & Welfare Plan v. Advocate Aurora Health, Inc.*, No. 22-cv-610 (E.D. Wisc. Aug. 16, 2023), ECF No. 41; Ex. A7, Prelim. Pretrial Conference Order, *Team Schierl Cos. v. Aspirus, Inc.*, No. 22-cv-00580 (W.D. Wisc. Feb. 24, 2023), ECF No. 35; Ex. A8, Pretrial Order No. 5, *In re: Google Digital Advertising Antitrust Litig.*, 21-md-3010 (S.D.N.Y. Nov. 21, 2022), ECF No. 394; Ex. A9, Case Mgmt. Order, *In re: Geisinger Health & Evangelical Community Hosp. Healthcare Workers Antitrust Litig.*, No. 4:21-cv-00196 (M.D. Pa. Feb. 7, 2022), ECF No. 80; Ex. A10, Stipulated Order Regarding Am. Case Schedule As Modified, *Simon and Simon, PC. v. Align Tech., Inc.*, No. 3:20-cv-03754 (N.D. Cal. May 13, 2021), ECF No. 106; Ex. A11, Case Mgmt. Order No. 1, *In Re: Broiler Chicken Grower Antitrust Litig.*, No. 6:17-cv-00033 (E.D. Okla. Apr. 13, 2020), ECF No. 312; Ex. A12, Further Am. Scheduling Order, *In re Lipitor Antitrust Litig.*, No. 3:12-cv-02389 (D.N.J. Oct. 1, 2019), ECF No. 899; Ex. A13, Corrected Seventh Am. Scheduling Order, *In re: Niaspan Antitrust Litig.*, No. 13-MD-2460 (E.D. Pa. Nov. 16, 2018), ECF No. 570; Ex. A14, Scheduling Order, *In re Dental Supplies Antitrust Litig.*, No. 16-cv-696 (E.D.N.Y. April 10, 2017), ECF No. 177; Ex. A15, Scheduling Order Regarding Discovery & Briefing on Mot. for Class Certif., *In re: Domestic Airline Travel Antitrust Litig.*, MDL No. 2656, 14-MC-01404 (D.D.C. Jan. 30, 2017), ECF No. 152; Ex. A16, Discovery Plan & Scheduling Order at 1, *Le v. Zuffa, LLC*, No. 2-15-cv-01045 (D. Nev. Oct. 14, 2016), ECF No. 311.

2024, in *Dale et al. v. Deutsche Telekom AG, et al.*, Judge Durkin rejected a bifurcated expert discovery schedule proposed by Gibson Dunn, RealPage's counsel in this litigation, and adopted a single round of expert reports, finding that the plaintiffs' approach was more likely to move the case forward expeditiously and efficiently. Ex. A17, Status Conf. Tr., Case No. 1:22-cv-03189 (N.D. Ill. Feb. 6, 2024). Similarly, in *Sky Federal Credit Union v. Fair Isaac Corp.*, Judge Chang ordered a single round of expert reports, to be followed by class certification and then summary judgment. Ex. A18, Minute Order, No. 20-cv-2114 (N.D. Ill. Oct. 17, 2023). In doing so, he also rejected an effort by defendants to bifurcate discovery into class and merits issues, noting that "there will likely be substantial overlap between the issues underlying the propriety of certification and those underlying the merits of the current Plaintiffs' claims." *Id.*

Defendants' approach also prejudices Plaintiffs. Defendants propose that Plaintiffs file their opening class certification report with *three months* left in fact discovery. Plaintiffs would be at a disadvantage in their opening class certification brief and expert report as Plaintiffs have the burden to demonstrate liability on a classwide basis while denied the benefit of a full discovery record to do so. It is easy to see how Defendants could avoid scheduling key witnesses until later in the discovery period, at which point Plaintiffs' experts would be forced to supplement the record upon reply. In contrast, Plaintiffs' approach ensures that class certification can be briefed on a full record and allows both sides access to all relevant evidence in their briefing.

