# EXHIBIT A1

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **IN RE CATTLE ANTITRUST LITIGATION** | Case No. 19-cv-1222 (JRT/HB) |
| *This document relates to:*<br><br>ALL CASES | **ORDER ON DISCOVERY PENDING RESOLUTION OF MOTIONS TO DISMISS** |
| KENNETH PETERSON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JBS USA FOOD COMPANY HOLDINGS, et al.,<br><br>Defendants. | Case No. 19-cv-1129 (JRT/HB) |

On July 10, 2019, three putative antitrust class actions were consolidated under the caption *In Re Cattle Antitrust Litigation*, Case No. 19-cv-1222 (JRT/HB) (hereafter "*In Re Cattle*") for pretrial purposes. (Order at 2–3 [Doc. No. 88].) About two weeks before the *In Re Cattle* cases were filed, Kenneth Peterson and several other plaintiffs had filed a non-class action complaint against a number of the same defendants. *See Peterson v. JBS USA Food Co. Holdings,* Case No. 19-cv-1129 (JRT/HB) (hereafter "*Peterson*"). Plaintiffs in both *In Re Cattle* and *Peterson* filed first amended complaints on July 15, 2019 [Doc. No. 92 in *In Re Cattle*; Doc. No. 53 in *Peterson*] and second amended complaints in October 2019 [Doc. No. 125 in *In Re Cattle*] or November 2019 [Doc. No. 114 in *Peterson*]. Generally, the plaintiffs in all of these matters, some of whom are

purchasers of beef and others suppliers of cattle, allege that the defendants conspired or colluded to artificially raise, fix, or maintain prices in the cattle and beef market in violation of federal antitrust laws.

On November 13, 2019, pursuant to a schedule established by the Court with the agreement of the parties, Defendants filed motions to dismiss in *In Re Cattle* [Doc. Nos. 139, 143, 146, 148, 150]. The *Peterson* Defendants filed motions to dismiss on December 10, 2019 [Doc. Nos. 117, 122, 124, 126, 128]. The motions to dismiss are currently scheduled for hearing before the Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota, on June 8, 2020. On February 25, 2020, the parties filed a Joint Status Report and Letter Brief, with proposed orders and summaries describing their respective positions on whether and to what extent discovery and/or discovery planning should go forward while the motions to dismiss are pending. [Doc. No. 192 in *In Re Cattle*; Doc. No. 143 in *Peterson*.][1] A case management conference was held before the undersigned on March 3, 2020, at which the Court heard further arguments. [*See* Doc. No. 193 in *In Re Cattle*; Doc. No. 144 in *Peterson*.]

Based upon all of the files, records, and proceedings herein, the Court orders that, absent agreement of the parties or further order of the Court, the following discovery will proceed in these matters as to all parties *other than JBS, S.A.*, and all other discovery

---

[1] The Parties filed identical Joint Status Report and Letter Briefs with exhibits and proposed orders in *In Re Cattle* and *Peterson*. For convenience, the Court will cite only to the *Peterson* submissions in this Order.

2

(including all discovery as to JBS, S.A.) will be stayed pending resolution of Defendants' motions to dismiss.

1. **Rule 26 and Rule 16**:

   a.   The parties must serve Rule 26(a)(1) Initial Disclosures on or before **May 15, 2020**.

   b.   Except as provided herein and in the Order Regarding Production of Electronically Stored Information and Paper Documents, filed contemporaneously herewith, the Parties will not be required to engage in a Rule 26(f) conference at this time.  However, if the motions to dismiss are denied in whole or in part, the Parties must engage in a Rule 26(f) conference as to all remaining claims no later than 21 days after the decision is filed, and must file the Rule 26(f) report no later than 35 days after the decision is filed. The Court will enter a separate order setting the Rule 16 conference, if necessary, shortly after the decision is filed.

