# EXHIBIT A2

# UNITED STATES DISTRICTCOURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE CATTLE ANTITRUST LITIGATION<br><br>*This document relates to:* ALL CASES | Case No. 0:19-cv-1222 (JRT/HB)<br><br>**ORDER REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS** |
| KENNETH PETERSON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JBS USA FOOD COMPANY HOLDINGS, et al.,<br><br>Defendants. | Case No. 0:19-cv-1129 (JRT/HB) |
| IN RE DPP BEEF LITIGATION<br><br>*This document relates to:* ALL CASES | Case No. 0:20-cv-1319 (JRT/HB) |
| ERBERT & GERBERT'S, INC.,<br><br>Plaintiff,<br><br>v.<br><br>JBS USA FOOD COMPANY HOLDINGS, et al.,<br><br>Defendants. | Case No. 0:20-cv-1414 (JRT/HB) |

Pursuant to the Joint Stipulation for Entry of Proposed Order Regarding Production of Electronically Stored Information and Paper Documents (ECF No. 196 in

19-cv-1129, ECF No. 270 in 19-cv-1222, ECF No. 90 in 20-cv-1319, ECF No. 63 in 20-cv-1414), entered into by the parties,

**IT IS HEREBY ORDERED** that the Joint Stipulation is **APPROVED** and this Order ("ESI Protocol Order") shall govern the Parties in the above-captioned cases whether they currently are involved or become so in the future, and any related actions that may later be consolidated with any of these cases (collectively, the "Litigations").

I.   **GENERAL PROVISIONS**

   A.   **Applicability:**  This ESI Protocol Order will govern the production of ESI and paper documents.  To the extent that a Party collected and processed documents prior to the entry of this ESI Protocol Order, and production of such documents cannot be made in accordance with the terms of this ESI Protocol Order, the Parties will meet and confer concerning the potential formats of the production of any such documents.

   B.   **Limitations & Non-Waiver:**  Nothing in this ESI Protocol Order shall be construed to affect the admissibility of discoverable information.  All objections to the admissibility of any documents are preserved and may be asserted at any time.  Pursuant to the terms of this ESI Protocol Order, information regarding search process and electronically-stored information ("ESI") practices may be disclosed, but compliance with this ESI Protocol Order does not constitute a waiver, by any Party, of any objection to the production of particular ESI for any reason, including as irrelevant, undiscoverable, or otherwise inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party.  For the avoidance of doubt, a Party's compliance with this ESI Protocol Order will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.  All parties preserve all such privileges and protections, and all parties reserve the right to object to any such privileges and protections.  Furthermore, this ESI Protocol Order and a Party's stipulation thereto shall not constitute a waiver of (a) any jurisdictional defenses that may be available; (b) any affirmative defenses under Rule 8 of the Federal Rules of Civil Procedure, any defense listed in Rule 12(b) of the Federal Rules of Civil Procedure, or otherwise (including but not limited to any defense based on ineffective service), or (c) any other statutory or common law defenses that may be available to Defendants.  Defendants expressly reserve their rights to raise these and any other defenses available to them.

**C.      ESI Liaisons:**

1.      **Designation:**  Each Party agrees to designate an ESI Liaison within 14 days after entry of this ESI Protocol Order.  Any Party is free to change its designated ESI Liaison by providing written notice to the other Parties.

2.      **Duties of ESI Liaison:**  Each ESI Liaison will be prepared to participate in the resolution of any e-discovery disputes or ESI issues that may arise (or designate another person as primarily responsible) and have access to personnel most knowledgeable about the Party's electronic systems and capabilities in order to, as appropriate, answer pertinent questions.

   **Time Frame for ESI Issue Response:**  Each ESI Liaison will acknowledge receipt of an ESI-related inquiry from another ESI Liaison within 3 business days after the initial inquiry and respond substantively no later than 10 business days after the initial inquiry.  If the responding ESI Liaison believes the ESI issue in question is particularly complex or, in view of the current COVID-19 crisis, the resources required to address the issue are not reasonably available, and a substantive response will therefore require more than 10 business days, then within 10 business days the responding ESI Liaison will provide a general explanation of the process necessary to answer the question and provide an estimated response date.

**D.      Deadlines:**  References to schedules and deadlines in this ESI Protocol Order shall comply with Fed. R. Civ. P. 6 with respect to computing deadlines.

**E.      Definitions:**

1.      "Discovery Material" is defined as all information produced, given, or exchanged by and among all Parties, or received from non-Parties in the Litigations, including all deposition testimony, testimony given at hearings or other proceedings, interrogatory answers, documents and all other discovery materials, whether produced informally or in response to requests for discovery.  However, the Parties agree that the failure to separately produce each successive lesser-included email communication shall not be grounds to object to the authenticity of email communications at trial.

2.      "Plaintiffs" as used herein shall mean the putative class as
defined in the most recently amended Complaint(s) in the
Litigations. "Defendants" as used herein shall mean Defendants
named in the most recently amended Complaint(s) in the
Litigations. Plaintiffs and Defendants, as well as their officers,
directors, employees, agents, and legal counsel, are referred to
as the "Parties" solely for the purposes of this ESI Protocol
Order. A single Plaintiff or Defendant, as well as, where
applicable, its respective officers, directors, employees, agents,
and legal counsel, may also be referred to as a "Party" solely for
the purposes of this ESI Protocol Order.

