# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: LOCAL TV ADVERTISING ANTITRUST LITIGATION | ) ) ) ) ) ) ) | MDL No. 2867<br>No. 18 C 6785<br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION & ORDER

In March 2023, the Court appointed the Honorable Richard A. Levie (Ret.), to serve as Special Master and rule upon pending motions relating to privilege log entries. (Dkt. 925). Defendants object to the Special Master Report and Recommendation No. 1 that addresses their privilege assertions as to guidelines, training materials, and other antitrust compliance materials. (Dkts. 1030, 1052). For the following reasons, the Special Master Report and Recommendation No. 1 [Dkts. 1030, 1033] is accepted in full.

### BACKGROUND

The Court assumes familiarity with the Special Master Report and Recommendation No. 1 ("R&R"), (Dkt. 1030), and the facts of this case set forth in detail in prior rulings, *see In re Local TV Advertising Antitrust Litigation*, No. 18 CV 6785, 2022 WL 3716202 (N.D. Ill. Aug. 29, 2022). Plaintiffs seek Defendants' "guidelines, training materials, and communications that concern compliance with the federal or state antitrust or competition laws." (Dkt. 1030 at 3). The R&R delineates which of these materials are protected by attorney-client privilege, work product doctrine, and the common interest exception. Defendants object. The parties' fight over the antitrust compliance documents has been thoroughly documented over the last two years, spanning across 21 briefs. (*Id.*)

1

Plaintiffs challenge the merits of Defendants' privilege claims, not the sufficiency of Defendants' privilege log entries. (*Id.*) Following Plaintiffs' motions to compel in August 2022, (Dkts. 677, 727, 728, 729, 730, 731, 732, 733), the Court appointed The Honorable Richard A. Levie (Ret.) in March 2023 to serve as Special Master to "consider and rule upon . . . pending motions relating to privilege log entries." (Dkt. 1030 at 12; Dkt. 925 at 2). The Special Master prioritized review of the challenged antitrust compliance materials and released his R&R in July 2023. (Dkt. 1060 at 4; Dkt. 1030).

The Special Master's findings and recommendations were based on: (1) an *in camera* review of the 304 contested documents; (2) lists identifying attorneys who appear in Defendants' privilege logs; (3) examination of Defendants' privilege logs; (4) briefs submitted by the parties; and (5) declarations by litigation counsel authenticating emails and letters exchanged in the meet and confer process. (*See* Dkt. 1060 at 5). The Special Master found that Defendants "largely failed to carry their burdens to establish that the attorney-client privilege or work product doctrine applied to the documents" and recommended that Defendants be ordered to produce 289 of the 304 withheld antitrust compliance materials. (*Id.* at 5–6; Dkt. 1030 at 5). The 175-page R&R and accompanying exhibits lay out the applicable legal standard in depth, findings on each of the contested documents, and responses to Defendants' arguments for privilege, including their (1) attempt to shift the burden of asserting privilege to Plaintiffs; (2) elements of attorney-client privilege; (3) the impact of internal dissemination of possibly privileged documents; and (4) the lack of Defendants' factual support for assertions of privilege. (*See* Dkts. 1030, 1033).

Unsurprisingly, Defendants objected to the R&R. (Dkt. 1052). Their objections are primarily concerned with (1) the Special Master's review process as they seek to supplement their privilege assertions with further extrinsic evidence; and (2) the legal standard the Special Master

2

applied in considering whether a document was privileged based on whether it contained client confidences. The parties agreed that the Court would review the Special Master's findings of fact for clear error, rulings on procedural matters for abuse of discretion, and findings of law de novo. (Dkt. 925 at 4).

## DISCUSSION

### a. Process and Extrinsic Evidence

First, Defendants argue that the Special Master's process was unreasonable and arbitrary as they were not given an opportunity to supplement their privilege assertions with additional extrinsic evidence before or after the *in camera* review. (Dkt. 1052 at 4). Under the circumstances, the Court finds the Special Master did not abuse his discretion in deciding to review the documents *in camera* without additional supplemental extrinsic evidence from the Defendants.

The Court reviews objections to process for abuse of discretion. The abuse of discretion standard is highly deferential; the Court will only disturb the Special Maser's decision if he has "acted unreasonably" or is "fundamentally wrong . . . clearly unreasonable, arbitrary, or fanciful." *Miller v. Chi. Transit. Auth.*, 20 F.4th 1148, 1153 (7th Cir. 2020); *Am. Nat. Bank & Tr. Co. of Chi.*, 406 F.3d, 867 878 (7th Cir. 2005) (internal citations omitted).

