1    IN THE UNITED STATES DISTRICT COURT
     MIDDLE DISTRICT OF TENNESSEE
2              NASHVILLE DIVISION

3

4

     IN RE:  REALPAGE, INC.,      ) Case No. 3:23-md-03071
5    Rental Software Antitrust    )
     Litigation (No. II), et al.  ) CHIEF JUDGE CRENSHAW
6

7    - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

8

9                  BEFORE THE HONORABLE

10      CHIEF DISTRICT JUDGE WAVERLY D. CRENSHAW, JR.

11              TRANSCRIPT OF PROCEEDINGS

12                    March 8, 2024
     - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
13

14

15

16

17

18

19

20

21

22

23   PREPARED BY:
                  LISE S. MATTHEWS, RMR, CRR, CRC
24                    Official Court Reporter
                  719 Church Street, Suite 2300
25                    Nashville, TN 37203
                  lise_matthews@tnmd.uscourts.gov

| | |
|---|---|
| 1 | **For the Plaintiffs**: |
| 2 | Tricia Herzfeld |
| 3 | Patrick Coughlin |
| 4 | Stacey Slaughter |
| 5 | Swathi Bojedla |
| 6 | Brendan Glackin |
| 7 | Daniel J. Walker |
| 8 | Michaela Wallin |
| 9 | Daniel Herra |
| 10 | Christian Levis |
| 11 | Joseph Saveri |
| 12 | Benjamin Widlanski |
| 13 | Walter Noss |
| 14 | |
| 15 | **For the Defendants**: |
| 16 | Thomas H. Dundon |
| 17 | Jay Srinivasan |
| 18 | Dan Fenske |
| 19 | David Cross |
| 20 | Boris Bernstein |
| 21 | Emily Collins |
| 22 | Alyse Stach |
| 23 | |
| 24 | |
| 25 | |

1          The above-styled cause came on to be heard on

2    March 8, 2024, before the Honorable Waverly D. Crenshaw, Jr.,

3    Chief District Judge, when the following proceedings were

4    had, to-wit:

5          THE COURT:  All right.  Be seated.

6          All right.  We're here on Case Number 23-3071.

7          In Re:  RealPage, Inc. Rental Software Antitrust.

8          Those people here on behalf of the plaintiff, and

9    specifically the plaintiff leadership, please make your

10   presence known on the record.

11         MS. HERZFELD:  Tricia Herzfeld.  I'm liaison

12   counsel on behalf of the plaintiffs, Your Honor.

13         MR. COUGHLIN:  Patrick Coughlin on behalf of

14   plaintiffs, Your Honor.

15         MS. SLAUGHTER:  Stacey Slaughter on behalf of the

16   plaintiffs, Your Honor.

17         MS. BOJEDLA:  Swathi Bojedla on behalf of the

18   plaintiffs.

19         MR. GLACKIN:  Brendan Glackin for the plaintiffs.

20         MR. WALKER:  Daniel Walker for the plaintiffs.

21         MR. WALLIN:  Michaela Wallin for the plaintiffs.

22         MR. HERRA:  Daniel Herra for the plaintiffs.

23         MS. LEVIS:  Christian Levis for the plaintiffs.

24         MR. SAVERI:  Go afternoon, Your Honor.  Joseph

25   Saveri appearing on behalf for the plaintiffs.

```
 1          MR. WIDLANSKI:  Benjamin Widlanski on behalf of
 2   the plaintiffs.
 3          MR. NOSS:  Walter Noss on behalf of the
 4   plaintiffs.
 5          THE COURT:  All right.  And on behalf of the
 6   defendants.
 7          MR. SRINIVASAN:  Good afternoon, Your Honor.  Jay
 8   Srinivasan for RealPage.
 9          MR. FENSKE:  Good afternoon, Your Honor.  Dan
10   Fenske for Mid-America --
11          THE COURT:  Mr. Fenske, you are not on the
12   leadership.  It should be Ms. Miller.
13          MR. FENSKE:  Yes, Your Honor.  We had understood
14   in a prior communication -- I see you're shaking your head,
15   Your Honor.
16          THE COURT:  No.  All right.  You can be seated.
17          MR. FENSKE:  Thank you.
18          MR. CROSS:  Your Honor, David Cross of UDR.
19          MR. BERNSTEIN:  Good afternoon, Your Honor.  Boris
20   Bernstein on behalf of Greystar.  I, too, am not on
21   leadership, and I apologize, Your Honor, but I am here for
22   Ms. Lent who was just appoint- --
23          THE COURT:  Ms. Lent should be here.  Everybody
24   else has taken their time.
25          MR. BERNSTEIN:  I apologize, Your Honor.  Your
```

