1            UNITED STATES DISTRICT COURT
            MIDDLE DISTRICT OF TENNESSEE
2              NASHVILLE DIVISION

3

4 IN RE: REALPAGE, INC.,    )    Case No. 3:23-md-3071
  RENTAL SOFTWARE ANTITRUST   )    MDL No. 3071
5 LITIGATION (NO. II)       )

6

7 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

8              BEFORE THE HONORABLE

9    CHIEF DISTRICT JUDGE WAVERLY D. CRENSHAW, JR.

10          TRANSCRIPT OF PROCEEDINGS

11           February 16, 2024
  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
12

13

14

15

16

17

18

19

20

21

22

23 PREPARED BY:
          LISE S. MATTHEWS, RMR, CRR, CRC
           Official Court Reporter
24       719 Church Street, Suite 2300
           Nashville, TN 37203
25     lise_matthews@tnmd.uscourts.gov

**For the Plaintiffs**:

Tricia Herzfeld
Swathi Bojedla
Patrick Coughlin
Tricia Herzfeld
Stacey Slaughter
Geoff Kozen

**For the Defendants**:
Stephen Medlock
Ferdose al-Taie
Carl Hittinger
Jay Srinivasan
Robert Taylor
Becky Caruso
Chris Thorsen
Steven Chris Whittaker
Alyse Stach
Michael McCambridge
Bethan Carroll
Ben Campbell
Boris Bershteyn

1          The above-styled cause came on to be heard on

2     February 16, 2024, before the Honorable Waverly D.

3     Crenshaw, Jr., Chief District Judge, when the following

4     proceedings were had, to-wit:

5          THE COURT:  All right.  We're on the record.  This

6     is Waverly Crenshaw.  I notice that a number of other people

7     have joined the line.  That's just fine.  I have a court

8     reporter.  So if you'll -- if you'll identify who is on the

9     line.  And let me remind everyone there is to be no recording

10    of this conversation.  The transcript is available if you

11    want it.

12         MS. BOJEDLA:  Your Honor, for the plaintiff, my

13    co-counsel Pat Coughlin and Stacey Slaughter are on.  And

14    I've also asked Geoff Kozen to be on, who is responsible for

15    the deposition protocol negotiation.

16         THE COURT:  All right.  Thank you.

17         Anybody else here for the plaintiff?

18         MS. HERZFELD:  Tricia Herzfeld, Your Honor.

19         THE COURT:  All right.  Mr. Medlock, do you know

20    who is on here for the defense?

21         MR. MEDLOCK:  I don't with entire clarity, Your

22    Honor.  I know that my colleague Michael McCambridge also

23    from Vinson & Elkins is on.  I'll let my other codefense

24    counsel introduce themselves.

25         MR. SRINIVASAN:  Sure.  Your Honor, you have Jay

```
1   Srinivasan and Chris Whittaker on for RealPage to address the
2   expert stipulations if questions come up on that.
3               MR. HITTINGER:  And, Your Honor, this is Carl
4   Hittinger and Alyse Stach from Baker Hoestettler representing
5   Equity.  We handled the deposition protocol order.
6               MS. AL-TAIE:  Your Honor, this is Ferdose al-Taie,
7   F-e-r-d-o-s-e a-l-T-a-i-e, representing ZRS Management.  With
8   me is Chris Thorsen and Bethany Carroll.
9               MR. CAMPBELL:  Your Honor, this is Ben Campbell
10  with Morrison & Foerster, representing UDR.
11              MR. BERSHTEYN:  Your Honor, it's Boris Bershteyn
12  from Skadden, Arps, representing Greystar.
13              MS. CARUSO:  Your Honor, this is Becky Caruso
14  from Greenberg Traurig, representing Lincoln Properties.
15              THE COURT:  All right.  Anybody on the line who
16  didn't identify themselves?
17              MR. TAYLOR:  Yes, Your Honor.  This is Robert
18  Taylor, from Weil, Gotshal & Manges.  I'm representing
19  Brookfield Multifamily, LLC.
20              THE COURT:  Is that everyone?
21              All right.  So I want to go first to the ESI
22  order, paragraph 3a.  I've added -- "And with regards to
23  discovery liaisons each party agrees to designate a discovery
24  liaison within 14 days after entry of this order, and I
25  added, "and they should give notice of that designation filed
```

