# EXHIBIT L

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| FRANK CARBONE, ANDREW CORZO, SAVANNAH ROSE EKLUND, SIA HENRY, MICHAEL MAERLANDER, BRANDON PIYEVSKY, KARA SAFFRIN, and BRITTANY TATIANA WEAVER, individually and on behalf of all others similarly situated, | Case No.: 22-cv-00125 |
| Plaintiffs, | Hon. Matthew F. Kennelly |
| v. | |
| BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, THE JOHN HOPKINS UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY, | |
| Defendants. | |

## JOINT STATUS REPORT

The parties submit the following joint status report pursuant to the Court's Order dated August 15, 2022 (ECF 185).

**(1)     The Parties' prior submission/Meet-and-Confer**

The parties previously submitted a detailed status report (ECF 107) that included summaries of the parties' claims and defenses, status of service, and the status of settlement. The parties will not repeat that information (or the attendant argument) here, except to emphasize briefly certain points or to update the analysis to reflect the status of the parties' positions.  Instead, the instant submission is limited to the parties' revised proposed pretrial schedules as well as their respective positions on what changes, if any, should be made in the limitations to discovery imposed by the Federal Rules and/or the Local Rules given the number of parties and scope of this case.

On August 23, 2022, the parties met-and-conferred regarding their proposed discovery limits and pretrial schedules and were unable to reach agreement. As such, their respective positions are set forth below.

**(2)     The Parties' proposed pretrial schedules**

Plaintiffs' proposed schedule is attached as Appendix 1. Defendants' proposed schedule is attached as Appendix 2.

**A.     Students' and Families' Statement Regarding Their Proposed
Schedule**

Plaintiffs' proposed schedule is based on best practices and modern class certification jurisprudence as implemented successfully in multiple recent antitrust class actions. It will provide for orderly, fair, and efficient litigation of this important case consistent with Fed. R. Civ. P. 1. Defendants' proposal would provide for an unduly short and wholly inadequate fact discovery period for a case of this magnitude; include two rounds of expensive and largely redundant expert reports; and would impose a lengthy automatic stay pending a decision on class certification. By contrast, Plaintiffs' schedule provides sufficient time for fact discovery on behalf of hundreds of

2

thousands of students against seventeen sophisticated parties regarding conduct going back nearly two decades, while getting this case to trial many months before Defendants' proposal.

Plaintiffs' schedule proposes a single fact discovery period (of under seventeen months) for all issues relating to class certification and merits; followed by a single expert discovery period for all issues (including class and merits); followed by briefing on class certification and, simultaneously, a single round of *Daubert* motions (on all issues relating to class and merits); followed by a hearing on class certification; and then briefing on summary judgment and trial. Plaintiffs' counsel have successfully litigated multiple prior complex antitrust cases with court-approved schedules similar to what Plaintiffs propose here, often with the agreement of the defendants. *See* Exhibits 1-7 (several courts adopting analogous processes and schedule for litigating antitrust class actions).[1]

Defendants' proposed schedule, by comparison, is antiquated (given the current standards for class certification), inefficient, inadequate for the parties' fact discovery needs in this complex and important case, and unnecessarily burdensome and expensive. Plaintiffs have three main concerns with Defendants' proposed schedule.

First, Defendants' proposed schedule would impose two largely redundant and separate rounds of expert reports and depositions—back-to-back—one for reports pertaining to class

---

[1] *See, e.g.*, Ex. 1, Case Mgmt. Order, *In Re: Geisinger Health and Evangelical Community Hosp. Healthcare Workers Antitrust Litig.*, No. 4:21-cv-00196-MWB (M.D. Pa. Feb. 7, 2022); Ex. 2, Case Management Order No. 1, *In re: Broiler Chicken Grower Antitrust Litig.*, No. 6:17-cv-00033-RJS-SPS (E.D. Okla. Apr. 13, 2020) ("*Broilers Okla.*"), ECF No. 312; Ex. 3, Stipulated Order Regarding Amended Case Schedule As Modified, *Simon and Simon, PC, et al. v. Align Tech., Inc.*, No. 3:20-cv-03754-VC (N.D. Cal.) ("*Align*"); Ex. 4, Further Amended Scheduling Order, *In re Lipitor Antitrust Litig.*, No. 3:12-cv-02389-PGS-DEA (D.N.J. Oct. 1, 2019), ECF No. 899; Ex. 5, Corrected Seventh Amended Scheduling Order, *In re: Niaspan Antitrust Litig.*, No. 13-MD-2460 (E.D. Pa. Nov. 16, 2018), ECF No. 570; Ex. 6, Scheduling Order at 1, *In re Dental Supplies Antitrust Litig.*, No. 16-cv-696 (BMC) (GRB) (E.D.N.Y. April 10, 2017), ECF No. 177; Ex. 7, Discovery Plan and Scheduling Order at 1, *Le v. Zuffa, LLC*, No. 2-15-cv-01045-RFB-(PAL) (D. Nev. Oct. 14, 2016), ECF No. 311.

certification, and then another pertaining to the merits. Under current jurisprudence in antitrust litigation, "class" reports and "merits" reports are necessarily similar and largely overlapping. At class certification, Plaintiffs have the burden of showing that their case can be proved with predominantly classwide evidence. *See*, *e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047-49 (2016); *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 459-60, 467-70 (2013); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (internal quotation marks and citations omitted) (class certification analysis in antitrust cases will "frequently entail overlap with the merits of the plaintiff's underlying claim," because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action").[2]

And the best way to show that Plaintiffs' case *is capable of* class-wide proof *is to lay out workable methods of class-wide proof*. That is what Plaintiffs' experts will do in their class certification reports, and that is also what Plaintiffs' experts will do in their merits reports. Thus, bifurcating expert reports into two separate rounds after fact discovery has closed, as Defendants propose, would be needlessly expensive, inefficient, and redundant.

