# EXHIBIT M

```
 1              IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3

 4    SIA HENRY, et al.,                )  Docket No. 22 C 125
                                        )
 5                    Plaintiffs,       )
                                        )
 6             vs.                      )
                                        )
 7    BROWN UNIVERSITY, et al.,         )  Chicago, Illinois
                                        )  September 2, 2022
 8                    Defendants.       )  9:25 o'clock a.m.

 9
                         TRANSCRIPT OF PROCEEDINGS
10              BEFORE THE HONORABLE MATTHEW F. KENNELLY

11
      APPEARANCES:
12

13    For the Plaintiffs:   ROCHE FREEDMAN LLP
                            BY:  MR. EDWARD J. NORMAND
14                          99 Park Avenue, Suite 1910
                            New York, NY 10016
15                          (646) 970-7513

16

17                          GILBERT LITIGATORS & COUNSELORS
                            BY:  MR. ROBERT DEWITT GILBERT
18                          11 Broadway, Suite 615
                            New York, NY 10004
19                          (646) 448-5269

20

21

22
      Court Reporter:       MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
23                          Official Court Reporter
                            219 S. Dearborn Street, Suite 2102
24                          Chicago, Illinois  60604
                            (312) 435-5639
25
```

```
 1  APPEARANCES CONTINUED:

 2                              BERGER MONTAGUE PC
                                BY:  MR. ERIC L. CRAMER
 3                              1818 Market Street, Suite 3600
                                Philadelphia, PA 19103
 4                              (215) 875-3009

 5
                                BERGER MONTAGUE PC
 6                              BY:  MR. ROBERT E. LITAN
                                2001 Pennsylvania Avenue, NW
 7                              Suite 300
                                Washington, DC 20006
 8                              202-559-9745

 9
                                FEGAN SCOTT, LLC
10                              BY:  MS. ELIZABETH A. FEGAN
                                150 S. Wacker Dr., 24th Floor
11                              Chicago, IL 60606
                                312-741-1019

12

13  For the Defendants:
    Brown University:           MORGAN, LEWIS & BOCKIUS LLP
14                              BY:  MR. JON R. ROELLKE
                                     MR. KEN KLIEBARD
15                              1111 Pennsylvania Avenue, NW
                                Washington, DC 20004
16                              (202) 739-5754

17
    California Institute
18  of Technology:              COOLEY LLP
                                BY:  MS. DEEPTI BANSAL
19                              1299 Pennsylvania Avenue, NW
                                700
20                              Washington, DC 20004
                                (202) 728-7027

21

22  University of
    Chicago:                    ARNOLD & PORTER
23                              BY:  MR. JAMES L. COOPER
                                     MR. MICHAEL RUBIN
24                                   MS. LEAH HARRELL
                                555 Twelfth Street, N.W.
25                              Washington, DC 20004-1202
                                (202) 942-5000
```

```
 1  APPEARANCES CONTINUED:

 2
    Columbia University:  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
 3                        BY:  MS. KAREN HOFFMAN LENT
                               MS. LAURA BERNESCU
 4                        One Manhattan West
                          Room 40-216
 5                        New York, NY 10001
                          (212) 735-3276
 6

 7                        SKADDEN ARPS SLATE MEAGHER & FLOM, LLP CH
                          BY:  MR. PATRICK JOSEPH FITZGERALD
 8                        155 North Wacker Drive, Suite 2700
                          Chicago, IL 60606-1720
 9                        (312) 407-0903

10
    Cornell University:   KING & SPALDING
11                        BY:  MR. ZACHARY THOMAS FARDON
                          110 North Wacker Drive, Suite 3800
12                        Chicago, IL 60606
                          (312) 995-6333
13

14                        KING & SPALDING
                          BY:  MR. NORMAN ARMSTRONG, JR.
15                        1700 Pennsylvania Avenue, NW, Suite 200
                          Washington, DC 20006
16                        (202) 626-8979

17

18  Dartmouth College:    JENNER & BLOCK LLP
                          BY:  MS. TERRI LYNN MASCHERIN
19                        353 N. Clark Street
                          Chicago, IL 60654
20                        (312) 222-9350

21

22
    Duke University:      GIBSON, DUNN & CRUTCHER LLP
23                        BY:  MR. CHRISTOPHER DEAN DUSSEAULT
                          333 South Grand Avenue
24                        Los Angeles, CA  90071
                          (213) 229-7855
25
```

```
1   APPEARANCES CONTINUED:

2
    Emory University:      JONES DAY
3                          BY:  MS. TINA M. TABACCHI
                           77 West Wacker Drive, Suite 3500
4                          Chicago, IL 60601-1692
                           (312)782-3939
5

6
    Georgetown University: MAYER BROWN LLP
7                          BY:  MS. BRITT MARIE MILLER
                           71 South Wacker Drive
8                          Chicago, IL 60606
                           (312) 782-0600
9

10
    The Johns Hopkins
11  University:            ROPES & GRAY LLP
                           BY:  MR. SAMER MUSALLAM
12                              MR. CHONG PARK
                           191 North Wacker Drive, 32nd Floor
13                         Chicago, IL 60606
                           (312) 845-1200
14

15
    Massachusetts Institute
16  of Technology:         FRESHFIELDS BRUCKHAUS DERINGER US LLP
                           BY:  MR. ERIC J. MAHR
17                              MS. JAN RYBNICEK
                           700 13th St. NW, 10th Floor
18                         Washington, D.C.  20005
                           (202) 777-4545
19

20
    Northwestern
21  University:            SIDLEY AUSTIN LLP
                           BY:  MR. SCOTT DAVID STEIN
22                         One S. Dearborn Street
                           Chicago, IL  60603
23                         (312) 853-7000

24

25
```

