# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-md-03071<br>ALL CASES<br><br>Judge Waverly D. Crenshaw, Jr. |

**REPLY IN SUPPORT OF STATE ATTORNEYS GENERAL'S**
<u>**STATEMENT OF INTEREST**</u>

The proposed settlements provide inadequate relief for the State AGs' residents and improperly interfere with the State AGs' sovereign interests.[1] The Overlap Defendants' and MDL Plaintiffs' responses—which contain numerous factual errors[2]—make apparent that the proposed settlements purport to release and enjoin claims the settling parties have no authority to release; rest on authority Congress has superseded; and fail to provide any information that would demonstrate that the proposed relief is adequate. Notably, the responses do not, and cannot, dispute that the proposed settlements provide significantly less per capita relief for residents than the settlement obtained by the DCAG while allowing settling defendants to continue using software alleged to produce anticompetitive results. For these reasons, the State AGs renew their request that the Court reject preliminary settlement approval or, at minimum, hold the motion in abeyance.[3]

It bears emphasis, moreover, that the State AGs are not asking this Court to make an all-or-nothing decision between resolving certain class claims and preserving the State AGs' cases.

---

[1] The State AGs submit this response today to ensure that the views reflected in their proposed Reply are before the Court prior to any action on the pending motion for preliminary approval. The State AGs, however, have had minimal time—less than 24 hours—to review the MDL Plaintiffs' Response before filing.

[2] For example, contrary to the responses' assertions (Defs.' Opp. at 21; Pls.' Opp. at 15) the State AGs have not produced the DCAG's deposition transcripts or documentary evidence to the MDL Plaintiffs—either at any point or prior to the settlement negotiations—nor did the State AGs "admit" otherwise to the D.C. court. The DCAG accurately represented that some documents it might reference had likely been produced in the MDL, not that deposition transcripts or documents unique to the DCAG action were included (they were not). Furthermore, the W.C. Smith settlement does not require the company to cease using RealPage RMS because it has already done so, which the DCAG confirmed in connection with the settlement's negotiation (*contra* Defs.' Opp. at 22). And finally, MDL Plaintiffs' assertion that Greystar is "mainly" a "property manager" (Pls.' Opp. at 13) is a stretch. Public documents state—and discovery has confirmed—that Greystar is the largest apartment owner in the country. *See* SOI at 18, 18 n.31. Unfortunately, the responses also include many other errors.

[3] Given these concerns, and Overlap Defendants' attempt to collaterally extinguish the states' sovereign claims by asking this Court to enjoin them, the State of Washington joins this reply and the October 24 Statement of Interest.

Rather, the State AGs seek a practical and equitable opportunity to resolve the overlap between their enforcement actions and the proposed settlements—whether by modifying the proposed settlements to carve out the five affected jurisdictions or through another mechanism such as an offset or adjustment. There is room to craft a workable class settlement without intruding on states' sovereign powers. *See* SOI at 21; *infra* at 5–6 (citing examples of carve-outs). That opportunity, however, is at risk of being foreclosed if the Court approves the proposed settlements in their current form.

I. **The Court Must Reject Overlap Defendants' Blanket Request to Enjoin the States' Claims.**

Overlap Defendants' request that this Court "enjoin States from prosecuting" their own *parens patriae* actions (Defs.' Opp. at 14)—made for the first time in response to the Statement of Interest—is procedurally improper and legally baseless.[4] Overlap Defendants have not formally moved for such relief, provided no notice to the sovereign States whose enforcement actions they seek to restrain, and offered no explanation of how this Court could possibly enjoin every State, territory, and the District of Columbia from pursuing claims under their own laws, in their own cases, by approving proposed settlements to which those sovereigns are not parties.

