# EXHIBIT A-27
## Camden

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-MD-3071 <br> MDL No. 3071 <br><br> This Document Relates to: <br> ALL CASES <br><br> Hon. Judge Waverly D. Crenshaw, Jr. |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of May 8, 2026 ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and Camden Property Trust (collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs are prosecuting claims against Camden and other Defendants for allegedly conspiring to fix and inflate the price of multifamily rental housing across the country on their own behalf and on behalf of the Settlement Class in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[1] (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of Camden's alleged participation in an

---

[1]     The actions currently centralized in MDL No. 3071 include Cases No. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

1

unlawful conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for residential units nationwide and to exchange competitively sensitive information about rental pricing in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Second Amended Consolidated Class Action Complaint, ECF No. 530, refiled across the consolidated cases at ECF No. 728.

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from Camden's alleged conduct;

WHEREAS, Camden denies Plaintiffs' allegations, denies any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against it in the Action, and asserts that it has a number of valid defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against Camden, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the Settlement Amount (defined below) and the value of the cooperation that Camden has agreed to provide pursuant to this Agreement;

WHEREAS, Camden, despite its belief that it is not liable for the claims asserted by Plaintiffs and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this

Agreement and to put to rest with finality all claims that have been or could be asserted against Camden, as more particularly set out below;

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date does not occur;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to Camden, subject to Court approval, on the following terms and conditions:

1. **GENERAL DEFINITIONS**. The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a. "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

b. "Camden" means Camden Property Trust, together with past and present, direct and indirect subsidiaries, divisions, groups, parents (including holding companies), partnerships, and joint ventures, members, as well as affiliates and associates (as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), their successors and

3

assigns, and their trust managers, and each of their respective past or present officers, trust managers, managers, employees, agents, contractors, attorneys, legal, or other representatives, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, shareholders, advisors, and assigns.

c.  "Camden's Counsel" means Shook, Hardy & Bacon, L.L.P.

d.  "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

e.  "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

f.  "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

g.  "Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (ECF No. 530, re-filed across the consolidated cases at ECF No. 728).

h.  "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

i.  "Defendants" means those Defendants named in Plaintiffs' Complaint (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP;

Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Property Trust, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

j. "Effective Date" shall have the meaning set forth in Paragraph 2 of this Settlement Agreement.

k. "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

l. "Execution Date" means the latest date of the execution of this Agreement by all Parties.

m. "External Nonpublic Data" means all Nonpublic Data from any Person other than Camden. It does not include data from a Camden property.

5

n.      "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

o.      "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses; (b) Notice and Administration Expenses; (c) any Fee and Expense Award; (d) any Service Awards to Plaintiffs; and (e) other fees and expenses, if any, authorized by the Court.

p.      "Nonpublic Data" means property-specific data or information (whether past, present, or prospective) which, individually or when aggregated with such data or information from other properties, (1) could be reasonably used to determine current or future rental supply, demand, or pricing for a property or of any property's units, including but not limited to executed rents, rental price concessions or discounts, guest traffic, guest applications, occupancy or vacancy, lease terms or lease expirations; (2) relates to a property owner's or property manager's use of settings or user-specified parameters within RealPage's Revenue Management Solutions; or (3) relates to a property owner's or property manager's internal rental pricing amount, formula, or strategy, including rental price concessions or discounts offered at their property or properties. Nonpublic Data shall not include information disclosed by Camden pursuant to its disclosure obligations under securities laws or following Camden's established, legal practices for disclosing information to the investing public, including through earnings' calls and via public disclosures and filings.

q.      "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance

6

with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow Agent (if any). All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

r. "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

s. "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

t. "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

u. "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

v. "Plaintiffs" means the following plaintiffs named in the operative Second Amended Consolidated Class Action Complaint (ECF No. 530, re-filed at ECF No. 728 (the "Complaint")): Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla

7

Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes, individually and on behalf of each Settlement Class member.

w. "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

x. "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

y. "Preliminary Approval Order" and "Preliminary Approval" mean the order preliminarily approving the Settlement.

z. "Properties" or "Camden Properties" means all multifamily rental properties managed and/or owned by Camden that at any point during the Settlement Class Period were subject to a license for RealPage's Revenue Management Solutions pricing recommendations for multifamily rental units.

aa. "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

bb. "Releasees" means Camden as defined in this Agreement.

cc. "Releasors" means Plaintiffs, the Settlement Class, and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, or through the Releasors in any capacity, with such claiming parties to

8

include any and all of Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

dd. "Revenue Management Solutions" or "RMS" means Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM").

ee. "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

ff. "Settlement Administrator" means Angeion Group, LLC appointed by the Court to disseminate Class Notice of settlement agreements reached in this matter as of the Execution Date (ECF 1313), or other professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of Settlement to the Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

gg. "Settlement Amount" shall be USD $53,000,000 (fifty-three million U.S. dollars) as specified in Paragraph 5.

hh. "Settlement Class" means the class defined in Paragraph 3 below.

9

ii.     "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

jj.     "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

kk.     "Settlement Class Period" means from October 18, 2018 until November 21, 2025.

ll.     "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

mm.     "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

nn.     "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Camden with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

2.      **APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST CAMDEN**.

a.      Camden shall use its reasonable best efforts in connection with Plaintiffs' Counsel's motions for approval of this Settlement and any related documents necessary to effectuate and implement the terms and conditions of this Settlement Agreement. Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or

10

appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement.

b. Plaintiffs shall, not longer than three (3) months from the Execution Date absent agreement between the Parties or by order of Court, submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

c. Within seventy-five (75) calendar days after the Execution Date, Camden shall supply Plaintiffs with the available contact information of Settlement Class Members who rented multifamily housing units in Properties managed and/or owned by Camden during the Settlement Class Period. The contact information shall be provided in a mutually agreeable electronic format. Plaintiffs shall use their reasonable best efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering this Settlement. The Settlement Administrator and Plaintiffs may request from Camden additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this Agreement, and Camden will not unreasonably deny any such additional requests or fail to timely produce such data, if available.

d. Plaintiffs shall submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion") on or before May 15, 2026. The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

e. Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and Camden shall agree upon, and such agreement will not be unreasonably

11

withheld. The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

          i.      certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

          ii.      approving finally this Settlement and its terms as being fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

          iii.      directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4)

          iv.      directing that Camden shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Camden (as provided for in Paragraph 16);

          v.      directing that the Action (including the Complaint) be dismissed as to Camden with prejudice, and except as provided for in this Agreement, without costs;

          vi.      reserving to the Court the exclusive jurisdiction over this Settlement and this Agreement, including the interpretation, administration, and consummation of this Settlement, as well as over Camden for its provision of cooperation pursuant to this Agreement;

vii.  determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to Camden shall be final;

viii.  providing that Plaintiffs and Camden have each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure; and

ix.  providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any (a) non-settling Defendant to contest certification of any other class proposed in the Action, or of (b) Camden's right to contest certification of any other proposed class in the Action should this Agreement not become final as described in subsection (f) to this Paragraph; (2) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify any class in the Action or on the Court's rulings concerning any Defendant's motion; (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion; and (4) no person may use the certification of the Settlement Class as an admission by Camden about the merits of certifying a class in any other case.

f.  This Agreement shall become final and be deemed to have received final approval when (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 3, approved this Agreement under Federal Rule of Civil Procedure 23(e), and entered a final judgment dismissing the Action with prejudice as to Camden without costs other than those provided for in this Agreement; and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to Camden described in (i) hereof has expired in the Action or, if appealed, approval of this

13

Agreement and the order and final judgment in the Action as to Camden have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review (the "Effective Date"). It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and Camden shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

3. **CERTIFICATION OF A SETTLEMENT CLASS**. Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any owner, manager and/or owner-operator (including to any division, subsidiary, predecessor, agent or affiliate of any owner, manager and/or owner-operator) on a property subject to a license for RealPage's Revenue Management Solutions, Lease Rent Options ("LRO"), YieldStar ("YS"), and/or AI Revenue Management ("AIRM") ("RealPage's RMS") at any time during the period of October 18, 2018 through November 21, 2025 (the "Settlement Class Period"). Specifically excluded from this Class are Opt-Outs; Defendants; any entity licensing RealPage's RMS, the officers or directors of any entity licensing RealPage's RMS and any entity in which any entity licensing RealPage's RMS has a controlling interest; any affiliate, legal representative, heir or assign of any entity licensing RealPage's RMS; federal, state, or local governments; states and their subdivisions, agencies, and instrumentalities; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action.

Camden agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. If the Effective Date does not occur, Camden shall have the full ability to oppose any motion for certification of a litigation class, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against Camden.

14

**4.    SETTLEMENT CLASS'S RELEASE**.

a.    Upon the occurrence of the Effective Date and in consideration of the payment by Camden Property Trust of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph 13 of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees from any and all claims, counterclaims, demands, actions, potential actions, suits, causes of action, losses, obligations, damages, restitution, disgorgement, interest, fines, or other payment of money, or for injunctive, declaratory, or other equitable relief, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had, now have, or hereinafter can, shall, or may ever have directly, representatively, derivatively or in any other capacity (including in a *parens patriae* capacity) against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, arising from, in connection with, or resulting from or in any way related to, any act or omission relating to the Properties or  the conduct that was alleged or could have been alleged in this Action based on any or all of the same factual predicate of the Action, including but not limited to Camden's use of RMS and RealPage's other Asset Optimization Solutions (including Performance Analytics, Business Intelligence, Market Analytics (and its predecessor products), and/or Investment Analytics), Camden's sale of YieldStar to RealPage, Defendants' alleged conspiracy to fix or inflate the prices of multifamily residential leases through the use of RealPage's RMS, Camden's alleged participation in a

15

conspiracy to exchange competitively sensitive information (including through the alleged exchange of market surveys), and any joint and several liability claim(s) against Camden related to or arising from the same factual predicate of this Action ("Released Claims").

b. The release in Paragraph 4(a) does not bar an investigation or action, whether denominated as *parens patriae*, law enforcement, or regulatory, by state, quasi-state, or local governmental entity to vindicate sovereign or quasi-sovereign interests. Notwithstanding the foregoing, the release in Paragraph 4(a) shall bar (1) a claim brought by a state, quasi-state, or local government entity to the extent that such claim is based on a state, quasi-state, or local government entity's proprietary interests as a member of the Settlement Class that has received or is entitled to receive a financial recovery in this Action and (2) a claim (including claims asserted in *a parens patria*e capacity), whether denominated as seeking damages, restitution, unjust enrichment, or other monetary relief, brought by a state, quasi-state, or local government entity for monetary harm sustained by natural persons, businesses, other non-state, non-quasi-state, and non-local government entities or private parties themselves that are eligible to be members of the Settlement Class.

c. The Released Claims in Paragraph 4(a) shall not include: (i) claims asserted against any Defendant or co-conspirator other than Camden, or any owner of any of the Properties other than Camden; (ii) any claims wholly unrelated to the factual predicate of this Action and the allegations in the Complaint or that may exist as a result of a landlord-tenant relationship between the Parties, including claims based on breach of contract, state landlord-tenant regulation, negligence, and personal injury; (iii) claims relating to the enforcement of the Settlement or its terms; (iv) claims of any person or entity that submits a request for exclusion and whose request is accepted by the Court; or (v) claims that may be asserted against persons or entities that are not

16

affiliates of Camden's but with whom one or more of Camden's affiliates has a partnership, joint venture, or co-investor relationship.

d.     In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein.   Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

e.     The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

f.     The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by Camden that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

17

**5.** **S<u>ETTLEMENT</u> A<u>MOUNT</u>**.

   a.  Camden Property Trust agrees that an amount equal to USD $53,000,000, all in cash, will be paid on behalf of Camden as the Settlement Amount in settlement of the Action, inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action. The payment described above shall constitute the total amount to be paid by Camden in settlement of these claims. The Settlement Amount shall be paid into an interest-bearing escrow account (the "Escrow Account") maintained by an escrow agent on behalf of the Settlement Class. The Parties agree that the first of two payments, which shall be at least 50% of the Settlement Amount shall be made within 45 calendar days of the Execution Date and that the second payment shall be made within four (4) months of the Execution Date. The Parties agree and acknowledge that none of the Settlement Amount paid by Camden Property Trust under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind. Plaintiffs shall provide wire instructions to Camden Property Trust for the purpose of Camden Property Trust paying or causing to be paid the Settlement Amount.

   b.  If Camden Property Trust (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified above, then Settlement Class Counsel, in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

c.　　The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement, and there will be no reversion of settlement funds to Camden, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, if the Settlement becomes final. Upon the occurrence of the Effective Date, neither Camden, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of Camden's insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

**6.**　　**ESCROW ACCOUNT**.  An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel.  The Escrow Account shall be administered under the Court's continuing supervision and control.

a.　　Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b.       The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

c.       Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

d.       The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

e.       In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs

20

and/or Settlement Class Counsel shall reimburse to Camden via wire transfer all funds remaining in the Escrow Account at that time, less any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante. Camden shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective. Settlement Class Counsel shall ensure that the Settlement Administrator also provides Camden full and complete information related to the Escrow Account to enable Camden to determine whether any taxes may be owed on the funds returned to Camden.

7. **TAX TREATMENT**.

a. The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and Camden, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation §1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

21

b.  For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treasury Regulation §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

c.  All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, Camden and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses.  Plaintiffs and Camden agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

d.  Camden, Releasees, and Camden's Counsel shall have no liability for or obligations relating to Taxes and Tax Expenses, including with respect to acts or omissions of the

22

Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each Camden, Releasees, and Camden's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

e. Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

**8. CLASS ADMINISTRATION AND NOTICE**. Settlement Class Counsel has retained Angeion Group, LLC as Settlement Administrator responsible for all aspects of settlement administration in this Action. Such Settlement Administrator shall be approved by the Court in connection with this Settlement, and, if approved, overseen by Settlement Class Counsel. Camden will not have any involvement in the claims administration process, or the plan of allocation of the settlement proceeds. Settlement Class Counsel, in their sole discretion, may replace, and/or retain one or more additional and/or alternate Settlement Administrator(s). Such Settlement Administrator(s) shall be approved by the Court in connection with this Settlement, and, if approved, overseen by Settlement Class Counsel. Camden will not have any involvement in the selection of the Settlement Administrator(s). The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement. In no event shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice and Administration Expenses.

23

Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

a.   At no time and under no circumstances shall Plaintiffs, Camden, Settlement Class Counsel, Plaintiffs' Counsel, Camden's Counsel, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

b.   Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs.  The Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs.  The procedures for submitting claims shall conform to the procedures outlined below.

c.   Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form.  Each Claim Form must be signed under the penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

d.   All Claim Forms must be received by the Settlement Administrator within the time prescribed in the plan for Notice as approved by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted.  No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by

24

reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e. Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

f. Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

g. Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h. All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process. All Plaintiffs, Settlement Class Members, Claimants, and Releasors

25

expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein. The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

i. No Person shall have any claim against Camden, Camden's Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

9. **EXCLUSIONS**.

a. Camden reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

b. A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice. Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

c. Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

26

d.	Camden or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

10.	**PAYMENT OF EXPENSES**.  Subject to Court approval, disbursements not exceeding $1 million for payment of Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to Camden, its insurance carriers, or any other person or entity who or which funded the Settlement Amount,  in the event this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses have actually been expended or incurred.  Any refund that becomes owed to Camden if this Settlement does not become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court.  Other than as set forth in this Paragraph, Camden shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs.  To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action and to apportion the costs of notice and administration in an equitable manner across the applicable settlements.

11.	**THE SETTLEMENT FUND**.

a.	The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b.     After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation.  Camden will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

c.     The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives.  Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

**12.     FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS.**

a.     Camden understands that Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval of the Agreement, submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action; and/or (iii) and Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award").  Camden understands that Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable service awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

28

b.     Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon final approval of the Settlement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Amount is required, then within fifteen (15) business days after receiving notice from Camden of such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction.  Each law firm that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Attorneys' Fees and Expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this Paragraph.

c.     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request

29

for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement.

d. Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph. No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of Camden or the Releasees, under this Agreement.

13. **DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION**.

a. *Cooperation.* Cooperation by Camden according to the terms set forth below is a material term of the Settlement and shall include the following categories of cooperation, with all disputes concerning the same to be resolved by Judge Crenshaw and the U.S. District Court for the Middle District of Tennessee:

i. After reasonable notice from Plaintiffs, Camden shall answer reasonable questions concerning its structured data, produced consistent with the Parties' negotiated agreement regarding structured data in response to Plaintiffs' First Set of Requests to Owners, Owner-Operators, and Managing Defendants for the Production of Documents and Electronically Stored Information;

ii. Camden will not unreasonably deny Plaintiffs a re-production of documents, which were produced as responsive in this Action, identified as having technical errors or which Plaintiffs are otherwise unable to access;

30

iii.     Camden shall produce to Plaintiffs any documents that have not already been produced to Plaintiffs and that were produced to any other plaintiffs, or any federal, state, or other domestic regulator, concerning the subject matter of the Action or any allegations within the same factual predicate of the Action within ten (10) business days of the execution this Agreement, with any documents produced to such entities after execution of this Agreement to be produced ten (10) business days after their production to such other plaintiffs or regulators. Camden's obligations under this Paragraph shall terminate the later of the entry of an order preliminary approving the Settlement or sixty (60) calendar days following the Parties' execution of the long-form agreement;

iv.     Camden Property Trust shall make available its VP of Revenue Management or similar role (currently James Flick) as a witness for trial if reasonably requested and should trial occur, accepting service of a trial subpoena and agreeing to waive any objections under Rule 45(c) relating to place of compliance;

v.     Camden shall use reasonable efforts to assist Plaintiffs in authenticating and providing foundation for the admissibility of documents and/or things produced in the Action, if reasonably requested by Plaintiffs, including but not limited to under Federal Rules of Evidence 803(6), 901, and 902(11), where Camden can do so in good faith, whether by declarations or affidavits, or, if declarations or affidavits are not reasonably sufficient, depositions, hearings, and/or at trial(s) as may be necessary for the Action; and

vi.     Camden will consider reasonable informal requests for additional relevant information about Plaintiffs' claims in the Action from Interim Co-Lead

31

Counsel, taking into account the information it has produced in discovery, other productions and information obtained, and whether providing the requested information will be burdensome. Camden will not produce any additional documents, other than as set forth above.

       vii.    Camden's cooperation obligations shall terminate at the end of the Action.

      b.    **Arbitration Non-Enforcement**. Camden agrees not to require that any Settlement Class Member arbitrate their claims arising from this Action against Camden or against any alleged co-conspirator or co-Defendant named in the Action. Camden agrees not to contest any individual's participation in the Settlement Class based on the existence of an arbitration clause or provision purporting to ban collective or class actions against Camden.

      c.    **RealPage Data Sharing**. Beginning on the Execution Date and for a period of five (5) years following the entry of an order preliminarily approving the Settlement, Camden shall not, within the United States and its territories

      i.    license or use any RMS that: (i) uses External Nonpublic Data (other than Nonpublic Data of the subject Camden property) in its Runtime Operation[2] to generate rental prices or rental pricing recommendations for any property managed and/or owned by Camden; (ii) uses Nonpublic Data from any Camden property in its Runtime Operation to generate rental prices or rental pricing recommendations for any

---

[2] "Runtime Operations" means any action taken by a RMS while it runs, including generating rental prices or rental pricing recommendations for any unit or set of units at a property. Runtime Operation does not include Model Training. "Model Training" means the process of analyzing data, including by machine learning or regression analysis, to create or adjust a model (including a Random Forest model) or algorithm used in RMS to improve the accuracy of the model's or algorithm's predictions. Model Training includes the training of a model or algorithm to predict supply or demand at a particular property, which is then used during Runtime Operation.

non-Camden property; (iii) discloses in any way Nonpublic Data from a Camden property to any Person who owns and/or manages a property/properties other than Camden; (iv) pools or combines Nonpublic Data from Camden properties owned in whole or in part by any Person(s) other than Camden; or (v) contains or uses a model or algorithm for which Nonpublic Data (other than Nonpublic Data of the subject Camden property) was used during or as a part of Model Training, except for property data that is at least 12 months old;

ii. agree (expressly or tacitly) with any other property owner or non-Camden property manager to use a particular RMS (or the utilities or functionalities thereof) or require any other Person to use a particular RMS (or the utilities or functionalities thereof). Camden is not prohibited by the preceding sentence from using a particular RMS at a particular property pursuant to an agreement with another Person who is the property owner or who, along with Camden, provides services to that particular property on behalf of the property owner, provided that the RMS complies with Paragraph 13(c).

iii. If management responsibilities or ownership of a property within the United States or its territories is transferred from another property manager or property owner to Camden, then Camden will have ninety (90) days from the date of transfer to comply with the requirements of Paragraph 13(c) for the transferred property.

iv. Camden must not, within the United States and its territories, as part of setting rental prices or generating rental pricing recommendations for any Camden property: (a) disclose Nonpublic Data to any other property manager or property owner;

(b) solicit External Nonpublic Data[3] from any other property manager or property owner; or (c) use External Nonpublic Data obtained from another property manager or property owner. Nothing in this Paragraph shall apply to communications between Camden and any other Person providing services to that Camden Property for whom the disclosure of Nonpublic Data is necessary to provide such services. For avoidance of doubt, the restrictions set forth in this Paragraph only apply to External Nonpublic Data and Nonpublic Data used as part of setting rental prices or generating rental pricing recommendations for any property owned and/or managed by Camden. The restrictions include External Nonpublic Data and Nonpublic Data, used as part of setting rental prices or generating rental pricing recommendations for any property owned and/or managed by Camden, that is obtained through any form, whether directly or through an intermediary, including call arounds or market surveys, in-person meetings, calls, text messages, chat communications, emails, surveys, spreadsheets, shared documents (e.g., Google documents and SharePoint documents), industry meetings (e.g., user groups), online fora, private meetings, use of RMS, or information-exchange service. The proscriptions in this Paragraph do not apply to historical data for properties purchased by Camden and which remain in Camden's ownership, or information exchanged strictly for, and in connection with Camden's involvement in the bona fide purchase or sale of a multifamily rental property, regardless of whether the sale or purchase is ultimately consummated.

---

[3] "External Nonpublic Data" means all Nonpublic Data from any Person other than Camden. It does not include data from a Camden property.

v.	Except for the rental prices set at any Camden Property while that Property used a RealPage RMS during the Settlement Class Period, Camden shall not, within the United States and its territories, use or access, as part of setting rental prices or generating pricing recommendations for any property owned and/or managed by Camden, any External Nonpublic Data, or data derived from RealPage that used or relied on such External Nonpublic Data in Camden's possession, custody, or control as of the Execution Date, and acquired through any means. In addition, the proscriptions in this Paragraph do not apply to historical data for properties purchased by Camden, where the historical data relates only to the purchased property/ies, and which properties remain within Camden's ownership.

vi.	For the avoidance of doubt, Camden is not prohibited from using RMS that complies with the terms of the stipulation and proposed final judgment (or subsequent final judgment with the same material terms as the proposed final judgment) between the United States and RealPage in *United States et al. v. RealPage et al.*, No. 1:24-cv-00710 (M.D.N.C.), at ECF No. 159, entered March 26, 2026 (ECF No. 182) ("Proposed Final Judgment").  In addition, Camden may rely on RealPage's representation that its RMS comply with the Proposed Final Judgment with the United States. Nothing in this agreement prohibits Camden from complying with its disclosure obligations under securities laws or following Camden's established, legal practices for disclosing information to the investing public, including through earnings calls and via public disclosures and filings.

vii.	Settlement Class Counsel may consent, or Camden may petition the Court to delete or modify this paragraph based upon changed circumstances.

35

**14.** **TERMINATION AND RESCISSION**.

a. *Rejection or Alteration of Settlement Terms.* If (i) the Court refuses to grant preliminary or final approval of this Agreement or certify the Settlement Class or such grant or certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to Camden or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs[4] exceed five percent of Settlement Class Members and Camden elects in its sole discretion to revisit the terms of this Settlement, then the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement automatically terminates, unless an extension is otherwise agreed upon by the Parties. Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement Agreement, Camden and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination is appropriate, unless an extension is otherwise agreed upon by the Parties. A refusal to approve or modification or reversal on appeal based solely on or relating solely to the Settlement Class Counsel's fees and expenses award and/or Plan of Allocation shall not be deemed a refusal to approve or modification of the terms of this Settlement Agreement.

b. *Termination of Settlement.* In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs (not exceeding $1 million) used or incurred for Camden's *pro rata* share of Class Notice and costs of administration of the Settlement Fund, if any, shall be

---

[4] Plaintiffs must provide Camden a detailed final report within 14 days of the exclusion deadline, including: (i) each person or entity that requested exclusion (with all identifying information), (ii) the date each request was postmarked and received, and (iii) whether the request was timely and validly made.

refunded by the escrow agent to Camden pursuant to written instructions from Camden's Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of April 6, 2026, and without waiver of any positions asserted in the Action prior to that date. Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c. Plaintiffs, the Settlement Class, Settlement Class Counsel, and Camden agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by Camden or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly or indirectly except in a proceeding to enforce or interpret this Settlement Agreement. Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms.

15. **COVENANT NOT TO SUE**. The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims. Plaintiffs and Camden agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

16. **CAMDEN RELEASE**. Pending the Effective Date, Camden agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims

37

relating to the institution, prosecution, or settlement of the pending Action. Upon the Effective Date, Camden shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Camden, except for claims relating to the enforcement of the Settlement. For the avoidance of doubt, this release shall not extend to any claims wholly unrelated to the factual predicate of this Action and the allegations in the Complaint or that may exist as a result of a landlord-tenant relationship between the Parties.

17. **NO ADMISSION OF LIABILITY**. The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by Camden, or any Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, and shall not be used against Camden or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action, investigation, litigation, regulatory proceeding, or other proceeding, against Camden or the Releasees. Camden denies all allegations of wrongdoing in the Action. Nothing in this Settlement Agreement constitutes an admission by Camden as to the merits of the allegations made in the Action.

18. **JOINT AND SEVERAL LIABILITY PRESERVED**. This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than Camden and the Releasees. All claims against such

38

other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class. Camden's and the other Releasees' pricing of multifamily housing rental properties for the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than Camden and the other Releasees. Camden and the Releasees shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount specifically agreed to in Paragraph 5.

19. **CONFIDENTIALITY**. The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain confidential until publicly filed with the Court for approval. Nothing in Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel. Similarly, nothing in this Paragraph 19 shall prohibit Camden or any Releasee from making general disclosures as necessary to comply with the securities laws and other obligations, as well as in its public filings. Following the Execution Date, Camden and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement.

20. **CAFA**. Camden shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

21. **CONTINUING JURISDICTION**. The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and

agreement by Plaintiffs and Camden, including challenges to the reasonableness of any party's actions. Camden will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction. The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22. **ENTIRE AGREEMENT**. This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and Camden pertaining to this Settlement of the Action against Camden, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and Camden in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and Camden and approved by the Court.

23. **BINDING EFFECT**. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and Camden. Without limiting the generality of the foregoing, upon the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than Camden, which is a party to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

24. **EXECUTION IN COUNTERPARTS**. This Agreement may be executed in counterparts by Plaintiffs and Camden, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

**25.** **NOTICE**.  Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

**26.** **PRIVILEGE**.  Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

**27.** **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**.  Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement.  Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel.  Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

**28.** **NO PARTY IS THE DRAFTER**.  This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for Camden.  None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any

41

statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29. **HEADINGS**. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30. **OPPORTUNITY TO CURE**. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

31. **GOVERNING LAW**. All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles.

32. **REASONABLE EXTENSIONS**. Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

33. **COUNSEL'S EXPRESS AUTHORITY**. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

Dated:  May 8, 2026

For the Plaintiffs:

\
Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com


\
Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com


\
Swathi Bojedla
Hausfeld LLP
1200 17th St., NW, Suite 600
Washington, DC 20036
sbojedla@hausfeld.com

Dated: May 8, 2026

**CAMDEN PROPERTY TRUST**

By: _____

Printed Name: Alex Jessett

Title: Chief Executive Officer

Dated: May 8, 2026


**APPROVED AS TO FORM:**


By: _____

Printed Name: Ryan Sandrock

Title: Partner, Shook, Hardy & Bacon, L.L.P.

Dated: May 8, 2026

Signature Page

# EXHIBIT A-28
## Cortland

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-MD-3071<br>MDL No. 3071<br><br>This Document Relates to:<br>ALL CASES<br><br>Hon. Judge Waverly D. Crenshaw, Jr. |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of the latest date of signature below ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and Cortland Management, LLC ("Cortland") and collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs are prosecuting claims against Cortland and other Defendants for allegedly conspiring to fix and inflate the price of multifamily rental housing across the country on their own behalf and on behalf of the Settlement Class in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[1] (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of Cortland's alleged participation in an

---

[1] The actions currently centralized in MDL No. 3071 include Cases No. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

1

unlawful conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for residential units nationwide and to exchange competitively sensitive information about rental pricing in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Second Amended Consolidated Class Action Complaint, ECF No. 530;

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from Cortland's alleged conduct;

WHEREAS, Cortland denies Plaintiffs' allegations, denies any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against it in the Action, and asserts that it has a number of valid defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, the Parties, through their counsel, have concluded that resolving the claims against Cortland, according to the terms set forth below, is in the best interests of the Parties, including because of the payment of the Settlement Amount (defined below) and the cooperation that Cortland has agreed to provide pursuant to this Agreement;

WHEREAS, Cortland, despite its belief that it is not liable for the claims asserted by Plaintiffs and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement;

2

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date does not occur;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled and dismissed on the merits with prejudice as to Cortland, subject to Court approval, on the following terms and conditions:

1.  **GENERAL DEFINITIONS**. The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a.  "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

b.  "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

c.  "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

d. "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

e. "Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (Dkt. 530, re-filed across the consolidated cases at Dkt. 728).

f. "Cortland's Counsel" means Lewis Brisbois Bisgaard & Smith, LLP.

g. "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

h. "Defendants" means those Defendants named in the Complaint (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland, Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Property Trust, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson

4

Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

i. "Effective Date" shall have the meaning set forth in Paragraph 2(f) of this Settlement Agreement.

j. "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

k. "Execution Date" means the latest date of the execution of this Agreement by all Parties.

l. "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

m. "Final Approval Order" and "Final Approval" mean the Court's order finally approving this Settlement.

n. "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses, (b) Notice and Administration Expenses; (b) any Fee and Expense Award; (c) any Service Awards to Plaintiffs; and (d) other fees and expenses, if any, authorized by the Court.

o.      "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow Agent (if any). All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

p.      "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

q.      "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

r.      "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

s.      "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

6

t.     "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes, individually and on behalf of Settlement Class Members.

u.     "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

v.     "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

w.     "Preliminary Approval Order" and "Preliminary Approval" mean the Court's order preliminarily approving this Settlement.

x.     "Properties" means all multifamily rental properties managed by Cortland that at any point during the Settlement Class Period were subject to a license for RealPage's Revenue Management Solutions pricing recommendations for multifamily rental units.

y.     "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

z.     "Releasees" means Cortland and Cortland Partners, LLC, and any and all of their past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, all of their respective predecessors, successors and assigns, and each and all of their present, former, and future

7

principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind. However, the term "Releasees" will not include third-party co-owners or individual investors investing in any Property alongside a Releasee (each a "Third Party Co-Owner"), even if such Third Party Co-Owner is Cortland's and/or Cortland Partners, LLC's past, present, or future direct and indirect parent company, subsidiary company, affiliated company, affiliated partnership, and joint venturer, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind, solely to the extent a claim arises from such Third Party Co-Owner's ownership of a multifamily property. For the avoidance of doubt, no Defendant other than Cortland is hereby released, nor is any individual investor in a Cortland Partners, LLC-affiliated fund released by virtue of the investment in that affiliated fund other than the Releasees.

aa. "Releasors" means Plaintiffs, the Settlement Class, and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, or through the Releasors, with such claiming parties to include any and all of Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders,

8

members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

aa. "Revenue Management Solutions" or "RMS" means Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM").

bb. "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

cc. "Settlement Administrator" means the professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of this Settlement to the Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

dd. "Settlement Amount" shall be $18,000,000.00 (eighteen million U.S. dollars) as specified in Paragraph 5.

ee. "Settlement Class" means the class defined in Paragraph 3 below.

ff. "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

gg. "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

hh. "Settlement Class Period" means from October 18, 2018 until November 21, 2025.

ii.     "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

jj.     "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

kk.     "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Cortland with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

2.     **APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST CORTLAND**.

a.     Cortland shall not object to Plaintiffs' Counsel's motions for approval of this Settlement and the production of any related documents requested that Plaintiffs' Counsel reasonably believe is necessary to effectuate and implement the terms and conditions of this Settlement Agreement. Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement.

b.     Plaintiffs shall submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion") within sixty (60) calendar days of execution of this Agreement, absent agreement between the Parties or by order of Court. The

Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

c.     Within sixty (60) calendar days after the Execution Date, or as soon thereafter as is practicable, to the extent not already produced, Cortland shall supply Plaintiffs with reasonable contact information of Settlement Class Members who rented multifamily housing units in the Properties managed and/or owned by Cortland during the Settlement Class Period. The contact information shall be provided in a mutually agreeable electronic format. Plaintiffs shall use reasonable efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering this Settlement. The Settlement Administrator and Plaintiffs may request from Cortland additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this Agreement, and Cortland will not unreasonably deny any such additional requests or fail to timely produce such contact information, if available in a reasonably accessible format and reasonable to so produce.

d.     Plaintiffs shall submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion"). The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

e.     Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and Cortland shall agree upon, and such agreement will not be unreasonably withheld. The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

11

i.         certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii.        approving finally this Settlement and its terms as being a fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

iii.       directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4)

iv.       directing that Cortland shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Cortland (as provided for in Paragraph 16);

v.        directing that the Action (including the Complaint) be dismissed as to Cortland with prejudice, and except as provided for in this Agreement, without costs;

vi.       reserving to the Court the exclusive jurisdiction over this Settlement and this Agreement, including the interpretation, administration, and consummation of this Settlement, as well as over Cortland for its provision of cooperation pursuant to this Agreement;

vii.      determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to Cortland shall be final;

viii.    providing that Plaintiffs and Cortland have each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure; and

ix.    providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any (a) non-settling Defendant to contest certification of any other class proposed in the Action, or of (b) Cortland's right to contest certification of any other proposed class in the Action should this Agreement not become final as described in subsection (f) to this Paragraph; (2) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify any class in the Action or on the Court's rulings concerning any Defendant's motion; and (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

f.    This Agreement shall become final and be deemed to have received final approval when: (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 3, approved this Agreement under Federal Rule of Civil Procedure 23(e), and entered a final judgment dismissing the Action with prejudice as to Cortland without costs other than those provided for in this Agreement; and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to Cortland described in (i) hereof has expired in the Action or, if appealed, approval of this Agreement and the order and final judgment in the Action as to Cortland have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review (the "Effective Date"). It is agreed that

13

the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and Cortland shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

3.  **CERTIFICATION OF A SETTLEMENT CLASS**. Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any owner, manager and/or owner-operator (including to any division, subsidiary, predecessor, agent or affiliate of any owner, manager and/or owner-operator) on a property subject to a license for RealPage's Revenue Management Solutions, Lease Rent Options ("LRO"), YieldStar ("YS"), and/or AI Revenue Management ("AIRM")("RealPage's RMS") at any time during the period of October 18, 2018 through November 21, 2025 (the "Settlement Class Period"). Specifically excluded from this Class are Opt-Outs; Defendants; any entity licensing RealPage's RMS, the officers or directors of any entity licensing RealPage's RMS and any entity in which any entity licensing RealPage's RMS has a controlling interest; any affiliate, legal representative, heir or assign of any entity licensing RealPage's RMS and federal, state, or local government; states and their subdivisions, agencies, and instrumentalities; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action.

