# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: REALPAGE, INC. RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | : | NO. 3:23-MD-03071 |
| | : | MDL No. 3071 |
| | : | |
| | : | Judge Waverly D. Crenshaw, Jr. |
| | : | |
| | : | THIS DOCUMENT RELATES TO: |
| | : | ALL CASES |

**DECLARATION OF MEDIATOR HON. LAYN R. PHILLIPS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SECOND SET OF CLASS SETTLEMENTS**

I, Layn R. Phillips, declare as follows under 28 U.S.C. §1746:

I am filing this declaration in my capacity as the court-appointed mediator in the above-captioned action (the "Action"). As set forth herein, I submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Second Set of Class Settlements. This Declaration includes information from the declaration I submitted in support of Plaintiffs first Motion for Preliminary Approval, in addition to subsequent developments.

## I.  RELEVANT PROFESSIONAL BACKGROUND AND EXPERIENCE

1. I currently serve as a mediator and arbitrator with my own alternative dispute resolution company, Phillips ADR Enterprises ("PADRE"), based in Corona Del Mar, California. I am a member of the bars of Oklahoma, Texas, California, and the District of Columbia, as well as the United States Courts of Appeals for the Ninth, Tenth, and Federal Circuits.

2. I served as the United States Attorney for the Northern District of Oklahoma from 1984 to 1987. I personally tried many cases and oversaw the trials of numerous other cases as a United States Attorney and, prior to my time as a United States Attorney, as an Assistant United States Attorney in California and Florida.

3. While serving as the United States Attorney for the Northern District of Oklahoma, I was nominated by President Reagan to serve as a District Judge for the Western District of Oklahoma, where I served from 1987 to 1991. While on the bench, I presided over more than 140 federal trials and sat by designation on the United States Court of Appeals for the Tenth Circuit. I also presided over cases in Texas, New Mexico, and Colorado.

4. I left the federal bench in 1991 and joined Irell & Manella, where for 23 years I specialized in alternative dispute resolution, complex civil litigation, and internal investigations. In 2014, I left Irell & Manella to found PADRE. For more than 25 years, I have devoted the

majority of my professional life to serving as a mediator and arbitrator in connection with large, complex cases such as the Action.

5.  I have successfully mediated numerous complex commercial cases involving Fortune 500 and other publicly traded companies. I have mediated thousands of disputes referred by private parties and courts and have been appointed as Special Master by various federal courts in complex civil proceedings. I serve as a Fellow in the American College of Trial Lawyers, and I have been nationally recognized as a mediator by the Center for Public Resources Institute for Dispute Resolution ("CPR"), serving on CPR's National Panel of Distinguished Neutrals.

6.  Among the significant complex matters I have mediated are the NFL concussion cases, the Michigan State and USC sexual abuse cases, the Purdue Opioid bankruptcy, the Boeing derivative litigation, the United Healthcare derivative litigation, the Norfolk Southern Ohio trainwreck litigation, multiple Wells Fargo derivative and class actions, the FirstEnergy derivative litigation, the Fox News and News Corp. derivative litigation, the Facebook Cambridge Analytica derivative litigation, and numerous other class action and antitrust cases

7.  On this matter, I worked extensively with Clay Cogman, a mediator in my office who is also serving in a court-appointed capacity. He is a member of the bars of New York and California. Mr. Cogman began working with me in dispute resolution in 2011.  Since then, he has worked on hundreds of mediations with me and has mediated or co-mediated numerous class action, antitrust, and MDL matters.

## II.    NEGOTIATIONS RESULTING IN THE INITIAL SETTLEMENTS

8.  The mediation process in connection with the Action leading up to the first tranche of settlements was hard fought on all sides.  The settlements Plaintiffs submitted for preliminary approval (which was granted on November 21, 2025 (the "Initial Settlement Agreements")) were

the product of protracted arm's-length negotiations among Plaintiffs[1] and the proposed Settling Defendants.[2]

9.  As described below, the mediations that led to the Initial Settlement Agreements spanned multiple years and included several all-day multi-party mediation sessions, as well as dozens of teleconferences, hundreds of emails, working group sessions, and written submissions by the parties. While I am bound by confidentiality with regard to the content of the parties' discussions and negotiations,[3] I can say that the arguments and positions asserted by Plaintiffs and Defendants were the product of detailed analysis and hard work, that they were complex, and that, while professional, they were highly adversarial.

10.  My office was approached in early 2023 by parties to the case to be engaged in this matter. By Court order of July 28, 2023, I was appointed as the mediator of the above captioned action. On August 4, 2023, the Court appointed Clay Cogman as an additional mediator. In August 2023, my office was formally engaged in this action.

---

[1] The Plaintiffs are Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes.

