# EXHIBIT A

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DISTRICT OF COLUMBIA,<br><br>Plaintiff,<br><br>v.<br><br>REALPAGE, INC., *et al.*<br><br>Defendants. | Civil Action No. 2023-CAB-006762<br><br>Hon. Shana Frost Matini<br><br>**Next Court Date:** Nov. 18, 2026<br><br>**Event:** Hearing on Summary Judgment Motions |

**DEFENDANTS' OPPOSED MOTION TO CONTINUE THE DATES FOR TRIAL AND THE HEARING ON SUMMARY JUDGMENT AND *DAUBERT* MOTIONS**

## I. INTRODUCTION

Defendants respectfully request that the Court continue the November 18, 2026 summary judgment and *Daubert* hearing date[1] and, if the case is not resolved on summary judgment, the March 29, 2027 trial date. Good cause exists to continue these dates for three reasons.

*First,* the scope of the case is uncertain because the District is simultaneously litigating in two federal forums to expand the claims it can present at trial here. Judge Waverly D. Crenshaw Jr. of the Middle District of Tennessee has enjoined the District from pursuing its released *parens patriae* claims against some of the Defendants in this case, and the District is asking both Judge Crenshaw and the U.S. Court of Appeals for the Sixth Circuit to lift that injunction. Until those proceedings end, neither the Court nor the Parties in this case can know which claims will be tried, against whom, for what relief, or whether to a jury at all. Speeding toward a summary judgment

[1] The operative case schedule lists November 18, 2026 as the date for the hearing on summary judgment motions. Defendants request that the Parties' *Daubert* motions also be heard during the same hearing.

and *Daubert* hearing and a potential March 2027 trial when the District is enjoined from pursuing key aspects of its claims risks wasting the Court's and the Parties' resources and could require multiple trials.

*Second,* allowing time for the Court to determine whether this case will proceed to trial at all and, if so, what the scope of the case will be would resolve the current over-compression in the schedule that unnecessarily burdens the Court and Parties. The current schedule forces the Court and the Parties to do an enormous amount of pretrial work that would prove unnecessary if the Court grants all or even some of Defendants' pending summary judgment motions, while providing the Court just six weeks, over the winter holidays, to decide those 11 summary judgment motions and six *Daubert* motions totaling more than 500 pages before its rotation ends. The new judge, with no background about this complex case, would then have just three months to prepare for a complex trial. Meanwhile, the Parties would be required to prepare extensive pretrial submissions—including witness lists, exhibit lists, jury instructions, and deposition designations—and brief motions in limine for claims that summary judgment or the federal proceedings may render obsolete or at least significantly narrow, obviating the need for all or at least much of that work. Extending the trial date serves judicial economy by providing sufficient time for rulings on summary judgment and *Daubert* motions and on the District's efforts to lift the federal injunction in place.

*Third*, the scheduled trial date presents a conflict for lead trial counsel and a significant portion of the trial team representing Defendant UDR, Inc. ("UDR"), who have an immovable conflict with another trial in a long-running case subject to a statutory deadline by which trial must start.

Defendants expect trial on any issues that remain after summary judgment to take place in 2027, but they respectfully propose that trial should be rescheduled to a later date by the judge who will preside over the trial. A continuance will provide sufficient time for the Court to resolve the pending summary judgment and *Daubert* motions and thus to clarify the scope of the District's triable claims—if any survive summary judgment. Defendants respectfully request a continuance of all dates in the schedule except the January 15, 2027 status conference to allow the incoming judge to set the hearing and trial dates. Defendants would be prepared to discuss a new schedule at the status conference with the new judge.[2] Alternatively, if the Court believes it must resolve the summary judgment and *Daubert* motions, Defendants respectfully suggest that the Court should take any additional time after January 1, 2027 as necessary to rule on those issues given the large volume of material and the complexity of the issues.

## II. PROCEDURAL HISTORY

This Court entered the original scheduling order on June 10, 2024. The original scheduling order set the trial date as September 15, 2026.