Further, Defendants' approach invites multiple rounds of reports and *Daubert* proceedings (and multiple rounds of decision by the Court), with no corresponding benefits, given the significant overlap between class and merits issues. During meet and confers, Defendants argued that they could not submit merits reports without seeing how Plaintiffs' class was defined. But under Plaintiffs' proposal, Defendants would submit their merits reports only after Plaintiffs

9

Case 3:23-md-03071    Document 776-4    Filed 02/09/24    Page 9 of 12 PageID #: 14177

submitted their own class and merits reports (which would include the class definition), so that argument is a red herring. And even if the Court were to certify a smaller class, the only consequence would be an adjustment in classwide damages commensurate with that reduction in class membership. The specter of such a formulaic calculation (if required to be done) does not warrant an entire additional round of expert reports, depositions, and *Daubert* briefing.

**DEFENDANTS' POSITION:**[2]

This is the main area of disagreement between the parties. Defendants are not proposing a phasing or bifurcation of discovery and recognize that this Court's decision on class certification likely will involve at least a preliminary scrutiny of the merits of Plaintiffs' claims. But Defendants want this case to proceed in the most common way of (i) requiring Plaintiffs to file their class certification motion before the end of fact discovery, (ii) addressing any expert discovery and briefing related to class certification in connection with the class certification briefing, (iii) allowing separate "merits" related expert discovery following class certification, and (iv) scheduling summary judgment briefing to follow expert discovery. Plaintiffs, by contrast, seek to combine merits and class expert discovery and, as a result, to delay the filing of their class certification briefing until after the end of fact discovery, immediately preceding summary judgment briefing.

Defendants approach makes sense for this case for three reasons.

First, Defendants believe they have very strong arguments against class certification in this case. Plaintiffs profess to have a simple theory for certification, namely that use of RealPage's revenue management products constitutes an agreement to fix prices. Given Defendants' strong arguments against class certification, and Plaintiffs' claim that their class theory is straightforward,

---

[2] Defendants continue to reserve their right to move to strike certain named Plaintiffs' jury demands.

there is no reason Plaintiffs should need to wait two and a half years – until July 2026 – to file their motion for class certification. Defendants would like to get the class certification issue briefed sooner and decided more quickly, while still affording Plaintiffs a reasonable opportunity for discovery. Plaintiffs' contend they will be prejudiced by being required to file their class certification motion approximately 18 months from now, but do not specify any particular prejudice or even explain how this purported prejudice is consistent with the allegations Plaintiffs alleged in their operative pleading and or their arguments in opposition to Defendants' motion to dismiss.

Second, the class and merits discovery issues in this case are not identical. While there will be some overlap with between class and merits discovery, including expert discovery, Defendants expect their certain merits expert evidence and issues will be broader than the issues relevant to class certification and will address issues relevant to summary judgment. To cite just one example of such evidence, as Defendants stated in their meet and confer with Plaintiffs (but differently than Plaintiffs describe the issue in their discussion), Defendants might well want to present additional expert testimony related to liability and damages in a particular alleged sub-market if the Court were to certify a sub-class for that market. Contrary to Plaintiffs' suggestions about efficiency, it would be terribly inefficient, costly, and burdensome for the parties and the Court to require Defendants to present during the class certification phase all of the expert testimony and underlying evidence that they need in order to oppose liability and damages in each of Plaintiffs' myriad alleged sub-markets during the class certification briefing. Plaintiffs' concerns about duplication and inefficiency can be managed through discussions and agreements between the parties and do not provide a compelling justification for refusing to allow any post-class certification expert discovery.

11

Case 3:23-md-03071    Document 776-4    Filed 02/09/24    Page 11 of 12 PageID #: 14179

Third, Defendants expect to have strong arguments for summary judgment in this case and Defendants' proposal will allow *Daubert* briefing on merits experts issues close in time to the summary judgment briefing, rather than nearly a year earlier, as Plaintiffs propose. Defendants believe that this proximity will allow the Court to make a better decision about what expert evidence satisfies the *Daubert* standard and should be considered for purposes of deciding the summary judgment motions.