2. **Documents and purchase/sale data produced to government regulators**:  The Court declines at this time to order Defendants to produce the documents and purchase/sale data produced to government regulators as described in Plaintiffs' Proposed Order Regarding Discovery [Doc. No. 143-1 at 58-59 in *Peterson*], and records of live cattle futures and options transactions [*id.* at 65].  Similarly, the Court declines at this time to order Plaintiffs to produce sales and purchase records as described in Plaintiffs' Proposed Order [*id.*].  The Court is not persuaded that

3

the documents sought from Defendants are so easily identified and gathered and so clearly relevant in their entirety that they should be excepted from the parties' agreement to forgo document production pending resolution of the motions to dismiss.  Furthermore, any such requests should be made and responded to pursuant to Federal Rule of Civil Procedure 34.  And, since the Court is not going to order Defendants to produce such documents at this time, it follows that Plaintiffs should not be required to produce the categories of sales and purchase records identified in Plaintiffs' Proposed Order.

3.   **Initial Rule 34 Requests**:

a.   Plaintiffs and Defendants may serve initial Rule 34 requests on or after **May 29, 2020**, as follows:

   i.   The *In Re Cattle* Plaintiffs, collectively, and the *Peterson* Plaintiffs, collectively, may each serve no more than 20 Rule 34 requests on each Defendant.

   ii.   Defendants, collectively, may serve no more than a total of 20 Rule 34 requests on each Plaintiff.  They may serve common requests or defendant-specific requests, or a combination thereof, but they must meet and confer with each other about any requests to be served to assure that this limit is not exceeded.

4

b.       Unless otherwise agreed, the Parties shall serve written objections and responses to the initial Rule 34 Requests within 30 days of service of the requests.

c.       The Parties are to meet and confer about the initial Rule 34 requests within 30 days of service of the responses.

d.       Except as specifically provided herein, no Party will be required to produce documents responsive to the initial Rule 34 requests until further order of the Court.

4.       **Additional steps**: Plaintiffs and Defendants must disclose the documents and/or information described in Attachment 1 on or before **May 22, 2020**, without the need for a request pursuant to Rule 34, unless a different deadline for disclosure is agreed to by the Parties or ordered by the Court.

## MEMORANDUM

### I.    The Parties' Positions on Conducting Discovery While the Motions to Dismiss Are Pending

Significantly, neither side in these cases has urged the Court to adopt an "all or nothing" approach to moving forward with discovery planning while the motions to dismiss are pending, although their respective positions about what should occur during the interim are materially different.  The parties agreed to negotiate a Stipulated Protective Order and an ESI Protocol.  They did so and submitted proposed orders with a

5

few areas of disagreement left for the Court to resolve. [Doc. No. 143-1 at 1-29 (ESI Protocol) and Doc. No. 143-1 at 30-55 (Protective Order) in *Peterson*.] The Court has resolved those disputes and has entered a Protective Order and an Order Regarding Discovery of Electronically Stored Information and Paper Documents, contemporaneously with the filing of this Order.

Plaintiffs further proposed, however, that the parties undertake the following additional tasks while the motions to dismiss are pending:

1. Parties exchange Rule 26(a) disclosures, participate in a Rule 26(f) conference and file a Rule 26(f) report, and appear for a Rule 16 scheduling conference;

2. Defendants produce certain documents and communications previously provided to regulators, and transaction reports previously provided to the United States Department of Agriculture, as more specifically described in Plaintiffs' Proposed Order Regarding Discovery [Doc. No. 143-1 at 58-59, 65 in *Peterson*];

3. *In Re Cattle* Plaintiffs produce records of fed cattle sales and live cattle transactions, and *Peterson* Plaintiffs produce records of beef purchases, as more specifically described in Plaintiffs' Proposed Order Regarding Discovery [*id.* at 65];

4. *In Re Cattle* and *Peterson* Plaintiffs serve up to thirty Rule 34 requests each on Defendants, in response to which Defendants would serve written objections (but not produce documents) and the parties would meet and confer.

5. Parties make disclosures regarding organizational charts, document retention and technology use policies, and information pertaining to email systems, data sources, and inaccessible data, ESI systems, as more specifically described in Plaintiffs' Proposed Order Regarding Discovery [*id.* at 61-66].