3.      To avoid misunderstandings about terms, all Parties should
consult the most current edition of The Sedona Conference
Glossary.

**F.      Authenticity and Admissibility:**  Nothing in this ESI Protocol Order
shall be construed to affect the authenticity or admissibility of any
document or data. All objections to the authenticity or admissibility of
any document or data are preserved and may be asserted at any time.

**G.      Confidential Information:**   For the avoidance of doubt, nothing
herein shall contradict the Parties' rights and obligations with respect
to any information designated as confidential under any Protective
Order entered in this case.

**H.      Preservation:**   The Parties shall continue to take reasonable steps to
preserve relevant Documents and Electronically Stored Information
that may exist for a Document or ESI, in accordance with their
obligations under applicable law. By preserving or producing
information for the purpose of the Litigations, the Parties are not
conceding that such material is discoverable. The Parties will meet
and confer regarding the scope of preservation, including custodians,
data sources, date ranges, and categories of information that have been
or should be preserved in connection with the Litigations and
disclosures regarding custodians, data sources, date ranges, and
categories of information necessary to facilitate the Parties'
negotiations. In view of the Plaintiffs' claims of continuing violations
by Defendants, and the absence of specific evidence from which the
Court can make informed findings about whether reasonableness and
proportionality require a specific cut-off date for Defendants' respective
preservation obligations, the Court declines to adopt Defendants'
proposal regarding a cut-off date for the obligation to preserve ESI at
this time. However, the Parties shall meet and confer again following

4

issuance of a decision on the pending Motions to Dismiss about whether the scope of preservation should be revisited in light of the decision on the motions and/or other considerations of proportionality under Fed. R. Civ. P. 1, 26(b)(1), and 37(e).

## II.   **GENERAL PRODUCTION FORMAT PROTOCOLS**

A.   **TIFFs:**  Except for structured data, all production images will be provided as a black-and-white, single-page Group IV TIFF of at least 300 DPI resolution with corresponding multi-page text and necessary load files.  Each image will have a file name that is the unique Bates number of that image, pursuant to ¶ II(E).  Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a producing Party's vendor (i.e., portrait to portrait and landscape to landscape).  The imaged Data shall retain all attributes of the native or hard-copy file, such as document breaks.  Produced TIFF images will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions.  Hidden content, tracked changes or edits, comments, notes, and other similar information, to the extent viewable within a document in its native file format and visible in the form in which the electronic document was last saved, shall also be imaged so that such content is viewable on the image file.  Nothing in this subsection requires the modification or alteration of any document or data in order to make any hidden content, tracked changes or edits, comments, notes, and other similar information viewable if it is not already viewable in the form in which the electronic document was last saved.  Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively" or, in the alternative if applicable, "Exception File Unable to Be Imaged."  A producing Party retains the option to produce ESI in alternative formats if so agreed by the requesting Party, which may include native format, or a combination of native and TIFF formats.

B.   **Text Files:**  Each ESI item produced under this ESI Protocol Order shall be accompanied by a text file as set out below.  All text files shall be provided as a single document level text file for each item, not one text file per page.  Each text file shall be named to use the Bates number of the first page of the corresponding production item.

1.   **OCR:**  A producing Party will scan and OCR paper documents, unless the parties agree to a different procedure or the Court so requires.  Where OCR is used, the Parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology.  OCR text files should indicate page breaks where possible.  Even if OCR is used by a producing Party, however, the Parties acknowledge that, due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR.

2.   **Extracted Text:**  Except for redacted documents, emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available.  For redacted documents, Parties shall provide OCR text in accordance with the specifications in ¶ II(B)(1).

**C.**   **Production of Native Items:**  The Parties agree that ESI shall be produced as TIFF images consistent with the format described in ¶ II(A) with an accompanying load file, which will contain, among other data points, the ESI data points listed in Appendix 1 hereto.  The exception to this rule shall be spreadsheet-application files (e.g., MS Excel), presentation files (e.g., MS PowerPoint), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), for which all ESI items shall be produced in native format, except where there are issues with producing in such format (e.g., the file needs to be redacted for privilege).  For all other file types, parties shall not be required to provide native files unless so requested by another party, provided that such a request is reasonable under the circumstance.  In the case of personal database (e.g., MS Access) files containing confidential or privileged information, the Parties shall meet and confer to determine the appropriate form of production.  When producing the above file types in native format, the producing Party shall produce a single-page TIFF slip sheet indicating that a native item was produced.  The corresponding load file shall include NativeFileLink information for each native file that is produced.

1.   **Non-standard Native Files:**  The Parties agree to meet and confer prior to producing native file types other than spreadsheet application files, presentation files, and multimedia audio/visual file types such as .wav, .mpeg and .avi.   Prior to processing non-standard native files for production, the producing Party shall disclose the file type to, and meet and

6

confer with, the requesting Party about a reasonably useable production format. The Parties agree to meet and confer to the extent that there is data in database application files, such as SQL, to determine a reasonable form of production of usable data.