After the Special Master was appointed in March 2023, the parties determined he should prioritize his review of the antitrust compliance materials. (Dkt. 1060 at 4). Ultimately, the Special Master undertook an *in camera* review of the documents. (*Id.*; Dkt. 1052 at 11). When he reviewed *in camera*, the Special Master had available "more than 750 pages of briefing, more than 2,000 pages of supporting declarations, exhibits, and other materials, and more than 190 judicial opinions concerning Defendants' assertions of privilege." (Dkt. 1060 at 5). Though Defendants argue they should have been given a chance to supplement their privilege assertions in line with "typical practice," (Dkt. 1052 at 4), this step mainly occurs during privilege log objections, *before* resorting

3

to a time-consuming and costly *in camera* review. *See, e.g.*, *Wier v. United Airlines, Inc.*, No. 19 CV 7000, 2021 WL 1517975, at *17 (N.D. Ill. Apr. 16, 2021); *Crabtree v. Experian Info. Sols., Inc.*, No. 16 CV 10706, 2017 WL 4740662, at *3 (N.D. Ill. Oct. 20, 2017). Here, the Plaintiffs challenged the merits of the privilege claim itself. This dispute is well beyond the sufficiency of the privilege log, and it is within the judicial officer's discretion whether to allow additional factual evidence after *in camera* review. *See Sulfuric Acid Antitrust Litig.*, 432 F. Supp. 2d 794, 797 (N.D. Ill. 2006) (*Sulfuric Acid II*). It was not "fundamentally wrong" or "clearly unreasonable" for the Special Master to make his determinations based on the vast amount of information he had at his disposal and to resolve the parties' disputes with the best evidence of privilege, the documents themselves.

In fact, "[o]nly when the district court has been exposed to the contested documents and the specific facts which support a finding of privilege under the attorney-client relationship for each document can it make a principled determination as to whether the attorney-client privilege in fact applies." *Am. Nat. Bank.*, 406 F.3d at 880 n. 7 (citing *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000). This is precisely what the Special Master determined in his discretion. Defendants appear to agree on this point. As Defendants lay out and support with examples, "[e]xtrinsic evidence is not required to support a privilege claim—particularly, as here, where the document itself is submitted for *in camera* review." (Dkt. 1052 at 25); *Wier*, 2021 WL 1517975, at *17 ("The ultimate proof of privileged content is the disclosure of the content itself." (quoting *Washtenaw Cty. Employees' Ret. Sys. v. Walgreen Co.*, No. 15 CV 3187, 2020 WL 3977944, at *3 (N.D. Ill. July 14, 2020))); *SEC v. Hollnagel*, No. 07 CV 4538, 2010 WL 11586980, at *9 (N.D. Ill. Jan. 22, 2010) (noting that the Special Master's *in camera* review was done "in conjunction" with the defendants' declarations and privilege logs, so that "the privileged nature of

a communication may be established by the document itself and the circumstances relating to the communication"). While Defendants now desire to offer more extrinsic evidence, it was not an abuse of discretion for the Special Master to conduct the *in camera* review and make his determinations with the evidence in front of him years into the process. The Defendants cannot now complain that the Special Master actually delved into the substance and found many of their assertions unsupported. Ultimately in the context of attorney-client privilege, "[l]abels do not control; substance does." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, No. 17 CV 1973, 2018 WL 1804350, at *4 (N.D. Ill. Apr. 17, 2018).

Relatedly, Defendants take issue with the Special Master's proposition that, "[u]nless a document is crystal clear on its face that the attorney-client privilege or work product protection applies, only extrinsic evidence can possibly establish the validity of the proponent's claims." (Dkt. 1030 at 45). The Special Master found that Defendants "largely failed to carry their burdens to establish that the attorney-client privilege or work product doctrine" applied to their documents. (Dkt. 1030 at 5–6); *Shaffer v. Am. Med. Assoc.*, 662 F.3d 439, 446 (7th Cir. 2011) ("[T]he burden is on the seeking to invoke the privilege." (citing *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991))). Yet, Defendants argue that the Special Master did not provide notice of "the information he deemed necessary" to make privilege determination, (Dkt. 1052 at 22), and held them to a stricter evidentiary standard than required under the law using that proposition.