1  Honor just appointed Ms. Lent yesterday and she has a family
2  funeral today.
3        THE COURT:  Okay.  And I do, too.  I've been
4  planning one all day.
5        MR. BERNSTEIN:  I'm sorry to hear that, Your
6  Honor.
7        MS. COLLINS:  Emily Collins for the Lincoln
8  Property Company.
9        THE COURT:  And again, you're not on leadership.
10 What makes you think you can come and sit there?
11        MS. COLLINS:  We were under the impression -- I
12 apologize -- we could substitute.
13        MS. STACH:  Alyse Stach on behalf of Equity
14 Residental; same as --
15        THE COURT:  So I guess Mr. Srinivasan and
16 Mr. Cross can carry the day then.
17        MR. SRINIVASAN:  We will, Your Honor.  And we
18 apologize, but we had sent an email to the Clerk's office at
19 one point asking if --
20        THE COURT:  And the Clerk doesn't control my
21 courtroom.
22        MR. SRINIVASAN:  Understood, Your Honor.
23        THE COURT:  So I think everybody knows that the
24 reason we're here is because I -- I've said in the order I'm
25 very disappointed.  That doesn't begin to describe my

feelings.  I'm really shocked.  Because given the talent and
the caliber of lawyers here, those who are properly on the
leadership, we shouldn't be here today wasting this time and
money.  And it's not going to continue.  If you all are going
to be leaders, then lead.  Lead each other.  Because you all
know the right thing to do.  But this case is just starting.
And we're here on initial disclosures?  Makes no sense at
all.  But if that's -- if that's the behavior you're going to
engage in, then there are going to be repercussions until
such time as you can really serve and be the caliber of
lawyers you are.  So that's why I'm upset and that's why
we're here.  But we're going to try to straighten it out here
today so going forward we can focus on the -- on the issues
in the case and not these unnecessary status conferences.

          So the first thing I want to do -- I gave you what
is a working draft Order.  And I gave you a few minutes to
look at it.  I want to walk through it.  And then I'm going
to ask everyone who's properly here as part of the
leadership -- did everyone on the plaintiffs side get one?
Good.  -- what you think.

          So let's go to the meat and potatoes here.  And
that's paragraph 3.  Before anybody can file a
discovery-related motion, this is what you're going to have
to do.  That does not mean you can't talk on the phone, talk
by Zoom, talk -- talk over the -- send letters or emails, or

1 whatever.  But if you do that, you can't file a

2 discovery-related motion.  And the idea that you can put a

3 motion in a status report, absolutely not.  I've already

4 denied that -- if that's a motion.

5          But if you want to file one, you're going to have

6 to have an in-person, face-to-face conference with the

7 affected parties represented by their attorneys.  You can't

8 do the face-to-face by telephone.  You can't do the

9 face-to-face by Zoom.  You can't do the face-to-face by

10 video.  You have to do it in person face to face.

11          And if that doesn't resolve it, now here's the

12 procedure to file a motion.  The motion can only be filed by

13 the attorneys who were present at the face-to-face.  So if

14 you don't attend it, you can't file the motion.

15          Well, what if they've already talked about that

16 issue?  Well, have another face-to-face.  You may change

17 their mind.  So only if you've engaged in a face-to-face

18 conference can you then proceed to follow the rest of this to

19 file a motion.