1  with the Court," so the Court's kept abreast of who's in
2  what -- what function.
3          And the same is true, if there's a change in the
4  designation, I've added, "give written notice to the other
5  parties and the Court."
6          If anyone -- does anyone have any problems with
7  that change?
8          Let me go to Mr. Medlock and Ms. Swathi Bojedla.
9          MR. MEDLOCK:  Nothing from defendants on that,
10 Your Honor.
11         MS. BOJEDLA:  No, Your Honor.  That's --
12         THE COURT:  All right.  Let's go to paragraph 4,
13 Cooperation.  "The parties agree to engage in ongoing good
14 faith meet and confer discussions on ESI as necessary."  And
15 I added the following phrase:  "And the parties understand
16 that such each meet and confer is a prerequisite to seeking
17 the Court's assistance."
18         Is that okay with the plaintiff?
19         MS. BOJEDLA:  Yes, Your Honor.
20         THE COURT:  And Mr. Medlock?
21         MR. MEDLOCK:  Yes, Your Honor.
22         THE COURT:  Paragraph 7, the second sentence, "The
23 parties agree to meet and confer in good faith."  Correct,
24 Mr. Medlock?
25         MR. MEDLOCK:  Yes, Your Honor.

1          THE COURT:  And Ms. Bojedla?

2          MR. MEDLOCK:  Thank you for correcting that, Your

3    Honor.

4          THE COURT:  All right.  Then let's go to paragraph

5    14c and 14f.  So the Court has considered your filings and

6    the modified language.  And I'm going to read to you the

7    language I'm going to go with.

8          Regarding 14c:

9          "Emails containing privileged information may be

10   included in a privilege log as the most inclusive version of

11   the email thread that is available as long as there is a

12   claim of privilege for the entirety of the email thread and

13   attachments.  Otherwise, the email shall be produced in

14   redacted format.  The parties agree to meet and confer in

15   good faith regarding any disagreement."

16         Does -- Ms. Bojedla, do you want me to read that

17   again?

18         MS. BOJEDLA:  If you wouldn't mind, Your Honor.

19   I'm trying to take --

20         THE COURT:  Okay.

21         14c: "Emails containing privileged information may

22   be included in a privilege log as the most inclusive version

23   of the email thread that is available as long as there is a

24   claim of privilege for the entirety of the email thread and

25   attachments.  Otherwise, the email shall be produced in

redacted format and the parties agree to meet and confer in
good faith regarding any disagreement."

        Mr. Medlock, were you able to follow that?

        MR. MEDLOCK:  Yes, I was, Your Honor.

        THE COURT:  All right.  Any issues with that
language from the plaintiff?

        MS. BOJEDLA:  May I just request a clarification
on the language?  The second clause reads, "Otherwise the
email shall be produced in redacted format, goes on, does
that also mean that if not every portion of the email chain
and attachments is privileged, if -- if one part of it is not
privileged then they would be required to log everything in
the chain and the attachment?

        THE COURT:  Say that again.

        MS. BOJEDLA:  So, for example, if there's an email
thread of ten emails and an attachment and the first email
and attachment are not privileged and the rest are claimed to
be privileged, would the defendant be required to log the
nine nonprivileged emails?  I'm sorry.  The nine emails that
were claimed to be privileged?

        The only reason I ask, Your Honor, is if we get
the redacted version of just the ten emails then we don't
know what's going on with the prior -- the following emails,
and it comes back to the same thing we were raising in our --
in our statement.

 1          THE COURT:  All right.  Mr. Medlock, what do you

 2   say?

 3          MR. MEDLOCK:  Well, Your Honor, I just -- I don't

 4   understand why that would be necessary.  In the --

 5          THE COURT:  No.  No.  No.  What do you say to the

 6   information, the wording that I provided you for 14c?

 7          MR. MEDLOCK:  Oh, sorry, Your Honor.  We have no

 8   objection to your wording.  I apologize.

 9          THE COURT:  Okay.  Ms. Bojedla, can you restate

10   what your concern is, I guess with the language that I just

11   read?

12          MS. BOJEDLA:  Sure.  So the way that the language

13   you read -- it's our (indiscernible) understanding is so the

14   defendants are not required to log an email chain if they

15   claim that all of the emails in the chain are privileged.

16          THE COURT:  No.  I don't think you're

17   understanding.  I'm not going to -- I think this language is

18   satisfactory.  Again, it says emails containing privilege

19   information may be included in a privilege log as the most

20   inclusive version of the email thread that's available as

21   long as there is a claim of privilege for the entirety of the

22   email thread and attachments.  Otherwise, the email shall be

23   produced in redacted form.

24          MS. BOJEDLA:  Okay.

25          THE COURT:  I don't see the problem.

```
1          MS. BOJEDLA:  Okay.
2          THE COURT:  So that's -- that's what I propose for
3   14c.
4          For 14f, here is the language I propose:
5          "A party shall only be required to include one
6   entry on the privilege log to identify each family of
7   documents that are withheld in their entirety for privilege
8   (parent and children) taken together, (family provided,
9   however, that the privilege log entry for any family shall
10  identify that the documents are part of a family, e.g., email
11  and attachments) and provide the names and a brief
12  description of the attachments in a separate field.  If only
13  a portion of a family of documents contains privilege
14  information, the family should be produced in redacted form.
15  The parties agree to meet and confer.
16          Do you want me to read that again, or were you
17  able to get it the first time?
18          MS. BOJEDLA:  I think -- I think that one I was
19  able to get in large part.
20          Thank you, Your Honor.
21          THE COURT:  Mr. Medlock, do you want me to -- I
22  don't mind reading it again.
23          MR. MEDLOCK:  That's all right, Your Honor.  I
24  followed.
25          THE COURT:  Okay.  Any issues with that language
```

1  with the plaintiff?