Although Defendants did not provide a schedule post-class certification, Defendants will inevitably propose a similarly drawn-out schedule for merits experts, a second redundant round of *Daubert* briefing relating to merits expert reports, and summary judgment. Plaintiffs' schedule avoids this redundancy and inefficiency, providing for one round of expert reports; one round of

---

[2] Under Fed. R. Civ. P. 23(b)(3), Plaintiffs must show that their case as a whole or one or more of its constituent parts is capable of proof on a predominantly class-wide basis. *Tyson Foods*, 136 S. Ct. at 1045 ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3).") (quotation omitted).

4

expert depositions; and simultaneous briefing on class certification and *Daubert*; and a single round of *Daubert* briefing.

Second, Defendants attempt to hide the inefficiency of their proposed schedule by including an unduly short fact discovery period of 12 months for a case of this scope and complexity. In Class Counsel's substantial experience in similar (or far less) complex antitrust cases, significantly more time will be needed to complete fact discovery here.[3] Defendants have not pointed to a single complex antitrust class action, let alone one with 17 defendants, providing such a cramped fact discovery period. This case will involve the production of hundreds of thousands of documents and huge amounts of data—each of which productions will take at least several months for each of the seventeen Defendants, and multiple third parties, to accomplish. Notably, in the meet and confer Defendants refused to commit to a date certain for completion of document discovery, or to interim deadlines for data or document discovery, , further undermining their assurances that 12 months would be sufficient for fact discovery in this matter.

Moreover, before Plaintiffs can take any significant depositions in a case of this magnitude, Plaintiffs will need to review and digest the document productions and prepare for the depositions. And those productions need to be completed or Plaintiffs would risk taking depositions *before* all of the documents relevant to a particular witness have been produced. In the *Broiler Chicken* antitrust action in this District, for example, the Court permitted the plaintiffs to take up to 10

---

[3].In a recent antitrust class action in this district, this Court permitted fact discovery to last nearly two years. *See Moehrl v. Nat'l Assoc. of Realtors*, 1:19-cv-01610 (N.D. Ill.), ECF No. 196 (permitting fact to discovery to last 663 days); *see also In re: Plasma-Derivative Protein Therapies Litig.*, 1:09-cv-0766 (N.D. Ill.), ECF Nos. 330, 500 (permitting an initial period of fact discovery of 18 months in an antitrust class action, which was later extended to approximately 27 months); *Kleen Prods. v. Packaging Corp.*, 1:10-cv-05711 (N.D. Ill.), ECF Nos. 461, 513) (permitting an initial period of fact discovery of approximately 17 months in an antitrust class action, later extended to approximately 22 months).

5

depositions of each of the 18 "Defendant families," for a total of up to 180 depositions. *See* Order dated August 18, 2018 (ECF No. 1155), *In re Broiler Chicken Antitrust Litig.*, Case No. 16 C 8637. As Plaintiffs point out in the deposition limit discussion below, it is standard for cases of this magnitude to allow at least 10 depositions per major defendant, in addition to allowing multiple third-party depositions. Defendants' only response to the multiple cases Plaintiffs cite allowing 10-12 depositions per party is to refer to the *In re Farm Raised Atlantic Salmon Antitrust Litigation*, 19-CV-21551 (S.D. Fla.) (ECF 467), which allowed close to seven depositions per defendant group. If that precedent were applied here, Plaintiffs would be allowed nearly 120 party depositions, and also require multiple third-party depositions. Assuming Defendants completed document productions six months from the Status Conference (a deadline to which Defendants refuse to commit and which seems exceedingly unlikely), and even under Defendants' own cited precedent, Defendants' schedule would effectively require the parties to (a) address any discovery issues with the Court, (b) resolve discovery follow-up matters (such as privilege log issues), and (c) take and defend effectively a deposition per day—every single business day during the fact discovery period—to complete the necessary discovery. That is just not possible.

Finally, Defendants' schedule also tries to cut corners in other ways unfair to the Plaintiffs. For instance, Defendants afford themselves the last word on Plaintiffs' class motion, by making their class *Daubert* motion reply brief due *after* Plaintiffs' class reply brief. Given that the *class* Daubert motion is essentially collateral to the class motion, briefing should be structured such that Plaintiffs have the last written word on class—as Plaintiffs' schedule appropriately provides (by making Plaintiffs' class reply brief due after Defendants' class *Daubert* reply brief).

Third, Defendants' schedule unnecessarily imposes an automatic stay after the class certification hearing. That is inefficient. If, at the time, the Court deems it appropriate to impose a

stay of summary judgment and pre-trial proceedings, it can of course do so. But there is no reason to pre-emptively impose one now.

In short, Plaintiffs' proposed schedule is more efficient, less costly, more appropriate for this particular complex case, and more equitable. Plaintiffs respectfully request that the Court enter the schedule Plaintiffs propose.

### B. Universities' Proposed Pretrial Schedule

The Universities propose an expeditious and reasonable schedule that fairly and logically provides for efficient completion of all discovery and any amendment of claims, then sequencing class certification expert reports and briefing ahead of merits expert reports to promptly address the numerous obstacles to class certification inherent in Plaintiffs' claim. Plaintiffs' proposed schedule, by contrast, seeks virtually boundless discovery, an extended deadline for adding new parties and claims, and the illogical simultaneous scheduling of class and merits expert discovery, when among the very purposes of a prompt class determination is to determine the scope of the matters that merits experts must address.