1  APPEARANCES CONTINUED:

2  University of
   Pennsylvania:          WILMER CUTLER PICKERING HALE AND DORR LLP
3                         BY:  MR. DAVID GRINGER
                          7 World Trade Center
4                         New York, NY 10007
                          (212) 230-8864
5

6  William Marsh Rice
   University:            KING & SPALDING
7                         BY:  MR. ZACHARY THOMAS FARDON
                          110 North Wacker Drive, Suite 3800
8                         Chicago, IL 60606
                          (312) 995-6333
9

10                        KING & SPALDING
                          BY:  MR. NORMAN ARMSTRONG, JR.
11                        1700 Pennsylvania Avenue, NW, Suite 200
                          Washington, DC 20006
12                        (202) 626-8979

13

14 Vanderbilt University: WHITE & CASE LLP
                          BY:  MR. ROBERT MILNE
15                        701 13th Street, NW
                          Washington, DC 20005
16                        (202) 626-3600

17

18 Yale University:       HOGAN LOVELLS US LLP
                          BY:  MR. CHARLES A. LOUGHLIN
19                        555 Thirteenth Street, NW
                          Washington, DC 20004
20                        (202) 637-5661

21

22

23

24

25

1   (The following proceedings were had telephonically:)
2   THE CLERK: Case 22 C 125, Henry v. Brown University.
3   THE COURT: Okay. So this is the way we're going to
4   do this. My guess is I probably got about 30 people on the
5   phone for this case. If I go through all of those 30 names,
6   it's going to take most of the time I have to talk about this,
7   so we're not going to do that.
8   What I'm going to ask -- I'm going to appoint one
9   person on each side to kind of be the coordinator, and what
10  you're going to do is you're going to get a list to my
11  courtroom deputy clerk who is going to give it to the court
12  reporter by noon Chicago time today identifying all of the
13  people who are on the call for the plaintiffs and for each of
14  the defendants. So who wants to be the volunteer for the
15  plaintiff?
16  MS. FEGAN: Your Honor, this is Beth Fegan.
17  THE COURT: There was --
18  MS. FEGAN: This is Beth Fegan. I'm happy to do
19  that.
20  THE COURT: Ms. Fegan is the volunteer for the
21  plaintiff.
22  I don't want to ask who the volunteer is for the
23  defendant, so I'm going to narrow it down. Let's say it's
24  going to be somebody from Chicago whose last name starts with
25  the letter A through M. If there's anybody that meets -- and

1  that's arbitrary. Let me just be clear about it. If there's
2  somebody that meets that criteria who wants to volunteer to be
3  the person that everybody who is on the phone sends you their
4  email that they were on the phone so you can compile a list
5  and give it to my courtroom deputy clerk, please speak up.
6            MS. MILLER: Good morning, your Honor. Britt Miller
7  from Mayer Brown. The defendants sent a list this morning to
8  both the court reporter and to your clerk, so they should
9  already have them.
10           THE COURT: You're way ahead of me. Thank you very
11 much.
12           MS. MILLER: You're welcome, your Honor.
13           THE COURT: Then the protocol from here on in is that
14 if you're speaking, just say who you are.
15           Anytime a 33-page status report comes in not counting
16 the attachments, that's kind of a bad sign. I'll just preface
17 this by saying that.
18           But I think this is -- you know, it's a few discrete
19 issues that have to be dealt with here. And I just want to
20 hear really briefly by one person from each side -- and you've
21 both given me your takes on this issue. So the main point of
22 contention, if you will, in terms of the scheduling has to do
23 with whether experts are going to be done in kind of two
24 phases, class-related experts and I guess everything else
25 related experts, merits experts, which is essentially the

1  defendants' proposal, or whether they're going to be done at
2  the same time, which is essentially the plaintiffs' proposal.
3  And there's brief discussions about pros and cons in the
4  status report, but I'd like to hear a little bit more about
5  that.