Even if the request were procedurally proper—which, as discussed below, it is not—the Anti-Injunction Act expressly forbids federal courts from enjoining State enforcement actions. *See* 28 U.S.C. § 2283. That statute embodies the "fundamental constitutional independence of the States and their courts." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970). It recognizes only three narrow exceptions to the prohibition, none of which Overlap

---

[4] The State AGs never "admit[ted]" (Defs.' Opp. at 2) that this Court can enjoin them from pursuing *parens patriae* cases. The State AGs noted that *some* courts have enjoined States—but only in the "circumstances" unique to those cases. SOI at 9–10.

2

Defendants invoke or satisfy. Overlap Defendants' failure to even acknowledge the Act is perplexing given that their own cited authority explicitly recognize the statute's stringent limits.[5] Overlap Defendants' failure to confront those limits forecloses the extraordinary relief they seek.

The Overlap Defendants' request also collapses on independent procedural and constitutional grounds. A federal court cannot enjoin non-parties, *see Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 529 (1986), much less issue a universal injunction against state-court enforcement actions, without individualized findings or affording the affected States notice and a meaningful opportunity to be heard. *See In re Hartford Textile Corp.*, 613 F.2d 388, 390 (2d Cir. 1979) (vacating injunction when the district court failed to "assume the burden, normally borne by a moving party," to "invite a response" and "opportunity to be heard" from the non-party at risk of being enjoined). Each State is uniquely positioned as to its facts and law, and each is entitled to an opportunity to contest an injunction.[6] Ignoring those distinctions—and denying the States an opportunity to be heard as to why they apply in the contexts of their particular cases—would trample principles of equity and state sovereignty.

Finally, Overlap Defendants' reliance on *In re Baldwin–United Corp.*, 770 F.2d 328 (2d Cir. 1985), only underscores how far their extraordinary request strays from established law.

---

[5] The lone exception is *In re Baldwin–United Corp.*, 770 F.2d 328 (2d Cir. 1985), which did not confront the Anti-Injunction Act because the statute applies only to state proceedings that had already been initiated. The absence of any ongoing state actions in *Baldwin* is just one of many reasons that case is entirely inapposite here and provides no support for enjoining State actions.

[6] The Maryland statute cited by the State AGs underscores the point: certain state laws expressly provide that Attorney General actions are presumed superior to private class actions. *See* Md. Code Ann., Com. Law § 11-209(c). Overlap Defendants and MDL Plaintiffs half-heartedly assert that the Court should "override" the presumption for Maryland (Defs.' Opp. at 14, Pls.' Opp. at 10 n.18), yet they offer no authority or analysis remotely specific to the Maryland action or the Attorney General's ongoing investigation. That bare assertion does not come close to carrying their burden to overcome the legislature's explicit preference for resolving cases through the Attorney General's sovereign authority, and Maryland is entitled to an opportunity to fully brief that issue before an injunction can issue.

*Baldwin* involved exceptional and fact-specific circumstances—including a final, approved class settlement and a fully developed record with *no* State cases yet filed—none of which is present here. Moreover, the Second Circuit has since disclaimed any broad reading of *Baldwin*, emphasizing that it "decline[d] to extend the holding of *Baldwin–United* beyond the exceptional circumstances of that case." *United States v. Schurkman*, 728 F.3d 129, 138 (2d Cir. 2013). This Court should do the same and reject Overlap Defendants' extraordinary request to enjoin sovereign States from exercising their independent enforcement authority.[7]

## II. The Responses' Cited Cases on Superiority Are Either Outdated or Support the State AGs' Position.

As discussed in the State AGs' submission, *parens patriae* enforcement actions are "plainly superior" to class suits. *In re Montgomery Cnty. Real Est. Antitrust Litig.*, No. B-77-513, 1988 WL 125789, at *2 (D. Md. July 17, 1978); SOI at 6–10. The responses' contrary arguments chiefly rest on a single line of dicta in *Hawaii v. Standard Oil Co. of California*, 405 U.S. 251 (1972)—an opinion that has been superseded on this point. The other cases they cite reinforce the State AGs' position.