Cortland agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. If the Effective Date does not occur, Cortland shall have the full ability to oppose any motion for certification of a litigation class, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against Cortland.

4.  **SETTLEMENT CLASS'S RELEASE**.

a.  Upon the occurrence of the Effective Date and in consideration of the

14

payment by Cortland of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph 13 of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees from any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had, now have, or in the future may have directly, representatively, derivatively or in any other capacity against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, arising from the conduct that was alleged or could have been alleged in this Action and relating to the Properties based on any or all of the same factual predicate of the Action, including but not limited to Cortland's alleged participation in a conspiracy to fix or inflate the price of multifamily residential lease prices through the use of RealPage, Inc.'s Revenue Management Solutions including Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM"), and any joint and several liability claim(s) against Cortland related to or arising from the same factual predicate of this Action (the "Released Claims"). Released Claims shall not include: (i) claims asserted against any Defendant or co-conspirator other than Cortland, or any owner of any of the Properties other than Cortland; (ii) any claims wholly unrelated to the allegations in the Complaint or that may exist as a result of a landlord-tenant relationship between the Parties, including claims based on breach of contract, state landlord-tenant regulation, negligence, and personal injury;

15

(iii) claims relating to the enforcement of the Settlement or its terms; (iv) claims of any person or entity that submits a request for exclusion and whose request is accepted by the Court; or (v) claims that may be asserted against Persons that are not affiliates of Cortland's but with whom Cortland or one or more of its affiliates has a partnership, joint venture, or co-investor relationship.

b.    In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein. Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

c.    The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

d.    The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by Cortland that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the

16

Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

## 5. SETTLEMENT AMOUNT.

a. Cortland agrees that an amount equal to $18,000,000.00 (eighteen million U.S. dollars) will be paid on behalf of Cortland as the "Settlement Amount" in settlement of the Action, inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action. The Settlement Amount shall be paid in three installments: The first payment of $3,000,000.00 (three million U.S. dollars) to be paid within five business days of the Execution Date ("First Payment"); The second payment of $5,000,000 (five million U.S. dollars) to be paid within five business days of the entry of the Court's Preliminary Approval Order as to this Settlement ("Second Payment"); and The third payment of $10,000,000 (ten million U.S. dollars) within five business days of the Effective Date ("Third Payment"). The payment described above shall constitute the total amount to be paid by Cortland in settlement of these claims. The Settlement Amount shall be paid into an interest-bearing escrow account (the "Escrow Account") maintained by an escrow agent on behalf of the Settlement Class. The Parties agree and acknowledge that none of the Settlement Amount paid by Cortland under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

b. If Cortland (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified above, then Settlement Class Counsel, in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the

17

Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

c.      The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement, and there will be no reversion of settlement funds to Cortland, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, if the Settlement becomes final. Upon the occurrence of the Effective Date, neither Cortland, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of Cortland's insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

**6.      ESCROW ACCOUNT.** An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel. The Escrow Account shall be administered under the Court's continuing supervision and control.

a.      Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense

Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b. The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

c. Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

d. The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments

shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

e. In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to Cortland via wire transfer all funds remaining in the Escrow Account at that time, less any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante. Cortland shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective. Settlement Class Counsel shall ensure that the Settlement Administrator also provides Cortland full and complete information related to the Escrow Account to enable Cortland to determine whether any taxes may be owed on the funds returned to Cortland.

7. TAX TREATMENT.

a. The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and Cortland, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation

20

§1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

b. For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treas. Reg. §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

c. All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, Cortland and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation

21

§1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses. Plaintiffs and Cortland agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

d. Cortland, Releasees, and Cortland's Counsel shall have no liability for or obligations relating to Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each Cortland, Releasees, and Cortland's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

e. Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

**8.** **CLASS ADMINISTRATION AND NOTICE**. As soon as practicable, Settlement Class Counsel will retain one or more Settlement Administrator that, jointly or separately, are responsible for all aspects of settlement administration. Such Settlement Administrator shall be approved by the Court and, if approved, overseen by Settlement Class Counsel. Cortland will not have any involvement in the selection of the Settlement Administrator(s), the claims administration process, or the plan of allocation of the settlement proceeds. The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement. In no event

22

shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

a.     At no time and under no circumstances shall Plaintiffs, Cortland, Settlement Class Counsel, Plaintiffs' Counsel, Cortland's Counsel, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

b.     Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs. The Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs. The procedures for submitting claims shall conform to the procedures outlined below. Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form. Each Claim Form must be signed under the penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

c.     All Claim Forms must be received by the Settlement Administrator within the time prescribed in the plan for Notice approved by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement

23

Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted. No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

d. Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

e. Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

f. Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

g. All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies

24

relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process. All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein. The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

h.      No Person shall have any claim against Cortland's Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

9.      **EXCLUSIONS**.

a.      Cortland reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

b.      A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice. Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

25

c.       Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

d.       Cortland or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

10.       **PAYMENT OF EXPENSES**. Subject to Court approval, disbursements for payment of Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to Cortland, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, in the event this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses have actually been expended or incurred. Any refund that becomes owed to Cortland if this Settlement does not become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court. Other than as set forth in this Paragraph, Cortland shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs. To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action

and to apportion the costs of notice and administration in an equitable manner across the applicable settlements.

11.     **THE SETTLEMENT FUND.**

a.     The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b.     After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation. Cortland will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

c.     The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives. Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

12.     **FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS.**

a.     Cortland understands that Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval of the Agreement, submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (ii) reimbursement of expenses and costs

27

incurred in connection with prosecuting the Action; and/or (iii) and Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"). Cortland understands that Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable service awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

b. Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon final approval of the Settlement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Amount is required, then within fifteen (15) business days after receiving notice from Cortland of such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction. Each law firm that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Attorneys' Fees and Expense award,

28

on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this paragraph.

c. The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement.

d. Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph. No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of Cortland or the Releasees, under this Agreement.

13. **DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION.**

a. *Cooperation.* Cooperation by Cortland is a material term of this Agreement and shall include only the following categories of cooperation, with all disputes concerning the same to be resolved by the Court:

29

i.	Within sixty (60) calendar days of the Execution Date, Cortland shall answer reasonable questions concerning its structured data;

ii.	While Cortland has completed its production of documents, Cortland agrees to respond to Plaintiffs' Counsel's reasonable questions concerning its structured data production(s), and any deficiencies or technical errors identified in its production, including in the case that Plaintiffs' Counsel are unable to access any negotiated discovery materials;

iii.	Cortland shall make available one 30(b)(6) witness, mutually agreed upon by the Parties, for a deposition not to exceed seven (7) record hours on or before February 28, 2026.

iv.	Cortland shall make available one witness for trial, mutually agreed upon by the Parties, should trial occur, accepting service of a trial subpoena and agreeing to waive any objections under Rule 45(c) relating to place of compliance;

v.	Cortland shall use reasonable efforts to assist Plaintiffs' Counsel in authenticating Cortland's documents and/or things produced in the Action, where the facts indicate that the documents and/or things at issue are authentic, whether by declarations or affidavits, or, if declarations or affidavits are not reasonably sufficient, depositions, hearings, and/or at trial(s) as may be necessary for the Action; and

vi.	Cortland will consider reasonable requests for additional relevant information about Plaintiffs' claims in the Action from Plaintiffs' Counsel, taking into account the information it has or will produce in discovery, and whether providing the requested information will be burdensome.

b.    *Arbitration Non-Enforcement*. For a period of five (5) years after the Court enters final judgment in this Action, Cortland agrees it will not arbitrate or attempt to enforce any arbitration provision relating to any claims arising from the factual predicate of this litigation from any member of the Settlement Class. However, Cortland is entitled to use arbitration clauses to the extent permitted by law in leases executed after the Execution Date and in current leases and other contracts for claims and issues unrelated to the factual predicate of this litigation (*e.g.*, a slip and fall injury).

c.    *RealPage Data Sharing*. For a period of five (5) years after the Court enters final judgment in this Action, Cortland shall (i) not provide to RealPage, Inc., any non-public data concerning multifamily residential leases, or permit RealPage, Inc., or any other company providing revenue management services that Cortland knows or should have known uses as an input non-public data provided to RealPage, Inc. by Cortland's competitors to share Cortland's non-public data concerning multifamily residential leases for use in revenue management services; and (ii) not contract with RealPage, Inc. or any other company providing revenue management services, to use a revenue management service or program that Cortland knows or should have known uses as an input non-public data provided to RealPage, Inc. by Cortland's competitors; provided that Settlement Class Counsel may consent, or Cortland may petition the Court, to delete or modify this provision based upon changed circumstances. Cortland may continue to use RealPage's revenue management software, including LRO, YieldStar, and/or AIRM, that relies solely on inputs from Cortland's own data and non-public data aggregation sources such as ApartmentIQ or similar services, provided that any non-public data parameters have been disabled. Nothing in this Paragraph shall prevent Cortland from providing RealPage, Inc. with all data for properties

31

managed by Cortland, so long as in conformance with other requirements set forth in this Paragraph.

14. **TERMINATION AND RESCISSION**.

a. *Rejection or Alteration of Settlement Terms.* If (i) the Court refuses to grant preliminary or final approval of this Agreement or certify the Settlement Class or such grant or certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to Cortland or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs exceed ten percent of Settlement Class Members and Cortland elects to revisit the terms of this Settlement, then the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement automatically terminates, unless an extension is otherwise agreed upon by the Parties. Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement Agreement, Cortland and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination is appropriate, unless an extension is otherwise agreed upon by the Parties. A refusal to approve or modification or reversal on appeal based solely on or relating solely to the Settlement Class Counsel's fees and expenses award and/or Plan of Allocation shall not be deemed a refusal to approve or modification of the terms of this Settlement Agreement.

b. *Termination of Settlement.* In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Class Notice and costs of administration of the Settlement Fund, if any, shall be refunded by the escrow agent to Cortland

pursuant to written instructions from Cortland's Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of the day preceding the Execution of this Agreement, and without waiver of any positions asserted in the Action prior to that date. Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c.      Plaintiffs, the Settlement Class, Settlement Class Counsel, and Cortland agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by Cortland or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly or indirectly except in a proceeding to enforce or interpret this Settlement Agreement. Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms.

**15.**     **COVENANT NOT TO SUE**. The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims. Plaintiffs and Cortland agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

33

**16.** **CORTLAND RELEASE**. Pending the Effective Date, Cortland agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the pending Action. Upon the Effective Date, Cortland shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Cortland, except for claims relating to the enforcement of the Settlement.

**17.** **NO ADMISSION OF LIABILITY**. The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by Cortland, or any Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, and shall not be used against Cortland or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against Cortland or the Releasees.

**18.** **JOINT AND SEVERAL LIABILITY PRESERVED**. This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than Cortland and the other Releasees. All claims against such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class. Cortland's and the other Releasees' pricing of multifamily housing rental properties for the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law,

34

remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than Cortland and the other Releasees. Cortland and the other Releasees shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount and the amounts specifically agreed to in Paragraphs 5 and 10.

19. **CONFIDENTIALITY**. The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain confidential until publicly filed with the Court for approval. Nothing in Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel. Similarly, nothing in this Paragraph 19 shall prohibit Cortland and the other Releasees from making general disclosures as necessary to comply with the securities laws and other obligations, as well as in its public filings. Following the Execution Date, Cortland and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement.

20. **CAFA**. Cortland shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

21. **CONTINUING JURISDICTION.** The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Cortland, including challenges to the reasonableness of any party's actions. Cortland will not object to complying with any of the provisions outlined in this

Agreement on the basis of jurisdiction. The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22.     **ENTIRE AGREEMENT**. This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and Cortland pertaining to this Settlement of the Action against Cortland, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and Cortland in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and Cortland and approved by the Court.

23.     **BINDING EFFECT**. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and Cortland. Without limiting the generality of the foregoing, upon the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than Cortland, which is a party to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

24.     **EXECUTION IN COUNTERPARTS**. This Agreement may be executed in counterparts by Plaintiffs and Cortland, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25.     **NOTICE**. Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

26.     **PRIVILEGE**. Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

27.     **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**. Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement. Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28.     **NO PARTY IS THE DRAFTER**. This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and Cortland's Counsel. None of the Parties hereto shall

be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29.    HEADINGS. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30.    OPPORTUNITY TO CURE. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

31.    GOVERNING LAW. All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles.

32.    REASONABLE EXTENSIONS.  Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement

33.    COUNSEL'S EXPRESS AUTHORITY.  Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval

**FOR CORTLAND MANAGEMENT, LLC:**

Dated: February 2, 2026

Todd R. Seelman
Thomas L. Dyer
LEWIS BRISBOIS BISGAARD & SMITH, LLP
Wells Fargo Center, 1700 Lincoln St, Suite 3500
Denver, CO 80203
Todd.Seelman@lewisbrisbois.com

**FOR THE PLAINTIFFS:**

Dated: February 3, 2026


Patrick Coughlin
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com


Stacey Slaughter
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com


Swathi Bojedla
HAUSFELD LLP
1200 17th St., NW, Suite 600
Washington, DC 20036
sbojedla@hausfeld.com

# EXHIBIT A-29
## Equity

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-MD-3071<br>MDL No. 3071<br><br>This Document Relates to:<br>ALL CASES<br><br>Judge Waverly D. Crenshaw, Jr. |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of April 13, 2026 ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and Equity Residential (collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs are prosecuting claims against Equity Residential and other Defendants on their own behalf and on behalf of the Settlement Class in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[1] (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of Equity Residential's alleged participation in an unlawful conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for residential units nationwide and to exchange competitively sensitive information about rental

---

[1] The actions currently centralized in MDL No. 3071 include Cases No. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

1

pricing in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Second Amended Consolidated Class Action Complaint, ECF No. 530;

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, costs, including, *inter alia*, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from Equity Residential's alleged conduct;

WHEREAS, Equity Residential denies Plaintiffs' allegations, denies any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against it in the Action, and asserts that it has a number of valid defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against Equity Residential, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the Settlement Amount (defined below) and the value of the non-monetary consideration, including cooperation, that Equity Residential has agreed to provide pursuant to this Agreement;

WHEREAS, Equity Residential, despite its belief that it is not liable for the claims asserted by Plaintiffs and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement and to put to rest with finality all claims that have been or could be asserted against Equity Residential, as more particularly set out below;

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any litigation class proposed by Plaintiffs in the event that the Effective Date does not occur;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to Equity Residential, subject to Court approval, on the following terms and conditions:

1. **GENERAL DEFINITIONS**.  The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a. "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

b. "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

c. "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

d. "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

e. "Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (Dkt. 530, re-filed across the consolidated cases at Dkt. 728).

f. "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr. (or any successor judge overseeing the Action).

g. "Defendants" means those Defendants named in Plaintiffs' Complaint (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Property Trust, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo

4

Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

h.     "Effective Date" shall have the meaning set forth in Paragraph 2 of this Settlement Agreement.

i.     "Equity" means Equity Residential, ERP Operating Limited Partnership, and all their respective subsidiaries and affiliates.

j.     "Equity's Counsel" means Winston & Strawn LLP, Baker & Hostetler LLP, and Spencer Fane LLP.

k.     "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

l.     "Execution Date" means the latest date of the execution of this Agreement by all Parties.

m.     "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

n.     "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses; (b) Notice and Administration Expenses; (c) any Fee and Expense Award; (d) any Service Awards to Plaintiffs; and (e) other fees and expenses, if any, authorized by the Court.

5

o.    "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow Agent (if any).  All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

p.    "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

q.    "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

r.    "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

s.    "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

t. "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes, individually and on behalf of Settlement Class Members.

u. "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

v. "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

w. "Preliminary Approval Order" and "Preliminary Approval" mean the order preliminarily approving the Settlement.

x. "Properties" means all multifamily rental properties owned and/or managed by Equity in whole or in part, that at any point during the Settlement Class Period were subject to a license to use RealPage's Revenue Management Solutions for multifamily rental units.

y. "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

z. "Releasees" means Equity and any and all of its past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, trustees, representatives, insurers,

7

attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind. However, Releasees does not include any Defendants other than Equity, or those other Defendants' direct and indirect parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, respective predecessors, successors and assigns; provided that this sentence shall not exclude from the definition of Releasees any entities in which Equity is a partner, joint venturer, or co-investor.

aa. "Releasors" means Plaintiffs, the Settlement Class, and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, or through the Releasors, with such claiming parties to include any and all of Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, joint ventures, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

bb. "Revenue Management Solutions" or "RMS" means Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM").

cc. "Service Award" means any Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

8

dd. "Settlement Administrator" means Angeion Group, LLC appointed by the Court to disseminate Class Notice of settlement agreements reached in this matter as of the Execution Date (ECF 1313), or other professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of Settlement to the Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

ee. "Settlement Amount" shall be USD fifty-six million dollar ($56,000,000 dollars) as specified in Paragraph 5.

ff. "Settlement Class" means the class defined in Paragraph 3 below.

gg. "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

hh. "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

ii. "Settlement Class Period" means from October 18, 2018, until November 21, 2025.

jj. "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

kk. "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

ll. "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that

may be imposed upon Equity with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

**2.** **APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST EQUITY**.

a. Equity Residential shall use its reasonable best efforts in connection with Plaintiffs' Counsel's motions for approval of this Settlement and any related documents necessary to effectuate and implement the terms and conditions of this Settlement Agreement. Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement.

b. Plaintiffs shall, not longer than three (3) months from the Execution Date absent agreement between the Parties or by order of Court, submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

c. Within thirty calendar (30) days after the execution of this Settlement Agreement, Equity Residential shall supply to Plaintiffs the contact information, to the extent tracked in the ordinary course of business by Equity and reasonably available to Equity, of Settlement Class Members who rented multifamily housing units in Properties owned and/or managed by Equity October 18, 2018 through November 21, 2025. The contact information shall be provided in a mutually agreeable electronic format. Plaintiffs shall use their reasonable best efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of

noticing and administering this Settlement.  The claims administrator and Plaintiffs may request from Equity Residential additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this settlement, and Equity Residential will not unreasonably deny any such additional requests or fail to timely produce such data, if reasonably available.

d.     Plaintiffs shall submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion").  The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

e.     Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and Equity Residential shall agree upon, and such agreement will not be unreasonably withheld.  The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

i.     certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii.     approving finally this Settlement and its terms as being fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

iii.     finding that the notice given constitutes due, adequate, and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

11

iv.     directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4);

v.     directing that Equity Residential shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Equity (as provided for in Paragraph 16);

vi.     directing that the Action (including the Complaint) be dismissed as to Equity with prejudice, and except as provided for in this Agreement, without costs;

vii.     reserving to the Court the exclusive jurisdiction for any suit, action, proceeding, or dispute arising out of or relating to this Settlement and this Agreement, including the interpretation, administration, and consummation of this Settlement, as well as over Equity Residential for its provision of cooperation pursuant to this Agreement;

viii.     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to Equity shall be final;

ix.     providing that Plaintiffs and Equity have each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure; and

x.     providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of (a) any non-settling Defendant to contest certification of any other class proposed in the Action, or (b) Equity to contest certification of any other proposed class in the Action should this Agreement not become final as described in subsection (f) to this Paragraph; (2) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify

12

any class in the Action or on the Court's rulings concerning any Defendant's motion; and (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

      f.    This Agreement shall become final and be deemed to have received final approval when (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 3, approved this Agreement under Federal Rule of Civil Procedure 23(e), and entered a final judgment dismissing the Action with prejudice as to Equity without costs other than those provided for in this Agreement; and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to Equity described in (i) hereof has expired in the Action or, if appealed, all appeals have been resolved without material modification of the order and final judgment as to Equity (or all Parties agree to such material modification to the order and final judgment) and such resolution has become no longer subject to further appeal or review (the "Effective Date"). It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and Equity Residential shall be bound by the terms of this Agreement, and this Agreement shall not be terminated or rescinded except in accordance with Paragraphs 5(b) and 14.

      **3.**    **CERTIFICATION OF A SETTLEMENT CLASS**. Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any owner, manager and/or owner-operator (including to any division, subsidiary, predecessor, agent or affiliate of any owner, manager and/or owner-operator) on a property subject to a license for RealPage's Revenue Management Solutions, Lease Rent Options ("LRO"), YieldStar ("YS"), and/or AI Revenue Management ("AIRM")

Case 3:23-md-03071    Document 1398-2    Filed 05/14/26    Page 100 of 468 PageID #: 22069

("RealPage's RMS") at any time during the period of October 18, 2018 through November 21, 2025 (the "Settlement Class Period"). Specifically excluded from this Class are Opt-Outs; Defendants; any entity licensing RealPage's RMS, the officers or directors of any entity licensing RealPage's RMS and any entity in which any entity licensing RealPage's RMS has a controlling interest; any affiliate, legal representative, heir or assign of any entity licensing RealPage's RMS; federal, state, or local governments; states and their subdivisions, agencies, and instrumentalities; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action.

Equity agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. If the Effective Date does not occur, Equity shall have the full ability to oppose any motion for certification of a litigation class, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against Equity.

4. **SETTLEMENT CLASS'S RELEASE**.

a. Upon the occurrence of the Effective Date and in consideration of the payment by Equity Residential of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph 13 of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees from any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, attorneys' fees, restitution, disgorgement, interest, fines or other payment of money, or for injunctive, declaratory, or other equitable relief, whether class, individual, or otherwise, that the Releasors, or any of them, ever had or now have directly, representatively (including asserted in a *parens patriae* capacity), derivatively or in any other capacity against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured

14

or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, arising from or in connection with any act or omission through the date of preliminary approval of the Settlement relating to the Properties and related to or arising from the same factual predicate of the Action, including but not limited to Equity's alleged participation in a conspiracy to fix or inflate the price of multifamily residential lease prices through the use of RealPage, Inc.'s Revenue Management Solutions including Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM") or through any other means, and any joint and several liability claim(s) against Equity related to or arising from the same factual predicate of this Action (the "Released Claims"). Released Claims shall not include: (i) claims asserted against any Defendant or co-conspirator other than Releasees, (ii) claims asserted against any person or entity that at any point during the Settlement Class Period held an ownership interest of any kind in any of the Properties, other than Releasees; (iii) any claims wholly unrelated to the factual predicate of this Action or that may exist as a result of a landlord-tenant relationship between the Parties, including claims based on breach of contract, state landlord-tenant regulation, negligence, and personal injury; (iv) claims relating to the enforcement of the settlement or its terms; (v) any claims of any person or entity that submits a request for exclusion and whose request is accepted by the Court; and/or (vi) any claim that may be asserted against persons or entities (that are not Releasees) with whom Equity has a partnership, joint venture, or co-investor relationship; provided that, for the avoidance of doubt, with respect to partnership, joint venture, or co-investor relationships, clauses 4(a)(ii) and 4(a)(vi) do not carve out from the release claims against Equity partnerships, joint ventures, and co-investment entities themselves.

15

b.     The release in Paragraph 4(a) does not bar an investigation or action, whether denominated as law enforcement or regulatory, by a state or local governmental entity to vindicate sovereign or quasi-sovereign interests.  Notwithstanding the foregoing, the release in Paragraph 4(a) shall bar (1) any claim brought by a state, quasi-state, or local government entity to the extent that such claim is based on a state, quasi-state, or local government entity's proprietary interests as a member of the Settlement Class that has received or is entitled to receive a financial recovery in this Action and (2) any claim (including without limitation claims asserted in a *parens patriae* capacity and claims seeking damages, restitution, unjust enrichment, or other monetary relief) based upon harm sustained by natural persons, businesses, other non-state and non-local government entities, or private parties that are members of the Settlement Class.

c.     In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly fully waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein.  Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

d.     The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

16

e. The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by Equity that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

5. **SETTLEMENT AMOUNT**.

a. Equity Residential agrees that an amount equal to USD $56,000,000.00, all in cash, will be paid on behalf of Equity Residential as the Settlement Amount in settlement of the Action, inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action. The payment described above shall constitute the total amount to be paid by Releasees in settlement of these claims. The Settlement Amount shall be paid into an interest-bearing escrow account (the "Escrow Account") maintained by an escrow agent on behalf of the Settlement Class, within thirty (30) days of Plaintiffs providing all necessary information for their escrow agent after the Execution Date, including wire transfer instructions and a completed IRS Form W-9, including an address and tax ID number. The Parties agree and acknowledge that none of the Settlement Amount paid by Equity Residential under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

17

b. If Equity Residential (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified in Paragraph 5(a), then Settlement Class Counsel, in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

c. The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement, and there will be no reversion of settlement funds to Equity, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, if the Settlement becomes final in accordance with Paragraph 2(f). Upon the occurrence of the Effective Date, neither Equity, Releasees, nor any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of Equity's insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

6. **ESCROW ACCOUNT**. An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel. The Escrow Account shall be administered under the Court's continuing supervision and control.

a. Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia*

18

*legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b.      The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrues to the benefit of the Settlement Class.

c.      Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

19

d.      The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

e.      In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to Equity Residential via wire transfer all funds remaining in the Escrow Account at that time, less Equity Residential's share (based on any apportionment of the costs of notice and administration in an equitable manner across the applicable settlements under Paragraph 10) of any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante.  Equity Residential shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective and Plaintiffs and/or Settlement Class Counsel shall reimburse to Equity Residential via wire transfer all funds remaining in the Escrow Account within fifteen (15) days.  Settlement Class Counsel shall ensure that the Settlement Administrator also provides Equity Residential full and complete information related to the Escrow Account to enable Equity Residential to determine whether any taxes may be owed on the funds returned to Equity Residential.

20

**7. TAX TREATMENT.**

a. The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and Equity Residential, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation §1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

b. For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treas. Reg. §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

21

c.	All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, Equity and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses.  Plaintiffs and Equity agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

d.	Equity, Releasees, and Equity's Counsel shall have no liability for or obligations relating to Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each Equity, Releasees, and Equity's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

e.	Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

**8.** **CLASS ADMINISTRATION AND NOTICE**.  Settlement Class Counsel has retained Angeion Group, LLC as Settlement Administrator responsible for all aspects of settlement administration in this Action.  Such Settlement Administrator shall be approved by the Court in connection with this Settlement, and, if approved, overseen by Settlement Class Counsel.  Equity will not have any involvement in the claims administration process, or the plan of allocation of the settlement proceeds. Settlement Class Counsel, in their sole discretion, may replace, and/or retain one or more additional and/or alternate Settlement Administrator(s). Such Settlement Administrator(s) shall be approved by the Court in connection with this Settlement, and, if approved, overseen by Settlement Class Counsel.  Equity will not have any involvement in the selection of the Settlement Administrator(s). The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement.  In no event shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

a. At no time and under no circumstances shall Plaintiffs, Equity, Settlement Class Counsel, Plaintiffs' Counsel, Equity's Counsel, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

b. Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs.  The

23

Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs. The procedures for submitting claims shall conform to the procedures outlined below.

c. Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form. Each Claim Form must be signed under penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

d. All Claim Forms must be received by the Settlement Administrator within the time prescribed in the Notice Plan as approved by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund, but shall nonetheless be bound by the releases in this Agreement. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted. No Person shall have any claim against Equity, Equity's Counsel, Releasees, Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e. Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

24

f.      Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

g.      Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h.      All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process.  All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein.  The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

i. No Person shall have any claim against Equity, Equity's Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

9. **EXCLUSIONS**.

a. Equity reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

b. A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice. Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

c. Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

d. Equity or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

10. **PAYMENT OF EXPENSES**. Subject to Court approval, disbursements not exceeding $1 million for payment of reasonable Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to Equity, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, in the event this Settlement Agreement is

26

disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses have actually been expended or incurred. Any refund that becomes owed to Equity if this Settlement does not become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court. Other than as set forth in this Paragraph, Equity shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs. To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action and to apportion the costs of notice and administration in an equitable manner across the applicable settlements.

11. **THE SETTLEMENT FUND**.

a. The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b. After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation. Equity will take no position with respect to such plan of allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

27

c.	The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives.  Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

**12.	FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS.**

a.	Equity Residential understands that Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval of the Agreement, submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action; and/or (iii) and Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award").  Equity Residential understands that Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable service awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

b.	Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon final approval of the Settlement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their

assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Amount is required, then within fifteen (15) business days after receiving notice from Equity of such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction. Each law firm that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Attorneys' Fees and Expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this paragraph.

c.     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement.

d.     Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to

attorneys' fees, costs, or expenses or any other aspect of this Paragraph. No order of a court or modification or reversal on appeal of any order of the court concerning any attorneys' fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of Equity or the Releasees, under this Agreement.

**13.** **DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION**.

Non-monetary consideration by Equity Residential is a material term of the Settlement and shall include the following categories of cooperation and other non-monetary consideration, with all disputes concerning the same to be resolved by Judge Crenshaw and the U.S. District Court for the Middle District of Tennessee:

a. Equity Residential shall answer reasonable questions about Equity's structured data production.

b. Equity Residential shall make available one Equity witness for trial, should trial occur, accepting service of a trial subpoena and agreeing to waive any objections under Rule 45(c) relating to place of compliance.

c. Equity Residential shall use reasonable efforts to assist Plaintiffs in authenticating and providing foundation for the admissibility of documents and/or things produced in the Action, including but not limited to under Federal Rules of Evidence 803(6), 901, and 902(11), where Equity Residential can do so in good faith, by declarations or affidavits, or, if declarations or affidavits are not reasonably sufficient, through Equity's trial witness as provided in section (a) above.

d. Equity Residential will consider reasonable requests for additional relevant information about Plaintiffs' claims in the Action from Interim Co-Lead Counsel, taking into

30

account the information it has produced in discovery, and whether providing the requested information will be burdensome.

e.    For a period of five (5) years after the Court enters Final Judgment in this Action, Equity Residential agrees not to (a) require that any Settlement Class Member arbitrate any claims in this Action against Equity or against any alleged co-conspirator or co-Defendant, (b) argue that any Settlement Class Member is required to arbitrate claims in this Action against Equity or against any alleged co-conspirator or codefendant based on principles of estoppel, and (c) enforce, in this Action, any provisions in any agreements with one or more Settlement Class Members purporting to ban collective or class actions against Equity or any alleged co-conspirator or co-Defendant.

f.    For a period of five (5) years after the Court enters Final Judgment in this Action as to Equity Residential, as part of setting rental prices or generating rental pricing recommendations for any Equity Property, Equity shall not, within the United States and its territories: (i) disclose nonpublic data to any other property manager or property owner; (ii) solicit external nonpublic data from any other property manager or property owner; or (iii) use external nonpublic data obtained from any other property manager or property owner. Nothing in this Paragraph shall apply to communications between Equity and the property owner or manager of an Equity Property as it relates to the subject property, or any other Person providing services to that Equity Property for whom the disclosure of nonpublic data is necessary to provide such services. For avoidance of doubt, the restrictions set forth in this Paragraph apply to external nonpublic data and nonpublic data obtained through any form, whether directly or through an intermediary, including without limitation, call arounds or market surveys, in-person meetings, calls, text messages, chat communications, emails, surveys, spreadsheets, shared documents (*e.g.*,

31

Google documents and SharePoint documents), industry meetings (*e.g.*, user groups), online fora, private meetings, Revenue Management Solutions, or information-exchange service. Notwithstanding the foregoing, nothing in this Agreement shall prohibit Equity from obtaining or using public data for any purpose, including data collected or scraped from public websites, by Equity or a third party, discussing RMS product features or potential new RMS product features without reference to settings used at specific properties, or including in any disclosures submitted to the Securities and Exchange Commission any information that Equity determines in good faith is required to be disclosed, or the failure to include would constitute a material misstatement or omission,  under the Securities Act of 1933, the Securities Exchange Act of 1934, and any other securities laws applicable to Equity and regulations promulgated thereunder.

g.    Except for the rental prices previously set at any Property while that Property used RealPage Revenue Management Solutions and through to the Execution Date, Equity shall not, within the United States and its territories, use or access, as part of setting rental prices or generating pricing recommendations for any Equity Property, any nonpublic data (other than nonpublic data of the property owner or manager of the subject Equity Property), or data derived from RealPage that used or relied on such nonpublic data, in Equity's possession, custody, or control as of the Execution Date, acquired through any means.