[2] For purposes of this Declaration, the First Set of Settling Defendants are Apartment Income REIT, LLC, formerly known as Apartment Income REIT Corp.; Allied Orion Group LLC; Avenue5 Residential, LLC; Bozzuto Management Company; Brookfield Properties Multifamily LLC; CH Real Estate Services, LLC; ConAm Management Corporation; CWS Apartment Homes LLC; First Communities Management, Inc.; FPI Management, Inc.; Lantower Luxury Living, LLC; Mission Rock Residential, LLC; Pinnacle Property Management Services; Prometheus Real Estate Group, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thrive Communities Management LLC; WinnCompanies LLC, WR GP, LLC, WinnResidential Manager Corp.; ECI Management, LLC; Knightvest Residential; Kairoi Management LLC; Bell Partners Inc.; Windsor Property Management Company, BH Management Services, LCC; and Greystar Management Services, LLC.

[3] All participants agreed that the entire mediation process was to be regarded as settlement negotiations under Rule 408 of the Federal Rules of Evidence, protecting disclosure made during such process from later discovery, dissemination, publication, and/or use in evidence. By making this declaration, neither the parties nor I waive in any way the provisions of this confidentiality agreement or the protections of Rule 408. While I cannot disclose the contents of the mediation negotiations, the parties have authorized me to inform the Court of the procedural and substantive matters set forth herein. Thus, without in any way waiving the mediation privilege, I make this declaration based on personal knowledge.

4

11.     Right away, we began reaching out to all parties[4] to get a sense of the best way to proceed logistically in this complex, multi-party matter, and began to set the foundation for formal and informal mediation sessions. Every party to the case has been engaged by my office and nearly all have participated in at least one formal mediation session. Since we were engaged, Mr. Cogman or I have actively reached out to each remaining Defendant and the Plaintiffs periodically to ensure that all parties remain engaged in settlement talks.

12.     There were a variety of mediation positions taken by the parties across these discussions due to, among other things, the various claims and defenses being asserted, the procedural posture of the case, insurance policies, and the varying size of the Proposed Settling Defendants as well as their ownership and management interests.

13.     An initial mediation via Zoom was scheduled for October 24, 2023. The mediation was at first intended for Plaintiffs and those Defendants named in four cases or less, but several other Defendants also participated. Twenty-eight Defendants participated in that all-day mediation session. Demands were made and responded to by all parties who participated. Although no settlements were reached in this first session, my office was in continuous communication by telephone and email with several parties following this session.

14.     Following this early mediation session and discussions with the various working groups over the next two months, I believed that efforts to settle the Action would continue to be challenging because those involved continued to hold strong and vastly divergent views as to the relevant legal and factual arguments, and that a resolution without further litigation seemed unlikely. The parties expressed varying degrees of interest in continuing mediation, but it was

---

[4] I understand that my office was involved in some manner in each settlement being presented here with one exception.

widely thought that settlement efforts would be more fruitful once the Court ruled on the motions to dismiss. On December 28, 2023, the Court issued rulings on most of the motions to dismiss.

15. In the months after the Court's December 28, 2023, motion to dismiss order, Plaintiffs and various Defendants have worked continuously to vigorously negotiate and document settlements. During this time, Mr. Cogman and/or I presided over numerous formal and informal mediation sessions involving these parties' working groups.

16. The parties first spent a significant amount of time and effort negotiating a working term sheet. These negotiations began with proposals by Plaintiffs' counsel covering a wide range of issues, from discontinuing the use of RealPage's Revenue Management Software, to cooperation, to measures to improve antitrust compliance, and the scope of the release.

17. On March 15, 2024, Mr. Cogman and I conducted a further all-day Zoom mediation with eight manager Defendants. Prior to that mediation session, counsel for the participating parties provided me with briefing on the then-current procedural history and factual status of the Action, as well as addressing liability, damages, and risk exposures supported by legal and factual analysis. Among other things, I reviewed the mediation statements and exhibits, including the complaint filed in the Action, and the motion to dismiss briefing and orders, along with other materials presented to me by the participating parties.

18. During this session, the parties continued to work through both monetary and non-monetary terms, and significant progress was made in understanding the potential roadblocks for each of the parties in reaching resolution. I found the discussions engaged in by the parties to be extremely valuable in helping to understand the relative merits of each party's position and to identify the issues that were likely to serve as the primary drivers and obstacles to achieving a settlement. My office also continued to work with the parties to obtain for each side the information

6

they needed to understand the volume of commerce affected, particularly the economics surrounding differences with owners as compared to managers. This included documentary and data productions by both sides, which proved to be very helpful in understanding the potential exposure and the risks of continued litigation.

19. On April 8, 2024, an in-person mediation session was held with twenty Defendants in Washington, DC. The participating parties submitted extensive documents, letters, and briefs, made presentations to each other, listened to issues related to liability, discussed the different RealPage Revenue Management Software products used by each Defendant and for what time period they were used, and generally discussed the strengths and weaknesses of their cases. Several demands and counters were made on both monetary and non-monetary elements of potential settlements.