Defendants moved to extend certain data discovery deadlines on October 25, 2024, with the District's consent, which the Court granted on October 29, 2024. This extension modestly extended other fact discovery deadlines and the subsequent expert discovery, expert report, and summary judgment deadlines, but it did not change the trial date.

On April 16, 2025, the Parties jointly moved to extend the deadline to complete fact discovery by six weeks and to move all subsequent dates, including the dates for the summary judgment hearing (which the Court set as July 24, 2026) and trial (which moved to October 26,

---

[2] On October 2, 2026, the District filed an "Opposed Motion for Pretrial Scheduling Order." This motion, which seeks to set specific pretrial dates, is premature until the Court determines the broader question of when summary judgment and *Daubert* motions should be heard and when trial should be set. Defendants will file a separate response to the District's motion.

2026). The Court granted the Parties' request and entered the proposed schedule on April 17, 2025.

On August 22, 2025, the Parties again jointly moved to extend the case schedule to provide the Parties with more time to complete depositions of fact witnesses. All subsequent deadlines were also extended, including the dates for the summary judgment hearing (which the Court reset to September 18, 2026) and trial (which moved to March 8, 2027). The Court granted the Parties' request and entered the proposed schedule on August 25, 2025.

On January 7, 2026, the Parties jointly moved to extend the case schedule for a third time to provide more time for expert reports and expert depositions, which the Court granted on January 9, 2026. The summary judgment and *Daubert* motion deadlines and trial date were also extended, with the summary judgment hearing rescheduled for November 18, 2026, and the trial date moved to March 29, 2027. The January 9, 2026 schedule is the current operative schedule.

## III. LEGAL STANDARD

Rule 16(k) of the D.C. Superior Court Rules of Civil Procedure governs the continuance of trial in civil cases and provides that trial "may be continued . . . by order of the judge." Rule 16(k). An application for a continuance must be made to the judge "not less than 30 days before the trial" sought to be continued and must include "a showing of specific and sufficient reasons why the applicant cannot . . . proceed with the trial" as scheduled. *Id.* "[T]he grant or denial of a continuance rests within the sound discretion of the trial judge." *Fischer v. Est. of Flax*, 816 A.2d 1, 8 (D.C. 2003).

D.C. Superior Court Rule 6(b) governs requests to extend all other deadlines not covered by Rule 16(k) and provides that the Court may extend a deadline "for good cause." Rule 6(b).

## IV. ARGUMENT

### A. The Case Schedule Should Be Continued Because the District Is Simultaneously Litigating the Scope of This Case in Two Federal Forums

The case schedule should be continued because the District is enjoined from pursuing its *parens patriae* claims against many Defendants, and it is actively contesting that injunction in another forum. Judge Crenshaw—who is presiding over the parallel nationwide antitrust MDL in the M.D. Tenn. that mirrors the District's allegations here—preliminarily approved over $350 million in settlements that release "double or duplicative" *parens patriae* claims like those brought by the District. *In re RealPage, Inc., Rental Software Antitrust Litig.*, ("*RealPage MDL*") No. 23-md-03071, ECF No. 1463 ("MDL Injunction Order") at 2–3. Some Defendants here were also defendants in the RealPage MDL and are part of those settlements: Bozzuto Management Company, Camden Development, Inc., Equity Residential Management, LLC, Greystar Management Services, LLC, and Highmark Residential, LLC ("MDL Settling Defendants").[3]

When Judge Crenshaw was considering those settlements, the District moved to intervene and argued that (1) the settlements could not release its *parens patriae* claims, and (2) it should be permitted to pursue those released *parens patriae* claims because the District's "action is already on a fast-moving track, with . . . trial anticipated" in March 2027. *RealPage MDL*, ECF No. 1415-1 at 21. Judge Crenshaw rejected both arguments. He held that the MDL Settling Defendants' settlements permissibly release the District's "parens patriae claims [because those claims] duplicate class action monetary claims for damages and . . . belong to class members rather than the states." MDL Injunction Order at 2. He enjoined the District from pursuing those released *parens patriae* claims because allowing those claims to proceed "would lead to confusion and