(Joint Status Report and Letter Brief at 7[2] [Doc. No. 143 in *Peterson*].) Plaintiffs argue these tasks would allow the parties to make substantial progress on threshold discovery

---

[2] The Court cites to the page numbers assigned by the CM/ECF system for this document.

issues so that when, they anticipate, Defendants' motions to dismiss are denied, the parties will be positioned to move forward quickly and efficiently with, while avoiding for the time being the significant burden of loading, processing, reviewing, and producing custodial documents.  (*Id.* at 8.)

Defendants disagree, arguing that the additional disclosures sought by Plaintiffs would require them to gather broad categories of information for a six-year period at significant expense.  (*Id.* at 14, 16.)  Thus, Defendants object, the additional tasks requested by Plaintiffs would involve significant additional burden, and the ruling on the motions to dismiss could either end the case altogether or dramatically affect the scope of discovery and therefore of the associated tasks, including by impacting the assessment of both relevance and proportionality required by Federal Rule of Civil Procedure 26.  (*Id.* at 13-14.)  As a result, they argue there is a substantial risk that much of the effort associated with these tasks would be wasted, either because they would have to be redone in light of the rulings on the motions to dismiss, or because those rulings could make some of the work irrelevant and unnecessary or even eliminate the need for any discovery whatsoever.  Defendants further argue the similar tasks ordered by this Court in *In Re Pork Antitrust Litigation,* Case No. 18-cv-1776 (JRT/HB) consumed hundreds of hours of attorney and client time and significant client resources only to have Chief Judge Tunheim grant Defendants' motions to dismiss in that litigation.  (*Id.* at 15.)  Defendants urge the Court to "take a peek" at the merits of the pending motions to dismiss in these cases and predict that those motions, too, will be granted, rendering any discovery efforts at this stage unnecessary and wasteful.  (*Id.* at 13.)  Defendants also argue that Plaintiffs'

7

demand for documents produced to a number of "regulators" would not be simple to gather and produce, calls for documents that are not relevant to the present claims even if they survive the pending motions, and amounts to an improper effort by Plaintiffs to fish for documents from Defendants to shore up their deficient claims. (*Id.* at 16.)

## II. Considerations Relevant to the Court's Rulings

A court has the discretion to stay discovery in whole or in part during the pendency of a motion to dismiss. *See Jones v. Clinton*, 72 F.3d 1354, 1361 (1996) ("The trial court has broad discretion to control the scheduling of events in matters on its docket."); *TE Connectivity Networks, Inc. v. All Systems Broadband, Inc.*, No. 13-cv-1356 (ADM/FLN), 2013 WL 4487505, at *2 (D. Minn. Aug. 20, 2013) ("[A] court may stay discovery for good cause shown."). Several factors may inform a court's decision whether to stay discovery while a motion to dismiss is pending, including the merits of the motion, the scope of the discovery, the potential harm to the plaintiff if discovery is delayed, the potential hardship or injustice to the defendant if discovery proceeds, and the resources of the parties and the Court. *See Dufrene v. ConAgra Foods, Inc.*, No. 15-cv-3796 (WMW/LIB), 2016 WL 10651947, at *2 (D. Minn. Apr. 7, 2016); *TE Connectivity*, 2013 WL 4487505, at *2. The Court has also taken into account the extent to which much of the information sought would necessarily be investigated and gathered as part and parcel of a diligent party's efforts to assure that it has taken the requisite reasonable steps to preserve relevant evidence.

The Court has considered the above factors, with the exception of the merits factor, in fashioning the relief and guidance described herein. As to the merits factor, this

Court is not inclined to "take a peek" and weigh in on the merits of motions that are presently pending before the District Court. While the Court recognizes that such motions were granted in *In Re Pork,* which involves many of the same attorneys and some similarity in the claims, the Court also notes that the allegations in the amended complaints at issue here are not identical. Furthermore, Judge Tunheim gave the plaintiffs the opportunity to amend their complaint in *In Re Pork* and the new round of motions to dismiss in that litigation are still pending. This Court is therefore not willing to hazard a guess as to whether Defendants' motions will be successful and on that basis stay all activity in the interim.