2. **Continued Preservation of Native Copies of Documents:** Through the pendency of the Litigations, the producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata.

D. **Requests for Other Native Files:** Other than as specifically set forth above, a producing Party need not produce documents in native format. If a Party would like a particular document produced in native format and this ESI Protocol Order does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format. The requesting Party will provide a specific Bates range for documents it wishes to be produced in native format. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix 1.

E. **Bates Numbering:**

1. All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant prefix and length (ten-digits and 0-padded) across the entire production; (3) contain no special characters or embedded spaces, except hyphens or underscores; (4) be sequential within a given document; and (5) identify the producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

2. If a Bates number or set of Bates numbers is skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

3. The producing Party will brand all TIFF images at a location that does not obliterate or obscure any part of the underlying images.

7

**F.** **Parent-Child Relationships:** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. For example, if a Party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable. The child-document(s) should be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

**G.** **Entire Document Families: Subject to Paragraphs II(K)(1) and II(K)(2) below,** entire Document families must be produced, even if only the parent email or an attachment to an email is responsive, excepting (1) junk files and non-user-created content routinely excluded during processing (provided such routine processing-generated exclusions are agreed to among the parties), and (2) documents that are withheld on the basis of privilege and in compliance with the parties' stipulation or the Court's order on such assertions of privilege.

**H.** **Load Files:** All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) as well as a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production.

**I.** **Color:** Documents or ESI containing color need not be produced initially in color. However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the requesting Party may, in good faith, request that the document or ESI item be produced in its original colors. For such documents, the requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in color. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). All requirements for productions stated in this ESI

Protocol Order regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format.  Requests that a document be produced in color for the reasons set forth in this paragraph will not be unreasonably denied by the producing Party.  If a producing Party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

**J.**   **Confidentiality Designations:**  If a particular paper document or ESI item qualifies for confidential treatment pursuant to any applicable federal, state, or common law (e.g., Personally Identifiable Information or Protected Health Information), or to the terms of a Protective Order entered by the Court in the Litigations or a confidentiality stipulation entered into by the Parties, the designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images.   This designation also should be included in the appropriate data field in the load file.  For documents produced in native format with image placeholders, the placeholder image for the native file should be branded with the appropriate confidentiality designation to the extent possible.  Requesting parties shall ensure that the confidentiality claim follows the document regardless of whether the designation imprints on the file when viewed in printed form.  Failure to comply with the procedures set forth in this ESI Protocol Order, any protective order or confidential order, or any confidential stipulation shall not waive any protection or confidential treatment.  The Parties recognize that document review using technological means may result in the application of greater or lesser confidentiality designations than otherwise appropriate.  The Parties agree to work together on an as-needed (and per document) basis to address any potential over (or under) designation.

**K.**   **Redactions**

1.   **Personal Data Redactions:**  A producing Party may redact personal information to the extent that the information falls within one of the following categories:  (1) the information relates to medical or health issues of an individual; (2) social security numbers, bank account information, or personal passcodes; or (3) personal contact information of friends or family to the extent they do not work in in the cattle or beef industry or work for a Party's competitors.  Such redactions should be identified as "Redacted – Personal Data" on the document.

9

2. **Redactions of Nonresponsive Highly Confidential Business Information**:  A producing Party may redact specific highly confidential business information relating to non-cattle or non-beef businesses provided (1) the redacted information is both nonresponsive and irrelevant; and (2) the redacted information would not assist in understanding or providing context for the relevant portion of the document or document family of which it is a part.  Such redactions must be identified as "Redacted – Highly Confidential Nonresponsive Information."

**L.**  **Production Media & Protocol:**  A producing Party may produce documents via email, readily accessible computer or electronic media, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"), or via file-sharing service, including any network-based secure file transfer mechanism or SFTP.  Any requesting Party that is unable to resolve any technical issues with the electronic production method used for a particular production may request that a producing Party provide a copy of that production using Production Media.  The producing Party may encrypt Production Media, and will provide a decryption key to the requesting Party in a communication separate from the production itself.

**III.**  **PAPER DOCUMENT PRODUCTION PROTOCOLS**

**A.**  **Scanning:**  Unless otherwise agreed to by the parties or ordered by the Court, a producing Party will scan and OCR paper documents and produce electronics copies.  Where OCR is used, the Parties agree that the following subparagraphs III(B)-III(E) shall apply.

**B.**  **Coding Fields:**  The following information shall be produced in the load file accompanying production of paper documents:  (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, and (g) Redacted (Y/N) or otherwise indicating that a redaction is present.  Additionally, all paper documents will be produced with a coding field named "Paper Document" marked with a "Y" or otherwise indicate that the document originated in paper, and such indication shall be explained to the requesting party.

**C.**  **Unitization of Paper Documents:**  Paper documents should be logically unitized for production to the extent reasonably practicable.  Generally, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records.  The Parties will make reasonable efforts to unitize documents correctly.