The Defendants extrapolate one sentence out of a 55-page opinion. To be clear, the sentence that Defendants take issue with is not a legal standard. Yet, Defendants incorrectly conflate the Special Master's language opining on the deficiencies of their submission with his espousing a standard. The context of the R&R's statement is important. The Special Master noted that the Defendants "uniformly elected not to proffer extrinsic evidence," only offered "assurances

5

that the withheld documents are privileged," and did not provide job descriptions of positions or complete attorney lists. (Dkt. 1030 at 45). Which left the situation where, "[u]nless a document is crystal clear on its face that the attorney-client privilege or work product protection applies, only extrinsic evidence [could] possibly establish the validity of the proponent's claims." (*Id.*) He observed, "had Defendants provided some extrinsic evidence as to why a document was created or how it was being used," *he could have* considered such evidence. (*Id.* at 48). Instead, Defendants provided the "bare reference to someone being an attorney" in their attorney lists and left out job descriptions of the individuals receiving communications. (*Id.*) The Special Master was merely opining on what he viewed as Defendants inadequate shouldering of their burden and any argument that he created a new standard mischaracterizes the R&R and ignores the over fifteen pages laying out the applicable legal standards.

Nor does the Court see any evidence in the Special Master's review that this nonexistent standard is one to which he held Defendants. The phrases "crystal clear" or "clear and convincing" do not appear once in the Special Master's findings on the documents. (*See* Dkt. 1033). In context, the Court reads this statement as criticism of the Defendant's submission and a reiteration of the law that the burden is on the party asserting privilege to come forward with facts necessary to establish privilege, as the Special Master outlined. (*See* Dkt. 1030 at 24–26).

In sum, the Special Master did not abuse his discretion by reviewing the records as presented by the parties, such as lists of identifying attorneys, the documents themselves, briefs, and the privilege logs. In any event, the Defendants failed to provide further extrinsic evidence, period. There is no mystery to what information is necessary to meet the burden of asserting privilege. Defendants desire a second bite at the apple to supplement their assertions. The Court sees no compelling reason to allow blanket supplementation at this juncture.

6

### b. Client Confidences and Legal Advice

The R&R sets forth the legal standard for attorney-client privilege, work product doctrine, and common interest exception to waivers in this jurisdiction. (Dkt. 1030 at 21–37). Here, Defendants' primary issue is whether legal advice, standing alone and "untethered" to client confidences, is privileged. (*Id.* at 24; Dkt. 1052 at 10). The Court declines to endorse the Defendants' expansion of attorney-client privilege to lawyer's statements to clients without the requisite showing that it was either in response to a request for legal advice or reveals client confidences.

The Court will briefly take this opportunity to address confusion on when the privilege applies to lawyer's statements to clients. Attorney-client privilege protects "confidential communications" made by a client to her lawyer "[w]here legal advice of any kind is sought . . . from a professional legal advisor in his capacity as such." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997); *see United States v. Brown*, 478 F.2d 1038, 1040 (7th Cir. 1985) ("[W]hat is vital to the privilege is that the communication be made in *confidence* for the purpose of obtaining *legal* advice *from the lawyer*." (quoting *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961))) (emphasis in original).[1] Though privilege is deemed generally to apply only to communications by the client, statements made by the lawyer to the client will be protected in

---

[1] The Seventh Circuit has articulated the following test for determining whether the attorney-client privilege attaches to a communication:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (quoting 8 John Henry Wigmore, Evidence in Trials at Common *217 Law § 2292 (1961)). The Court directs parties to Dkt. 1030 at 21–31 for a detailed account of the elements of attorney-client privilege. As Defendants take issue with the distinctions surrounding client confidences, the Court will not repeat this analysis.

circumstances where those communications rest on confidential information obtained from the client, or where those communications would reveal the substance of a confidential communication by the client. *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000); *see In re Witnesses Before the Special March 1980 Grand Jury*, 729 F.2d 489, 493 (7th Cir. 1984); *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 415 (N.D. Ill. 2006) (*Sulfuric Acid I*).

Defendants argue that "legal advice" that does not reveal client confidences is protected. (Dkt. 1052 at 6). Defendants' position purportedly rests on this circuit's decisions that communications from attorney to client are privileged only if they "constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence." *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990); *Carmody v. Bd. of Trs.*, 893 F.3d 397, 405 (7th Cir. 2018). The disjointed "or" after "advice," read out of context, lends to the conclusion that legal advice standing alone is privileged. However, read together in the context of the law in this circuit—as the Special Master thoroughly exhausted when examining the specific situation of antitrust compliance manuals—it is clear that statements by lawyers to clients must be tethered to or rest on client confidences in some way. (*See* Dkt. 1030 at 24). Moreover, public information such as legislation, regulations, or summaries of the law made in "an objective, neutral manner," are not privileged legal advice solely because an attorney was the author. (Dkt. 1030 at 27–28); *Sulfuric Acid I*, 235 F.R.D. at 431.