20          So first, it's only those attorneys who

21 participated.  Why do I want to know -- and I need to know

22 who participated and the duration.  And that's because I want

23 to know how long it took.  And if the report says it took ten

24 minutes, we'll just do it again.  Because I can look at the

25 issue and determine whether or not you made a substantial

1  effort to do so.  I want to know who participated because
2  that's going to be the person I'm going to want to talk to if
3  and when we get together, not somebody else coming in who
4  didn't -- who wasn't there for the face-to-face.
5         Can I send an associate?  You can send anybody you
6  want to, as long as they've got authority to resolve the
7  dispute, and as long as you know that's the person who's
8  going to have to come to the Court if we have a hearing on
9  it.  Then you have to file a motion for a discovery
10 conference, which is essentially a motion asking the Court to
11 get involved, and telling me why.  And then you still have to
12 provide me our local Rule 37.01 statement in ten pages -- not
13 per party.  Jointly.  If it can't be said in ten pages, you
14 need to edit down until you get to ten pages.  And, no, you
15 can't file a 50-page attachment.  Don't give me 25 -- I'm
16 only going to read -- Judge Holmes and I are only going to
17 read the ten pages.  And if you attach all that other stuff,
18 we'll just rule on it on the ten pages and move on.
19        And once you file that, we'll let you know if
20 we'll get together in person or if we'll get together by
21 phone.  And you'll know if I'm handling it or if Judge Holmes
22 is going to be handling it.  But unless you follow those
23 steps, then it will just be denied without prejudice.
24        So essentially I'm putting in place a
25 face-to-face, in-person requirement, and until you do that,

don't -- don't bring it to me.  And don't -- and if you do it
and file it -- if you don't do it and file it, don't expect
an answer.

All right.  So let me start with the plaintiff.
Mr. Herzfeld, any questions about the process to file a
discovery related -- that you have?

MS. HERZFELD:  No, Your Honor, I don't.

THE COURT:  Mr. Coughlin?

MR. COUGHLIN:  No, Your Honor.  No questions.

THE COURT:  Ms. Slaughter?

MS. SLAUGHTER:  No, Your Honor.  Thank you.

THE COURT:  Ms. Bojedla?

MS. BOJEDLA:  No, Your Honor.  Thank you.

THE COURT:  Mr. Glackin?

MR. GLACKIN:  No, Your Honor.  Thank you.

THE COURT:  Mr. Walker?

MR. WALKER:  No, Your Honor.

THE COURT:  Ms. Wallin?

MR. WALLIN:  No, Your Honor.  Thank you.

THE COURT:  Mr. Herra?

MR. HERRA:  No questions, sir.

THE COURT:  Mr. Levis?

MS. LEVIS:  Levis.  No, Your Honor.

THE COURT:  Saveri?

MR. SAVERI:  It's Saveri, Your Honor, but no

```
1    questions.  Thank you.
2              THE COURT:  Widlanski?
3              MR. WIDLANSKI:  Close enough, Your Honor.  No
4    questions.
5              THE COURT:  Mr. Noss?
6              MR. NOSS:  No questions, Your Honor.
7              THE COURT:  Okay.  Mr. Srinivasan?
8              MR. SRINIVASAN:  No questions here, Your Honor.
9    Thank you.
10             THE COURT:  And Mr. Cross?
11             MR. CROSS:  Your Honor, just logistical.  When
12   I've done this in other courts, the Court alternates the
13   location, just so it avoids disputes.  I didn't know if you
14   thought about how we would determine where the in-peson meet
15   and confer happens.
16             THE COURT:  I care not at all.
17             MR. CROSS:  Thank you.
18             THE COURT:  I care not at all.
19             So the second thing I want to discuss is the joint
20   status report form.  So the Court expects that these status
21   report forms are going to be cumulative.  That means it's a
22   living, breathing thing.  And I need them to be in the format
23   that I'm requesting, that you'll fill out -- old material
24   will remain on the status report form.  Why?  Because I'm
25   thinking ahead, and that's going to be helpful for me when we
```

get, you know, six, eight months from here.  And then any new material has to be in bold.  When you're filling out the form, you have to complete all items.  Some things may not be in effect yet, but you'll say that hasn't occurred.  But once we start getting into privileged information -- everything has to be filled out.  You can't skip anything.  And even now just say it's not applicable at this time, and will become applicable later on.