2          MS. BOJEDLA:  I think I understand Your Honor's

3  language here.

4          THE COURT:  So does the plaintiff have any issues

5  with that?

6          MS. BOJEDLA:  No, no issues.

7          THE COURT:  Okay.  Mr. Medlock?

8          MR. MEDLOCK:  No issues, Your Honor.

9          THE COURT:  Okay.  So that takes care of the ESI

10 order.  And then -- this is a -- this is a universal

11 question.  Why wouldn't these orders be applicable to all

12 cases?  What does the plaintiff say?

13         MS. BOJEDLA:  Your Honor, we do believe they're

14 applicable to all cases.  The only reason we have the cases

15 named in the caption of the order is the issue we had raised

16 in the plaintiffs' (indiscernible) report about the cases

17 that remain (indiscernible) even though no plaintiffs remain.

18 And so until that -- those cases come off of the docket or

19 are terminated we just named the live -- the cases that are

20 live and part of the amended complaint.

21         THE COURT:  Is that the cases that you all are

22 going to give me an order on the 20th?

23         MS. BOJEDLA:  Correct.

24         THE COURT:  Okay.  Well, I'm going to change all

25 this to say all cases.  I don't want any party to be confused

1  that -- that -- about what they need to be in compliance

2  with.

3         So that takes me to the order regarding deposition

4  protocol.  Paragraph I -- Ia.  Do you all have a time period

5  that the parties will meet and confer regarding limits on

6  depositions and submit a supplemental?

7         MS. BOJEDLA:  Your Honor --

8         MR. MEDLOCK:  Your Honor, this is --

9         MS. BOJEDLA:  Sorry.

10        THE COURT:  Let's start with the plaintiff.  Have

11 you all got a time period for that to occur?

12        MS. BOJEDLA:  We are -- we are -- when we

13 discussed this with defendants, our goal is to get the

14 initial disclosures, see what those initial disclosures look

15 like, and then talk about the deposition limits, because they

16 will be tethered to what we find out in those initial

17 disclosures.

18        So I believe Your Honor's schedule is setting the

19 deadline for those coming up here pretty soon.  I'm hopeful

20 we could get an agreed upon set of limits or opposing views

21 in March.

22        THE COURT:  What does the -- Mr. Medlock, what do

23 you say?

24        MR. MEDLOCK:  Your Honor, I'll pass this one over

25 to Mr. Hittinger, who I believe is leading the deposition

1  protocol effort for us.

2           MR. HITTINGER:  Your Honor, can I ask you to

3  repeat the question please?  I'm sorry.

4           THE COURT:  Okay.  Paragraph IA, it says the

5  parties will meet and confer and submit a supplemental filing

6  regarding limits on deposition, et cetera.

7           I'm just going to write in the order that will be

8  done within 60 days of entry of the order regarding

9  deposition protocol.

10          Does that work for the plaintiff?

11          MS. BOJEDLA:  Yes.  That works for us.

12          THE COURT:  Mr. Hittinger, can you live with that?

13          MR. HITTINGER:  Yes.  Because we were waiting for

14  the disclosures to be made and that will be made within that

15  time period and we'll be able to report to the Court in 60

16  days, yes.

17          THE COURT:  Page 2, footnote 2, second

18  sentence: If an individual has been employed by more than one

19  defendant during the relevant time period defined in the

20  pretrial scheduling order -- I don't know what you're

21  referring to.  You mean the case management order?  What's

22  the pretrial scheduling order in footnote 2?  Ms. --

23  Plaintiff, Ms. Bojedla?

24          MS. BOJEDLA:  Your Honor, I apologize.  That may

25  be a remnant from when we had more fulsome description of the

```
 1   case in the 26F statement.  Perhaps we can amend that
 2   language so that --
 3                THE COURT:  Let's go ahead and correct it now
 4   because I'm going to enter this today.
 5                MS. BOJEDLA:  Okay.  I think -- as for Plaintiff,
 6   I think we would be okay to say during the relevant time
 7   period as defined in the -- I haven't actually looked back to
 8   see if we define a relevant time period in the complaint or
 9   not.  I'm not sure if --
10                THE COURT:  I'm sorry.  You're talking too fast
11   and it's -- it's not coming across clearly.
12                MS. BOJEDLA:  Apologies, Your Honor.  I'm --
13                THE COURT:  Why don't we just say if an individual
14   has been employed by more than one defendant during the
15   relevant time period then the parties shall meet and confer
16   as to how such individuals shall be counted for purposes of
17   any per party deposition limits but in no event shall a
18   single deposition count towards more than one defendant's per
19   party deposition.  So I'm just eliminating this "defined in
20   the pretrial order."
21                MS. BOJEDLA:  Your Honor, I think that makes the
22   most sense.  And apologies again.
23                THE COURT:  No problem.
24                Oh, I'm sorry.  Is that okay, Mr. Medlock or
25   Mr. Hittinger?
```