Plaintiffs' primary objection to the Universities' proposal to sequence class certification expert reports and briefing ahead of merits expert reports is based on Plaintiffs' assertion that the scope of class expert discovery and merits expert discovery will be "necessarily similar and almost entirely overlapping." But there is no reason to believe that will be the case. Whether or not there may be some overlap between class and merits, the inquiries are very different, and there are numerous issues (such as market definition and the merits of the underlying antitrust claims) that will undoubtedly be the subject of expert testimony, but are unlikely to be relevant to class certification. Moreover, class certification is a threshold question that should be resolved before the parties are required to undertake the significant time and expense associated with full-blown merits expert discovery. The composition of the class—if one is even certified—and the claims it

7

is able to sustain—if any—will necessarily drive the scope (and attendant costs) of merits discovery.

Defendants attempted to address Plaintiffs' concerns by modifying their original proposal (as set forth in the February 15 status report) to provide for the exchange of all class certification expert reports and the completion of class expert depositions *prior* to the commencement of class certification and class *Daubert* briefing. Doing so, Defendants believe, strikes a reasonable compromise that balances Plaintiffs' professed efficiency concerns—completing all of the class expert work up front and consolidating the class certification briefing and related *Daubert* briefing into one round of briefing—and Defendants' sequencing concerns—the need for class to be resolved before undertaking substantial merits expert work.

The key features of the Universities' proposed schedule are:

- Deadline for amending pleadings/adding parties approximately 6 months after the commencement of discovery.
- Fact discovery period of 12 months—five months shorter than Plaintiffs' proposal.
- Class certification expert reports, briefing and class *Daubert* briefing begin immediately following close of fact discovery.
- Deadlines for merits/trial expert discovery and further proceedings would be set immediately following ruling on class certification.

Plaintiffs' contention that their proposal represents the "modern" and "efficient" approach to complex litigation, including antitrust cases, is incorrect. The Universities' proposed schedule mirrors those recently entered in large cases in this District. *See In re: Turkey Antitrust Litigation*, 19-CV-8318 (Judge Kendall) (ECF 210, attached as Ex. A); *In re: Delta Dental Antitrust Litigation*, MDL 2931, 1:19-CV-06734 (Judge Bucklo) (ECF 400, attached as Ex. B); *Moehrl, et al. v. The National Association of Realtors, et al.*, 1:19-CV-01610 (Judge Wood) (ECF 196,

attached as Ex. C); *Dennis, et al. v. The Andersons, Inc., et al.*, 1:20-CV-04090 (Judge Norgle, attached as Exhibit D).

A one-year period for fact discovery should be sufficient in this case. Contrary to Plaintiffs' position, this case does not justify Plaintiffs taking nearly 200 fact depositions and collecting twenty-plus years of documents. Plaintiffs' claim focuses on specific aspects of the Universities' operations -- admissions and financial aid practices. The scope of discovery that Plaintiffs envision is neither reasonable nor proportionate to the needs of this case.

The Universities' proposal does not include interim discovery deadlines proposed by Plaintiffs (*e.g.*, separate completion deadlines for each tranche of RFPs) for two reasons. First, the Universities do not believe it is efficient to discuss interim deadlines before the Universities know the full scope of documents Plaintiffs will seek in each tranche (including the number of custodians) or the extent of work that will be required for review and production (including the breadth of any proposed search terms and time period over which discovery is permitted). Second, to the extent Plaintiffs' proposal is driven by the concern that documents not be withheld until the end of fact discovery, as the Universities expressed to Plaintiffs in our meet and confer, the Universities will commit to a rolling production of documents to alleviate this problem. Once the parties are further into their discovery discussions, they can propose additional interim deadlines as the Court requires.

### (3) The Parties' proposed modifications to the limits on discovery

#### A. Students' and Families' Proposed Discovery Limits

Plaintiffs respectfully propose an expansion on the limits for fact discovery set forth in the Federal Rules of Civil Procedure. This is an antitrust class action against seventeen large institutions, alleging a long-running (nearly twenty-year) conspiracy to artificially reduce financial aid, involving hundreds of individuals, over a long period of time. Defendants are each complex

9

organizations in which the admissions office, the development office, the president's office, and the financial-aid office all interact on issues relevant to this litigation. In addition, the personnel at each of those offices change with some regularity. Further, in antitrust conspiracy cases like this, the period just before a defendant joins a conspiracy often involves relevant materials relating to the reasons for involvement and the pre-conspiracy baseline, which further extends the relevant discovery period. This proposal seeks to account for those realities, and reflects that the litigation will concern at least the following disputed factual issues, regarding proposed Class Periods for as long as nineteen (19) years:

- Whether, to what extent, and over what period of time Defendants, or any of them, have engaged in need-aware admissions with respect to waitlisted students.

- Whether, to what extent, and over what period of time Defendants, or any of them, have engaged in need-aware admissions with respect to transfer students.

- Whether, to what extent, and over what period of time Defendants, or any of them, have engaged in need-aware admissions through any practice of enrollment management.

- Whether, to what extent, and over what period of time Defendants, or any of them, have engaged in need-aware admissions outside of any practice of enrollment management or for applicants other that waitlisted or transfer students.

- Whether, to what extent, over what period of time, and on what bases large donors to Defendants understood that their donation history would bear on admissions decisions with respect to their children.