6  So plaintiff, whoever wants to talk about that on the
7  plaintiffs' side, go ahead.

8  MR. CRAMER: Thank you, your Honor. Eric Cramer for
9  the plaintiffs. In the papers we cited to your Honor, several
10 courts have eliminated schedules with two rounds of expert
11 reports.

12 THE COURT: It's going to be much better if you talk
13 about what it is about this case, okay, as opposed to why
14 Judge Durkin in the broiler chicken case did something or
15 whether Judge Wood in the whatever case did something. Talk
16 about this case, why what you're saying makes sense for this
17 case.

18 MR. CRAMER: Yes, your Honor. Understood.

19 In our experience in class action juris prudence and
20 this case in particular, what plaintiffs will be doing -- what
21 plaintiffs' experts will be doing at class certification under
22 the modern juris prudence of class actions is to produce
23 reliable predominantly class-wide methods capable of proving
24 their case at trial, and the best way to show a plaintiff has
25 a reliable method capable of proving a case at trial is to

1   perform those methods.  To be conservative, what plaintiffs'
2   case reports are in this case in an antitrust class action are
3   effectively merits reports.
4          Now, defendants argue that class action is a
5   threshold issue that should be undertaken before what they
6   call full-blown merits discovery.  Let me make some brief
7   points about that.
8          First, defendants are already conceding that the
9   class expert exchange only comes after all of fact discovery
10  has been completed.  So in no sense is class certification in
11  this case going to be a threshold issue any more than summary
12  judgment is.
13         Now, defendants are certainly correct that plaintiffs
14  do not need to prove, say, a relevant market or that defendant
15  in fact conspired in order for us to win class certification,
16  but plaintiffs have the burden of showing that common issues
17  will predominate at trial.  Again, making that showing, the
18  plaintiffs' experts inevitably will need to demonstrate they
19  can and will use common methods capable of demonstrating a
20  relevant market, capable of demonstrating defendants'
21  collective market power, and that defendants' conduct is
22  consistent with collusion to reduce financial aid and
23  inconsistent with competition.  Defendants' experts at the
24  class stage in this case will respond on those issues.  The
25  only question is whether the parties are going to do this once

10

1  or twice, spending millions of dollars extra on experts in the
2  process of running the expert exchange a second time.
3        As a practical matter in my experience what the
4  second round does is provide essentially a mult-round expert
5  battle with the class report being the first volley and then
6  the so-called merits reports serving as sur and surrebuttal,
7  and it just -- the plaintiffs' model will be put forward on
8  class, defendants will attack it, plaintiffs will respond.
9  Plaintiffs will adjust their model to take account of any of
10 defendants' criticisms.  And then at the merits stage, we'll
11 go through that same process again.
12       And the biggest part of the class certification
13 battle is going to be about plaintiffs' model for showing
14 class-wide impact and damages.  That's going to comprise 80
15 percent of the class debate and it's going to comprise 80
16 percent of the merits debate, and we're going to run and do it
17 twice under defendants' proposal.
18       And the last point I make on this is that the costs
19 are going to be really high.  It's going to cost the
20 plaintiffs and the defendants millions of dollars extra.
21 We're going to get four reports from the plaintiffs' experts,
22 two depositions of each expert, and it's also going to take a
23 lot of extra time.  Defendants don't spell it out, but it's
24 going to add at least six to eight months because we're going
25 to have to after class certification, run plaintiffs' report,