In *Standard Oil*, the Court held that States could not bring *parens patriae* suits for damages under the then-existing Clayton Act and, in that context, remarked in dicta that class actions were "preferable." 405 U.S. at 266. Congress rejected that premise by enacting the Hart–Scott–Rodino Act of 1976 which expressly authorizes State Attorneys General authority to bring *parens patriae* actions without satisfying Rule 23's certification requirements. *See* 15 U.S.C. § 15c; *Illinois v.*

---

[7] The State AGs have already addressed the basic principle that the MDL parties cannot bargain away non-party States' claims. SOI at 20. Even in cases where proposed settlements explicitly purport to release *parens patriae* claims, courts have easily concluded that those provisions are unenforceable. *See, e.g.*, *Zepeda v. PayPal, Inc.*, No. C 10-2500 SBA, 2017 WL 1113293, at *17 (N.D. Cal. Mar. 24, 2017) ("Since class members do not possess the State's parens patriae powers, it is axiomatic that they cannot release such claims.").

4

*Abbott & Assocs.*, 460 U.S. 557, 573 n.29 (1983). *Standard Oil* also predates *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592 (1982), which reflects the Court's current understanding of States' *parens patriae* standing and underscores States' sovereign enforcement role.

Since then, courts have repeatedly recognized that State actions serve public purposes private class suits cannot—especially given the "demanding" and "unpredictable" nature of modern class certification. Dkt. 1247 at 13; *see also* Susan Beth Farmer, *More Lessons from the Laboratories: Cy Pres Distributions in Parens Patriae Antitrust Actions Brought by State Attorneys General*, 68 Fordham L. Rev. 361, 386–91 (1999) (explaining the history of these cases and why "courts generally have respected Congress's intentions, concluding that statutory parens patriae actions brought by the state Attorney General . . . are superior to class actions").[8]

The other cases cited in the responses *support* the State AGs' position that the parties should be afforded time to iron out a solution. Case in point, the special master's recommendation from *In re TFT–LCD (Flat Panel) Antitrust Litigation*, MDL. No. 1827, 2011 WL 13152270 (N.D. Cal. Aug. 24, 2011), was never adopted—*instead*, the parties revised the settlement to carve out the objecting States' jurisdictions, which is precisely the relief the State AGs seek here. Likewise, *In re Compact Disc Minimum Advertised Price Antitrust Litigation*, 216 F.R.D. 197, 206 (D. Me. 2003), did not find class actions "superior" to *parens patriae* suits; it certified a settlement class

---

[8] That the State AGs' cited authority did not involve nationwide classes is immaterial. *Contra* Defs.' Opp. at 13–14. Those cases held that Attorney General actions were superior due to Attorneys Generals' authority to protect the public interest, their ability to obtain greater relief, the lack of certification requirements, and the legislative history of the Clayton Act. *See* SOI at 6–10 (citing cases). This reasoning applies with equal force in a case involving a proposed nationwide class (especially so where, as here, the proposed class complaint proposes several smaller geographic markets in the alternative). Nor can Overlap Defendants plausibly claim greater "efficien[cy]" (Defs.' Opp. at 12). By their own admission, the *parens patriae* damages claims represent only part of the States' broader enforcement actions (Defs.' Opp. at 8–9), which will proceed regardless of any class settlement.

5

that explicitly *excluded* the forty-three States pursuing *parens patriae* claims to allow those actions to "proceed on behalf of their 'class' members." *Id.* at 206. Similar relief is warranted here.

### III. The State AGs' CAFA Objections Are Proper and Illustrative of the Proposed Settlements' Weaknesses.

As a threshold matter, the State AGs are not required to establish Article III standing for the Court to consider their objections to the proposed settlements. *Chapman v. Tristar Products, Inc.*, 940 F.3d 299, 302 (6th Cir. 2019)—on which the responses heavily rely—held that a State Attorney General lacked standing to *intervene* in a class action for the purpose of objecting to a proposed settlement and filing an appeal. But the State AGs need not establish Article III standing to submit a Statement of Interest or amicus brief reflecting their thoughts on the proposed settlements—as MDL Plaintiffs' cited authority expressly recognizes. *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-md-02724, slip op. at 7 (E.D. Pa. Aug. 19, 2025) (attached as Appx. A to Pls.' Opp.) ("The [States'] Motion to Intervene [] is DENIED as to intervention, and GRANTED in that the objections will be considered as an *amicus curiae* brief.").[9] The Court is therefore fully empowered to consider the State AGs' objections in their Statement of Interest— and it should do so, consistent with CAFA's clear and undisputed purpose. *See* SOI at 4, 10–12.