14.    **TERMINATION AND RESCISSION**.

a.    *Rejection or Alteration of Settlement Terms.*  If (i) the Court refuses to grant preliminary or final approval of this Agreement or certify the Settlement Class without material modification or such grant or certification is set aside or affirmed with material modification on appeal; (ii) the Court does not enter final judgment dismissing all Released Claims with prejudice with respect to Equity or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs exceed

32

five percent of Settlement Class Members, and Equity elects to revisit the terms of this Settlement, then the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement automatically terminates, unless an extension is otherwise agreed upon by the Parties. For the avoidance of doubt, a material modification as provided for in the first sentence of this paragraph is limited to any order of the Court, or any order on appeal, that: (i) narrows or does not approve the scope of the release set forth in Paragraph 4; (ii) purports to impose additional material obligations on Equity; or (iii) declines to enter an order and final judgment that materially meets the requirements set forth in Paragraph 2(e) of this Settlement Agreement. Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement Agreement, Equity Residential and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination is appropriate, unless an extension is otherwise agreed upon by the Parties. A refusal to approve or modification or reversal on appeal based solely on or relating solely to the Settlement Class Counsel's fees and expenses award and/or Plan of Allocation shall not be deemed a refusal to approve or modification of the terms of this Settlement Agreement.

b. *Termination of Settlement*. In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Class Notice and costs of administration of the Settlement Fund, if any, shall be refunded by the escrow agent to Equity pursuant to written instructions from Equity's Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of the Execution Date, and without waiver of any positions asserted in the Action prior to that date. Except as

33

otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c.      Within fourteen (14) days after the deadline for submitting requests for exclusion in accordance with the requirements set forth in the Class Notice, Plaintiffs' Counsel (either directly or by and through the Claims Administrator) shall provide Equity's Counsel a final report that states (i) each person or entity (together with all identifying information that Equity provided to the Plaintiff's Counsel or the Claims Administrator or Plaintiffs' Counsel otherwise obtained) that requested exclusion, (ii) the date on which each request for exclusion was postmarked and received, and (iii) whether the request for exclusion was timely and validly made.

d.      Plaintiffs, the Settlement Class, Settlement Class Counsel, and Equity agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by Equity or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly or indirectly except in a proceeding to enforce or interpret this Settlement Agreement.  Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms.

15.      **COVENANT NOT TO SUE**.  The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in

34

whole or part, upon any of the Released Claims. Plaintiffs and Equity agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

16. **EQUITY RELEASE**. Pending the Effective Date, Equity agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the pending Action. Upon the Effective Date, Equity shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Equity, except for claims relating to the enforcement of the Settlement.

17. **NO ADMISSION OF LIABILITY**. Equity denies all allegations of wrongdoing in the Action. Nothing in this Settlement Agreement constitutes an admission by Equity as to the merits of the allegations made in the Action. The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence (i) of a violation of any statute or law or of any liability or wrongdoing whatsoever by Equity, or any Releasees, (ii) that any conduct restricted by Paragraphs 13(f) and 13(g) is or would be anticompetitive or a violation of any law, or (iii) of the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, and shall not be used against Equity or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against Equity or the Releasees.

18. **JOINT AND SEVERAL LIABILITY PRESERVED**. This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any

Defendant or alleged co-conspirator other than Equity and the Releasees. All claims against such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class. Equity's and the other Releasees' pricing of multifamily housing rental properties for the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than Equity and the other Releasees. Equity and the Releasees shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount and the amounts specifically agreed to in Paragraphs 5 and 10.

19. **CONFIDENTIALITY**. The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain confidential until publicly filed with the Court for approval. Nothing in Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel. Similarly, nothing in this Paragraph 19 shall prohibit Equity or any Releasee from making a public announcement of the settlement after the Execution Date. Following the Execution Date, Equity and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement.

20. **CAFA**. Equity Residential shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

21. **CONTINUING JURISDICTION**. The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this

36

Agreement or the applicability of this Agreement, including without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein, that cannot be resolved by negotiation and agreement by Plaintiffs and Equity Residential, including challenges to the reasonableness of any party's actions. Equity Residential will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction. The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22. **ENTIRE AGREEMENT**. This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and Equity Residential pertaining to this Settlement of the Action against Equity, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and Equity in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and Equity Residential and approved by the Court.

23. **BINDING EFFECT**. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and Equity. Without limiting the generality of the foregoing, upon the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than Equity Residential, which is a party to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

24. **EXECUTION IN COUNTERPARTS**.  This Agreement may be executed in counterparts by Plaintiffs and Equity Residential, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25. **NOTICE**.  Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

26. **PRIVILEGE**.  Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

27. **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**.  Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement.  Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

38

28.    **NO PARTY IS THE DRAFTER**.  This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for Equity Residential.  None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29.    **HEADINGS**.  The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30.    **OPPORTUNITY TO CURE**.  If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

31.    **GOVERNING LAW**.  All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles.

32.    **REASONABLE EXTENSIONS**.  Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

33.    **COUNSEL'S EXPRESS AUTHORITY**.  Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

Dated:  April 13, 2026

For the Plaintiffs:


_____

Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com



_____

Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com


_____

Swathi Bojedla
Hausfeld LLP
1200 17th St., NW, Suite 600
Washington, DC 20036
sbojedla@hausfeld.com

Dated:  April 13, 2026

For the Plaintiffs:

_____

Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com


_____
Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com



_____

Swathi Bojedla
Hausfeld LLP
1200 17th St., NW, Suite 600
Washington, DC 20036
sbojedla@hausfeld.com

Dated: April 13, 2026

For Equity Residential:


_____
Jeffrey L. Kessler
Winston & Strawn LLP
200 Park Ave.
New York, NY 10166
jkessler@winston.com

# EXHIBIT A-30
## Highmark

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

|  |  |
| --- | --- |
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-MD-3071<br>MDL No. 3071<br><br>This Document Relates to:<br>ALL CASES<br><br>Hon. Judge Waverly D. Crenshaw, Jr. |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of March 9, 2026 ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and Highmark Residential, LLC ("Highmark" and collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs are prosecuting claims against Highmark and other Defendants for allegedly conspiring to fix and inflate the price of multifamily rental housing across the country on their own behalf and on behalf of the Settlement Class in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[1] (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of Highmark's alleged participation in an unlawful conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for

---

[1] The actions currently centralized in MDL No. 3071 include Cases No. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

1

residential units nationwide and to exchange competitively sensitive information about rental pricing in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Second Amended Consolidated Class Action Complaint, ECF No. 530;

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from Highmark's alleged conduct;

WHEREAS, Highmark denies Plaintiffs' allegations, denies any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against it in the Action, and asserts that it has a number of valid defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against Highmark, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the Settlement Amount (defined below) and the value of the non-monetary consideration that Highmark has agreed to provide pursuant to this Agreement;

WHEREAS, Highmark, despite its belief that it is not liable for the claims asserted by Plaintiffs and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement and to put to rest with finality all claims that have been or could be asserted against Highmark, as set forth in Paragraph 4, herein;

2

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date does not occur;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to Highmark, subject to Court approval, on the following terms and conditions:

1.      **GENERAL DEFINITIONS**.  The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a.      "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

b.      "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

c.      "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

d.   "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

e.   "Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (Dkt. 530, re-filed across the consolidated cases at Dkt. 728).

f.   "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

g.   "Defendants" means those Defendants named in Plaintiffs' Complaint (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Property Trust, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive

4

Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

h. "Effective Date" shall have the meaning set forth in Paragraph 2 of this Settlement Agreement.

i. "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

j. "Execution Date" means the latest date of the execution of this Agreement by all Parties.

k. "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

l. "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses; (b) Notice and Administration Expenses; (c) any Fee and Expense Award; (d) any Service Awards to Plaintiffs; and (e) other fees and expenses, if any, authorized by the Court.

m. "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow

5

Agent (if any). All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

n. "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

o. "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

p. "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

q. "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

r. "Highmark's Counsel" means Quinn Emmanuel Urquhart & Sullivan, LLP.

s. "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes, individually and on behalf of Settlement Class Members.

t. "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey

6

Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

u. "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

v. "Preliminary Approval Order" and "Preliminary Approval" mean the order preliminarily approving the Settlement.

w. "Property" or "Properties" means all multifamily rental properties managed by Highmark that at any point during the Settlement Class Period were subject to a license for RealPage's Revenue Management Solutions' pricing recommendations for multifamily rental units.

x. "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

y. "Releasees" means Highmark and any and all of its past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, reinsurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind.

z. "Releasors" means all members of the Settlement Class, including Plaintiffs, each on behalf of themselves and their respective predecessors and successors; their current and former, direct and indirect parents, subsidiaries and affiliates; their present and former shareholders, partners, directors, officers, owners of any kind, principals, members, agents,

7

employees, contractors, attorneys, insurers, reinsurers, heirs, executors, administrators, devisees, representatives; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and any of their past, present and future agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions.

aa. "Revenue Management Solutions" or "RealPage's RMS" means Lease Rent Options ("LRO"), YieldStar, and/or AI Revenue Management ("AIRM").

bb. "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

cc. "Settlement Administrator" means Angeion Group, LLC appointed by the Court to disseminate Class Notice of settlement agreements reached in this matter as of the Execution Date (ECF 1313), or other professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of Settlement to the Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

dd. "Settlement Amount" shall be USD $7,500,000.00 (seven million five hundred thousand U.S. dollars) as specified in Paragraph 5.

ee. "Settlement Class" means the class defined in Paragraph 3 below.

ff. "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

gg. "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

hh.    "Settlement Class Period" means from October 18, 2018 until November 21, 2025.

ii.    "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

jj.    "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

kk.    "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Highmark with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

ll.    "Term Sheet" means the executed Settlement Term Sheet between Multi-Family Plaintiffs and Highmark Residential LLC, dated February 3, 2026.

2.    **APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST HIGHMARK**.

a.    Highmark shall use its reasonable best efforts in connection with Plaintiffs' Counsel's motions for approval of this Settlement and any related documents necessary to effectuate and implement the terms and conditions of this Settlement Agreement. The Parties will undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement.

9

b.      On or before March 30, 2026, absent agreement between the Parties or by order of Court, Plaintiffs shall submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

c.      Within thirty (30) calendar days after the Execution Date, or as soon thereafter as is practicable, Highmark shall supply Plaintiffs with the contact information of Settlement Class Members who rented multifamily housing units in Properties managed and/or owned by Highmark during the Settlement Class Period. The contact information shall be provided in a mutually agreeable electronic format. Plaintiffs shall use their reasonable best efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering this Settlement.  The Settlement Administrator and Plaintiffs may request from Highmark additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this Agreement, and Highmark will not unreasonably deny any such additional requests or fail to timely produce such data, if available in a manner that is reasonably accessible and maintained in the ordinary course of business.

d.      Plaintiffs shall submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion").  The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

e.      Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and Highmark shall agree upon, and such agreement will not be unreasonably withheld.  The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

10

i.      certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii.     approving finally this Settlement and its terms as being fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

iii.    directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4)

iv.     directing that Highmark shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Highmark (as provided for in Paragraph 16);

v.      directing that the Action (including the Complaint) be dismissed as to Highmark with prejudice, and except as provided for in this Agreement, without costs;

vi.     reserving to the Court the exclusive jurisdiction over this Settlement and this Agreement, including the interpretation, administration, and consummation of this Settlement, as well as over Highmark for its provision of cooperation pursuant to this Agreement;

vii.    determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to Highmark shall be final;

viii.     providing that Plaintiffs and Highmark have each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure; and

ix.     providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any (a) non-settling Defendant to contest certification of any other class proposed in the Action, or of (b) Highmark's right to contest certification of any other proposed class in the Action should this Agreement not become final as described in subsection (f) to this Paragraph; (2) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify any class in the Action or on the Court's rulings concerning any Defendant's motion; (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion; and (4) no Person may use the certification of the Settlement Class as an admission by Highmark or a Releasee about the merits of certifying a class in any other case.

f.     This Agreement shall become final and be deemed to have received final approval when (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 3, approved this Agreement under Federal Rule of Civil Procedure 23(e), and entered a final judgment dismissing the Action with prejudice as to Highmark without costs other than those provided for in this Agreement; and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to Highmark has expired in the Action or, if appealed, approval of this Agreement and the order and final judgment in the Action as to Highmark have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer

12

subject to further appeal or review (the "Effective Date"). It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and Highmark shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

**3.** **CERTIFICATION OF A SETTLEMENT CLASS**. Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any owner, manager and/or owner-operator (including to any division, subsidiary, predecessor, agent or affiliate of any owner, manager and/or owner-operator) on a property subject to a license for RealPage's Revenue Management Solutions, Lease Rent Options ("LRO"), YieldStar ("YS"), and/or AI Revenue Management ("AIRM") ("RealPage's RMS") at any time during the period of October 18, 2018 through November 21, 2025 (the "Settlement Class Period"). Specifically excluded from this Class are Opt-Outs; Defendants; any entity licensing RealPage's RMS, the officers or directors of any entity licensing RealPage's RMS and any entity in which any entity licensing RealPage's RMS has a controlling interest; any affiliate, legal representative, heir or assign of any entity licensing RealPage's RMS; federal, state, or local governments; states and their subdivisions, agencies, and instrumentalities; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action.

a. The Settlement Class does not limit class participation only to those who paid rents directly to a named Defendant in this Action.[2] Accordingly, as used in Paragraph 3, the terms "owner," "manager," and "owner-operator" shall have the following meaning: (i) "owner" refers to any natural person or entity that owned a multifamily rental property; (ii) "manager" means any natural person or entity engaged in management and/or day-to-day operations of multifamily rental

---

[2] Because the terms "Owner," "Manager," and "Owner-Operator" are capitalized and used in the Complaint to describe and categorize the named Defendants only, the Complaint's definitions do not apply to the Settlement Class in Paragraph 3.

properties; and (iii) "owner-operator" refers to any natural person or entity that owned and managed multifamily rental properties.

b. Highmark agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. If the Effective Date does not occur, Highmark shall have the full ability to oppose any motion for certification of a litigation class, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against Highmark.

4. **SETTLEMENT CLASS'S RELEASE**.

a. Upon the occurrence of the Effective Date and in consideration of the payment by Highmark of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph 13 of this Agreement, the Releasors shall be deemed to have, and by operation of the final judgment shall have, completely, finally and forever released, acquitted, waived, and discharged the Releasees from any and all claims, counterclaims, demands, actions, suits, causes of action, injuries, losses, or damages, whether class, individual, or otherwise in nature (including but not limited to any claims under the Sherman Act, Clayton Act, and/or any other federal and/or state antitrust claims), that the Releasors ever had, now have, or may ever have, directly, representatively (including asserted in a *parens patriae* capacity), derivatively or in any other capacity against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, arising from or in connection with any act or omission through the end of the Class Period arising from the factual predicate of the Action or that could have been alleged in the Action, including but not

limited to Defendants' alleged conspiracy to fix, stabilize, or increase the prices of multifamily residential leases or rents through the use of RealPage's RMS or Highmark's alleged participation in a conspiracy to exchange competitively sensitive information that impacted leases, prices, rents or occupancy for multifamily residential units, and any joint and several liability claim(s) related to or arising from the same factual predicate of this Action (the "Released Claims").[3] Released Claims shall not include: (a) claims asserted in the Action against (i) any Defendant other than Highmark, or (ii) any Person that at any point during the Settlement Class Period held an ownership interest of any kind in any Property for which Highmark provides or provided management services, even if such owners are Highmark's past, present, or future direct and indirect parent companies, subsidiary companies, affiliated companies, affiliated partnerships, or joint venturers, including all of their respective predecessors, and successors; (b) any claims wholly unrelated to the factual predicate of this Action and that are based on a landlord-tenant relationship or personal injury claim, including claims based on breach of contract, state landlord-tenant regulation, and negligence; (c) claims relating to the enforcement of the Settlement or its terms; (d) any claims of any Person that submits a request for exclusion and whose request is accepted by the Court; and (e) any claims that may be asserted against Persons that are not affiliates of Highmark but with whom Highmark or one or more of its affiliates has a partnership, joint venture, or co-investor

---

[3] The Release in Paragraph 4 does not bar an investigation or action, whether denominated as *parens patriae*, law enforcement, or regulatory, by state, quasi-state, or local governmental entity to vindicate sovereign or quasi-sovereign interests. Notwithstanding the foregoing, the release in Paragraph 4 shall bar (i) a claim brought by a state, quasi-state, or local government entity to the extent that such claim is based on a state, quasi-state, or local government entity's proprietary interests as a member of the Settlement Class that has received or is entitled to receive a financial recovery in this Action; and (ii) a claim (including claims asserted in a *parens patriae* capacity), whether denominated as seeking damages, restitution, unjust enrichment, or other monetary relief, brought by a state, quasi-state, or local government entity for monetary harm sustained by any person, including natural persons, businesses, other non-state, non-quasi-state, and non-local government entities or private parties, that are eligible to be members of the Settlement Class.

15

relationship. Upon the Effective Date, Plaintiffs and the Settlement Class shall be enjoined from prosecuting a Released Claim, whether or not such Plaintiff or Settlement Class Member executes and delivers a Claim Form.

b. In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein. Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

c. The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

d. The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by Highmark that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

16

**5.** **SETTLEMENT AMOUNT**.

a. Highmark agrees that an amount equal to USD $7,500,000, all in cash, will be paid on behalf of Highmark as the Settlement Amount in settlement of the Action, inclusive of Settlement Class recovery amounts, all compensatory restitution arising from the claims in this Action, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action. The payment described above shall constitute the total amount to be paid by Highmark in settlement of these claims. Highmark shall have no other financial obligations under the Settlement Agreement beyond payment of the Settlement Amount. The Settlement Amount shall be paid into an interest-bearing escrow account (the "Escrow Account") maintained by an escrow agent on behalf of the Settlement Class, within thirty (30) calendar days after the entry of an order preliminarily approving the Settlement Agreement. No later than the date of entry of an order preliminarily approving the Settlement Agreement Plaintiffs will provide wire instructions to Highmark for the purpose of Highmark paying or causing the Settlement Amount to be paid. The Parties agree and acknowledge that none of the Settlement Amount paid by Highmark under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

b. If Highmark (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified above, then Settlement Class Counsel, in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the

Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

c. The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement, and there will be no reversion of settlement funds to Highmark, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, if the Settlement becomes final. Upon the occurrence of the Effective Date, neither Highmark, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of Highmark's insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

**6.** **ESCROW ACCOUNT**. An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel. The Escrow Account shall be administered under the Court's continuing supervision and control.

a. Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion

18

thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b. The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

c. Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

d. The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

19

e. In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), within 30 calendar days, Plaintiffs and/or Settlement Class Counsel shall reimburse to Highmark via wire transfer all funds remaining in the Escrow Account at that time, less any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante.  Highmark shall provide Settlement Class Counsel with wire transfer instructions for this transfer within 14 calendar days of receiving notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective.  Settlement Class Counsel shall ensure that the Settlement Administrator also provides Highmark full and complete information related to the Escrow Account to enable Highmark to determine whether any taxes may be owed on the funds returned to Highmark.

7. **TAX TREATMENT**.

a. The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and Highmark, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation §1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations.

It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

b. For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treas. Reg. §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

c. All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, Highmark and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses. Plaintiffs and Highmark agree to cooperate with the Escrow Agent, each other,

21

and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

d. Highmark, Releasees, and Highmark's Counsel shall have no liability for or obligations relating to Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each Highmark, Releasees, and Highmark's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

e. Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

**8.** **CLASS ADMINISTRATION AND NOTICE**. Settlement Class Counsel has retained Angeion Group, LLC as Settlement Administrator responsible for all aspects of settlement administration in this Action. Such Settlement Administrator shall be approved by the Court in connection with this Settlement, and, if approved, overseen by Settlement Class Counsel. Highmark will not have any involvement in the claims administration process, or the plan of allocation of the settlement proceeds. Settlement Class Counsel, in their sole discretion, may replace, and/or retain one or more additional and/or alternate Settlement Administrator(s). Such Settlement Administrator(s) shall be approved by the Court in connection with this Settlement, and, if approved, overseen by Settlement Class Counsel. Highmark will not have any involvement in the selection of the Settlement Administrator(s). The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by

22

Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement. In no event shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

a. At no time and under no circumstances shall Plaintiffs, Highmark, Settlement Class Counsel, Plaintiffs' Counsel, Highmark's Counsel, the Releasors, or the Releasees have any liability for acts or omissions of the Settlement Administrators or their agents, including for claims of wrongful or negligent conduct.

b. Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs. The Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs. The procedures for submitting claims shall conform to the procedures outlined below.

c. Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form. Each Claim Form must be signed under the penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

d. All Claim Forms must be received by the Settlement Administrator within the time prescribed in the plan for Notice as approved by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net

23

Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted. No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e.      Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

f.      Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

g.      Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h.      All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies

relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process. All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein. The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

i. No Person shall have any claim against Highmark, Highmark's Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

9. **EXCLUSIONS**.

a. Highmark reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

b. A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice. Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

25

c. Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

d. Highmark or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

10. **PAYMENT OF EXPENSES**. Subject to Court approval, disbursements not exceeding $1 million for payment of reasonable Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to Highmark, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, in the event this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses have actually been expended or incurred. Any refund that becomes owed to Highmark if this Settlement does not become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court. Other than as set forth in this Paragraph, Highmark shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs. To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action and shall apportion the costs of notice and administration in an equitable manner across the applicable settlements.

26

11. **THE SETTLEMENT FUND**.

a. The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b. After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation. Highmark will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

c. The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives. Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

12. **FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS**.

a. Highmark understands that Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval of the Agreement, submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action; and/or (iii) and Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the

27

"Fee and Expense Award").  Highmark understands that Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable Service Awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

b.　Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon final approval of the Settlement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, then within fifteen (15) business days after receiving notice from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction.  In the event this Settlement Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to Highmark via wire transfer all attorneys' fees withdrawn from the Escrow Account and all funds remaining in the Escrow Account at that time, less any reasonable unpaid expenses incurred by Settlement Class Counsel in attempting to effectuate the Settlement contemplated herein and/or performing their obligations under this

28

Agreement, and the Parties' respective positions shall be returned to the status quo ante. Each law firm that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the attorneys' Fees and Expense Award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this Paragraph.

c. The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or Service Awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement.

d. Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph. No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of Highmark or the Releasees, under this Agreement.

**13. DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION**.

a. *Cessation of Litigation*: Plaintiffs and the Settlement Class have ceased and shall continue to cease all litigation activities against Highmark and its current and former

employees, and unless undertaken pursuant to Paragraph 13b below, shall not pursue further discovery from Highmark or its current or former employees. Highmark has ceased and shall continue to cease all litigation activities against Plaintiffs in the Action. Nothing in this Settlement Agreement, however, prevents Highmark from taking any action to defend itself in any other parallel proceeding related to RealPage concerning the same factual predicate of this Action. This provision shall not be construed to prohibit Plaintiffs from seeking appropriate discovery from other Defendants.

b. *Cooperation*: Reasonable cooperation by Highmark is a material term of the Settlement Agreement and shall include the following categories of cooperation, with all disputes concerning the same to be resolved by Judge Crenshaw and the U.S. District Court for the Middle District of Tennessee, but only after good-faith efforts to resolve any such disputes before Phillips ADR through mediation have been exhausted:

i. Highmark shall make one then-current, non-executive employee available as a witness for trial, should trial occur, accepting service of a trial subpoena and agreeing to waive any objections under Rule 45(c) relating to place of compliance.

ii. Highmark's document production is complete. Highmark will not unreasonably deny Plaintiffs a re-production of documents identified as having technical errors or which Plaintiffs are otherwise unable to access or review, and which were produced as responsive in this Action.

iii. Within thirty (30) calendar days of February 3, 2026, the date of the latest signature executing the Term Sheet between the Parties, Highmark shall produce to Plaintiffs:

1.      all deposition transcripts of Highmark personnel (and related exhibits) from the case captioned *District of Columbia v. RealPage, Inc.*, Case No. 2023-CAB-6762, subject to the notice provisions of the applicable protective order; and

2.      all documents produced by Highmark in *District of Columbia v. RealPage, Inc.*, Case No. 2023-CAB-6762.

iv.      With respect to discovery made after the execution of the Term Sheet between the Parties, in other parallel actions related to the same factual predicate of this Action, within 30 calendar days Highmark shall produce to Plaintiffs:

1.      all deposition transcripts of Highmark personnel (and related exhibits), subject to the notice provisions of the applicable protective orders; and

2.      all documents produced by Highmark in response to party discovery in those cases.

v.      Highmark shall use reasonable efforts to assist Plaintiffs in authenticating documents and/or things produced in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations or affidavits, or, if declarations or affidavits are not reasonably sufficient, depositions, hearings, and/or at trial(s) as may be necessary for the Action; and

vi.      Highmark will consider reasonable requests for additional relevant information about Plaintiffs' claims in the Action from Interim Co-Lead Counsel, taking into account the information it has or will produce in discovery, and whether providing the requested information will be burdensome.

c.      *Arbitration Non-Enforcement.* For a period of five (5) years after the Court enters final judgment in this Action, and limited to matters arising out of the factual predicate of

31

this Action, Highmark agrees not to (i) require that any member of the Settlement Class ("Class Member") arbitrate any claims in this Action against Highmark or against any alleged co-conspirator or co-defendant; (ii) add a provision to any agreements with any Class Member requiring any claims against Highmark in this Action to be arbitrated; (iii) argue that any Class Member or Class Members are required to arbitrate claims in this Action against Highmark or against any alleged co-conspirator or co-defendant based on principles of estoppel; and (iv) enforce any provisions in any agreements with one or more Class Members purporting to ban collective or class actions against Highmark in this Action.

        d.      *RealPage Data Sharing.*

        i.      From the Execution Date and through to a period of three (3) years after the Court enters final judgment in this Action, Highmark shall not:

        1.      Provide to RealPage, Inc., nonpublic data concerning lease transactions or occupancy that Highmark knows or should know may be used in any part to generate pricing recommendations issued to RealPage's RMS users other than Highmark;

        2.      Knowingly allow RealPage, Inc., to share Highmark's nonpublic data concerning lease transactions or occupancy, whether aggregated and/or anonymized or not, with other multifamily owners and managers through RealPage's RMS; or

        3.      Contract with RealPage, Inc. or any other company providing revenue management services, to use a revenue management service or program that Highmark knows or should have known uses non-public data concerning lease transactions or occupancy provided to RealPage, Inc. (or another vendor) by Highmark's competitors to generate rent recommendations for Highmark.

ii. For the avoidance of doubt, nothing in the Settlement Agreement shall inhibit Highmark or its affiliates from using their own data for internal purposes.

iii. Settlement Class Counsel may consent, or Highmark may petition the Court to delete or modify Paragraph 13d of this Settlement Agreement based upon changed circumstances.

iv. Notwithstanding anything else to the contrary in the Settlement Agreement, in the event that RealPage, Inc. enters into a consent decree with the United States to resolve allegations advanced in *United States v. RealPage, Inc.*, Case No. 1:24-cv-00710 (M.D.N.C.), or a consent decree to resolve any other similar government action, Highmark may use any revenue management software product provided by RealPage, Inc., (or any other company providing revenue management services) that complies with the terms of the consent decree(s), and Highmark's use of such products shall not be deemed a violation of the Settlement Agreement.

14. **TERMINATION AND RESCISSION**.

a. *Rejection or Alteration of Settlement Terms.* If (i) the Court refuses to grant preliminary or final approval of this Agreement or certify the Settlement Class or such grant or certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to Highmark or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs exceed ten percent of Settlement Class Members and Highmark elects, in its sole discretion, to revisit the terms of this Settlement, then the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement automatically terminates, unless an extension is otherwise agreed upon by the Parties. Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement Agreement, Highmark and Plaintiffs agree to discuss in good faith

within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination is appropriate, unless an extension is otherwise agreed upon by the Parties. A refusal to approve or modification or reversal on appeal based solely on or relating solely to the Settlement Class Counsel's Fees and Expenses Award and/or Plan of Allocation shall not be deemed a refusal to approve or modification of the terms of this Settlement Agreement.

b. *Termination of Settlement.* In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Highmark's per capita share of Class Notice and costs of administration of the Settlement Fund, if any, shall be refunded by the escrow agent to Highmark pursuant to written instructions from Highmark's Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of February 3, 2026, the date of the latest signature on the executed Term Sheet between the parties, and without waiver of any positions asserted in the Action prior to that date. Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c. Plaintiffs, the Settlement Class, Settlement Class Counsel, and Highmark agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by Highmark or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly or indirectly except in a

34

proceeding to enforce or interpret this Settlement Agreement. Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms.

15. **COVENANT NOT TO SUE**. The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims. Plaintiffs and Highmark agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

16. **HIGHMARK RELEASE**. Pending the Effective Date, Highmark agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the pending Action. Upon the Effective Date, Highmark shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Highmark in the Action, except for claims relating to the enforcement of the Settlement. No claims unrelated to the institution, prosecution, or settlement of the claims against Highmark will be released by Highmark. For avoidance of doubt, nothing in this Settlement Agreement shall alter Highmark's legal rights arising as a part of the landlord-tenant relationship that do not arise from and/or are wholly unrelated to the factual predicate of this Action.

17. **NO ADMISSION OF LIABILITY**. Highmark denies liability and participation in the conspiracy alleged in the Action. The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it,

shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, and shall not be used, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding.

18. **JOINT AND SEVERAL LIABILITY PRESERVED**.  This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than Highmark and the Releasees.  All claims against such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class.  Highmark's and the other Releasees' pricing of multifamily housing rental properties for the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than Highmark and the other Releasees.  Highmark and the Releasees shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount, including the amounts specifically agreed to in Paragraphs 5 and 10.

19. **CONFIDENTIALITY**.  The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain confidential until publicly filed with the Court for approval.  Nothing in Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel.  Similarly, nothing in this Paragraph 19 shall prohibit Highmark or any Releasee from making general disclosures as necessary to comply with the securities laws and other obligations, as well as in its

public filings.  Following the Execution Date, Highmark and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement.

20.  **CAFA**.  Highmark shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

21.  **CONTINUING JURISDICTION**.   The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Highmark, including challenges to the reasonableness of any party's actions. Highmark will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction.  The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.  The Parties agree to mediate any disputes related to the Settlement Agreement before Phillips ADR before seeking relief from the Court.

22.  **ENTIRE AGREEMENT**.  This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and Highmark pertaining to this Settlement of the Action against Highmark, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and Highmark in connection herewith.  This Agreement may not be modified or amended except in writing executed by Plaintiffs and Highmark and approved by the Court.

23.  **BINDING EFFECT**.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and Highmark.  Without limiting the generality of the

37

foregoing, upon the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than Highmark, which is a party to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

24. **EXECUTION IN COUNTERPARTS**. This Agreement may be executed in counterparts by Plaintiffs and Highmark, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25. **NOTICE**. Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

26. **PRIVILEGE**. Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

27. **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**. Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement. Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28. **NO PARTY IS THE DRAFTER**. This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for Highmark. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29. **HEADINGS**. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30. **OPPORTUNITY TO CURE**. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

31. **GOVERNING LAW**. All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles.

39

**32.     REASONABLE EXTENSIONS**.  Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

**33.     COUNSEL'S EXPRESS AUTHORITY**.  Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

Case 3:23-md-03071     Document 1398-2     Filed 05/14/26     Page 170 of 468 PageID #: 22139

Dated: March 6, 2026

For the Plaintiffs:

_____

Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com


_____

Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com


_____

Swathi Bojedla
Hausfeld LLP
1200 17th St., NW, Suite 600
Washington, DC 20036
sbojedla@hausfeld.com

41

Dated: March 9, 2026

**For Highmark:**

By: _____

Printed Name: __Matthew Smith__

Title: _____CEO_____


**APPROVED AS TO FORM:**

DATED: March 9, 2026

By: _____

Printed Name:  Mike Bonanno

Title:   Partner, Quinn Emanuel Urquhart & Sullivan, LLP

42

# EXHIBIT A-31
## Lincoln

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-MD-3071<br>MDL No. 3071<br><br>This Document Relates to:<br>ALL CASES<br><br>Hon. Judge Waverly D. Crenshaw, Jr. |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of May 4, 2026, ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and the residential division of Lincoln Property Company ("Lincoln"), which is now Willow Bridge Property Company LLC ("Willow Bridge") and collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs[1] are prosecuting claims against Willow Bridge and other Defendants for allegedly conspiring to fix and inflate the price of multifamily rental housing across the country on their own behalf and on behalf of the Settlement Class in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071 (the "Action");

---

[1] For the purpose of this Settlement, "Plaintiffs" refers to named Plaintiffs Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes in the following actions centralized in MDL No. 3071: 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; 3:23-cv-00979 and 3:25-cv-01347.

1

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of Willow Bridge's alleged participation in an unlawful conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for residential units nationwide and to exchange competitively sensitive information about rental pricing in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Second Amended Consolidated Class Action Complaint, ECF No. 530;

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from Willow Bridge's alleged conduct;

WHEREAS, Willow Bridge denies Plaintiffs' allegations, denies any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against it in the Action, and asserts that it has a number of valid defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against Willow Bridge, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the Settlement Amount (defined below) and the value of the non-monetary relief that Willow Bridge has agreed to provide pursuant to this Agreement;

WHEREAS, Willow Bridge, despite its belief that it is not liable for the claims asserted by Plaintiffs and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and

2

protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement;

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date does not occur; and

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement.