20. In the months following the April 8, 2024, mediation, talks continued with Plaintiffs and numerous Defendants. During this time, my office had extensive communications with those parties by videoconference, email and phone, and further exchanges of documents, data, analyses and other key information in an effort to settle more cases. While progress differed across the group, all parties have continuously been engaged in good-faith negotiations. These efforts led to several agreements in principle being reached in 2024.

21. Upon agreement to the monetary amount of settlement, the parties to each settlement would exchange numerous drafts and redlines of the proposed term sheets, and following agreement, then set about expanding those agreed upon terms into long-form settlement agreements. This drafting process was complex, lengthy, and typically involved the exchange of multiple drafts and redlines as the parties negotiated terms.

22. On January 29, 2025, Mr. Cogman and I facilitated an all-day in-person mediation session between Plaintiffs and Simpson Property Group in Newport Beach, CA. Shortly after this mediation, these parties reached an agreement in principle for a settlement.

23. On April 30, 2025, Mr. Cogman and I facilitated an all-day in-person mediation session with Plaintiffs, Greystar Management Services LLC, ECI Management LLC, and Bell Partners Inc. in New York City. Each of these Defendants settled in principle with Plaintiffs in the months following that mediation.

24. On July 23, 2025, Mr. Cogman facilitated an all-day in-person session between Plaintiffs and Windsor Property Management Co in Washington, DC. Shortly after this mediation, these parties reached an agreement in principle for a settlement.

25. In addition to these formal mediation sessions, our efforts to resolve cases through email and telephonic communications have continued throughout 2025. These efforts have resulted in several settlements outside of those described in the preceding paragraphs.

26. By October 1, 2025, I understood that Plaintiffs signed Settlement Agreements with twenty-seven Defendants.

## III. NEGOTIATIONS RESULTING IN THE SECOND SET OF SETTLEMENTS

27. After Plaintiffs submitted the first tranche of settlements, my office continued to facilitate resolution discussions with Plaintiffs and the remaining Defendants.

28. Since October 1, 2025, I understand that Plaintiffs have settled with Camden Property Trust, Cortland Management, LLC, Equity Residential, Mid-America Apartments L.P., Highmark Residential, LLC, Lincoln (Lincoln Property Company, which is now Willow Bridge Property Company LLC), Related (The Related Cos. And Related Mgmt. Co.), RPM Living, LLC,

Rose Associates Inc., Sares Regis Management Company, L.P., and Trammell Crow Residential Company.

29. Each of the negotiations between Plaintiffs and the second set of settling Defendants were ongoing as of October 1, such that the ultimate settlements achieved were the product of a continuation of previous efforts. And like the previous set of settlements, each was hard-fought, adversarial, data and document heavy, complex, and the result of protracted arms-length negotiations.

30. Between October 1, 2025, and continuing until today, Mr. Cogman and I spent dozens of hours on the phone with the parties and were in constant contact with the parties facilitating communications and negotiations between the Plaintiffs' and the various remaining defendants. For each of the Second Set of Settling Defendants, we aided the parties in messaging their respective positions and set up meetings and phone calls both with and without us, formally and informally.

31. With the Second Set of settlements, our office mediated both the monetary figures as well as the settlement agreement terms. To get to that point, we helped the parties understand the quantity of units at issue, the corporate structure of each of the Defendants, and the scope of the release, among myriad other issues. For one Defendant, we worked through the weekend to hammer out disagreements related to certain terms in the long-form settlement agreement which had become sticking points. For other defendants, we issued mediator's proposals, which on each occasion, resolved the matters.

32. As detailed in Plaintiffs' motion seeking approval of the Second Set of settlements, the settling parties have sought since October 1 to clarify certain aspects of the class definition. We assisted the parties in those discussions and facilitated the process of coming to agreement on

9

clarifying language related to the class definition. Given our involvement in the settlement negotiations, when an ambiguity was raised, we were able to aid the Parties in clarifying the class definition to ensure that it accurately captured the parties' intent.

33. Collectively, my office has spent hundreds of hours mediating this Action over the course of seven formal mediation sessions and consistent communication with the parties between those sessions. This includes not only overseeing the negotiation of material terms, but in coordinating the exchange of pertinent information and mediating disputes between the parties as to precise settlement language. Our office has been involved in the vast majority of the settlements reached to date. This work continues, and further formal and informal mediation sessions are on the calendar. Mr. Cogman and I continue to communicate with all parties in the litigation to work towards resolution.

34. Understanding that every aspect of the preliminary and final approval of these settlements is committed to the sound discretion of the trial court, after presiding over the mediation process concerning these matters, it is my professional opinion that these settlements are fair and reasonable and the product of vigorous and independent advocacy and of arm's-length negotiations conducted in good faith by the parties.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 11, 2026, at Columbus, Ohio.

LAYN R. PHILLIPS

Former U.S. District Judge