---

[3] Two other defendants before this Court—RealPage, Inc. and UDR, Inc.—also are defendants in the *RealPage MDL* but continue to litigate there.

chaos." *Id*. Finally, the court "recognize[d] that the settlements leave the [District] free to pursue its sovereign claims," i.e., claims seeking civil penalties and injunctive relief. *Id*. at 3.

The District appealed the MDL Injunction Order to the United States Court of Appeals for the Sixth Circuit and briefing will close in November 2026. *In re RealPage Inc, Rental Software Antitrust Litig.,* No. 26-05655 (6th Cir. 2026). The District has also moved to intervene again before Judge Crenshaw to contest final approval of the MDL settlements, rearguing that the MDL Settling Defendants' settlements cannot release *parens patriae* claims, and that it should not be further enjoined from pursuing those released claims. *RealPage MDL*, ECF No. 1498. Judge Crenshaw will hold the final approval hearing for the MDL settlements on October 15, 2026. *RealPage MDL*, ECF No. 1511. The District's appeal and its motion to intervene turn on the same question that controls what can be tried here: whether the District may pursue its released *parens patriae* claims against the MDL Settling Defendants that are in this case. Whatever those courts decide will determine the claims, the Defendants, the remedies, and the factfinder here.

The MDL Injunction Order, the District's appeal to the Sixth Circuit, and its attempt to relitigate the *parens patriae* release and injunction at final approval create good cause to continue the case schedule for two reasons. *First*, in its operative complaint, the District seeks damages, restitution, and disgorgement on its *parens patriae* claims and has demanded a jury. But the MDL Injunction Order makes the scope of any trial here uncertain because the District is enjoined from pursuing its *parens patriae* claims against MDL Settling Defendants, and it is not entitled to a jury trial for aspects of its remaining claims. *See Burrello Grp., LLC v. District of Columbia*, 303 A.3d 618, 627 (D.C. 2023) (parties are "not entitle[d] . . . to a jury trial on the specific issue of the amount of the civil penalty"); *In re Estate of Johnson*, 820 A.2d 535, 538 (D.C. 2003) ("[W]here the issue in dispute is . . . equitable in nature there is not a constitutional right to a jury trial").

Until the District's efforts to lift the federal injunction end, the factfinder's role (and who the factfinder is for each party) is unsettled.

*Second*, the case schedule should also be continued because proceeding with the current schedule risks wasting this Court's and the Parties' resources while the District seeks to expand the claims it may bring to trial through its appeal to the Sixth Circuit and before Judge Crenshaw. Moving forward in this proceeding now could result in trying claims that federal courts later affirm have been released. *See Murray v. Motorola, Inc.*, 2014 WL 5817890, at *2 & n.2 (D.C. Super. Ct. Aug. 28, 2014) (resources spent on trials during a pending appeal "will have been wasted" depending on the appellate outcome). It would also result in undertaking pretrial tasks, such as motions in limine, exhibit and witness lists, and jury instructions, that are built based on claims the District is enjoined from pursuing. *See APCC Servs., Inc. v. Sprint Commc'ns Co., L.P.*, 297 F. Supp. 2d 90, 100 (D.D.C. 2003) (staying case because allowing appellate court to rule on an issue "would conserve judicial resources and spare the parties from possibly needless expense").