That said, the Court has also considered the possibility that some or all of the discovery sought from some or all Defendants could prove unnecessary if the motions are granted or granted in part. Thus, in resolving the issues presented by the motion to stay, the Court has taken into account the interests that favored deferring a significant burden of discovery that might ultimately prove unnecessary, as well as the interests that favored moving the litigation forward efficiently and expeditiously if the motions to dismiss are denied in whole or in part. Although there is no perfect way to meet all of those interests, the Court is persuaded there is a reasonable way to balance them so that significant and meaningful progress can be made on a number of fronts, while still conserving resources and moderating unfairness or prejudice. The Court believes the balance it has struck— while by no means eliminating the cost and burden to the parties, the risk that it could prove unnecessary, and the likelihood that there will need to be additional negotiations to refine the agreements and the parties' disclosures even if the motions are denied in whole

9

or in part—best assures the parties will make effective use of the time during which the motions are pending and lays the groundwork for a much more efficient discovery process if the motions are denied.

Accordingly, this Order, including Attachment I, together with the Protective Order and the Order Regarding Discovery of Electronically Stored Information and Paper Documents filed contemporaneously herewith, comprise the Court's rulings on the issues submitted by the parties in their Joint Status Report and Letter Brief.  Except as specifically set forth in these Orders, all other discovery shall be **STAYED** pending resolution of Defendants' motions to dismiss.


**IT IS SO ORDERED.**


Dated: April 14, 2020                         _s/ Hildy Bowbeer_____
                                                          HILDY BOWBEER
                                                          United States Magistrate Judge

10

**ATTACHMENT 1**

The parties will disclose the following documents and/or information for the period from January 1, 2014, to December 31, 2019, to the extent such documents exist and are readily available.

As part of these initial, limited disclosures, the parties need not disclose every document falling within items 1-6 or 8-9 below, but will disclose documents sufficient to show the requested information for each year at issue to the extent such documents exist and are readily available.  Such disclosures will be subject to a duty to supplement or amend the disclosures once discovery commences, and further subject to modification by any party upon a showing that complying with such disclosure would be unduly burdensome.

By providing information pursuant to these disclosures, the parties do not waive or limit their respective rights to object to, or oppose, any request for further disclosure or discovery.

The omission of any particular category of documents from this Order does not preclude the parties from seeking such documents in discovery once discovery commences.  In making the disclosures pursuant to this Attachment, a disclosing party is not making any representations regarding whether it may use any documents, people, or information in support of its claims or defenses, reserves all rights to challenge the relevance of any disclosures, and is not agreeing that the persons disclosed possess information relevant to the claims or defenses.

11

1.    **Organizational Charts**:

    a.    **Defendants**:

        i.    Organizational charts sufficient to show the names and titles of individuals with the following positions or responsibilities relating to cattle and/or beef:

            1.    member of the board of directors;

            2.    all executives with the title of Director, Vice President, or higher (such as SVP, CEO, COO, CFO, etc.), as well as their administrative assistants or secretaries;

            3.    investor and/or creditor relations;

            4.    the person or persons (if any, and excluding any clerical-level or administrative-level personnel) who have primary responsibility for:

                a.    fed cattle procurement;

                b.    slaughter plant scheduling and/or operation;

                c.    beef sales; and

                d.    submitting purchase and sale data to the USDA pursuant to the Livestock Mandatory Reporting Act.

            5.    the person or persons who supervise the department responsible for beef or carcass sales to, purchases from, trades with, or co-packing transactions with other beef packers;

12

6.      all executives with the title of Director, Vice President, or higher, as well as certain limited executives with the title of Manager,[3] whose primary responsibilities include determining or approving a Defendant's fed cattle procurement, slaughter levels, beef production levels and sales volumes and prices, and who were an officer or board member of, or otherwise formally-designated participant (such as a member of a relevant committee) of any of the following:

      a.      National Cattlemen's Beef Association;

      b.      U.S. Meat Export Federation;

      c.      North American Meat Institute;

      d.      Global Roundtable for Sustainable Beef; and

      e.      U.S. Roundtable for Sustainable Beef.