10

1. **Relationship:**  The relationship among the documents in a folder or other grouping should be reflected in proper coding of the beginning and ending document and attachment fields to the extent reasonably practicable.

2. **Identification:**  Where a document, or a document group – such as folder, clipped bundle, or binder – has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

**IV.   ESI METADATA FORMAT AND PROCESSING ISSUES**

**A.   System Files:**  ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing.   Other file types may be added to the list of excluded files if they clearly do not have user-created content.

**B.   Metadata Fields and Processing:**

1. **Time Zone:**  To the extent reasonably practicable, ESI items shall be processed using the Central Standard Time (CST) time zone (e.g., GMT).

2. **Auto Date/Time Stamps:**  To the extent reasonably practicable, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

3. Except as otherwise set forth in this ESI Protocol Order, ESI files shall be produced with at least each of the data fields set forth in Appendix 1 that can reasonably be extracted from a document.

4. The Parties are not obligated to manually populate any of the fields in Appendix 1 if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields:  (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, (g) Redacted (Y/N), and (h) NativeLink fields, which should be populated regardless of whether the fields can be populated pursuant to an automated process.

C.     **ESI Redactions:**

   1.   The Parties agree that, where ESI items need to be redacted, they shall be produced solely in TIFF format with each redaction clearly indicated, except in the case of personal database files (e.g., MS Access), which shall be governed by ¶ II(C), *supra*. The Parties understand that for certain MS Excel documents or other file types or files, TIFF redactions may be impracticable. These documents may be redacted in native format.

   2.   The Parties agree that the following list of metadata fields, if reasonably accessible and unnecessary to protect the privilege, will be produced in a metadata log (though it does not have to be in the order set forth below):

   a.   Privilege Asserted (e.g., Attorney Client Communication)
   b.   Privilege Status (e.g., redact or withhold)
   c.   Attorney/Description of Privileged Material
   d.   BegBates[1]
   e.   EndBates
   f.   BegAttach
   g.   EndAttach
   h.   Custodian
   i.   CustodianAll
   j.   LogicalPath
   k.   Email Thread ID
   l.   EmailSubject
   m.   Date Sent
   n.   Time Sent
   o.   Time Zone Used
   p.   To/From/CC/BCC
   q.   Page Count
   r.   Fingerprint (Hash value)
   s.   Subject
   t.   Author
   u.   DocExt
   v.   Confidentiality
   w.   Paper
   x.   Production Volume

---

[1]  A document being entirely withheld may not receive a Bates ID and an alternative ID may be provided.

12

Case 3:23-md-03071   Document 776-9   Filed 02/09/24   Page 13 of 29 PageID #: 14223

3.      If the items redacted and partially withheld from production  are audio/visual files, the producing Party shall, to the extent reasonably practicable, provide the unredacted portions of the content.  If the content is a voice recording, the Parties shall meet and confer to discuss the appropriate manner for the producing Party to produce the unredacted portion of the content.

**D.      Email Collection and Processing:**

1.      **Email Threading:**  The Parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression eliminate (a) the ability of a requesting Party to identify every custodian who had a copy of a produced document or email, or (b) remove from a production any unique branches and/or attachments contained within an email thread.

2.      **Email Domains:**   Producing parties may utilize an ESI search process to identify categories of documents, such as emails from domains typically associated with junk email, such as fantasy football-related emails, retailer advertising, and newsletters or alerts from non-industry sources.  To the extent a Party opts to exclude such uniquely identifiable email domain names as part of its initial filter of potentially responsive documents, the Parties agree to disclose domain names excluded under this paragraph and to meet and confer on the timing for such disclosures.

**E.      De-duplication:**  A producing Party may de-duplicate any file globally (i.e., across Document Custodians, *see infra* ¶ V(B)(1)) at the "family" level (i.e., families should not be broken due to de-duplication).  The producing Party will make a reasonable effort to identify all custodians who were in possession of any de-duplicated documents through an appropriate load file such as DuplicateCustodian or CustodianAll/Other.  Additionally, all BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field specified in Appendix 1 to the extent such metadata exists.  In the event of rolling productions of documents or ESI items, the producing Party will, as needed, supplement the load files with updated duplicate custodian

information, as well as BCC information to the extent such metadata
exists. Duplicate custodian information may be provided by a
metadata "overlay" and will be provided by a producing Party after the
Party has substantially completed its production of ESI.

1.  Duplicate electronic documents shall be identified by a
    commercially accepted industry standard (e.g., MD5 or SHA-1
    hash values) for binary file content. All electronic documents
    bearing an identical value are a duplicate group. The producing
    Party shall use reasonable efforts to produce only one document
    image or native file for duplicate ESI documents within the
    duplicate group to the extent practicable. The producing Party
    is not obligated to extract or produce entirely duplicate ESI
    documents. Any other methodology for identification of
    duplicates, including email field selection for hash value
    creation, must be discussed with the requesting Party and
    approved in writing before implementation.

2.  Duplicate messaging files shall be identified by a commercially
    accepted industry standard (e.g., MD5 hash values) for the
    email family, which includes the parent and email attachments.
    Duplicate messaging materials will be identified at a family
    level, including message and attachments. Email families
    bearing an identical value are considered a duplicate group.
    The producing Party shall use reasonable efforts to produce
    only one document image or native file for duplicate emails
    within the duplicate group to the extent practicable.