One way of assessing privilege based on client confidences is viewing the document and other evidence provided and determining whether a statement by a lawyer "rest[s] on confidential information obtained from the client," *Rehling*, 207 F.3d 1009, or "reveal[s], either directly or implicitly," the substance of a client confidence, *Defazio*, 899 F.2d at 625, 635 (allowing defendant's attorney to testify "only to what the IRS agent said to him, and that he later relayed

those statements to [the defendant]," which did not directly or indirectly reveal a client confidence); *see also United States v. Sadler*, 24 F.4th 515, 558 (6th Cir.), *cert. denied sub nom. Tempo v. United States*, 143 S. Ct. 169 (2022) (using *Defazio*'s reasoning to find that the attorney's testimony did "not disclose the contents of any meetings or conversations [with defendants]").

The thrust is whether the lawyer's statements reveal client confidences or reveal that legal advice was sought and obtained. To be sure, on the whole, lawyer's legal advice is not usually offered in a vacuum without a corresponding request for legal advice or confidence given from the client. This inference, however, is not presumed. To attribute lawyer's statements to clients without the requisite showing that it was either in response to a request for legal advice or reveals client confidences would be to expand attorney client privilege beyond its narrowly construed scope. (*See* Dkt. 1030 at 23–24) (finding no basis under the Supreme Court and Seventh Circuit law to expand "the scope of attorney-client privilege . . . [to] legal advice alone, which does not reveal client confidences"). Defendants' reading of the law would assume *all* statements of "legal advice" to indirectly reveal a client confidence or request for legal advice. But a privilege determination cannot be so speculative or far reaching. That is precisely why the asserting party has the burden to provide the facts and context to tether the privilege claim. No cases that Defendants cite provide the basis to reverse the R&R's conclusion.[2]

With antitrust compliance materials, they "tread[] in an area of privilege law that is generally recognized to be 'especially difficult,' namely, distinguishing . . . legal advice from . . . business advice." *Urb. 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 158 (N.D. Ill. 2020) (collecting cases and quoting *Am. Nat. Bank*, 406 F.3d at 879). When

---

[2] At any rate, the Special Master found all but 13 documents to *not contain legal advice*. The thirteen exceptions are TEGNA Privilege Log Nos. 212, 226, 227, 435, 464, 466, 508, 511, 512, 514, 615, 616, and 632. For these entries, the Special Master noted only that the documents did not contain client confidences or "legal advice reflecting [or based on a] client confidence[]." (*See, e.g.*, Dkt. 1033 at 165).

9

there is a mix of business and legal advice, the document is only protected if the primary purpose behind its creation is legal in nature. *United States v. Frederick*, 182 F.3d 496, 501 (7th Cir. 1999). The Court recognizes that distinguishing between business and legal advice is difficult. But, in the context of antitrust compliance documents, which are statements from a lawyer to a client, the Court reads the R&R to properly find that "client confidences" is the key thrust. "Neutral objective analyses" of the law or "articulation[s] of policy" are not privileged. *Sulfuric Acid* I, 235 F.R.D. at 431. Further, "ongoing requests . . . for legal advice regarding complex antitrust issues," are "not enough" to show client confidences were communicated or legal advice requested. *Id.* at 432.

Thus, the Special Master found that Defendants failed to meet their burden to tether these documents to client confidences or responses to requests for legal advice. The R&R reviewed the documents *in camera* and found for example, that the documents "contain[ed] no client confidences, no legal advice, and no legal advice reflecting client confidences," (Dkt. 1030 at 62, 107), or conversely "disclose[d] confidential client information and legal advice concerning that confidence," (Dkt. 1033). The Special Master noted that Defendants treatment of the term "legal advice" on their privilege log as "dispositive to the issue of privilege" was insufficient to back their assertions of privilege. (Dkt. 1030 at 42). "Unfortunately . . . saying so doesn't make it so." *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010).

## CONCLUSION

For the foregoing reasons, the Special Master Report and Recommendation No. 1 [Dkts. 1030, 1033] is accepted and Defendants' Objections are overruled [1052].

Date: January 16, 2024

Virginia M. Kendall
United States District Judge