So let's go through that.  Section 1 deals with just bringing me up to date on the status of settlement for each and every party.  I am not asking for confidential. Don't file anything under seal, unless you comply with the Sixth Circuit rule.  But don't file it under seal with the settlement.  I don't want to know.  We've got people, that y'all selected, to engage in settlement.  But I do want to know that settlement is being proceeded -- every party is proceeding in some form of settlement, directly with the plaintiffs, through one of the mediators, what have you.  I just want to know that's occurring, and I want your insight if there's some issue out there that requires the Court's resolution to help settlements be productive.  And I want to know the next time.

I think you probably saw in the case management order that every party's going to be required to engage in settlement.  And I think there's a sentence in there that

1    says -- and I anticipate that occurring on at least a

2    six-month basis.  I just need to know everybody's doing it.

3    I can check that off the list and we can move on.  So again,

4    I'm not asking for confidential settlement strategies.  I'm

5    not interested in that.  I just want to know that you're in

6    good faith engaging in settlement at some point.

7              Section 2 deals with discovery.  On each one of

8    the elements that's outlined in the case management order --

9    I guess we're at requests for documents.  I guess we'll get

10   there one day.  Tell me where -- provide me the status of

11   each one of those, the deadline, when it was served, the

12   deadline for response, and any meet and confer regarding

13   discovery issues.  And do that with some specificity so I can

14   understand what's going on.  Err on the side of succinct

15   information, not necessarily being verbose.

16             B, C -- B is pretty straightforward.  Once you all

17   get to structured data discovery, I need to know what's going

18   on and what to expect.

19             Number C is I think self-evident.  What discovery

20   has occurred since our last status conference, and what you

21   anticipate occurring before the next status conference.  I

22   just -- I need enough information that I can see the case is

23   moving or -- moving forward in a reasonable manner or there

24   are some stumbling blocks some place that I either need to

25   anticipate or we need to discuss.  And, of course, if there

1  are any discovery-related motions, put those there to make
2  sure the Court's responding to them, if they've been properly
3  presented.

4          The other items simply ask you to report on your
5  agreed protocols for 502 evidence in the case management,
6  depositions, electronic -- again, I just need to know if any
7  party is anticipating or has identified some issue -- and I
8  want to know as soon as possible.  Maybe it's not ripe for
9  briefing, but if you already see an issue's coming up, then
10 go ahead and share that with me.

11         And then finally, Mr. Coughlin and Mr. Srinivasan
12 will be responsible for presenting -- agree on some kind of
13 status conference agenda -- proposed status conference
14 agenda.  And this is a joint status report.  So that means
15 y'all have to get together and agree on what goes in it.  And
16 I know there are a lot of lawyers involved.  I know lawyers
17 have a lot of opinions.  But before you can submit the agreed
18 joint status report -- well, when you submit it, I need a
19 signature line essentially saying approved by -- and there
20 needs to be a line there for Mr. Coughlin to sign-off, and
21 approved by; there needs to be a line for Mr. Srinivasan to
22 sign.  And then I know it's ready for me to read.

23         So again, complete each category.  Don't leave it
24 blank, or tell me why it's not relevant now.  And give me
25 enough information.

1          So let's do it again.

2          I guess, Mr. Herzfeld, any issues you see at this

3   point with the joint status report.

4          MS. HERZFELD:  No, Your Honor.

5          THE COURT:  Mr. Coughlin?

6          MR. COUGHLIN:  Just a few clarifications, Your

7   Honor.

8          THE COURT:  Okay.  Good.

9          MR. COUGHLIN:  So in the first -- in the

10  settlement discussions -- I'll just say to the Court, we are

11  currently engaged with at least a half a dozen defendants

12  separate and apart from the bigger mediations with the

13  smaller group and the bigger group.

14          Those -- I would say that -- from those

15  discussions I would infer that those entities do not want to

16  be named that they're meeting with us separately from the

17  larger groups.  And you've asked for -- to identify the date

18  or dates of the last settlement meeting or mediation.  And

19  I'm pretty sure, just even the fact that somebody's meeting

20  with us separately, they would not like to disclose.  We've

21  reached settlements with at least -- maybe not completely --

22  three defendants, but then we're meeting with another half

23  dozen.  And I'm just concerned about -- and maybe that's not

24  my issue.  Maybe that's their issue.

25          THE COURT:  No.  I think it is your issue.  But

1  it's your issue along with those attorneys representing those

2  parties.  Y'all figure it out.