1          MR. HITTINGER:  Yes, that's fine with the
2    defendants, Your Honor.
3          THE COURT:  And then page 4, IIIA, the third
4    complete sentence.  I just changed it that "the parties may
5    file a motion to request additional time to negotiate this
6    provision regarding location and scheduling."
7          Does that work for the plaintiff?
8          MS. BOJEDLA:  Yes, Your Honor.
9          THE COURT:  And Mr. Hittinger, Mr. Medlock?
10          MR. HITTINGER.  Yes, that works for the
11    defendants, Your Honor.
12          THE COURT:  All right.  Thank you.
13          Okay.  That takes care of the order regarding
14    deposition protocol.
15          Then that -- and I don't -- I don't have any
16    changes to the stipulation and order on expert discovery.
17          So I think the Court -- I'm ready to enter
18    everything except your protective order.  And I think I gave
19    you all until the 20th to get back with me on that.  Is that
20    accurate, Ms. Bojedla, from the plaintiffs' standpoint?
21          MS. BOJEDLA:  I believe the date is accurate and I
22    believe we are almost completely resolved on that order.
23          THE COURT:  Okay.
24          Okay.  Anything else on these -- anything else we
25    need to discuss other than the outstanding protective order

1    from the plaintiffs' perspective?

2              MR. COUGHLIN:  Your Honor, this is Pat Coughlin.

3    You had asked about -- a couple times about a status

4    conference order, an ongoing kind of living document.  And

5    Mr. Srinivasan and I have been discussing it.  And I think

6    we've kind of come up with a template.  What we were waiting

7    for is to get -- this is a -- the bulk of these orders

8    entered.  So we'll wait until after the 20th and maybe file

9    on March 1st the -- kind of a living running status

10   conference that will -- that will update every month as

11   things change or things are on the docket and somebody can

12   follow the progress of the case.

13             THE COURT:  Okay.  So you're saying you're going

14   to submit the first draft of that on March the 1st?

15             MR. COUGHLIN:  That's right, Your Honor.

16             THE COURT:  That works for the defendant,

17   Mr. Srinivasan?

18             MR. SRINIVASAN:  It does, Your Honor.  Thank you.

19             THE COURT:  Okay.  Anything else, Mr. Coughlin or

20   anybody else on the plaintiffs' side?

21             MS. BOJEDLA:  Your Honor, would it be helpful for

22   us to send you the Word versions of these proposed orders, or

23   are your clerks all set?

24             THE COURT:  No.  I think we've already -- we've

25   already converted them to our set.  So I'm good.  Thank you,

1    though.

2              MS. BOJEDLA:  Thank you.

3              THE COURT:  But going forward -- but going

4    forward, it would be really helpful if you would email that

5    to Melissa Seay.  And I think her full email address is on

6    the website for this case.

7              MS. BOJEDLA:  We absolutely (indiscernible).

8              Thank you.

9              THE COURT:  Anything else on the defense side,

10   Mr. Srinivasan, or Hittinger or Medlock, or anybody?

11             UNIDENTIFIED SPEAKER:  No, sir.

12             UNIDENTIFIED SPEAKER:  Nothing.

13             THE COURT:  Well, thank you all, and we'll get

14   these entered today.

15             Take care and have a good weekend.  Happy

16   President's Day.

17                (Court adjourned.)

18

19

20

21

22

23

24

25

1  REPORTER'S CERTIFICATE.

2

3          I, Lise S. Matthews, Official Court Reporter for

4  the United States District Court for the Middle District of

5  Tennessee, with offices at Nashville, do hereby certify:

6          That I reported on the Stenograph machine the

7  proceedings held in open court on February 16, 2024, in the

8  matter of IN RE: Realpage, Inc., Rental Software Antitrust

9  Litigation (No. II), et al., Case No. 3:23-MD-03071; that

10  said proceedings in connection with the hearing were reduced

11  to typewritten form by me; and that the foregoing transcript

12  (pages 1 through 16) is a true and accurate record of said

13  proceedings.

14          This the 22nd day of April, 2024.

15

16                          /s/ Lise S. Matthews
                            LISE S. MATTHEWS, RMR, CRR, CRC
17                          Official Court Reporter

18

19

20

21

22

23

24

25