- Whether, to what extent, and over what period of time members of the alleged conspiracy agreed to a common formula for determining financial need of admitted students and their families (the "Consensus Methodology"), and the nature of that formula.

- Whether, to what extent, and over what period of time each Defendant has employed the Consensus Methodology, within the 568 Cartel, during the relevant Class Periods, as a basis for awarding financial aid.

- Should neither the per se rule nor the quick look mode of analysis apply, whether and to what extent there is a relevant market in which defendants collectively had market power.

- Whether, to what extent, and over what period of time Defendants' employment of the Common Methodology has caused anticompetitive effects, including artificially inflated net prices of attendance for members of the proposed Class at Defendants' universities.

- Whether, to what extent, and over what period of time Defendants' employment of the Common Methodology has caused widespread antitrust injury or impact to members of the proposed Class.

- Should the per se rule not apply, whether, to what extent, and over what period of time the challenged conspiracy has enabled or realized any potentially valid procompetitive purposes or ends.

- Should the per se rule not apply, whether, to what extent, and over what period of time Defendants, through less intrusive means, could have enabled or realized any potentially valid procompetitive ends.

Considering this breadth of disputed factual issues, Plaintiffs respectfully propose that the following deposition discovery is warranted:

- A Rule 30(b)(6) deposition of each Defendant, including, *inter alia*, with respect to each Defendant's (a) admissions practices, (b) the role of financial circumstances of students or their families in admissions decisions, (c) the reasons for joining the 568 Presidents Group, and (d) transactional data reflecting admissions, tuition, and financial aid.

- A fact deposition of the current director of admissions, financial aid, and development of each Defendant.

- A fact deposition of at least one current member of the admissions, financial aid, and development departments of each Defendant, as further percipient witnesses beyond the directors.

- A fact deposition of each of the former directors of admissions for each Defendant during the Class Period pertaining to each Defendant.

- A fact deposition of the current president of each Defendant.

- A fact deposition of each of the former presidents of each Defendant during the Class Period (or just prior to the Class Period) pertaining to the Defendant.

- The transactional data concerning the admissions decisions for each Defendant during the entirely of the Class Period and for a period prior to the Class Period pertaining to that Defendant.

- The transaction data evidencing the financial-aid decisions by each Defendant, and the total amount paid by each Class member to each Defendant, for each of their admitted students during the Class Period and for a period prior to the Class Period pertaining to the Defendant.

- A fact deposition of each current and former Chief Financial Officer (or person in an equivalent position) during the Class Period at each Defendant who is knowledgeable about that Defendant's decisions concerning the amount and percentage of the endowment to devote to scholarships and/or institutional grant aid annually.

- A fact deposition, if practicable for each Defendant, of one or more large donors regarding any relationship or understanding of any relationship between donation history and admissions decisions with respect to the donors' children.

- Fact depositions of third-party universities, and non-party participants in 568 Group meetings (if any).

- Fact depositions of commercial providers of enrollment management software and/or enrollment management systems.

In addition to these depositions, Plaintiffs would likely also require examination of the former development directors and former financial aid directors at each of the Defendants, as well as certain senior university officials at various of the Defendants working on what Plaintiffs understand to be special confidential projects relating to admissions. Finally, Plaintiffs would need to depose witnesses concerning the formation of the 568 Group in 1998, and each Defendant's decisions to join it (and/or purportedly to leave it) whether in 1998 or thereafter, and also witnesses concerning the Group's development in or before 2003 of the so-called Consensus Methodology for financial aid and its implementation by Group members over time.

Multiple analogous antitrust class action cases in this Circuit and others have authorized between 10-12 depositions per defendant (or defendant corporate family) in addition to necessary third-party depositions. For instance:

- *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637 (N.D. Ill.), ECF No. 1155 (permitting the plaintiffs to take 205 depositions—10 depositions from each of the 18 defendant families and also 25 third-party depositions);

- *In re: Cathode Ray Tube (CRT) Antitrust Litig.* (N.D. Cal.), No. 4:07-cv-05944-JST, ECF Nos. 1092 (Special Master recommendation), 1128 (adopting recommendation) (permitting plaintiffs to initially take 12 depositions per defense group, for total of 120 depositions)

- *Broiler Okla..*, No. 6:20-md-02977-RJS-CMR (E.D. Okla.), ECF No. 57 (permitting approximately 80 depositions per side in case with five defendant groups);

- *In re: Packaged Seafood Prods. Antitrust Litig.* (S.D. Cal.), No. 3:15-md-02670-JLS-MDD, ECF No. 495 (permitting plaintiffs to take at least 20 depositions per defendant group, for a total maximum of 60 defendant depositions);

- *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 1:18-cv-008604 (N.D. Ill.), ECF No. 410 (permitting 45 depositions per side in a case with three defendants);

- *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Case No. 07-md-1827-SI (N.D. Cal. May 13, 2019), ECF No. 983 (setting presumptive limit of 100 depositions, with a maximum of 12 depositions per defendant group, not including 30(b)(6) depositions (permitting 12 hours per defendant group), third-party depositions, expert depositions, or depositions of record custodians);

- *Jien, et al. v. Perdue Farms, Inc. et al.*, No. SAG-19-2521 (D. Md. June 1, 2021), ECF No. 470 (permitting plaintiffs to conduct 1512 hours of total deposition time (equivalent to 216 depositions), covering both defendant families and third parties).[4]

---

[4] *See also In re Ins. Brokerage Antitrust Litigation*, 282 F.R.D. 92, 103 (D.N.J. 2012) (permitting class counsel to take over 200 depositions); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, MDL No. 1486, Case No. C 06-4333 PJH, Case No. C 06-6436 PJH, 2013 WL 12387371, at *26 (N.D. Cal. Nov. 5, 2013) (permitting more than 100 depositions); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, MDL No. 1819, No. 4:07-md-01819-CW (N.D. Cal. April 10, 2009), ECF No. 672 (permitting 12 depositions per defendant group, and separately, allowing plaintiffs to take up to an additional 12 hours of 30(b)(6) depositions of each defendant group); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 102 (2d Cir. 2005) (plaintiffs' discovery included almost 400 depositions).