1 defendants' report, plaintiffs' rebuttal, and then a second
2 round of Daubert motions for the Court, so it's going to add
3 six to eight months.
4 　　　　　THE COURT: You've told me enough. Stop. Time out.
5 Thanks.
6 　　　　　Let me hear from somebody on the defendants' side.
7 Give me the points for your position.
8 　　　　　MS. MILLER: Good morning, your Honor. Britt Miller
9 again on behalf of Georgetown, and I'll be speaking on behalf
10 of the defendants.
11 　　　　　Specifically with respect to this case, your Honor,
12 as well as antitrust cases generally, we think it makes sense
13 to bifurcate in a way that we have suggested. We have
14 suggested that for class certification, all of the expert
15 reports be done in advance of briefing so that there is only
16 one round of class certification briefing and class
17 certification Daubert briefing so as to achieve some of the
18 efficiencies that Mr. Cramer discusses, but we do not think
19 that the two inquiries are completely overlapping.
20 　　　　　Yes, there certainly is some overlap, and if
21 Mr. Cramer wants to submit one round of class certification
22 reports and have those stand as his expert reports on merits,
23 that's his option; but we believe we will be having different
24 experts addressing somewhat related but different topics and
25 that, frankly, the defendants or the plaintiffs should not be

1  required to incur substantial costs on the merits side of the
2  case until -- unless and until class certification has been
3  resolved and the case is in fact proceeding as a class.
4        If the defendants prevail at class certification,
5  then some of the merits, if not all of the merits work,
6  including all of the costs and the depositions, will not be
7  incurred.  This should be focused -- very focused on class
8  certification issues which are to be addressed to your Honor
9  with experts.  The experts will be deposed once on their
10 expert report opinions.  They will not be deposed again on
11 their expert report for class certification.  Only if we get
12 to merits reports will they actually be deposed again.
13       This is the most efficient way to do it in this case,
14 particularly given a lot of the individualized nature of the
15 damages claims that are going to be existing in this case such
16 that we think it's the more efficient approach than trying to
17 do it all at once and sorting it out on the backside.
18       THE COURT:  Well, this is one of those questions that
19 I don't think there is necessarily a right answer to it.  Part
20 of what I have to take into account is what the overall
21 schedule looks like.
22       The problem that I have with the defense schedule and
23 the proposal as it relates to the schedule is it basically has
24 us two years out from having the class certification briefing
25 done -- you know, obviously some period of time is involved,

13

1  so we're into -- we're significantly -- we're pretty close to
2  the end of 2024 before you would even start the merits expert
3  discovery. And, you know, if we're doing a two-stage
4  procedure like that, that's likely to take a significant
5  amount of time as well.
6        And so we're now -- there's a reasonably good chance
7  we'd be all the way through the end of 2025 before we even
8  finish that, and then summary judgment briefing would be 2026,
9  and it makes my head hurt to kind of think about scheduling
10 things through 2026 at this point.
11       I mean, I certainly agree with one of the things that
12 Ms. Miller said at the top of her presentation which is that
13 there's not going to be complete overlap between the two, but
14 I don't really think that's the issue. I think it's extremely
15 likely that there's going to be very, very significant overlap
16 between what you would refer to as class experts and what you
17 would refer to as merits experts, and so for that reason, I
18 think although there's extra costs that are going to be
19 imposed, I think on balance, plaintiffs' proposal makes more
20 sense, so that's the one I'm going to go with.
21       I do want to add one thing. So there's a suggestion
22 in the defendants' submission that the deadline that the
23 plaintiffs have proposed for amending the pleadings and adding
24 parties is an extended deadline. It's a long deadline. It's
25 July the 31st of next year, and I think in a case of this

14

1 scope, that's not a particularly long deadline.  It's only
2 nine months from now or 11 months from now maybe, 10 and a
3 half.
4 　　　　　The second thing is that another -- presumably when
5 the defendants put together their proposal that was, you know,
6 you have to do these things in a way you're going to be able
7 to sell it, and it wouldn't be surprising for a judge in my
8 position to raise some concerns about the overall length, so
9 part of the way it looks like that was dealt with was to set a
10 fact discovery cutoff date that in my estimation is just not
11 reasonable for a case of this potential magnitude.  It's a
12 year from now.  So those are some of the problems with it.
13 　　　　　So I'm going to go with the plaintiffs' proposal on
14 this.
15 　　　　　The issues about depositions, I mean, I don't think I
16 have to make a final decision on this today.  I think there's
17 some value in maybe making some general comments about that
18 and then tabling it until there's a better sense of -- you
19 know, maybe four or five months from now about the scope of
20 potentially likely witnesses.
21 　　　　　I will say that limiting each side to 75 depositions
22 inclusive of non-party depositions and that no individual
23 defendant will be subject to more than five depositions of
24 which no more than one may be a rule 30(b)(6) deposition,
25 which is the defendants' proposal, is somewhere between absurd

15

1 and insane. And so that's kind of a no-sale.