In any event, the State AGs plainly have Article III standing. Standing requires an injury in fact, causation, and redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The State AGs face an imminent and concrete injury to their enforcement actions: the MDL parties seek to "prohibit[] states from pursuing" claims for damages by securing an injunction from this Court. Defs.' Opp. at 16. If the MDL parties prevail, the States will suffer direct and immediate

---

[9] MDL Plaintiffs' submission further confirms this by citing multiple cases in which courts "address[ed] whether a proposed class settlement being objected to by governmental entities on behalf of their residents is fair, reasonable, and adequate" without assessing Article III standing. Pls.' Opp. at 7 n.10 (citing cases).

6

harm—wasted public resources spent on pursuing *parens patriae* damages, interference with pending litigation, and an inability to vindicate their quasi-sovereign interests in maintaining the physical and economic well-being of their residents—including through an affordable and competitive housing market. *See Snapp*, 458 U.S. at 600. The same was not true in *Chapman*, where the State Attorney General simply disagreed with the fairness of the proposed settlement but had not brought an action of their own (and was not threatened by an injunction). 940 F.3d at 303. The notion that the States lack standing to respond to a direct assault on their sovereign authority is simply wrong.

The responses do not and cannot establish the sufficiency of the Overlap Defendants' CAFA notices. CAFA's mandate that defendants provide each State's class-member data or a reasonable estimate, 28 U.S.C. § 1715(b)(7), is neither optional nor merely "technical." *In re Packaged Ice Antitrust Litigation* does not hold otherwise; there, substitute data was provided and "[n]o Attorney General" objected. No. 17-2137, 2018 WL 4520931, at *7 (6th Cir. May 24, 2018). Here, the Settling Defendants provided *no* information, and the State AGs *do* object.

## IV. The State AGs' Assessment of the Proposed Settlements Is Entitled to Deference.

The State AGs' Statement of Interest explained why courts typically afford the objections of the States' chief law enforcement officers significant weight. *See* SOI at 3–5. Giving those objections credence is especially appropriate where, as here, the AGs have devoted considerable public resources—and for some, years of active litigation—to investigating and prosecuting the same conduct on behalf of their citizens.

The Overlap Defendants and MDL Plaintiffs seek to undersell the State AGs' objections by diminishing the progress of their cases. (Defs.' Opp. at 4–5; Pls.' Opp. at 3–5). To start, they disregard the extensive investigative work and subpoena processes that preceded the State AGs' filings. Unlike private plaintiffs, States possess unique investigative authority—including the

7

power to issue civil investigative demands—which function as pre-suit discovery and enables Attorneys General to develop the merits of their cases before initiating litigation. Since filing, the State AGs have continued to develop their cases including, in DC, by taking more than 100 depositions and serving expert reports (a milestone the MDL parties are not due to reach until May 2026).

While it may be true that the MDL Plaintiffs have amassed "terabytes" of data (Pls.' Opp. at 4) and voluminous document productions, simple possession of that evidence is not the same as testing and digesting it through depositions and expert discovery. For example, even to the extent some data informed the MDL Plaintiffs' negotiating positions, they do not and cannot suggest that the kind of document discovery the State AGs have completed undergirded the proposed settlements at hand. As the State AGs explained in their Statement of Interest, the strength of culpability evidence against Overlap Defendants—not just the volume of commerce—informs the fairness of any settlement. SOI at 14–16. This is particularly true where, as here, the proposed settlements do not require settling defendants to stop using the software alleged to be anticompetitive.