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to Willow Bridge, subject to Court approval, on the following terms and conditions:

1.     **GENERAL DEFINITIONS**.  The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a.     "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

b.     "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

3

c. "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

d. "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

e. "Competitively Sensitive Information" means property-specific data or information (whether past, present, or prospective) that is not readily accessible to the general public which, individually or when aggregated with such data or information from other properties, (1) could be reasonably used to determine current or future rental supply, demand, or pricing at a property or of any property's units, including but not limited to executed rents, rental price concessions or discounts, guest traffic, guest applications, occupancy or vacancy, lease terms or lease expirations; (2) relates to the Owner's or Manager's or Owner-Operator's use of settings or user-specified parameters within Revenue Management Products with respect to such property or properties; or (3) relates to the Owner's or Manager's or Owner-Operator's rental pricing amount, formula, or strategy, including rental price concessions or discounts, in each case, with respect to such property or properties.

f. "Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (Dkt. 530, re-filed across the consolidated cases at Dkt. 728).

g. "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

h. "Defendants" means those Defendants named in Plaintiffs' Complaint (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management

4

Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Property Trust, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co./Willow Bridge Property Company LLC; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

  i. "Effective Date" shall have the meaning set forth in Paragraph 2 of this Settlement Agreement.

  j. "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

5

k. "Execution Date" means the latest date of the execution of this Agreement by all Parties.

l. "External Nonpublic Data" means all Nonpublic Data from any Person other than Willow Bridge. It does not include data from Willow Bridge managed properties or Properties.

m. "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

n. "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses; (b) Notice and Administration Expenses; (c) any Fee and Expense Award; (d) any Service Awards to Plaintiffs; and (e) other fees and expenses, if any, authorized by the Court.

o. "Nonpublic Data" means any Competitively Sensitive Information that is not Public Data.

p. "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow Agent (if any). All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

6

q.    "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

r.    "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

s.    "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

t.    "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

u.    "Willow Bridge's Counsel" means DLA Piper LLP.

v.    "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes, individually and on behalf of Settlement Class Members.

w.    "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

7

x. "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

y. "Preliminary Approval Order" and "Preliminary Approval" mean the order preliminarily approving the Settlement.

z. "Property" or "Properties" means all multifamily rental properties managed and/or owned by Lincoln and then Willow Bridge during the Class Period that at any point during the Settlement Class Period were subject to a license for RealPage's Revenue Management Solutions pricing recommendations for multifamily rental units.

aa. "Owner(s)" means any Person that (directly or indirectly) owns or controls a multifamily rental property or that Person's agent.

bb. "Manager(s)" means any Person who manages a multifamily rental property or that Person's agent.

cc. "Owner-Operator" means any Person that both, owns and manages a multifamily rental property or that Person's agent.

dd. "Public Data" means information on a rental unit's asking price (including publicly offered concessions), amenities, and availability that is readily accessible to the general public, such as on the property's website, at a physical building, in brochures, or on an internet listing service. Public Data includes information on a rental unit's asking price, concessions, amenities, and availability provided by a Manager, Owner, or Owner-Operator to any natural person who reasonably presents himself as a prospective renter. Public Data does not include information on a rental unit's asking price, concessions, amenities, and availability that is communicated by a Manager, Owner, or Owner-Operator to any external Manager, Owner, or

8

Owner-Operator unaffiliated with the property or properties in question (i.e., an Owner, Manager, or Owner-Operator that does not own or manage the property within which the rental unit in question is housed). Public Data does not include any Competitively Sensitive Information obtained through communications between competitors.

ee. "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

ff. "Releasees" means Lincoln Property Company and Willow Bridge Property Company LLC and any and all of their respective past, present, and future, direct and indirect, parent companies (including holding companies), subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind, specifically including, but not limited to, these entities: Willow Bridge Property Company, LLC, Willow Bridge Apartment Management, L.P., Willow Bridge National LP, Willow Bridge Eastern Management Corporation, Willow Bridge Management Inc., WB Condominium Group SE L.P., Willow Bridge Company National LLC, and WB Southeast I Inc. Releasees will not include any other Defendant or any other Defendants' direct and indirect, parent companies (including holding companies), subsidiary companies, affiliated companies, affiliated partnerships or any third-party holding ownership interest in any Properties.

gg. "Releasors" means Plaintiffs, each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, or through

9

the Releasors in any capacity whatsoever, with such claiming parties to include any and all of Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

hh. "Revenue Management Solutions" or "RMS" means RealPage's Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM").

ii. "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

jj. "Settlement Administrator" means Angeion Group, LLC appointed by the Court to disseminate Class Notice of settlement agreements reached in this matter as of the Execution Date (ECF 1313), or other professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of Settlement to the Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

kk. "Settlement Amount" shall be USD $12,000,000 (12 million dollars) as specified in Paragraph 5.

ll. "Settlement Class" means the class defined in Paragraph 3 below.

mm.     'Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

nn.     "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

oo.     "Settlement Class Period" means from October 18, 2018 until November 21, 2025.

pp.     "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

qq.     "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

rr.     "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Willow Bridge with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

2.     **APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST WILLOW BRIDGE**.

a.     Willow Bridge shall use its reasonable best efforts in connection with Plaintiffs' Counsel's motions for approval of this Settlement and any related documents necessary to effectuate and implement the terms and conditions of this Settlement Agreement.  Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or

11

appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement.

b.  On or before May 15, 2026, absent agreement between the Parties or by order of Court, Plaintiffs shall submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

c.  Willow Bridge has already produced structured data to Plaintiffs containing, among other things, the contact information of Settlement Class Members in Willow Bridge's possession who rented multifamily housing units in Properties managed and/or owned by Willow Bridge during the Settlement Class Period. Within forty-five (45) calendar days after the Preliminary Approval, or as soon thereafter as is practicable, Willow Bridge shall, to the extent not already produced to Plaintiffs, use reasonable efforts to supplement this production and supply Plaintiffs with the additional contact information of Settlement Class Members in Willow Bridge's possession who rented multifamily housing units in Properties managed and/or owned by Willow Bridge through the end of the Settlement Class Period. The contact information shall be provided in a mutually agreeable electronic format. Plaintiffs shall use their reasonable best efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering this Settlement.  The Settlement Administrator and Plaintiffs may request from Willow Bridge additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this Agreement, and Willow Bridge will not unreasonably deny any such additional requests or fail to timely produce such data, if available.

d.  Plaintiffs shall submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion").  The Notice Motion

shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

e.     Unless agreed to by the Parties or by Order of Court, within forty-five (45) business days after the deadline for submitting requests for exclusion in accordance with the requirements set forth in the Class Notice for Opt-Outs, or after the Court accepts any late-filed requests for exclusion, whichever is later, Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and Willow Bridge shall agree upon, and such agreement will not be unreasonably withheld.  The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

i.     certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii.     approving finally this Settlement and its terms as being fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

iii.     directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4);

iv.     directing that Willow Bridge shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Willow Bridge (as provided for in Paragraph 16);

v.        directing that the Action (including the Complaint) be dismissed as to Willow Bridge, formerly Lincoln, with prejudice, and except as provided for in this Agreement, without costs;

vi.        reserving to the Court the exclusive jurisdiction for any suit, action, proceeding, or dispute arising out of or relating to this Settlement and Agreement, including the interpretation, administration, and consummation of this Settlement, as well as over Willow Bridge for its provision of cooperation pursuant to this Agreement;

vii.        determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to Willow Bridge shall be final;

viii.        providing that Plaintiffs and Willow Bridge have each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure; and

ix.        providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any (a) non-settling Defendant to contest certification of any other class proposed in the Action, or of (b) Willow Bridge's right to contest certification of any other proposed class in the Action should this Agreement not become final as described in subsection (f) to this Paragraph; (2) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify any class in the Action or on the Court's rulings concerning any Defendant's motion; and (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion; and no person may use the certification of the

14

Settlement Class as an admission by Willow Bridge or Releasees about the merits of certifying a class in any other case.

f.     This Agreement shall become final and be deemed to have received final approval when (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 3, approved this Agreement under Federal Rule of Civil Procedure 23(e), and entered a final judgment dismissing the Action with prejudice as to Willow Bridge without costs other than those provided for in this Agreement; and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to Willow Bridge described in (i) hereof has expired in the Action or, if appealed, approval of this Agreement and the order and final judgment in the Action as to Willow Bridge have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review (the "Effective Date").  It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.  On the Execution Date, Plaintiffs and Willow Bridge shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

**3.     CERTIFICATION OF A SETTLEMENT CLASS**.  Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any owner, manager and/or owner-operator (including to any division, subsidiary, predecessor, agent or affiliate of any owner, manager and/or owner-operator) on a property subject to a license for RealPage's Revenue Management Solutions, Lease Rent Options ("LRO"), YieldStar ("YS"), and/or AI Revenue Management ("AIRM") ("RealPage's RMS") at any time during the period of October 18, 2018 through November 21, 2025 (the "Settlement Class Period").  Specifically excluded from this Class are Opt-Outs; Defendants; any entity licensing RealPage's RMS, the officers or directors of any entity licensing RealPage's RMS and any entity in which

any entity licensing RealPage's RMS has a controlling interest; any affiliate, legal representative, heir or assign of any entity licensing RealPage's RMS; federal, state, or local governments; states and their subdivisions, agencies, and instrumentalities; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action.

Willow Bridge agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. If the Effective Date does not occur, Willow Bridge shall have the full ability to oppose any motion for certification of a litigation class, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against Willow Bridge.

**4.** **SETTLEMENT CLASS'S RELEASE**.

a. Upon the occurrence of the Effective Date and in consideration of the payment by Willow Bridge of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph 13 of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees from any and all claims (including but not limited to any Sherman Act, Clayton Act, and/or state antitrust claims), counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, restitution, disgorgement, interest, costs, expenses, attorneys' fees, fines, or other payment of money, or for injunctive, declaratory or other equitable relief, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had or now have directly, representatively (including asserted in a *parens patriae* capacity), derivatively or in any other capacity against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or

16

unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, arising from or in connection with any act or omission through the end of the Class Period relating to Willow Bridge managed properties or Properties and, arising from the factual predicate of the Action, including but not limited to Willow Bridge's alleged participation in a conspiracy to fix or inflate the price of multifamily residential lease prices through the use of RealPage, Inc.'s Revenue Management Solutions including Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM"), Willow Bridge's alleged participation in a conspiracy to exchange Competitively Sensitive Information, and any joint and several liability claim(s) against Willow Bridge related to or arising from the same factual predicate of this Action (the "Released Claims"). Released Claims shall not include: (i) claims asserted against any Defendant or co-conspirator other than Willow Bridge, or any Owner of any of the Properties other than Willow Bridge; (ii) any claims wholly unrelated to the allegations in the Complaint or that may exist as a result of a landlord-tenant relationship between the Parties, including claims based on breach of contract, state landlord-tenant regulation, negligence, and personal injury; (iii) claims relating to the enforcement of the Settlement or its terms; (iv) claims of any person or entity that submits a request for exclusion and whose request is accepted by the Court; or (v) claims that may be asserted against persons or entities that are not affiliates of Willow Bridge's but with whom Willow Bridge or one or more of its affiliates has a partnership, joint venture, or co-investor relationship.

b. The release in Paragraph 4(a) does not bar an investigation or action, whether denominated as *parens patriae*, law enforcement, or regulatory, by a state, quasi-state, or local governmental entity to vindicate sovereign or quasi-sovereign interests. Notwithstanding the foregoing, the release in Paragraph 4(a) shall bar (1) a claim brought by a state, quasi-state,

or local government entity to the extent that such claim is based on a state, quasi-state, or local government entity's proprietary interests as a member of the Settlement Class that has received or is entitled to receive a financial recovery in this Action and (2) a claim (including claims asserted in a *parens patriae* capacity), whether denominated as seeking damages, restitution, unjust enrichment, or other monetary relief, brought by a state, quasi-state, or local government entity for monetary harm sustained by natural persons, businesses, other non-state, non-quasi-state, and non-local government entities or private parties themselves that are eligible to be members of the Settlement Class.

c. In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein. Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

d. The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

e. The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or

different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by Willow Bridge that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

**5.** **SETTLEMENT AMOUNT.**

a. Willow Bridge agrees that an amount equal to USD $ 12,000,000 (twelve million U.S. dollars), all in cash, will be paid on behalf of Willow Bridge as the Settlement Amount in settlement of the Action, inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action. The payment described above shall constitute the total amount to be paid by Willow Bridge in settlement of these claims. The Settlement Amount shall be paid into an interest-bearing escrow account (the "Escrow Account") maintained by an escrow agent on behalf of the Settlement Class, within forty-five (45) business days of Plaintiffs providing all necessary information for their escrow agent after the Execution Date. The Parties agree and acknowledge that none of the Settlement Amount paid by Willow Bridge under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

b. If Willow Bridge (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified above, then Settlement Class Counsel, in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and

19

enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

c. The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement, and there will be no reversion of settlement funds to Willow Bridge, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, if the Settlement becomes final. Upon the occurrence of the Effective Date, none of Willow Bridge, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of Willow Bridge's insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

6. **ESCROW ACCOUNT**. An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel. The Escrow Account shall be administered under the Court's continuing supervision and control.

a. Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion

thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b. The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

c. Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

d. The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

e.     In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to Willow Bridge via wire transfer all funds remaining in the Escrow Account at that time, less any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante.  Willow Bridge shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective.  Settlement Class Counsel shall ensure that the Settlement Administrator also provides Willow Bridge full and complete information related to the Escrow Account to enable Willow Bridge to determine whether any taxes may be owed on the funds returned to Willow Bridge.

7.     **TAX TREATMENT**.

a.     The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and Willow Bridge, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation §1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations.

It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

b. For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treas. Reg. §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

c. All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, Willow Bridge and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses. Plaintiffs and Willow Bridge agree to cooperate with the Escrow Agent, each

23

other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

d. Willow Bridge, Releasees, and Willow Bridge's Counsel shall have no liability for or obligations relating to Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each Willow Bridge, Releasees, and Willow Bridge's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

e. Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

**8. CLASS ADMINISTRATION AND NOTICE**. Settlement Class Counsel has retained Angeion Group, LLC as Settlement Administrator responsible for all aspects of settlement administration in this Action. Such Settlement Administrator shall be approved by the Court in connection with this Settlement, and, if approved, overseen by Settlement Class Counsel. Willow Bridge will not have any involvement in the claims administration process, or the plan of allocation of the settlement proceeds. Settlement Class Counsel, in their sole discretion, may replace, and/or retain one or more additional and/or alternate Settlement Administrator(s). Such Settlement Administrator(s) shall be approved by the Court in connection with this Settlement, and, if approved, overseen by Settlement Class Counsel. Willow Bridge will not have any involvement in the selection of the Settlement Administrator(s). The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by

24

Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement. In no event shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

a.      At no time and under no circumstances shall Plaintiffs, Willow Bridge, Settlement Class Counsel, Plaintiffs' Counsel, Willow Bridge's Counsel, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

b.      Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs. The Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs. The procedures for submitting claims shall conform to the procedures outlined below.

c.      Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form. Each Claim Form must be signed under the penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

d.      All Claim Forms must be received by the Settlement Administrator within the time prescribed in the plan for Notice as approved by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net

25

Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted. No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e. Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

f. Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

g. Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h. All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies

relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process. All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein. The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

i.      No Person shall have any claim against Willow Bridge, Willow Bridge's Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

9.      **EXCLUSIONS**.

a.      Willow Bridge reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

b.      A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice. Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

c. Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

d. Willow Bridge or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

10. **PAYMENT OF EXPENSES**. Subject to Court approval, disbursements for payment of Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to Willow Bridge, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, in the event this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses have actually been expended or incurred. Any refund that becomes owed to Willow Bridge if this Settlement does not become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court. Other than as set forth in this Paragraph, Willow Bridge shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs. To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action and to apportion the costs of notice and administration in an equitable manner across the applicable settlements.

28

11.  **THE SETTLEMENT FUND**.

a.  The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b.  After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation.  Willow Bridge will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court.  In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

c.  The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class' respective attorneys, experts, advisors, agents, or representatives.  Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

12.  **FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS**.

a.  Willow Bridge understands that Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval of the Agreement, submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action; and/or (iii) and Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the

29

"Fee and Expense Award"). Willow Bridge understands that Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable service awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

b. Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon final approval of the Settlement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Amount is required, then within fifteen (15) business days after receiving notice from Willow Bridge of such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction. Each law firm that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Attorneys' Fees and Expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this paragraph.

c.      The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement.

d.      Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph.  No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of Willow Bridge or the Releasees, under this Agreement.

**13.      DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION.**

a.      Cooperation by Willow Bridge is a material term of the Settlement and shall include the following categories of cooperation, with all disputes concerning the same to be resolved by Judge Crenshaw and the U.S. District Court for the Middle District of Tennessee:

i.      Willow Bridge represents that it has completed its production of ESI and structured data in the Action;

ii.      Willow Bridge shall use reasonable efforts to answer reasonable questions concerning its document productions and will not unreasonably deny Plaintiffs a re-production of documents identified as having technical errors or which Plaintiffs are otherwise unable to access or review (i.e. encrypted, password-protected, illegible), and which were produced as responsive in this Action;

iii.      Willow Bridge represents that it has already produced to Plaintiffs any documents produced to any other plaintiffs, or any federal, state, or other domestic regulator in this Action. This includes all deposition transcripts of Willow Bridge's personnel and related exhibits from parallel government actions;

iv.      Willow Bridge shall make available one witness for trial, should trial occur, accepting service of a trial subpoena and agreeing to waive any objections under Rule 45(c) of the Federal Rules of Civil Procedure relating to place of compliance;

v.      Willow Bridge shall use reasonable efforts to authenticate documents and/or things produced in the Action where the facts indicate that the documents and/or things at issue are authentic by declarations or affidavits under Federal Rule of Evidence 803(6) and/or 902(11).

vi.      Unless ordered by a court having jurisdiction or upon agreement from Willow Bridge, under no circumstances shall Plaintiffs or Plaintiffs' Counsel produce documents or information obtained from Willow Bridge to any Person outside of this litigation;

b.      *Arbitration Non-Enforcement*. Willow Bridge agrees not to contest an individual's participation in the Settlement Class based on the existence of an arbitration clause or provision purporting to ban collective or class actions against Willow Bridge in their respective lease agreement, or otherwise. Willow Bridge further agrees that it will not require that any

32

Settlement Class Member is required to arbitrate their claims against any alleged co-conspirator or co-Defendant that relate to the same factual predicate of this Action. Notwithstanding the foregoing, Willow Bridge may enforce all waivers against Opt-Outs and individuals who assert claims unrelated to factual predicate of this Action.

c.      *RealPage Data Sharing*. Within thirty (30) calendar days from the Execution Date and for a period of five (5) years thereafter, as part of setting rental prices or generating rental pricing recommendations offered to existing or prospective renters for any Willow Bridge Property, Willow Bridge shall not (i) disclose Willow Bridge's Nonpublic Data to any other Manager, Owner, or Owner Operator, in any form, whether the Nonpublic Data is aggregated and anonymized or not; (ii) solicit External Nonpublic Data from any other Manager, Owner, or Owner-Operator; or (iii) use External Nonpublic data obtained from another Manager, Owner, or Owner Operator in connection with providing a rental rate recommendation for Willow Bridge Properties. For avoidance of doubt, the restrictions set forth in this Paragraph apply to External Nonpublic Data and Nonpublic Data obtained or solicited through any form, whether directly or through an intermediary, including without limitation, call arounds or market surveys, in-person meetings, calls, text messages, chat communications, emails, surveys, spreadsheets, shared documents (e.g., Google documents and SharePoint documents), industry meetings (e.g., user groups), online fora, private meetings, use of RealPage Revenue Management Solution(s), or information-exchange service. Nothing in this Paragraph shall apply to communications between Willow Bridge and the Owner of a (i) Willow Bridge managed property or Property as it relates to the subject property or (ii) another Willow Bridge managed property or Property that is owned by the same Owner, including with any other Person providing services to that/those Willow Bridge

33

managed property/ies or Property/ies owned by the same Owner for whom the disclosure of Nonpublic Data is necessary to provide such services.

d.        Notwithstanding the foregoing Paragraph, nothing in this Settlement Agreement shall prohibit Willow Bridge from (1) disclosing or soliciting External Nonpublic Data about a particular property for the sole purpose of evaluating or effectuating a bona fide sale or purchase or development of the property, as long as any External Nonpublic Data received is not used to set rental prices or generate rental pricing recommendations; or (2) disclosing Nonpublic Data about a particular property to a replacement Manager as part of a bona fide transfer of management responsibilities for that property; or (3) receiving External Nonpublic Data about a particular property from a departing Manager as part of a bona fide transfer of management responsibilities for that property to Willow Bridge.

e.        Except for the rental prices previously set at any of the Properties while those Properties used RealPage Revenue Management Solutions, through the Execution Date, Willow Bridge shall not, within the United States and its territories, use or access, as part of setting rental prices or generating pricing recommendations for any Willow Bridge Property, any Nonpublic Data (other than Nonpublic Data of the Owner of the subject Willow Bridge Property), or data derived from RealPage that used or relied on such Nonpublic Data, in Willow Bridge's possession, custody, or control as of the Execution Date, acquired through any means.

f.        *Use of RealPage RMS*.  For the avoidance of doubt, nothing herein shall prohibit Willow Bridge from licensing or using a RealPage Revenue Management Solution at any of its Properties that complies with the terms of the agreed Proposed Final Judgement between the United States and RealPage filed in *United States et al. v. RealPage et al.* (currently docketed as No. 1:24-cv-00710 in the Middle District of North Carolina.

**14.** **TERMINATION AND RESCISSION**.

a. *Rejection or Alteration of Settlement Terms.* If (i) the Court refuses to grant preliminary or final approval of this Agreement or certify the Settlement Class or such grant or certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to Willow Bridge or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs exceed five percent of Settlement Class Members and Willow Bridge, in its sole discretion, elects to revisit the terms of this Settlement, then the Parties shall have sixty calendar (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement automatically terminates, unless an extension is otherwise agreed upon by the Parties. Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement Agreement, Willow Bridge and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination is appropriate, unless an extension is otherwise agreed upon by the Parties. A refusal to approve or modification or reversal on appeal based solely on or relating solely to the Settlement Class Counsel's fees and expenses award and/or Plan of Allocation shall not be deemed a refusal to approve or modification of the terms of this Settlement Agreement.

b. *Termination of Settlement.* In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Willow Bridge's per capita share of Class Notice and costs of administration of the Settlement Fund, if any, shall be refunded by the escrow agent to Willow Bridge pursuant to written instructions from Willow Bridge's Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of the Effective Date of this Settlement Agreement, and without waiver of

any positions asserted in the Action prior to that date.  Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

        c.      Plaintiffs, the Settlement Class, Settlement Class Counsel, and Willow Bridge agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by Willow Bridge or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly or indirectly except in a proceeding to enforce or interpret this Settlement Agreement.  Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms.

       **15.**    **COVENANT NOT TO SUE**.  The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims. Plaintiffs and Willow Bridge agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

       **16.**    **WILLOW BRIDGE RELEASE**.  Pending the Effective Date, Willow Bridge agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the pending Action. Upon the

Effective Date, Willow Bridge shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Willow Bridge, except for claims relating to the enforcement of the Settlement.

17. **NO ADMISSION OF LIABILITY**. The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by Willow Bridge, or any Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, and shall not be used against Willow Bridge or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against Willow Bridge or the Releasees.

18. **JOINT AND SEVERAL LIABILITY PRESERVED**. This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than Willow Bridge and the Releasees. All claims against such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class. Willow Bridge's and the other Releasees' pricing of multifamily housing rental properties for the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than Willow Bridge and the other Releasees. Willow Bridge and the Releasees shall not be responsible for any payment to Plaintiffs or the Settlement

Class other than the Settlement Amount and the amounts specifically agreed to in Paragraphs 5 and 10.

19.     CONFIDENTIALITY.   The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain confidential until publicly filed with the Court for approval.  Nothing in Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel.  Similarly, nothing in this Paragraph 19 shall prohibit Willow Bridge or any Releasee from making general disclosures as necessary to comply with the securities laws and other obligations, as well as in its public filings.  Following the Execution Date or the date on which Plaintiffs submit a Quarterly Settlement Report to the Court, listing Willow Bridge as a settled party, whichever is earlier, Willow Bridge and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement. Notwithstanding the foregoing, Willow Bridge is expressly permitted to inform its affiliates and their respective officers, employees, auditors, its insurance companies, and other third-parties who have a contractual right to know about the settlement. Plaintiffs agree that they will not provide any information learned or obtained from Willow Bridge to other plaintiffs, the Department of Justice, or state Attorneys General litigating or investigating conduct related to or arising from the same factual predicate of the Action absent a court order, subpoena, civil investigative demand, or other compulsory process.

20.     CAFA.  Willow Bridge shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

21.     CONTINUING JURISDICTION.   The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have

exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Willow Bridge, including challenges to the reasonableness of any party's actions. Willow Bridge will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction. The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22. **ENTIRE AGREEMENT**. This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and Willow Bridge pertaining to this Settlement of the Action against Willow Bridge, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and Willow Bridge in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and Willow Bridge and approved by the Court.

23. **BINDING EFFECT**. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and Willow Bridge. Without limiting the generality of the foregoing, upon the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than Willow Bridge, which is a party to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

24. **EXECUTION IN COUNTERPARTS**. This Agreement may be executed in counterparts by Plaintiffs and Willow Bridge, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25. **NOTICE**. Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

26. **PRIVILEGE**. Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

27. **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**. Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement. Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28. **NO PARTY IS THE DRAFTER**. This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for Willow Bridge. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29. **HEADINGS**. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30. **OPPORTUNITY TO CURE**. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

31. **GOVERNING LAW**. All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles.

32. **REASONABLE EXTENSIONS**. Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

33. **COUNSEL'S EXPRESS AUTHORITY**. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

41

Dated: May 4, 2026

For the Plaintiffs:

Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com

Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com

Swathi Bojedla
Hausfeld LLP
1200 17th St., NW, Suite 600
Washington, DC 20036
sbojedla@hausfeld.com

Case 3:23-md-03071     Document 1398-2     Filed 05/14/26     Page 215 of 468 PageID #: 22184

Dated: May 4, 2026

For Willow Bridge Property Company LLC:

_Scott Wilder_ (signature)

Scott Wilder, CPM
President Property Management

# EXHIBIT A-32
## MAA

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-MD-03071<br>MDL No. 3071<br><br>This Document Relates to:<br>ALL CASES<br><br>Judge Waverly D. Crenshaw, Jr. |

## AMENDED SETTLEMENT AGREEMENT[1]

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of January 26, 2026 ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class," as defined below), and Mid-America Apartment Communities, Inc., and Mid-America Apartments, L.P. (together, "MAA," and collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs have brought claims on their own behalf and on behalf of the Settlement Class against MAA and other Defendants in the matter captioned *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[2] (the "Action");

WHEREAS, Plaintiffs allege they were injured as a result of MAA's purported participation in a conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for residential units in the United States and to exchange competitively sensitive information about

---

[1] For the avoidance of doubt, this Amended Settlement Agreement supersedes the prior Settlement Agreement the Parties signed on January 26, 2026.

[2] The actions currently centralized in MDL No. 3071 include Case Nos. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

1

rental pricing in violation of Section 1 of the Sherman Act (15 U.S.C. §1) and the state laws identified in the Second Amended Consolidated Class Action Complaint, ECF No. 530;

WHEREAS, MAA denies each and every one of Plaintiffs' claims, denies any and all allegations of wrongdoing in the Action and all charges of wrongdoing or liability against it arising out of the conduct, statements, or omissions alleged, or that could have been alleged, in the Action, and has asserted a number of defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, assisted by the Court-appointed mediator, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and after carefully considering the claims made by Plaintiffs on behalf of themselves and the Settlement Class, and the possible legal and factual defenses thereto, have concluded that it is in the best interests of Plaintiffs and the Settlement Class to enter into this Settlement Agreement with MAA to avoid the uncertainties and risks of further litigation, and that the settlement set forth herein is fair, reasonable, and adequate, and in the best interests of the Settlement Class;

WHEREAS, MAA, despite its belief that it is not liable for the claims asserted by Plaintiffs and its belief that it has strong defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement and to put to rest with finality all claims that have been or could be asserted against MAA based on the conduct alleged in the Complaint, as more particularly set out below;

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date does not occur;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW, THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the undersigned, on behalf of MAA and the Plaintiffs, on behalf of themselves and the members of the Settlement Class, that all existing and potential claims that were raised or could have been raised in this Action arising from the conduct alleged in the Complaint, be settled, compromised, and dismissed on the merits with prejudice as to MAA and the other Releasees, subject to Court approval, on the following terms and conditions:

1.      **GENERAL DEFINITIONS**.  The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a.      "Affiliates," whether capitalized or not, means, with respect to a Person, all other entities which, whether directly or indirectly: (1) are controlled by that Person; (2) are under common control with that Person; or (3) control that Person.  The term "control" as used in this definition means the possession, directly or indirectly, of the power, individually or jointly with another entity, to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting rights, by contract, or otherwise. For the avoidance of doubt, employees of an entity that licensed RealPage RMS are not Affiliates and are not excluded from

3

the Class, provided they are not officers or directors of, or do not have a controlling interest in, an entity that licensed RealPage RMS.

     b.    "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

     c.    "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

     d.    "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

     e.    "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

     f.    "Competitively Sensitive Information" means property-specific data or information (whether past, present, or prospective) which, individually or when aggregated with such data or information from other properties, (1) could be reasonably used to determine current or future rental supply, demand, or pricing at a property or of any property's units, including but not limited to executed rents, rental price concessions or discounts, guest traffic, guest applications, occupancy or vacancy, lease terms or lease expirations; (2) relates to Properties' use of settings or user-specified parameters within Revenue Management Products with respect to such property or properties; or (3) relates to Properties' rental pricing amount, formula, or strategy, including rental price concessions or discounts, in each case, with respect to such property or properties.

     g.    "Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (Dkt. 530, re-filed across the consolidated cases at Dkt. 728).

4

h.     "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

i.     "Defendants" means those Defendants named in Plaintiffs' Complaint— Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Property Trust, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC.

j.     "Effective Date" shall have the meaning set forth in Paragraph 2(f) of this Settlement Agreement.

k. "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

l. "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

m. "MAA's Counsel" means Mayer Brown LLP and Baker, Donelson, Bearman, Caldwell & Berkowitz, PC.

n. "MAA Non-Subsidiary Joint Ventures" means, individually and collectively, Post 1499 Massachusetts, LLC, 1499 Massachusetts Avenue, Inc., 1499 Massachusetts Holding, LLC, and Post Biltmore, LLC.

o. "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of: (a) Taxes and any Tax Expenses; (b) Notice and Administration Expenses; (c) any Fee and Expense Award; (d) any Service Awards to Plaintiffs; and (e) other fees and expenses, if any, authorized by the Court.

p. "Nonpublic Data" means any Competitively Sensitive Information that is not Public Data.

q. "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized

Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow Agent (if any). All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

r. "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

s. "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

t. "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

u. "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her, or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

v. "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes, individually and on behalf of Settlement Class Members.

w. "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey

Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

x.     "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

y.     "Preliminary Approval Order" and "Preliminary Approval" mean the order preliminarily approving the Settlement.

z.     "Properties" means all multifamily rental properties managed and/or owned (in whole or in part) by MAA (or one of its Subsidiaries, MAA Non-Subsidiary Joint Ventures or Affiliates) in the United States that at any point during the Settlement Class Period were subject to a license to use RealPage's Revenue Management Solutions for multifamily rental units.

aa.     "Public Data" means information on a rental unit's asking price (including publicly offered concessions), amenities, and availability that is readily accessible to the general public, such as on the property's website, at a physical building, in brochures, or on an internet listing service. Public Data includes information on a rental unit's asking price, concessions, amenities, and availability provided by a Property to any natural person who reasonably presents himself as a prospective renter. Public Data does not include any Competitively Sensitive Information obtained through communications between competitors.

bb.     "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

cc.     "Releasees" means jointly and severally, and individually and collectively: (i) Mid-America Apartment Communities, Inc., Mid-America Apartments, L.P., and any and all of their respective past, present, and future, direct and indirect, Subsidiaries and Affiliates, (ii) the

8

MAA Non-Subsidiary Joint Ventures, (iii) any and all predecessors, successors, assigns, insurers, and attorneys of the foregoing, and (iv) any and all present, former, and future principals, officers, directors, managers, employees, agents, shareholders, stockholders, members, partners, equity holders, interest holders, and representatives of the foregoing (including any and all heirs, legatees, executors, administrators, beneficiaries, and representatives thereof), but solely in their capacities as such with respect to an entity listed in subpart (i), (ii), and (iii) above. However, Releasees does not include any Defendant other than MAA.

dd. "Releasors" means: (i) Plaintiffs, (ii) each and every Settlement Class Member, jointly and severally, and individually and collectively, and (iii) all of their respective predecessors, successors, heirs, administrators, and assigns. Releasors release Released Claims on behalf of themselves and on behalf of any party claiming by, for, under, or through any and all Releasors (including, without limitation, in a *parens patriae* capacity), with such claiming parties to include, without limitation, any and all past, present, and future, direct and indirect, parent companies, subsidiary companies, partnerships, joint ventures, and affiliates, including all of their respective predecessors, successors, and assigns, and any and all present, former, and future principals, partners, officers, directors, managers, employees, agents, shareholders, stockholders, equity holders, interest holders, members, representatives, insurers, attorneys, heirs, legatees, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other individuals or entities with whom any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

ee. "Revenue Management Solutions," "Revenue Management Products," or "RMS" means RealPage's software, including software as a service, that generates rental price or rental pricing recommendations for multifamily rental properties including Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM"), and any other RealPage product and/or service that has access to, is informed by, and/or incorporates RMS, including RMS that use competitors' Competitively Sensitive Information, for the purpose of generating rental prices of rental pricing recommendations.

ff. "RealPage" means RealPage, Inc., a Delaware corporation with its headquarters in Richardson, Texas.

gg. "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

hh. "Settlement Administrator" means Angeion Group, LLC, appointed by the Court to disseminate Class Notice of settlement agreements reached in this matter as of the Execution Date (Dkt. 1313), or other professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of Settlement to the Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

ii. "Settlement Amount" shall be USD $53,000,000.00 (fifty-three million U.S. dollars) as specified in Paragraph 5.

jj. "Settlement Class" means the class defined in Paragraph 3 below.

kk. "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

10

ll.     "Settlement Class Member" means each Person that is a member of the Settlement Class who has not validly elected to be excluded from the Settlement Class in accordance with the procedures established by the Court.

mm.     "Settlement Class Period" means from October 18, 2018 through the date of Preliminary Approval.

nn.     "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

oo.     "Subsidiary" means, with respect to a Person, any corporation, partnership, joint venture, limited liability company, or other entity of which such Person owns, directly or indirectly, greater than fifty percent (50%) of the capital stock, partnership interests, membership interests, or other equity interests that are generally entitled to vote for the election of the board of directors or other governing body of such corporation, partnership, joint venture, limited liability company, or other legal entity or to vote as a general partner or managing member thereof.

pp.     "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

qq.     "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon MAA with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

11

**2.** **APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST MAA**.

a. MAA shall use its reasonable best efforts in connection with Plaintiffs' Counsel's motions for approval of this Settlement and any related documents necessary to effectuate and implement the terms and conditions of this Settlement Agreement. Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement.

b. Plaintiffs shall, on or before March 31, 2026, absent agreement between the Parties or by Order of Court, submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement and staying litigation of the Action (against MAA only) pending final approval of this Settlement.

c. Within thirty (30) calendar days after Preliminary Approval, or as soon thereafter as is practicable, MAA shall supply Plaintiffs with reasonably available records containing the contact information of Settlement Class Members who rented any multifamily housing unit at a Property. The contact information shall be provided in a mutually agreeable electronic format. Plaintiffs shall use their reasonable best efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering this Settlement. The Settlement Administrator and Plaintiffs may request from MAA additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this Agreement, and MAA will not unreasonably deny any such additional requests or fail to produce such data within a reasonable time period, if available.

d.      Plaintiffs shall submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion").  The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

e.      Within forty-five (45) business days after the deadline for submitting requests for exclusion in accordance with the requirements set forth in the Class Notice, or after the Court accepts any late-filed requests for exclusion, whichever is later, Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and MAA shall agree upon, and such agreement will not be unreasonably withheld, conditioned, or delayed.  The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

i.      certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii.      approving finally this Settlement and its terms as being fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

iii.      directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims;

iv.      directing that MAA shall release the Releasors from all claims and causes of action that arise out of, or relate in any way to, the institution, prosecution, or settlement of the claims against MAA (as provided for in Paragraph 16);

13

v. directing that the Action (including the Complaint) be dismissed as to MAA with prejudice, and except as provided for in this Agreement, without costs;

vi. reserving to the Court the exclusive jurisdiction over this Settlement and this Agreement, including the interpretation, administration, and consummation of this Settlement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein, as well as over MAA for its provision of cooperation pursuant to this Agreement;

vii. determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to MAA shall be final; and

viii. providing that: (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any (a) non-settling Defendant to contest certification of any other class proposed in the Action, or of (b) MAA's right to contest certification of any proposed class in the Action should this Agreement not become final as described in subsection (f) to this Paragraph; (2) the Court's findings in the order and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify any class in the Action or on the Court's rulings concerning any motion filed by any Defendant (other than to enforce the terms of this Settlement or the order and final judgment described in this Paragraph); (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any motion filed by any Defendant (other than to enforce the terms of this Settlement or the order and final judgment described in this Paragraph); and (4) no Person may use the certification of the Settlement Class as an admission by MAA or any

14

Releasee as to the merits, propriety, or sufficiency of a putative class in any other litigation or adjudicative proceeding or in support of any motion to certify a putative class in any other litigation or adjudicative proceeding.

f.       This Agreement shall become final and be deemed to have received final approval when: (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 3, approved this Agreement under Federal Rule of Civil Procedure 23(e), and entered a final judgment dismissing the Action with prejudice as to MAA without costs other than those provided for in this Agreement; and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to MAA described in (i) hereof has expired in the Action or, if appealed, approval of this Agreement and the order and final judgment in the Action as to MAA have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review (the "Effective Date").  It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.  On the Execution Date, Plaintiffs and MAA shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

3.       **CERTIFICATION OF A SETTLEMENT CLASS**.  Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any owner, manager and/or owner-operator (including to any division, subsidiary, predecessor, agent or affiliate of any owner, manager and/or owner-operator) on a property subject to a license for RealPage's Revenue Management Solutions, Lease Rent Options ("LRO"), YieldStar ("YS"), and/or AI Revenue Management ("AIRM") ("RealPage RMS") at any time during the period of October 18, 2018 through November 21, 2025 (the "Settlement Class Period").  Specifically excluded from

15

this Class are Opt-Outs; Defendants; any entity licensing RealPage's RMS, the officers or directors of any entity licensing RealPage's RMS and any entity in which any entity licensing RealPage's RMS has a controlling interest; any affiliate, legal representative, heir or assign of any entity licensing RealPage's RMS; federal, state, or local governments; states and their subdivisions, agencies, and instrumentalities; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action.