Courts regularly pause case schedules when the "parameters of th[e] litigation" are uncertain, and proceeding "could be unnecessary, wasteful and costly depending on" how that uncertainty is resolved. *Dist. of Columbia v. StubHub, Inc.*, 2024 WL 5413948, at *1 (D.C. Super. Ct. Oct. 24, 2024); *see also Redshift, LLC v. Shaw*, 2019 WL 13138410, at *3 (D.C. Super. Ct. Sept. 27, 2019) ("[T]o preserve judicial resources and to avoid unnecessary costs for the parties, the Court finds good cause" to continue trial date). Pausing case schedules is also warranted when the extension would allow an appellate court the "opportunity to consider a controlling . . . question of law" and "avoid the time and enormous expense of further litigation in the trial court." *Murray*, 2014 WL 5817890, at *2. Here, until the above-referenced proceedings are resolved, neither the Parties nor the Court can know what a trial would cover: which claims, against which Defendants,

for what relief, and whether before a jury. This is a paradigmatic example of a case in which a continuance is necessary and appropriate.

The District's own proposed pretrial schedule shows the problem. Beginning in December 2026—just two months from now—it would require each Defendant to estimate trial length, exchange exhibits, and deposition designations, identify fact and expert witnesses, exchange Rule 1006 damages summaries, and respond to proposed jury instructions and a verdict form. Many of those deadlines rest on two incorrect premises: that the case will be tried to a jury against all Defendants, and that the District may seek damages from all Defendants. Neither premise applies to the MDL Settling Defendants under the MDL Injunction Order. And no party can meaningfully estimate trial length or prepare jury instructions while the District is trying to change the case's scope in the Sixth Circuit and in the MDL.

Further, the Court and the Parties would be needlessly forced to police the federal injunction. Virtually every aspect of the pretrial process—rulings on evidence, jury instructions, motions in limine, and the verdict form—implicates the federal court injunction, begetting many questions of whether the District is violating the MDL Injunction Order. Even the District's proposed pretrial schedule poses a threat to the MDL Injunction Order, because it seeks to force a jury trial involving damages claims that the District is enjoined from pursuing.

### B. The Current Schedule Unnecessarily Increases the Court's Burden By Compressing Its Time To Decide Summary Judgment and Prepare for Trial

The Court should also grant a continuance because it is unnecessary to compress the Court's time to decide summary judgment and *Daubert* motions, especially while the District is litigating in federal courts about how much of its case here can go forward. The current schedule sets the following deadlines from the end of summary judgment briefing to trial (*see* Jan. 9, 2026 Scheduling Order):

| Deadline | Event |
|---|---|
| **October 19, 2026** | Replies to summary judgment motions and any motions to exclude expert testimony/opinions |
| **November 18, 2026** | Hearing on summary judgment motions |
| **December 22, 2026** | Submit trial witness lists |
| **January 1, 2027** | New judge is seated |
| **January 6, 2027** | Motions *in limine* |
| **January 20, 2027** | Motions *in limine* oppositions |
| **January 27, 2027** | Motions *in limine* replies |
| **March 1, 2027** | Submission of joint pretrial statement |
| **March 8, 2027** | Pretrial conference |
| **March 29, 2027** | Trial |

The Parties have filed 11 motions for summary judgment—one by the District, one joint motion by nine Defendants, and one each by nine individual Defendants—along with six *Daubert* motions—three by the District, one by all Defendants, one by the Defendants other than AvalonBay Communities, Inc. ("AvalonBay"), and one by AvalonBay. Altogether, the Parties' opening and opposition briefs alone total more than 500 pages, and the replies will add more. Resolving any one of these motions would occupy a significant share of the Court's time and attention, and resolving *all* of them on the current schedule presents an outsized, unnecessary, and unreasonable burden. Reply briefs are due on October 19, and the hearing is set four weeks later, on November 18, 2026. After that hearing, the Court has only six weeks—spanning the entirety of the holiday season—to resolve and issue decisions on the District's and Defendants' motions before December 31, 2026. Accordingly, to permit the Court the necessary time to consider and resolve these disputes, and to provide an opportunity for the next judge presiding over this matter to familiarize themselves with the facts and legal issues here, Defendants respectfully request that

the Court continue the hearing on these motions to sometime in 2027 so the next judge can review, hear, and rule on them as the judge who would preside over any trial, should any claims survive summary judgment. In the alternative, if the Court believes it should resolve these motions rather than the next judge, Defendants respectfully suggest that the Court take whatever time is necessary beyond January 1 to issue decisions in light of the volume of the filings and complexity of the issues.