7.      all executives with the title of Director, Vice President, or higher, as well as certain limited executives with the title of Manager, whose primary responsibilities include determining or approving a Defendant's own fed cattle pricing,

---

[3] "Manager," as used in this subparagraph and in subparagraph 7 below, includes only individuals whose position makes them the highest level executive overseeing a specific beef complex, but not individuals with the position of "manager" who report to such individuals.

procurement, or slaughter levels, and/or Defendant's own beef pricing, inventory, export and production levels.

ii.    Defendants may create a list of individuals with the job responsibilities listed in item 1(a)(i) above in lieu of producing a formal organizational chart, so long as such a list provides, to the extent the information is readily available, the individual's name, title, the time period during which they held that title, and for item 1(a)(i)(6) above, the name of the trade association of which they were an officer, board member, or formally-designated participant and any committee memberships held.

iii.   With respect to items 1(a)(i)(4), 1(a)(i)(5), and 1(a)(i)(7) above, to the extent that a particular position at a Defendant's cattle and/or beef facilities typically fulfills the particular job responsibility at issue, a Defendant may simply identify that position and the estimated number of individuals who have held that position during the relevant period.

b.   **Producer Plaintiffs[4]:** Organizational charts sufficient to show the names and titles of individuals in the following positions or responsibilities:

---

[4]  Because Defendants opposed these additional disclosures altogether and therefore (the Court presumes) may not have weighed in on the specifics of the obligations described, the Court cannot tell whether the types of Plaintiff organizational information identified in paragraphs 1(b) and 1(c) addresses Defendants' needs at this juncture to a comparable extent as the Defendant organizational information described in paragraph 1(a) does for Plaintiffs.  *Cf. Order Regarding Disclosure of Information in In Re Pork,* Case No. 18-cv-

14

       i.      all executives with the title of Director, Vice President, or higher; and

      ii.     individuals whose primary responsibilities include the marketing of that Plaintiff's cattle.

**c.**    **Organization Plaintiffs**:   Organizational charts sufficient to show the names and titles of individuals in the following positions or responsibilities:

       i.      all executives with the title of Director, Vice President, or higher; and

      ii.     individuals with primary responsibility for managing that Organization's activity in respect of the fed cattle market.

**d.**    *Cattle* Plaintiffs may create a list of individuals with the job responsibilities listed above in paragraphs 1(b) and (c) in lieu of a formal organizational chart, so long as such a list provides, to the extent the information is readily available, the individual's name, title, and the time period during which they held that title.

**2.**    **Email Systems**: Identification of the email system used, including the name of the email system, version number (including applicable dates for different versions, if readily available), and time period or number of days for which email is retained on the system.

---

1776, ECF No. 290 at 5-6.  The parties are instructed to meet and confer in good faith regarding whether additional information regarding Plaintiffs' organizations and the individuals who filled various roles within those organizations is reasonably required and should be produced by Plaintiffs at this time.

3.     **Non-custodial Data Sources**: A list of known non-custodial data sources (*e.g.*, shared drives, servers, etc.), if any, likely to contain discoverable ESI.  These lists will identify the databases that are likely to contain discoverable "structured data."

4.     **Document Retention Policies:** Document retention and/or destruction policies, including policies or systems that automatically deleted certain types of documents or data (*e.g.*, email) after a certain period, that applied to documents and data likely to be relevant to the claims or defenses in these cases and that were in effect at any time during the period from January 1, 2014, to December 31, 2019.

5.     **Employee Technology Use Policies:** Employee Technology Use Policies in effect during the period of January 1, 2014, to December 31, 2019, including (if they exist) policies concerning use by employees of cellphones, notebook computers, and tablets for business purposes.  Without intending to limit, such policies may go by the following names: bring-your-own device (BYOD) policies, choose-your-own-device (CYOD) policies, corporate-liable-employee-owned (CLEO) policies, corporate-owned/personally enabled (COPE) policies, mobile-device-management (MDM) policies, and dual-use device policies. Plaintiffs and Defendants will disclose if they had no such policies during the identified time period.

6.     **Inaccessible Data:** A list of known data sources, if any, likely to contain discoverable ESI and that the party asserts are not reasonably accessible under Rule 26(b)(B) or Rule 26(b)(2)(C)(i).