F.  **Zero-byte Files:** The Parties may, but are not required to, filter out
    stand-alone files identified as zero-bytes in size that do not contain
    responsive file links or file names. If the requesting Party in good faith
    believes that a zero-byte file was withheld from production and
    contains information responsive to a request for production, the
    requesting Party may request that the producing Party produce the
    zero-byte file. The requesting Party may provide a Bates number to the
    producing Party of any document that suggests a zero-byte file was
    withheld from production and contains information responsive to a
    request for production.

G.  **Microsoft "Auto" Feature:** To the extent reasonably practicable and
    technologically possible for a producing Party's vendor, Microsoft
    Excel (.xls) and Microsoft PowerPoint (.ppt) documents should be
    analyzed for the "auto" features, where documents have an
    automatically updated date and time in the document, file names, file

14

paths, or similar information that when processed would be inaccurate for how the document was used in the ordinary course of business.   If "auto date," "auto file name," "auto file path," or similar features are identified, the produced document shall be identified in a load file, metadata field, or otherwise as having these features.

**H.**   **Hidden Text:**  ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

**I.**   **Embedded Objects:**  The Parties agree that embedded objects within ESI items, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a producing Party (e.g., such embedded objects will be produced within the document itself, rather than as separate attachments).  If there is a reasonable need with respect to particular documents, then a receiving Party may request the producing Party to reproduce an ESI item with the embedded objects extracted as separate files (e.g., MS Excel objects embedded in a MS PowerPoint file).

**J.**   **Compressed Files:**  Compression file types (i.e., .CAB, .GZ, .TAR, .Z, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

**K.**   **Password-Protected, Encrypted, or Proprietary-Software Files:** With respect to any ESI items that are password-protected or encrypted within the scope of review, the producing Party will take reasonable steps based on industry standards to break the protection so that the documents can be reviewed and produced if appropriate.  In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the producing Party shall advise the requesting Party.  ESI that cannot be reviewed because proprietary software is necessary to view the ESI will be disclosed to a requesting Party, and the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

### V.   PARAMETERS FOR CULLING AND REVIEWING ESI AND PAPER DOCUMENTS:

#### A.   General Provisions:

1. Except for the negotiations specified below in Section V.B.1, the Parties will not negotiate the date range(s) applicable to the collection, review, and production of structured and unstructured data until after the Court issues an order or orders substantially denying the motions to dismiss.

2. **Meet and Confer**:

   a. Dispute Resolution:  If the Parties cannot reach agreement under the provisions of this Section V, any dispute may be presented to the Court.  All meet and confer sessions under this Section V will involve each Party's respective ESI Liaison.

3. **Non-Waiver**:  The Parties' discussion of proposed search terms, Document Custodians or Sources does not preclude a Party from requesting additional search terms, Document Custodians or Sources pursuant to the terms of this ESI Protocol Order, nor does it preclude a Party from objecting to any such additional requests.

#### B.   Document Custodians and Sources:[2]

1. **Initial Discussions About Scope of Document Discovery:** The Parties will commence discussions about the scope of initial discovery after the Initial Disclosures and the document productions pursuant to the Court's Attachment 1 (Dkts. 196 (*Cattle*) & 187 (*Peterson*)) have been served, as follows:

   a. The producing Parties will propose an initial list of (i) Document Custodians, (ii) non-custodial sources, and (iii) date ranges.

---

[2] The parties intend to incorporate into this section the Court's rulings set forth in the August 31, 2020 Order Regarding Section V of Production of Electronically Stored Information and Paper Documents (Dkts. 250 (*Cattle*) and 183 (*Peterson*)) and the September 8, 2020 Second Order on Discovery Pending Resolution of Motions to Dismiss ((Dkts. 254 (*Cattle*) and 187 (*Peterson*)).  To the extent there is any conflict between this section and those two orders, the orders will control.

16

    i.        For proposals made prior to the ruling on the motions to dismiss, the producing Party shall assume that, at a minimum, the following presumptive date range[s] shall apply:  (a) for unstructured data, January 1, 2012, to June 30, 2020; and (b) for structured data, January 1, 2009, to June 30, 2020.

    ii.       In making the initial proposal, the producing Party will consider, on a request-by-request basis, whether it can agree to broader date ranges for particular requests.  The producing Party may also, on a request-by-request basis, ask the requesting Party to agree to narrower date ranges for particular requests.

    iii.    The producing Party's initial proposal on date ranges and any agreement reached by the Parties on date ranges are without prejudice to any Party seeking broader or narrower dates ranges following the ruling on the motions to dismiss.

b.    Pursuant to the Court's Order dated September 8, 2020 (Dkt. 187 (*Peterson*), the Parties in *In re Cattle* and *Peterson* shall serve updated initial proposals that reflect the presumptive date range ordered by the Court's August 31, 2020 Order [Dkts. 250 (*Cattle*) & 183 (*Peterson*)] by Tuesday, September 15, 2020.  The Parties in these cases shall serve their counterproposals by Tuesday, September 22, 2020.