3           MR. COUGHLIN:  Okay.

4           THE COURT:  I just need to know.

5           MR. COUGHLIN:  Okay.

6           THE COURT:  But you all figure it out.

7           MR. COUGHLIN:  We'll figure out --

8           THE COURT:  Because I'm not in a position -- you

9  don't want me to.  I don't know the -- I don't know the

10 concerns that their individual clients have.  I don't know

11 the concerns your clients have.  You don't want me dictating

12 that.  Y'all need to figure it out.  And you need to give me

13 enough information so I know that they're fulfilling the

14 requirement that we're all going to engage in some type of

15 discussion every six months.

16          MR. COUGHLIN:  We'll figure it out.

17          THE COURT:  Yes you will.

18          MR. COUGHLIN:  The next one, in the discovery, we

19 are -- we've already engaged in a number of meet and confers

20 on a number of issues about the initial disclosures.  And

21 it -- I anticipate that the actual number in meet and confers

22 may go into the hundreds because of how many defendants and

23 how -- like, this morning, we had a meet and confer with a

24 mid -- midsize defendant, and we talked about the

25 disclosures -- I'm just using them as an example.  -- talked

about the disclosures.  We had listed some eight people; they

had listed two.  They said they would take a look at our

list, they'll get back to us.  And I know that we're going to

have at least three or four meetings with that one defendant

before we would ever have an impasse or anything.  So we're

engaging in that with all of these defendants.  And the

leadership has split up that with all the different

defendants around the country and the area.  So I'm just

concerned about that --

        THE COURT:  I'm not sure I understand your

question.

        MR. COUGHLIN:  My question is, you don't really

want to hear -- I don't think you want to hear -- about that

we had a meet and confer in the morning -- this morning at,

you know, 10 a.m., then we had another one the next day, and

had another one.  You just want to know that we're meeting

and conferring about the issue.

        THE COURT:  So let's go back.  I only care about

the meet and confers when it's going to lead to a

discovery-related motion.

        MR. COUGHLIN:  Got it.  That's all --

        THE COURT:  You all don't need to -- like I said,

you can meet by Zoom.  You can meet in the bar.  I don't

care.  Meet wherever you want to.  In whoever's house you

want be to.

```
 1              MR. COUGHLIN:  You want the final --
 2              THE COURT:  If you want to bring a case here --
 3              MR. COUGHLIN:  Got it.
 4              THE COURT:  -- a motion here, it has to be in
 5    person and I need to know all the circumstances.
 6              MR. COUGHLIN:  That's all the clarification I
 7    need, Your Honor.
 8              THE COURT:  Okay.  And I -- you raise a good
 9    point.  And I tried to take -- I thought we had taken care of
10    it.  No, I don't want to know when you meet and confer and
11    change a deposition from 9 to 1.  I don't need to know.
12    Don't want to know.  Okay.
13              All right.  So I guess, Ms. Slaughter?
14              MS. SLAUGHTER:  I understand, Your Honor.  Thank
15    you.
16              THE COURT:  Ms. Bojedla?
17              MS. BOJEDLA:  You clarified it for me.  Thank you.
18              THE COURT:  I didn't cut you off, did I,
19    Mr. Coughlin?
20              MR. COUGHLIN:  No, Your Honor.
21              THE COURT:  Mr. Glackin?
22              MR. GLACKIN:  Good morning, Your Honor.  I just --
23    or afternoon I should say.  I just have a suggestion, if you
24    don't mind.
25              THE COURT:  Sure.
```

        MR. GLACKIN:  You might consider adding to the
list of things you want to hear about, whether or not the
parties are aware of any issues relating to the preservation
of evidence.  If there -- if there becomes an issue in the
case about evidence being lost or discoverable material being
lost because -- you know, for whatever reason, in my
experience, Courts have wanted to know about it sooner rather
than later.  And so it's just a suggestion, Your Honor.
Again, take it for what it's worth.  Other than that --

        THE COURT:  Well -- yeah, that's fine, but number
8's pretty wide open there:  Provide a proposed status
conference agenda.  So if you all think that that's something
we need to talk about, that's your catchall.  You can add it
there.