13

Plaintiffs' proposal below, as well as their proposed fact discovery schedule, are consistent with the abundant cited precedent for a case of this size and scope. Plaintiffs' proposals amount to an average of approximately ten depositions per defendant, and approximately 25 third party depositions.

As discussed above, Plaintiffs' proposed period for fact discovery properly accounts for the discovery Plaintiffs reasonably propose to pursue, and its likely timing. Defendants have and will continue to argue that Plaintiffs must establish practices by each of the seventeen Defendants, and the effects of those practices, over a twenty-year period. Accordingly, Plaintiffs respectfully seek to reserve the right to take approximately ten depositions per Defendant. This is the common range of depositions-per-defendant in complex antitrust cases—most of which involve relevant periods half as long or less.

Given (a) the Plaintiffs' burden of establishing the elements of their claim, including the participation of each of the seventeen Defendants in a conspiracy lasting more than twenty years, (b) the number of relevant offices at each defendant (including, *e.g.*, President's, financial aid, development, and admissions), (c) the number of employees in many of these offices (in the hundreds of people at any one time), and (d) the amount of turnover at each of those offices over the nearly twenty years at issue for many of the Defendants, Plaintiffs' need for robust discovery justifies the departures from the discovery limitations Plaintiffs seek for this case.

Plaintiffs respectfully propose the following limits:

- **Depositions of Non-Expert Witnesses**

    - Each side shall be limited to one-hundred and ninety-five (195) depositions, inclusive of non-party depositions, provided that, no individual defendant will be subject to more than fifteen (15) depositions of which no more than one (1) may be a Fed. R. Civ. P. 30(b)(6) deposition of up to fourteen (14) hours.

    - Absent agreement or leave of Court, no witness shall be deposed for more than one day of seven (7) hours except that, (a) if any witness is being deposed

14

pursuant to Fed. R. Civ. P. 30(b)(1) and is also designated as a Fed. R. Civ. P. 30(b)(6) witness, that witness shall not be deposed for more than sixteen (16) hours.

  o  Excluded from any deposition limits are depositions of witnesses who appear on an opposing party's final pre-trial witness list and who were not previously deposed, unless such witnesses were discovery custodians.

- **Interrogatories** – Plaintiffs may collectively propound no more than 65 written interrogatories, including all discrete subparts, on any defendant. Defendants may collectively propound no more than 65 written interrogatories, including all discrete subparts, on any plaintiff.

- **Requests for Admission** – Plaintiffs may collectively propound no more than 65 written requests for admission on each defendant. Defendants may collectively propound no more than 65 written requests for admission on each plaintiff.

Additional discovery provisions are identified in the footnotes to Plaintiffs' Proposed Schedule (Appendix 1), including:

- Status Reports shall be submitted every 90 days (to ensure that issues get raised and resolved promptly);

- Privilege logs shall be produced within thirty (30) days of each production of documents (to ensure that privilege issues can be promptly adjudicated as they arise);

- All RFPs must be served at least 75 days before the close of fact discovery and all interrogatories and RFAs must be served at least 45 days before the close of fact discovery.

### B.  Universities' Proposed Discovery Limits

The Universities acknowledge that some adjustments to the discovery limitations set forth in the Federal Rules and this Court's Local Rules are warranted but disagree that Plaintiffs'

proposal is either reasonable or proportional to the needs of the case. For example, Plaintiffs seek discovery from Defendants over a time period of more than 20 years, which is neither reasonable nor proportional to the needs of this case, and the Universities will object to that unreasonable time period. Similarly, Plaintiffs' demand of "approximately" 195 depositions is excessive under the circumstances. While it is true that several courts have permitted ten depositions per defendant in large antitrust cases, it is also true that others have allowed significantly less. *See, e.g.*, *In re Farm Raised Atlantic Salmon Antitrust Litigation*, 19-CV-21551 (S.D. Fla.) (ECF 467) (allowing a total of 40 depositions of 6 defendant families for both a direct purchaser and an indirect purchaser putative class).

Accordingly, the Universities respectfully propose the following limits on discovery should apply:

- **Interrogatories** – Plaintiffs may collectively propound no more than 25 written interrogatories, including all discrete subparts, on any defendant. Defendants may collectively propound no more than 25 written interrogatories, including all discrete subparts, on any plaintiff.

- **Requests for Admission** – Plaintiffs may collectively propound no more than 40 written requests for admission on each defendant. Defendants may collectively propound no more than 40 written requests for admission on each plaintiff.