2 I'm not necessarily persuaded at this point that the
3 plaintiffs need 15 depositions per defendant. I think that
4 might depend on some things, and that's why I'm not really
5 interested in making a final resolution of that right now.
6 And that seems to be really the only other thing that I was
7 being asked to decide upon at this point is the number of
8 depositions. So I'm going to say I'm going to leave that for
9 further discussion, and you have a general sense of what the
10 parameters are on each side.

11 On interrogatories, I'm just going to say, you know,
12 25 is not enough, 65 is too many. So agree on a number
13 somewhere in between those. Ditto on requests to admit.

14 I mean, in a case like this -- well, in all
15 likelihood, requests to admit are going to be largely
16 involving things like authenticating documents is my guess.

17 So you've heard what I have to say. What I need you
18 to do is put together now an order which takes the plaintiffs'
19 schedule. If you need to tweak anything in there based on the
20 discussion today, go ahead and tweak it. You can put a
21 paragraph in -- we'll call it a case management order or
22 something like that. You can put a paragraph in there about
23 depositions and that's going to be addressed at a later point
24 in time.

25 I think my goal would be to have folks submit let's

16

say right around the end of the year, because you're not going to be in depositions before that or anywhere close to before that, I guess, some more specific concrete proposals that are based a little bit more on what you're actually seeing in terms of scope of document production and whatnot, and I'll address it at that point.

So I want a status report from you in two months just to -- I want this draft order within -- by next Wednesday, so that's the 7th. I need a Word version sent to my proposed order email address.

I want a status report regarding discovery from you in two months. We'll just call that the 7th of November.

I'm going to tentatively set it for another status on the 14th of November at 8:45 by phone. There's a good chance I'll vacate that if it looks like things are moving along okay.

Then I want a deadline for a joint report with a proposal for deposition numbers is going to be let's say the 23rd of December, which we'll use kind of as a surrogate for the end of the year. I'll worry about setting another status date after that.

MS. MILLER: I'm sorry, your Honor. I didn't hear that last date. Could you repeat that?

THE COURT: 23rd of December.

The one other thing that's in there is, you know,

17

1 discussions about a mediator, and it's not surprising at this
2 point plaintiffs say a mediator should get going right away.
3 Defendants say there's no merit to the case, why should we do
4 that. I'm going to tell you what my view is about this, and,
5 you know, again, this is one of these things that there's no
6 right answer to.
7       I don't think it would -- I don't think it would hurt
8 for folks to sit down with a mediator at some early point in
9 the case. I don't mean right now. I don't mean a month from
10 now. I mean at some early point in the case before, you know,
11 bazillions of dollars get spent on each side, because you
12 don't know that the case can't be resolved in a way that's
13 acceptable until you make some effort to do that.
14       Now, whether you use a private mediator, you know, of
15 which there are many good ones -- there's four or five former
16 judges of this court who are in that business right now,
17 plenty of other people all over the place, all of whom have a
18 lot of skill and expertise in complex cases -- or whether I
19 appoint somebody, which I'd be happy to do, if and when I
20 think it makes sense, which is not at this moment, I can
21 absolutely -- I have a couple of ideas that I would throw out
22 at that point in time.
23       So I guess what I'd like you to do is give that some
24 more thought, and, you know, you could say, well, why should
25 we do this, it's going to be expensive. So, like, everything

1 in this case is going to be expensive.  The thing that's going
2 to be the most expensive is the document and production and
3 document review, depositions, and the experts, and that's all
4 stuff that's in the future.  If there were some way of you all
5 reaching some reasonable accommodation before you got to that
6 point, you know, you'd be spending money to get that, but it
7 would probably be money well spent.

8 I'd like you all to think about that, do some
9 discussing about it and include something about that in the
10 November whatever date I give you -- November 7 status report,
11 as well about the idea of either appointing a special master I
12 guess what you'd have to call it if it was appointed by me, or
13 going to mediation.  Just food for thought.

14 Now I'm going to gird my loins and say, is there
15 anything else anybody wants to bring up today?

16 MR. CRAMER:  Nothing from the plaintiffs, your Honor.
17 Thank you.

18 MS. MILLER:  Nothing from the defendants, your Honor.

19 THE COURT:  Wow.  I thought for sure I'd have at
20 least 15 things there.

21 Take care.  Everybody have a nice day.

22 (Which were all the proceedings had in the above-entitled
23 cause on the day and date aforesaid.)

19

1  I certify that the foregoing is a correct transcript from
   the record of proceedings in the above-entitled matter.
2

3  _____        _____
   Carolyn R. Cox                          Date
   Official Court Reporter
4  Northern District of Illinois
   /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25