Given the cases' relative progress and the State AGs' roles as the chief law enforcement officers of their jurisdictions, their objections warrant substantial weight.

## CONCLUSION

For these reasons, the Court should reject the Overlap Defendants' request for preliminary approval of the proposed settlements or, at a minimum, hold the motion in abeyance pending further proceedings.

November 5, 2025                          Respectfully submitted,


                                          /s/ John Spragens
                                          John Spragens (Bar No. 031445)
                                          **SPRAGENS LAW PLC**
                                          311 22nd Ave. N.
                                          Nashville, TN 37203
                                          (615) 983-8533
                                          john@spragenslaw.com


                                          *Attorney for the District of Columbia*


                                          BRIAN L. SCHWALB
                                          Attorney General for the District of Columbia

                                          COTY MONTAG
                                          Deputy Attorney General
                                          Public Advocacy Division

                                          Adam Gitlin (D.C. Bar 90004308)
                                          Adam.Gitlin@dc.gov
                                          Mehreen Imtiaz (D.C. Bar 1030205)
                                          Mehreen.Imtiaz@dc.gov
                                          Ashley Walters (D.C. Bar 1632195)
                                          Ashley.Walters@dc.gov
                                          Public Advocacy Division
                                          OFFICE OF THE ATTORNEY GENERAL FOR
                                          THE DISTRICT OF COLUMBIA
                                          400 6th St. NW, 10th Floor
                                          Washington, D.C. 20001
                                          (202) 442-9864


                                          ANTHONY G. BROWN
                                          ATTORNEY GENERAL OF MARYLAND

                                          Schonette J. Walker (MD Attorney No.
                                          0522900098)
                                          Assistant Attorney General
                                          Chief, Antitrust Division
                                          Melissa L. English (MD Attorney No.
                                          1512140006)
                                          Deputy Division Chief

Office of the Attorney General of Maryland
200 St. Paul Place
Baltimore, MD 21202
(410) 576-6470
swalker@oag.state.md.us
menglish@oag.state.md.us


MATTHEW J. PLATKIN
Attorney General of New Jersey

Brian F. McDonough (NJ Attorney ID 026121980)
Assistant Attorney General
Brian.McDonough@law.njoag.gov

David Reichenberg (NJ Attorney ID 507282024)
Deputy Attorney General
Section Chief, Antitrust Section
David.Reichenberg@law.njoag.gov

Jesse J. Sierant (NJ Attorney ID 049342013)
Deputy Attorney General
Section Chief, Consumer Fraud Prosecution Section
Jesse.Sierant@law.njoag.gov

Douglas T. Post (NJ Attorney ID 405852022)
Deputy Attorney General
Antitrust Section
Douglas.Post@law.njoag.gov

New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: 973-504-6200


Emmy L. Levens
Robert A. Braun
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue NW, Suite 800
Washington, DC 20005
(202) 408-4600
elevens@cohenmilstein.com
rbraun@cohenmilstein.com

Aaron J. Marks
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
(212) 838-7797
amarks@cohenmilstein.com

*Counsel for the District of Columbia, the State of Maryland, and the State of New Jersey*


RUSSELL COLEMAN
Attorney General of Kentucky

JONATHAN E. FARMER *(pro hac vice forthcoming)*
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
(502) 696-5448
Jonathan.Farmer@ky.gov

*Counsel for the Commonwealth of Kentucky*


NICHOLAS W. BROWN
ATTORNEY GENERAL OF WASHINGTON

*/s/ Brooke Howlett Lovrovich*
BROOKE HOWLETT LOVROVICH
(Tennessee Bar No. 036832)
Assistant Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
Brooke.Lovrovich@atg.wa.gov

*Counsel for the State of Washington*

11

CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic filing to all parties of record.

**Dated:**  November 5, 2025 　　　　　　　　　*/s/ John Spragens*
　　　　　　　　　　　　　　　　　　　　　　　John Spragens