MAA agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. If the Effective Date does not occur, MAA shall have the full ability to oppose any motion for certification of a litigation class, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against MAA.

4.      **SETTLEMENT CLASS'S RELEASE**.

a.      Upon the occurrence of the Effective Date and in consideration of the payment by MAA of the Settlement Amount and the non-monetary relief set forth in Paragraph 13 of this Agreement, Releasors completely, finally, and forever release, acquit, and discharge the Releasees from any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages whenever incurred, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation, claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise in nature, that the Releasors, or any of them, ever had, now have, or hereafter can, shall, or may have, directly, representatively (including asserted in a *parens patriae* capacity), derivatively or in any other capacity against the Releasees, or any one of them, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, in law or equity, arising in any way from or in connection with any act or omission

16

relating to or arising from the factual predicate of the Action or which could have been asserted in the Action, including but not limited to claims relating to or arising from Defendants' alleged conspiracy to fix or inflate the prices of multifamily residential leases through the use of RealPage RMS, Asset Optimization products including but not limited to Business Intelligence, Performance and Market Analytics and benchmarking solutions, or otherwise, and any claim that Defendants improperly exchanged competitively sensitive information, including, without limitation, claims arising under common law, federal or state antitrust, unfair competition, unfair or deceptive practices, price discrimination, unitary pricing, trade practice, or civil conspiracy law, including without limitation the Sherman Antitrust Act, 15 U.S.C. §1 *et seq.* (the "Released Claims"). Notwithstanding the foregoing, the Released Claims shall not include: (i) any claims unrelated to the conduct alleged in the Complaint that may exist based on breach of contract, state landlord-tenant regulation, negligence, or personal injury; or (ii) claims relating to the enforcement of the Settlement or its terms. The reservation of claims in the foregoing sentence does not impair or diminish the right of the Releasees to assert any and all defenses to such claims.

      b.     The release in Paragraph 4(a) does not bar an investigation or action, whether denominated as *parens patriae*, law enforcement, or regulatory, by a state, quasi-state, or local governmental entity to vindicate sovereign or quasi-sovereign interests. The release in Paragraph 4(a) shall, however, bar: (1) a claim brought by a state, quasi-state, or local government entity to the extent that such claim is based on a state, quasi-state, or local government entity's proprietary interests as a member of the Settlement Class that has received or is entitled to receive a financial recovery in this Action; and (2) a claim (including claims asserted in a *parens patriae* capacity), whether denominated as seeking damages, restitution, unjust enrichment, or other monetary relief, brought by a state, quasi-state, or local government entity for monetary harm

17

sustained by individuals, businesses, other non-state, non-quasi-state, and non-local government entities or private parties themselves that are eligible to be members of the Settlement Class.

c.    In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein.  The Parties intend that the Class Notice and the order and final judgment described in Paragraph 2(e) shall reflect this waiver.  Section 1542 of the California Civil Code provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

d.    The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

e.    The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by MAA that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims and the Releasors shall not be entitled to modify, challenge, or set aside this Agreement, either in whole or in part, by reason thereof.

18

**5.**     <u>SETTLEMENT AMOUNT</u>.

a.     The Settlement Amount represents an all-in cash settlement amount, inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the Released Claims. The Settlement Amount shall constitute the total amount to be paid by MAA in settlement of these claims and pursuant to this Agreement, and MAA shall not be required to make any other payments for any other reason pursuant to this Agreement. MAA shall pay or caused to be paid a total of $53,000,000.00 (fifty-three million U.S. dollars), all-in cash into an interest-bearing escrow account (the "Escrow Account") maintained by an escrow agent on behalf of the Settlement Class. MAA will pay or cause to be paid half of the Settlement Amount ($26,500,000.00) within the latter of (i) March 2, 2026, (ii) thirty (30) calendar days after the Execution Date, or (iii) thirty (30) calendar days after Plaintiffs have provided all necessary wire instructions after the Execution Date ("First Settlement Payment"). MAA shall pay or cause to be paid the remaining half of the Settlement Amount ($26,500,000.00) by the latter of (a) May 16, 2026; or (b) four (4) business days after filing of the Preliminary Approval Motion. The Parties agree and acknowledge that none of the Settlement Amount paid by MAA under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind and that the Settlement Amount is for restitution and/or remediation purposes.

b.     If MAA (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified above, then Settlement Class Counsel, in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce

19

the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

c.    The Settlement is non-recapture, i.e., it is not a claims-made settlement, and there will be no reversion of settlement funds to MAA, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, if the Settlement becomes final.  Upon the occurrence of the Effective Date, neither MAA, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of MAA's insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

**6.    ESCROW ACCOUNT**.  An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel.  The Escrow Account shall be administered under the Court's continuing supervision and control.

a.    Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class.  To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court.  Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs.  The Escrow Agent shall not disburse the Settlement Fund, or any portion

20

thereof, except as provided in this Settlement Agreement, or upon Order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b. The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the U.S. Government, or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the U.S. Government, or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

c. Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for: (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

d. The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses; (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

e.     In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to MAA via wire transfer all funds remaining in the Escrow Account at that time, less any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante.  Such reimbursement shall be made, with all accrued interest through the date of reimbursement, within thirty (30) calendar days of the Agreement being disapproved, disallowed, terminated, rescinded, or otherwise failing to become effective for any reason (including after appeal).  MAA shall promptly provide Settlement Class Counsel with wire transfer instructions to effectuate this transfer upon written notice by Plaintiffs and/or Settlement Class Counsel.  Settlement Class Counsel shall ensure that the Settlement Administrator also provides MAA full and complete information related to the Escrow Account to enable MAA to determine whether any taxes may be owed on the funds returned to MAA.

7.     **TAX TREATMENT**.

a.     The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created.  In addition, the Escrow Agent and, as required, Plaintiffs and MAA, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation

§1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

b.      For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treas. Reg. §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

c.      All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, MAA and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes

and Tax Expenses. Plaintiffs and MAA agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

        d.      MAA, Releasees, and MAA's Counsel shall have no liability for, or obligations relating to, Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of MAA, Releasees, and MAA's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

        e.      Plaintiffs and Plaintiffs' Counsel shall have no liability for, or obligations with regard to, Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

        **8.**      **CLASS ADMINISTRATION AND NOTICE**. Settlement Class Counsel has retained Angeion Group, LLC, as Settlement Administrator responsible for all aspects of settlement administration in this Action. Such Settlement Administrator shall be approved by the Court in connection with this Settlement, and, if approved, overseen by Settlement Class Counsel. MAA will not have any involvement in the claims administration process, or the plan of allocation of the settlement proceeds. Settlement Class Counsel, in their sole discretion, may replace, and/or retain one or more additional and/or alternate Settlement Administrator(s). Such Settlement Administrator(s) shall be approved by the Court in connection with this Settlement, and, if approved, overseen by Settlement Class Counsel. MAA will not have any involvement in the selection of the Settlement Administrator(s). The Settlement Administrator(s) will be selected

solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement. In no event shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

a.      At no time and under no circumstances shall Plaintiffs, MAA, Settlement Class Counsel, Plaintiffs' Counsel, MAA's Counsel, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

b.      Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs. The Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs. The procedures for submitting claims shall conform to the procedures outlined below.

c.      Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form. Each Claim Form must be signed under the penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

d.      All Claim Forms must be received by the Settlement Administrator within the time prescribed in the plan for Notice as approved by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its

25

discretion: (i) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted. No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e.        Each Claim Form shall be submitted to, and reviewed by, the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

f.        Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

g.        Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h.      All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of, and decided by, the Court, if they cannot otherwise be resolved during the claims process. All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein. The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

i.      No Person shall have any claim against MAA, MAA's Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

**9.      EXCLUSIONS AND OBJECTIONS.**

a.      MAA reserves all legal rights and defenses with respect to any potential Settlement Class Member that validly requests exclusion.

b.      A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice. Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each

27

person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

c.     Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

d.     MAA or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

e.     Any Person who has not requested exclusion from the Settlement Class and who objects to the settlement set forth in this Settlement Agreement may appear in person or through counsel, at that Person's own expense, at the Fairness Hearing to present any evidence or argument that the Court deems proper and relevant.  However, no such Person shall be heard, and no papers, briefs, pleadings, or other documents submitted by any such Person shall be received and considered by the Court, unless such Person properly submits a written objection that includes: (i) a notice of intention to appear; (ii) proof of membership in the Settlement Class; and (iii) the specific grounds for the objection and any reasons why such Person desires to appear and be heard, as well as all documents or writings that such Person desires the Court to consider.  As soon as practicable, Settlement Class Counsel shall cause all written objections to be filed with the Court. Any Person that fails to object in the manner prescribed herein shall be deemed to have waived his, her, or its objections and will forever be barred from making any such objections in the Action, unless otherwise excused for good cause shown, as determined by the Court.

f.     Within fourteen (14) calendar days after the deadline for submitting requests for exclusion in accordance with the requirements set forth in the Class Notice, or after

28

the Court accepts any late-filed requests for exclusion, whichever is later, Plaintiffs' Counsel (either directly or by and through the Settlement Administrator) shall provide MAA's Counsel a final report that states: (i) each person or entity (together with all identifying information that MAA provided to the Plaintiff's Counsel or the Settlement Administrator or Plaintiffs' Counsel otherwise obtained) that requested exclusion; (ii) the date on which each request for exclusion was postmarked and received; and (iii) whether the request for exclusion was timely and validly made.

10. **PAYMENT OF EXPENSES**. Subject to Court approval, disbursements not exceeding $1 million for payment of reasonable Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to MAA, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, in the event this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses have actually been expended or incurred. Any refund that becomes owed to MAA under this Paragraph if this Settlement does not become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court. Any refund will be given on a pro rata basis. For example, if there were $106 million in total settlements (MAA's share would be 50%) and $1 million were spent on Notice and Administration Expenses, MAA would receive a refund of $500,000. Other than as set forth in this Paragraph, MAA shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs. To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable,

to disseminate notice of this Settlement together with notice of any other settlements in the Action and shall apportion the costs of notice and administration in an equitable manner across the applicable settlements.

**11.    THE SETTLEMENT FUND.**

a.    The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b.    After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation. MAA will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

c.    The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs' or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives. Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

**12.    FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS.**

a.    MAA understands that Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval of the Agreement, submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund; (ii) reimbursement of expenses

and costs incurred in connection with prosecuting the Action; and/or (iii) Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award").

b. Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon final approval of the Settlement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Amount is required, then within fifteen (15) business days of such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction. Each law firm that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Attorneys' Fees and Expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this Paragraph.

31

c.      The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement.

d.      Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs, or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph.  No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of MAA or the Releasees under this Agreement.

## 13.      DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION.

a.      The Parties, through their respective counsel, shall cease all litigation activities against each other related to the Action unless and until: (a) the Court preliminarily or finally denies approval of this Agreement; or (b) the Settlement Agreement is terminated in accordance with the terms of this Agreement.

b.      *Cooperation*.  Cooperation by MAA is a material term of the Settlement and shall include the following categories of cooperation.

32

     i.      MAA shall answer reasonable questions concerning its structured data;

     ii.      MAA shall answer reasonable questions concerning any identified deficiencies in its document productions and will not unreasonably deny Plaintiffs a re-production of documents identified as having technical errors or which Plaintiffs are otherwise unable to access or review (i.e., encrypted, password-protected, illegible), and which were produced as responsive in this Action;

     iii.      MAA shall produce to Plaintiffs any documents produced to any other plaintiffs, or any federal, state, or other domestic regulator, concerning the subject matter of the Action or any allegations within the same factual predicate of the Action within ten (10) business days of the Execution Date, with any documents produced to such entities after execution of this Agreement to be produced ten (10) business days after their production to such other plaintiffs or regulators.  This includes all deposition transcripts of MAA's personnel and related exhibits from parallel government actions, if any;

     iv.      MAA shall make one then-current employee available as a witness for trial, should trial occur, accepting service of a trial subpoena and agreeing to waive any objections under Rule 45(c) relating to place of compliance; and

     v.      MAA shall use reasonable efforts to assist Plaintiffs in authenticating documents and/or things produced in the Action by MAA where the facts indicate that the documents and/or things at issue are authentic, whether by declarations or affidavits, or, if declarations or affidavits are not reasonably sufficient, depositions, hearings, and/or at trial(s) as may be necessary for the Action.

33

vi.     Notwithstanding any other provision in this Agreement, MAA shall have no obligation to produce attorney-client privileged communications, attorney work-product, communications with any regulatory agency or governmental body, or any communications protected by applicable settlement privileges, including Federal Rule of Evidence 408. MAA may assert the work product doctrine, the attorney-client privilege, the common interest privilege, the joint defense privilege, obligations under applicable data privacy laws or regulations, and/or applicable privilege or protection with respect to any cooperation materials provided or requested under this Settlement Agreement. To the extent MAA withholds or redacts materials provided pursuant to this Paragraph based on any of the foregoing privileges, protections, laws, or regulations, MAA shall inform Plaintiffs' Counsel. Plaintiff's Counsel may request a privilege log as to any materials withheld, and MAA will consider the request in good faith.

vii.    Unless ordered by a court having jurisdiction or upon agreement from MAA, under no circumstances shall Plaintiffs or Plaintiffs' Counsel produce documents or information obtained from MAA to any Person.

viii.   Any dispute or controversy arising out of, or relating to, the cooperation, including the scope of any privilege, shall be discussed first among counsel for the Parties, and if that discussion fails to resolve the dispute, shall be submitted to the Court for resolution. Each Party shall be responsible for its own attorneys' fees and costs in association with any such submission.

c.      *Data Sharing*. Beginning on the date the Court grants Preliminary Approval of the Settlement, and for a period of five (5) years thereafter, as part of setting rental prices or generating rental pricing recommendations for any properties managed by MAA, MAA shall not,

34

within the United States and its territories: (i) disclose MAA's Nonpublic Data to any other property manager or property owner; (ii) solicit Nonpublic Data from any other property manager or property owner; or (iii) use Nonpublic Data obtained from another property manager or property owner. Nothing in this Paragraph shall apply to communications between properties managed by MAA, or any other individual or entity providing services to properties managed by MAA for whom the disclosure of Nonpublic Data is necessary to provide its services. For avoidance of doubt, the restrictions set forth in this Paragraph apply to Nonpublic Data obtained through any form, whether directly or through an intermediary, including, without limitation, call arounds or market surveys, in-person meetings, calls, text messages, chat communications, emails, surveys, spreadsheets, shared documents (e.g., Google documents and SharePoint documents), industry meetings (e.g., user groups), online fora, private meetings, RMS, or information-exchange service. For avoidance of doubt, the restrictions set forth in this Paragraph do not prohibit MAA personnel from touring properties owned or managed by third parties, or from third parties touring any properties managed by MAA, if in those tours MAA does not solicit, obtain, or provide any information that would not be made available to any prospective tenant of such property.

d. *Use of RealPage Revenue Management Solutions*. Beginning on the date the Court grants Preliminary Approval of the Settlement, and for a period of five (5) years thereafter, MAA shall not, within the United States and its territories, use any Revenue Management Solution that does not comply with the terms of the Proposed Final Judgment between the United States and RealPage, or any subsequent final judgment the Court enters, in *United States et al. v. RealPage et al.* (currently docketed as ECF No. 159-1 in No. 1:24-cv-00710 in the Middle District of North Carolina) ("RealPage Final Judgment"). The Class Notice shall

include a copy of, or direct Class Members to a readily available copy of, the RealPage Final Judgment.

### 14. TERMINATION AND RESCISSION.

a. *Rejection or Alteration of Settlement Terms*. If: (i) the Court refuses to grant preliminary or final approval of this Agreement or certify the Settlement Class or such grant or certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to MAA or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs exceed ten percent (10%) of Settlement Class Members and MAA elects to revisit the terms of this Settlement, then the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time if the Parties do not reach agreement on a reformulation and resubmission of the Settlement Agreement, the Settlement Agreement automatically terminates, unless an extension is otherwise agreed upon by the Parties. Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement Agreement, MAA and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are agreeable, including whether termination is appropriate, unless an extension is otherwise agreed upon by the Parties. A refusal to approve or modification or reversal on appeal based solely on, or relating solely to, the Settlement Class Counsel's fees and expenses award and/or Plan of Allocation shall not be deemed a refusal to approve or modify the terms of this Settlement Agreement.

b. *Termination of Settlement*. In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) calendar days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Class Notice and costs of administration of the Settlement Fund, if any, shall be refunded by the Escrow Agent to MAA

36

pursuant to written instructions from MAA's Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of the Execution Date and without waiver of any positions asserted in the Action prior to that date. Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c.     Plaintiffs, the Settlement Class, Settlement Class Counsel, and MAA agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of, nor content of, settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by MAA or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly or indirectly except in a proceeding to enforce or interpret this Settlement Agreement. Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms. This Settlement Agreement shall not be construed as an admission of liability or wrongdoing, or used as evidence of liability, for any purpose in any legal proceeding, claim, regulatory proceeding, or government investigation.

15.     **COVENANT NOT TO SUE**. The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims.

16. **MAA RELEASE**. Pending the Effective Date, MAA agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel for any claims relating to the institution, prosecution, or settlement of the Action. Upon the Effective Date, MAA shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common, or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against MAA, except for claims relating to the enforcement of the Settlement.

17. **NO ADMISSION OF LIABILITY**. MAA denies all allegations of wrongdoing in the Action. Nothing in this Settlement Agreement constitutes an admission by MAA as to the merits of the allegations made in the Action. The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of: (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by MAA, or any Releasees; or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, and shall not be used against MAA or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against MAA or the Releasees.

18. **JOINT AND SEVERAL LIABILITY PRESERVED**. This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than MAA and the Releasees. All claims against such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class. MAA's and the other Releasees' pricing of multifamily housing rental

38

properties for the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims against any Defendant or alleged co-conspirator other than MAA and the Releasees and shall be part of any joint and several liability claims against any Defendant or alleged co-conspirator other than MAA and the Releasees. MAA and the Releasees shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount and the amounts specifically agreed to in Paragraphs 5 and 10 of this Agreement.

19. **CONFIDENTIALITY**. The Parties agree that all settlement discussions, and all materials exchanged during settlement negotiations, shall remain confidential. The Parties also agree that the existence of this Settlement Agreement shall remain confidential until publicly filed with the Court for approval. Nothing in this Paragraph shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel. Similarly, nothing in this Paragraph shall prohibit MAA or any Releasee from making general disclosures as necessary to comply with the securities laws and other disclosure obligations, as well as in its public filings. Following the Execution Date, MAA and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement.

20. **CAFA**. MAA shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1715, and notify the Court that CAFA compliance has been accomplished.

21. **CONTINUING JURISDICTION**. The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement, including without limitation, any suit, action,

proceeding, or dispute relating to the release provisions herein, that cannot be resolved by negotiation and agreement by Plaintiffs and MAA, including challenges to the reasonableness of any party's actions. MAA will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction. The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22. **ENTIRE AGREEMENT**. This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and MAA pertaining to this Settlement of the Action against MAA, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and MAA in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and MAA and no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Agreement not in writing and signed by the Parties.

23. **BINDING EFFECT**. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and MAA. Without limiting the generality of the foregoing, upon the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than MAA, which is a party to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

Case 3:23-md-03071   Document 1398-2   Filed 05/14/26   Page 257 of 468 PageID #: 22226

24. **EXECUTION IN COUNTERPARTS**. This Agreement may be executed in counterparts by Plaintiffs and MAA, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25. **NOTICE**. Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

26. **PRIVILEGE**. Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

27. **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**. Each Party agrees and acknowledges that it has: (1) thoroughly read and fully understands this Agreement; and (2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement. Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28. **NO PARTY IS THE DRAFTER**. This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for MAA. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29. **HEADINGS**. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30. **NO THIRD-PARTY BENEFICIARIES**. No provision of this Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Releasee, Releasor, or Settlement Class Counsel.

31. **OPPORTUNITY TO CURE**. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement. The waiver by any Party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

32. **GOVERNING LAW**. All terms of this Agreement, and any disputes related thereto, shall be governed and interpreted according to federal substantive and procedural law without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement, if they cannot be resolved by negotiation and agreement, shall be submitted, in the first instance, for mediation before Judge Layn Phillips (Ret.) in his capacity as court-appointed mediator, and if not then resolved, shall be submitted to the Court.

**33.** **R**EASONABLE **E**XTENSIONS. Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

**34.** **C**OUNSEL'S **E**XPRESS **A**UTHORITY. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

IN WITNESS WHEREOF, the Parties, individually or through their duly-authorized representatives, enter into this Settlement Agreement on the date first above written.

Dated:    April 28, 2026

For the Plaintiffs:


Patrick Coughlin
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com


Stacey Slaughter
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com


Swathi Bojedla
HAUSFELD LLP
1200 17th St., NW, Suite 600
Washington, DC 20036
sbojedla@hausfeld.com

Dated:  April 28, 2026

For MAA:


Britt M. Miller
Daniel T. Fenske
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
bmiller@mayerbrown.com
dfenske@mayerbrown.com

Scott D. Carey
Ryan P. Loofbourrow
BAKER, DONELSON, BEARMAN, CALDWELL &
BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, TN 37203
scarey@bakerdonelson.com
rloofbourrow@bakerdonelson.com

44

# EXHIBIT A-33
Related

Case 3:23-md-03071    Document 1398-2    Filed 05/14/26    Page 262 of 468 PageID #: 22231

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | **Case No. 3:23-MD-3071**<br>**MDL No. 3071**<br><br>**This Document Relates to:**<br>**ALL CASES**<br><br>**Hon. Judge Waverly D. Crenshaw, Jr.** |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of March 25, 2026 ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and The Related Companies, L.P. and Related Management Company ("Related" and collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs are prosecuting claims against Related and other Defendants for allegedly conspiring to fix and inflate the price of multifamily rental housing across the country on their own behalf and on behalf of the Settlement Class in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[1] (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of Related's alleged participation in an unlawful conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for

---

[1] The actions currently centralized in MDL No. 3071 include Cases No. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

residential units nationwide and to exchange competitively sensitive information about rental pricing in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Second Amended Consolidated Class Action Complaint, ECF No. 530;

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from Related's alleged conduct;

WHEREAS, Related denies Plaintiffs' allegations, denies any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against it in the Action, and asserts that it has a number of valid defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against Related, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the Settlement Amount (defined below) and the value of the cooperation that Related has agreed to provide pursuant to this Agreement;

WHEREAS, Related, despite its belief that it is not liable for the claims asserted by Plaintiffs and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement;

2

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date does not occur;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to Related, subject to Court approval, on the following terms and conditions:

1. **GENERAL DEFINITIONS**.  The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

   a. "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

   b. "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

   c. "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

3

d. "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

e. "Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (Dkt. 530, re-filed across the consolidated cases at Dkt. 728).

f. "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

g. "Defendants" means those Defendants named in Plaintiffs' Complaint (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Property Trust, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive

4

Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

h. "Effective Date" shall have the meaning set forth in Paragraph 2 of this Settlement Agreement.

i. "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

j. "Execution Date" means the latest date of the execution of this Agreement by all Parties.

k. "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

l. "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses; (b) Notice and Administration Expenses; (c) any Fee and Expense Award; (d) any Service Awards to Plaintiffs; and (e) other fees and expenses, if any, authorized by the Court.

m. "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow

5

Agent (if any). All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

n. "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

o. "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

p. "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

q. "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

r. "Related's Counsel" means Walden Macht Haran & Williams LLP

s. "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes, individually and on behalf of Settlement Class Members.

t. "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey

6

Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

u. "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

v. "Preliminary Approval Order" and "Preliminary Approval" mean the order preliminarily approving the Settlement.

w. "Properties" means all multifamily rental properties managed and/or owned by Related that at any point during the Settlement Class Period were subject to a license for RealPage's Revenue Management Solutions pricing recommendations for multifamily rental units

x. "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

y. "Releasees" means Related and any and all of its past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind, including any Person that held an ownership interest of any kind in any of the properties owned and/or managed by Related during the Settlement Class Period, that at any point during the Settlement Class Period were subject to a license for RealPage's Revenue Management Solutions ("RMS") pricing recommendations for multifamily rental units (the "Property/Properties"). Excluded from Releasees are other Defendants in this Action and their past, present, and future, direct and indirect,

7

parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint ventures, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind (together with Defendant, "Excluded Defendants") even if such Excluded Defendants are Related's past, present, or future direct and indirect parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint ventures, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind.

z. "Releasors" means Plaintiffs, the Settlement Class, and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, or through the Releasors, with such claiming parties to include any and all of Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom

8

any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

aa. "Revenue Management Solutions" or "RMS" means Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM").

bb. "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

cc. "Settlement Administrator" means Angeion Group, LLC appointed by the Court to disseminate Class Notice of settlement agreements reached in this matter as of the Execution Date (ECF 1313), or other professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of Settlement to the Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

dd. "Settlement Amount" shall be USD $5,000,000 (five million U.S. dollars) as specified in Paragraph 5.

ee. "Settlement Class" means the class defined in Paragraph 3 below.

ff. "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

gg. "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

hh. "Settlement Class Period" means from October 18, 2018 until November 21, 2025.

ii. "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

9

jj.     "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

kk.     "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Related with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

**2.     APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST RELATED.**

a.     Related shall use its reasonable best efforts in connection with Plaintiffs' Counsel's motions for approval of this Settlement and any related documents necessary to effectuate and implement the terms and conditions of this Settlement Agreement.  Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement.

b.     Plaintiffs shall, not longer than three (3) months from the Execution Date absent agreement between the Parties or by order of Court, submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

10

c.    Within thirty (30) calendar days after the Execution Date, or as soon thereafter as is practicable, Related shall supply Plaintiffs with the contact information of Settlement Class Members who rented multifamily housing units in Properties managed and/or owned by Related during the Settlement Class Period. The contact information shall be provided in a mutually agreeable electronic format. Plaintiffs shall use their reasonable best efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering this Settlement.  The Settlement Administrator and Plaintiffs may request from Related additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this Agreement, and Related will not unreasonably deny any such additional requests or fail to timely produce such data, if available.

d.    Plaintiffs shall submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion").  The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

e.    Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and Related shall agree upon, and such agreement will not be unreasonably withheld.  The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

i.    certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii.    approving finally this Settlement and its terms as being fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule

11

23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

iii. directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4)

iv. directing that Related shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Related (as provided for in Paragraph 16);

v. directing that the Action (including the Complaint) be dismissed as to Related with prejudice, and except as provided for in this Agreement, without costs;

vi. reserving to the Court the exclusive jurisdiction over this Settlement and this Agreement, including the interpretation, administration, and consummation of this Settlement, as well as over Related for its provision of cooperation pursuant to this Agreement;

vii. determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to Related shall be final;

viii. providing that Plaintiffs and Related have each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure; and

ix. providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any (a) non-settling Defendant to contest certification of any other class proposed in the Action, or of (b) Related's right to contest certification of any other proposed class in the Action should this Agreement not become

12

final as described in subsection (f) to this Paragraph; (2) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify any class in the Action or on the Court's rulings concerning any Defendant's motion; and (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

f.      This Agreement shall become final and be deemed to have received final approval when (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 3, approved this Agreement under Federal Rule of Civil Procedure 23(e), and entered a final judgment dismissing the Action with prejudice as to Related without costs other than those provided for in this Agreement; and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to Related described in (i) hereof has expired in the Action or, if appealed, approval of this Agreement and the order and final judgment in the Action as to Related have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review (the "Effective Date"). It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and Related shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

3.      **CERTIFICATION OF A SETTLEMENT CLASS**. Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any owner, manager

and/or owner-operator (including to any division, subsidiary, predecessor, agent or affiliate of any owner, manager and/or owner-operator) on a property subject to a license for RealPage's Revenue Management Solutions, Lease Rent Options ("LRO"), YieldStar ("YS"), and/or AI Revenue Management ("AIRM") ("RealPage's RMS") at any time during the period of October 18, 2018 through November 21, 2025 (the "Settlement Class Period"). Specifically excluded from this Class are Opt-Outs; Defendants; any entity licensing RealPage's RMS, the officers or directors of any entity licensing RealPage's RMS and any entity in which any entity licensing RealPage's RMS has a controlling interest; any affiliate, legal representative, heir or assign of any entity licensing RealPage's RMS; federal, state, or local governments; states and their subdivisions, agencies, and instrumentalities; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action.

Related agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. If the Effective Date does not occur, Related shall have the full ability to oppose any motion for certification of a litigation class, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against Related.

4. **SETTLEMENT CLASS'S RELEASE**.

a. Upon the occurrence of the Effective Date and in consideration of the payment by Related of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph 13 of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees from any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had or now have directly, representatively, derivatively or in any other capacity against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or

unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, arising from or in connection with any act or omission through the end of the Class Period relating to the Properties and arising from the same factual predicate of the Action, including but not limited to Related's alleged participation in a conspiracy to fix or inflate the price of multifamily residential lease prices through the use of RealPage, Inc.'s Revenue Management Solutions including Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM"), and any joint and several liability claim(s) against Related related to or arising from the same factual predicate of this Action (the "Released Claims"). Released Claims shall not include: (i) claims asserted against any Defendant or co-conspirator other than Related, or any owner of any of the Properties other than Related; (ii) any claims wholly unrelated to the allegations in the Complaint or that may exist as a result of a landlord-tenant relationship between the Parties, including claims based on breach of contract, state landlord-tenant regulation, negligence, and personal injury; (iii) claims relating to the enforcement of the Settlement or its terms; (iv) claims of any person or entity that submits a request for exclusion and whose request is accepted by the Court; or (v) claims that may be asserted against persons or entities (that are not affiliates of Related's but with whom Related or one or more of its affiliates has a partnership, joint venture, or co-investor relationship.

b. In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil

Code, with respect to the claims released herein. Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

c.      The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

d.      The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by Related that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

5.      <u>**SETTLEMENT AMOUNT**</u>.

a.      Related agrees that an amount equal to USD $5,000,000 all in cash, will be paid on behalf of Related as the Settlement Amount in settlement of the Action, inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action. The payment described above shall constitute the total amount to be paid by Related in settlement of these claims. The Settlement Amount shall be paid into an interest-bearing escrow account (the "Escrow Account") maintained

16

by an escrow agent on behalf of the Settlement Class, within thirty (30) business days of Plaintiffs providing all necessary information for their escrow agent after the Execution Date. The Parties agree and acknowledge that none of the Settlement Amount paid by Related under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

b. If Related (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified above, then Settlement Class Counsel, in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

c. The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement, and there will be no reversion of settlement funds to Related, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, if the Settlement becomes final. Upon the occurrence of the Effective Date, neither Related, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of Related's insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

6. **ESCROW ACCOUNT**. An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel. The Escrow Account shall be administered under the Court's continuing supervision and control.

17

a.      Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b.      The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

18

c.　Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

d.　The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

e.　In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to Related via wire transfer all funds remaining in the Escrow Account at that time, less any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante.  Related shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective.  Settlement Class Counsel shall ensure that the Settlement Administrator also provides Related full and complete information related to the Escrow Account to enable Related to determine whether any taxes may be owed on the funds returned to Related.