Even if this Court were to keep the current hearing date and rule on the Parties' summary judgment and *Daubert* motions before December 31, 2026, the trial date (if the case is not resolved on summary judgment) should nevertheless be rescheduled. The current schedule requires the Parties to submit trial witness lists by December 22, 2026—just over two months from now—and submit motions in limine by January 6, 2027. The District's pretrial schedule also proposes that the Parties exchange initial exhibit lists, copies of exhibits, and deposition designations by December 15, 2026—less than one month after the November 18 summary judgment and *Daubert* hearing and thus likely before the Court will have decided if this case proceeds to trial at all and, if so, what the scope of that case would be, including which Defendants would remain. Meeting these deadlines would require the Parties to undertake significant work and expend unnecessary resources, some or all of which may be mooted or substantially narrowed by the Court's rulings on summary judgment and *Daubert* (or a federal court's ruling that upholds the MDL Injunction Order).

Further, preparing to try a case of this magnitude and complexity requires substantial planning, coordination, and expense with respect to parties, witnesses, documents, deposition testimony, etc. There are currently 10 Defendants in the case, all of which have filed a summary judgment motion. The Court's rulings on summary judgment may dispose of the claims against

one or more Defendants. It is inefficient and prejudicial for Defendants who may be dismissed from the case to prepare for trial and to meet pretrial deadlines that turn out to be unnecessary. Moreover, the discovery record in this case is voluminous—there are more than four million documents and over 100 deposition transcripts. Given the sheer volume of documents and deposition transcripts in the case, the Parties would have no choice but to start preparing their deposition designations and exhibit lists well before any deadline or any ruling by the Court on the Parties' summary judgment motions. Similarly, it is not feasible for the Parties to wait until after the summary judgment ruling to start preparing their motions *in limine* and meet the January 6, 2027 deadline or to begin preparing for the current trial date at that time. This means the Parties will need to expend significant resources and costs to prepare deposition designations and exhibit lists and draft motions *in limine*—and otherwise begin costly, time-intensive trial preparations—that could be obviated or at least substantially narrowed by the Court's summary judgment and *Daubert* decisions. This process is needlessly inefficient and costly for the Parties.

There is no reason for the Court or the Parties to put themselves in this position especially where there is no prejudice to the District from a short continuance, and the Parties do not know what they can present at trial. Defendants make this application to continue the trial date more than five months before the currently scheduled trial date (well before the 30-day requirement set forth in Rule 16(k)) and approximately 45 days before the summary judgment/*Daubert* hearing date (and weeks before the Parties have even completed briefing on these motions). The Parties have jointly agreed and moved to extend the schedule three times (*see* Section II) to allow more time to complete less demanding—and less consequential—tasks such as completing fact witness depositions. If there were no prejudice from such previous extensions, there can be no prejudice

in doing the same for trial, which requires far more work and would yield a first-in-the-country verdict on antitrust claims based on recommendations from revenue management software.

Moreover, there is no prejudice to the District from a short continuance. The District's central complaints are that RealPage's revenue management software ("RMS") products use other customers' non-public data—albeit in an aggregated, anonymized, and antitrust compliant manner—when making rent recommendations and thereby harmed District renters. But that is already being addressed. First, any purported harm to District renters is being addressed through District renters participating in the $359 million *RealPage MDL* settlement fund, which starkly contrasts with the settlements reached by the District here because the District is not required to distribute settlement recoveries to District renters. *See* Consent Judgment and Order with W.C. Smith, *Dist. of Columbia v. RealPage*, 2023-CAB-006762 (D.C. Super. Ct. June 2, 2025). Second, nearly two years ago, RealPage modified its RMS products to no longer use third-party non-public data in making rent recommendations.[4] In 2025, RealPage confirmed this change in the consent decree it entered into with the United States Department of Justice ("DOJ") to resolve similar claims brought by the DOJ in *United States v. RealPage, Inc.*, 1:24-cv-00710 (M.D.N.C.). As part of that consent decree, RealPage committed to certain changes to its RMS products, *id.* Dkt. 194,