c.    For the Parties in *DPP Beef* and *Erbert & Gerbert's*, this initial proposal shall be sent by the producing Party to the other Parties at the same time the producing Party serves its written responses to the requests for productions authorized by the Court's Order dated September 8, 2020 (Dkt. 187 (*Peterson*)).

d.    Within 14 days of receipt of the producing Party's initial proposal, all other Parties in *DPP Beef* and *Erbert & Gerbert's* will be allowed to propose additional Document Custodians or non-custodial document sources as well as make any counter-proposals on date ranges.

e.   <u>Plaintiffs' Custodians and Noncustodial Sources</u>:  The Parties may meet and confer separately regarding the proposals and counterproposals regarding Plaintiffs' custodians and noncustodial sources.  The *Cattle* and *Peterson* Parties are to meet and confer by Friday, October 30, 2020.  The *DPP Beef* and *Erbert & Gerbert's* Parties are to meet and confer within 21 days of the Defendants' counterproposal.  The meet and confers may occur either in conjunction with or following the meet and confers regarding Plaintiffs' Rule 34 responses and objections.

f.   <u>Defendants' Custodians and Noncustodial Sources</u>:  The parties shall meet and confer regarding the proposals and counterproposals regarding Defendants' custodians and noncustodial sources by Friday, October 30, 2020.  These meet and confers shall occur either in conjunction with or following the meet and confers regarding Defendants' Rule 34 responses and objections.  To the extent the *Cattle*, *Peterson*, *DPP Beef*, and *Erbert & Gerbert's* Parties do not take common positions as to Defendants' custodians and noncustodial sources due to the differences between the cases, the Parties may, after their initial meet and confers, break into separate meet and confers to address any issues that are unique to that Plaintiffs' case.

g.   <u>Date Ranges</u>:  The Parties shall discuss their proposed and counter-proposed date ranges during their meet and confers regarding Rule 34 responses and objections.

h.   <u>Motion Practice</u>:  When conducting these meet and confers, the Parties should presume that the motions to dismiss are denied in their entirety.  Because decisions on the various motions to dismiss may differently impact the track of each of these cases, after the motions to dismiss are decided, and if those motions are not granted in their entirety, the Parties to that case, and any case decided contemporaneously, shall meet and confer within 10 days of that decision to determine whether that decision changes the scope of the case in a way that changes their positions regarding custodians, noncustodial sources, or date ranges.  Only thereafter

18

may the parties to those cases file motions to resolve any disputes regarding custodians, noncustodial sources, or date ranges.  The fact that the Court has rendered a different decision in relation to Defendants' motion to dismiss in one or more of the other cases captioned above, or has yet to issue a decision on such motions in the other cases, does not preclude a Party from bringing a motion to resolve a dispute in relation to custodians, noncustodial sources, and/or date ranges in their case.

    i.    Consistent with Section V.A.3 ("Non-Waiver"), the Parties' discussion of proposed Document Custodians and non-custodial document sources does not preclude a Party from requesting additional Document Custodians or non-custodial sources.

2.    **Additional Document Custodians/Sources/Dates:**  If, after the initial Document Custodian/Source/date negotiations and associated motion practice described in the preceding paragraph concludes, a requesting Party determines that additional Document Custodians/Sources should be added or a date range revised, then the requesting Party shall advise the producing Party in writing of the proposed revisions and the basis for the request(s).  If the Parties have not agreed whether to adopt the proposed revisions within 21 calendar days of the Requesting Party's request, then the Parties may bring the matter to the Court via motion within 21 calendar days or the issue is waived, unless the parties agree in writing to defer resolution of the issue.  The parties shall raise any such disputed revisions via a joint letter brief not to exceed five single-spaced pages, split equally between Plaintiffs and Defendants, unless the parties agree in writing to present the matter to the Court in a different format.  Submitting the dispute outside of a formal motion process will not waive any Parties' right to appeal the Court's decision.

3.    Except by agreement of the Parties or by order of the Court, a Producing Party is not required to add Document Custodians or Sources, or expand the date ranges, after the deadlines identified in ¶ V(B)(2) unless otherwise ordered by the Court.

**C.**    **Search Methodology Order:**  The Parties to each case will meet and confer to agree upon a search-methodology order regarding unstructured data that provides details and deadlines pertaining to the

search process only if and after the Court issues an order or orders substantially denying the motions to dismiss. The meet and confers will be conducted jointly with the parties to any case in which the Court contemporaneously issues an order or orders substantially denying the motions to dismiss in those cases. Unless otherwise agreed to by the Parties in writing, the Parties will complete their meet and confer process or submit any remaining disputed provisions to the Court via a joint letter brief no later than 30 calendar days after an order or orders substantially denying the motions to dismiss.