        MR. GLACKIN:  You know, I more had in mind, Your
Honor, that by including it as a specific topic then it
becomes clear that if a party knows it has an evidence lost
issue it's under affirmative obligation to make it known,
rather than waiting for it to be found out about.

        THE COURT:  Yeah, but if you have that issue, why
aren't you talking to the party affected?

        MR. GLACKIN:  Well, in an ideal world, yeah, I
agree that would happen.

        THE COURT:  Because I doubt I'm going to look
at -- I don't think I'm going to look at any motion related

to discovery until you all have gotten together to talk about
it.  And when we do get together, my first question is, well,
have you talked since you filed the motion.  But that's --
that's a good point.  But again -- and I'll consider in
making that something.  But when you give me your proposed
status conference agenda -- I mean, if Mr. Coughlin and
Mr. Srinivasan sign-off off on it, you can have here are the
items for the plaintiffs, here are the items for the
defendants.  We can address it that way.

                MR. GLACKIN:  Okay.  Very good, Your Honor.

                THE COURT:  And I think we've already filed in the
case when everyone's document holds went into place.  And I
think that's been amended once.  So that's in place, as well.
Okay.

                Mr. Walker?

                MR. Walker:  I have no questions, Your Honor.

                THE COURT:  Ms. Wallin?

                MS. WALLIN:  No questions, Your Honor.

                THE COURT:  All right.  That back row is just
problematic.  So y'all take. . .

                MR. HERRA:  No questions, Your Honor.

                THE COURT:  You need to say your name so we have a
record.

                MR. HERRA:  Mr. Herra.  No questions, Your Honor.

                MS. LEVIS:  Christian Levis.  No questions.

1          MR. SAVERI:  Joseph Saveri.  No questions, Your
2   Honor.  Thank you.
3          MR. WIDLANSKI:  Ben Widlanski.  No questions, Your
4   Honor.
5          MR. NOSS:  Walter Noss.  No questions, Your Honor.
6          THE COURT:  Mr. Srinivasan?
7          MR. SRINIVASAN:  No questions, Your Honor.  Thank
8   you.
9          MR. CROSS:  Your Honor, just a clarifying
10  question, just to make sure I understood your exchange with
11  Mr. Coughlin.
12         THE COURT:  Sure.
13         MR. CROSS:  So in Section 2A of the joint status
14  report it requires the parties to describe the specificity as
15  required by the discovery dispute resolution procedures any
16  discovery issue that was resolved by the parties without the
17  assistance of the Court.
18         I understood from your exchange with Mr. Coughlin
19  you're only looking for us to identify issues that were not
20  resolved; is that right?
21         THE COURT:  That's right.
22         MR. CROSS:  I just wanted to be sure you're not
23  looking for a listing of things that --
24         THE COURT:  Well, I take that -- no.  I am.
25         MR. CROSS:  Okay.  That's why I wanted to clarify --

1    THE COURT:  I expect you all to have some judgment

2 here.  Yeah, I kind of do want to know if you have made a

3 resolution on a substantive discovery-related motion.  One,

4 if you bring a similar motion to me, that's going to inform

5 what we do.  Again, I don't need to know about changing the

6 times of depositions or the place.  But, yeah, if it's a

7 substantive -- use your judgment.

8    I kind of think that if that issue comes before me

9 and you've resolved it ten times this way the party in

10 opposition is going to say, well, Your Honor, ten times we

11 did this.  But just in case that slips through the cracks, if

12 there's been a substantive resolution on a discovery issue,

13 yeah, I do kind of want to know that.

14    MR. CROSS:  Thank you, Your Honor.

15    THE COURT:  Yeah, use your judgment.

16    MR. CROSS:  Thank you, Your Honor.

17    THE COURT:  That's a good one.

18    One other safety net I need to put in place here.

19 And he must have read my mind, which is interesting, because

20 I didn't ask him to be here.  But we've got two -- I think --

21 we only have two local lawyers here, Mr. Herzfeld, and

22 there's no one else on the plaintiffs' side in leadership on

23 the -- on the leadership team.  Right.  And then we've got

24 Mr. Srinivasan's local counsel Tom Dundon here.  I'm not

25 going to order this.  But I am going to be -- I want

Mr. Dundon and Mr. Herzfeld to know, you both have a
responsibility on your respective sides to make sure the
lawyers who don't typically practice in the Middle District
know the culture and practice of the Middle District.  And,
yeah, I'm going to kind of hold you responsible when that
doesn't occur.  And, yeah, you're going to need to be here
when we take it up.  So, yeah -- so Ms. Herzfeld and
Mr. Dundon -- you know, use him -- use them as a resource to
make sure are we doing this the way that we've done it for
years here in the Middle District of Tennessee.  And if we're
not, we need to have a really, really good reason for varying
from the normal practice in the Middle District.  Is that --
can you do that, Mr. Herzfeld?