- **Depositions of Non-Expert Witnesses**

  o Each side shall be limited to 75 depositions, inclusive of non-party depositions, provided that, no individual defendant will be subject to more than 5 depositions of which no more than 1 may be a Fed. R. Civ. P. 30(b)(6) deposition.

  o Absent agreement or leave of Court, no witness shall be deposed for more than one day of 7 hours except that, if any witness that is being deposed pursuant to Fed. R. Civ. P. 30(b)(1) and is also designated as a Fed. R. Civ. P. 30(b)(6) witness, that witness shall not be deposed for more than 10 hours. The 7 hours of a Fed. R. Civ. P. 30(b)(6) deposition shall count as a single deposition, regardless of the number of witnesses designated to testify.

  o Excluded from any deposition limits are depositions of witnesses who appear on an opposing party's final pre-trial witness list and who were not previously deposed, unless such witnesses were (i) discovery custodians or (ii) previously

identified in initial disclosures or supplements thereto, served at least 60 days prior to the conclusion of fact discovery.

With respect to the substantive discovery matters raised in the footnotes to Plaintiffs' proposed schedule, Defendants propose as follows:

- Status Reports shall be submitted upon request of the Court (every 90 days is inefficient and unnecessary);

- Privilege logs shall be produced within 45 days of substantial completion of document production and amended, as appropriate, thereafter (allows for the timely production of non-privileged documents and consolidated discussions of privilege issues);

- All discovery must be served so as to be completed no later than 30 days before the close of fact discovery.

**(4)    Details regarding any discussions concerning settlement, whether before or after the filing of the lawsuit**

**Students' and Families' Position:** Plaintiffs have proposed to Defendants that, considering the national significance of this case and the enormous potential financial and reputational stakes for Defendants, the early and ongoing involvement of a preeminent mediator, of national stature, would potentially benefit all parties. Any such involvement would proceed in parallel with the litigation of the case. Instructions for Settlement Conference for Cases Assigned to U.S. District Judge Matthew F. Kennelly, at 1 (N.D. Ill. Aug. 19, 1999).

**Universities' Position:** The Universities believe that Plaintiffs' claims are meritless and do not believe that mediation—including the parties' incurring the costs of the ongoing involvement of a private mediator—would be productive at this time.

**(5) Proposed Discovery Orders**

The parties are in the process of negotiating stipulations relating to protocols for dealing with (a) electronically stored information, (b) confidentiality of documents (including issues arising out of FERPA),[5] (c) expert discovery, and (d) depositions.

The parties propose to submit stipulations relating to each of these matters to the Court, or if stipulations cannot be reached, a joint motion laying out the disputed issues for the Court, on September 16, 2022.

---

[5] FERPA is the Family Education Rights and Privacy Act, 20 U.S.C. § 123g, which protects the privacy of student education records at schools that receive certain federal funds.

18

Dated:  August 26, 2022

Respectfully submitted,


By:  */s/ Edward J. Normand*
Edward J. Normand
Eric S. Rosen
Peter Bach-y-Rita
Kyle W. Roche
ROCHE FREEDMAN LLP
99 Park Avenue
Suite 1910
New York, NY 10016
Tel: 646-970-7513
tnormand@rochefreedman.com
erosen@rochefreedman.com
pbachyrita@rochefreedman.com
kyle@rochefreedman.com


Robert D. Gilbert
Elpidio Villarreal
GILBERT LITIGATORS &
COUNSELORS, P.C.
11 Broadway, Suite 615
New York, NY 10004
Tel: 646-448-5269
rgilbert@gilbertlitigators.com
pdvillarreal@gilbertlitigators.com


Eric L. Cramer
Caitlin G. Coslett
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
ecramer@bm.net
ccoslett@bm.net


Daniel J. Walker
Robert E. Litan
Hope Brinn
BERGER MONTAGUE PC
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Tel: 202-559-9745
rlitan@bm.net

By:  */s/ Kenneth Kliebard*
Kenneth Kliebard
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Suite 2800
Chicago, IL 60606-1511
Tel: 312-324-1000
kenneth.kliebard@morganlewis.com


Jon R. Roellke
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel: 202-739-5754
jon.roellke@morganlewis.com


Sujal Shah
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower, 28th Floor
San Francisco, CA 94105-1596
Tel: 415-442-1386
sujal.shah@morganlewis.com

*Counsel for Defendant Brown University*

By:  */s/ Deepti Bansal*
Deepti Bansal
Alexander J. Kasner
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC  20004-2400
Tel: 202-728-7027
dbansal@cooley.com
akasner@cooley.com

19

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th floor
Chicago, IL 60606
Tel: 312-741-1019
beth@feganscott.com

Brooke Achua
FEGAN SCOTT LLC
140 Broadway
46th Floor
New York, NY 10005
Tel.: 646- 502-7910
brooke@feganscott.com

*Counsel for Plaintiffs*

Matthew Kutcher
COOLEY LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL  60606
Tel: 312-881-6500
mkutcher@cooley.com

*Counsel for Defendant California Institute of Technology*

By: */s/ James L.Cooper*
James L. Cooper
Michael Rubin
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC  20001-3743
Tel: 202-942-5014
james.cooper@arnoldporter.com
michael.rubin@arnoldporter.com

Leah Harrell
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Tel.: 212-836-7767
Leah.Harrell@arnoldporter.com

Valarie Hays
ARNOLD & PORTER KAYE SCHOLER LLP
70 W Madison Street
Suite 4200
Chicago, IL 60602
Tel.: 312-583-2440
valarie.hays@arnoldporter.com

*Counsel for Defendant University of Chicago*

By: /s/ Patrick Fitzgerald
Patrick Fitzgerald
Amy Van Gelder
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
155 N. Wacker Drive
Chicago, IL 60606-1720
Tel: 312-407-0508
patrick.fitzgerald@skadden.com
amy.vangelder@skadden.com