7.　**TAX TREATMENT**.

a.      The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and Related, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation §1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

b.      For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treas. Reg. §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

20

c.      All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, Related and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses.  Plaintiffs and Related agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

d.      Related, Releasees, and Related's Counsel shall have no liability for or obligations relating to Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each Related, Releasees, and Related's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

e.      Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

**8.** **CLASS ADMINISTRATION AND NOTICE**.  Settlement Class Counsel has retained Angeion Group, LLC as Settlement Administrator responsible for all aspects of settlement administration in this Action.  Such Settlement Administrator shall be approved by the Court in connection with this Settlement, and, if approved, overseen by Settlement Class Counsel.  Related will not have any involvement in the claims administration process, or the plan of allocation of the settlement proceeds. Settlement Class Counsel, in their sole discretion, may replace, and/or retain one or more additional and/or alternate Settlement Administrator(s). Such Settlement Administrator(s) shall be approved by the Court in connection with this Settlement, and, if approved, overseen by Settlement Class Counsel.  Related will not have any involvement in the selection of the Settlement Administrator(s). The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement.  In no event shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

a.      At no time and under no circumstances shall Plaintiffs, Related, Settlement Class Counsel, Plaintiffs' Counsel, Related's Counsel, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

b.      Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs.  The

Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs. The procedures for submitting claims shall conform to the procedures outlined below.

c. Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form. Each Claim Form must be signed under the penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

d. All Claim Forms must be received by the Settlement Administrator within the time prescribed in the plan for Notice as approved by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted. No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e. Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

23

f.	Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

g.	Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h.	All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process.  All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein.  The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

24

i. No Person shall have any claim against Related, Related's Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

9. **EXCLUSIONS**.

a. Related reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

b. A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice. Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

c. Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

d. Related or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

10. **PAYMENT OF EXPENSES**. Subject to Court approval, disbursements for payment of Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to Related, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, in the event this Settlement Agreement is disapproved, rescinded, or

25

otherwise fails to become effective, to the extent such expenses have actually been expended or incurred. Any refund that becomes owed to Related if this Settlement does not become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court. Other than as set forth in this Paragraph, Related shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs. To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action and to apportion the costs of notice and administration in an equitable manner across the applicable settlements.

**11.** **THE SETTLEMENT FUND**.

a. The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b. After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation. Related will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

26

c.	The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives.  Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

**12.	FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS**.

a.	Related understands that Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval of the Agreement, submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action; and/or (iii) and Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award").  Related understands that Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable service awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

b.	Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon final approval of the Settlement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their

27

assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Amount is required, then within fifteen (15) business days after receiving notice from Related of such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction. Each law firm that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Attorneys' Fees and Expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this paragraph.

c. The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement.

d. Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to

28

attorneys' fees, costs, or expenses or any other aspect of this Paragraph. No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of Related or the Releasees, under this Agreement.

13. **DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION**.

a. *Cooperation*. Cooperation by Related is a material term of the Settlement and shall include the following categories of cooperation, with all disputes concerning the same to be resolved by Judge Crenshaw and the U.S. District Court for the Middle District of Tennessee:

i. Within thirty (30) calendar days of executing this Agreement, in addition to any structured data already produced by RealPage and/or Related, Related shall produce to Plaintiffs any outstanding structured data consistent with the Parties' negotiated agreement regarding structured data in response to Plaintiffs' First Set of Requests to Owners, Owner-Operators, and Managing Defendants for the Production of Documents and Electronically Stored Information. Related shall answer reasonable questions concerning its structured data;

ii. In the event that Related has not substantially completed its document production by the Court ordered deadline to do so, Related shall, not later than thirty (30) calendar days therefrom, complete its production of documents agreed to during the course of discovery negotiations and confirm the same with Plaintiffs. Related shall answer reasonable questions concerning any identified deficiencies in its document productions and will not unreasonably deny Plaintiffs a re-production of documents identified as having technical errors or which Plaintiffs are otherwise unable to access or review (i.e. encrypted, password-protected, illegible), and which were produced as responsive in this Action;

iii. Related shall produce to Plaintiffs any documents produced to any other plaintiffs, or any federal, state, or other domestic regulator, concerning the subject matter of

29

the Action or any allegations within the same factual predicate of the Action within five (5) business days of the execution this Settlement Agreement, with any documents produced to such entities after the execution of this Settlement Agreement to be produced to Plaintiffs within five (5) business days following Related's production of the same to such other plaintiffs, third-parties, or regulators. This includes all deposition transcripts of Related's personnel and related exhibits from parallel government actions;

iv.      Related shall make available one witness for trial, should trial occur, accepting service of a trial subpoena and agreeing to waive any objections under Rule 45(c) of the Federal Rules of Civil Procedure relating to place of compliance;

v.      Related shall conduct an attorney proffer;

vi.      Related shall use reasonable efforts to assist Plaintiffs in authenticating documents and/or things produced in the Action, including but not limited to under Federal Rules of Evidence 803(6), 901, and 902(11), where Related can do so in good faith, whether by declarations or affidavits, or, if declarations or affidavits are not reasonably sufficient, depositions, hearings, and/or at trial(s) as may be necessary for the Action; and

vii.      Related will consider reasonable requests for additional relevant information about Plaintiffs' claims in the Action from Interim Co-Lead Counsel, taking into account the information it has or will produce in discovery, and whether providing the requested information will be burdensome.

b.      *Arbitration Non-Enforcement*. For a period of five (5) years after the Court enters Final Judgment in this Action, with respect to claims relating in any way to, or arising from the same factual predicate of this Action, Related agrees not to (a) require that any member of the Settlement Class ("Class Member") arbitrate any claims against Related or against any alleged co-conspirator or co-Defendant; (b) add a provision to any agreements with any Class Member

requiring that any claims against Related be arbitrated; (c) argue that any Class Member or Class Members are required to arbitrate claims against Related or against any alleged co-conspirator or co-Defendant based on principles of estoppel; and (d) enforce any provisions in any agreements with one or more Class Member(s) purporting to ban collective or class actions against Related.

c. *RealPage Data Sharing*. For a period of five (5) years after the Court enters Final Judgment in this Action as to Related: as part of setting rental prices or generating rental pricing recommendations for any Related Property, Related shall not, within the United States and its territories: (i) disclose nonpublic data to any other property manager or property owner; (ii) solicit External Nonpublic Data from any other property manager or property owner; or (iii) use external nonpublic data obtained from another property manager or property owner. Nothing in this Paragraph shall apply to communications between Related and the property owner or manager of a Related Property as it relates to the subject property, or any other Person providing services to that Related Property for whom the disclosure of nonpublic data is necessary to provide such services. For avoidance of doubt, the restrictions set forth in this Paragraph apply to external nonpublic data and nonpublic data obtained through any form, whether directly or through an intermediary, including without limitation, call arounds or market surveys, in-person meetings, calls, text messages, chat communications, emails, surveys, spreadsheets, shared documents (e.g., Google documents and SharePoint documents), industry meetings (e.g., user groups), online fora, private meetings, Revenue Management Product, or information-exchange service.

d. Except for the rental prices previously set at any Property while that Property used RealPage Revenue Management Products and through to the Execution Date, Related shall not, within the United States and its territories, use or access, as part of setting rental prices or generating pricing recommendations for any Related Property, any nonpublic data (other than

31

nonpublic data of the property owner or manager of the subject Related Property), or data derived from RealPage that used or relied on such nonpublic data, in Related's possession, custody, or control as of the Execution Date, acquired through any means.

14.  **T<small>ERMINATION AND</small> R<small>ESCISSION</small>**.

a.  *Rejection or Alteration of Settlement Terms.*  If (i) the Court refuses to grant preliminary or final approval of this Agreement or certify the Settlement Class or such grant or certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to Related or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs exceed ten percent of Settlement Class Members and Related elects to revisit the terms of this Settlement, then the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement automatically terminates, unless an extension is otherwise agreed upon by the Parties.  Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement Agreement, Related and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination is appropriate, unless an extension is otherwise agreed upon by the Parties.  A refusal to approve or modification or reversal on appeal based solely on or relating solely to the Settlement Class Counsel's fees and expenses award and/or Plan of Allocation shall not be deemed a refusal to approve or modification of the terms of this Settlement Agreement.

b.  *Termination of Settlement.*  In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Class Notice and costs of administration of the Settlement Fund, if any, shall be refunded by the escrow agent to Related

pursuant to written instructions from Related's Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of March 10, 2026, and without waiver of any positions asserted in the Action prior to that date.  Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

         c.      Plaintiffs, the Settlement Class, Settlement Class Counsel, and Related agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by Related or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly or indirectly except in a proceeding to enforce or interpret this Settlement Agreement.  Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms.

15.     **COVENANT NOT TO SUE**.  The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims. Plaintiffs and Related agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

16.     **RELATED RELEASE**.  Pending the Effective Date, Related agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims

relating to the institution, prosecution, or settlement of the pending Action. Upon the Effective Date, Related shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Related, except for claims relating to the enforcement of the Settlement.

17. **NO ADMISSION OF LIABILITY**. The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by Related, or any Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, and shall not be used against Related or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against Related or the Releasees.

18. **JOINT AND SEVERAL LIABILITY PRESERVED**. This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than Related and the Releasees. All claims against such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class. Related's and the other Releasees' pricing of multifamily housing rental properties for the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than Related and the other Releasees. Related and the Releasees

34

shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount and the amounts specifically agreed to in Paragraphs 5 and 10.

19.     **CONFIDENTIALITY**.   The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain confidential until publicly filed with the Court for approval.  Nothing in Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel.  Similarly, nothing in this Paragraph 19 shall prohibit Related or any Releasee from making general disclosures as necessary to comply with the securities laws and other obligations, as well as in its public filings.  Following the Execution Date, Related and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement.

20.     **CAFA**.  Related shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

21.     **CONTINUING JURISDICTION**.   The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Related, including challenges to the reasonableness of any party's actions.  Related will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction.  The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

35

22. **ENTIRE AGREEMENT**. This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and Related pertaining to this Settlement of the Action against Related, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and Related in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and Related and approved by the Court.

23. **BINDING EFFECT**. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and Related. Without limiting the generality of the foregoing, upon the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than Related, which is a party to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

24. **EXECUTION IN COUNTERPARTS**. This Agreement may be executed in counterparts by Plaintiffs and Related, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25. **NOTICE**. Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter

36

by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

26. **PRIVILEGE**. Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

27. **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**. Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement. Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28. **NO PARTY IS THE DRAFTER**. This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for Related. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29. **HEADINGS**. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

37

30. **OPPORTUNITY TO CURE**. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

31. **GOVERNING LAW**. All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles.

32. **REASONABLE EXTENSIONS**. Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

33. **COUNSEL'S EXPRESS AUTHORITY**. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

Dated: March 25, 2026

For the Plaintiffs:

_____
Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com


_____
Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com


_____
Swathi Bojedla
Hausfeld LLP
1200 17th St., NW, Suite 600
Washington, DC 20036
sbojedla@hausfeld.com

Dated: April 1, 2026

Related Management Company and The Related Companies, LP:


*Andrew Harris*
_____
Andrew Harris
Associate General Counsel
30 Hudson Yards
New York, NY 10001
andrew.harris@related.com


APPROVED AS TO FORM:

_____
John Keller
Partner
Walden Macht Haran & Williams
250 Vesey St., 27th Floor
New York, NY 10281
jkeller@wmhwlaw.com

40

# EXHIBIT A-34
Rose

| | |
|---|---|
| **IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II)** | **Case No. 3:23-MD-3071**<br>**MDL No. 3071**<br><br>**This Document Relates to:**<br>**ALL CASES**<br><br>**Hon. Judge Waverly D. Crenshaw, Jr.** |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of May 8, 2026, ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and Rose Associates, Inc. ("Rose" and collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs alleged claims against Rose and other Defendants for allegedly conspiring to fix and inflate the price of multifamily rental housing across the country on their own behalf and on behalf of the Settlement Class in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[1] (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of Rose's alleged participation in an unlawful

---

[1]     "Plaintiffs" as used herein refer to the named Plaintiffs Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes, individually and on behalf of all others similarly situated in the following actions centralized in MDL No. 3071: Case Nos. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for residential units nationwide and to exchange competitively sensitive information about rental pricing in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Second Amended Consolidated Class Action Complaint, ECF No. 530;

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from Rose's alleged conduct;

WHEREAS, Rose denies Plaintiffs' allegations, denies any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against it in the Action, and asserts that it has a number of valid defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against Rose, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the Settlement Amount (defined below) and the value of the cooperation that Rose has agreed to provide pursuant to this Agreement;

WHEREAS, Rose, despite its belief that it is not liable for the claims asserted by Plaintiffs and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement;

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date (as defined below) does not occur;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to Rose, subject to Court approval, on the following terms and conditions:

1. **GENERAL DEFINITIONS**. The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a. "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

b. "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

c. "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

d. "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

3

e.     "Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (Dkt. 530, re-filed across the consolidated cases at Dkt. 728).

f.     "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

g.     "Defendants" means those Defendants named in Plaintiffs' Complaint (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Property Trust, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

4

h.  "Effective Date" shall have the meaning set forth in Paragraph 2 of this Settlement Agreement.

i.  "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

j.  "Execution Date" means the latest date of the execution of this Agreement by all Parties.

k.  "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

l.  "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses; (b) Notice and Administration Expenses; (c) any Fee and Expense Award; (d) any Service Awards to Plaintiffs; and (e) other fees and expenses, if any, authorized by the Court.

m.  "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow Agent (if any).  All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

5

n. "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

o. "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

p. "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

q. "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

r. "Rose's Counsel" means Gordon Rees Scully Mansukhani, LLP.

s. "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes, individually and on behalf of Settlement Class Members.

t. "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

6

u.     "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

v.     "Preliminary Approval Order" and "Preliminary Approval" mean the order preliminarily approving the Settlement.

w.     "Properties" means all multifamily rental properties managed by Rose that at any point during the Settlement Class Period were subject to a license for RealPage's Revenue Management Solutions pricing recommendations for multifamily rental units

x.     "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

y.     "Releasees" means Rose and any and all of its past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind, as well as the owners, parent companies, and subsidiary companies of the Rose Properties as set forth in Addendum A, attached to this Agreement. However, the release will not cover other Defendants named in the Complaint or owners of Properties for which Rose provides management services, other than those identified in Addendum A to this Agreement, even if such owners are Rose's past, present, or future direct and indirect parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors,

7

supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind solely to the extent a claim arises from such person's ownership of a multifamily property.

z.     "Releasors" means Plaintiffs, the Settlement Class, and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, or through the Releasors, with such claiming parties to include any and all of Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

aa.     "Revenue Management Solutions" or "RMS" means Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM").

bb.     "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

cc.     "Settlement Administrator" means Angeion Group, LLC appointed by the Court to disseminate Class Notice of settlement agreements reached in this matter as of the Execution Date (ECF 1313), or other professional and independent entity or entities retained by

8

Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of Settlement to the Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

dd.     "Settlement Amount" shall be USD $1,000,000 (one million U.S. dollars) as specified in Paragraph 5.

ee.     "Settlement Class" means the class defined in Paragraph 3 below.

ff.     "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

gg.     "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

hh.     "Settlement Class Period" means from October 18, 2018 until November 21, 2025.

ii.     "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

jj.     "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

kk.     "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Rose with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

9

**2.**     **APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST ROSE.**

a.     Rose shall use its reasonable best efforts in connection with Plaintiffs' Counsel's motions for approval of this Settlement and any related documents necessary to effectuate and implement the terms and conditions of this Settlement Agreement. Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement.

b.     Plaintiffs shall, on or before May 15, 2026, submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

c.     Within thirty (30) calendar days after the Execution Date, or as soon thereafter as is practicable, Rose shall supply Plaintiffs with the contact information of Settlement Class Members who leased multifamily housing units in the Properties identified in Addendum A during the Settlement Class Period. The contact information shall be provided in a mutually agreeable electronic format. Plaintiffs shall use their reasonable best efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering this Settlement. The Settlement Administrator and Plaintiffs may request from Rose additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this Agreement, and Rose will not unreasonably deny any such additional requests or fail to timely produce such data, if available.

d.      Plaintiffs shall submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion").  The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

e.      Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and Rose shall agree upon, and such agreement will not be unreasonably withheld. The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

i.      certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii.      approving finally this Settlement and its terms as being fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

iii.      directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4)

iv.      directing that Rose shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Rose (as provided for in Paragraph 16);

v.      directing that the Action (including the Complaint) be dismissed as to Rose with prejudice, and except as provided for in this Agreement, without costs;

11

vi.      reserving to the Court the exclusive jurisdiction over this Settlement and this Agreement, including the interpretation, administration, and consummation of this Settlement, as well as over the reasonableness of Plaintiffs' requests for cooperation and Rose's provision of cooperation pursuant to this Agreement;

vii.      determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to Rose shall be final;

viii.      providing that Plaintiffs and Rose have each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure; and

ix.      providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any (a) non-settling Defendant to contest certification of any other class proposed in the Action, or of (b) Rose's right to contest certification of any other proposed class in the Action should this Agreement not become final as described in subsection (f) to this Paragraph; (2) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify any class in the Action or on the Court's rulings concerning any Defendant's motion; and (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

f.      This Agreement shall become final and be deemed to have received final approval when (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 3, approved this Agreement under Federal Rule of Civil Procedure 23(e), and entered a final judgment dismissing the Action with prejudice as to Rose without costs other

12

than those provided for in this Agreement; and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to Rose described in (i) hereof has expired in the Action or, if appealed, approval of this Agreement and the order and final judgment in the Action as to Rose have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review (the "Effective Date"). It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and Rose shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

3. **CERTIFICATION OF A SETTLEMENT CLASS**. Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any owner, manager and/or owner-operator (including to any division, subsidiary, predecessor, agent or affiliate of any owner, manager and/or owner-operator) on a property subject to a license for RealPage's Revenue Management Solutions, Lease Rent Options ("LRO"), YieldStar ("YS"), and/or AI Revenue Management ("AIRM") ("RealPage's RMS") at any time during the period of October 18, 2018 through November 21, 2025 (the "Settlement Class Period"). Specifically excluded from this Class are Opt-Outs; Defendants; any entity licensing RealPage's RMS, the officers or directors of any entity licensing RealPage's RMS and any entity in which any entity licensing RealPage's RMS has a controlling interest; any affiliate, legal representative, heir or assign of any entity licensing RealPage's RMS; federal, state, or local governments; states and their subdivisions, agencies, and instrumentalities; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action.

Rose agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. If the Effective Date does not occur, Rose shall have the full ability to oppose any motion for certification of a

13

litigation class, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against Rose.

4. **SETTLEMENT CLASS'S RELEASE**.

a. Upon the occurrence of the Effective Date and in consideration of the payment by Rose of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph 13 of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees from any and all claims, including but not limited to any Sherman Act, Clayton Act, and/or state antitrust claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had or now have directly, representatively, derivatively or in any other capacity against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, arising from or in connection with any act or omission through the end of the Class Period in connection with Rose's management of multifamily residential real estate and arising from the factual predicate of the Action, including but not limited to Rose's alleged conspiracy to fix the prices of multifamily residential lease prices through the use of RealPage, Inc.'s Revenue Management Solutions including Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM"), and any joint and several liability claim(s) against Rose related to or arising from the same factual predicate of this Action (the "Released Claims"). Released Claims shall not include:

14

(i) claims asserted against any Defendant or co-conspirator other than Rose, or any owner of any of the properties managed by Rose other than owners and released entities of the Rose Properties as listed in the Addendum to this Agreement; (ii) any individual class member's claims wholly unrelated to the allegations in the Complaint, including claims based on breach of contract, state landlord-tenant regulation, negligence, and personal injury; (iii) claims relating to the enforcement of the Settlement or its terms; (iv) claims of any person or entity that submits a request for exclusion and whose request is accepted by the Court; or (v) claims that may be asserted against persons or entities that are not affiliates of Rose's but with whom one or more of Rose's affiliates has a partnership, joint venture, or co-investor relationship (e.g. partnerships, joint ventures, or co-investor relationships between one of the entities listed in the "Owner, Parent, and/or Subsidiary Entity" column of Addendum A, on the one hand, and any other entity with whom Rose has no affiliation, on the other).

b.      In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein.  Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

15

c. The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

d. The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by Rose that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

**5. SETTLEMENT AMOUNT.**

a. Rose agrees that an amount equal to USD $1,000,000 (one million U.S. dollars) all in cash, will be paid on behalf of Rose as the Settlement Amount in settlement of the Action, inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action. The payment described above shall constitute the total amount to be paid by Rose in settlement of these claims. The Settlement Amount shall be paid into an interest-bearing escrow account (the "Escrow Account") maintained by an escrow agent on behalf of the Settlement Class. Plaintiffs shall provide wire instructions to Rose for the purpose of Rose paying or causing to be paid the Settlement Amount. Rose shall pay $500,000 of the Settlement Amount within thirty (30) calendar days of the Parties' execution of this Settlement Agreement. Rose shall pay the remaining $500,000 of the Settlement Amount within one (1) year of the Parties' execution of this Settlement

16

Agreement. The Parties agree and acknowledge that none of the Settlement Amount paid by Rose under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

b.        If Rose (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified above, then Settlement Class Counsel, in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

c.        The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement, and there will be no reversion of settlement funds to Rose, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, if the Settlement becomes final. Upon the occurrence of the Effective Date, neither Rose, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of Rose's insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

6.        **ESCROW ACCOUNT**.  An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel.  The Escrow Account shall be administered under the Court's continuing supervision and control.

a.        Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from

17

the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b. The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

c. Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses

18

payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

d.	The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

e.	In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to Rose via wire transfer all funds remaining in the Escrow Account at that time, less any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante.  Rose shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective.  Settlement Class Counsel shall ensure that the Settlement Administrator also provides Rose full and complete information related to the Escrow Account to enable Rose to determine whether any taxes may be owed on the funds returned to Rose.

7.	**TAX TREATMENT**.

a.	The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as

19

amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and Rose, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation §1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

b.      For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treas. Reg. §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

c.      All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, Rose and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out

20

of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses. Plaintiffs and Rose agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

d.      Rose, Releasees, and Rose's Counsel shall have no liability for or obligations relating to Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each Rose, Releasees, and Rose's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

e.      Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

8.      **CLASS ADMINISTRATION AND NOTICE**.  Settlement Class Counsel has retained Angeion Group, LLC as Settlement Administrator responsible for all aspects of settlement administration in this Action.  Such Settlement Administrator shall be approved by the Court in connection with this Settlement, and, if approved, overseen by Settlement Class Counsel.  Rose will not have any involvement in the claims administration process, or the plan of allocation of the settlement proceeds. Settlement Class Counsel, in their sole discretion, may replace, and/or retain

one or more additional and/or alternate Settlement Administrator(s). Such Settlement Administrator(s) shall be approved by the Court in connection with this Settlement, and, if approved, overseen by Settlement Class Counsel. Rose will not have any involvement in the selection of the Settlement Administrator(s). The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement. In no event shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

a. At no time and under no circumstances shall Plaintiffs, Rose, Settlement Class Counsel, Plaintiffs' Counsel, Rose's Counsel, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

b. Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs. The Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs. The procedures for submitting claims shall conform to the procedures outlined below.

c. Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form. Each Claim Form must be signed under the penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

22

d.      All Claim Forms must be received by the Settlement Administrator within the time prescribed in the plan for Notice as approved by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted.  No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e.      Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

f.      Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

23

g.      Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h.      All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process.  All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein.  The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

i.      No Person shall have any claim against Rose, Rose's Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

9.      **EXCLUSIONS**.

a.      Rose reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

24

b. A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice. Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

c. Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

d. Rose or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

10. **PAYMENT OF EXPENSES**. Subject to Court approval, disbursements for payment of Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to Rose, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, in the event this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses have actually been expended or incurred. Any refund that becomes owed to Rose if this Settlement does not become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court. Other than as set forth in this Paragraph, Rose shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals,

trials, or the negotiation of other settlements, or for class administration and costs. To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action and to apportion the costs of notice and administration in an equitable manner across the applicable settlements.

11. **THE SETTLEMENT FUND**.

a. The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b. After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation. Rose will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

c. The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives. Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

12. **FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS**.

a. Rose understands that Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval of the Agreement, submit an

26

application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action; and/or (iii) and Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award").  Rose understands that Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable service awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

b.      Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon final approval of the Settlement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Amount is required, then within fifteen (15) business days after receiving notice from Rose of such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction.  Each law firm

27

that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Attorneys' Fees and Expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this paragraph.

c. The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement.

d. Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph. No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of Rose or the Releasees, under this Agreement.

13. **DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION**.

a. **Reasonable Cooperation**. Reasonable cooperation by Rose is a material term of the Settlement and shall include the following categories of cooperation, with all disputes

28

concerning the same to be resolved by Judge Crenshaw and the U.S. District Court for the Middle District of Tennessee if they cannot be resolved by Clay Cogman (ccogman@phillipsadr.com):

    i.    Rose represents that it has produced to Plaintiffs all structured data available to it consistent with the Parties' negotiated agreement regarding structured data in response to Plaintiffs' First Set of Requests to Owners, Owner-Operators, and Managing Defendants for the Production of Documents and Electronically Stored Information. Rose shall answer reasonable questions concerning its structured data over the time period between the execution of this Agreement and May 29, 2026.

    ii.    Over the time period between the execution of this Agreement and May 29, 2026, Rose will not unreasonably deny Plaintiffs a re-production of documents identified as having technical errors or which Plaintiffs are otherwise unable to access or review (i.e. encrypted, password-protected, illegible), and which were produced as responsive in this Action, to the extent Rose has the ability to fix such errors;

    iii.    Rose shall make available one witness for trial, should trial occur, accepting service of a trial subpoena and agreeing to waive any objections under Rule 45(c) relating to place of compliance;

    iv.    In lieu of a Rule 30(b)(6) deposition, Rose has provided a Certification of Domestic Records of Regularly Conducted Activity pursuant to Federal Rules of Evidence 803(6) and 902(11) per the Parties negotiated agreement;

    v.    Rose shall use reasonable efforts to assist Plaintiffs in authenticating and providing foundation for the admissibility of documents and/or things as to the list provided by Plaintiffs' counsel, including but not limited to under Federal Rules of Evidence 803(6), 901, and 902(11), where Rose can do so in good faith, whether by declarations or affidavits, of if the Court

29

deems declarations or affidavits insufficient, then by the least onerous sufficient form of testimony (e.g., trial deposition).

b. **Arbitration Non-Enforcement**. For a period of five (5) years after the Court enters Final Judgment in this Action as to Rose, with respect to claims relating in any way to, or arising from the same factual predicate of this Action, Rose agrees not to (a) require that any member of the Settlement Class ("Class Member") arbitrate any claims against Rose or against any alleged co-conspirator or co-Defendant as it relates to the factual predicate of this Action; (b) add a provision to any agreements with any Settlement Class Member requiring that any claims against Rose that relate to or arise from the same factual predicate of this Action be arbitrated; (c) argue that any Settlement Class Member or Settlement Class Members are required to arbitrate claims against Rose or against any alleged co-conspirator or co-Defendant, that relate to or arise from the same factual predicate of this Action based on principles of estoppel; and (d) enforce any provisions in any agreements with one or more Settlement Class Member(s) purporting to ban collective or class actions against Rose, as it relates to this Action.

c. **RealPage Data Sharing**. For a period of five (5) years after the Court enters Final Judgment in this Action, Rose shall (a) not provide to RealPage, Inc., any nonpublic data concerning multifamily residential leases, or permit RealPage, Inc., or any other company providing revenue management services that Rose knows or should have known uses as an input non-public data provided to RealPage, Inc. by Rose's competitors to share Rose's nonpublic data concerning multifamily residential leases for use in revenue management services; and (b) not contract with RealPage, Inc. or any other company providing revenue management services, to use a revenue management service or program that Rose knows uses as an input non-public data provided to

30

RealPage, Inc. by Rose's competitors; provided that Settlement Class Counsel may consent, or Rose may petition the Court, to delete or modify this provision based upon changed circumstances.

14. **TERMINATION AND RESCISSION**.

a. *Rejection or Alteration of Settlement Terms.* If (i) the Court refuses to grant preliminary or final approval of this Agreement or certify the Settlement Class or such grant or certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to Rose or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs exceed ten percent of Settlement Class Members and Rose elects to revisit the terms of this Settlement, then the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement automatically terminates, unless an extension is otherwise agreed upon by the Parties. Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement Agreement, Rose and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination is appropriate, unless an extension is otherwise agreed upon by the Parties. A refusal to approve or modification or reversal on appeal based solely on or relating solely to the Settlement Class Counsel's fees and expenses award and/or Plan of Allocation shall not be deemed a refusal to approve or modification of the terms of this Settlement Agreement.

b. *Termination of Settlement.* In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Class Notice and costs of administration of the Settlement Fund, if any, shall be refunded by the escrow agent to Rose pursuant to written instructions from Rose's Counsel to Settlement Class Counsel; and (ii) the

Parties shall be deemed to have reverted to their respective status in the Action as of April 15, 2026, and without waiver of any positions asserted in the Action prior to that date. Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c. Plaintiffs, the Settlement Class, Settlement Class Counsel, and Rose agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by Rose or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly or indirectly except in a proceeding to enforce or interpret this Settlement Agreement. Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms.

15. **COVENANT NOT TO SUE**. The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims. Plaintiffs and Rose agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

16. **ROSE RELEASE**. Pending the Effective Date, Rose agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the pending Action. Upon the Effective Date, Rose

32

shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Rose, except for claims relating to the enforcement of the Settlement.

17. **NO ADMISSION OF LIABILITY**. The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by Rose, or any Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, and shall not be used against Rose or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against Rose or the Releasees.

18. **JOINT AND SEVERAL LIABILITY PRESERVED**. This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than Rose and the Releasees. All claims against such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class. Rose's and the other Releasees' pricing of multifamily housing rental properties for the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than Rose and the other Releasees. Rose and the Releasees shall not be responsible

33

for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount and the amounts specifically agreed to in Paragraphs 5 and 10.

19. **CONFIDENTIALITY**. The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain confidential until publicly filed with the Court for approval. Nothing in Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel. Similarly, nothing in this Paragraph 19 shall prohibit Rose or any Releasee from making general disclosures as necessary to comply with the securities laws and other obligations, as well as in its public filings. Following the Execution Date, Rose and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement.

20. **CAFA**. Rose shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

21. **CONTINUING JURISDICTION**. The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Rose, including challenges to the reasonableness of any party's actions. Rose will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction. The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22. **ENTIRE AGREEMENT**. This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and Rose pertaining to this Settlement of the Action against Rose, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and Rose in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and Rose and approved by the Court.

23. **BINDING EFFECT**. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and Rose. Without limiting the generality of the foregoing, upon the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than Rose, which is a party to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

24. **EXECUTION IN COUNTERPARTS**. This Agreement may be executed in counterparts by Plaintiffs and Rose, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25. **NOTICE**. Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter

by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

26. **PRIVILEGE**. Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

27. **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**. Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement. Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28. **NO PARTY IS THE DRAFTER**. This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for Rose. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29. **HEADINGS**. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

36

30. **OPPORTUNITY TO CURE**. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

31. **GOVERNING LAW**. All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles.

32. **REASONABLE EXTENSIONS**. Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

33. **COUNSEL'S EXPRESS AUTHORITY**. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

Dated: May 8, 2026

For the Plaintiffs:

_____
Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com


_____
Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com


_____
Swathi Bojedla
Hausfeld LLP
1200 17th St., NW, Suite 600
Washington, DC 20036
sbojedla@hausfeld.com

38

Dated:    May 8, 2026

For Rose:

_____

39

Rose confirms that it licensed and used RealPage's RMS software on some units of the following properties during the Settlement Class Period:

| Property | Total Unit Count | AIRM Start Date | Date AIRM turned off Non-Public Data | Owner, Parent, and/or Subsidiary Entity |
|---|---|---|---|---|
| Canfield Park | 300 | 01/01/25 | 09/26/24 | Canfield Owner LLC |
| Echelon Chelsea | 108 | 04/22/22 | 09/26/24 | W21st Owner LLC; Roseland/Stempel 21st Street Associates LLC |
| The Halden | 284 | 01/01/25 | 09/26/24 | Halden Owner LLC |
| The Ellington | 216 | 05/27/22 | 09/26/24 | Roslingate Company |
| 21 West | 293 | 03/09/23 | 09/26/24 | West Eden LLC |
| The Metropolis | 269 | 02/08/24 | 09/26/24 | Lexington Belvedere LLC |
| 8 Court Square | 109 | 06/28/23 | 09/26/24 | 25-34 Jackson Avenue Property Owner LLC; 25-34 Jackson Avenue Development LLC |
| The Caldwell | 268 | 02/21/22 | 09/26/24 | Romarco Realty Corp. |
| Hamilton Crossing* | 431 | 05/08/23 | 09/26/24 | 440 Hamilton Developer LLC; 440 Hamilton RA SM JV LLC |
| Anagram Columbus Circle* | 123 | 10/19/23 | 09/26/24 | Global 1845 Broadway LLC |
| The Pierrepont | 67 | 02/21/22 | 09/26/24 | MP Owner LLC |
| 18 Dock | 375 | 01/01/25 | 09/26/24 | Canal Street Fund LLC |
| Rivercourt | 291 | 07/31/23 | 09/26/24 | San-Dar Associates LLC |
| Alexander Crossing* | 396 | 03/09/23 | 09/26/24 | 57 Alexander Developer LLC; 57 Alexander Holdings LLC |
| 301 E 94th St* | 86 | 04/18/23 | 09/26/24 | 301E94 Owner LLC |
| 70 Pine | 612 | 02/21/22 | 09/26/24 | EBRA 70 Pine Master Tenant LLC; EBNB 70 Pine Owner LLC |
| 88 Leonard | 334 | 09/27/22 | 09/26/24 | Jamestown 88 Leonard, L.P. |
| The Ventura | 246 | 02/21/22 | 09/26/24 | Ventura in Manhattan Inc. |

* Indicates properties for which RealPage's RMS software was used solely for price administration, not price setting.