[4] *Our Position*, RealPage Public Policy, https://www.realpagepublicpolicy.com/our-position-1 ("RealPage's use of nonpublic data has always been legal, but to help our customers comply with new local legislation that limits the use of nonpublic data, we have already removed nonpublic executed rent pricing data from the highly blended, aggregated and anonymized market range rent information used by our products."); Supplemental Declaration of Amy Dreyfuss, *RealPage, Inc. v. City of Berkeley*, No. 3:25-cv-03004 (N.D. Cal. Apr. 18, 2025), Dkt. 42-1 at 3 ("By the end of 2024, RealPage fully transitioned away from using actual lease transaction rent data as an input in its revenue management products."); Declaration of Amy Dreyfuss in Support of Plaintiff RealPage, Inc.'s Motion for a Preliminary Injunction, *RealPage, Inc. v. James*, No. 1:25-cv-9847 (S.D.N.Y. Dec. 5, 2025) Dkt. 23 ¶ 15 ("In response to regulatory concerns and customer feedback about having to incur legal costs to respond to legal inquiries or proceedings—but not because RealPage believed its use to be anticompetitive—RealPage transitioned away from using actual lease transaction data of unaffiliated properties[.]").

which RealPage has implemented. The District itself has effectively blessed the current version of RealPage's RMS products. In its settlements with certain Defendants in this case— including, Avenue5 Residential, LLC, Bell Partners, Inc., JBG Associates, LLC, and Mid-America Apartments, LP—the District has expressly allowed Defendants to continue to use the RealPage RMS products "if operated consistently with the RealPage DOJ consent decree," which is exactly how these products are offered to the public today. *See, e.g.*, Consent Judgment and Order with Defendant JBG Associates LLC, *Dist. of Columbia v. RealPage*, 2023-CAB-006762 (D.C. Super. Ct. Sept. 17, 2026), ¶ 19(d). Accordingly, the District's claimed concerns about RealPage's RMS products already have been addressed to the District's satisfaction, leaving the District with no genuine complaints about the status quo or a short continuance.

### C. Lead Trial Counsel for UDR Has an Immovable Trial Conflict

The scheduled trial date presents conflicts for lead trial counsel and a substantial portion of the trial team representing Defendant UDR. Counsel for UDR has a trial in another long-running case that is set to begin on March 29, 2027, in Alameda County, CA that may last as long as 10-12 weeks. The Alameda County case was filed on July 27, 2021. Pursuant to California Code of Civil Procedure § 583.310, it is mandatory that the action be dismissed by the court if it is not brought to trial within five years of commencement. That deadline was tolled while the action was pending in Bankruptcy Court for 85 days and then extended by about six months by agreement of the parties. On September 8, 2025, the court set the case for trial on March 29, 2027 in order to comply with the five-year statutory deadline as extended. As the earlier-set trial (as the trial date in this matter was set in January 2026), the D.C. Superior Court Rules of Civil Procedure dictate that the Alameda County case takes precedence. *See* D.C. R. Civ. P. 104(b)(1).

The trial team for UDR has substantial overlap with the trial team for the case in Alameda County. UDR's lead trial counsel, David Cross, who has led UDR's defense in this case since it

began in November 2023, is also one of the lead trial counsel for multiple defendants in the Alameda County case. Nearly half of the associate team that composes the trial team for UDR also composes the trial team for the Alameda County case. UDR would be prejudiced if its long-standing counsel were unable to represent it at trial in this matter. And the same is true if the UDR trial team were unable to represent their clients in the Alameda trial.