**D.**   **Structured Data:**  To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the Parties shall meet and confer in an attempt to agree upon a set of reasonable queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file for review by the requesting Party. Ahead of these meet and confers, the producing Party will also provide descriptions and/or definitions for the fields contained in their structured databases. Upon review of the report, the requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields. For the avoidance of doubt, the process set forth herein need not occur prior to the resolution of the pending motions to dismiss. This process shall commence in each case within 10 days after the entry of an order or orders substantially denying the motions to dismiss in that case. The meet and confers will be conducted jointly with the parties to any case in which the Court contemporaneously issues an order or orders substantially denying the motions to dismiss in those cases

**E.**   **Custodial Cellphone & Personal Communications Data:**

    1.   **Cellphones:**  For Document Custodians agreed on by the Parties or ordered by the Court, a producing Party will take reasonable steps to identify whether any unique, responsive, discoverable communications are located on any cellphones in the "possession, custody, or control" (as defined under the Federal Rules and case law) of the producing Party. Unless agreed otherwise, the following shall govern the identification of unique, responsive, discoverable, and non-privileged communications for cellphone-based data for the agreed or ordered Document Custodians with respect to cellphones in the possession, custody, or control of the producing Party. A

producing Party is obligated to disclose if it takes the position that a Document Custodian possesses a cellphone that was used for work purposes that is not within the producing Party's possession, custody or control; however, nothing in this ESI Protocol obligates a producing Party to subpoena a third-party to obtain the information describe below.  If a requesting Party intends to issue a third-party subpoena directed at an employee of a producing Party concerning that employee's cellphone that is not in the producing Party's possession, custody or control, the requesting Party will provide notice of its intent to the producing Party so that the Parties may meet and confer regarding the third-party subpoena.  The requesting Party may serve the subpoena 5 business days after the date of notice or at such earlier time agreed by the Parties.

a.    A producing Party shall use reasonable due diligence to ensure that reasonably available sources of data/applications on a cellphone (and related backups and archives, if those data sources/applications contain work-related information) are evaluated and considered as a potential source of data subject to discovery, including without limitation call and voicemail logs, text messages, contacts, and image files (e.g., pictures and videos).  A producing Party will disclose whether or not the producing Party claims that a cellphone used by the Document Custodian for work purposes is not within its possession, custody, or control and will not be subject to the discovery procedures outlined in this ESI Protocol unless agreed to by the relevant Parties or ordered by the Court.  A producing Party shall not be required to disclose any other cellphone-related information prior to any culling of cellphone data.

b.    A producing Party will consider the sources of information on a cellphone identified below, to the extent reasonably available, to identify unique, responsive, and discoverable information.  The Parties will also meet and confer regarding any culling of the sources of information below.

i.    **Cellphone Call and Voicemail Logs:**
The logs of any calls made/received to or from a Document Custodian, and logs of voicemails

21

on a cellphone that the Document Custodian used for work purposes, if any, if the cellphone is in the possession, custody, or control of a producing Party.

ii.     **Text Messages:** All text messages and/or iMessages, or any other type of message or chat on a Document Custodian's cellphone device used for work purposes, if any, if the cellphone is in the possession, custody, or control of a producing Party.

2.    **Contacts:** A Document Custodian's relevant contact files (e.g., contacts stored in a Document Custodian's Microsoft Outlook work account or cellphone-based contacts) in the possession, custody or control of a producing Party and reasonably available using standard collection tools will be produced, preferably as a Microsoft Excel (or .csv). A producing Party is entitled to redact or withhold information from the contacts file that does not relate to the Document Custodian's work—including, but not limited to, the name and contact information for any family or friends not involved in the cattle or beef industry. If, after reviewing the redactions, the requesting Party believes that more information is needed about the redactions, then the Parties will meet and confer regarding the information redacted, and the producing Party shall provide explanations for information redacted or withheld. Any document produced with redactions permitted under this ESI Protocol shall maintain the electronic search capabilities of the other, unredacted data in the spreadsheet, to the extent possible using the Parties' existing document review/production capabilities.

3.    **Social Media Data:** If a Document Custodian confirms that he or she (1) used social media for business purposes, and (2) used that social media to communicate with an employee of another Party or otherwise regarding a subject relevant to the Litigations and included within a Request for Production, subject to objections to that Request, then the requested communication(s) must be produced if it is reasonably accessible, in the producing Party's possession, custody, or control, and not withheld as privileged and/or as illegal to produce under applicable privacy laws. The Parties shall meet and confer about any issues relating to social media, including the scope of social media and

format of production.  A producing Party is obligated to disclose to a requesting Party if it takes the position that a Document Custodian possesses social media materials that are not within the producing Party's possession, custody or control so that a requesting Party may issue a subpoena to that Document Custodian; however, nothing in this ESI Protocol obligates a producing Party to subpoena a third-party to obtain such social media materials.  If a requesting Party intends to issue a third-party subpoena directed at an employee of a producing Party concerning that employee's social media materials that are not in the producing Party's possession, custody or control, the requesting Party will provide notice of its intent to the producing Party prior to the service of the subpoena so that the Parties may meet and confer regarding the third-party subpoena.  The requesting Party may serve the subpoena 5 business days after the date of notice or at such earlier time agreed by the Parties.