        MS. HERZFELD:  Absolutely, Your Honor.

        THE COURT:  Mr. Dundon?

        MR. DUNDON:  Yes, Your Honor.

        THE COURT:  Okay.  So I've got some conclusion
thoughts, but I thought I would stop at this point, see if
anybody on either side of the leadership team thinks this is
a good time to share something that could be productive going
forward.  Anybody?

        MR. COUGHLIN:  I don't think so, Your Honor.  I
think we got your message, and I think we've heard you loud
and clear.

        THE COURT:  Okay.  On the next row, Mr. Glackin's

1  row?

2          MR. GLACKIN:  Nothing from me, Your Honor.

3          THE COURT:  On the last row.

4          MR. WIDLANSKI:  I think we're all good over here,

5  Your Honor.

6          THE COURT:  Thank you.

7          And then Mr. Cross, Mr. Srinivasan, anything

8  that...

9          MR. SRINIVASAN:  Nothing particularly germane to

10 this, Your Honor.  But I think in general, and we appreciate

11 the Court's approach in all of this.

12         I think -- we have a big group here, and, you

13 know, I usually have a lot of daggers staring at the back of

14 my -- towards my back.  And I think folks are just wanting to

15 be mindful of when there are issues related to individual

16 defendants they are able to make their arguments and appear,

17 and I don't think that's been an issue, and I imagine the

18 Court agrees -- and you're nodding.  We just want to make

19 that point.

20         THE COURT:  Mr. Cross?

21         MR. CROSS:  Nothing to add, Your Honor.

22         THE COURT:  So I think Mr. Srinivasan raises a

23 good point.  At least right now I see a difference in

24 procedural kinds of rules or requirements and substantive.

25 And I do agree that when it comes to individual defendants, I

1   put them -- their concerns are more in the substantive bucket
2   than the procedural.  I can't have individual procedural
3   rules for every defendant, big, small or otherwise.  There
4   needs to be one rule applicable to all.  Yes, when it comes
5   to substantive kinds of issues, that's when it becomes
6   important for y'all to share that, and then I'll consider it
7   and do with it what I need to do.
8           MR. SRINIVASAN:  And I think the way you've set
9   this up, to make it with the face-to-face meetings and only
10  the folks involved appearing I think sort of forces that any
11  way, in a positive way, as far as we're concerned.  So we
12  appreciate that.
13          THE COURT:  Okay.  So I thought while we were --
14  we were here it might be helpful to know some general
15  thoughts I have about discovery.  You all probably never
16  heard of him, but there was a judge who served on the Court
17  for many, many, many years, and did so with much distinction.
18  And that was Judge Thomas Higgins.  And for better or worse
19  it seemed like every case I filed in the Middle District went
20  to Judge Higgins.  And Judge Higgins was the most
21  demanding -- more demanding than I am, or any judge I think
22  here on the Middle District.  He was just very demanding.  He
23  had a way of doing things, and he didn't -- he didn't veer
24  from it, no matter the type of case, because whatever case
25  you had, Judge Higgins would always announce --

1    (Coughing interruption)

2    THE COURT:  -- it's just a hit and run case.

3  That's all this is.  It could be an antitrust case, "it's

4  just a hit and run case."  But whenever Judge Higgins shared

5  what he thought, it was always, for me as a practitioner, a

6  good opportunity to know what he thought.  And I thought it

7  might be helpful as I look at this case, and -- and we've

8  written on this case and resolved issues now as we go

9  forward.  At least right now, subject to reading the briefs

10  and your persuasive words in your brief, I do think in this

11  kind of case, raising issues of strong public importance,

12  that's affecting a number of citizens, potentially affecting

13  a number of citizens of the United States, when the amount in

14  controversy is alleged to be substantial, the parties'