Karen Hoffman Lent
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
Room 40-216
New York, NY 10001-8602
Tel: 212-735-3276
karen.lent@skadden.com

*Counsel for Defendant The Trustees of
Columbia University in the City of New York*

By: /s/ Norm Armstrong
Norm Armstrong
Christopher Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
Tel.: 202-626-8979
narmstrong@kslaw.com
cyook@kslaw.com

Emily Chen
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel: 212-556-2224
echen@kslaw.com

21

Zachary T. Fardon
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
312 764 6960
zfardon@kslaw.com

*Counsel for Defendant Cornell University*

By: */s/ Terri L. Mascherin*
Terri L. Mascherin
Reid J. Schar
JENNER & BLOCK LLP
353 N. Clark Street,
Chicago, IL 60654-3456
Tel: 312-222-9350
tmascherin@jenner.com
rschar@jenner.com

Ishan K. Bhabha
Douglas E. Litvack
Lauren J. Hartz
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Tel: 202-637-6327
ibhabha@jenner.com
dlitvack@jenner.com
lhartz@jenner.com

*Counsel for Defendant Trustees of Dartmouth College*

Christopher D. Dusseault
Rachel S. Brass
Jacqueline Sesia
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel: 213-229-7000
cdusseault@gibsondunn.com
rbrass@gibsondunn.com
jsesia@gibsondunn.com

22

By: */s/ Casey T. Grabenstein*
Casey T. Grabenstein
James A. Morsch
Elizabeth A. Thompson

SAUL EWING ARNSTEIN & LEHR
161 N. Clark St.
Chicago, IL 60601
Tel.: 312-876-7810
casey.grabenstein@saul.com

*Counsel for Defendant Duke University*

By: */s/ Tina M. Tabacchi*
Tina M. Tabacchi
JONES DAY
110 North Wacker Drive
Suite 4800
Chicago, IL 60606
Tel.: 312-782-3939
tmtabacchi@jonesday.com

Craig A. Waldman
Hashim M. Moopan
Christopher N. Thatch
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
Tel.: 202-879-3877
cwaldman@jonesday.com
hmmooppan@jonesday.com
cthatch@jonesday.com

*Counsel for Defendant Emory University*

By: */s/ Britt M. Miller*
Britt M. Miller
Jed W. Glickstein
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: 312-783-0600
bmiller@mayerbrown.com
jglickstein@mayerbrown.com

Stephen M. Medlock
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006-1101
Tel: 202-263-3221
smedlock@mayerbrown.com

*Counsel for Defendant Georgetown University*

By: */s/ Jeffrey J. Bushofsky*
Jeffrey J. Bushofsky
ROPES & GRAY LLP
191 North Wacker Drive 32nd Floor
Chicago, IL 60606-4302
Tel: 312-845-1200
jeffrey.bushofsky@ropesgray.com

Chong S. Park
Samer M. Musallam
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Tel: 202-508-4600
chong.park@ropesgray.com
samer.musallam@ropesgray.com

*Counsel for Johns Hopkins University*

By: */s/ Eric Mahr*
Eric Mahr
Jan Rybnicek
Daphne Lin
FRESHFIELDS BRUCKHAUS DERINGER
US LLP
700 13th Street, NW
Washington, DC 20005
Tel: 202-777-4500
eric.mahr@freshfields.com
jan.rybnicek@freshfields.com
daphne.lin@freshfields.com

*Counsel for Massachusetts Institute of
Technology*

24

By: */s/ Scott D. Stein*
Scott D. Stein
Benjamin R. Brunner
Kelsey Annu-Essuman
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel.: 312-853-7520
sstein@sidley.com
bbrunner@sidley.com
kannuessuman@sidley.com

*Counsel for Northwestern University*

By: */s/ Robert A. Van Kirk*
Robert A. Van Kirk
Jonathan Pitt
Sarah F. Kirkpatrick
Matthew D. Heins
Cole T. Wintheiser
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, D.C. 20024
Tel: 202-434-5163
rvankirk@wc.com
jpitt@wc.com
skirkpatrick@wc.com
mheins@wc.com
cwintheiser@wc.com

James Peter Fieweger
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street
Suite 3200
Chicago, IL 60606
Tel.: 312-222-0800
jpfieweger@michaelbest.com

*Counsel for University of Notre Dame du Lac*

25

By: */s/ Seth Waxman*
Seth Waxman
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: 202-663-6800
seth.waxman@wilmerhale.com

David Gringer
Alan Schoenfeld
WILMER CUTLER PICKERING HALE
    AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: 212-937-7294
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Daniel Martin Feeney
Edward W. Feldman
MILLER SHAKMAN LEVINE &
FELDMAN LLP
180 North LaSalle Street
Suite 3600
Chicago, IL 60601
Tel.: 312-263-3700
dfeeney@millershakman.com
efeldman@millershakman.com

*Counsel for The Trustees of the University of
Pennsylvania*

By: */s/ Norm Armstrong*
Norm Armstrong
Christopher Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C.  20006
Tel.: 202-626-8979
narmstrong@kslaw.com
cyook@kslaw.com

26

Emily Chen
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel: 212-556-2224
echen@kslaw.com

Zachary T. Fardon
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
312 764 6960
zfardon@kslaw.com

*Counsel for William Marsh Rice University*

By: */s/ J. Mark Gidley*
J. Mark Gidley
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005-3807
Tel: 202-626-3600
mgidley@whitecase.com

Robert A. Milne
David H. Suggs
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Tel: 212-819-8200
rmilne@whitecase.com
dsuggs@whitecase.com