40

# EXHIBIT A-35
## RPM

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-MD-3071<br>MDL No. 3071<br><br>**This Document Relates to:**<br>**ALL CASES**<br><br>**Hon. Judge Waverly D. Crenshaw, Jr.** |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of March 13, 2026 ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and RPM Living, LLC ("RPM" and collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs are prosecuting claims against RPM and other Defendants for allegedly conspiring to fix and inflate the price of multifamily rental housing across the country on their own behalf and on behalf of the Settlement Class in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[1] (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of RPM's alleged participation in an unlawful conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for residential units

---

[1] The actions currently centralized in MDL No. 3071 include Cases No. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

1

nationwide and to exchange competitively sensitive information about rental pricing in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Second Amended Consolidated Class Action Complaint, ECF No. 530;

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from RPM's alleged conduct;

WHEREAS, RPM denies Plaintiffs' allegations, denies any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against it in the Action, and asserts that it has a number of valid defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against RPM, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the Settlement Amount (defined below) and the value of the non-monetary relief that RPM has agreed to provide pursuant to this Agreement;

WHEREAS, RPM, despite its belief that it is not liable for the claims asserted by Plaintiffs and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement and to put to rest with finality all claims that have been or could be asserted against RPM, as more particularly set out below;

2

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date does not occur;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to RPM, subject to Court approval, on the following terms and conditions:

1.     **GENERAL DEFINITIONS**.  The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a.     "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

b.     "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

c.     "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

d.     "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

e.     "Competitively Sensitive Information" means property specific data or information that could be reasonably used to determine current or future rental supply, demand, or pricing at a property or of any property's units, including but not limited to executed rents, rental price concessions or discounts, guest traffic, guest applications, occupancy or vacancy, lease terms or lease expirations.

f.     "Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (Dkt. 530, re-filed across the consolidated cases at Dkt. 728).

g.     "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

h.     "Defendants" means those Defendants named in Plaintiffs' Complaint (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Property Trust, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis

4

Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

i. "Effective Date" shall have the meaning set forth in Paragraph 2 of this Settlement Agreement.

j. "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

k. "Execution Date" means the latest date of the execution of this Agreement by all Parties.

l. "External Nonpublic Data" means Nonpublic Data from any Person other than RPM. It does not include data from a RPM-managed building.

m. "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

n. "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses; (b) Notice and Administration Expenses; (c) any Fee and Expense Award; (d) any Service Awards to Plaintiffs; and (e) other fees and expenses, if any, authorized by the Court.

5

o. "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow Agent (if any). All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

p. "Nonpublic Data" means any Competitively Sensitive Information that is not Public Data.

q. "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

r. "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

s. "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

t. "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

6

u. "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes, individually and on behalf of Settlement Class Members.

v. "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

w. "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

x. "Preliminary Approval Order" and "Preliminary Approval" mean the order preliminarily approving the Settlement.

y. "Property" or "Properties" means all multifamily rental properties managed and/or owned by RPM that at any point during the Settlement Class Period were subject to a license for RealPage's Revenue Management Solutions pricing recommendations for multifamily rental units.

z. "Public Data" means information on a rental unit's asking price (including publicly offered concessions), amenities, and availability that is readily accessible to the general public, such as on the property's website, at a physical building, in brochures, or on an internet listing service. Public Data includes information on a rental unit's asking price, concessions, amenities, and availability provided by a property manager or a property owner to any natural

7

person who reasonably presents himself as a prospective renter. Public Data does not include any Competitively Sensitive Information obtained through communications between competitors.

aa. "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

bb. "Releasees" means RPM, RPM Living Investments, LLC and RPM Living Institutional Capital, LLC, and any and all of its past, present, and future, direct and indirect, parent companies, subsidiary companies, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind. However, the release will not cover other Defendants or any third-party holding ownership interest in any of the Properties for which RPM provides management services, even if such third-party owners are in a partnership or joint venture with RPM, including their respective predecessors, and successors.

cc. "Releasors" means Plaintiffs, the Settlement Class, and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, or through the Releasors, with such claiming parties to include any and all of Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of

8

kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

dd. "Revenue Management Solutions" or "RMS" means Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM").

ee. "RPM's Counsel" means Vinson & Elkins, LLP.

ff. "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

gg. "Settlement Administrator" means Angeion Group, LLC appointed by the Court to disseminate Class Notice of settlement agreements reached in this matter as of the Execution Date (ECF 1313), or other professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of Settlement to the Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

hh. "Settlement Amount" shall be USD $7,500,000 (seven million five hundred thousand U.S. dollars) as specified in Paragraph 5.

ii. "Settlement Class" means the class defined in Paragraph 3 below.

jj. "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

kk. "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

9

ll.    "Settlement Class Period" means from October 18, 2018, until November 21, 2025.

mm.    "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

nn.    "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

oo.    "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon RPM with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

## 2.    APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST RPM.

a.    RPM shall use its reasonable best efforts in connection with Plaintiffs' Counsel's motions for approval of this Settlement and any related documents necessary to effectuate and implement the terms and conditions of this Settlement Agreement.  Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement.

b.    Absent agreement between the Parties or by order of Court, Plaintiffs shall, not longer than three (3) months from the Execution Date, submit to the Court a motion seeking

preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

c. Within forty-five (45) calendar days after the Execution Date, or as soon thereafter as is practicable, RPM shall use reasonable best efforts to supply Plaintiffs with the contact information of Settlement Class Members who rented multifamily housing units in Properties managed and/or owned by RPM during the Settlement Class Period. The contact information shall be provided in a mutually agreeable electronic format. Plaintiffs shall use their reasonable best efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering this Settlement. The Settlement Administrator and Plaintiffs may request from RPM additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this Agreement, and RPM will not unreasonably deny any such additional requests or fail to timely produce such data, if available.

d. Plaintiffs shall submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion"). The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

e. Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and RPM shall agree upon, and such agreement will not be unreasonably withheld. The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

i.	certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii.	approving finally this Settlement and its terms as being fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

iii.	directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4)

iv.	directing that RPM shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against RPM (as provided for in Paragraph 16);

v.	directing that the Action (including the Complaint) be dismissed as to RPM with prejudice, and except as provided for in this Agreement, without costs;

vi.	reserving to the Court the exclusive jurisdiction over this Settlement and this Agreement, including the interpretation, administration, and consummation of this Settlement, as well as over RPM for its provision of cooperation pursuant to this Agreement;

vii.	determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to RPM shall be final;

12

viii.    providing that Plaintiffs and RPM have each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure; and

ix.    providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any (a) non-settling Defendant to contest certification of any other class proposed in the Action, or of (b) RPM's right to contest certification of any other proposed class in the Action should this Agreement not become final as described in subsection (f) to this Paragraph; (2) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify any class in the Action or on the Court's rulings concerning any Defendant's motion; and (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion and no person may use the certification of the Settlement Class as an admission by RPM or a Releasee about the merits of certifying a class in any other case.

f.    This Agreement shall become final and be deemed to have received final approval when (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 3, approved this Agreement under Federal Rule of Civil Procedure 23(e), and entered a final judgment dismissing the Action with prejudice as to RPM without costs other than those provided for in this Agreement ("Final Judgment"); and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to RPM described in (i) hereof has expired in the Action or, if appealed, approval of this Agreement and the order and final judgment in the Action as to RPM have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review (the "Effective Date"). It is

agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and RPM shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

      **3.**       **CERTIFICATION OF A SETTLEMENT CLASS**. Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any owner, manager and/or owner-operator (including to any division, subsidiary, predecessor, agent or affiliate of any owner, manager and/or owner-operator) on a property subject to a license for RealPage's Revenue Management Solutions, Lease Rent Options ("LRO"), YieldStar ("YS"), and/or AI Revenue Management ("AIRM") ("RealPage's RMS") at any time during the period of October 18, 2018 through November 21, 2025 (the "Settlement Class Period"). Specifically excluded from this Class are Opt-Outs; Defendants; any entity licensing RealPage's RMS, the officers or directors of any entity licensing RealPage's RMS and any entity in which any entity licensing RealPage's RMS has a controlling interest; any affiliate, legal representative, heir or assign of any entity licensing RealPage's RMS; federal, state, or local governments; states and their subdivisions, agencies, and instrumentalities; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action.

      a.       The Settlement Class does not limit class participation only to those who paid rents directly to a named Defendant in this Action.[2] Accordingly, as used in Paragraph 3, the terms "owner," "manager," and "owner-operator" shall have the following meaning: (i) "owner" refers to any natural person or entity that owns/owned a multifamily rental property; (ii) "manager" means any natural person or entity engaged in management and/or day-to-day operations of a multifamily rental property; and (iii) "owner-operator" refers to any natural person or entity that owns/owned and manages/managed a multifamily rental property.

---

[2] Because the terms "Owner," "Manager," and "Owner-Operator" are capitalized as used in the Complaint to describe and categorize the named Defendants only, the Complaint's definitions do not apply to the Settlement Class defined in Paragraph 3.

b.      RPM agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only.  If the Effective Date does not occur, RPM shall have the full ability to oppose any motion for certification of a litigation class, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against RPM.

**4.      SETTLEMENT CLASS'S RELEASE**.

a.      Upon the occurrence of the Effective Date and in consideration of the payment by RPM of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph 13 of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees from any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, restitution, disgorgement, interest, costs, expenses, attorneys' fees, fines, or other payment of money, or for injunctive, declaratory, or other equitable relief, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had or now have directly, representatively (including asserted in a *parens patriae* capacity), derivatively or in any other capacity against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, arising from or in connection with any act or omission through the end of the Class Period relating to the Properties and arising from the same factual predicate of the Action, including but not limited to RPM's alleged participation in a conspiracy to fix or

inflate the price of multifamily residential lease prices through the use of RealPage, Inc.'s Revenue Management Solutions including Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM"), RPM's alleged participation in a conspiracy to exchange Competitively Sensitive Information that impacted leases, prices, rents or occupancy for multifamily residential units and any joint and several liability claim(s) against RPM related to or arising from the same factual predicate of this Action (the "Released Claims"). Released Claims shall not include: (i) claims asserted against any Defendant or co-conspirator other than RPM, or any owner of any of the Properties other than RPM; (ii) any claims wholly unrelated to the allegations in the Complaint or that may exist as a result of a landlord-tenant relationship between the Parties, including claims based on breach of contract, state landlord-tenant regulation, negligence, and personal injury; (iii) claims relating to the enforcement of the Settlement or its terms; (iv) claims of any person or entity that submits a request for exclusion and whose request is accepted by the Court; or (v) claims that may be asserted against persons or entities that are not affiliates of RPM's but with whom RPM or one or more of its affiliates has a partnership, joint venture, or co-investor relationship.

   b.  The release in Paragraph 4(a) shall bar (1) a claim brought by a state, quasi-state, or local government entity to the extent that such claim is based on a state, quasi-state, or local government entity's proprietary interests as a member of the Settlement Class that has received or is entitled to receive a financial recovery in this Action and (2) a claim (including claims asserted in a *parens patriae* capacity), whether denominated as seeking damages, restitution, unjust enrichment, or other monetary relief, brought by a state, quasi-state, or local government entity for monetary harm sustained by natural persons, businesses, other non-state, non-quasi-state, and non-local government entities or private parties themselves that are eligible to be members of the Settlement Class. The release in Paragraph 4(a) does not bar an investigation

or action, whether denominated as *parens patriae*, law enforcement, or regulatory, by a state, quasi-state, or local governmental entity to vindicate sovereign or quasi-sovereign interests.

c.     The Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein.  Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

d.     The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

e.     The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by RPM that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

5.     **SETTLEMENT AMOUNT**.

a. RPM agrees that an amount equal to USD $7,500,000, all in cash, will be paid on behalf of RPM as the Settlement Amount in settlement of the Action, inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action. The payment described above shall constitute the total amount to be paid by RPM in settlement of these claims. The Settlement Amount shall be made in two payments beginning with a payment of USD $3,750,000.00 to be made within five (5) calendar days of the Execution Date into an interest-bearing escrow account maintained by an escrow agent on behalf of the Settlement Class (the "Escrow Account"), and the remaining $3,75,000.00 to be paid on or before October 31, 2026 into the Escrow Account. The Parties agree and acknowledge that none of the Settlement Amount paid by RPM under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

b. If RPM (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified above, then Settlement Class Counsel, in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

c. The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement, and there will be no reversion of settlement funds to RPM, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, if the Settlement becomes final. Upon the

18

occurrence of the Effective Date, neither RPM, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of RPM's insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

6. **ESCROW ACCOUNT**. An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel. The Escrow Account shall be administered under the Court's continuing supervision and control.

a. Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b. The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or

an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

c.      Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

d.      The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

e.      In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to RPM via wire transfer all funds remaining in the Escrow Account at that time, less any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be

returned to the status quo ante. RPM shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective. Settlement Class Counsel shall ensure that the Settlement Administrator also provides RPM full and complete information related to the Escrow Account to enable RPM to determine whether any taxes may be owed on the funds returned to RPM.

**7. TAX TREATMENT**.

a. The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and RPM, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation §1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

b. For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated

21

Tax payments in accordance with Treas. Reg. §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

c. All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, RPM and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses. Plaintiffs and RPM agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

d. RPM, Releasees, and RPM's Counsel shall have no liability for or obligations relating to Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each RPM, Releasees, and RPM's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

e. Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

8. **CLASS ADMINISTRATION AND NOTICE**. Settlement Class Counsel has retained Angeion Group, LLC as Settlement Administrator responsible for all aspects of settlement administration in this Action. Such Settlement Administrator shall be approved by the Court in connection with this Settlement, and, if approved, overseen by Settlement Class Counsel. RPM will not have any involvement in the claims administration process, or the plan of allocation of the settlement proceeds. Settlement Class Counsel, in their sole discretion, may replace, and/or retain one or more additional and/or alternate Settlement Administrator(s). Such Settlement Administrator(s) shall be approved by the Court in connection with this Settlement, and, if approved, overseen by Settlement Class Counsel. RPM will not have any involvement in the selection of the Settlement Administrator(s). The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement. In no event shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

a. At no time and under no circumstances shall Plaintiffs, RPM, Settlement Class Counsel, Plaintiffs' Counsel, RPM's Counsel, the Releasors, or the Releasees have any

23

liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

b.      Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs.  The Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs.  The procedures for submitting claims shall conform to the procedures outlined below.

c.      Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form.  Each Claim Form must be signed under the penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

d.      All Claim Forms must be received by the Settlement Administrator within the time prescribed in the plan for Notice as approved by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted.  No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e.      Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in

24

accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

f.      Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

g.      Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h.      All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process.  All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein.  The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be

25

no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

i.       No Person shall have any claim against RPM, RPM's Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

9.       **EXCLUSIONS**.

a.       RPM reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

b.       A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice.  Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

c.       Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

d.       RPM or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

10.       **PAYMENT OF EXPENSES**.  Subject to Court approval, disbursements for payment of Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax

Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to RPM, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, in the event this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses have actually been expended or incurred. Any refund that becomes owed to RPM if this Settlement does not become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court. Other than as set forth in this Paragraph, RPM shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs. To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action and to apportion the costs of notice and administration in an equitable manner across the applicable settlements.

11. **THE SETTLEMENT FUND**.

a. The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b. After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation. RPM will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability

27

whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

c. The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives. Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

**12. FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS.**

a. RPM understands that Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval of the Agreement, submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action; and/or (iii) and Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"). RPM understands that Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable service awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

b. Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon final approval of the Settlement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel

shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Amount is required, then within fifteen (15) business days after receiving notice from RPM of such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction.  Each law firm that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Attorneys' Fees and Expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this paragraph.

        c.     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement.

d.　　Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph.  No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of RPM or the Releasees, under this Agreement.

**13.　　DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION.**

a.　　*Cooperation*. Cooperation by RPM is a material term of the Settlement and shall include the following categories of cooperation, with all disputes concerning the same to be resolved by Judge Crenshaw and the U.S. District Court for the Middle District of Tennessee:

i.　　Within thirty (30) calendar days of executing this Agreement, in addition to any structured data already produced by RealPage and/or RPM, RPM shall produce to Plaintiffs any outstanding structured data consistent with the Parties' negotiated agreement regarding structured data in response to Plaintiffs' First Set of Requests to Owners, Owner-Operators, and Managing Defendants for the Production of Documents and Electronically Stored Information. RPM shall use reasonable efforts to answer reasonable questions concerning its structured data;

ii.　　RPM shall answer reasonable questions concerning any identified deficiencies in its document productions and will not unreasonably deny Plaintiffs a re-production of documents identified as having technical errors or which Plaintiffs are otherwise unable to access or review (i.e. encrypted, password-protected, illegible), and which were produced as responsive in this Action;

30

iii.        RPM shall produce to Plaintiffs any documents produced to any other plaintiffs, or any federal, state, or other domestic regulator, concerning the subject matter of the Action or any allegations within the same factual predicate of the Action within five (5) business days of the execution this Settlement Agreement, and any documents produced to such entities within sixty (60) calendar days after the execution of this Settlement Agreement to be produced to Plaintiffs within five (5) business days following RPM's production of the same to such other plaintiffs, third-parties, or regulators. This includes all deposition transcripts of RPM's personnel and related exhibits from parallel government actions. RPM's obligations under this Paragraph shall terminate within forty-five (45) days after the close of fact discovery in this Action pursuant to the operative case management order;

iv.        In lieu of a Rule 30(b)(6) deposition, within forty-five (45) calendar days of executing this Agreement, RPM shall provide a Certification of Domestic Records of Regularly Conducted Activity pursuant to Federal Rules of Evidence 803(6) and 902(11) per the Parties negotiated agreement;

v.        RPM shall make available one witness for trial, should trial occur, accepting service of a trial subpoena and agreeing to waive any objections under Rule 45(c) of the Federal Rules of Civil Procedure relating to place of compliance;

vi.        RPM shall use reasonable efforts to assist Plaintiffs in authenticating documents and/or things produced in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations or affidavits, or, if declarations or affidavits are not reasonably sufficient, depositions, hearings, and/or at trial(s) as may be necessary for the Action; and

vii.     RPM will consider reasonable requests for additional relevant information about Plaintiffs' claims in the Action from Interim Co-Lead Counsel, taking into account the information it has or will produce in discovery, and whether providing the requested information will be burdensome.

b.     *Arbitration Non-Enforcement*. For a period of five (5) years after the Court enters Final Judgment in this Action as to RPM, with respect to claims relating in any way to, or arising from the same factual predicate of this Action, RPM agrees not to (a) require that any member of the Settlement Class ("Class Member") arbitrate any claims against RPM or against any alleged co-conspirator or co-Defendant; (b) add a provision to any agreements with any Class Member requiring that any claims against RPM be arbitrated; (c) argue that any Class Member or Class Members are required to arbitrate claims against RPM or against any alleged co-conspirator or co-Defendant based on principles of estoppel; and (d) enforce any provisions in any agreements with one or more Class Member(s) purporting to ban collective or class actions against RPM.

c.     *RealPage Data Sharing*. Within thirty (30) calendar days from the Execution Date through to a period of five (5) years following the Court's entry of Final Judgment in this Action as to RPM, as part of setting rental prices or generating rental pricing recommendations for any RPM Property, RPM shall not, within the United States and its territories: (i) disclose Nonpublic Data to any other property manager or property owner; (ii) solicit External Nonpublic Data from any other property manager or property owner; or (iii) use External Nonpublic Data obtained from another property manager or property owner. Nothing in this Paragraph shall apply to communications between RPM and the property owner or manager of a RPM Property as it relates to the subject property, or any other Person providing services to that RPM Property for whom the disclosure of Nonpublic Data is necessary to provide such services.

For avoidance of doubt, the restrictions set forth in this Paragraph apply to External Nonpublic Data and Nonpublic Data obtained through any form, whether directly or through an intermediary, including without limitation, call arounds or market surveys, in-person meetings, calls, text messages, chat communications, emails, surveys, spreadsheets, shared documents (e.g., Google documents and SharePoint documents), industry meetings (e.g., user groups), online fora, private meetings, Revenue Management Solution, or information-exchange service.

d.        Except for the rental prices previously set at any of the Properties while those Properties used RealPage Revenue Management Solutions, through the Execution Date, RPM shall not, within the United States and its territories, use or access, as part of setting rental prices or generating pricing recommendations for any RPM Property, any Nonpublic Data (other than Nonpublic Data of the property owner or manager of the subject RPM Property), or data derived from RealPage that used or relied on such Nonpublic Data, in RPM's possession, custody, or control as of the Execution Date, acquired through any means.

e.        *Use of RealPage RMS*.  For the avoidance of doubt, nothing herein shall prohibit RPM from licensing or using a Revenue Management Solution (including LRO, AIRM, and YieldStar, or any future iterations) at any of its Properties that complies with the terms of the agreed Proposed Final Judgement between the United States and RealPage filed in *United States et al. v. RealPage et al.* (currently docketed as No. 1:24-cv-00710 in the Middle District of North Carolina).

**14.        TERMINATION AND RESCISSION**.

a.        *Rejection or Alteration of Settlement Terms*.  If (i) the Court refuses to grant preliminary or final approval of this Agreement or certify the Settlement Class or such grant or certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to RPM

33

or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs exceed ten percent of Settlement Class Members and RPM elects to revisit the terms of this Settlement, then the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement automatically terminates, unless an extension is otherwise agreed upon by the Parties.  Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement Agreement, RPM and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination is appropriate, unless an extension is otherwise agreed upon by the Parties.  A refusal to approve or modification or reversal on appeal based solely on or relating solely to the Settlement Class Counsel's fees and expenses award and/or Plan of Allocation shall not be deemed a refusal to approve or modification of the terms of this Settlement Agreement.

b.      *Termination of Settlement*.   In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Class Notice and costs of administration of the Settlement Fund, if any, shall be refunded by the escrow agent to RPM pursuant to written instructions from RPM's Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of February 4, 2026, and without waiver of any positions asserted in the Action prior to that date.  Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c.      Plaintiffs, the Settlement Class, Settlement Class Counsel, and RPM agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor

content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by RPM or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly or indirectly except in a proceeding to enforce or interpret this Settlement Agreement. Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms.

15. **COVENANT NOT TO SUE**. The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims. Plaintiffs and RPM agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

16. **RPM RELEASE**. Pending the Effective Date, RPM agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the pending Action. Upon the Effective Date, RPM shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against RPM, except for claims relating to the enforcement of the Settlement.

35

17. <u>**No Admission of Liability**</u>.  RPM denies all allegations of wrongdoing in the Action.  Nothing in this Settlement Agreement constitutes an admission by RPM as to the merits of the allegations made in the Action.  The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by RPM, or any Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, and shall not be used against RPM or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against RPM or the Releasees.

18. <u>**Joint and Several Liability Preserved**</u>.  This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than RPM and the Releasees.  All claims against such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class.  RPM's and the other Releasees' pricing of multifamily housing rental properties for the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than RPM and the other Releasees.  RPM and the Releasees shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount and the amounts specifically agreed to in Paragraphs 5 and 10.

19. <u>**Confidentiality**</u>.  The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain

confidential until publicly filed with the Court for approval. Nothing in Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel. Similarly, nothing in this Paragraph 19 shall prohibit RPM or any Releasee from making general disclosures as necessary to comply with the securities laws and other obligations, as well as in its public filings. Following the Execution Date, RPM and Plaintiffs may inform other parties that they have executed a settlement agreement. In addition, nothing in this Paragraph 19 shall prohibit RPM from disclosing to its clients or customers that it is under a legal obligation not to disclose, solicit, or use certain data as required by Paragraph 13.c. of this Settlement Agreement.

20. **CAFA**. RPM shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

21. **CONTINUING JURISDICTION**. The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and RPM, including challenges to the reasonableness of any party's actions. RPM will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction. The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22. **ENTIRE AGREEMENT**. This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and RPM pertaining to this Settlement of the Action against RPM, and supersedes all prior and contemporaneous undertakings, communications,

representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and RPM in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and RPM and approved by the Court.

23. **BINDING EFFECT**. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and RPM. Without limiting the generality of the foregoing, upon the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than RPM, which is a party to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

24. **EXECUTION IN COUNTERPARTS**. This Agreement may be executed in counterparts by Plaintiffs and RPM, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25. **NOTICE**. Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

26. **PRIVILEGE**. Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

27. **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**. Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement. Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28. **NO PARTY IS THE DRAFTER**. This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for RPM. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29. **HEADINGS**. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30. **OPPORTUNITY TO CURE**. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party

39

with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

31. **GOVERNING LAW**. All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles.

32. **REASONABLE EXTENSIONS**. Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

33. **COUNSEL'S EXPRESS AUTHORITY**. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

Case 3:23-md-03071     Document 1398-2     Filed 05/14/26     Page 384 of 468 PageID #: 22353

Dated: March 13, 2026

For Plaintiffs:

Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com

Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com

Swathi Bojedla
Hausfeld LLP
1200 17th St., NW, Suite 600
Washington, DC 20036
sbojedla@hausfeld.com

Dated:

For RPM

By: _____

Printed Name: _Jason Berkowitz_

Title: _Chief Executive Officer_

**APPROVED AS TO FORM:**

By: _____

Printed Name:  Nicole L. Castle

Title:   Partner, Vinson & Elkins LLP

Dated:   March 13, 2026

# EXHIBIT A-36
## Sares Regis

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-MD-3071<br>MDL No. 3071<br><br>**This Document Relates to:**<br>**ALL CASES**<br><br>**Hon. Judge Waverly D. Crenshaw, Jr.** |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of April 30, 2026 ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and Sares Regis Management Company, L.P. ("Sares Regis" and collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs are prosecuting claims against Sares Regis and other Defendants for allegedly conspiring to fix and inflate the price of multifamily rental housing across the country on their own behalf and on behalf of the Settlement Class in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[1] (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of Sares Regis's alleged participation in an unlawful conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for

---

[1] The actions currently centralized in MDL No. 3071 include Cases No. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

residential units nationwide and to exchange competitively sensitive information about rental pricing in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Second Amended Consolidated Class Action Complaint, ECF No. 530;

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from Sares Regis's alleged conduct;

WHEREAS, Sares Regis denies Plaintiffs' allegations, denies any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against it in the Action, and asserts that it has a number of valid defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against Sares Regis, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the Settlement Amount (defined below) and the value of the cooperation that Sares Regis has agreed to provide pursuant to this Agreement;

WHEREAS, Sares Regis, despite its belief that it is not liable for the claims asserted by Plaintiffs and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement;

2

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date does not occur;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to Sares Regis, subject to Court approval, on the following terms and conditions:

1.  **GENERAL DEFINITIONS**.  The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a.  "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

b.  "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

c.  "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

3

d.      "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

e.      "Competitively Sensitive Information" means property-specific data or information (whether past, present, or prospective) that is not readily accessible to the general public which, individually or when aggregated with such data or information from other properties, (1) could be reasonably used to determine current or future rental supply, demand, or pricing at a property or of any property's units, including but not limited to executed rents, rental price concessions or discounts, guest traffic, guest applications, occupancy or vacancy, or lease terms or lease expirations; (2) relates to the property owner's or property manager's use of settings or user-specified parameters within Revenue Management Products with respect to such property or properties; or (3) relates to the property owner's or property manager's rental pricing formula, or strategy, including rental price concessions or discounts, in each case, with respect to such property or properties.

f.      "Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (Dkt. 530, re-filed across the consolidated cases at Dkt. 728).

g.      "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

h.      "Defendants" means those Defendants named in Plaintiffs' Complaint (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP;

4

Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Property Trust, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

i. "Effective Date" shall have the meaning set forth in Paragraph 2 of this Settlement Agreement.

j. "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

k. "Execution Date" means the latest date of the execution of this Agreement by all Parties.

l. "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement

Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

m. "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses; (b) Notice and Administration Expenses; (c) any Fee and Expense Award; (d) any Service Awards to Plaintiffs; and (e) other fees and expenses, if any, authorized by the Court.

n. Nonpublic Data" means any Competitively Sensitive Information that is not Public Data.

o. "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow Agent (if any). All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

p. "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

q. "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

r. "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

s.      "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

t.      "Public Data" means information on a rental unit's asking price (including publicly offered concessions), amenities, and availability that is readily accessible to the general public, such as on the property's website, at a physical building, in brochures, or on an internet listing service. Public Data includes information on a rental unit's asking price, concessions, amenities, and availability provided by a property manager or a property owner to any natural person who reasonably presents himself as a prospective renter. Public Data does not include any Competitively Sensitive Information obtained through communications between competitors.

u.      "Sares Regis's Counsel" means Allen Matkins Leck Gamble Mallory & Natsis LLP.

v.      "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes, individually and on behalf of Settlement Class Members.

w.      "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

7

x.    "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

y.    "Preliminary Approval Order" and "Preliminary Approval" mean the order preliminarily approving the Settlement.

z.    "Properties" means all multifamily rental properties managed and/or owned by Sares Regis that at any point during the Settlement Class Period were subject to a license for RealPage's Revenue Management Solutions pricing recommendations for multifamily rental units

aa.    "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

bb.    "Releasees" means Sares Regis and any and all of its past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind. However, the release will not cover other Defendants or any third-party that is unaffiliated with Sares Regis holding ownership interest of any kind in any properties for which Sares Regis provides management services, even if such owners are Sares Regis's past, present, or future direct and indirect parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators,

8

beneficiaries, and representatives of any kind solely to the extent a claim arises from such person's ownership of a multifamily property.

cc.     "Releasors" means Plaintiffs, the Settlement Class, and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, or through the Releasors, with such claiming parties to include any and all of Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

dd.     "Revenue Management Solutions" or "RMS" means Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM").

ee.     "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

ff.     "Settlement Administrator" means Angeion Group, LLC appointed by the Court to disseminate Class Notice of settlement agreements reached in this matter as of the Execution Date (ECF 1313), or other professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of Settlement to the

9

Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

gg.    "Settlement Amount" shall be USD $3,000,000 (three million dollars) as specified in Paragraph 5.

hh.    "Settlement Class" means the class defined in Paragraph 3 below.

ii.    "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

jj.    "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

kk.    "Settlement Class Period" means from October 18, 2018, until November 21, 2025.

ll.    "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

mm.    "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

nn.    "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Sares Regis with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

2.    **APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST SARES REGIS**.

a.	Sares Regis shall use its reasonable best efforts in connection with Plaintiffs' Counsel's motions for approval of this Settlement and any related documents necessary to effectuate and implement the terms and conditions of this Settlement Agreement. Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement.

b.	Plaintiffs shall, within one (1) week from the Execution Date, submit to the Court a motion to substitute Sares Regis Management Company, L.P., for Sares Regis Group Commercial, Inc., as the named defendant to the Complaint.

c.	Plaintiffs shall, not longer than three (3) months from the Execution Date absent agreement between the Parties or by order of Court, submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

d.	Within thirty (30) calendar days after the Execution Date, or as soon thereafter as is practicable, Sares Regis shall supply Plaintiffs with the contact information of Settlement Class Members who rented multifamily housing units in Properties managed and/or owned by Sares Regis during the Settlement Class Period, to the extent such information has not already been provided. The contact information shall be provided in a mutually agreeable electronic format. Plaintiffs shall use their reasonable best efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering this Settlement. The Settlement Administrator and Plaintiffs may request from Sares Regis

11

additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this Agreement, and Sares Regis will not unreasonably deny any such additional requests or fail to timely produce such data, if available.

e.  Plaintiffs shall submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion").  The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

f.  Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and Sares Regis shall agree upon, and such agreement will not be unreasonably withheld.  The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

i.  certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii.  approving finally this Settlement and its terms as being  fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

iii.  directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4)

iv.  directing that Sares Regis shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of

that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Sares Regis (as provided for in Paragraph 16);

v. directing that the Action (including the Complaint) be dismissed as to Sares Regis with prejudice, and except as provided for in this Agreement, without costs;

vi. reserving to the Court the exclusive jurisdiction over this Settlement and this Agreement, including the interpretation, administration, and consummation of this Settlement, as well as over Sares Regis for its provision of cooperation pursuant to this Agreement;

vii. determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to Sares Regis shall be final;

viii. providing that Plaintiffs and Sares Regis have each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure; and

ix. providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any (a) non-settling Defendant to contest certification of any other class proposed in the Action, or of (b) Sares Regis's right to contest certification of any other proposed class in the Action should this Agreement not become final as described in subsection (f) to this Paragraph; (2) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify any class in the Action or on the Court's rulings concerning any Defendant's motion; and (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

13

g.      This Agreement shall become final and be deemed to have received final approval when (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 3, approved this Agreement under Federal Rule of Civil Procedure 23(e), and entered a final judgment dismissing the Action with prejudice as to Sares Regis without costs other than those provided for in this Agreement; and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to Sares Regis described in (i) hereof has expired in the Action or, if appealed, approval of this Agreement and the order and final judgment in the Action as to Sares Regis have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review (the "Effective Date").  It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.  On the Execution Date, Plaintiffs and Sares Regis shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

3.      **CERTIFICATION OF A SETTLEMENT CLASS**.  Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any owner, manager and/or owner-operator (including to any division, subsidiary, predecessor, agent or affiliate of any owner, manager and/or owner-operator) on a property subject to a license for RealPage's Revenue Management Solutions, Lease Rent Options ("LRO"), YieldStar ("YS"), and/or AI Revenue Management ("AIRM") ("RealPage's RMS") at any time during the period of October 18, 2018 through November 21, 2025 (the "Settlement Class Period").  Specifically excluded from this Class are Opt-Outs; Defendants; any entity licensing RealPage's RMS, the officers or directors of any entity licensing RealPage's RMS and any entity in which any entity licensing RealPage's RMS has a controlling interest; any affiliate, legal representative, heir or assign of any entity licensing RealPage's RMS; federal, state, or local governments; states and their subdivisions, agencies, and instrumentalities;

14

any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action.

Sares Regis agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. If the Effective Date does not occur, Sares Regis shall have the full ability to oppose any motion for certification of a litigation class, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against Sares Regis.

**4.** **SETTLEMENT CLASS'S RELEASE**.

a. Upon the occurrence of the Effective Date and in consideration of the payment by Sares Regis of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph 13 of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees from any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had or now have directly, representatively, derivatively or in any other capacity against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, arising from or in connection with any act or omission through the end of the Class Period relating to the Properties and arising from the same factual predicate of the Action, including but not limited to Sares Regis's alleged participation in a conspiracy to fix or inflate the price of multifamily residential lease prices through the use of RealPage, Inc.'s Revenue

15

Management Solutions including Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM"), and any joint and several liability claim(s) against Sares Regis related to or arising from the same factual predicate of this Action (the "Released Claims"). Released Claims shall not include: (i) claims asserted against any Defendant or co-conspirator other than Sares Regis, or any owner of any of the Properties other than Sares Regis; (ii) any claims wholly unrelated to the allegations in the Complaint or that may exist as a result of a landlord-tenant relationship between the Parties, including claims based on breach of contract, state landlord-tenant regulation, negligence, and personal injury; (iii) claims relating to the enforcement of the Settlement or its terms; or (iv) claims of any person or entity that submits a request for exclusion and whose request is accepted by the Court;.

b.     In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein. Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

c.     The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

d.		The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by Sares Regis that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

**5.**		**SETTLEMENT AMOUNT**.

a.		Sares Regis agrees that an amount equal to USD $3,000,000, all in cash, will be paid on behalf of Sares Regis as the Settlement Amount in settlement of the Action, inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action. The payment described above shall constitute the total amount to be paid by Sares Regis in settlement of these claims. The Settlement Amount shall be paid into an interest-bearing escrow account (the "Escrow Account") maintained by an escrow agent on behalf of the Settlement Class in four equal payments as follows: the first payment, in the amount of USD $750,000, shall be made within sixty (60) calendar days of the order granting Preliminary Approval of this settlement agreement. The second payment, in the amount of USD $750,000, shall be made within one hundred fifty (150) calendar days of the order granting Preliminary Approval. The third payment, in the amount of $750,000, shall be made within two hundred forty (240) calendar days of the order granting Preliminary Approval. The final payment, in the amount of $750,000, shall be made three hundred thirty (330) calendar days

17

of the order granting Preliminary Approval . The Parties agree and acknowledge that none of the Settlement Amount paid by Sares Regis under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.  Under no circumstances shall Sares Regis's total payment under this settlement agreement exceed USD $3,000,000.

b.　　If Sares Regis (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified above, then Settlement Class Counsel, in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

c.　　The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement, and there will be no reversion of settlement funds to Sares Regis, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, if the Settlement becomes final. Upon the occurrence of the Effective Date, neither Sares Regis, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of Sares Regis's insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

6.　　**ESCROW ACCOUNT**.  An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel.  The Escrow Account shall be administered under the Court's continuing supervision and control.

a. Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b. The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

19

c.        Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

d.        The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

e.        In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to Sares Regis via wire transfer all funds remaining in the Escrow Account at that time, less any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante. Sares Regis shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective. Settlement Class Counsel shall ensure that the Settlement Administrator also provides Sares Regis full and complete information related to the Escrow Account to enable Sares Regis to determine whether any taxes may be owed on the funds returned to Sares Regis.