Mr. Cross and the team at Goodwin Procter LLP were retained as trial counsel for the Alameda County case by defendants earlier this year and raised the issue with the District in advance of the September 11, 2026 status conference, and now raises it with the Court. *See id.* 104(c)(3).

## V. CONCLUSION

For the reasons above, there is good cause to continue both the November 18, 2026 hearing on the Parties' summary judgment and *Daubert* motions and the March 29, 2027 trial date. Defendants respectfully request a continuance of all dates in the schedule to be reset by the new judge in 2027. Alternatively, if the Court believes the dates should be set now, Defendants propose tentative dates of March 11, 2027 for the summary judgment/*Daubert* hearing and September 27, 2027 for trial.

Dated: October 6, 2026

Respectfully submitted,


*/s/ Stephen Weissman*
Stephen Weissman (D.C. Bar No. 451063)
sweissman@gibsondunn.com
Michael J. Perry (D.C. Bar. No. 1047965)
mjperry@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036
Telephone: (202) 955-8678

Jay Srinivasan (admitted *pro hac vice*)
jsrinivasan@gibsondunn.com
Daniel G. Swanson (admitted *pro hac vice*)
dswanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7430

S. Chris Whittaker (admitted *pro hac vice*)
cwhittaker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1361 Michelson Drive
Irvine, CA 92612
Telephone: (949) 451-3800

Ben A. Sherwood (admitted *pro hac vice*)
bsherwood@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-2671

*Counsel for Defendant RealPage, Inc.*

*/s/ Julia K. York*
Julia K. York (D.C. Bar No. 478001)
julia.york@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7146

Karen Hoffman Lent (admitted *pro hac vice*)
karen.lent@skadden.com
Boris Bershteyn (admitted *pro hac vice*)
boris.bershteyn@skadden.com
Evan Kreiner (admitted *pro hac vice*)
evan.kreiner@skadden.com
Sam Auld (admitted *pro hac vice*)
sam.auld@skadden.com
Adam Kochman (admitted pro hac vice)
adam.kochman@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000

*Counsel for Defendant Greystar Management Services, LLC*

*/s/ James D. Bragdon*
James D. Bragdon (D.C. Bar No. 1017743)
jbragdon@gejlaw.com
Sam Cowin (D.C. Bar No. 1027662)
scowin@gejlaw.com
GALLAGHER LLP
650 S. Exeter St., Ste. 1200
Baltimore, MD 21202
Telephone: (410) 727-7702

Philip A. Giordano
philip.giordano@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1775 I Street NW
Washington, DC 20007
Telephone: (202) 721-4776

*Counsel for Defendant Bozzuto Management Company*

/s/ *Michael D. Bonanno*
Michael D. Bonanno (D.C. Bar No. 998208)
mikebonanno@quinnemanuel.com
Ryan T. Andrews (D.C. Bar No. 144855)
ryanandrews@quinnemanuel.com
Carl Spilly (D.C. Bar No. 230830)
carlspilly@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 13th Street NW, Suite 600
Washington, DC 20004
Telephone: (202) 538-8225

*Counsel for Defendant Highmark Residential, LLC*

*/s/ Ryan M. Sandrock*
Ryan M. Sandrock (D.C. Bar No. 90021103)
rsandrock@shb.com
SHOOK, HARDY & BACON L.L.P
555 Mission Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 544-1944

Cary Silverman (D.C. Bar No. 473658)
SHOOK, HARDY & BACON L.L.P
1800 K Street, N.W., Suite 1000
Washington, DC 20006
(202) 783-8400
csilverman@shb.com

Maveric Ray Searle (admitted *pro hac vice*)
msearle@shb.com
SHOOK, HARDY & BACON L.L.P
111 S. Wacker Dr., Suite 4700
Chicago, IL 60606
Telephone: (312) 704-7766