## VI.   <u>THIRD PARTY DOCUMENTS</u>

A.    A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that the Parties to the Litigations have requested that third parties produce Documents in accordance with the specifications set forth herein. The Issuing Party shall timely notify other Parties when it receives non-party productions, and shall, upon request by other Parties ("Requesting Parties" for purposes of this paragraph), provide copies of such productions to Requesting Parties in the format in which they were received from the third-party.  A party may, but is not obligated to, work to reduce the burden of a third-party by assisting them with creation of a load file in compliance with this ESI Protocol so long as they notify other parties they have done so and provide copies of that compliant load file to Requesting Parties upon request.

## VII.   <u>MISCELLANEOUS PROVISIONS</u>

A.    **Inaccessible ESI:**  If a producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are inaccessible or otherwise unnecessary under the circumstances, or if the requesting Party asserts that, following production, certain ESI is not reasonably usable, the  Parties shall meet and confer with their respective technology experts to discuss resolving such assertions. If the Parties cannot resolve any such disputes after such a meet and

confer has taken place, the issue shall be presented to the Court for resolution.

**B.** **Variations or Modifications:** Variations from this ESI Protocol Order may be required. Any practice or procedure set forth herein may be varied by agreement of all affected Plaintiffs and all affected Defendants, which will be confirmed in writing. In the event a producing Party determines that a variation or modification is appropriate or necessary to facilitate the timely and economical production of documents or ESI, the producing Party will notify the requesting Party of the variation or modification. Upon request by the requesting Party, those Parties will meet and confer to address any issues in a reasonable and timely manner prior to seeking Court intervention.

**C.** **Party Coordination**: The Court expects the Parties to work together to coordinate discovery in the above-captioned cases, where appropriate and practicable, in a manner that reduces needless duplication and inefficiency, keeping in mind the goal of Federal Rule of Civil Procedure 1 to promote the just, speedy, and inexpensive resolution of these cases.

**IT IS SO ORDERED.**

Dated:  September 25, 2020                  s/ *Hildy Bowbeer*
                                            HILDY BOWBEER
                                            United States Magistrate Judge

## Appendix 1:  ESI Metadata and Coding Fields

Parties shall endeavor to produce all ESI files with at least each of the data fields set forth in Appendix 1, to the extent that the data field can reasonably be extracted from a document.   For clarity, consistent with the other provisions of this ESI Protocol, parties are not obligated to manually populate any of the fields listed here.

| Field Name[3] | Populated For *(Email, Edoc, Calendar, Contact, Cellphone, or All)* | Field Description |
|---|---|---|
| BegBates | All | Production Control Number for start of document. |
| EndBates | All | Production Control Number for end of document. |
| BegAttach | All | Control Numbers (First production Bates number of the first document of the family). |
| EndAttach | All | Control Numbers (Last production Bates number of the last document of the family). |
| Attachment Count | All | Number of attachments |
| Custodian | All | Custodian name (ex. John Doe). |
| DupCust, CustodianOther, or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| LogicalPath | All ESI Items | The directory structure of the original file(s).  Any container name is included in the path. |

---

[3]  Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol Order.

| Field Name[3] | Populated For *(Email, Edoc, Calendar, Contact, Cellphone, or All)* | Field Description |
|---|---|---|
| Hash Value / Fingerprint | All | The I\1D5 or SHA-1 hash value. |
| NativeFile | All | Native File Link. |
| Email Conversation ID or ECONVERSID | Email | The Outlook or Lotus Notes conversation Index. |
| Email Conversation Family ID, or ECONVERSFAM | Email | The Outlook or Lotus Notes Conversation Index from the email. For emails, this will be the Email Conversation Index, for attachments to an email, it will be the conversation index of the attachment's parent email. |
| EmailSubject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. |
| DateMod | Email, Edoc | Date the document was modified. |
| TimeSent | Email | Time email was sent. |
| TimeZoneUsed | All | Time zone used to process data during document collection and processing. |
| ReceiveTime | Email | Time email was received. |
| ReceiveDate | Email | Date email was received. |
| Meetingstartdate | Email | Start date of calendar entry |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| cc | Email | All recipients that were included on the "CC" line of the email. |

| Field Name[3] | Populated For (Email, Edoc, Calendar, Contact, Cellphone, or All) | Field Description |
|---|---|---|
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| Attachname | Email | File name of attachment |
| DateCreated | Edoc | Date the document was created. |
| FileName | Email, Edoc | File name of the edoc or email. |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| LastEditedBy | Edoc | Any value populated in the Last Edited by or Last Modified By field of the document properties. |
| DocExt | All | File extension of the document. |
| TextPath | All | Relative path to the document level text file. |
| Redacted | All | "X," "Y," "Yes," and "True" are all acceptable indicators that the document is redacted.  Otherwise, blank. |
| Withheld Placeholder | All | To the extent a document family member is fully withheld (on the basis of privilege or otherwise), and other documents in that family are produced, this field must be populated with a "Y". |
| Privilege | All | Populated if privilege is being asserted |

27

| Field Name[3] | Populated For (Email, Edoc, Calendar, Contact, Cellphone, or All) | Field Description |
|---|---|---|
| Paper | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Legend/Confidentiality | All | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |
| Production Volume | All | Production Volume Name |

28