15  resources are substantial, I'm probably going to approach

16  discovery issues with that in mind.  And as we apply the

17  proportionality requirement under Rule 26 -- it's going to be

18  pretty open.  I think it has to be pretty open.  So I

19  encourage you to take that in mind when you have your

20  in-person meet and confer.  That is not for -- that is not --

21  the plaintiffs should not construe that as we can ask for the

22  moon and beyond.  There's a limit.  But all the parties

23  should take it in mind that I'm going to be applying that

24  proportionality requirement.  And given what I just said, the

25  nature of this case, and what it's raising and what's at

stake and what the parties are here doing, the importance of
the discovery, there are some serious allegations in this
case, that the plaintiffs need to work hard to see if they
have any substance or not.  Of necessity there's going to
have to be a lot of discovery.

I anticipate when we get to privilege we may have
more than one status conference a month.  Because I think
that may be where we're going to spend a lot of time with
each other.  I hope not.  But just looking at the
allegations, that could be the case.  So just keep in mind
I'm going to -- I'm going to be looking at each of those
factors that we look at under Rule 26.  But just based on
what's being alleged now, I think of necessity I have to
approach this that everybody's going to be very much involved
in a lot of discovery.  So that's why I thought it was real
important that we get together.  And I guess -- the last
thing I'll end on -- and the reason I asked for the
leadership -- and the reason I said earlier if you're part of
the leadership then you need to lead, and that goes on both
sides.  If the plaintiffs are seeing the defendants -- I
mean, this is a profession.  I know -- I know it's a
business, big business, but at the end of the day, you all
are professionals.  You're members -- representatives of the
judicial system and the court system.  You're a vital part of
it.  So plaintiffs, if you see one of the defendants doing

something, take them aside, "You don't want to do that; let
me tell you why." And the same goes for the plaintiffs. And
Mr. Dundon and Mr. Herzfeld, say, "That's the kind of way we
practice here. You don't want to do that. That's not the
way we do those things. Let me help you make it. You still
going to lose." You can still do that. I'm not asking you
to compromise your parties's positions.

But there was -- there was -- on more than one
occasion I would -- I typically did the defendant. I would
go to the plaintiff and say, "You don't want to do that;
you're going to make that judge so mad" -- "he's going to get
mad" -- and I am. I'm mad at everyone now. You each have an
individual responsibility to make sure that the massive
discovery that you all have agreed to engage in, somewhat
reluctantly on the plaintiffs' -- defendants' side, but
you're here nevertheless. Let's do it in a fashion that gets
your work done, get it done efficiently, effectively, but
let's not do things that you all know you don't need to do.

So Mr. Dundon, you keep the people on your side
straight. And then, Ms. Herzfeld, you keep yours straight.

Now, when are we getting back together again? I
didn't bring that out. April -- no. That will be April -- I
think I accepted your new date. Yeah, it's in the order. So
the next one will be reset to April 5th at 1:00. And I need
that status report no less than five days ahead.

1        MR. COUGHLIN:  Okay.

2        THE COURT:  All right.

3        MR. SRINIVASAN:  Very well, Your Honor.

4        THE COURT:  All right.  Thank you.

5        (Court adjourned.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   REPORTER'S CERTIFICATE

2

3         I, Lise S. Matthews, Official Court Reporter for

4   the United States District Court for the Middle District of

5   Tennessee, with offices at Nashville, do hereby certify:

6         That I reported on the Stenograph machine the

7   proceedings held in open court on March 8, 2024, in the

8   matter of IN RE: Realpage, Inc., Rental Software Antitrust

9   Litigation (No. II), et al., Case No. 3:23-MD-03071; that

10  said proceedings in connection with the hearing were reduced

11  to typewritten form by me; and that the foregoing transcript

12  (pages 1 through 28) is a true and accurate record of said

13  proceedings.

14         This the 15th day of March, 2024.

15

16                      /s/ Lise S. Matthews
                            LISE S. MATTHEWS, RMR, CRR, CRC

17                             Official Court Reporter

18

19

20

21

22

23

24

25