*Counsel for Vanderbilt University*

By: */s/ Charles A. Loughlin*
Charles A. Loughlin
Benjamin F. Holt
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
Tel: 202-637-5600
chuck.loughlin@hoganlovells.com
benjamin.holt@hoganlovells.com

27

Stephen Novack
Stephen J. Siegel
Serena G. Rabie
NOVACK AND MACEY LLP
100 North Riverside Plaza, 15th Floor
Chicago, IL  60606-1501
Tel.: 312-419-6900
snovack@novackmacey.com
ssiegel@novackmacey.com
srabie@novackmacey.com

*Counsel for Yale University*

28

**APPENDIX 1 (Plaintiffs' Proposed Schedule)**

| EVENT | DEADLINE |
|---|---|
| Parties File Joint Status Report[6] | August 26, 2022 |
| Status Hearing | September 2, 2022 |
| Answer Under FRCP 12 | September 9, 2022 |
| Parties to submit proposed stipulated orders re confidentiality (including FERPA), ESI, deposition protocol, and expert discovery, and if not stipulated to, a joint motion setting out the disputes | September 16, 2022 |
| Parties to Submit Joint Letter to Court Regarding Any Areas of Dispute Regarding Custodians, Non-Custodial Document Sources, and Search Methodologies | November 4, 2022 |
| Deadline to Begin Rolling Production of Documents in Response to RFPs Served on or Before September 16, 2022[7] | November 30, 2022 |
| Completion of Transactional Data in Response to RFPs Served on or Before September 16, 2022 | December 16, 2022 |
| Completion of Document Production in Response to RFPs Served on or Before September 16, 2022 | February 10, 2023 |
| Completion of Document Production in Response to RFPs Served on or Before March 31, 2023 | July 31, 2023 |
| Motion to Amend Pleadings | July 31, 2023 |

---

[6] Supplemental Status Reports every 90 days.

[7] Privilege Logs must be provided within 30 days of each production of documents.

| EVENT | DEADLINE |
|---|---|
| | |
| Close of Fact Discovery[8] | January 31, 2024 |
| Opening Expert Reports (Class Certification and Merits) on All Issue on Which a Party Has the Burden of Proof | March 15, 2024 |
| Opposition Expert Reports (Class Certification and Merits) | May 17, 2024 |
| Rebuttal Expert Reports (Class Certification and Merits) | August 2, 2024 |
| Close of Expert Discovery | September 13, 2024[9] |
| *Daubert* Motions | October 18, 2024 |
| Motion for Class Certification | October 18, 2024 |
| *Daubert* Oppositions | November 15, 2024 |
| Opposition to Motion for Class Certification | November 15, 2024 |
| *Daubert* Replies | December 20, 2024 |
| Reply in Support of Class Certification | January 8, 2025 |
| *Daubert* and/or Class Certification Hearing | Court's discretion |

---

[8] All RFPs must be served at least 75 days before the close of fact discovery. All interrogatories and RFAs must be served at least 45 days before the close of fact discovery.

[9] Expert depositions are to be taken during the period between August 2 and September 13, 2024. Absent extenuating circumstances, the parties are limited to a single seven-hour deposition of each expert.

| **EVENT** | **DEADLINE** |
|---|---|
| Summary Judgment Motions | March 7, 2025 |
| Summary Judgment Oppositions | April 11, 2025 |
| Summary Judgment Replies | May 12, 2025 |
| Summary Judgment Hearing | Court's discretion |
| Pre-Trial Conference | Court's discretion |
| Trial | Court's discretion |

31

## APPENDIX 2 (Defendants' Proposed Schedule)

| EVENT | DEADLINE |
|---|---|
| Parties File Joint Status Report | August 26, 2022 |
| Status Conference | September 2, 2022 |
| Answers Under FRCP 12 | September 9, 2022 |
| Deadline to submit proposed protective order, ESI protocol, expert protocol, and deposition protocol | September 16, 2022 |
| Last day to move to amend pleadings/add parties | March 13, 2023 |
| Close of Fact Discovery | September 1, 2023 |
| Plaintiffs serve initial class expert reports | October 2, 2023 |
| Defendants serve class expert reports | December 1, 2023 |
| Plaintiffs serve rebuttal class expert reports | January 31, 2024 |
| Class expert depositions begin<br><br>Absent agreement of the parties, plaintiffs' experts must be deposed prior to defendants' experts | February 28, 2024 |
| Deadline for completion of all class discovery | March 27, 2024 |
| Plaintiffs file class certification motion, and any class *Daubert* motion | April 24, 2024 |

| EVENT | DEADLINE |
|---|---|
| Defendants file (i) opposition to plaintiffs' class certification motion; (ii) opposition to plaintiffs' *Daubert* motions(s); and (iii) any *Daubert* motion directed at plaintiffs' class experts. | June 5, 2024 |
| Plaintiffs file (i) reply in support of class certification; (ii) reply in support of Plaintiffs' *Daubert* motion(s); and (iii) opposition to Defendants' *Daubert* motion(s). | July 10, 2024 |
| Defendants file reply in support of Defendants' *Daubert* motion(s) | August 7, 2024 |
| *Daubert* and/or Class Certification Hearing | Court's discretion |
| Further proceedings | No later than 30 days after the Court's ruling on the motion for class certification, the parties will provide to the Court a proposed schedule for the filing of dispositive motions, merits expert discovery, *Daubert* motions for merits experts, motions *in limine*, and other pre-trial matters, if applicable. |

33