**7.**      **TAX TREATMENT**.

a.      The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and Sares Regis, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation §1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

b.      For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treas. Reg. §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

c. All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, Sares Regis and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses. Plaintiffs and Sares Regis agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

d. Sares Regis, Releasees, and Sares Regis's Counsel shall have no liability for or obligations relating to Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each Sares Regis, Releasees, and Sares Regis's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

e. Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

**8.**     <u>CLASS ADMINISTRATION AND NOTICE</u>.  Settlement Class Counsel has retained Angeion Group, LLC as Settlement Administrator responsible for all aspects of settlement administration in this Action.  Such Settlement Administrator shall be approved by the Court in connection with this Settlement, and, if approved, overseen by Settlement Class Counsel.  Sares Regis will not have any involvement in the claims administration process, or the plan of allocation of the settlement proceeds. Settlement Class Counsel, in their sole discretion, may replace, and/or retain one or more additional and/or alternate Settlement Administrator(s). Such Settlement Administrator(s) shall be approved by the Court in connection with this Settlement, and, if approved, overseen by Settlement Class Counsel.  Sares Regis will not have any involvement in the selection of the Settlement Administrator(s). The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement.  In no event shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

a.     At no time and under no circumstances shall Plaintiffs, Sares Regis, Settlement Class Counsel, Plaintiffs' Counsel, Sares Regis's Counsel, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

b.     Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs.  The

Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs. The procedures for submitting claims shall conform to the procedures outlined below.

c. Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form. Each Claim Form must be signed under the penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

d. All Claim Forms must be received by the Settlement Administrator within the time prescribed in the plan for Notice as approved by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted. No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e. Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

24

f.       Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

g.       Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h.       All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process.  All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein.  The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

25

i.       No Person shall have any claim against Sares Regis, Sares Regis's Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

9.       **EXCLUSIONS**.

a.       Sares Regis reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

b.       A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice.   Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

c.       Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

d.       Sares Regis or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

10.       **PAYMENT OF EXPENSES**.  Subject to Court approval, disbursements for payment of Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to Sares Regis, its insurance carriers, or any other person or entity who or which funded the Settlement Amount,  in the event this Settlement Agreement is disapproved, rescinded, or

26

otherwise fails to become effective, to the extent such expenses have actually been expended or incurred. Any refund that becomes owed to Sares Regis if this Settlement does not become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court. Other than as set forth in this Paragraph, Sares Regis shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs. To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action and to apportion the costs of notice and administration in an equitable manner across the applicable settlements.

**11.** **THE SETTLEMENT FUND**.

a. The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b. After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation. Sares Regis will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

c.     The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives.  Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

**12.     FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS**.

a.     Sares Regis understands that Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval of the Agreement, submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action; and/or (iii) and Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award").  Sares Regis understands that Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable service awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

b.     Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon final approval of the Settlement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their

28

assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Amount is required, then within fifteen (15) business days after receiving notice from Sares Regis of such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction. Each law firm that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Attorneys' Fees and Expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this paragraph.

c. The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement.

d. Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to

attorneys' fees, costs, or expenses or any other aspect of this Paragraph. No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of Sares Regis or the Releasees, under this Agreement.

13. **DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION**.

a. *Cooperation.* Cooperation by Sares Regis according to the terms set forth below is a material term of the Settlement and shall include the following categories of cooperation, with all disputes concerning the same to be resolved by Judge Crenshaw and the U.S. District Court for the Middle District of Tennessee:

i. Sares Regis has completed its structured data production. Sares Regis shall be prepared to answer reasonable questions concerning its structured data with reasonable notice from Plaintiffs;

ii. Sares Regis has completed its document production. Sares Regis will not unreasonably deny Plaintiffs a re-production of documents identified as having technical errors or which Plaintiffs are otherwise unable to access;

iii. Sares Regis shall produce to Plaintiffs any documents not produced to Plaintiffs that were produced to any other plaintiffs, or any federal, state, or other domestic regulator, concerning the subject matter of the Action or any allegations within the same factual predicate of the Action within five (5) business days of the execution this Agreement, with any documents produced to such entities after execution of this Agreement to be produced five (5) business days after their production to such other plaintiffs or regulators;

30

iv. Sares Regis shall use reasonable efforts to assist Plaintiffs in authenticating documents and/or things produced in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations or affidavits, or, if declarations or affidavits are not reasonably sufficient, depositions, hearings, and/or at trial(s) as may be necessary for the Action; and

v. Sares Regis will consider reasonable informal requests for additional relevant information about Plaintiffs' claims in the Action from Interim Co-Lead Counsel, taking into account the information it has produced in discovery, other productions and information obtained, and whether providing the requested information will be burdensome.

b. **<u>Arbitration Non-Enforcement</u>**. For a period of five (5) years after the Court enters Final Judgment in this Action, with respect to claims relating in any way to, or arising from the same factual predicate of this Action, Sares Regis agrees not to (a) require that any member of the Settlement Class ("Class Member") arbitrate any claims against Sares Regis; (b) add a provision to any agreements with any Class Member requiring that any such claims against Sares Regis be arbitrated; (c) argue that any Class Member or Class Members are required to arbitrate claims against Sares Regis or against any alleged co-conspirator or co-Defendant based on principles of estoppel; and (d) enforce any provisions in any agreements with one or more Class Member(s) purporting to ban collective or class actions against Sares Regis.

c. **<u>RealPage Data Sharing</u>**. For a period of five (5) years after the Court enters Final Judgment in this Action, or such shorter time or less restrictive injunctive relief that the Court may order, Sares Regis shall (a) not provide to RealPage, Inc., any Nonpublic Data concerning multifamily residential leases, or permit RealPage, Inc., or any other company providing revenue

31

management services that Sares Regis knows or should have known uses as an input Nonpublic Data provided to RealPage, Inc. by Sares Regis's competitors to share Sares Regis's Nonpublic Data concerning multifamily residential leases for use in revenue management services; and (b) not license or use any revenue management service or program that is not compliant with the terms of the Proposed Final Judgment between the United States and RealPage in *United States et al. v. RealPage et al.* (currently docketed at No. 1:24-cv-00710, Dkt. 159-1, entered March 26, 2026 (Dkt. 182), in the Middle District of North Carolina). Settlement Class Counsel may consent, or Sares Regis may petition the Court, to delete or modify this provision based upon changed circumstances.

**14.** **TERMINATION AND RESCISSION**.

a. *Rejection or Alteration of Settlement Terms.* If (i) the Court refuses to grant preliminary or final approval of this Agreement or certify the Settlement Class or such grant or certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to Sares Regis or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs exceed ten percent of Settlement Class Members and Sares Regis elects to revisit the terms of this Settlement, then the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement automatically terminates, unless an extension is otherwise agreed upon by the Parties. Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement Agreement, Sares Regis and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination is appropriate, unless an extension is otherwise agreed upon by the Parties. A refusal to approve or modification or reversal on appeal based solely on or relating solely to the Settlement Class Counsel's fees and

expenses award and/or Plan of Allocation shall not be deemed a refusal to approve or modification of the terms of this Settlement Agreement.

b.    *Termination of Settlement.*    In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Class Notice and costs of administration of the Settlement Fund, if any, shall be refunded by the escrow agent to Sares Regis pursuant to written instructions from Sares Regis's Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of April 30, 2026, and without waiver of any positions asserted in the Action prior to that date.    Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c.    Plaintiffs, the Settlement Class, Settlement Class Counsel, and Sares Regis agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by Sares Regis or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly or indirectly except in a proceeding to enforce or interpret this Settlement Agreement.    Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing

33

the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms.

15. **COVENANT NOT TO SUE**.  The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims. Plaintiffs and Sares Regis agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

16. **SARES REGIS RELEASE**.  Pending the Effective Date, Sares Regis agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the pending Action. Upon the Effective Date, Sares Regis shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Sares Regis, except for claims relating to the enforcement of the Settlement.

17. **NO ADMISSION OF LIABILITY**.  The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by Sares Regis, or any Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, and shall not be used against Sares Regis or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against Sares Regis or the Releasees.

34

18.   **JOINT AND SEVERAL LIABILITY PRESERVED**.  This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than Sares Regis and the Releasees.  All claims against such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class.  Sares Regis's and the other Releasees' pricing of multifamily housing rental properties for the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than Sares Regis and the other Releasees.  Sares Regis and the Releasees shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount and the amounts specifically agreed to in Paragraphs 5 and 10.

19.   **CONFIDENTIALITY**.  The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain confidential until publicly filed with the Court for approval.  Nothing in Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel.  Similarly, nothing in this Paragraph 19 shall prohibit Sares Regis or any Releasee from making general disclosures as necessary to comply with the securities laws and other obligations, as well as in its public filings.  Following the Execution Date, Sares Regis and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement.

20.   **CAFA**.  Sares Regis shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

21. **CONTINUING JURISDICTION**.  The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Sares Regis, including challenges to the reasonableness of any party's actions.  Sares Regis will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction.  The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22. **ENTIRE AGREEMENT**.  This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and Sares Regis pertaining to this Settlement of the Action against Sares Regis, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and Sares Regis in connection herewith.  This Agreement may not be modified or amended except in writing executed by Plaintiffs and Sares Regis and approved by the Court.

23. **BINDING EFFECT**.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and Sares Regis.  Without limiting the generality of the foregoing, upon the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors.  The Releasees (other than Sares Regis, which is a party to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.  Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon

or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

24.     **EXECUTION IN COUNTERPARTS**.  This Agreement may be executed in counterparts by Plaintiffs and Sares Regis, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25.     **NOTICE**.  Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

26.     **PRIVILEGE**.  Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

27.     **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**.  Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement.  Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation

with competent legal counsel.  Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28.  **NO PARTY IS THE DRAFTER**.  This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for Sares Regis.  None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29.  **HEADINGS**.  The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30.  **OPPORTUNITY TO CURE**.  If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

31.  **GOVERNING LAW**.  All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles.

32.  **REASONABLE EXTENSIONS**.  Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

33.  **COUNSEL'S EXPRESS AUTHORITY**.  Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

38

Dated: 05/01/2026

For the Plaintiffs:

_____
Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com


_____
Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com


_____
Swathi Bojedla
Hausfeld LLP
1200 17th St., NW, Suite 600
Washington, DC 20036
sbojedla@hausfeld.com

39

Docusign Envelope ID: E2BB6854-5C18-41BE-A49D-172D514EF1E1

Dated: ___4/30/2026___, 2026

For Sares Regis:

**Signed by:**

*Chris Payne*

E8440D1CE5304EC...

_____
CHRIS PAYNE

# EXHIBIT A-37
## Crow Defendants

Docusign Envelope ID: D0A6B718-2DCE-4898-B96D-56A558EA8DEA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | Case No. 3:23-MD-3071<br>MDL No. 3071<br><br>This Document Relates to:<br>ALL CASES<br><br>Hon. Judge Waverly D. Crenshaw, Jr. |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of April 15, 2026 ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and Crow Holdings, L.P., Trammell Crow Residential Company, Maple Multi-Family Operations L.L.C., and Maple Multi-Family Development L.L.C. (together, the "Crow Defendants" and collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs are prosecuting claims against Crow Defendants and other Defendants for allegedly conspiring to fix and inflate the price of multifamily rental housing across the country on their own behalf and on behalf of the Settlement Class in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[1] (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of Crow Defendants' alleged participation

---

[1] The actions currently centralized in MDL No. 3071 include Cases No. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

1

in an unlawful conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for residential units nationwide and to exchange competitively sensitive information about rental pricing in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Second Amended Consolidated Class Action Complaint, ECF No. 530;

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from Crow Defendants' alleged conduct;

WHEREAS, Crow Defendants deny Plaintiffs' allegations, deny any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against them in the Action, and asserts that they have a number of valid defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against the Crow Defendants, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the Settlement Amount (defined below) and the value of the cooperation that Crow Defendants have agreed to provide pursuant to this Agreement;

WHEREAS, Crow Defendants, despite their belief that they are not liable for the claims asserted by Plaintiffs and their belief that they have good defenses thereto, have nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement;

2

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date does not occur;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to Crow Defendants,  subject to Court approval, on the following terms and conditions:

1.      **GENERAL DEFINITIONS**.  The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a.      "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

b.      "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

c.      "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

3

d.      "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

e.      "Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (Dkt. 530, re-filed across the consolidated cases at Dkt. 728).

f.      "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

g.      "Defendants" means those Defendants named in Plaintiffs' Complaint (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Property Trust, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive

4

Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

h.    "Effective Date" shall have the meaning set forth in Paragraph 2 of this Settlement Agreement.

i.    "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

j.    "Execution Date" means the latest date of the execution of this Agreement by all Parties.

k.    "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

l.    "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses; (b) Notice and Administration Expenses; (c) any Fee and Expense Award; (d) any Service Awards to Plaintiffs; and (e) other fees and expenses, if any, authorized by the Court.

m.    "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow

Agent (if any). All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

n. "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

o. "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

p. "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

q. "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

r. "Crow Defendants' Counsel" means Jackson Walker LLP and Sims | Funk PLC.

s. "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes, individually and on behalf of Settlement Class Members.

t. "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey

6

Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

u.    "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

v.    "Preliminary Approval Order" and "Preliminary Approval" mean the order preliminarily approving the Settlement.

w.    "Properties" means all multifamily rental properties managed and/or owned by Crow Defendants that at any point during the Settlement Class Period were subject to a license for RealPage's Revenue Management Solutions pricing recommendations for multifamily rental units.

x.    "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

y.    "Releasees" means Crow Defendants and any and all past and present parents and subsidiaries, affiliates, and their respective principals, owners, officers, directors, shareholders, partners, members, agents, employees, corporate successors, and assigns or future direct and indirect parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind. However, the release will not cover other Defendants, or any other unaffiliated owner or property management company other than the Crow Defendants, or any claim that may be asserted against persons or entities (that

7

are not affiliates of the Crow Defendants) with whom Crow Defendants or one or more of its affiliates has a partnership, joint venture, or co-investor relationship.

z. "Releasors" means Plaintiffs, the Settlement Class, and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, or through the Releasors, with such claiming parties to include any and all of Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

aa. "Revenue Management Solutions" or "RMS" means Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM").

bb. "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

cc. "Settlement Administrator" means Angeion Group, LLC appointed by the Court to disseminate Class Notice of settlement agreements reached in this matter as of the Execution Date (ECF 1313), or other professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of Settlement to the

8

Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

dd.     "Settlement Amount" shall be USD $2,125,000 (two-million one-hundred twenty-five thousand U.S. dollars) as specified in Paragraph 5.

ee.     "Settlement Class" means the class defined in Paragraph 3 below.

ff.     "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

gg.     "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

hh.     "Settlement Class Period" means from October 18, 2018 until November 21, 2025.

ii.     "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

jj.     "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

kk.     "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Crow Defendants with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

2.     **APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST CROW DEFENDANTS**.

9

a.      Crow Defendants shall use reasonable best efforts, excluding additional monetary payment, in connection with Plaintiffs' Counsel's motions for approval of this Settlement and any related documents necessary to effectuate and implement the terms and conditions of this Settlement Agreement.  Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement.

b.      Plaintiffs shall, not longer than three (3) months from the Execution Date absent agreement between the Parties or by order of Court, submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

c.      Within thirty (30) calendar days after the Execution Date, or as soon thereafter as is practicable, Crow Defendants shall supply Plaintiffs with any reasonably available contact information of Settlement Class Members who rented multifamily housing units in Properties managed and/or owned by Crow Defendants, during such time of Crow Defendants' ownership or management, during the Settlement Class Period. The contact information shall be provided in a mutually agreeable electronic format. Plaintiffs shall use their reasonable best efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering this Settlement.  The Settlement Administrator and Plaintiffs may request from Crow Defendants additional data reasonably necessary to effectuate the Class Notice

10

ordered by the Court and/or administer this Agreement, and Crow Defendants will not unreasonably deny any such additional requests or fail to timely produce such data, if available.

d. Plaintiffs shall submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion"). The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

e. Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and Crow Defendants shall agree upon, and such agreement will not be unreasonably withheld. The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

i. certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii. approving finally this Settlement and its terms as being fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

iii. directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4)

iv. directing that Crow Defendants shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Crow Defendants (as provided for in Paragraph 16);

11

v.    directing that the Action (including the Complaint) be dismissed as to Crow Defendants with prejudice, and except as provided for in this Agreement, without costs;

vi.    reserving to the Court the exclusive jurisdiction over this Settlement and this Agreement, including the interpretation, administration, and consummation of this Settlement, as well as over Crow Defendants for their provision of cooperation pursuant to this Agreement;

vii.    determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to Crow Defendants shall be final;

viii.    providing that Plaintiffs and Crow Defendants have each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure; and

ix.    providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any (a) non-settling Defendant to contest certification of any other class proposed in the Action, or of (b) Crow Defendants' right to contest certification of any other proposed class in the Action should this Agreement not become final as described in subsection (f) to this Paragraph; (2) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify any class in the Action or on the Court's rulings concerning any Defendant's motion; and (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

12

f.      This Agreement shall become final and be deemed to have received final approval when (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 3, approved this Agreement under Federal Rule of Civil Procedure 23(e), and entered a final judgment dismissing the Action with prejudice as to Crow Defendants without costs other than those provided for in this Agreement; and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to Crow Defendants described in (i) hereof has expired in the Action or, if appealed, approval of this Agreement and the order and final judgment in the Action as to Crow Defendants have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review (the "Effective Date"). It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and Crow Defendant shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

3.      **CERTIFICATION OF A SETTLEMENT CLASS**.  Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any owner, manager and/or owner-operator (including to any division, subsidiary, predecessor, agent or affiliate of any owner, manager and/or owner-operator) on a property subject to a license for RealPage's Revenue Management Solutions, Lease Rent Options ("LRO"), YieldStar ("YS"), and/or AI Revenue Management ("AIRM") ("RealPage's RMS") at any time during the period of October 18, 2018 through November 21, 2025 (the "Settlement Class Period"). Specifically excluded from this Class are Opt-Outs; Defendants; any entity licensing RealPage's RMS, the officers or directors of any entity licensing RealPage's RMS and any entity in which any entity licensing RealPage's RMS has a controlling interest; any affiliate, legal representative, heir or assign of any entity licensing RealPage's RMS and federal, state, or local government; states and their subdivisions, agencies, and

13

Docusign Envelope ID: D0A6B718-2DCE-4898-B96D-56A558EA8DEA

instrumentalities; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action.

Crow Defendants agree that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. If the Effective Date does not occur, Crow Defendants shall have the full ability to oppose any motion for certification of a litigation class, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against Crow Defendants.

**4.** **SETTLEMENT CLASS'S RELEASE**.

a. Upon the occurrence of the Effective Date and in consideration of the payment by Crow Defendants of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph 13 of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees from any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had or now have directly, representatively, derivatively or in any other capacity against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, arising from or in connection with any act or omission through the end of the Class Period relating to the Properties and arising from the same factual predicate of the Action, including but not limited to Crow Defendants' alleged participation in a conspiracy to fix or inflate the price of multifamily residential lease prices through the use of RealPage, Inc.'s

14

Revenue Management Solutions including Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM"), and any joint and several liability claim(s) against Crow Defendants related to or arising from the same factual predicate of this Action (the "Released Claims"). Released Claims shall not include: (i) claims asserted against any Defendant or co-conspirator other than Crow Defendants, or any owner of any of the Properties other than Crow Defendants; (ii) any claims wholly unrelated to the allegations in the Complaint or that may exist as a result of a landlord-tenant relationship between the Parties, including claims based on breach of contract, state landlord-tenant regulation, negligence, and personal injury; (iii) claims relating to the enforcement of the Settlement or its terms; (iv) claims of any person or entity that submits a request for exclusion and whose request is accepted by the Court; and (v) claims that may be asserted against persons or entities (that are not affiliates of Crow Defendants) but with whom Crow Defendants or one or more of their affiliates has a partnership, joint venture, or co-investor relationship.

b.      In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein. Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

15

c.     The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

d.     The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by Crow Defendants that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

**5.     SETTLEMENT AMOUNT.**

a.     Crow Defendants agree that an amount equal to USD $2,125,000 (two million one-hundred twenty five thousand U.S. dollars), all in cash, will be paid on behalf of Crow Defendants as the Settlement Amount in settlement of the Action, inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action. The payment described above shall constitute the total amount to be paid by Crow Defendants in settlement of these claims. The Settlement Amount shall be paid into an interest-bearing escrow account (the "Escrow Account") maintained by an escrow agent on behalf of the Settlement Class, within thirty (30) business days of the later of either the Court's grant of preliminary approval, or Plaintiffs providing all necessary information for their escrow agent after the Execution Date. The Parties agree and acknowledge that none of

16

the Settlement Amount paid by Crow Defendants under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

b. If Crow Defendants (or any successors) do not pay or cause to be paid the Settlement Amount in full within the time period specified above, then Settlement Class Counsel, in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

c. The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement, and there will be no reversion of settlement funds to Crow Defendants, their insurance carriers, or any other person or entity who or which funded the Settlement Amount, if the Settlement becomes final. Upon the occurrence of the Effective Date, neither Crow Defendants, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of Crow Defendants' insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

6. **ESCROW ACCOUNT**. An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel. The Escrow Account shall be administered under the Court's continuing supervision and control.

a. Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from

17

the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b.      The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

c.      Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses

18

payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

d.       The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses; (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

e.       In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to Crow Defendants via wire transfer all funds remaining in the Escrow Account at that time, less any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante.  Crow Defendants shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective.  Settlement Class Counsel shall ensure that the Settlement Administrator also provide Crow Defendants full and complete information related to the Escrow Account to enable Crow Defendants to determine whether any taxes may be owed on the funds returned to Crow Defendants.

7.       **TAX TREATMENT**.

a.       The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the

19

Docusign Envelope ID: D0A6B718-2DCE-4898-B96D-56A558EA8DEA

meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and Crow Defendants, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation §1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

b. For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treas. Reg. §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

c. All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, Crow Defendants and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration

20

of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses.  Plaintiffs and Crow Defendants agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

d. Crow Defendants, Releasees, and Crow Defendants' Counsel shall have no liability for or obligations relating to Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each Crow Defendants, Releasees, and Crow Defendants' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

e. Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

**8.** **CLASS ADMINISTRATION AND NOTICE**.  Settlement Class Counsel has retained Angeion Group, LLC as Settlement Administrator responsible for all aspects of settlement administration in this Action.  Such Settlement Administrator shall be approved by the Court in connection with this Settlement, and, if approved, overseen by Settlement Class Counsel.  Crow

21

Defendants will not have any involvement in the claims administration process, or the plan of allocation of the settlement proceeds. Settlement Class Counsel, in their sole discretion, may replace, and/or retain one or more additional and/or alternate Settlement Administrator(s). Such Settlement Administrator(s) shall be approved by the Court in connection with this Settlement, and, if approved, overseen by Settlement Class Counsel. Crow Defendants will not have any involvement in the selection of the Settlement Administrator(s). The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement. In no event shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

a. At no time and under no circumstances shall Plaintiffs, Crow Defendants, Settlement Class Counsel, Plaintiffs' Counsel, Crow Defendants' Counsel, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

b. Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs. The Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs. The procedures for submitting claims shall conform to the procedures outlined below.

c. Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form. Each Claim Form must

22

be signed under the penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

d.     All Claim Forms must be received by the Settlement Administrator within the time prescribed in the plan for Notice as approved by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted.  No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e.     Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

f.     Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement

23

Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

g.      Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h.      All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process. All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein. The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

i.      No Person shall have any claim against Crow Defendants, Crow Defendants' Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

24

9. **EXCLUSIONS**.

a. Crow Defendants reserve all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

b. A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice. Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

c. Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

d. Crow Defendants or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

10. **PAYMENT OF EXPENSES**. Subject to Court approval, disbursements for payment of Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to Crow Defendants, their insurance carriers, or any other person or entity who or which funded the Settlement Amount, in the event this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses have actually been expended or incurred. Any refund that becomes owed to Crow Defendants if this Settlement does not become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court. Other than as set forth in this Paragraph, Crow Defendants shall

25

not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs. To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action and to apportion the costs of notice and administration in an equitable manner across the applicable settlements.

11. **THE SETTLEMENT FUND**.

a. The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b. After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation. Crow Defendants will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

c. The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives. Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

26

Docusign Envelope ID: D0A6B718-2DCE-4898-B96D-56A558EA8DEA

**12.**     **FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS.**

a.     Crow Defendants understand that Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval of the Agreement, submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action; and/or (iii) and Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"). Crow Defendants understand that Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable service awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

b.     Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon final approval of the Settlement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Amount is required, then within fifteen (15) business days after receiving notice from Crow Defendants of such an order from a court of appropriate

27

jurisdiction, each Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction. Each law firm that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Attorneys' Fees and Expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this paragraph.

c.       The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement.

d.       Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph.  No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of Crow Defendants or the Releasees, under this Agreement.

28

Docusign Envelope ID: D0A6B718-2DCE-4898-B96D-56A558EA8DEA

**13.** **D**ISCOVERY **O**BLIGATIONS AND **N**ON-**M**ONETARY **C**ONSIDERATION.

a. *Cooperation.* Cooperation by Crow Defendants according to the terms set forth below is a material term of the Settlement and shall include the following categories of cooperation, with all disputes concerning the same to be resolved by Judge Crenshaw and the U.S. District Court for the Middle District of Tennessee:

i. Crow Defendants have completed their structured data production; Crow Defendants shall be prepared to answer reasonable questions concerning their structured data with reasonable notice from Plaintiffs;

ii. Crow Defendants have completed their document production. Crow Defendants will not unreasonably deny Plaintiffs a re-production of documents identified as having technical errors or which Plaintiffs are otherwise unable to access;

iii. Crow Defendants shall produce to Plaintiffs any documents not produced to Plaintiffs that were produced to any other plaintiffs, or any federal, state, or other domestic regulator, concerning the subject matter of the Action or any allegations within the same factual predicate of the Action within five (5) business days of the execution this Agreement, with any documents produced to such entities after execution of this Agreement to be produced five (5) business days after their production to such other plaintiffs or regulators;

iv. Crow Defendants shall make available one 30(b)(6) witness, for a deposition not to exceed seven (7) record hours.

v. After Plaintiffs have provided attorney notice of the anticipated documents and topics of questions related to a potential 30(b)(6) deposition, Crow Defendants agree to make their attorney(s) available to provide information on such

29

limited and previously identified topics, the Parties agree to confer on the proposed scope of the deposition in subsection (v) above, and potentially provide information under this provision in lieu thereof.

vi. Crow Defendants shall use reasonable efforts to assist Plaintiffs in authenticating documents and/or things produced in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations or affidavits, or, if declarations or affidavits are not reasonably sufficient, depositions, hearings, and/or at trial(s) as may be necessary for the Action; and

vii. Crow Defendants will consider reasonable informal requests for additional relevant information about Plaintiffs' claims in the Action from Interim Co-Lead Counsel, taking into account the information it has produced in discovery, other productions and information obtained, and whether providing the requested information will be burdensome.

b. **Arbitration Non-Enforcement**. For a period of five (5) years after the Court enters Final Judgment in this Action, with respect to claims relating in any way to, or arising from the same factual predicate of this Action, Crow Defendants agree not to (a) require that any member of the Settlement Class ("Class Member") arbitrate any claims against Crow Defendants; (b) add a provision to any agreements with any Class Member requiring that any such claims against Crow Defendants be arbitrated; (c) argue that any Class Member or Class Members are required to arbitrate claims against Crow Defendants or against any alleged co-conspirator or co-Defendant based on principles of estoppel; and (d) enforce any provisions in any agreements with one or more Class Member(s) purporting to ban collective or class actions against Crow Defendants.

30

c.    **RealPage Data Sharing**. For a period of five (5) years after the Court enters Final Judgment in this Action, or such shorter time or less restrictive injunctive relief that the Court may order, Crow Defendants shall (a) not provide to RealPage, Inc., any nonpublic data concerning multifamily residential leases, or permit RealPage, Inc., or any other company providing revenue management services that Crow Defendants knows or should have known uses as an input nonpublic data provided to RealPage, Inc. by Crow Defendants' competitors to share Crow Defendants' nonpublic data concerning multifamily residential leases for use in revenue management services; and (b) not contract with RealPage, Inc. or any other company providing revenue management services, to use a revenue management service or program that Crow Defendants knows or should have known uses as an input nonpublic data provided to RealPage, Inc. by Crow Defendants' competitors; provided that Settlement Class Counsel may consent, or Crow Defendants may petition the Court, to delete or modify this provision based upon changed circumstances.

14.    **TERMINATION AND RESCISSION**.

a.    *Rejection or Alteration of Settlement Terms.* If (i) the Court refuses to grant preliminary or final approval of this Agreement or certify the Settlement Class or such grant or certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to Crow Defendants or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs exceed ten percent of Settlement Class Members and Crow Defendants elect to revisit the terms of this Settlement, then the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement automatically terminates, unless an extension is otherwise agreed upon by the Parties. Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement

31

Agreement, Crow Defendants and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination is appropriate, unless an extension is otherwise agreed upon by the Parties. A refusal to approve or modification or reversal on appeal based solely on or relating solely to the Settlement Class Counsel's fees and expenses award and/or Plan of Allocation shall not be deemed a refusal to approve or modification of the terms of this Settlement Agreement.

b. *Termination of Settlement*. In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Class Notice and costs of administration of the Settlement Fund, if any, shall be refunded by the escrow agent to Crow Defendants pursuant to written instructions from Crow Defendants' Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of January 19, 2026, and without waiver of any positions asserted in the Action prior to that date. Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c. Plaintiffs, the Settlement Class, Settlement Class Counsel, and Crow Defendants agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by Crow Defendants or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly

or indirectly except in a proceeding to enforce or interpret this Settlement Agreement. Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms.

15. **COVENANT NOT TO SUE**. The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims. Plaintiffs and Crow Defendants agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

16. **CROW DEFENDANTS' RELEASE**. Pending the Effective Date, Crow Defendants agree not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the pending Action. Upon the Effective Date, Crow Defendants shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Crow Defendants, except for claims relating to the enforcement of the Settlement.

17. **NO ADMISSION OF LIABILITY**. The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by Crow Defendants, or any Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any

33

other pleading filed in the Action, and shall not be used against Crow Defendants or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against Crow Defendants or the Releasees.

18. **JOINT AND SEVERAL LIABILITY PRESERVED**. This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than Crow Defendants and the Releasees. All claims against such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class. Crow Defendants' and the other Releasees' pricing of multifamily housing rental properties for the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than Crow Defendants and the other Releasees. Crow Defendants and the Releasees shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount and the amounts specifically agreed to in Paragraphs 5 and 10.

19. **CONFIDENTIALITY**. The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain confidential until publicly filed with the Court for approval. Nothing in Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel. Similarly, nothing in this Paragraph 19 shall prohibit Crow Defendants or any Releasee from making general disclosures as necessary to comply with the securities laws and other obligations, as well as in its public filings. Following the Execution Date, Crow Defendants and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement.

34

Docusign Envelope ID: D0A6B718-2DCE-4898-B96D-56A558EA8DEA

20. **CAFA**. Crow Defendants shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

21. **CONTINUING JURISDICTION**. The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Crow Defendants, including challenges to the reasonableness of any party's actions. Crow Defendants will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction. The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22. **ENTIRE AGREEMENT**. This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and Crow Defendants pertaining to this Settlement of the Action against Crow Defendants, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and Crow Defendants in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and Crow Defendants and approved by the Court.

23. **BINDING EFFECT**. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and Crow Defendants. Without limiting the generality of the foregoing, upon the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and

Releasors. The Releasees (other than Crow Defendants, which is a party to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

24. **EXECUTION IN COUNTERPARTS**. This Agreement may be executed in counterparts by Plaintiffs and Crow Defendants, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25. **NOTICE**. Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

26. **PRIVILEGE**. Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

27. **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**. Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own

36

choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement. Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28. **NO PARTY IS THE DRAFTER**. This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for Crow Defendants. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29. **HEADINGS**. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30. **OPPORTUNITY TO CURE**. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

31. **GOVERNING LAW**. All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles.

32. **REASONABLE EXTENSIONS**. Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

37

**33.** __C__OUNSEL'S __E__XPRESS __A__UTHORITY. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

Dated: April 15, 2026

For the Plaintiffs:

_____
Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com


_____
Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com


_____
Swathi Bojedla
Hausfeld LLP
1200 17th Street, N.W., Suite 600
Washington, DC 20036
sbojedla@hausfeld.com

Docusign Envelope ID: D0A6B718-2DCE-4898-B96D-56A558EA8DEA

**Crow Holdings, L.P.**
By: Crow Family, Inc., its general partner

By: _____    †H
Name: M. Kevin Bryant
Title: Vice President

**Trammell Crow Residential Company**

By: _____
Name: Kevin W. Dinnie
Title: Vice President

**Maple Multi-Family Operations L.L.C.**

By: _____
Name: Scott J. Woodward
Title: Vice President

and **Maple Multi-Family Development L.L.C.**

By: _____
Name: Kevin W. Dinnie
Title: Vice President

_____

40