Laurie A. Novion (admitted *pro hac vice*)
lnovion@shb.com
SHOOK, HARDY & BACON L.L.P
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 559-2352

*Counsel for Defendant Camden Development, Inc.*

*/s/ Christina E. Fahmy*
Christina E. Fahmy (D.C. Bar No. 493682)
cfahmy@ktslaw.com
Thomas J. Lang (D.C. Bar No. 452398)
tlang@ktslaw.com
KILPATRICK TOWNSEND & STOCKTON LLP
701 Pennsylvania Ave NW, Suite 200
Washington, DC 20004
Telephone: (202) 508-5800

*Counsel for Defendant Gables Residential Services, Inc.*

/s/ Jennifer L. Giordano
Jennifer L. Giordano
D.C. Bar No. 496746
Ehson Kashfipour
D.C. Bar No. 1736422
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: jennifer.giordano@lw.com
ehson.kashfipour@lw.com

Belinda S Lee (pro hac vice)
CA Bar No. 199635
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-0600
Facsimile: (415) 395-8095
Email: belinda.lee@lw.com

*Counsel for AvalonBay Communities, Inc., succeeded by merger by ERP Operating Limited Partnership*

/s/ Keturah Taylor
Milton A. Marquis (D.C. Bar No. 472979)
Ann-Marie Luciano (D.C. Bar. No. 493260)
Keturah Taylor (D.C. Bar No. 241560)
COZEN O'CONNOR
2001 M Street NW, Suite 500
Washington, D.C., 20036
Telephone: (202) 471-3417
Fax: (202) 912-4817
mmarquis@cozen.com
aluciano@cozen.com
ktaylor@cozen.com

*Counsel for Defendant Paradigm Management II L.P.*

/s/ David D. Cross
David D. Cross (D.C. Bar No. 490187)
dcross@goodwinlaw.com
Fatmeh Basma (D.C. Bar No. 90019225)
fbasma@goodwinlaw.com
Julia C. Stamper (D.C. Bar No. 90018665)
jstamper@goodwinlaw.com
Julia M. Maloney (D.C. Bar Admission Pending)
juliamaloney@goodwinlaw.com
GOODWIN PROCTER LLP
1900 N Street, NW Washington, DC 20036
Telephone: (202) 346-4000

Jill E. Greenfield (admitted *pro hac vice*)
jgreenfield@goodwinlaw.com
Benjamin Campbell (admitted *pro hac vice*)
bencampbell@goodwinlaw.com
GOODWIN PROCTER LLP
620 Eighth Avenue New York, NY 10018
Telephone: (212) 813-8800

*Counsel for Defendant UDR, Inc.*

/s/ Jeffrey L. Kessler

Jeffrey L. Kessler (admitted *pro hac vice*)
WINSTON TAYLOR LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
Jeffrey.Kessler@winstontaylor.com

Kevin B. Goldstein (D.C. Bar No. 1028729)
WINSTON TAYLOR LLP
1901 L Street, N.W.
Washington, D.C. 20036
Telephone: (202) 282-5000
Facsimile: (202) 282-5100
Kevin.Goldstein@winstontaylor.com

Conor A. Reidy (D.C. Bar No. 984203)
Matthew R. DalSanto (admitted *pro hac vice*)
WINSTON TAYLOR LLP
300 North LaSalle Drive
Chicago, IL 60654
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Conor.Reidy@winstontaylor.com
Matthew.DalSanto@winstontaylor.com

Alyse F. Stach (admitted *pro hac vice*)
BAKERHOSTETLER LLP
1735 Market Street, Suite 3300
Philadelphia, PA 19103
Telephone: (215) 568-3100
astach@bakerlaw.com

*Counsel for Defendant Vivmark Residential Management LLC (formerly Equity Residential Management, LLC)*

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2026, I caused the foregoing to be electronically filed and served through eFileDC, which will serve all counsel of record registered for eService.

*/s/ Stephen Weissman*
Stephen Weissman